UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |

MOTION FOR COURT ASSISTANCE IN RECOVERING UNCLAIMED FUNDS FOR THE BENEFIT OF THE BANKRUPTCY ESTATE

NOW COMES Lolonyon Akouete, a creditor in the above-captioned case, and hereby respectfully moves the Court for assistance in recovering unclaimed funds for the benefit of the bankruptcy estate, and in support thereof, states as follows:

1. **Background:**

   a. WESTBOROUGH SPE LLC is under involuntary Chapter 7 bankruptcy with Jonathan Goldsmith duly appointed as the Chapter 7 Trustee.

   b. The debtor has critical financial obligations that urgently require the recovery of assets currently held by the State.

2. **Unclaimed Funds:**

   a. The bankruptcy estate includes a checking account valued at $1,293,646.83, under Property ID# 1019294209, as reported by MUFG Union Bank NA.

   b. Despite repeated communications, including claim ID 4974344 and prior claim ID 21014485, the funds remain unreleased by the State Controller's Office.

3. **Trustee's Efforts and Creditor's Communications:**

   a. The Trustee and creditors have made concerted efforts, as evidenced by multiple communications, to expedite the release of these funds, emphasizing the urgent need due to critical financial obligations.

   b. Immediate financial commitments, such as the annual report filing fee with the Massachusetts Secretary of State and Delaware registration agent fees, highlight the time-sensitive nature of these funds.

4. **Legal Basis for Motion:**

   a. Pursuant to 11 U.S.C. § 541, the unclaimed funds form part of the bankruptcy estate, and the trustee is tasked with administering such estate assets.

b. The trustee's fiduciary duty to maximize the value of the bankruptcy estate for the benefit of creditors, as per various provisions of the Bankruptcy Code, supports this motion.

c. Under 11 U.S.C. § 542, the trustee has the authority to compel the turnover of estate property held by third parties.

d. The Bankruptcy Code, particularly under sections 544, 547, and 548, grants the trustee avoidance powers to recover assets for the benefit of the estate.

e. The bankruptcy court's broad authority to enforce the provisions of the Bankruptcy Code supports the issuance of orders compelling the turnover of funds to the trustee.

5. **Request for Court Assistance:**

a. The undersigned creditor, reflecting the concerns outlined in communications to the State Controller's Office, requests the Court's support in securing the release of these funds.

b. The expeditious processing and approval of the claims are crucial to mitigate financial burdens and facilitate the orderly liquidation process under Chapter 7.

6. **Relief Sought:**

a. The undersigned creditor requests that the Court issue an order to expedite the review and release of the unclaimed funds.

b. This relief is critical to meeting the immediate financial obligations of the bankruptcy estate and ensuring equitable distribution to creditors.

Wherefore, Lolonyon Akouete respectfully requests that the Court grant this Motion for Court Assistance in Recovering Unclaimed Funds for the Benefit of the Bankruptcy Estate.

DATED: January 4, 2024,      Respectfully submitted:

By creditor,



Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

________________________
Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |

MOTION TO COMPEL RELEASE OF INFORMATION FOR COMPLIANCE WITH THE FINANCIAL CRIMES ENFORCEMENT NETWORK (FinCEN) REQUIREMENTS

NOW COMES Lolonyon Akouete, a creditor of Westborough SPE LLC, in the bankruptcy case currently pending before this Court. An Order for Relief was entered on October 11, 2023, with Jonathan Goldsmith duly appointed as the Chapter 7 Trustee. This motion respectfully requests the Court to compel David M. Abramowitz, the former legal counsel for Westborough SPE LLC from Goulston & Storrs PC, to release necessary information for compliance with the Beneficial Ownership Information (BOI) report as required by the Financial Crimes Enforcement Network (FinCEN). In support of this motion, the movant states as follows:

1. **Introduction**: I, Lolonyon Akouete, am a creditor in the bankruptcy case of Westborough SPE LLC. Following the entry of an order of relief and the appointment of a trustee, I am filing this motion in my capacity as a creditor.

2. **Trustee's Lack of Response**: While I understand that addressing these matters typically falls within the duties of the bankruptcy trustee, Jonathan Goldsmith, the appointed Chapter 7 Trustee, has not responded to any communications regarding this matter. This lack of response necessitates my direct involvement as a creditor to protect the interests of the bankruptcy estate.

3. **Bankruptcy Court's Equitable Powers**: Pursuant to 11 U.S.C. § 105, the Bankruptcy Court has broad equitable powers to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code. This motion seeks such an order to compel the disclosure of information crucially for preventing potential financial liabilities to the bankruptcy estate.

4. **Examination under Federal Rules of Bankruptcy Procedure**: Under Fed. R. Bankr. P. 2004, the Court has the authority to order the examination of entities concerning the debtor's financial affairs. The information sought in this motion falls within the scope of such an examination, as it is relevant to the administration of the bankruptcy estate.

5. **Background and Legal Representation**: Westborough SPE LLC was formed under Delaware law and registered in Massachusetts. David M. Abramowitz of Goulston & Storrs PC was the former legal counsel. Gary M. Ronan, also from Goulston & Storrs PC, informed us that the firm cannot share confidential information about its former clients.

6. **Legal Basis for the Motion**: Based on relevant case law, including Gretsky v. Miller, 160 F. Supp. 914 (1958), the identity of a client is generally not protected by the attorney–client privilege under Massachusetts, Delaware, and Federal Common Law.

7. **Concerns Regarding Bankruptcy Estate**: Failure to obtain this information for compliance with FinCEN requirements could result in civil fines of up to $500 per day and potential criminal repercussions, significantly depleting the bankruptcy estate and adversely affecting the interests of all creditors.

8. **Request for Relief**: This motion respectfully requests the court to order David M. Abramowitz to provide any available information regarding the identity of the original client who engaged his services for the formation of Westborough SPE LLC, as it is critical for preventing financial liabilities to the bankruptcy estate.

9. **Conclusion**: The release of this information is essential for preserving the integrity of Westborough SPE LLC's bankruptcy estate and ensuring compliance with regulatory requirements, thereby protecting the interests of all creditors.

WHEREFORE, Lolonyon Akouete, as a creditor in the bankruptcy case of Westborough SPE LLC, respectfully requests that this Court enter an order compelling David M. Abramowitz to release the necessary information for compliance with the Financial Crimes Enforcement Network (FinCEN) Beneficial Ownership Information (BOI) report requirements, consistent with the legal precedents, the Bankruptcy Court's equitable powers, and the Federal Rules of Bankruptcy Procedure.

DATED: January 5, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S MOTION TO DISMISS BANKRUPTCY CASE |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby moves pursuant to 11 U.S.C. § 707(a) for the Court to dismiss this bankruptcy case for cause.[1] Cause for dismissal exists because this case was filed against an invalidly-revived iteration of Westborough SPE LLC (to be referred to herein as the "Debtor," to distinguish it from the original iteration, which will be referred to as the "LLC") by the Debtor's own counsel in the Massachusetts tax title foreclosure action that the Town was pursuing against the LLC, Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action"). The involuntary Chapter 7 was filed against the Debtor as a strategic maneuver to frustrate the Land Court's adjudication of the Tax Foreclosure Action, in which the Town had raised the same issues of deception surrounding the Debtor that warrant dismissal of this bankruptcy case. This frustration of the judicial process, when combined with the fact that the Debtor was not properly revived and the individuals behind that revival are attempting to frustrate the Town's disposition of real property that the Town

---

[1] As the filing of a § 707 motion commences a contested matter under Fed. R. Bankr. P. 9014, see Fed. R. Bankr. P. 1017(f)(1), and such contested matters are subject to many of the rules concerning adversary proceedings—including Fed. R. Bankr. P. 7026, 7028-7037, and 7056, see Fed. R. Bankr. P. 9014(c)—the Town reserves the right to conduct discovery and to move for summary judgment on its allegations of cause warranting dismissal of this bankruptcy case.

acquired through the Tax Foreclosure Action, constitutes cause that warrants dismissal of this bankruptcy proceeding.

## BACKGROUND

### *Formation and Dissolution of LLC*

In 1997, the entity Westborough SPE LLC (the "LLC") acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). See Exhibit A (Quitclaim Deed). The LLC was a Delaware limited liability company registered to do business in Massachusetts. See Exhibit B (MA Certificate of Registration). The LLC's manager was Babcock & Brown Administrative Services, Inc. ("Babcock & Brown"). See id. Babcock & Brown's president, F. Jan Blaustein, was authorized to execute recordable instruments on behalf of the LLC. See id. An unauthenticated document entitled "Westborough SPE LLC Limited Liability Company Agreement," apparently prepared by Goulston & Storrs, purports to indicate that Mignonette Investments Limited ("Mignonette"), a British Virgin Islands entity, was the LLC's sole member. See Exhibit C (LLC Agreement).[2]

The LLC withdrew from doing business in Massachusetts in 2007. See Exhibit D (MA Certificate of Withdrawal). In 2011, Babcock & Brown (through its successor) resigned as the LLC's manager. See Exhibit E (BBAS Resignation). The LLC was administratively dissolved in 2014 for failure to pay taxes in the State of Delaware. See Exhibit F (DE Administrative Dissolution).[3] Nevertheless, the lessee of the Property (Regal Cinemas) continued to lease the

---

[2] The Debtor's Land Court counsel submitted this document to the Land Court but provided no affidavit authenticating it, much less any indication how counsel came to possess the document.

[3] Babcock & Brown itself withdrew from doing business in Massachusetts in 2008. See Exhibit G (Babcock & Brown Withdrawal). Mignonette was stricken from the British Virgin Islands Register of Companies pursuant to Section 213(5) of the BVI Business Companies Act on May 31, 2010. See Exhibit H (VI Gazette, excerpted) and I (Search Report). The effect of the striking off is that the company and its directors, members, liquidator(s), or receiver(s) may not "carry on any business" or "act in any way with respect to the affairs of the company," subject to restoration. See BVI Business Companies Act § 215 (V.I.).

Property and pay property taxes to the Town. See Declaration of Kristi Williams ("Williams Decl.") at ¶ 5.[4] However, when the lease expired in late 2017, the lessee vacated the Property and stopped making tax payments. See id. at ¶ 6.

***The Town's Tax Taking***

Subsequently, property taxes on the Property accrued, and on December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, as a result of unpaid FY2018 taxes in the amount of $106,944.99. See Exhibit J (Instrument of Taking). The Town commenced the Tax Foreclosure Action in the Massachusetts Land Court on July 8, 2019 to foreclose the LLC's right of redemption. See Exhibit K (Tax Foreclosure Complaint). On January 5, 2022, the Land Court entered judgment in favor of the Town and against the LLC.[5] See Exhibit L (Tax Foreclosure Judgment).

On May 26, 2022, the Town issued a request for proposals for the purchase and redevelopment of the Property. See Williams Decl. at ¶ 15. The Town received three proposals, including one from Lax Media. See id. at ¶ 16. Lax Media offered a purchase price of $2,500,001, which was higher than the estimated fair market value of the Property ($2,082,000). See id. at ¶ 17. The Town's Select Board evaluated the proposals based on five categories and selected Lax Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two. See id. at ¶ 18.[6]

[4] Filed on October 3, 2023, in conjunction with the Town's Motion for Relief from Automatic Stay. See Doc. No. 22.

[5] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in Tyler v. Hennepin County, 598 U.S. 631 (2023).

[6] In November 2022, Ferris Development Group, LLC ("FDG")—one of the other bidders—filed suit against the Town and Lax Media in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's awarding the bid to Lax Media. See Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV01281. The Superior Court denied FDG's motion for preliminary injunction, finding that FDG failed to show a likelihood of success on the merits. Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 9-11, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023).

### *The Purported Revival*

On November 22, 2022, Denise Edwards filed a Certificate of Revival, purportedly for the LLC, with the Secretary of State of Delaware, effectively creating the Debtor. See Exhibit M (DE Certificate of Revival). On December 6, 2022, Lolonyon Akouete emailed the Town's Treasurer and identified himself as an "asset recovery specialist" who had "acquired Westborough SPE, LLC and … would like to redeem." See Exhibit N (Dec. 6, 2022 Email).[7]

On December 12, 2022, the Debtor applied for registration to do business in Massachusetts using the same name as the LLC. See Exhibit R (MA Application for Registration). The managers of the Debtor were identified as Ms. Edwards and Mr. Akouete. See id. The principal office of the Debtor—1241 Deer Park Ave., Suite 1 #1051, North Babylon, NY 11703, see id.—is a Staples store. See Exhibit S (Staples.com Printout).

Subsequently, Attorney Matthew Morris of Sherin & Lodgen LLP, representing Mr. Akouete, claimed that Ms. Edwards and Mr. Akouete were "the new owners of the LLC." See Exhibit T (M. Morris Email). Mr. Akouete and Ms. Edwards based their claim to ownership and control over the Debtor (and purportedly the LLC by extension) through a bill of sale. See Exhibit U (Jan. 13, 2023 Email). The bill of sale states, on its face, that it is between the LLC and Denise Edwards and Mr. Akouete as "joint tenants." See Exhibit V (Bill of Sale). The bill of sale was purportedly signed by Ms. Blaustein as president of the LLC on December 8, 2022, although the bill of sale itself states that it was made November 21, 2022. See id. Although the Debtor represented to the Land Court that Ms. Blaustein resides in a New Mexico assisted living facility, her signature on the bill of sale bears an Arizona notarization, which itself provides no indication

[7] Mr. Akouete holds himself out as the CEO/Owner of Smart Investors, LLC, a Maryland limited liability company that was forfeited for failure to file a property return in 2010 or thereafter. See Exhibits O (Smart Investors MD Documents) and P (Akouete LinkedIn). Mr. Akouete also holds himself out as "an investigator of unclaimed property," as reflected in documents he filed in the Land Court. See Exhibit Q (Akouete Exs. 2 and 3).

of how the notary confirmed that the person signing was Ms. Blaustein or that Ms. Blaustein was the "president" of the LLC (which she was not). See id.; see also Exhibit W (Motion to Vacate) at p. 6.[8] Moreover, in 2019, a Hawaii state court ruled that Ms. Blaustein was "an incapacitated person" and appointed her son, Peter Blaustein, as her conservator and guardian. See Exhibits X (In re Blaustein Docket) and Y (Waiver of Notice and Consent to Conservatorship). Mr. Blaustein did not give permission or consent for Ms. Blaustein to sign the bill of sale and did not approve of her doing so. See Exhibit Z (Affidavit of Peter L. Blaustein).

***Mr. Akouete's Scheme to Vacate the Tax Title Foreclosure Judgment***

On January 4, 2023—which was one day short of the first year anniversary of the issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (see G.L. c. 60, § 69), Mr. Akouete filed a motion with the Land Court to vacate the judgment on behalf of the Debtor. See Exhibit W (Motion to Vacate).[9] Mr. Akouete also sent a copy of his motion papers to David Ferris, the CEO of FDG, which had unsuccessfully attempted to purchase the Property when the Town solicited bid proposals through G.L. c. 30B (as noted above, see fn. 6). See Exhibit AA (Jan. 7, 2023 Email). Days later, on January 9, 2023, Mr. Ferris contacted Mr. Akouete by iMessage to discuss the Property. See Exhibit BB (iMessage Screenshots) at p. 2. In the ensuing iMessage exchange (which also involved Brian Charville, FDG's COO and General Counsel), Mr. Akouete indicated that he had "at least one document showing who may be the equity owner of the LLC." See id. at p. 3.[10] In response to Mr. Charville

---

[8] Page references to exhibits in this brief are to the CM/ECF pagination, inclusive of exhibit cover sheets, unless otherwise noted.

[9] Although the Debtor is a limited liability company, its motion was not signed by an attorney, which is impermissible under Massachusetts law. See Dickey v. Inspectional Servs. Dep't of Boston, 482 Mass. 1003, 1004 (2019).

[10] Exhibit BB contains excerpts of iMessage screenshots that were produced to the Town's counsel by FDG's counsel and appear to be from Mr. Charville's phone.

Case 1:26-cv-10037-MGY Document 13-3 Filed 02/11/26 Page 12 of 549

stating that anything Mr. Akouete could do "to substantiate [his] ownership of the LLC will help [Mr. Ferris] evaluate a potential purchase of the property," Mr. Akouete stated, "If you are going to help me find an attorney, then I'll share information with you. If not, then good luck." See id. at p. 4. Mr. Akouete also stated in a separate message that "[w]e believe that Jan Blaustein Scholes[] is a managing member of the LLC," but acknowledged that he had not confirmed this. See id. at p. 5.

On January 18, 2023, Mr. Akouete and Ms. Edwards signed what purported to be a new "Limited Liability Company Agreement of Westborough SPE LLC," dated December 8, 2022. See Exhibit CC (2022 LLC Agreement). The new LLC agreement makes no reference to the LLC's original operating agreement from 1997 and, notably, states that Mr. Akouete and Ms. Edwards, as members, "form a Limited Liability Company (the 'Company') in accordance with the laws of the State of Delaware." Id. at p. 2 (emphasis added). In the iMessage chain with FDG's officers, Mr. Akouete admitted that "we couldn't find any original operating Agreement or Corporate Resolutions. We just put this one in please [sic]." See Exhibit BB (iMessage Screenshots) at p. 6.

On February 28, 2023, Mr. Akouete admitted to Mr. Charville that he was "starting to see the authority issues we have in this case." See Exhibit BB (iMessage Screenshots) at p. 7. On March 14, 2023, Mr. Akouete told FDG's officers that he was "very close to finding the beneficial owner of the property," but also admitted that he lacked the funds required to redeem the Property. See id. at p. 8. Days later, Mr. Akouete told Mr. Charville that he had "been trying to negotiate with Peter [Blaustein], Jan's Guardian, to get the authority I need to vacate the foreclosure judgment," but Mr. Blaustein was "not responding." See id. at p. 9. On March 31, 2023, Mr. Akouete informed Mr. Charville that he had "run out of money" and did not "have anymore [sic]

funds to continue with the case," such that he was requesting Mr. Ferris to pay his attorney's retainer. See id. at p. 10. In the same message, Mr. Akouete indicated that he was "in the process of restoring [the] registration of Mignonette," which had been "suspended for nonpayment of fees," although Mr. Akouete was not an owner of Mignonette. See id. Several weeks later, on May 23, 2023, Mr. Akouete asked Mr. Charville if Mr. Ferris would "pay the attorneys fees" if "we are able to get Peter [Blaustein] to ratify and confirm the Bill of Sale." See id. at p. 11.

The Town opposed the motion to vacate for various reasons, including significant questions that the Town had regarding the ownership and identity of the Debtor, such as whether the individuals purporting to own the Debtor and advancing the motion to vacate (Mr. Akouete and Ms. Edwards) had actually acquired the LLC, much less any interest in the Property. See Exhibit DD (Opposition without Exhibits). Nathanson & Goldberg, P.C. subsequently appeared on behalf of the Debtor in the Tax Foreclosure Action and filed a slew of motions (which the Land Court ultimately denied). See Exhibit EE (Land Court Docket) at pp. 8-9. After several extensions, the Land Court was prepared to hold an evidentiary hearing "to determine whether Westborough SPE, LCC [sic], having appeared in this case, is the taxpayer who has the right to redeem the subject property" and a pre-hearing conference was scheduled for August 31, 2023 to determine the hearing schedule. See Exhibit EE (Land Court Docket) at May 16, 2023 entry.

Meanwhile, Mr. Akouete and Ms. Edwards attempted to recover an unclaimed checking account located in California, which had belonged to the LLC and contained almost $1.3 million.[11] On February 8, 2023, however, the California State Controller denied their claim. See Exhibit GG (CA Decision). The California State Controller concluded that "the Bill of Sale is void" due to

[11] In the Land Court, Mr. Akouete claimed to have obtained Mr. Blaustein's permission to have Ms. Blaustein sign certain papers to assist in this recovery attempt and submitted a September 15, 2022 text message screenshot to support this claim. See Exhibit FF (Sept. 15, 2022 Text).

Ms. Blaustein's lack of capacity and, as a result, Mr. Akouete and Ms. Edwards "could not have acquired any interest in Westborough SPE LLC." Id. Additionally, the California State Controller noted that "[i]t appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC" and "that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC," such that there was a question of "whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC." Id.[12]

***The Last Resort - Bankruptcy***

On June 29, 2023, Scott Schlager of Nathanson & Goldberg, P.C. emailed Mr. Ferris and Mr. Charville. See Exhibit HH (June 29, 2023 Email). In that email, Attorney Schlager stated that he concluded that FDG was "not wanting to finance a bankruptcy proceeding" but nevertheless solicited FDG to provide $10,000 to pay an attorney to provide "a formal opinion as to the authority of Lolonyon Akouete and Denise Edwards to act on behalf of Westborough SPE LLC" based on three additional documents that Nathanson & Goldberg, P.C. was "able to have F. Jan Blaustein Scholes execute." See id.[13]

On August 31, 2023, Nathanson & Goldberg, P.C. and The MobileStreet Trust filed an involuntary Chapter 7 petition against the Debtor, commencing these proceedings.[14] The Land Court cancelled the pre-hearing conference on the Debtor's motion to vacate in the Tax

---

[12] As discussed above, Babcock & Brown resigned as the LLC's manager effective May 30, 2011. See Exhibit E (BBAS Resignation).

[13] These documents, which Nathanson & Goldberg, P.C. also submitted to the Land Court, do not alter the facts that (i) Mr. Blaustein had already been appointed as Ms. Blaustein's guardian and conservator, and (2) was not a member of the LLC and thus held no ownership interest in it or its assets.

[14] The MobileStreet Trust owns two parcels of land adjoining the Property, all of which are subject to a Reciprocal Covenants, Easements and Restrictions Agreement.

Foreclosure Action, which was scheduled for 2:00 pm that same day, and ordered the Debtor to file a status report by October 31, 2023 (with additional status reports due every 60 days thereafter). See Exhibit EE (Land Court Docket) at August 31, 2023 entry. The Tax Foreclosure Action remains stayed.[15]

Since the entry of the Order of Relief and appointment of the Chapter 7 Trustee in this matter, Mr. Akouete has nevertheless engaged in a persistent course of conduct badgering the Town. Among other things, Mr. Akouete has threatened to assert that the Town is engaging in unreasonable and vexatious litigation simply by pursuing its concerns with Mr. Akouete's involvement in the Debtor, opined that he may to object to any settlement that the Town and the Chapter 7 Trustee may reach, accused the Town of bullying him and accused the Land Court judge of bias, and threatened to file a lawsuit against the Town after a sale of the Property if this Court continued the December 21, 2023 hearing on the Town's motion for relief from the automatic stay. See Exhibits II (Dec. 1, 2023 Email Chain) and JJ (Dec. 16, 2023 Email). Recently, he sent the Town's Select Board members—even though the Town is represented by counsel—a pair of emails, including one sent on the Saturday of the Christmas holiday weekend, directly threatening "initiating legal proceedings against the town for malfeasance, malicious prosecution, and abuse of process" if the Board did not expedite a settlement. See Exhibit KK (Dec. 26, 2023 Email Chain).

[15] On October 3, 2023, the Town moved for relief from the automatic stay to proceed with the Tax Foreclosure Action. See Doc. No. 20. The Court conducted an initial hearing on that motion on November 30, 2023, but continued it so that the Chapter 7 Trustee could explore settlement discussions with the parties and whether to attempt to remove the Tax Foreclosure Action, commence an adversary proceeding regarding the Property under 11 U.S.C. § 548(a), or both. The Court is scheduled to resume the hearing on February 13, 2024.

**ARGUMENT**

The Bankruptcy Code provides that the Court may dismiss a Chapter 7 case "for cause." 11 U.S.C. § 707(a). Although the U.S. Court of Appeals for the First Circuit has not decided what constitutes "cause" for the purposes of § 707(a), other bankruptcy judges in this Court have concluded that "egregious conduct or abuse and manipulation of the Bankruptcy Code" suffices to warrant dismissal. See In re Linehan, 326 B.R. 474, 483 (Bankr. D. Mass. 2005) (Feeney, J.), citing In re Huckfeldt, 39 F.3d 829 (8th Cir. 1994).[16] Section 707(a) "allows the court to consider a concerted scheme of bankruptcy abuse." Krueger v. Torres (In re Krueger), 812 F.3d 365, 372 (5th Cir. 2016). That is what has occurred here.

Much of what Mr. Akouete, Ms. Edwards, and their lawyers have done to frustrate the Town's disposition of the Property likely constitutes bad faith, which would constitute cause in some circuits but not others. See, e.g., Krueger, 812 F.3d at 370-373. Mindful of the undecided status of the law in the First Circuit, the Town does not rely upon a finding that there has been "bad faith" that, in turn, is "cause" for dismissal under § 707(a). Rather, as discussed below, it is clear that, regardless of labels, the actions of Mr. Akouete, Ms. Edwards, and their lawyers amount to "egregious conduct" and a manipulation of the bankruptcy process to frustrate the Town's efforts to bring the Tax Foreclosure Action to a close in the Land Court. As such, dismissal is warranted.

[16] Unlike Linehan, this case involves an entity debtor which is not entitled to a discharge (see 11 U.S.C. § 727(a)(1)), such that the Town has no ability to raise concerns over the actions of the Debtor or Petitioning Creditors through an objection to discharge pursuant to 11 U.S.C. § 523 or § 727. Thus, dismissal under § 707(a) is the only vehicle for the Town to bring the concerns addressed herein to the Court's attention.

## I. THE INVALID ATTEMPT TO REVIVE THE LLC IS EGREGIOUS

Egregious means "extraordinary in some bad way," or "glaring; flagrant."[17] The conduct of Mr. Akouete and Ms. Edwards in seeking to invalidly revive the LLC and vacate the Town's tax title foreclosure judgment is both extraordinarily bad and glaringly flagrant. The conduct is sufficiently egregious to constitute cause to dismiss this bankruptcy proceeding.

From the start, the attempt to revive the LLC was duplicitous. The bill of sale—which is the backbone to Mr. Akouete and Ms. Edwards's claims to ownership and/or management of the LLC—is legally meaningless. Even taken on its face, it was ineffective, as it was purportedly signed by Ms. Blaustein as president of the LLC, a role she never held. See Exhibit V (Bill of Sale). And to the extent that Ms. Blaustein intended to sign the bill of sale in her role as president of Babcock & Brown, that would not cure the defect. Babcock & Brown, which had withdrawn from doing business in Massachusetts in 2008, resigned as the LLC's manager in 2011. See Exhibit E (BBAS Resignation); see also Exhibit D (MA Certificate of Withdrawal).[18] Simply put, Ms. Blaustein had no authority to convey any interest—whether ownership or management—of the LLC in 2022 when she purportedly signed the bill of sale.

Moreover, the bill of sale is fraught with indicia of fraud. Mr. Akouete and Ms. Edwards apparently had Ms. Blaustein sign the bill of sale in Arizona, even though the Debtor itself acknowledged that she resides in a New Mexico assisted living facility. See Exhibit V (Bill of Sale); see also Exhibit W (Motion to Vacate) at p. 6. Ms. Blaustein's signature on the bill of sale is suspect, however, as the notary who attested that signature did not indicate how he confirmed

---

[17] See https://www.dictionary.com/browse/egregious (last visited Jan. 9, 2024).

[18] Babcock & Brown's corporate parent has apparently been in liquidation in Australia for almost two decades. See https://jws.com.au/insights/articles/2019-articles/the-continued-saga-of-the-babcock-brown-liquidatio (last visited Jan. 9, 2024).

that the person signing was, indeed, Ms. Blaustein or that Ms. Blaustein had the authority to sign the bill of sale as the LLC's president (which she was not). See Exhibit V (Bill of Sale). Moreover, at the time Ms. Blaustein purportedly signed the bill of sale, she had been adjudged "incapacitated" and Mr. Blaustein had been appointed as her conservator and guardian. See Exhibits X (In re Blaustein Docket) and Y (Waiver of Notice and Consent to Conservatorship). Thus, Ms. Blaustein lacked the capacity to execute the bill of sale. See Restatement (Second) of Contracts § 12(1) (1981) ("No one can be bound by contract who has not legal capacity to incur at least voidable contractual duties."); see also, e.g., G.A.S. v. S.I.S., 407 A.2d 253, 256-257 (Del. Fam. Ct. 1978); Krasner v. Berk, 366 Mass. 464, 467-468 (1974); Young v. Lujan, 11 Ariz. App. 47, 49 (1969).[19] Critically, Mr. Blaustein did not in any way authorize Ms. Blaustein's execution of the bill of sale. See Exhibit Z (Affidavit of Peter L. Blaustein). Thus, the bill of sale is voidable, if not void given Mr. Blaustein's testimony, as the California State Treasurer already recognized in rejecting Mr. Akouete and Ms. Edwards's claim to the LLC's unclaimed property in California. See, e.g., G.A.S., 407 A.2d at 256-257; Krasner, 366 Mass. at 467-468; Young, 11 Ariz. App. at 49; see also Exhibit GG (CA Decision). The fact that these actions were coordinated by Mr. Akouete, who labels himself as "an asset recovery specialist" and "an investigator of unclaimed property," casts further doubt on the validity of the revival of the LLC. See Exhibits N (Dec. 6, 2022 Email) and Exhibit Q (Akouete Exs. 2 and 3).

What casts even further doubt on the validity of the revival of the LLC, and what further demonstrates the egregiousness of the conduct at issue, are Mr. Akouete's iMessage exchanges with the CFO and COO/GC of FDG. For example, Mr. Akouete's initial messages acknowledged

---

[19] In the Land Court, the Debtor contended that Ms. Blaustein's signature in Arizona was not impacted by the adjudication of incapacitation in Hawaii. But, the question of Ms. Blaustein's capacity to contract in December 2022 does not depend exclusively on formal registration of her guardianship in the jurisdiction where she purportedly signed the bill of sale. See e.g., G.A.S., 407 A.2d at 256-257; Krasner, 366 Mass. at 467-468; Young, 11 Ariz. App. at 49.

that he was not "the equity owner of the LLC" and that he would have "to substantiate [his] ownership of the LLC." See Exhibit BB (iMessage Screenshots) at pp. 3-4. He also acknowledged that he had not confirmed that Ms. Blaustein was a member of the LLC, as opposed to just an agent of its since-resigned manager. See id. at p. 5. Subsequently, Mr. Akouete admitted that there were "authority issues" with the revival of the LLC and the Debtor's attempt to vacate the tax title foreclosure judgment. See id. at p. 7. Then, Mr. Akouete sent a pair of messages in which he acknowledged that the bill of sale was not valid, when he told Mr. Charville that he was "trying to negotiate" with Mr. Blaustein—who Mr. Akouete admitted was Ms. Blaustein's guardian—"to get the authority … to vacate the foreclosure judgment" and to "ratify and confirm the Bill of Sale." See id. at pp. 9, 11. Thus, Mr. Akouete himself has admitted to third parties that the bill of sale is void and does not actually give him and Ms. Edwards any control over or interest in the LLC.[20]

Critically, the LLC's governance documents also undermine the Debtor's validity. The document that may be the original operating agreement provides that Mignonette—which itself may no longer exist under the laws of the British Virgin Islands—was the sole member of the LLC. See Exhibit C (LLC Agreement); see also Exhibit H (VI Gazette, excerpted) and I (Search Report). But Mr. Akouete and Ms. Edwards have never brought forward any evidence that they own or control Mignonette. Apparently Mr. Akouete and Ms. Edwards were unable to get a copy of this agreement or, perhaps, they recognized that it is an impediment to their claim of ownership and management of the LLC. Regardless, and undeterred, on January 18, 2023—after already having filed the motion to vacate but recognizing the need for some documentation to corroborate their claim of authority—Mr. Akouete and Ms. Edwards simply drafted up a new operating agreement

[20] Mr. Akouete's actions—namely his September 2022 text exchange with Mr. Blaustein—further demonstrate that he and Ms. Edwards knew that Ms. Blaustein had been placed in conservatorship and had a guardian appointed. See Exhibit FF (Sept. 15, 2022 Text).

that nowhere mentions the original formation of the LLC but instead itself states that Mr. Akouete and Ms. Edwards were "form[ing]" a Delaware limited liability company, rather than reviving an existing one. See Exhibit CC (2022 LLC Agreement). As Mr. Akouete told FDG's officers, he and Ms. Edwards "just put" the new operating agreement "in please [sic]." See Exhibit BB (iMessage Screenshots) at p. 6. Thus, there is no evidence whatsoever that Mr. Akouete and Ms. Edwards had any authority to act on the LLC's behalf, either as members or managers.

Cause for dismissal generally "exists where a business entity lacks authority to file a bankruptcy petition." In re Polish-Am. Citizen's Club Inc., 2023 WL 4259266, at *8 (1st Cir. BAP June 27, 2023), quoting In re Or. Homes, LLC, 2014 WL 4794861, at *2 (Bankr. N.D. Ohio. Sept. 25, 2014). Although this case involves an involuntary petition filed against the Debtor, the principle applies because the Debtor was not a properly-revived version of the LLC and thus lacked authority to file a bankruptcy petition. The fact that the Debtor's own lawyers stood in as one of two petitioning creditors and facilitated the bankruptcy filing should not serve as an end-around of the impact of the issues concerning the LLC's status. Indeed, if the Court "finds that those who purport to act on behalf of the [entity] have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." Id., quoting Price v. Gurney, 324 U.S. 100, 106 (1945). Here, Mr. Akouete and Ms. Edwards had no authority to act on behalf of the LLC, whether it was to commence a bankruptcy petition or retain counsel that ultimately did so against the Debtor as a petitioning creditor.

Mr. Akouete and Ms. Edwards's egregious conduct in attempting to invalidly revive the LLC solely for their own gain is cause to dismiss the bankruptcy involving the Debtor. Adding to that egregious conduct is how Mr. Akouete has conducted himself since the Court entered the order of relief (which shifted whatever control Mr. Akouete had over the Debtor to the Chapter 7

Trustee). Mr. Akouete has badgered the Town's attorneys for weeks, threatening additional litigation, accusing the Town of bullying, and leveling unfounded assertions of bias against the Land Court judge. <u>See</u> II (Dec. 1, 2023 Email Chain) and JJ (Dec. 16, 2023 Email). When this tactic did not get him anywhere, Mr. Akouete turned to sending the Town's Select Board emails threatening "legal proceedings against the town for malfeasance, malicious prosecution, and abuse of process," on Christmas weekend no less. <u>See</u> Exhibit KK (Dec. 26, 2023 Email Chain).

In light of this egregious conduct, the Court should dismiss this bankruptcy proceeding for cause, particularly given the circumstances surrounding the filing of the involuntary petition that commenced these proceedings.

## II. THIS BANKRUPTCY CASE WAS FILED FOR THE PURPOSES OF FRUSTRATING OTHER JUDICIAL PROCEEDINGS, NAMELY THE LAND COURT TAX TITLE FORECLOSURE ACTION

Cause exists to dismiss this bankruptcy proceeding because it is an abuse and manipulation of the Bankruptcy Code designed solely to hinder final resolution of the Town's Tax Foreclosure Action. There is no abuse of discretion by a bankruptcy court that dismisses a Chapter 7 petition that was filed to manipulate the bankruptcy process to benefit those that filed the petition, including to frustrate other judicial proceedings. <u>See</u> <u>Krueger</u>, 812 F.3d at 374 (petition filed "to hamper … state court litigation that threatened" debtor's "pecuniary interests" and "personal freedom"); <u>Huckfeldt</u> v. <u>Huckfeldt</u> (<u>In re Huckfeldt</u>), 39 F.3d 829, 832-833 (8th Cir. 1994) ("Huckfeldt filed the petition for the purpose of frustrating the divorce court decree"). Indeed, bankruptcy may not be used "as a refuge from another court's jurisdiction." <u>Huckfeldt</u>, 39 F.3d at 832.

Manipulation of the bankruptcy process to frustrate other judicial proceedings is not limited to the actions of the debtor, either. If the conduct of a petitioning creditor amounts to such abuse, an involuntary Chapter 7 case may be dismissed for cause, as well. <u>See</u> <u>Fisher</u> v. <u>Bank Leumi Trust Co. of N.Y.</u> (<u>In re MacFarlane Webster Assocs.</u>), 121 B.R. 694, 697, 700-702 (Bankr.

S.D.N.Y. 1990) (granting senior mortgagee's motion to dismiss involuntary Chapter 7 commenced by junior mortgagee that would benefit from avoidance of pre-petition foreclosure). "[W]here the primary function of" an involuntary bankruptcy "petition was to serve as a 'litigation tactic,'" cause exists to dismiss the case. See Wilk Auslander LLP v. Murray (In re Murray), 900 F.3d 53, 60 (2d Cir. 2018).

Here, the Debtor and its attorneys at Nathanson & Goldberg, P.C.—one of the two petitioning creditors—commenced this bankruptcy proceeding by filing an involuntary petition as a litigation tactic to frustrate the Land Court proceedings in the Tax Foreclosure Action. With Mr. Akouete acknowledging to FDG's officers in May 2023 that the bill of sale was void absent Mr. Blaustein's ratification, thus crystallizing the "authority issues" that plagued the Debtor's motion before the Land Court, the Debtor's attorneys at Nathanson & Goldberg, P.C. then pivoted in June 2023 to seeking FDG's help to "finance a bankruptcy proceeding." See Exhibit BB (iMessage Screenshots) at pp. 7, 11; Exhibit HH (June 29, 2023 Email). Although FDG apparently declined to do so, that did not ultimately stop the Debtor's own counsel from putting the Debtor into Chapter 7 bankruptcy despite continuing to represent the Debtor in the Land Court.

The timing of the involuntary petition, however, reflects that this bankruptcy was intended to be used impermissibly "as a refuge from" the Land Court's "jurisdiction." Huckfeldt, 39 F.3d at 832. The Debtor's attorneys at Nathanson & Goldberg, P.C. filed the involuntary petition the very morning that the Land Court was scheduled to hold a conference to set a hearing on the Debtor's motion to vacate the tax title foreclosure judgment. See Exhibit EE (Land Court Docket) at May 16, 2023 entry. As a result, the Tax Foreclosure Action was stayed and has remained stayed to this date.

Thus, by putting the Debtor into bankruptcy, Mr. Akouete, Ms. Edwards, and their attorneys have successfully prevented the Land Court from adjudicating the Debtor's motion to vacate. That motion is undermined by the very same issues of authority that constitute cause to dismiss this bankruptcy proceeding. The Debtor and its attorneys should not be permitted to use the bankruptcy process to prevent the Land Court from disposing of the motion to vacate, upholding the tax foreclosure judgment, and allowing the Town to proceed with the sale of the Property to Lax Media pursuant to the Select Board's bid selection.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this bankruptcy case in its entirety.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: January 16, 2024

89657/WEST/0049

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Motion to Dismiss Bankruptcy Case to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail or email to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor*
(by U.S. mail)

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor*
(by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor*
(by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor*
(by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor*
(by email)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust*
(by email)

Dated: January 16, 2024

Roger L. Smerage

# Appendix

2023 WL 4259266
**NOT FOR PUBLICATION**
United States Bankruptcy Appellate Panel of the First Circuit.

POLISH-AMERICAN CITIZEN'S CLUB INC. of Willimansett, Massachusetts, d/b/a Pulaski Hall, d/b/a Pulaski Club, d/b/a Polish-American Citizens Club, Debtor.

David W. Ostrander, Chapter 7 Trustee, Appellant,
v.
Elaine Dowd, Stanley Gromacki, Jr., Matthew Roman, June Massee, Marian Zielinski, Frank Meckay, and Mitchell Nowak, Appellees.

BAP NO. MS 22-033
|
Bankruptcy Case No. 21-30357-EDK
|
June 27, 2023

**Appeal from the United States Bankruptcy Court for the District of Massachusetts (Elizabeth D. Katz, U.S. Bankruptcy Judge)**

**Attorneys and Law Firms**

David W. Ostrander, Chapter 7 Trustee, on brief for Appellant.

Gregory A. Hession, Esq., on brief for Appellees.

Before Godoy, Harwood, and Cary, U.S. Bankruptcy Appellate Panel Judges.

**Opinion**

Godoy, United States Bankruptcy Appellate Panel Judge.

***1** After a trial, the bankruptcy court dismissed the chapter 7 petition filed by Polish-American Citizen's Club Inc. of Willimansett, Massachusetts (the "Club") because it was not duly authorized by a properly constituted board of directors. The chapter 7 trustee (the "Trustee") moved for reconsideration and that request was denied. The Trustee appealed both orders. On appeal, the Trustee argues that the dismissal order was based on a clearly erroneous finding that the board of directors was not elected prior to the adjournment of the Club's 2020 annual meeting, and the bankruptcy court should have granted reconsideration to allow him to introduce additional evidence on the issue. He also challenges the court's denial of his request to "condition" the dismissal upon the payment of "administrative expenses." For the reasons discussed below, we **AFFIRM** both the dismissal order (including the denial of the Trustee's request for payment of administrative expenses) and the order denying reconsideration.

## BACKGROUND[1]

[1] Unless otherwise noted, all references to the "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure and references to "Rule" are to the Federal Rules of Civil Procedure.

The Club, a Massachusetts non-profit corporation, is a social club founded in 1927. It has about 500 shareholders, including the seven appellees (the "Appellees"). The Club owns real property located at 13 Norman Street, Chicopee, Massachusetts (the "Property"), where it conducted its club activities and operated a restaurant, bar, and hall rental business. Plagued by financial difficulties, the Club ceased active operations in October 2020 and closed the facility altogether in early 2021.

### I. The Bankruptcy Proceedings

#### A. The Chapter 7 Filing

On September 17, 2021, the Club filed a chapter 7 petition, signed by its president, Dorothy Wojtczak. The Trustee was appointed shortly thereafter, and, with the bankruptcy court's approval, employed his law firm to represent him in the case.[2] On September 28, 2021, upon the bankruptcy court's request, the Club filed a corporate resolution (the "Resolution") authorizing the filing of the bankruptcy case. The Resolution was signed by eight


© 2023 Thomson Reuters. No claim to original U.S. Government Works.

people purporting to be members of the Club's board of directors (the "Board" or "Board of Directors").[3]

2 Neither the Trustee nor his counsel submitted any fee applications in the bankruptcy case.

3 The signatories on the Resolution were: Dorothy Wojtczak, president; Carl Schreiber, vice president; Barbara Zabinska, director; Lucyna Wojtczak, director; Jordan Klofas, director; Anton Zamachaj, director; Mariola Jarzynska, director; and Rachel Ilnicki, director.

**B. Appellees' Motion to Dismiss**

About six months after the bankruptcy filing, after conducting Bankruptcy Rule 2004 examinations of several directors and officers of the Club, the Appellees filed a motion to dismiss the petition (the "Motion to Dismiss"), asserting that the bankruptcy filing was not duly authorized by a properly constituted Board of Directors. Among other things, they alleged that at least six of the eight individuals whose signatures appeared on the Resolution were not qualified Board members because they were not properly elected at the Club's annual meeting held on February 23, 2020 (the "2020 annual meeting").[4] Accordingly, the Appellees argued, the Resolution was not valid, the petition was not authorized, and the case should be dismissed.

4 It is undisputed that due to the COVID-19 pandemic and subsequent cessation of Club operations, no annual meeting or election of officers and directors was held after the 2020 annual meeting.

**C. Trustee's Objection to Motion to Dismiss**

***2** The Club did not respond to the Motion to Dismiss. The Trustee, however, filed an objection. Relying primarily on an affidavit from Dorothy Wojtczak, the Club's president, in which she attested that all persons whose signatures appeared on the Resolution were valid Board members, the Trustee countered that the bankruptcy filing was duly authorized. The Trustee further contended that the Club's debts, which totaled more than $151,000, would "only be satisfied" by selling the Property, and that he had already spent considerable time and effort marketing the Property for sale. If he did not sell the Property through the bankruptcy case, the Trustee insisted, the City of Chicopee, which had moved for relief from stay to foreclose its tax lien on the Property, would likely conduct a "distress sale" which would net far less than his proposed sale.[5] For these reasons, the Trustee requested that the Motion to Dismiss be denied.

5 A few days after filing his objection to the Motion to Dismiss, the Trustee sought authority to sell the Property to a third party for $375,000. No objections were filed, and a combined trial with the Motion to Dismiss was scheduled for June 21, 2022. After trial, the bankruptcy court denied the motion to sell as moot due to the dismissal of the bankruptcy case.

**D. Trustee's Motion for Sanctions**

Shortly before the trial, the Trustee filed a motion (the "Sanctions Motion") seeking to impose monetary sanctions against the Appellees and their counsel "for prosecuting baseless claims against the Bankruptcy Estate resulting in the Estate incurring substantial time and expenses defending [against] these allegations." The Trustee asserted that the Appellees' filing of numerous pleadings, including the Motion to Dismiss, was "an attempt to obstruct the Trustee's administration of the case," which caused administrative expenses to accrue at a substantial rate.

That same day, the bankruptcy court denied the Sanctions Motion, without prejudice, "for failure to articulate any legal basis for the relief requested" and "for failure to comply with Fed. R. Bankr. P. 9011(c)," which governs the imposition of sanctions for violations of Fed. R. Bankr. P. 9011(b) (setting forth certifications made by any party signing, filing, and submitting documents with the bankruptcy court).

**II. The Trial**

The bankruptcy court conducted a three-day trial in June 2022. Dorothy Wojtczak, five of the Appellees, and several other shareholders were among the thirteen individuals who testified. We summarize only the testimony most relevant to this appeal.

**A. Opening Statements**

During his opening statement, the Appellees' counsel argued that the petition should be dismissed as the evidence would show that most of the individuals who signed the Resolution were not properly elected to the Board at the 2020 annual meeting in the manner required by the Club's bylaws. He stated: "The meeting ended. There w[as] only a handful of people left and they remembered that they forgot to elect a board," so the Club's president "just appointed some people" to the Board. The Trustee countered that the evidence would show that all the individuals whose names appeared on the Resolution were valid Board members.

**B. Shareholder Testimony**

The Appellees introduced the testimony of June Massee, who had served as president of the Club for several years. She described the 2020 annual meeting as a "drunken brawl," explaining that after elections were held for the various officer positions, "chaos" ensued when a controversial financial report for 2019 was presented. Ms. Massee stated that "someone" then "said the meeting's adjourned in a loud voice" and "almost everybody got up and left." Ms. Massee believed the person who adjourned the meeting was Dorothy Wojtczak, who was known to abruptly end meetings when she did not like what she was hearing. No "director elections" had occurred before the meeting was adjourned, Ms. Massee stated.

***3** Kevin Juchno, who had been a member of the Club since 2016, also described the 2020 annual meeting as "chaotic" and testified that no Board had been elected before the meeting was adjourned. He explained that after the meeting was adjourned, somebody realized that a board of directors had not been elected. Dorothy Wojtczak then asked him if he would like to be a Board member and "offered up a couple of other names" from the "handful" of people remaining. She "asked if anyone objected to these people being appointed as directors. Everyone said no, no objections. And she said okay, we have our board members." Matthew Roman, a Club member for at least 50 years who served as a director, officer, and trustee, corroborated Mr. Juchno's testimony, stating that after the meeting was adjourned, Ms. Wojtczak simply asked the few remaining people whether they wanted to be on the Board and they agreed. Another former officer and trustee, Marian Zielinski, also testified that a large number of people left halfway through the meeting. There had been no election of Board members and so Dorothy Wojtczak simply chose the directors without any discussion. Rachel Ilnicki, a Club member who was working in the kitchen during the meeting, similarly explained that after a lot of people had left the meeting, Dorothy Wojtczak simply asked her to be a director and she agreed.

On direct examination by the Appellees, however, Dorothy Wojtczak insisted she did not simply "appoint" members of the Board when there was only a "handful" of people remaining. When questioned by the bankruptcy court as to how the directors were "chosen" at the 2020 annual meeting, she explained:

> [O]nce the election happens for the officers there is a hand vote, basically a question, who would like to become a director..., and whoever wants to be a director raises their hand. If there's not enough directors, then you can ask on the floor, hey, so[ ] and so[,] would you like to be a director?

All the individuals who signed the Resolution were "elected" in this manner at the 2020 annual meeting, Ms. Wojtczak stated. She also asserted that although the Club's 1927 bylaws may have required an "election" of directors, the Club had "not run by these bylaws for many, many years" and there had "never been a vote to elect any directors" since she became a Club member.

The Appellees, however, introduced conflicting testimony that before Dorothy Wojtczak became president in 2019, the Club conducted formal elections of directors. Matthew Roman explained that traditionally, when electing directors, a nominating committee made nominations for individuals to serve on the Board. Depending on how many director positions needed to be filled, there was either a ballot (by hand or paper) and the "highest vote getters" became directors, or, if the number of nominees did not exceed the number of positions to be filled, a motion would be made and seconded to accept the nominees as directors. Mitchell Nowak, who served as president of the Club for about 19 years, corroborated this testimony.

The Trustee introduced several witnesses who testified that the Board members were chosen before the conclusion of the 2020 annual meeting. Anton Zamachaj testified that, after determining the number of director positions to be filled, "nominations" for directors were made from the floor and then the nominees were "elected" by a "voice vote." He was nominated in this manner by his cousin, he explained, and no objections to any of the nominations were made. He further stated that the meeting was not adjourned before the election of the Board, insisting that the "mass exodus" occurred *after* the

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

directors were elected. Alice Pasterczyk similarly testified that the Board of Directors was "in place" before the 2020 annual meeting was adjourned. She could not recall, however, exactly how the Board members were selected, stating that her "recollection of specifics [of] that meeting [was] not quite there ...."

### C. Documentary Evidence

Both parties also introduced documentary evidence to support their respective positions. The Appellees repeatedly referenced the Club's bylaws, which the witnesses agreed required the Club to conduct an "election" of directors by "written ballot." They pointed to Dorothy Wojtczak's handwritten notes of the 2020 annual meeting, which reflected tallied votes for the officer positions but none for the directors, as evidence that the officers were selected by ballot and the directors were not. The Appellees also emphasized that a Certificate of Change of Directors and Officers for the Club (the "Change of Directors Certificate") filed with the Secretary of the Commonwealth in January 2021, indicated that the terms of the directors named therein expired in February 2021, well before the petition was filed.[6]

[6] The Change of Directors Certificate identified the following officers: Dorothy Wojtczak, President; Kevin Juchno, Treasurer; Heather Larsen, Clerk; Ronald Schwalm, Financial Secretary; and Carl Schreiber, Vice President; and the following directors: Mariola Jarzynska, Rachel Ilnicki, Jordan Klofas, Barbara Zabinska, Lucyna Wojtczak, and Anton Zamachaj.

***4** The Trustee, on the other hand, pointed to Ms. Wojtczak's handwritten notes of the 2020 annual meeting—which identified as new directors many but not all the individuals who signed the Resolution—as evidence that the individuals listed therein were elected to the Board at the 2020 annual meeting and that the election occurred before the meeting was adjourned. He also claimed that the Change of Directors Certificate "confirmed" that all the individuals who signed the Resolution were directors of the Club.

### D. The Trustee's Request for Payment of Administrative Expenses

Following closing arguments, the Trustee requested that dismissal of the petition be conditioned upon the Club's payment of "administrative expenses" incurred in the case:

> Your Honor, if you are ... inclined to grant the motion to dismiss, ... then I request that the dismissal be conditioned upon payment of the administrative expenses that have been incurred in this case.
>
> The petition was filed about nine months ago. Since then, trustee and counsel to trustee have spent over 135 hours in this case in good-faith reliance on the validity of the bankruptcy filing.
>
> You heard testimony from Ms. June Massee that the club can get loans, grants, and even, apparently, substantial money contributions from the club members.... [I]f so then the club should have the ability and obligation to pay the administrative expenses incurred in this case as a condition of the dismissal.
>
> I ask that if the case is to be dismissed, *that it be conditioned on the Court ordering the club to pay the administrative expenses* and that the club grant a mortgage on the Chicopee real estate to secure payment in full, no later than one year after the date of dismissal.

(emphasis added).[7] The bankruptcy court did not address or rule on the Trustee's request but took the entire matter under advisement.

[7] Significantly, although the Trustee had previously requested in the Sanctions Motion that the court impose an award of attorney's fees and expenses against *the Appellees* as sanctions for having to defend against their various motions, including the Motion to Dismiss, his request at the end of trial was for the bankruptcy court to "condition" any dismissal upon the *Club's* payment of "administrative expenses."

### III. Dismissal Order

On July 18, 2022, the bankruptcy court entered an order dismissing the bankruptcy petition (the "Dismissal Order"), concluding that the bankruptcy filing was not duly authorized under applicable Massachusetts law because the Resolution was not signed by a "properly constituted Board." See In re Polish-Am. Citizens Club Inc. of Willimansett, Mass., 642 B.R. 204 (Bankr. D. Mass. 2022). The court explained:

> Pursuant to the [Club]'s by-laws, the [Club]'s officers (who are automatically members of the Board) and other Board directors are to be *chosen by vote* at an

> annual meeting. See Movants' Ex. 1, Art. IV § 1 and Art. VI § 1. The by-laws further provide that the Board of Directors consist of not less than 5 and no more than 15 directors. See Movants' Ex. 1, Art. IV § 1.
>
> The [Club]'s last annual meeting was held in February 2020, attended by 92 individuals according to the sign-in sheet. See Movants' Ex. 4. The February 2020 meeting was described by some witnesses as chaotic, a fiasco, and a joke. The Court credits the testimony of June Massee and Matthew Roman, as corroborated by the testimony of other witnesses, that although an election of officers was done by ballot at the 2020 meeting, after the officers were elected but before the remaining Board directors were chosen, Wojtczak announced that the meeting was adjourned. At that time many people left. After the adjournment of the meeting, approximately 30 people remained. Someone realized that the remaining Board directors had not yet been elected. At that point, Wojtczak essentially nominated several people to be directors, they agreed, and no one disagreed.
>
> ***5** According to the minutes of the February 2020 meeting prepared by Wojtczak, prior to the adjournment of the meeting, 4 officers had been elected by ballot. See Movants' Ex. 6. Pursuant to the [Club]'s by-laws, those officers also constituted members of the Board. See Movants' Ex. 1, Art. IV § 1. *As to the remaining purported directors of the Board, the Court finds that they were not properly elected prior to the adjournment of the annual meeting as required by the by-laws.* See Movants' Ex. 1, Art. VI § 1. At the conclusion of the 2020 meeting, therefore, there were only 4 properly elected Board members. However, the by-laws require the Board to consist of at least 5 members. See Movants' Ex. 1, Art. IV, § 1. No annual meetings were conducted to elect officers or directors of the Board after the February 2020 meeting. Accordingly, the Court finds and rules that the corporate resolutions were not signed by a properly constituted Board and the filing of the [Club]'s Bankruptcy Case was therefore not authorized.

Id. at 207-08 (emphasis added) (footnotes omitted).

In a footnote at the end of the decision, the bankruptcy court denied the Trustee's request to condition dismissal upon payment of administrative expenses, stating:

> In addition to opposing dismissal of the Bankruptcy Case, the Trustee has also asked the Court to require *the moving shareholders* to reimburse the Trustee for his time and expenses incurred in the case *in defending the shareholders' various motions*. The Trustee has cited to no authority in support of such a request, and the Court will not invoke its powers under 11 U.S.C. § 105(a) or its general equitable powers to award the Trustee reimbursement of his legal fees and expenses.

Id. at 208 n.5 (emphasis added).

## IV. The Trustee's Request for Reconsideration

### A. Motion to Reconsider

Eleven days later, the Trustee filed a motion seeking reconsideration of the Dismissal Order under Rules 59(e) and 60(b) (the "Motion to Reconsider"). The Trustee argued that, because he did "not anticipate" that the bankruptcy court "would hinge its decision on whether the 2020 annual meeting had been adjourned before the election of directors," reconsideration was warranted so he could introduce affidavits by six shareholders of the Club as "new evidence" regarding when the meeting was adjourned. The Trustee further emphasized that although the Club's bylaws called for an election of directors by ballot, the "actual practice" was for the Club's president to appoint directors as needed to constitute the Board.

The Trustee also asked the court to reconsider the denial of his request to condition the dismissal of the petition upon the Club's payment of administrative expenses to the Trustee and his counsel.[8] He argued that: (1) he acted in "good faith reliance" on the validity of the Resolution; (2) by the time the Motion to Dismiss was filed, he and his counsel had already spent over 61 hours of time in the case, and a motion to sell the Property had already been "in the works" for months; (3) the bankruptcy court had authority under § 105 to condition the dismissal upon payment of administrative expenses; and (4) his request was also supported by "analogous case law" under the equitable theory of quantum meruit citing, among others, In re Jankowski, 382 B.R. 533 (Bankr. M.D. Fla. 2007) (awarding quantum meruit compensation to the trustee for carrying out his duties under § 704 before case was dismissed).

8 In a footnote, the Trustee characterized his request as follows:

> Specifically, the Trustee requested that after the filing with the Court of an application for fees and expenses, and the Court's review and allowance of same, that the [Club] grant a mortgage on its real estate located at 13 Norman Street, Chicopee, Mass., to secure payment of the allowed administrative expenses no later than one year from the date of dismissal.

### B. Appellees' Opposition to Motion to Reconsider

***6** The Appellees opposed the Trustee's request for reconsideration on the basis of "newly discovered evidence," arguing that the information contained in the "new" affidavits "could have been learned earlier by reasonable diligence." The Appellees also urged the bankruptcy court to deny reconsideration of the Trustee's request for payment of administrative expenses. Emphasizing that the Trustee had offered no legal authority at trial to support his initial request, the Appellees asserted that his newly advanced theory of quantum meruit was unpersuasive as there was no evidence the Trustee had provided "valuable" services to the estate.

### C. Order Denying Reconsideration

After a hearing, the bankruptcy court entered an order denying the Motion to Reconsider (the "Order Denying Reconsideration"). The court explained that the question of whether the bankruptcy filing "was authorized by a duly elected Board of Directors was known to the Trustee prior to and during the trial," and he "was given ample opportunity to raise any legal arguments in opposition to the Motion to Dismiss and specifically declined to file a posttrial brief to address any further legal arguments in light of testimony adduced at trial." It also rejected the Trustee's proffer of "new evidence" as he had failed to demonstrate it was previously unavailable to him through reasonable diligence. "As to the Trustee's arguments regarding payment of his legal fees," the court ruled, "the cases cited by the Trustee [we]re factually distinguishable and largely relied on specific provisions of the Bankruptcy Code in ruling that a Chapter 7 trustee was entitled to recovery and payment of fees."

### V. The Appeal

This appeal followed. The Trustee's requests to the bankruptcy court and the Panel for a stay pending appeal were denied.

## POSITIONS OF THE PARTIES

### I. The Trustee

The Trustee's sole challenge to the dismissal of the Club's petition is that it was based on a clearly erroneous finding that the Board was not elected before the 2020 annual meeting was adjourned. He claims that the bankruptcy court erred by relying on the testimony of June Massee, Matthew Roman, Kevin Juchno, and Marian Zielinski, all of whom, he contended, lacked credibility due to their "acrimonious" relationship with Dorothy Wojtczak and/or their "questionable recall" of the events that took place at the 2020 annual meeting. The bankruptcy court, the Trustee insists, should have focused instead on the conflicting testimony of Dorothy Wojtczak, Alice Pasterczyk, and Anton Zamachaj that the 2020 annual meeting was not adjourned until after the Board members were selected. He also points to the Change of Directors Certificate which, he claims, "confirms" that the individuals who signed the Resolution were valid Board members. Although the Change of Directors Certificate suggests that the directors' terms expired in February 2021, he contends, because there was no annual meeting or election of a new Board in 2021, those directors "continued to serve" as set forth in Mass. Gen. Laws ch. 155D, § 8.05(e) (providing that "[d]espite the expiration of a director's term, he shall continue to serve until his successor is elected and qualified").[9]

[9] We question the Trustee's reliance on Mass. Gen. Laws ch. 155D, § 8.05(e), as that provision does not appear to apply to "[special] purpose" corporations such as the Club, which is governed by Mass. Gen. Laws ch. 180. Even if this statute were applicable, however, it would have no bearing on the outcome of this appeal. The Trustee raises the "director holdover" provision to argue that the directors who were elected in 2020 continued to serve at the time the Resolution was signed. Having determined that the directors were not properly elected during that meeting, the bankruptcy court never reached this issue. Moreover, the Trustee did not raise the "director holdover" statute to argue that, even if the directors were not validly elected at the *2020* annual meeting, then the directors who were elected at the *2019* annual meeting continued to serve at the time the petition was filed. Even if he had raised this argument, however, there is nothing in the record showing that any of the individuals (except for one) who signed the Resolution were elected as directors in 2019.

***7** The Trustee also argues that the bankruptcy court "should have allowed" the Motion to Reconsider. He

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

reiterates his arguments below that he was not given "fair notice" of the Appellees' allegation that the 2020 annual meeting was adjourned prior to the election of directors, and he should have been allowed to "provide new evidence ... regarding this issue."

Finally, the Trustee contends that the bankruptcy court, as a court of equity, should have "conditioned" the dismissal of the case on the Club's payment of administrative expenses incurred by the Trustee and his counsel. The Trustee emphasizes, as he did in the Motion to Reconsider, that he had relied in good faith upon the Resolution as authority for the Club's bankruptcy filing and that, given the time he and his counsel had spent administering and prosecuting the case, it would have been "just and equitable" for the court to allow administrative expenses. Other than a brief reference to § 105, the Trustee does not cite any other legal authority to support his position.

**II. The Appellees**

The Appellees counter that the bankruptcy court committed no error when it dismissed the Club's petition because the Board was not duly elected and, thus, had no legal authority to sign the Resolution. Emphasizing that the Panel must give "due regard to the trial court's opportunity to judge the credibility of witnesses," the Appellees assert that although there was some conflicting evidence as to whether the Board was properly elected at the 2020 annual meeting, the Trustee does not point to any "significant error" in the bankruptcy court's credibility determinations and weighing of the evidence. As the bankruptcy court's "decision about what testimony and documents to credit was amply supported by the evidence," the court's findings "should stand," they argue.

The Appellees also argue that the bankruptcy court correctly denied the Motion to Reconsider, as the Trustee had due notice of their allegation that the Board was not properly elected at the 2020 annual meeting. Further, the Appellees contend, the bankruptcy court correctly determined that the "new evidence" proffered by the Trustee "could have been known at the time of the original hearing by exercise of reasonable diligence, and should have been presented prior to the ruling ...."

Finally, the Appellees urge us to "[d]eny the Trustee's request for fees." They highlight that the Trustee cited no legal authority to support his initial request at the conclusion of the trial, nor has he cited any legal authority for that request in his appellate brief, other than a brief reference to § 105. Moreover, they contend, the Trustee does not explain "how his activities benefitted the Debtor, its estate, or its creditors."

In the prayer for relief set forth at the end of their brief, the Appellees also ask us to award them "attorneys fees and costs, based on the Trustee filing a frivolous appeal, without reasonable legal or factual grounds to do so."

**APPELLATE JURISDICTION**

We have jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, ––– U.S. ––––, 140 S. Ct. 582, 587, 205 L.Ed.2d 419 (2020). A bankruptcy court order dismissing a chapter 7 bankruptcy petition is a final order. Asociación de Titulares de Condominio Castillo v. DiMarco (In re Asociación de Titulares de Condominio Castillo), 581 B.R. 346, 354 (B.A.P. 1st Cir. 2018). Because the Dismissal Order is final, the Order Denying Reconsideration is also a final order. See id. ("A bankruptcy court order denying a motion to alter a judgment under Rule 59(e) or to set aside a judgment under Rule 60(b) is a final order 'if the underlying order is final and together the orders end the litigation on the merits.' ") (citation omitted). Therefore, we have jurisdiction to review both orders.

**STANDARDS OF REVIEW**

***8** We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016). Typically, a bankruptcy court's dismissal of a chapter 7 petition is reviewed for an abuse of discretion. See In re Eldorado Canyon Props., LLC, 505 B.R. 601, 603 (B.A.P. 1st Cir. 2014). Here, however, the bankruptcy court dismissed the chapter 7 petition because it was not duly authorized by a properly constituted board of directors. Whether a corporate agent had the requisite authority to file a bankruptcy petition on the corporation's behalf is a legal question which is reviewed de novo. See Keenihan v. Heritage Press, Inc., 19 F.3d 1255, 1258 (8th Cir. 1994); Squire Ct. Partners Ltd. P'ship v. Centerline Credit Enhanced Partners LP Series J (In re Squire Ct. Partners Ltd. P'ship), 574 B.R. 701, 705 (E.D. Ark. 2017). If the corporate agent lacked authority to file a bankruptcy petition, the court has no discretion and must dismiss the

petition. Price v. Gurney, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945)

The Trustee argues that the bankruptcy court's determination that the bankruptcy filing was unauthorized was based on an erroneous factual finding. We review the court's factual findings for clear error. See Nevor v. Moneypenny Holdings, LLC, 842 F.3d 113, 117 (1st Cir. 2016) ("In the aftermath of a bench trial, we review the [trial] court's factual findings for clear error.") (citation omitted). Under the clearly erroneous standard, factual findings will be set aside "only if, on the entire evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been committed." Id. (citation and internal quotation marks omitted). "[I]f there are a couple of plausible ways to view the evidence, the judge's preference for one over the other cannot be clear error." Toye v. O'Donnell (In re O'Donnell), 728 F.3d 41, 45 (1st Cir. 2013) (citation omitted); see also Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

An order denying a motion for reconsideration is reviewed for abuse of discretion. Rodriguez Camacho v. Doral Fin. Corp. (In re Rodriguez Camacho), 361 B.R. 294, 299 (B.A.P. 1st Cir. 2007). Typically, a bankruptcy court's decision on whether to award compensation to a chapter 7 trustee or the trustee's counsel is also reviewed for abuse of discretion. See Michel v. Beard (In re Beard), 45 F.3d 113, 118 (6th Cir. 1995) (stating that "the statutory framework allows the courts a rather broad measure of discretion to allow 'reasonable compensation' to a Chapter 7 ... bankruptcy trustee") (citing 11 U.S.C. §§ 105(a), 326(a), 330(a)); Daikin Mia. Overseas, Inc. v. Lee, Schulte, Murphy & Coe, P.A. (In re Daikin Mia. Overseas, Inc.), 868 F.2d 1201, 1208 (11th Cir. 1989) ("The determination of attorneys' fees in a bankruptcy proceeding is normally left to the sound discretion of the bankruptcy judge unless the bankruptcy judge abuses his discretion.") (citation omitted). We may set aside a bankruptcy court's discretionary ruling if the court "relie[d] upon an improper factor, neglect[ed] a factor entitled to substantial weight, or consider[ed] the correct mix of factors but ma[de] a clear error of judgment in weighing them." Mercado v. Combined Invs., LLC (In re Mercado), 523 B.R. 755, 761 (B.A.P. 1st Cir. 2015) (quoting Bacardí Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013)).

## DISCUSSION

### I. The Bankruptcy Court Did Not Err in Dismissing the Chapter 7 Petition

#### A. Dismissal of Chapter 7 Petition for Lack of Corporate Authority

Section 707(a) provides that the bankruptcy court "may" dismiss a chapter 7 case "for cause." See 11 U.S.C. § 707(a). The Bankruptcy Code does not define "cause," but courts have held that "[c]ause for dismissal exists where a business entity lacks authority to file a bankruptcy petition." In re Or. Homes, LLC, No. 13-33349, 2014 WL 4794861, at *2 (Bankr. N.D. Ohio Sept. 25, 2014) (citing, among others, Price, 324 U.S. at 106, 65 S.Ct. 513); see also In re Innocenti, LLC, No. 15-30690 HLB, 2016 WL 3483228, at *3 (Bankr. N.D. Cal. June 20, 2016). Although the bankruptcy court typically has discretion to determine whether cause exists to dismiss a chapter 7 petition, see Wilk Auslander LLP v. Murray (In re Murray), 900 F.3d 53, 57 (2d Cir. 2018), "if the [bankruptcy court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." Price, 324 U.S. at 106, 65 S.Ct. 513; see also In re Real Homes, LLC, 352 B.R. 221, 225 (Bankr. D. Idaho 2005) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.") (citations omitted). "The burden of demonstrating cause for dismissal for lack of authority to file is on the movant." In re Curare Lab. LLC, 642 B.R. 787, 802 (Bankr. W.D. Ky. 2022) (citation and internal quotation marks omitted); see also In re Quad-C Funding LLC, 496 B.R. 135, 142 (Bankr. S.D.N.Y. 2013) (holding that party seeking dismissal for lack of authority to file the petition bears the burden of proof).

#### B. Massachusetts Law and the Club's Bylaws

*9 State law typically governs a corporation's authority to file a bankruptcy petition. See Hager v. Gibson, 188 B.R. 194, 197 (E.D. Va. 1995) ("If the corporation is incorporated under state law, then the ... court must look to state law to decide whether the authority to file bankruptcy existed."), aff'd, 108 F.3d 35 (4th Cir. 1997); see also Thompson v. Daluise (In re Wet-Jet Int'l, Inc.), 235 B.R. 142, 148 (Bankr. D. Mass. 1999) ("The source of a corporation's authority to file a bankruptcy petition is found in state law, not in the Bankruptcy Code.") (citation omitted). Here, the bankruptcy court concluded that

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

Chapter 180 of the Massachusetts General Laws ("Chapter 180") applies to the Club, "since the stated purpose of the [Club] corresponds to the purposes defined in Chapter 180, § 4(a), (f), and (i) (namely, the [Club] was formed for any civic, educational, charitable, benevolent purposes, athletic purposes, and for the establishment and maintenance of places for reading rooms, libraries or social meetings)." Neither party challenges that determination and, based on the record before us, we discern no error.

Chapter 180 does not specifically address who has the authority to file a bankruptcy case on behalf of a corporation subject to its provisions. Sections 6A and 17 of Chapter 180, however, grant a corporation the power to determine the duties and powers of the officers and directors through its bylaws. See Mass. Gen. Laws ch. 180, § 6A (providing that "[a] corporation may prescribe by its by-laws the manner in which and the officers and agents by whom its purposes may be accomplished") and § 17 (providing that "[t]he by-laws shall contain clear and distinct provisions relative to ... the titles, duties, powers and tenure of the officers of the corporation and their election and removal").

There is no dispute that the Club is governed by its original bylaws, which were enacted when the Club was formed in 1927.[10] Article IV, § 2 of the Club's bylaws, entitled "Directors," provides, in relevant part:

> *The Board of Directors shall transact all business of the Club and may exercise all powers of the corporation except such as are conferred by the law or by these by-laws upon the stockholders.* It shall make rules and regulations to govern its own meetings, it may fill vacancies, choose standing and special committees of its own number *for facilitating the work and welfare of the Club*.
>
> ....
>
> One-third Directors of the Board shall constitute a quorum at any meeting of the Board.

(emphasis added).

10 Although there was some testimony at trial suggesting that the original 1927 bylaws may have been amended, there is no evidence in the record as to the nature of any such amendments (other than an amendment prohibiting more than one family member from serving on the Board) or when or how they were made. The record reflects that the bankruptcy court considered the 1927 bylaws to be controlling and no challenges to that determination have been made in this appeal. Moreover, both parties agreed at oral argument that the Club is governed by the 1927 bylaws. Therefore, we also consider the 1927 bylaws to be the controlling document for the Club.

While the bylaws do not explicitly reference the filing of a bankruptcy petition or explicitly confer authority for the filing of such petitions, the act of filing a bankruptcy petition may properly be viewed as an act "facilitating the work and welfare of the Club" within the meaning of the bylaws, to the extent that bankruptcy would promote the proverbial "fresh start" of the Club. See In re Wolf, 739 F. App'x 165, 169 (3d Cir. 2018) ("Bankruptcy allows individuals and corporations to recover from difficult circumstances, and provides a fresh start to those who need it."). Additionally, as the Massachusetts bankruptcy court has recognized, "[s]tatutes with similar language [authorizing the board of directors to conduct the business of the corporation] have been held to authorize the board of directors to file a petition in bankruptcy." In re N2N Com., Inc., 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (quoting In re Arkco Props., Inc., 207 B.R. 624, 628 (Bankr. E.D. Ark. 1997)). Further, the Club's bylaws do not explicitly restrict the authority of the Board to file a bankruptcy petition and there is no authority in the bylaws that would permit anyone, other than the Board of Directors, to authorize the filing of a bankruptcy petition. Therefore, the validity of the filing of the Club's chapter 7 petition was "fully dependent" on whether the Resolution authorizing that filing was made by a "duly elected, properly constituted Board of Directors." See In re Wet-Jet Int'l, Inc., 235 B.R. at 148 (stating that where only the board of directors has authority to file a bankruptcy petition, the "validity" of a bankruptcy filing is "fully dependent" on whether the filing was authorized by a "duly elected, properly constituted Board of Directors").

***10** To determine whether the Resolution was signed by a "duly elected, properly constituted Board of Directors," we again turn to Massachusetts law and the Club's bylaws. Section 6A of Chapter 180 provides that a "corporation may by its by-laws determine ... the tenure of office of the directors and officers and the manner of their selection and removal[.]" Mass. Gen. Laws ch. 180, § 6A. Article V, § 1 of the Club's bylaws requires the Club to hold an annual meeting of its stockholders, and Article VI, § 1, which outlines the "order of business" to be conducted at the annual meetings, includes the "[e]lection of directors and other officers" as an agenda item. Article IV, § 1, entitled "Officers," further provides:

> The officers of this Club shall be a Board of not less than five (5) and not more than fifteen (15) directors, a President, a Vice-President, a Treasurer, [a] Clerk, and

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

> a Financial Secretary, all of whom shall belong to the Board of Directors.
>
> All the above officers shall be chosen by ballot at the annual meeting, with the exception of the President and the Vice-President, who shall be chosen by the Directors at the first meeting of the Board.
>
> All officers shall hold office for one year and until their successors are chosen and qualified.

The bankruptcy court interpreted these provisions to mean there must be at least five and no more than fifteen members of the Board of Directors—which automatically include the president, vice president, treasurer, clerk, and financial secretary—and all "officers ... and other Board directors" must be "chosen by vote" at the annual meeting. In re Polish-Am. Citizens Club Inc. 642 B.R. at 207. The bankruptcy court's interpretation of the Club's bylaws has not been disputed.

The bankruptcy court ultimately concluded that only the four officers who were elected by ballot at the 2020 annual meeting (Dorothy Wojtczak as president, Carl Schreiber as vice president, Joe Martino as treasurer, and Ron Schwalm as financial secretary) were valid members of the Board under the Club's bylaws and that the remaining purported directors "were not properly elected prior to the adjournment of the annual meeting as required by the by-laws." Id. Specifically, it found, based on the testimony of June Massee, Matthew Roman, Kevin Juchno and Marian Zielinski, that:

> [A]lthough an election of officers was done by ballot at the 2020 meeting, after the officers were elected but before the remaining Board directors were chosen, Wojtczak announced that the meeting was adjourned. At that time many people left. After the adjournment of the meeting, approximately 30 people remained. Someone realized that the remaining Board directors had not yet been elected. At that point, Wojtczak essentially nominated several people to be directors, they agreed, and no one disagreed.

Id. The bankruptcy court then ruled that, because the bylaws require the Board to have at least five members, and only the four officers were properly elected, there was not a properly constituted Board and the Club's bankruptcy case was unauthorized. Id.

## C. No Reversible Error

The Trustee's sole argument on appeal with respect to the dismissal of the Club's petition is that the bankruptcy court made a clearly erroneous finding that the 2020 annual meeting "was adjourned prior to the election of the directors." Underlying the Trustee's argument is an assumption that the bankruptcy court's determination as to the validity of the so-called "election" of directors was based solely on *when* the meeting was adjourned and not the manner in which the "election" was conducted. This assumption ignores the import of the bankruptcy court's determination that the directors "were not properly elected" under the Club's bylaws. When considering Massachusetts law and the Club's bylaws, the bankruptcy court concluded that the bylaws required all officers *and other Board members* "to be chosen by vote" at the annual meeting, a determination which has not been challenged on appeal. The court found, however, that only four officers were elected by ballot at the 2020 annual meeting, and the remaining directors were simply selected by Ms. Wojtczak without a formal ballot or vote. Therefore, the bankruptcy court's conclusion regarding the validity of the Resolution was based both on *when* the meeting was adjourned and on the manner in which the remaining directors were selected.

***11** There was much testimony at trial to support the bankruptcy court's finding that the directors were not properly elected by formal vote or ballot before the adjournment of the 2020 annual meeting as required by the bylaws. June Massee testified that after the officers and trustees were elected, the meeting was "adjourned," and no Board of Directors had been elected before the adjournment. Her testimony was corroborated by at least two shareholders—Kevin Juchno and Matthew Roman—both of whom testified that no Board members were elected before the meeting was adjourned and that, after the majority of shareholders had left, Dorothy Wojtczak simply named people to serve on the Board from those remaining. There were also several other shareholders, including Marian Zielinski and Rachel Ilnicki, who did not expressly state that the meeting had been adjourned, but did say that after the officers were elected, most of the shareholders left, and Ms. Wojtczak then selected the Board members without a formal vote.

Even Dorothy Wojtczak testified that the directors were not elected by formal vote or ballot at the 2020 annual meeting, stating: "There is no official vote for board of directors. It is a ... hand vote, or nomination of ... the board, on the floor."[11] Although Ms. Wojtczak insisted it had been many years since the Club's directors were formally elected by ballot, there was nothing in the record from which the court could have concluded that the provisions of the Club's bylaws requiring an "election" of directors had been altered or amended by shareholder vote at an annual meeting as required under Article VIII, § 3 of

the Club's bylaws.[12] Further, even if the bylaws could be amended by a course of conduct over time—as the Trustee seems to suggest without offering any legal support—several longstanding shareholders testified that before Ms. Wojtczak became president in 2019, the Club did, in fact, conduct a formal election process for the Board members, but that process was no longer followed under Ms. Wojtczak's leadership.

11 Ms. Wojtczak's testimony was consistent with the minutes of the Club's annual meeting in 2019, which reflected tallied votes for the officers but indicated the directors were selected by "hand vote" at that meeting.

12 Article VIII, § 3 of the bylaws provides: "The[se] by-laws may be changed, amended or new ones added at any meeting of the stockholders regularly called, notified and held, as provided by these by-laws, by affirmative vote of two-thirds of all stockholders present and voting."

In rendering its decision, the bankruptcy court "credit[ed] the testimony of June Massee and Matthew Roman, as corroborated by the testimony of other witnesses" such as Kevin Juchno and Marian Zielinski. The Trustee, however, argues that these witnesses lacked credibility and contends the bankruptcy court should have relied instead on conflicting testimony from Dorothy Wojtczak, Alice Pasterczyk, and Anton Zamachaj, who testified that the 2020 annual meeting was not adjourned until after the Board members were selected. Because of this conflicting evidence, the Trustee argues, the court's determination that the 2020 annual meeting was adjourned prior to the election of the directors "was clearly erroneous and should be reversed ...."

The Trustee, however, has not demonstrated that the bankruptcy court's view of the evidence was implausible and, therefore, clearly erroneous. See Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504. The bankruptcy court conducted a trial over the course of three days, heard testimony from 13 witnesses, and admitted 11 exhibits into evidence. It had the opportunity to observe the demeanor of the witnesses, assess their credibility, and weigh all the testimonial and documentary evidence presented. Without question, there was conflicting evidence supporting the Trustee's allegations that the directors were selected *before* the 2020 annual meeting was adjourned. But the existence of conflicting evidence, standing alone, is insufficient to establish that the bankruptcy court's finding was clearly erroneous. See Goat Island S. Condo. Ass'n, Inc. v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.), 727 F.3d 58, 65 (1st Cir. 2013) (declining to find clear error where there was sufficient evidence to support two plausible but conflicting findings). Further, there was ample evidence in the record to support a finding that even if the directors were selected *before* the meeting adjourned, they were not elected by formal ballot as required by the bylaws. Thus, the bankruptcy court's finding that the directors were not "properly elected" before the meeting was adjourned was "plausible" based on the entire record before the bankruptcy court and we could not overturn it even if we might have weighed the evidence differently. Devila Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 505-06 (B.A.P. 1st Cir. 2005). Affording the bankruptcy court the "due deference" to which it is entitled when weighing the evidence, see Fed. R. Civ. P. 52(a)(6), we are not left with "the definite and firm conviction that a mistake has been committed." Nevor, 842 F.3d at 117.

***12** Having concluded that the bankruptcy court's factual findings were not clearly erroneous, it necessarily follows that the bankruptcy court did not err in ruling that the Club's bankruptcy filing was not authorized by a duly elected Board of Directors and in dismissing the unauthorized petition. See Price, 324 U.S. at 106, 65 S.Ct. 513.

**II. The Bankruptcy Court Did Not Abuse its Discretion in Denying Reconsideration of the Dismissal Order**

We turn, now, to the bankruptcy court's denial of the Trustee's request for reconsideration of the Dismissal Order under Rules 59(e) and 60(b). On appeal, the Trustee reiterates his assertion in the Motion to Reconsider that he had not been given "fair notice" of the Appellees' allegation that the 2020 annual meeting was adjourned prior to the election of directors and argues that the Motion to Reconsider "should have been allowed" so that he could provide "new evidence" regarding this issue. For the reasons discussed below, we conclude that the Trustee has not satisfied his burden of demonstrating that the bankruptcy court's denial of relief under Rules 59(e) and 60(b) constituted an abuse of discretion.

It is well settled in the First Circuit that to prevail under Rule 59(e), the moving party "must either clearly establish a 'manifest error of law or fact' or must present 'newly discovered evidence.' " La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC (In re La Trinidad Elderly LP SE), 627 B.R. 779, 804 (B.A.P. 1st Cir. 2021) (citation omitted); see also Aybar v. Crispin-Reyes, 118

F.3d 10, 16 (1st Cir. 1997). "The filing of a Rule 59(e) motion," however, "does not afford the movant an opportunity to introduce evidence that was previously available." Mancini v. City of Providence, 909 F.3d 32, 48 (1st Cir. 2018) (citation omitted). Therefore, "[a] party asking a court to reconsider its judgment on this basis must show 'that [it] could not in the exercise of reasonable diligence have obtained [the] new evidence earlier.' " City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp., 46 F.4th 22, 36 (1st Cir. 2022) (citation omitted). This means that "when a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce that evidence to support a Rule 59(e) motion." In re Ortiz Arroyo, 544 B.R. 751, 757 (Bankr. D.P.R. 2015) (citation omitted).

The court may also relieve a party from a final judgment under Rule 60(b)(2) if the party presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). As with Rule 59(e), "a party who seeks relief from a judgment based on newly discovered evidence [under Rule 60(b)(2)] must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings." Fisher v. Kadant, Inc., 589 F.3d 505, 513 (1st Cir. 2009) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 19-20 (1st Cir. 2002)).

The Trustee has not offered any cogent reason why he could not, in the exercise of due diligence, have obtained the evidence contained in the six affidavits before the entry of the Dismissal Order or why he could not have anticipated the premise underlying the Motion to Dismiss. It is clear from both the joint pretrial memorandum and the Appellees' opening statement at trial that the Appellees were challenging the validity of the election of the Board of Directors. As the Club's bylaws require that the Board members be elected by ballot at the annual meeting—a determination by the bankruptcy court that the Trustee does not dispute on appeal—the Trustee could have, and should have, produced any and all evidence to refute the evidence proffered by the Appellees to establish that the Board members were not validly elected during the 2020 annual meeting. The Trustee did not argue, or demonstrate, that the "new" evidence he was seeking to proffer through the affidavits was "previously unavailable" to him and that he could not have discovered the evidence earlier "in the exercise of due diligence."

***13** In fact, the Trustee admitted in connection with the Motion to Reconsider that the six affiants " 'could' have testified at the prior hearings" on the Motion to Dismiss, but that, "[o]ut of respect for the Court's time," he would not present "numerous witnesses [to] testify to the same effect ...." Therefore, by his own admission, the Trustee's failure to introduce the evidence earlier was a strategic litigation choice, not the result of unavailability of evidence. And, in any event, courts have held that new evidence "which at best is merely cumulative" of previously submitted evidence or which merely "corroborat[es]" prior allegations does not satisfy Rule 60(b)(2). See Giroux v. Fed. Nat'l Mortg. Ass'n, 810 F.3d 103, 107 (1st Cir. 2016) (citation and internal quotation marks omitted).

We conclude, therefore, that the bankruptcy court did not abuse its discretion in rejecting the Trustee's belated effort to produce additional evidence regarding the adjournment of the 2020 annual meeting after the entry of the Dismissal Order by way of a Motion to Reconsider.

**III. The Bankruptcy Court Did Not Abuse its Discretion by Declining to Condition Dismissal of the Bankruptcy Case on the Payment of Administrative Expenses Incurred by the Trustee and his Counsel**

The Trustee's final argument on appeal is that the bankruptcy court should have "conditioned" the dismissal of the bankruptcy petition on the Club's payment of at least a portion of the "administrative expenses" incurred by the Trustee and his counsel in the administration of the estate. As in his initial request in the proceedings below, the Trustee does not cite any statutory authority to support his argument, except for a brief reference to § 105. When requesting payment of administrative expenses, however, he repeatedly references the number of hours he and his counsel had collectively spent administering the estate, marketing the Property for sale to maximize payments to creditors, and defending the Appellees' motions. Under § 503(b)(2), both the Trustee's compensation and his counsel's fees and expenses incurred in the administration of the bankruptcy estate would constitute "administrative expenses," if allowed. See 11 U.S.C. § 503(b)(2) (providing that "compensation and reimbursement awarded under [§] 330" are "allowed administrative expenses"); Law v. Siegel, 571 U.S. 415, 422, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) (recognizing that reasonable attorney's fees incurred by the trustee "were indubitably an administrative expense"); Boldt v. Crake (In re Riverside-Linden Inv. Co.), 945 F.2d 320, 324 (9th Cir. 1991) (recognizing allowed trustee's fees are administrative expenses under § 503(b)(2)). Therefore, we

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

construe the Trustee's request for payment of administrative expenses as one for allowance and payment of both his compensation and his counsel's fees and expenses.

**A. Statutory Provisions Governing Compensation for Chapter 7 Trustees and Professionals**

Requests for payment of compensation and expenses by the estate are governed by § 330, which provides that the bankruptcy court "may award to a trustee ... or any professional persons employed under § 327 ... reasonable compensation for actual, necessary services rendered." See 11 U.S.C. § 330(a). Compensation is reasonable if, among other things, "the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a [bankruptcy] case ...." See 11 U.S.C. § 330(a)(3)(C). Consequently, the fact that a case "was ultimately dismissed does not [automatically] render the trustee's [or his counsel's] efforts unnecessary."[13] In re Jankowski, 382 B.R. at 545.

13 Although dismissal does not render a trustee's efforts unnecessary, § 326(a) limits a chapter 7 trustee's "reasonable" compensation under § 330 (but not that of his counsel) "to a percentage of the funds disbursed by the trustee." Checks Cashed for Less v. Kipperman, No. 11cv2383 BTM( ), 2012 WL 2723027, at *3 (S.D. Cal. July 9, 2012). Thus, if, as here, a chapter 7 case is dismissed before the trustee distributes any funds, "the plain language of § 326(a) directs that ... the trustee's maximum compensation ... [is] $0." In re Mingledorff, No. 12-41543-EJC, 2015 WL 3897374, at *5 (Bankr. S.D. Ga. June 23, 2015). Some courts, however, eschew a strict reading of § 326(a) and award compensation to chapter 7 trustees in unadministered cases based on equitable considerations. See, e.g., In re Jankowski, 382 B.R. at 542-45 (applying quantum meruit principles to award compensation to chapter 7 trustee for carrying out his duties before case was dismissed). Here, however, the bankruptcy court did not reach the question of whether the Trustee and his counsel were entitled to compensation under § 330 or whether the Trustee's compensation was limited by § 326(a) as they failed to follow the mandatory procedural requirements for requesting such relief, as discussed below.

***14** Court approval is mandatory for all awards of compensation and fees from the estate, and trustees and professionals seeking such compensation are *required* to submit fee applications setting forth a detailed explanation of the services rendered, time expended, expenses incurred, and the amounts requested. See Fed. R. Bankr. P. 2016(a) (providing that entities seeking compensation "shall" file applications which are subject to a noticed hearing prior to allowance or payment of fees); In re Par 5 Prop. Invs., LLC, No. 21-22404-A-11 MF-2, 2022 Bankr. LEXIS 3045, at *21 (Bankr. E.D. Cal. Oct. 26, 2022) (recognizing that § 330 is implemented by Bankruptcy Rule 2016, which requires professionals to file applications for compensation); see also Scotiabank de P.R. v. Burgos (In re Plaza Resort at Palmas, Inc.), 741 F.3d 269, 276 n.9 (1st Cir. 2014) (recognizing, in a different statutory context, that "shall" is a "mandatory verb").

**B. Review of the Bankruptcy Court's Ruling**

Here, although the Trustee and his counsel sought to "condition" dismissal on the Club's payment of "administrative expenses" they incurred in the administration of the estate, they did so through an oral request made at the end of trial, and not through a formal motion or application. They never filed fee applications detailing the compensation requested as required by Bankruptcy Rule 2016(a) or requested additional time to do so. Nor did the Trustee at any point cite § 330 as the legal basis for his requested relief. The bankruptcy court having denied his request for attorney's fees and costs as sanctions against the Appellees due, in part, to his failure to cite any supporting legal authority, the Trustee was clearly on notice that any further request for payment of attorney's fees and expenses should identify the relevant legal basis for the requested relief. The Trustee also failed to make clear, in his oral request at the close of trial, that he was not seeking payment of attorney's fees and expenses *from the Appellees*—as asserted in the Sanctions Motion—but rather compensation *from the estate*.

The bankruptcy court appears to have misconstrued the Trustee's verbal request at the end of trial as a *renewed* request to impose monetary sanctions *against the Appellees* in the amount of his attorney's fees and expenses incurred in defending against their various motions, as set forth in his initial Sanctions Motion, rather than a new request for compensation under § 330. This interpretation of the Trustee's request is at odds with the record. We conclude, however, that the mischaracterization is harmless, as the court had no obligation (or authority) to consider an oral request for compensation in the absence of a formal fee application as mandated by Bankruptcy Rule 2016(a). Nor was the bankruptcy court required to delay the dismissal of the case to afford the Trustee and his counsel an opportunity

to file fee applications so that the court could evaluate whether they were entitled to compensation, in whole or part, under §§ 330 and 326, or to remind them of their obligation to do so. The bankruptcy court has "a rather broad measure of discretion" when considering whether to award compensation to a chapter 7 trustee or the trustee's professionals. See In re Beard, 45 F.3d at 118. Under these circumstances, we conclude that the bankruptcy court did not abuse its discretion in denying the Trustee's request to condition the dismissal upon payment of administrative expenses incurred by the Trustee and his counsel.[14]

14 Despite this conclusion, we recognize that it may have been possible for the Trustee and/or his counsel to file fee applications with the bankruptcy court despite the dismissal of the bankruptcy case. We do not opine, however, on the bankruptcy court's jurisdiction to consider any such fee application in the absence of a specific retention of jurisdiction in the Dismissal Order, whether an award of compensation and expenses would have been warranted under §§ 330 and 326(a), or whether the Trustee and his counsel would have been able to recover any allowed compensation and expenses from the Club.

**IV. Appellees' Request for Attorney's Fees and Costs for a Frivolous Appeal**

***15** In their brief, the Appellees ask us to award them attorney's fees and costs, "based on the Trustee filing a frivolous appeal, without reasonable legal or factual grounds to do so." Although the Appellees do not cite any legal authority for this relief, we construe their request as one for damages and costs for a frivolous appeal under Bankruptcy Rule 8020 (providing that if the "BAP determines that an appeal is frivolous, it may, *after a separately filed motion* ..., award just damages and single or double costs to the appellee") (emphasis added). Bankruptcy Rule 8020 expressly requires that sanctions be requested by a "separately filed motion." See id. This requirement "is strict, and failure to comply results in the denial of the request for sanctions." Reyes Rivera v. Bracetty Matos (In re Reyes Rivera), 494 B.R. 101, 107 (B.A.P. 1st Cir. 2013); see also Sirikanjanachai v. Town of Hingham (In re Sirikanjanachai), 628 B.R. 562, 571 (B.A.P. 1st Cir. 2021) (denying appellee's request for costs under Bankruptcy Rule 8020 due to its "failure to comply with the rule's separate motion requirement"). As the Appellees did not file a separate motion, their request for attorney's fees and costs is **DENIED**.[15]

15 The Appellees may still seek reimbursement of their costs in the bankruptcy court under Bankruptcy Rule 8021. See Fed. R. Bankr. P. 8021 (providing that certain costs of appeal are taxable in bankruptcy court against appellant if judgment is affirmed); see also In re Sirikanjanachai, 628 B.R. at 571 n.8.

**CONCLUSION**

For the reasons set forth above, we **AFFIRM** the Dismissal Order, including the bankruptcy court's denial of the Trustee's request to condition the dismissal on payment of administrative expenses incurred by the Trustee and his counsel. We also **AFFIRM** the Order Denying Reconsideration. The Appellees' request for reimbursement of attorney's fees and costs is **DENIED**.

**All Citations**

Slip Copy, 2023 WL 4259266, 72 Bankr.Ct.Dec. 166

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| |
|---|
| In re:<br><br>WESTBOROUGH SPE LLC |

LIST OF EXHIBITS

Pursuant to Rule 5 of Appendix 8 of the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the District of Massachusetts, the Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby lists the exhibits that are filed separately in conjunction with the Town's Motion to Dismiss Bankruptcy Case:

| **Exhibit** | **Description** | **No. of Pages (with cover sheet)** |
|---|---|---|
| A | Quitclaim Deed | 5 |
| B | MA Certificate of Registration | 4 |
| C | LLC Agreement | 20 |
| D | MA Certificate of Withdrawal | 3 |
| E | BBAS Resignation | 2 |
| F | DE Administrative Dissolution | 2 |
| G | Babcock & Brown Withdrawal | 3 |
| H | VI Gazette, excerpted | 4 |
| I | Search Report | 3 |
| J | Instrument of Taking | 2 |
| K | Tax Foreclosure Complaint | 3 |
| L | Tax Foreclosure Judgment | 2 |
| M | DE Certificate of Revival | 3 |
| N | Dec. 6, 2022 Email | 2 |
| O | Smart Investors MD Documents | 9 |

| | | |
|---|---|---|
| P | Akouete LinkedIn | 3 |
| Q | Akouete Exs. 2 and 3 | 3 |
| R | MA Application for Registration | 5 |
| S | Staples.com Printout | 3 |
| T | M. Morris Email | 4 |
| U | Jan. 13, 2023 Email | 2 |
| V | Bill of Sale | 3 |
| W | Motion to Vacate | 13 |
| X | In re Blaustein Docket | 5 |
| Y | Waiver of Notice and Consent to Conservatorship | 3 |
| Z | Affidavit of Peter L. Blaustein | 3 |
| AA | Jan. 7, 2023 Email | 2 |
| BB | iMessage Screenshots | 11 |
| CC | 2022 LLC Agreement | 14 |
| DD | Opposition without Exhibits | 40 |
| EE | Land Court Docket | 11 |
| FF | Sept. 15, 2022 Text | 2 |
| GG | CA Decision | 3 |
| HH | June 29, 2023 Email | 3 |
| II | Dec. 1, 2023 Email Chain | 5 |
| JJ | Dec. 16, 2023 Email | 2 |
| KK | Dec. 26, 2023 Email Chain | 4 |

899234/WBOR/0049

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

LIST OF EXHIBITS

Pursuant to Rule 5 of Appendix 8 of the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the District of Massachusetts, the Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby lists the exhibits that are filed separately in conjunction with the Town's Motion to Dismiss Bankruptcy Case:

| **Exhibit** | **Description** | **No. of Pages (with cover sheet)** |
|---|---|---|
| A | Quitclaim Deed | 5 |
| B | MA Certificate of Registration | 4 |
| C | LLC Agreement | 20 |
| D | MA Certificate of Withdrawal | 3 |
| E | BBAS Resignation | 2 |
| F | DE Administrative Dissolution | 2 |
| G | Babcock & Brown Withdrawal | 3 |
| H | VI Gazette, excerpted | 4 |
| I | Search Report | 3 |
| J | Instrument of Taking | 2 |
| K | Tax Foreclosure Complaint | 3 |
| L | Tax Foreclosure Judgment | 2 |
| M | DE Certificate of Revival | 3 |
| N | Dec. 6, 2022 Email | 2 |
| O | Smart Investors MD Documents | 9 |

| | | |
|---|---|---|
| P | Akouete LinkedIn | 3 |
| Q | Akouete Exs. 2 and 3 | 3 |
| R | MA Application for Registration | 5 |
| S | Staples.com Printout | 3 |
| T | M. Morris Email | 4 |
| U | Jan. 13, 2023 Email | 2 |
| V | Bill of Sale | 3 |
| W | Motion to Vacate | 13 |
| X | In re Blaustein Docket | 5 |
| Y | Waiver of Notice and Consent to Conservatorship | 3 |
| Z | Affidavit of Peter L. Blaustein | 3 |
| AA | Jan. 7, 2023 Email | 2 |
| BB | iMessage Screenshots | 11 |
| CC | 2022 LLC Agreement | 14 |
| DD | Opposition without Exhibits | 40 |
| EE | Land Court Docket | 11 |
| FF | Sept. 15, 2022 Text | 2 |
| GG | CA Decision | 3 |
| HH | June 29, 2023 Email | 3 |
| II | Dec. 1, 2023 Email Chain | 5 |
| JJ | Dec. 16, 2023 Email | 2 |
| KK | Dec. 26, 2023 Email Chain | 4 |

899234/WBOR/0049

# Exhibit A

129560

BOOK 19389 PAGE 95

25 hrs

QUITCLAIM DEED

LESLIE S. CAREY, as she is Trustee of NORTHSIDE REALTY TRUST under Declaration of Trust dated January 14, 1994 duly recorded with the Worcester District Registry of Deeds on January 14, 1994 in Book 15975, Page 213 having an address c/o New England Management and Realty Corporation, 55 New York Avenue, Framingham, Massachusetts 01701

97 NOV 21 PM 2:19

for consideration paid and in consideration of Nine Million and One Hundred Fifty One Thousand Four Hundred and Forty Nine Dollars and 00/100 ($9,151,449.00)

grants to WESTBOROUGH SPE LLC, a Delaware Limited Liability Company with a principal place of business at c/o Babcock & Brown Administrative Services, Inc., Two Harrison Street, San Francisco, CA 94105

with Quitclaim Covenants, the following described property:

that certain parcel of land, together with any buildings and improvements thereon, located at 231 Turnpike Road, in the Town of Westborough, Worcester County, Massachusetts, which are shown as Lot #1 on a plan entitled "Plan of Land in Westborough, Worcester County, ...", dated April 11, 1997, prepared by Beals and Thomas, Inc. recorded with the Worcester District Registry of Deeds, Plan Book 714, Plan 77 and being more particularly bounded and described according to said plan on Exhibit A attached hereto and made a part hereof.

Route 135 at Route 9, Westborough, MA

Said Lot 1 contains 1,277,351 square feet more or less, or 29.324 acres, more or less, according to said plan.

Said Premises are conveyed subject to and together with the benefit of easements, restrictions and other matters of record, insofar as in force and applicable.

Without limitation, said premises are conveyed together with the following:

(i) rights and easements set forth in that certain Declaration of Reciprocal Covenants, Easements and Restriction dated April 9, 1997 and recorded with said Deeds in Book 18745, Page 313 as being for the benefit of said Lot 1 and subject to the rights, easements and restrictions set forth therein as the same affect Lot 1, which are reserved for the benefit of Lots 2 and 3 as shown on said Plan, and (ii) Utility Easement "A", Utility Easement "B" and Utility Easement "D" all as shown on Plan Book 710, Plan 91.

**GOULD & ETTENBERG, P.C.**
**370 Main Street**
**Worcester, MA 01608**
**Tel: (508) 752-6733**

GUARANTY ABSTRACT CO
Vol 151 Pg 98

Said Premises are conveyed subject to real estate taxes due the Town of Westborough for the 1998 tax fiscal year, which the Grantee hereof assumes and agrees to pay by the acceptance and recording of this deed.

The undersigned hereby certify that (i) Northside Realty Trust is in full force and effect and has not been amended, rescinded or terminated, (ii) that the undersigned is a trustee of the trust and (iii) that the undersigned has been directed by all of the beneficiaries of said trust to execute, seal, acknowledge and deliver this deed.

Grantor intends to convey and does hereby convey a portion of the premises conveyed to Grantor by Deed of Stanley Miller, Trustee dated April 13, 1994 recorded with the Worcester District Registry of Deeds Book 16210, Page 372.

EXECUTED as a sealed instrument the 31st day of October, 1997.

Leslie S. Carey, TEE
Leslie S. Carey, Trustee of
Northside Realty Trust,
and not individually

THE COMMONWEALTH OF MASSACHUSETTS

Suffolk
~~Middlesex~~, ss. October 31, 1997

Then personally appeared before me the above named Leslie S. Carey as she is Trustee of Northside Realty Trust and acknowledged the foregoing instrument to be his free act and deed, before me,

[signature]
~~Kenneth Miskiewicz~~ - Notary Public
My Commission Expires: 5/19/2000
KENNETH J. MISKIEWICZ

DEEDS REG 20
WORCESTER

11/21/97

TAX 41730.84
CASH 41730.84

5032A140 14:02
EXCISE TAX

BOOK 19369 PAGE 77

EXHIBIT A

METES AND BOUNDS DESCRIPTION

Lot 1
Westborough, Massachusetts
W-45.30

A certain parcel of land in the Commonwealth of Massachusetts, County of Worcester, Town of Westborough situated on the northerly side of Boston Worcester Turnpike, Route 9, and shown as Lot 1 on a plan entitled "Plan of Land in Westborough, Worcester County, ...", dated April 11, 1997, prepared by Beals and Thomas, Inc. More particularly bounded and described as follows:

Beginning at a point in the east bank of the Assabet River at Boston Worcester Turnpike, thence running;

N 30 58 22 W 1123.34 feet to a point, said course being by land now or formerly of Brown Realty Trust, thence turning and running;

N 86 07 42 E 1022.91 feet to a point, thence turning and running;

N 03 52 18 W 501.72 feet to a point, thence turning and running;

N 86 07 42 E 627.83 feet to a point, thence turning and running;

N 58 30 39 E 523.55 feet to a point, said four courses being by land now or formerly of P.V. Davis Construction Company, Inc., thence turning and running;

S18 32 25 E 9.51 feet to a Worcester County Highway bound, thence turning and running;

S 17 00 25 E 69.96 feet to a point, thence turning and running;

S 15 35 25 E 79.20 feet to a Worcester County Highway bound, thence turning and running;

S 11 50 25 E 63.36 feet to a point, thence turning and running;

S 09 15 25 E 67.32 feet to a Worcester County Highway bound point, thence turning and running;

S 06 35 25 E 66.00 feet to a point, thence turning and running;

S 06 25 25 E 74.57 feet to a Worcester County Highway bound, thence turning and running;

S 05 48 30 E 73.06 feet to a Worcester County Highway bound, thence turning and running;

S 04 09 29 E 190.38 feet to a point, thence turning and running;

BEALS AND THOMAS, INC.

Metes and Bounds Description
Lot 1
Westborough, Massachusetts
W-45.30
Page 2 of 2

| | |
|---|---|
| Southerly | by a curve to the right having a radius of 1000.00 feet and a length of 215.67 feet to a point, said last 10 courses being by the westerly line of Milk Street, thence turning and running; |
| S 52 34 33 W | 376.10 feet to a point, thence turning and running; |
| S 86 07 42 W | 209 07 feet to a point, thence turning and running; |
| N 49 56 56 W | 33.00 feet to a point, thence turning and running; |
| Northwesterly | by a curve to the left having a radius of 335.00 feet and a length of 76.89 feet to a point, thence turning and running; |
| S 86 07 42 W | 213.61 feet to a point, thence turning and running; |
| N 03 47 36 W | 319.22 feet to a point, thence turning and running; |
| S 86 07 42 W | 337.66 feet to a point, thence turning and running; |
| S 03 52 18 E | 112.44 feet to a point, thence turning and running; |
| S 86 07 42 W | 437.86 feet to a point, said last nine courses being by Lot 2, thence turning and running; |
| S 03 52 18 E | 925.00 feet to a point, said course being in part by Lot 2 and in part by land now or formerly of Lillian E. Brown Life Estate, thence turning and running; |
| S 86 07 42 W | 148.31 feet to the point of beginning, said course being by the northerly line of Boston Worcester Turnpike. |

Containing 1,277,351 square feet more or less, or 29.324 acres, more or less.

Subject to any and all existing rights and easements of record.

RJB/vmb/004530MB007

The plan referenced herein is recorded herewith as Plan Book 714 Plan 77 .

BEALS AND THOMAS, INC.

ATTEST: WORC. Anthony J. Vigliotti, Register

# Exhibit

Case 4:26-cv-10037-MGY Document 1-3 Filed 01/26/26 Page 50 of 549

FILED
OCT 29 1997
SECRETARY OF THE COMMONWEALTH
CORPORATIONS DIVISION

APPLICATION FOR REGISTRATION
OF
WESTBOROUGH SPE LLC
(A Foreign Limited Liability Company)

Pursuant to the provisions of the Massachusetts Limited Liability Company Act (the "Act"), the undersigned hereby certifies as follows:

1. Federal Taxpayer Identification Number. The federal taxpayer identification number of the LLC has been applied for.

2. Name of the Limited Liability Company. The name of the limited liability company (the "LLC") is Westborough SPE LLC.

3. State of Formation. The LLC was formed under the laws of the State of Delaware on October 22, 1997.

4. Business of the LLC. The general character of the business the LLC proposes to do in the Commonwealth is to acquire, own, develop, construct, rehabilitate, improve, maintain, finance, manage, operate, lease, sell, convey, assign, mortgage and otherwise deal with real estate, and to own interests in incorporated and unincorporated entities engaged in any of the foregoing, and to carry on any related or unrelated lawful business, trade, purpose or activity.

5. Business Address of Principal Office. The business address of the principal office of the LLC is c/o Babcock & Brown Administrative Services, Inc., 2 Harrison Street, 6th Floor, San Francisco, CA 94105.

6. Manager(s). The name and address of the manager of the LLC is Babcock & Brown Administrative Services, Inc., 2 Harrison Street, 6th Floor, San Francisco, CA 94105.

7. Business Address in the Commonwealth. The business address of the principal office of the LLC in the Commonwealth is c/o Corporation Service Company, 84 State Street, 5th Floor, Boston, MA 02109.

8. Agent for Service of Process. The name and address of the resident agent for service of process for the LLC is Corporation Service Company, 84 State Street, 5th Floor, Boston, MA 02109.

9. Date of Dissolution. The LLC is to have no specific date of dissolution.

10. Execution of Documents Relating to Real Property. F. Jan Blaustein, President of Babcock & Brown Administrative Services, Inc., is authorized to execute, acknowledge, deliver and record any recordable instrument on behalf of the LLC purporting to affect an interest in real property, whether to be recorded with a registry of deeds or a district office of the Land Court.

IN WITNESS WHEREOF, the undersigned hereby affirms under the penalties of perjury that the facts stated herein are true this 24 day of October, 1997.

Babcock & Brown Administrative Services, Inc.

F. Jan Blaustein, Its President

*State of Delaware*

# *Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "WESTBOROUGH SPE LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-FOURTH DAY OF OCTOBER, A.D. 1997.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.




Edward J. Freel, Secretary of State

2811561 8300

AUTHENTICATION: 8720352

971359389

DATE: 10-24-97

46053

593094

**COMMONWEALTH OF MASSACHUSETTS**

**FOREIGN LIMITED LIABILITY COMPANY**
**(General Laws, Chapter 156C)**

**Filed this** 25th **day of** Oct
**19** 97

FEE PAID
$500.00
OCT 29 1997

CASHIERS
SECRETARY'S OFFICE

William Francis Galvin

**WILLIAM FRANCIS GALVIN**
**SECRETARY OF THE COMMONWEALTH**

SECRETARY OF THE COMMONWEALTH
97 OCT 29 PM 3:00
CORPORATION DIVISION

CT
Michelle
472-4420

# Exhibit

# WESTBOROUGH SPE LLC

# LIMITED LIABILITY COMPANY AGREEMENT

October 22, 1997

# TABLE OF CONTENTS


| | |
|---|---|
| RECITALS | 1 |
| FORMATION, MANAGEMENT, PURPOSES, NAME | 1 |
| CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS; AND LIABILITY OF MEMBERS | 6 |
| RETURN OF CONTRIBUTIONS | 7 |
| SHARE OF DISTRIBUTIONS, PROFITS, LOSSES AND OTHER ITEMS | 7 |
| SUBSTITUTION AND ASSIGNMENT OF A MEMBER'S INTEREST | 9 |
| BOOKS AND RECORDS; BANK ACCOUNTS | 9 |
| OTHER BUSINESS | 10 |
| DISSOLUTION AND CONTINUATION OF THE COMPANY | 10 |
| MISCELLANEOUS | 11 |

WESTBOROUGH SPE LLC

LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the "Agreement"), dated as of the 22nd day of October, 1997, is by and between MIGNONETTE INVESTMENTS LIMITED, a British Virgin Islands entity organized under the BVI International Business Companies Act (the "Member"), and BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., a Delaware corporation, as the Manager.

R E C I T A L S:

A. The Member formed a limited liability company (the "Company") pursuant to and in accordance with the Delaware Limited Liability Company Act (the "LLC Act") by the filing on the date hereof of a Certificate of Formation with the Secretary of State of the State of Delaware for the purposes described therein and herein.

B. The Member and Babcock & Brown Administrative Services, Inc. desire to enter into this Agreement to provide for, among other things, the management of the business and affairs of the Company, the distribution of monies and allocation of profits and losses as to the Member, and the respective rights, interests, obligations and duties of the Member and of the Manager to each other and to the Company and its assets, business, liabilities and obligations.

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, the parties hereto hereby agree as follows:

OPERATING AGREEMENT

1. Formation, Management, Purposes, Name

(a) The rights and liabilities of the parties hereto shall be determined pursuant to the LLC Act and this Agreement. To the extent that the rights or obligations of the parties are different by reason of any provision of this Agreement than they would be in the absence of any such provision, or even if this Agreement is inconsistent with the LLC Act, this Agreement shall control, except to the extent the LLC Act provides that the applicable provisions thereof as to any

such matter may not be modified by a limited liability company's members, or may not be modified as provided in this Agreement, in which event the provisions hereof shall be applicable to the extent, if any, allowed by the LLC Act.

The name of the Member and its address are set forth on Schedule A attached hereto. If any additional Members and/or substitute Members are hereinafter added as Members in the Company their names and respective addresses shall be added by amendment of said Schedule A.

The registered office and the registered agent of the Company in the State of Delaware shall be as set forth in the Certificate, as such office and agent may be changed, and as the Certificate may, as a consequence thereof, be amended from time to time by the Manager.

(b) The name of the limited liability company formed hereby is Westborough SPE LLC. The business of the Company may be conducted under that name or, upon compliance with applicable laws, any other name that the Manager deems appropriate or advisable. The Manager shall file, or shall cause to be filed, the Certificate of Formation and any fictitious name certificates, foreign state registrations and similar filings, and any amendments to any thereof, that the Manager considers necessary, appropriate or advisable, including, without limitation, an Application for Registration as a foreign limited liability company in the Commonwealth of Massachusetts.

(c) The Company is formed for the sole purpose of, and the nature of the sole business to be conducted by the Company is, to acquire, own, construct, lease, operate, maintain and, consistent with its investment purposes, to sell, exchange, convey and otherwise transfer, and otherwise to deal with, in any manner deemed desirable, the real property generally described in Schedule C attached hereto, and any other real property and any personal property, tangible or intangible, appurtenant to any thereof or hereafter acquired as necessary or convenient in connection with such real property, and to own interests in and be a member and/or manager, partner, general or limited, venturer, stockholder or other holder of interests in any entity holding direct or indirect interests in any such assets or engaged in any such activity, and in connection with all of the above, the Company may engage in any lawful act or activity for which limited liability companies may be formed under the LLC Act and in any and all activities necessary, advisable, convenient or incidental thereto. The purposes of the Company may not be broadened without the unanimous consent of all the Members and the Manager, nor may it be broadened if such would violate or cause a default under any agreement to which the Company is a party or by which it is bound.

In furtherance of the conduct of the purposes described above, the Company shall have the power and authority to do any and all lawful activities, business or actions which an Company may take under the LLC Act and, except as limited by the LLC Act, any activities, business or actions which a business corporation or a limited partnership would be entitled to engage in or take pursuant to the applicable laws of the State of Delaware, or under other applicable law, so long as such powers are necessary or convenient to the conduct, promotion or attainment of the business, trade, purposes or activities of the Company.

(d) Babcock & Brown Administrative Services Inc. is hereby designated as the Manager of the Company. One or more Managers may be designated and the number of Managers may be determined at any time by "Consent of the Members"; provided, however, that any such Consent providing for the Company to have more than one Manager shall only be made by amendment of this Agreement and shall also indicate those circumstances in which each Manager will be authorized to act alone and those circumstances in which more than one or all of the Managers will be required to act on behalf of the Company. A Manager may be removed by Consent of the Members at any time and for any reason or for no reason.

(e) Except as otherwise specifically provided in this Section 1 and in Section 8 of this Agreement: (i) the overall management and control of the business and affairs of the Company, and the sole and exclusive authority to make all decisions and take all actions as to the business and affairs of the Company, shall be vested in the Manager, who shall have the sole power and authority to make any decision and to take any action and to exercise any power on behalf of the Company which the Company has the right, power and authority to take or otherwise engage in; and (ii) the Members shall have no voting rights, consent or approval over or as to any such matters.

Notwithstanding the above, the Manager may not file, on behalf of the Company, a petition in bankruptcy or for reorganization or insolvency or any other similar matter without the unanimous consent of the Members.

The Manager shall devote, and shall cause its members, partners, officers, directors and employees, if any, to devote such time to the affairs of the Company as such Manager, in its sole discretion, determines is necessary for performance by the Manager of its duties, provided no such persons shall be required to devote full time to such affairs. The Manager shall have the right and power to manage, operate, and control the Company, and to do all things and take

all actions as it deems necessary or appropriate to carry on the business and purposes of the Company.

"Consent of the Members" shall mean action of the holders of more than two-thirds of the Percentage Interests of all the Members, as such Percentage Interests are initially set forth on Schedule A hereto and as such Percentage Interests may be changed pursuant to the other provisions of this Agreement.

No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members.

(f) No Member, acting in its capacity as a Member (but nothing herein limiting any Member's capacity as a Manager if a Member is also a Manager), shall have any authority, power or privilege to act on behalf of or to bind the Company.

(g) The signature of the Manager or, if more than one Manager any time, of any Manager on any agreement, contract, instrument or other document shall be sufficient to bind the Company and any other Manager in respect thereof, shall be deemed the action of the Company and of any other Manager, and shall conclusively evidence the authority of such executing Manager and the Company with respect thereto, and no third party need look to any other evidence or require joinder or consent of any other party to bind the Company or to evidence such Manager's authority.

Without in any way amending, modifying, expanding or limiting the foregoing provisions of this paragraph (g), an individual or individuals may be authorized in writing by the Manager to execute any documents to be filed with the Secretary of State of the Commonwealth of Massachusetts and/or authorized to execute, acknowledge, deliver and record any recordable instruments on behalf of the Company purporting to effect an interest in real property, whether to be recorded with the registry of deeds or district office of the Land Court, and in the event of any such authorization the Application for Registration for the Company in the Commonwealth of Massachusetts shall include or, as appropriate, be amended to set forth such authorization.

Any Manager may, from time to time, by an instrument in writing, delegate all or any of its powers or duties hereunder to another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or any other person or entity. Such writing may fully authorize such other Manager or such other person or entity, acting alone or with others, all as

may be provided in such written delegation, without requirement of any other act or signature of the delegating Manager to take any action of any type and to do anything and everything which the delegating Manager may be authorized to take or do hereunder (including, without limitation, executing checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and contracts of any nature whatsoever) and may delegate such authority generally or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the (or a) Manager.

(h) The Manager shall be entitled to reimbursement from the Company for all expenses incurred by such Manager in managing and conducting the business and affairs of the Company. The Manager shall determine which expenses, if any, are allocable to the Company in a manner which is fair and reasonable to the Manager(s) and the Company, and if such allocation is made in good faith it shall be conclusive in the absence of manifest error.

(i) Any Manager, or the sole Manager if there is only one, may cause the Company to enter into one or more loans, agreements, leases, contracts or other arrangements for the furnishing to or by the Company of money, goods, services or space with any Member, Manager or an affiliate thereof, and may pay compensation thereunder for such goods, services or space, provided in each case the terms of any such arrangements are at least as advantageous to the Company as those which would be available to the Company under similar arrangements between unrelated parties, and if the determination of such terms is made in good faith it shall be conclusive in the absence of manifest error.

(j) In the performance of its duties and obligations hereunder, and in the exercise of its powers hereunder, the Manager shall act in good faith. The Company shall indemnify, defend and hold harmless the Manager, each Member, any person appointed to act for or on behalf of the Company pursuant to Section 1(g), and each such person's officers, directors, partners, members, shareholders, employees, and agents, and the employees, officers and agents of the Company (all indemnified persons being referred to as "Indemnified Persons" for purposes of this Section 1(j)), from any liability, loss, or damage incurred by an Indemnified Person by reason of any act performed or omitted to be performed by such Indemnified Person in connection with the business of the Company, and

from liabilities or obligations of the Company imposed on such person by virtue of such person's position with or relationship to the Company, including reasonable attorneys' fees and costs and any amounts expended in the settlement of any such claims of liability, loss, or damage; provided, however, that, if the liability, loss, damage, or claim arises out of any action or inaction of an Indemnified Person, indemnification under this Section 1(j) shall be available only if (i) the Indemnified Person, at the time of such action or inaction, determined, in good faith, that its course of conduct was consistent with this Agreement or otherwise in the best interests of the Company, and (ii) the action or inaction did not constitute fraud, gross negligence or willful misconduct by the Indemnified Person. Any indemnification under this Section 1(j) shall be recoverable only from the assets of the Company and not from any assets of any of the Members.

2. Capital Contributions; Capital Accounts; and Liability of Members.

(a) The Member has contributed in cash to the capital of the Company the amount set forth opposite such Member's name on Schedule B hereto.

Additional capital contributions may be made (but are not required to be made) by the Member, or any of them if more than one, if necessary or desirable to enable the Company to meet its obligations.

Any third party may rely on a certificate or other statement from the Manager as to Member or Members of the Company and the respective Percentage Interests of the Members at any time. All capital contributions by the Member(s) shall be reflected on the books and records of the Company.

Upon approval of the Manager, any Member may make a loan or loans to the Company on such terms as the Manager may determine. No such loan shall be considered a contribution to the capital of the Company.

(b) No Member shall be obligated to contribute any additional capital or make any loans to the Company. No interest or preferred return shall accrue on any contributions to the capital of the Company. No Member shall have any rights or priority over any other Members as to contributions or as to distributions or compensation by way of income, except as may otherwise be specifically provided for elsewhere in this Agreement.

(c) If there is more than one Member at any time and the Company has not elected to be taxed as a corporation under the Internal Revenue Code, a separate capital account ("Capital Account") shall be established for each Member,

and shall be maintained in accordance with applicable regulations under the Code, and consistent with such regulations, there shall be credited to each Member's Capital Account the amount of any contribution of capital made by such Member to the Company, and such Member's share of the net profits, and items thereof, of the Company, and there shall be charged against each Member's Capital Account the amount of all distributions to such Members, and such Member's share of the net losses, and items thereof, of the Company.

(d) The liability of any Member for the losses, debts and obligations of the Company shall be limited to its capital contributions then made but not then previously repaid to or withdrawn by them in accordance with the terms of this Agreement. No Member, in its capacity as a Member or as Manager, shall have any liability to restore any negative balance in its Capital Account. In no event shall any Member, in its capacity as a Member, nor any Manager, whether or not also a Member, be personally liable for any judgments, debts, liabilities or obligations of the Company.

(e) The Member(s), unanimously if more than one, shall have the right at any time to require the Manager to elect to treat the Company as a corporation under the Internal Revenue Code.

3. Return of Contributions. No Member shall have the right to withdraw or to be repaid any capital contributed by it or to receive any property or other payment in respect of its interest in the Company, including, without limitation, as a result of the withdrawal or resignation of such Member from the Company, except as specifically provided in this Agreement.

4. Share of Distributions, Profits, Losses and Other Items.

(a) All cash available for distribution shall be distributed to the Member, or among the Members if there is more than one Member, first to return any unrepaid capital contributions, pro-rata among the Members with such amounts in proportion to each respective Member's unrepaid capital contribution, and then among the Members according to their respective Percentage Interests. Distributions to the Members shall be made at such times and in such amounts as shall be reasonably determined by the Manager. Except as provided in the next paragraph, all distributions to Members shall be made in cash.

If the Manager elects, with the Consent of the Members, to distribute any assets of the Company in kind, such assets shall be distributed on the basis of

manifest error.

(b) If and so long as the Company is taxed as a partnership, allocations of income, profit, gain and loss, shall be made as follows: (i) items of net income and gain shall be allocated among the Members in the manner necessary to increase each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a), and (ii) items of net loss and deduction shall be allocated among the Members in the manner necessary to reduce each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a).

Notwithstanding the foregoing, all allocations of items that cannot have economic effect (except "partner nonrecourse deductions") shall be allocated to the Members in accordance with the Members' interests in the Company, which, unless otherwise required by Code Section 704(b) and the Regulations promulgated thereunder, shall be in proportion to the Percentage Interests of the Members, and all "partner nonrecourse deductions" and "partner minimum gain" shall be allocated in accordance with the provisions of Treasury Regulations Section 1.704-2.

All items of depreciation, gain, loss, deduction or credit shall be determined in accordance with the Code and, except to the extent otherwise required by the Code, shall be allocated to and among the Members in the same percentages in which the Members share in net profits and net losses.

(c) Except as otherwise specifically provided herein, all tax elections shall be made by the Manager as it shall deem appropriate.

5. Substitution and Assignment of a Member's Interest. A Member may sell, assign, give, pledge, hypothecate, encumber or otherwise transfer (including, without limitation, any assignment or transfer by operation of law or by order of court) all or any part of such Member's interest in the Company, without the consent or approval of any other Member or of the Manager.

6. Books and Records; Bank Accounts.

(a) The Manager shall keep or cause to be kept complete and accurate books and records of the Company using such method as the Manager may elect. Such books and records shall be maintained and be available, in addition to any documents and information required to be furnished to the Members under the LLC Act, at an office of the Company for examination and copying by any Member, or its duly authorized representative, at its reasonable request and at its expense during ordinary business hours. Any Member may, at any time, at its own expense, cause an audit or review of the Company books to be made by a certified public accountant of its own selection.

A current list of the full name and last known address of each Member and of the Manager, a copy of this Agreement, any amendments thereto and the Certificate of Formation, executed copies of all powers of attorney, if any, pursuant to which this Agreement, any amendment, or the Certificate of Formation has been executed, copies of the Company's financial statements and federal, state and local income tax returns and reports, if any, for the five most recent years, shall be maintained at the registered office of the Company required by the LLC Act.

If the Company is taxed as a partnership, then on or before the due date (including extensions) of the federal income tax return of the Company for each fiscal year of the Company, the Manager shall cause each Member to be furnished with copies of the Company's federal income tax return and Schedule K-1's for each respective Member for the fiscal year then ended.

If the Company is taxed as a corporation, the Manager shall timely (including extensions) file all requisite federal, state and local tax returns.

(b) Bank accounts and/or other accounts of the Company shall be maintained in such banking and/or other financial institution(s) as shall be selected by the Manager, and withdrawals shall be made and other activity conducted on such signature or signatures as shall be designated by the Manager.

(c) The fiscal year of the Company shall end on December 31 of each year.

7. Other Business. The Members, the Manager and any affiliates of any of them may engage in and possess interests in other business ventures and

investment opportunities of every kind and description, independently or with others, including serving as managers and general partners of other limited liability companies and partnerships with purposes similar to those of, and/or in competition with, the Company. Neither the Company nor any other Member or Manager shall have any rights in or to such ventures or opportunities or the income or profits therefrom.

8. Dissolution and Continuation of the Company.

(a) The Company shall be dissolved and its affairs wound up upon:

(i) The election, made in writing by the Manager, with the Consent of the Members, to dissolve the Company at any time which is 90 days or more after notice of such election to all Members;

(ii) The sale, disposition or abandonment of all or substantially all of the assets of the Company; or

(iii) The entry of a decree of judicial dissolution under the LLC Act.

The Company shall have no specific date of dissolution.

(b) Upon the dissolution of the Company for any reason, the Manager shall commence to wind up the affairs of the Company and to liquidate its assets. After the sale or other disposition of all of the assets of the Company to be disposed of in the liquidation, and gains and losses thereon shall be calculated. If the Company is taxed as a partnership, such gains and losses shall be allocated in the manner described in Section 4 hereof, and applied to the Capital Accounts of each Member to whom the allocations are made pursuant to the other provisions hereof.

(c) Following the payment of all debts and liabilities of the Company to persons other than the Members and the payment of all expenses of liquidation, and subject to the reserves which the Manager, or other liquidating party, may determine is reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company, the proceeds of the liquidation and any other funds shall be applied to the payment of any debts and liabilities to the Members, if any, and then shall be distributed to the Member(s) (i) in accordance with Section 4(a)

if the Company is taxed as a corporation, and (ii) in accordance with each Member's respective Capital Account(s) as of the date of such distribution, after giving effect to all contributions, distributions, and allocations for all periods, if the Company is taxed as a partnership.

(d) The assets of the Company shall be a Member's source of all distributions with respect to the Company, the return of its capital contributions thereto and its share of profits and losses thereof, and each such Member shall have no recourse therefor (upon dissolution or otherwise) against any other Members.

(e) Upon the completion of the liquidation of the Company and the distribution of all Company's funds, the Company shall terminate, and the Manager shall, or if none, the Members may authorize one or more Members to, execute and record such articles of dissolution for the Company and any and all other documents necessary to effectuate the dissolution and termination of the Company.

9. Miscellaneous.

(a) Subject to the restrictions on transfers set forth herein, the terms of this Agreement shall be binding upon and shall inure to the benefit of the Members and the Manager, their respective permitted successors, successors-in-title, heirs and assigns; and each and every successor-in-interest to any Member, whether such successor acquires such interest by way of inheritance, gift, purchase, foreclosure or any other method, and the Members shall hold such interest subject to all of the terms and provisions of this Agreement. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of any Member (including any Member acting in his capacity as a creditor of the Company).

(b) No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and duly executed by all of the Members and, if (but only if) such affects the rights or obligations of the Manager, executed by the Manager.

(c) This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware, notwithstanding any choice of law rules to the contrary.

(d) This Agreement may be executed in any number of counterparts, all of which together shall for all purposes constitute one Agreement, binding on all the Members and the Manager notwithstanding that all Members and the Manager have not signed the same counterpart.

(e) Any and all notices under this Agreement shall be effective (i) on the fourth business day after being sent by registered or certified mail, return receipt requested, postage prepaid, or (ii) on the second business day after being sent by express mail, telecopy, or commercial expedited delivery service providing a receipt for delivery. All such notices in order to be effective shall be addressed, if to the Company at its registered office under the LLC Act, if to a Member at the last address of record on the Company books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified.

(f) As used herein, the singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires. The word "person shall mean a natural person, a trust of any nature, or any incorporated or unincorporated entity or association of any type or form.

(g) If any provisions of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it si held invalid, shall not be affected hereby.

(h) Words such as "herein", "hereinafter", "hereof", "hereto", "hereby", and "hereunder", when used in reference to the Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

(i) This Agreement, including the Certificate of Formation, which is hereby incorporated herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: ______________________________
Authorized Signatory

MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.

By: ______________________________
Its President



GS2- 136229-1

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: ______________________________
Authorized Signatory

For F.M.C. LIMITED
CORPORATE DIRECTORS

MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.

By: ______________________________
Its ______________________________

SCHEDULE A
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

MEMBER

| NAME AND ADDRESSES OF MEMBER | PERCENTAGE INTEREST |
|---|---|
| Mignonette Investments Limited | 100% |

SCHEDULE B
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

MEMBER

| MEMBER | INITIAL CASH CAPITAL CONTRIBUTION |
|---|---|
| Mignonette Investments Limited | $10,000 |

SCHEDULE C
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

PROPERTY DESCRIPTION

# Exhibit

MA SOC Filing Number: 200701080710 Date: 11/20/2007 3:19 PM

NOV. 20. 2007 3:20PM CSC16175233189 NO. 7795 P. 2

CERTIFICATE OF WITHDRAWAL
OF A FOREIGN LIMITED LIABILITY COMPANY

(Under Section 53 of the Massachusetts Limited Liability Company Act)

To the State Secretary
Commonwealth of Massachusetts

Federal Employer
Identification Number
94-3286768

It is hereby certified that:

1. The name of the limited liability company (the "company") is Westborough SPE LLC.

2. The jurisdiction where the company was organized is Delaware.

3. The address of the principal office of the company, wherever located, is 2 Harrison Street, 6th Floor, San Francisco, CA 94105.

4. The name and the business address of the registered agent of the company in the Commonwealth of Massachusetts is 84 State Street Boston MA 02109.

5. The company is withdrawing because it is not doing business in the Commonwealth of Massachusetts.

6. All fees and taxes owed by the company have been paid or provided for.

IN WITNESS WHEREOF AND UNDER THE PENALTIES OF PERJURY, the undersigned does hereby affirm and swear, that to the undersigned's knowledge and belief the foregoing statements are true as of this 19th day of November 2007.

Dyann Blaine

Dyann Blaine, Authorized Person

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears that the provisions of the General Laws relative to corporations have been complied with, and I hereby approve said articles; and the filing fee having been paid, said articles are deemed to have been filed with me on:

November 20, 2007 3:19 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

232335-1-0

# Exhibit E

BABCOCK & BROWN

Babcock & Brown LP
One Letterman Drive · Bldg D · San Francisco CA 94129 USA
T +1 415 512 1515 · F +1 415 267 1500 · www.babcockbrown.com

**NOTICE OF RESIGNATION**

April 30, 2011

Westborough SPE LLC
c/o Equity Trust
31/F, The Center
99 Queen's Road Central, Hong Kong

Attention: Serena Kwok, General Manager, Trade Support

RE: Westborough SPE LLC (the "Company")

Dear Ms. Kwok:

We refer to the Company's Limited Liability Company Agreement dated as of October 22, 1997 (the "LLC Agreement") between Mignonette Investments Limited (the "Member") and Babcock & Brown Administrative Services LLC, as successor to Babcock & Brown Administrative Services, Inc. (the "Manager").

Pursuant to Section 1(e) of the LLC Agreement and Section 18-602 of the Delaware Limited Liability Company Act, this letter serves as notice to the Member of the Manager's intent to resign as Manager of the Company effective as of May 30, 2011.

Sincerely,

Babcock & Brown Administrative Services LLC

By: Walter Horst
Title: Treasurer

# Exhibit

# State Of Delaware

Entity Details

11/21/2022 12:18:17AM

File Number: 2811561

Incorporation Date / Formation Date: 10/22/1997

Entity Name: WESTBOROUGH SPE LLC

Entity Kind: Limited Liability Company

Entity Type: General

Residency: Domestic

State: DELAWARE

Status: Cancelled, Failure to Pay Tax

Status Date: 6/1/2014

**Registered Agent Information**

Name: CORPORATION SERVICE COMPANY

Address: 251 LITTLE FALLS DRIVE

City: WILMINGTON

Country:

State: DE

Postal Code: 19808

Phone: 302-636-5401

**Tax Information**

Last AnnualReport Filed: 0

Tax Due: $ 1593

Annual Tax Assessment: $250

Total Authorized Shares:

**Filing History (Last 5 Filings)**

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|---|---|---|---|---|---|
| 1 | L.P./L.L.C. Restoration | 3 | 7/13/1999 | 9:00 AM | 7/13/1999 |
| 2 | LLC | 1 | 10/22/1997 | 9:00 AM | 10/22/1997 |

# Exhibit

F
FPC

# The Commonwealth of Massachusetts

William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

FORM MUST BE TYPED **Foreign Certificate of Withdrawal** FORM MUST BE TYPED

**(General Laws Chapter 156D, Section 15.20; 950 CMR 113.51)**

(1) Exact name of corporation: Babcock & Brown Administrative Services, Inc.

(2) Jurisdiction of Incorporation: Delaware

Date of Incorporation: 10/23/1997
*(month, day, year)*

(3) The corporation is not transacting business in the commonwealth.

(4) The corporation surrenders its authority to transact business in the commonwealth.

(5) The corporation revokes the authority of its registered agent to accept service on its behalf.

(6) The Secretary of the Commonwealth is hereby appointed as its agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to transact business in the commonwealth.

(7) The corporation's mailing address to which the Division may mail a copy of any process served on it:

2 Harrison Street, 6th Floor, San Francisco, CA 94105
*(number, street, city or town, state, zip code)*

(8) The corporation shall notify the Division in the future of any changes to the above mailing address by filing a certificate of amendment.

(9) The corporation hereby certifies that all taxes known to the corporation to be due the commonwealth have been paid or provided for.

(10) This certificate is effective at the time and on the date approved by the Division, unless a later effective date not more than 90 days from the date of filing is specified: ____________

Signed by: [signature] ,
*(signature of authorized individual)*

☐ Chairman of the board of directors,
☐ President,
☒ Other officer,
☐ Court-appointed fiduciary,

on this 17th day of April, 2008.

P.C.

# THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears that the provisions of the General Laws relative to corporations have been complied with, and I hereby approve said articles; and the filing fee having been paid, said articles are deemed to have been filed with me on:

April 24, 2008 11:52 AM



WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

251483-1-0

# Exhibit

# THE VIRGIN ISLANDS
# Official Gazette

*Published by Authority*

***Vol. XLIV, No. 53*** ***ROAD TOWN, TORTOLA*** ***FRIDAY 27 AUGUST 2010***


***E X T R A O R D I N A R Y***

# CONTENTS


**GOVERNMENT**

**Supplements**
Statutory Instruments . . . . . . . . . . . . . . . . . None
**Statutory Appointments** . . . . . . . . . . . . . None
**Court Notices** . . . . . . . . . . . . . . . . . . . . . . None
**Land Notices** . . . . . . . . . . . . . . . . . . . . . . None
**Public Service Notices**. . . . . . . . . . . . . . . . None
**Departmental Notices** . . . . . . . . . . . . . . . . None

STATUTORY

Trademark . . . . . . . . . . . . . . . . . . . . . . . . . None
Patent . . . . . . . . . . . . . . . . . . . . . . . . . None
Company . . . . . . . . . . . . . . . . . . . . . 2690
Other . . . . . . . . . . . . . . . . . . . . . . . . . None

COMMERCIAL

Liquidation
Appointment of Liquidator . . . . . . . . . None
Dissolution Notices . . . . . . . . . . . . . . . None
Other . . . . . . . . . . . . . . . . . . . . . . . . . None
Insurance . . . . . . . . . . . . . . . . . . . . . None
Other . . . . . . . . . . . . . . . . . . . . . . . . . None


---

USING THE GAZETTE

The Virgin Islands Official Gazette is the official newspaper of the Government of the Virgin Islands. It is published weekly on Thursdays. Extraordinary editions are published as and when required.

Closing time for lodging notices is 12 noon on Monday in the week prior to publication. Early deadlines apply in cases of public holidays. Please refer to the schedule of deadlines at the back of the Gazette for specific deadlines. Late notices are accepted at the publisher's discretion only.

Notices must be accompanied by payment and written instructions. All dates, proper names, and signatures must be shown clearly, and contact details for the person responsible for the notice must be included.

Notices will be returned unpublished if not submitted in accordance with these requirements.

The *Official Gazette* reserves the right to apply its in-house style, and to reject notices which do not meet its requirements.

Kindly address notices and other correspondence to:

**The Virgin Islands Official Gazette**
**Passport Office**
**33 Administration Drive**
**Road Town, Tortola VG1110**
**Virgin Islands**
**Telephone: (284) 468-3701 ext. 2523 or 2521**
**Facsimile: (284) 468-1000**
**Email: gazette@gov.vg**
**Website: www.bvigazette.org**

# STATUTORY

## Company Notices

**12302** In accordance with Section 213(5) of the BVI Business Companies Act, 2004 following is a list of Companies stricken from the Register of Companies on 31st May, 2010;

| Company No. | Company Name |
|---|---|
| 85 | BAKA LTD. |
| 1010 | GIBRALTAR MANAGEMENT COMPANY LIMITED |
| 1166 | GOLDEN RAY INTERNATIONAL LIMITED |
| 1251 | PAN ASIAN LIMITED |
| 1996 | BOND INTERNATIONAL LIMITED |
| 2075 | ANTHYCCO INTERNATIONAL LTD. |
| 2080 | AKKEL HOLDINGS LIMITED |
| 2166 | BALTIC LIMITED |
| 2249 | INDUSTRIAL PACKAGING SYSTEMS LIMITED |
| 2366 | KITTIHAWK SECURITIES LIMITED |
| 2465 | OCEANIC COMPLEX, INC. |
| 2505 | EMPIRE INVESTMENTS LTD. |
| 2634 | REPTON HOLDINGS LTD. |
| 3560 | IEE INVESTMENTS LIMITED |
| 3761 | GALADRIEL LTD. |
| 3967 | BYRON PROPERTIES LIMITED |
| 4248 | ESHLER HOLDINGS LIMITED |
| 4284 | MAYQUEEN INVESTMENTS SA INC. |
| 4588 | MARJORAM LIMITED |
| 8262 | AYZO SOUTH EAST ASIA HOLDINGS INC. |
| 8263 | FLIXIR COMPANY LIMITED |
| 8336 | BEAUREGARD S.A. |
| 8400 | BROCKHAM FINANCE INC. |
| 8418 | A.F.A.I. CORPORATION |
| 8438 | INDEPENDENT FEATURE FILMS LIMITED |
| 8525 | INTERNATIONAL MINES CORPORATION |
| 8529 | BARTOK HOLDINGS, INC. |
| 8648 | BAKER INVESTMENT LTD. |
| 8870 | WARDOUR CONSULTANTS LIMITED |
| 8978 | WILDLIFE PROPERTIES CORPORATION |
| 9023 | GREAT SUCCESS LIMITED |
| 9061 | Marvellous Profit (PTC) Limited |
| 9192 | VIRGIN INTERNATIONAL SPORTS PROMOTIONS INC. |

| | |
|---|---|
| 243013 | ROGLO INVESTMENTS CORPORATION |
| 243042 | DROMEDA FINANCE LTD. |
| 243085 | ANDORINHA COMPANY LIMITED |
| 243325 | GLORY DRAGON PROFITS LIMITED |
| 243338 | VENTURE DRAGON LIMITED |
| 243437 | VIANNA DEVELOPMENT LIMITED |
| 243464 | WESTFIELD COMMERCIAL INC. |
| 243484 | NORDIC FINANCE COMPANY SERVICES LIMITED |
| 243487 | MILLION CHINA HOLDINGS LIMITED |
| 243576 | GLOBAL ELECTRONIC DISTRIBUTION COMPANY LIMITED |
| 243600 | COOKIES LTD. |
| 243736 | MIGNONETTE INVESTMENTS LIMITED |
| 243799 | INFINITY HOLDINGS GROUP INC. |
| 243986 | WHIRLIGIG LIMITED |
| 244008 | TRUELEX HOLDINGS LIMITED |
| 244060 | PROFIT UNION LIMITED |
| 244118 | PEACEFUL UNION LIMITED |
| 244157 | TELECOMMUNICATION SERVICE CONSULTING LIMITED |
| 244221 | ATMOSPHERE CORPORATION |
| 244248 | DATA ONE (B.V.I.) CO., LTD. |
| 244273 | CASETEK (B.V.I.) CO., LTD. |
| 244572 | SMART LINK CONSULTANTS LIMITED |
| 244770 | COMMERCIAL INTEREST ENTERPRISES LIMITED |
| 244781 | OCEAN LEISURE ENTERPRISES LIMITED |
| 244782 | OCEAN NAVIGATOR LIMITED |
| 244793 | BOLD CREATIVITY LIMITED |
| 244869 | GARDENGROVE INTERNATIONAL CO. LTD. |
| 244887 | PORTCULLIS INVESTMENT ADVISERS HOLDINGS LTD |
| 244893 | VERMILLION VELVET LIMITED |
| 244928 | SILVER BRIDGE GROUP LIMITED |
| 244950 | BYRON FINANCIAL CORP. |
| 244953 | BLUEFIELD FINANCIAL CORP. |
| 244971 | STARFIELD CONSULTANTS LTD. |
| 245033 | THE DAUFUSKIE COMPANY LIMITED |
| 245042 | GLOBAL STRATEGIC HOLDINGS LIMITED |
| 245168 | JONNIS TRADING LTD. |
| 245218 | BENTWICK INTERNATIONAL LIMITED |
| 245283 | CRANBORNE SERVICES LIMITED |
| 245333 | NORTON INTERNATIONAL INVESTMENT CORPORATION |
| 245334 | WISTOW MANAGEMENT LIMITED |
| 245350 | SHELLBROOK PROPERTIES CORP. |

# Exhibit

BVI Financial Services Commission, Registry of Corporate Affairs
**Register of Companies Search Report**

Print

**Date of Search :** 09/03/2023
This search is accurate as at the Search Date above.

| | | | |
|---|---|---|---|
| **Company Name :** | MIGNONETTE INVESTMENTS LIMITED | | |
| **Company Number :** | 243736 | | |
| **Company Type :** | BC Re-registration | **Date of Incorporation / Registration :** | 11/08/1997 |

**Current Status :**

| | |
|---|---|
| Status Description: | Struck off - Non Pmt A/Fee |
| Status Date: | 02/05/2017 |
| Re-registration Type: | Automatic |
| Re-registration date: | 01/01/2007 |
| Current Registered Agent: | TMF (B.V.I.) LTD. |
| Current Registered Agent Address: | Palm Grove House<br>P.O. Box 438<br>Road Town<br>Tortola<br>VIRGIN ISLANDS, BRITISH |
| Current Registered Agent Phone Number: | 284-494-4997 |
| Current Registered Agent Fax Number: | 284-494-4999 |
| Current Registered Office : | Palm Grove House<br>P.O. Box 438<br>Road Town<br>Tortola<br>VG1110<br>VIRGIN ISLANDS, BRITISH |
| Telephone: | |
| Agent Fax: | |
| Register of Directors Filed : | Yes |
| First Registered Agent: | TMF Corporate Services (BVI) Limited |
| First Registered Office: | Palm Grove House<br>P.O. Box 438<br>Road Town<br>Tortola<br>VG1110<br>VIRGIN ISLANDS, BRITISH |

**Share/Capital Information:**

| | | |
|---|---|---|
| Authorized Capital: | 50,000.00 | United States of America, Dollars |
| Ability to Issue Bearer Shares: | No | |

**Previous Names History**

| S.No | Previous Name | Foreign Character Name | Date Range or Cease Date From | To |
|---|---|---|---|---|
| 1 | MIGNONETTE INVESTMENTS LIMITED | | 11/08/1997 | |

**Transaction History**

| S.No | Date | Transaction Number | Description | Status | Eforms/Attachments |
|---|---|---|---|---|---|
| 1 | 11/08/1997 | T970007039 | Application for Incorporation (IBC) | Approved | General Filing |

| | | | | |
|---|---|---|---|---|
| | | | | General Filing - General Filing |
| 2 | 23/10/1997 T970007040 | IBC Request for Certificate of Goodstanding/Certified Certificates | Approved | General Filing |
| | | | | General Filing - General Filing |
| 3 | 17/03/2008 T080144830 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 4 | 17/11/2008 T080766540 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 5 | 27/06/2011 T110479651 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 6 | 21/11/2012 T120824356 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 7 | 11/11/2013 T130747395 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 8 | 10/11/2014 T140760598 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 9 | 10/11/2015 T150768924 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 10 | 29/03/2017 T170521455 | Registered Agent intent to Resign | Approved | Registered Agent Intent To Resign |
| | | | | Notice of intention to resign given to the company under section 93(2) |
| 11 | 31/03/2017 T170568523 | Register of Members or Directors | Approved | Register of Directors |

### Certificate History

| S.No | Transaction No. | Type of Certificate | Date of Filing |
|---|---|---|---|
| 1 | T110479651 | Certificate of Restoration | 27/06/2011 |

**DISCLAIMER:**

Although care has been taken to ensure the accuracy, completeness and reliability of the information provided through the use of this service ("the Information"), neither the Registrar of Corporate Affairs ("the Registrar") nor the Financial Services Commission ("the Commission") assumes any responsibility for the accuracy, completeness and reliability of the Information. This report does not reflect any transactions that may be submitted and not yet registered, or other changes for which the Registrar has not received notice. The user of the Information agrees that the Information is subject to change without notice, and neither the Registrar nor the Commission is responsible for any discrepancies that may result if a transaction is approved for filing after the issuance of this report. Neither the Registrar nor the Commission assumes any responsibility for the consequences of use of the Information, nor for any infringement of third party intellectual property rights which may result from its use. In no event shall the Commission or the Registrar be liable for any direct, indirect, special or incidental damage resulting from, arising out of or in connection with the use of the Information.

# Exhibit

This instrument must be filed for record or registration within 60 days from its date

STATE TAX FORM 301
Revised 3/2009

G.L. c. 60 §§53 and 54

**COMMONWEALTH OF MASSACHUSETTS**
**TOWN OF WESTBOROUGH**
**OFFICE OF THE COLLECTOR OF TAXES**

I, Robert C. Haley, Collector of Taxes for the Town of Westborough, acting under General Laws Chapter 60, Sections 53 and 54, hereby take for the city/town the real property described below:

## DESCRIPTION OF PROPERTY

PROPERTY: Land and any building(s) thereon CONTAINING: 29.336 AC (more or less)
LOCATION: 231 Turnpike Road
ASSESSORS: 32-48-0
REGISTRY: Worcester District Registry of Deeds Book 19369, Page 75

This land is taken because taxes, as defined in Chapter60, Section 43, assessed on the property to Westborough SPE LLC for the fiscal year 2018 were not paid within 14 days after a demand for payment was made on Westborough SPE LLC on June 4, 2018. After notice of intention to take the land was given as required by law, they remain unpaid along with interest and incidental expenses and costs to the date of taking as follows:

| | |
|---|---|
| Fiscal Year 2018 Taxes Remaining Unpaid | $ 106,944.99 |
| Interest to Date of Taking | $ 12,673.18 |
| Incidental Expenses and Costs to Date of Taking | $ 10.00 |
| Total for which Land is Taken | $ 119,628.17 |

Robert C. Haley
Signature of Collector of Taxes

Executed as a sealed instrument on December 28, 2018

ROBERT C. HALEY
Printed/Typed Name of Collector of Taxes

## COMMONWEALTH OF MASSACHUSETTS

Worcester District, ss December 28, 2018

On this 28th day of December, 2018, before me, the undersigned notary public, personally appeared Robert C. Haley, proved to me through satisfactory evidence of identification, which were MA Drivers License, and personally known to me, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose, as Collector of Taxes for the City/Town of Westborough.

Deborah E. Ledoux
Signature of Notary Public

My commission expires April 23, 2021

DEBORAH E. LEDOUX
Notary Public
Commonwealth of Massachusetts
My Commission Expires April 23, 2021

Deborah E. Ledoux
Printed/Typed Name of Notary Public

THIS FORM APPROVED BY THE COMMISSIONER OF REV

ATTEST: WORC. Kathryn A. Toomey, Register

2019 00004568
Bk: 59943 Pg: 371
Page: 1 of 1 01/16/2019 02:16 PM WD

# Exhibit

**COMMONWEALTH OF MASSACHUSETTS**
**LAND COURT**
**DEPARTMENT OF THE TRIAL COURT**

19 JUL -8 PM 2:00

The undersigned hereby represent(s):

*that* the land hereinafter described was taken on December 28, 2018 for non-payment of taxes by the Town of Westborough in the County of Worcester by instrument dated December 28, 2018 and recorded on January 16, 2019 at the Worcester District Registry of Deeds in Book 59943, Page 371.

*that* more than six months from the date of said taking has elapsed and no redemption has been made;

*that* the proceedings aforesaid have been conducted according to law;

*that* the instruments were recorded or registered within sixty (60) days from the date of taking;

*that* the assessed value of said land and building is $5,239,100.00;

*that* said land is described as a certain parcel of land situated in the Town of Westborough, County of Worcester and said Commonwealth, bounded:

(Description must be same as in tax deed)

PROPERTY: Land and any building(s) thereon CONTAINING 29.336 AC (more or less)
LOCATION: 231 Turnpike Road
ASSESSORS: 32-48-0
REGISTRY: Worcester District Registry of Deeds Book 19369, Page 75

*that* the following are the names and addresses of all persons known to the undersigned who have any interest in said land other than the plaintiff, to wit:

**Westborough SPE, LLC**

Wherefore your plaintiff(s) pray(s) that the rights of all persons entitled to redeem from said proceedings may be foreclosed: that said Court enter a judgment that the title of the plaintiff to said land under said proceedings is absolute and that all rights of redemption are barred; and for such other and further relief as may seem meet and proper to said Court.

Name [signature] Street 34 West Main Street
Robert Haley, Treasurer/Collector City or Town Westborough, MA 01581

On this 23rd day of May, 2019 personally appeared before me the within named Robert Haley known to me to be the signer of the foregoing complaint, and made oath that the statements therein contained so far as made of his own knowledge are true and so far as made upon information and belief that his believes them to be true.

Before me: (PRINT) Susan A. Bush
Notary Public: (SIGN) [signature]
My Commission Expires: 9-9-2022

*(See over)

SUSAN A. BUSH
Notary Public
Commonwealth of Massachusetts
My Commission Expires September 9, 2022

No.

**Complaint To Foreclose**

**Tax Lien**

---

*Examiner*

**LET JUDGMENT ISSUE**

---

*Justice*

From the Office of

Dawn E. Bloom
Berenson & Bloom
116 Pleasant Street, Suite 340
Easthampton, MA 01027
BBO# 659839

LCP-5-8/88

NOTE:
*60 days after July 12, 1933
30 days before July 12, 1933

CAVEAT:
Notice of this complaint should be filed in the local registry upon the proper form (LCN2) as soon as complaint is entered in this office.

# Exhibit

| JUDGMENT IN TAX LIEN CASE | DOCKET NUMBER 19 TL 000768 | Commonwealth of Massachusetts Land Court Department of the Trial Court |
|---|---|---|

CASE NAME

2022 00008115
Bk: 66983 Pg: 53
Page: 1 of 1 01/21/2022 10:39 AM WD

Town of Westborough, Plaintiff(s)

v.

Westborough SPE, LLC, Defendant(s)

After consideration by the Court, it is **ADJUDGED** and **ORDERED** that all rights of redemption are forever foreclosed and barred under the following instruments:

| Land Type | Instrument Date | Book Number | Page Number | Document Number | Certificate of Title Number |
|---|---|---|---|---|---|
| Recorded | 12/28/2018 | 59943 | 371 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

This Judgment must be recorded and/or registered by the Plaintiff in the appropriate Registry of Deeds and/or Registration District pursuant to G. L. c. 60, § 75.

**By the Court: Deborah J. Patterson**

**Attest:** A TRUE COPY ATTEST: Deborah J. Patterson RECORDER

Deborah J. Patterson

**DATE ENTERED:** 01/05/2022 **RECORDER:** Deborah J. Patterson



ATTEST: WORC. Kathryn A. Toomey, Register

# Exhibit M

# Delaware

The First State



*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF REVIVAL OF "WESTBOROUGH SPE LLC", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF NOVEMBER, A.D. 2022, AT 5 O`CLOCK P.M.*

Jeffrey W. Bullock, Secretary of State

2811561 8100
SR# 20224086804

Authentication: 204937171
Date: 11-26-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

# STATE OF DELAWARE
# CERTIFICATE OF REVIVAL OF
# A DELAWARE LIMITED LIABILITY COMPANY
# PURSUANT TO TITLE 6, SEC. 18-1109

1. Name of the Limited Liability Company WESTBOROUGH SPE LLC

2. Date of the original filing with the Delaware Secretary of State:
10/22/1997

3. The name and address of the Registered Agent is
THE INCORPORATORS LTD.
300 CREEK VIEW ROAD, SUITE 209
NEWARK, DE 19711

4. (Insert any other matters the members determine to include herein).

5. This Certificate of Revival is being filed by one or more persons authorized to Execute and file the Certificate of Revival.

In witness whereof, the above name Limited Liability Company does hereby certify that the Limited Liability Company is paying all annual Taxes, penalties and interest due to the State of Delaware.

BY: Denise Edwards
Authorized Person

Name: Denise Edwards
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:00 PM 11/22/2022
FILED 05:00 PM 11/22/2022
SR 20224086804 - File Number 2811561

# Exhibit

**AttyLeahy@outlook.com**

---

| | |
|---|---|
| **From:** | Robert Haley <rhaley@town.westborough.ma.us> |
| **Sent:** | Friday, December 9, 2022 9:43 AM |
| **To:** | Iris Leahy |
| **Subject:** | FW: Redemption of Tax Title: 231 Turnpike Road, Westborough (Former Regal Cinema) |

**From:** Lolonyon Akouete <loloact2@gmail.com>
**Sent:** Tuesday, December 6, 2022 12:55 PM
**To:** TreasurerCollector@town.westborough.ma.us
**Subject:** Redemption of Tax Title: 231 Turnpike Road, Westborough (Former Regal Cinema)

Hello,

My name is Lolo. I am an asset recovery specialist. We have acquired Westborough SPE, LLC and we would like to redeem the property at 231 Turnpike Road.

Would you please let us know how much we owe?

Thank you,
Lolonyon Akouete
443-447-3276

# Exhibit O


THE ENTITY WAS FORFEITED FOR FAILURE TO FILE PROPERTY RETURN FOR 2010
✕ Close

# SMART INVESTORS, LLC: W13167986

## Notice

If you applied for a 2-month extension prior to April 15th, the NEW deadline to file Annual Report/Personal Property Tax Return Filings is June 15th. **Please go** HERE **to file your Annual Report.**

A 2-month **extension request** for filing the Annual Report and Personal Property Tax Return may be filed here.

Please be aware of an **ongoing scam** in which newly registered businesses are being instructed to send additional payment in order to obtain a Certificate of Status. Any 3rd party solicitation from a company attempting to represent the 'Maryland Secretary of State' via mail or email should be fully vetted before submitting additional payment information.

**Department ID Number:**
W13167986

**Business Name:**
SMART INVESTORS, LLC

**Principal Office:**
7135 EASTBROOK AVENUE
BALTIMORE MD 21224

**Resident Agent:**
LOLONYON Y. AKOUETE
7135 EASTBROOK AVENUE
BALTIMORE MD 21224

**Status:**
FORFEITED

**Good Standing:**
THIS BUSINESS IS NOT IN GOOD STANDING

**Business Type:**
DOMESTIC LLC

**Business Code:**
20 ENTITIES OTHER THAN CORPORATIONS

**Date of Formation/ Registration:**
07/30/2009

**State of Formation:**
MD

Stock Status:

N/A

Close Status:

N/A

## SMART INVESTORS, LLC: W13167986

### ⚠ Notice

If you applied for a 2-month extension prior to April 15th, the NEW deadline to file Annual Report/Personal Property Tax Return Filings is June 15th. **Please go** HERE **to file your Annual Report.**

A 2-month **extension request** for filing the Annual Report and Personal Property Tax Return may be filed here.

Please be aware of an **ongoing scam** in which newly registered businesses are being instructed to send additional payment in order to obtain a Certificate of Status. Any 3rd party solicitation from a company attempting to represent the 'Maryland Secretary of State' via mail or email should be fully vetted before submitting additional payment information.

## Annual Report/Personal Property

**Mailing Address:**

SMART INVESTORS, LLC
7135 EASTBROOK AVENUE
BALTIMORE MD 21224

## Annual Report/Personal Property Tax Filings

| Asmt. Year | Date Filed | Extension | Penalty Amount | Date Penalty Paid |
|---|---|---|---|---|
| 2023 | | No | | |
| 2022 | | No | | |
| 2021 | | No | | |
| 2020 | | No | | |
| 2019 | | No | | |
| 2018 | | No | | |
| 2017 | | No | | |
| 2016 | | No | | |
| 2015 | | Yes | | |
| 2014 | | No | | |

## Personal Property Assessments Summary (Select year to view details)

| Asmt. Year | County Base | Town Base | Date Certified |
|---|---|---|---|
| 2023 | 0 | 0 | |
| 2022 | 0 | 0 | |
| 2021 | 0 | 0 | |
| 2020 | 0 | 0 | |
| 2019 | 0 | 0 | |
| 2018 | 0 | 0 | |
| 2017 | 0 | 0 | |
| 2016 | 0 | 0 | |
| 2015 | 0 | 0 | |
| 2014 | 0 | 0 | |

# CORPORATE CHARTER APPROVAL SHEET

**EXPEDITED SERVICE** ** KEEP WITH DOCUMENT **

DOCUMENT CODE 40 BUSINESS CODE 20

#

Close ______ Stock ______ Nonstock ______

P.A. ______ Religious ______

Merging (Transferor) ______

Surviving (Transferee) ______

1000361998416022

ID # W13167986 ACK # 1000361998416022
PAGES: 0003
SMART INVESTORS, LLC

07/30/2009 AT 03:35 P WO # 0001754842

New Name ______

FEES REMITTED

| | |
|---|---|
| Base Fee: | 100 |
| Org. & Cap. Fee: | |
| Expedite Fee: | 70 |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| 1 Certified Copies | |
| Copy Fee: | 22 |
| Certificates | |
| Certificate of Status Fee: | |
| Personal Property Filings: | |
| Mail Processing Fee: | |
| Other: | |
| TOTAL FEES: | 192 |

Credit Card ______ Check X Cash ______

______ Documents on 6 Checks

Approved By: ______

Keyed By: ______

COMMENT(S):

______ Change of Name
______ Change of Principal Office
______ Change of Resident Agent
______ Change of Resident Agent Address
______ Resignation of Resident Agent
______ Designation of Resident Agent and Resident Agent's Address
______ Change of Business Code

______ Adoption of Assumed Name

______ Other Change(s)

Code ______

Attention: ______

Mail: Name and Address

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.
4 RESERVOIR CIRCLE
BALTIMORE MD 21208-7301

Stamp Work Order and Customer Number HERE

CUST ID:0002311804
WORK ORDER:0001754842
DATE:07-31-2009 06:02 PM
AMT. PAID:$192.00

CERTIFIED COPY MADE

# ARTICLES OF ORGANIZATION
# FOR

## SMART INVESTORS, LLC

2009 JUL 30 P 3:35
DEPARTMENT OF ASSESSMENTS & TAXATION

The undersigned, being a natural persons of at least eighteen years of age and acting as the organizer of the limited liability company (the "Company") by these articles being formed under Section 4A of the Corporations and Associations Code of the State of Maryland the "Act", certify that:

### ARTICLE ONE
NAME OF COMPANY

The name of the Company is SMART INVESTORS, LLC.

### ARTICLE TWO
PURPOSE OF COMPANY

The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be organized under the Act.

### ARTICLE THREE
PRINCIPAL OFFICE AND RESIDENT AGENT

The principal office of the company will be 7135 Eastbrook Avenue, Baltimore, MD 21224. Lolonyon Y. Akouete, of that address, will be the resident agent.

### ARTICLE FOUR
DURATION

The period of duration of the Company is perpetual.

### ARTICLE FIVE
MANAGEMENT

The Company is to be managed by one manager who will be elected by the member. Manager may but need not be a member of the Company.

### ARTICLE SIX
LIABILITY OF MEMBERS

No member shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company, pursuant to Section 4A-301 of the Act.

### ARTICLE SEVEN
LIABILITY OF MANAGERS

A member acting in his, her or its capacity as a manager of the Company shall not be personally liable to the Company or its members for damages for any breach of duty in such capacity as a manager, except for damages resulting from actions or omissions by such manager, as to which there shall have been a judgment or other final adjudication that establishes that such acts or omissions were in bad faith, involved intentional misconduct or a knowing violation of law, or that such manager personally gained a financial profit or other advantage to which he was not legally entitled. Neither the amendment nor the repeal of this Article shall eliminate or reduce the effect of this Article in respect of any matter occurring, or any cause of action, suit or claim that, but for this Article, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.
4 RESERVOIR CIRCLE
BALTIMORE, MARYLAND
21208-7301
410-559-9000

**ARTICLE EIGHT**
CLASSES OF MEMBERS

The Company may, from time to time, establish classes, or series of classes, of members or managers, with such relative rights, designations, qualifications, preferences and duties as may be adopted as set forth in the Company's operating agreement from time to time.

**ARTICLE NINE**
OPERATING AGREEMENT

These Articles shall be deemed to be the operating agreement of the Company, unless and until the members shall have otherwise adopted additional or inconsistent provisions in connection with any matters permitted to be addressed in an operating agreement.

**ARTICLE TEN**
AMENDMENTS TO THESE ARTICLES

These articles may be amended from time to time by unanimous consent of the members. Amendments must be signed in accordance with Section 4A-206 of the Act and filed with the State Department of Assessment and Taxation of Maryland.

In witness, these Articles of Organization have been subscribed by the undersigned, who affirms the foregoing as true under the penalties of perjury, this 13 day of JULY, 2009.

Organizer: [signature]

**Lolonyon Y. Akouete**

**Resident Agent Agreement**

Pursuant to Maryland Corporations and Associations Code §1-208, I, Lolonyon Y. Akouete, a resident of Maryland at 7135 Eastbrook Avenue, Baltimore, MD 21224, hereby consents to serve as resident agent for SMART INVESTORS, LLC.

[signature]

**Lolonyon Y. Akouete**

07/13/09
Date

**Filing party's return address:**

Victor A. Lembo, Esquire
Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle, Suite 200
Baltimore, MD 21208

CUST ID:0002311804
WORK ORDER:0001754842
DATE:07-31-2009 06:02 PM
AMT. PAID:$192.00

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.
4 RESERVOIR CIRCLE
BALTIMORE, MARYLAND 21208-7301
410-559-9000

# Exhibit P



## Iolonyon Akouete · 3rd

N/A

SMART INVESTORS, LLC

Exellence

Baltimore, Maryland, United States · Contact info

225 connections

Message + Follow More

## Activity

229 followers

Iolonyon hasn't posted yet

Recent posts Iolonyon shares will be displayed here.

Show all activity →

## Experience

SMART INVESTORS, LLC

14 yrs 7 mos

CEO /Owner

Jul 2009 - Present · 14 yrs 7 mos

Maryland based Real Estate investment company that buy and sell real estate.We specialize in finding properties for investors to rehab. ...see more

CEO /Owner

Jul 2009 - Present · 14 yrs 7 mos

Maryland based Real Estate investment company that buy and sell real estate.We specialize in finding properties for investors to rehab. We provid...

N/A

N/A

2017 · Less than a year

N/A

N/A

Independent representative

Primerica Financial Services

Oct 2008 - Mar 2010 · 1 yr 6 mos

Educate clients, teach them how money works, help families address their most serious financial problems and find solutions....

Nutrition staff
Johns Hopkins Hospital
Nov 2007 - Jul 2009 · 1 yr 9 mos

Food service

Floor car technician
Sears Holdings Corporation
Jan 2007 - Oct 2008 · 1 yr 10 mos

Disassembles and/or reassembles product. Performs PM checks, Performs functional test, Updates service order....

## Education

Exellence
Hight school, Social sciences
2003 - 2005

NA

## Skills

Investments
Endorsed by Stephen Roulac, PhD who is highly skilled at this
8 endorsements

Marketing
Endorsed by Kim Motta who is highly skilled at this
6 endorsements

Show all 34 skills →

## Interests

Companies Groups

Charles Schwab
301,318 followers
+ Follow

E*TRADE from Morgan Stanley
134,460 followers
+ Follow

Show all companies →

# Exhibit Q

On May 11, 2021, EMIGRANT BANK, with the mailing address of 13 Croton Ave Ossining, NY 10562, reported to CUPD an abandoned savings account with a balance of $75,149.05 that belongs to Allen Thomas.

On March 8, 2022, Lolonyon Akouete (Lolo), an investigator of unclaimed property, called Allen to see if he could help him recover the funds. Allen vaguely remembers the savings account, but he was willing to let Lolo help recover the funds. On October 11, 2022, Allen received a check from CUPD for $67,634.15, And Lolo received a check from CUPD for $7,514.90 for assisting Allen in recovering his abandoned funds. *See a picture of the check below.*



# BETTY T. YEE

## California State Controller
## UNCLAIMED PROPERTY DIVISION

July 30, 2019

AKOUETE LOLONYON Y
800 RED MILLS RD
WALLKILL NY 12589

RE: Investigator Registration

Dear Lolonyon,

Thank you for registering to become an investigator with the California State Controller's Office, Unclaimed Property Division. We look forward to working with you to reunite lost and abandoned property with its rightful owner(s).

As part of the registration process, we have formatted payment to you as follows. Please review and ensure that the name, address, and SSN/FEIN are correct. If they are not, please contact our office with the correct information.

AKOUETE LOLONYON Y (XXX-XX-7650)
800 RED MILLS RD
WALLKILL NY 12589

We encourage you to visit our website at http://www.sco.ca.gov/upd_form_investigator.html as it contains resources that will be helpful in the submission of claims. Below is a list of some of these resources.

- Downloadable Unclaimed Property Records - You can download all of the unclaimed property records in the Controller's public database
- Notices to Investigators – These notices alert the investigator community of important changes in forms, publications, and the law
- Investigator Handbook – Detailed guide on the claiming process and investigator requirements
- Investigator Forms – Forms required for submission of claims

Unclaimed Property Division
PO Box 942850
Sacramento, CA 94250-5873
(800) 992-4647 | (916) 323-2827

# Exhibit R

F

# The Commonwealth of Massachusetts

William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Room 1717, Boston, Massachusetts 02108-1512

## Foreign Limited Liability Company
## Application for Registration

(General Laws Chapter 156C, Section 48)

Federal Identification No.: 94-3286768

(1a) The exact name of the limited liability company:

WESTBOROUGH SPE LLC

(1b) If different, the name under which it proposes to do business in the Commonwealth of Massachusetts:

(2) The jurisdiction* where the limited liability company was organized:

Delaware

(3) The date of organization in that jurisdiction: 10/22/1997

(4) The general character of the business the limited liability company proposes to do in the Commonwealth:

Acquire, own, develop, construct, rehabilitate, improve, maintain, finance, manage, operate, lease, sell, convey, assign, mortgages and otherwise deal with real estate, and to own interests in businesses engaged in any of the foregoing, and to carry on any related lawful business, trade, purpose or activity.

(5) The business address of its principal office:

1241 Deer Park Ave, Suite 1 #1051
North Babylon, NY 11703

(6) The business address of its principal office in the Commonwealth, if any:

N/A

(7) The name and business address, if different from principal office location, of each manager:

Denise Edwards

Lolonyon Akouete

(8) The name and business address of each person authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property recorded with a registry of deeds or district office of the land court:

| NAME | ADDRESS |
|---|---|
| Denise Edwards | 1241 Deer Park Ave, Suite 1 #1051<br>North Babylon, NY 11703 |
| Lolonyon Akouete | 1241 Deer Park Ave, Suite 1 #1051<br>North Babylon, NY 11703 |

(9) The name and street address of the resident agent in the Commonwealth:

| | |
|---|---|
| Universal Registered Agents, Inc. | 4 Central Street<br>Woburn, MA 01801 |

(10) The latest date of dissolution, if specified: ______________________

(11) Additional matters:

Signed by (by its authorized signatory): ______________________

I Ashton Villegas on behalf of Universal Registered Agents, Inc.,
resident agent of the above limited liability company, consent to my appointment as resident agent pursuant to G.L. c156C § 48 (or attach resident agent's consent hereto).

* *Attach a certificate of existence or good standing issued by an officer or agency properly authorized in home state.*

# Delaware

The First State



*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "WESTBOROUGH SPE LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-EIGHTH DAY OF NOVEMBER, A.D. 2022.*

Jeffrey W. Bullock, Secretary of State

2811561 8300

SR# 20224104318

Authentication: 204939237

Date: 11-28-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears that the provisions of the General Laws relative to corporations have been complied with, and I hereby approve said articles; and the filing fee having been paid, said articles are deemed to have been filed with me on:

De ember 12, 2022 03:52 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

# Exhibit S

## Staples Community in North Babylon, NY

1241 Deer Park Avenue Suite 1
North Babylon, NY 11703
Get directions

**Tel:** (631) 243-3036
**Fax:** (631) 268-2581

Weekly Ad

Hours of operation

| | |
|---|---|
| Monday | 8:00 am - 9:00 pm |
| Tuesday | 8:00 am - 9:00 pm |
| Wednesday | 8:00 am - 9:00 pm |
| Thursday | 8:00 am - 9:00 pm |
| **Friday** | **8:00 am - 9:00 pm** |
| Saturday | 9:00 am - 8:00 pm |
| Sunday | 10:00 am - 6:00 pm |



**Free, fast delivery over $25**

Order online and pick up in store or get free delivery, $25 minimum.

**Shop now ›**



**Explore in store**

Discover what's possible, connect with your community.

**Find now ›**



**Same-day pickup & delivery**

From our stores to your door, get what you need.

**Shop now ›**

Live Chat

# Available services at your Staples store

- Print and Marketing Services
- Affirm
- PC Tune-Up
- UPS Shipping & Drop-off
- Passport Photos
- Amazon Returns
- Tech Services
- iPostal1
- Direct Mail
- Design Services
- Recycling Services
- Business Protection

## Meet your store specialists

Hello, North Babylon! We are unstoppable when we come together. Here you'll find solutions to everyday challenges, connect with businesses that make our community thrive, and tips on keeping you safe and healthy as the season unfolds. We are excited for you to discover our business solutions at our Print and Marketing Department, at our store. Warm Regards, Michael Lopez General Manager

**Michael Lopez**

General Manager

Live Chat

# Exhibit T

**AttyLeahy@outlook.com**

---

**From:** Matthew A. Morris <MMorris@sherin.com>
**Sent:** Wednesday, December 14, 2022 4:20 PM
**To:** Iris Leahy
**Subject:** RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough
**Attachments:** Certificate of Revival and Good Standing.pdf; EntitySearchStatusCopy_12142022-combined.pdf; Westborough SPE LLC MA Corporations Search Entity Summary.pdf

Iris,

I attach a Delaware Certificate of Revival and Good Standing and the status of today's entity search with the State of Delaware. Please note that Westborough SPE LLC is registered in Massachusetts as a foreign limited liability company (see attached screen shot), and the new owners of the LLC (Lolonyon Akouete and Denise Edwards) are both authorized real estate signatories for this entity. I asked my clients to request a MA certificate of good standing and we will provide it to you as soon as we receive it.

Best,
Matt

**Matthew A. Morris, LL.M., Esq.**
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
617.646.2130 (direct)
mmorris@sherin.com
https://www.sherin.com/attorneys/matthew-a-morris/

**From:** Iris Leahy <AttyLeahy@outlook.com>
**Sent:** Wednesday, December 14, 2022 1:16 PM
**To:** Matthew A. Morris <MMorris@sherin.com>
**Subject:** RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough

CAUTION: External Email

Hello Again,

I forwarded your below email to the Treasurer and received a response.

Without proof of title from your client, the town cannot spend the time calculating the balance of the tax title. As I previously noted, since the town has owned the property for almost a year, taxes have not been assessed on the property in that time.

Also, the town is wary of increasing the legal fee balance on the property and has instructed me not to continue communications unless or until I receive proof of title showing your clients have a legal interest in the property.

Also, to be clear, the right of redemption for any previous owner was lost with the entry of the final judgment. Therefore, the town does not have to accept payment of the tax title balance. As stated in my previous email, the town is opposed to allowing a vacation of the judgment and redemption of the property. **Any payment presented to the town for the tax**

**title will be returned**. Further, the town does not have evidence that your clients have a legal interest in the property and therefore should not accept payment from them.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

**From:** Iris Leahy
**Sent:** Wednesday, December 14, 2022 12:47 PM
**To:** Matthew A. Morris <MMorris@sherin.com>
**Subject:** RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough

Hello Matt,

I will request the info from the town. However, it will take some time because they have to calculate the taxes and interested owed since the date of foreclosure.

Also, the town will not accept payment on the tax title unless ordered to by the Land Court if the judgment is vacated.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

**From:** Matthew A. Morris <MMorris@sherin.com>
**Sent:** Wednesday, December 14, 2022 11:06 AM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Subject:** RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough

Iris,

We are in the process of gathering the information you requested. Can you please provide the current payoff amount with an approximate breakdown of tax/interest, utility charges, legal fees, and any other charges? Regardless of whether the town assents to the motion to vacate, we still plan to pay off the full balance due in the next week or so.

Thanks,
Matt

**Matthew A. Morris, LL.M., Esq.**
Sherin and Lodgen LLP
101 Federal Street, 30th Floor

Boston, MA 02110
617.646.2130 (direct)
mmorris@sherin.com
https://www.sherin.com/attorneys/matthew-a-morris/

**From:** Iris Leahy <AttyLeahy@outlook.com>
**Sent:** Wednesday, December 14, 2022 10:56 AM
**To:** Matthew A. Morris <MMorris@sherin.com>
**Subject:** Westborough SPE, LLC - 231 Turnpike Road - Westborough

CAUTION: External Email

Hello Matthew,

I confirmed with my client, the Town of Westborough, they would be opposed to vacating the judgment in 19 TL 000768 on the above-referenced property.

As we discussed, please provide me with the information your clients have showing proof of title for the purchase of Westborough SPE, LLC. Additionally, has the corporation been revived in Delaware? Please note, if a motion to vacate is brought before the Land Court without proof of title, the town has requested I make a motion to oppose the motion and request payment from your clients of legal fees for the time it will take to hold a hearing.

I am awaiting confirmation from the town but I believe they have accepted a bid on the property. I'm not sure what the closing date is for the sale.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

PRIVILEGED AND CONFIDENTIAL: The information contained in this electronic message and any attachments are confidential property and intended only for the use of the addressee. Any interception, copying, accessing, or disclosure or distribution of this message is prohibited, and sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please notify the sender immediately and purge the message you received.

DISCLAIMER REGARDING ELECTRONIC TRANSACTIONS: If this communication relates to the negotiation of a contract or agreement, any so-called electronic transaction or electronic signature statutes shall not be deemed to apply to this communication; contract formation in this matter shall occur only upon the mutual delivery or exchange of manually-affixed original signatures on original documents.

If you have any questions regarding this disclaimer, please contact Sherin and Lodgen LLP at 617.646.2126

# Exhibit U

## AttyLeahy@outlook.com

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Friday, January 13, 2023 12:37 PM
**To:** Iris Leahy
**Subject:** Re: 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.
**Attachments:** WB SPE EIN LETTER0001.pdf; FORM 4506 TAX return.pdf

Hello Iris,

I am not opposed to rescheduling the hearing for February 9, 2023, at 2:00 pm.
Feel free to contact the Court and make the request. We will have enough money to redeem the property, including any additional legal fees.

We strongly believe that Jan Blaustein Scholes, the manager from whom we obtained the Bill of Sale, is a managing member of the LLC. To confirm that we have ordered Partnership Income Tax Return, Form 1065, from the IRS. Only a member manager has the authority to sign IRS Form 1065. This is more informational to show the IRS what annual distributions were.

See attachment.
Request for Copy of Tax Return from 1997 to 2007

Thanks,
Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

On Fri, Jan 13, 2023 at 10:29 AM Iris Leahy <AttyLeahy@outlook.com> wrote:

> Hello Mr. Akouete,
>
> Thank you for the below email. I am in the process of drafting my response to your motion. I haven't completed my work and have been working diligently. With the additional work to prepare for the Ex Parte hearing earlier this week, I need more time to be able to provide my response.
>
> I would like to again request that you ask the Court to mark the hearing up on your motion to vacate for February 9, 2023 at 2:00pm. I understand the Court marked the hearing up for January 19, 2023 at 10:00am, but as I advised you on January 5, 2023, this does not provide me with adequate time to prepare for this hearing. This was even before I had to prepare for the above-mentioned hearing this week.

# Exhibit V

**BILL OF SALE**

THIS BILL OF SALE, made as of this 21st day of November, 2022, by and between **WESTBOROUGH SPE, LLC.**, a Delaware corporation, whose mailing address is 2 Harrison Street 6th Floor San Francisco, CA 94105, (hereinafter referred to as "Seller") and **DENISE EDWARDS and LOLONYON AKOUETE** both whose post office address is 1241 Deer Pk Ave suite 1 #1051 North Babylon, NY 11703, as joint tenants, (hereinafter referred to as the "Buyer").

Whereas the Seller desires to sell and the Buyer desires to buy the business of a certain WESTBOROUGH SPE LLC now or previously being operated at 50 CALIFORNIA ST STE 3610 SAN FRANCISCO, CA 94111 and known as WESTBOROUGH SPE and all assets thereof, the parties hereto agree and covenant as follows:

1. The total purchase price for the name of the business, all online resources (websites, BBB listings, etc.), all assets and/or monies due is $646,000.00 dollars payable as follows:

a) $100 paid in cash; certified or bank checks, as a deposit upon execution of this Agreement, to be held by Seller.

b) $645,900.00 additional to be paid by check, check to be sent within 7 months of Buyer's receipt of this document.

2. The property to be sold hereunder shall be conveyed by this standard form Bill of Sale, duly executed by the Seller and/or an authorized representative of the Seller.

3. Seller warrants that there are no debts owed by Seller except those listed below:

Corporation Annual Tax Due: $1,593.00
Tax title: $391,541.93

~~Seller further agrees that if there is additional debt owed by Seller, not disclosed, Seller is solely responsible for that debt.~~

JS JBS.

4. If the Buyer fails to fulfill his obligations herein, all deposits made hereunder by the Buyer shall be retained by the Seller as liquidated damages.

5. This agreement for sale shall also serve as a bill of sale.

6. The Seller agrees that this Agreement is contingent upon the following condition:

Buyer being able to re-activate the business with any/all agencies that handle the regulation or recordation of the business.

7. All of the terms, representations and warranties shall survive the closing. This Agreement shall bind and inure to the benefit of the Seller and Buyer and their respective heirs, executors, administrators, successors and assigns.

Case 1:26-cv-10037-WGY Document 13-3 Filed 02/11/26 Page 133 of 549

8. If this Agreement shall contain any term or provision which shall be invalid or against public policy or if the application of same is invalid or against public policy, then, the remainder of this Agreement shall not be affected and shall remain in full force and effect.

9. For further clarity, the business in question was registered in the State of Delaware and was also registered as a foreign corporation in the State of Massachusetts. The tax identification number associated with the business was 94-3286768 and ID #: 000593094.

IN WITNESS WHEREOF, the party hereto have caused this instrument to be executed on the day and year dated below.

Jan Blaustein Scholes Dated 12/8/22
SELLER: Jan Blaustein Scholes, its President

State of Arizona

County of Maricopa

I, Billie J. Wahl, Notary Public, do hereby certify that Jan Blaustein Scholes (name of individual(s) whose acknowledgment is being taken), acting as President for Westborough SPE LLC, and swearing and affirming that he/she has authority to sell Westborough SPE LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument. Witness my hand and official seal this 8 day of December 2022 ______________________ (Official Seal)

Official Signature of Notary [signature]

Notary's printed or typed name Billie J. Wahl

Notary Public My commission expires: 02-28-2023

BILLIE J WAHL
Notary Public - Arizona
Maricopa County
Commission # 560937
My Comm. Expires Feb 28, 2023

# Exhibit W

LAND COURT
FILED

COMMONWEALTH OF MASSACHUSETTS

2023 JAN -4 PM 2:20

WORCESTER, ss.

LAND COURT
19 TL 000768

THE TOWN OF WESTBOROUGH,

Plaintiff,

v.

WESTBOROUGH SPE, LLC

Defendant.

**DEFENDANT WESTBOROUGH SPE, LLC'S MOTION TO VACATE FORECLOSURE JUDGMENT**

Defendant, Westborough SPE, LLC ("WSPE"), hereby moves this Honorable Court to vacate the judgment foreclosing WSPE's right of redemption dated January 5, 2022.

## I. FACTS

Until January 5, 2022, WSPE was the record owner of property located at 231 Turnpike Road in Westborough, Massachusetts, Worcester County Registry of Deeds at Book 19369, Page 75 (the "Property"). *See* Exhibit 1, *Title Examination Report Prepared by Michael H. Delaney, Esq. (Jul. 10, 2019)*, at 1.

WSPE was formed as a Delaware limited liability company on October 22, 1997. *See* Exhibit 2. On October 29, 1997, WSPE subsequently registered in Massachusetts as a foreign limited liability company. *See* Exhibit 3. According to its annual reports, WSPE's sole business purpose was to serve as the owner the Property. *See* Exhibit 4, (the "Annual Reports") (all providing that WSPE's business purpose is to serve as "owner of a theatre in Westborough, Massachusetts").

From 1997 to 2017, WSPE leased the Property to Interstate Theatres Corporation for use as a movie theatre. *See* Exhibit 1, at 6.

Babcock & Brown Administrative Services, Inc. ("BBAS") served as manager of WSPE since WSPE's formation in 1997. Beginning in 1997, Frances Jan Blaustein Scholes ("Jan"), then-president of BBAS, was authorized to execute, acknowledge, deliver, and record any recordable instrument on behalf of WSPE purporting to affect an interest in real property. *See* Exhibit 2. According to Annual Reports filed with the Massachusetts Secretary of Commonwealth, Dyann Blaine ("Dyann") was also authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property on behalf of WSPE. *See* Exhibit 4.

In 2004, Jan suffered her first major stroke, which left her physically and mentally incapable of properly executing her responsibilities as manager and real estate signatory for WSPE to their full extent. Thereafter, Jan reduced her responsibilities and eventually retired from BBAS in 2007. Upon Jan's retirement, Dyann took over Jan's roles and responsibilities for both BBAS and WSPE.

On November 20, 2007, Dyann filed a Certificate of Withdrawal in the Commonwealth of Massachusetts. *See* Exhibit 5. On April 24, 2008, Dyann Blaine also filed a Certificate of Withdrawal in the Commonwealth of Massachusetts for BBAS. *See* Exhibit 6, *Foreign Certificate of Withdrawal of BBAS.*

Babcock & Brown Limited ("BBL") went into liquidation in 2009. In a September 27, 2018 Annual Report to Creditors and Noteholders, Liquidator David Lombe addressed the Property and questions as to its ownership. *See* Exhibit 7, *Annual Report to Creditors and Noteholders of BBL*, at 3. The Liquidator states that after investigation and enquiries within the

Babcock & Brown Group, he determined that BBAS "managed the property on behalf of a third party and the property is not owned by BBL."

On December 28, 2018, the Turnpike Road Property was taken by the Town of Westborough (the "Town") for non-payment of real estate taxes. *See* Exhibit 8, *Foreclosure Complaint by Town of Westborough* (the "Complaint"). On July 8, 2019, the Town filed the Complaint with the Massachusetts Land Court that is the basis of this lawsuit. The Complaint provides as follows:

> [T]he following are the names and addresses of all persons known to the undersigned who have any interest in said land other than the plaintiff, to wit:
>
> **Westborough SPE, LLC**

The Complaint does not list the address of Westborough SPE, LLC, nor does it identify Jan as a person who has an interest in the Property.

The title examination report as filed with this Court on August 26, 2019, lists the equity owner and lessee, respectively, as the parties entitled to notice:

> Westborough SPE, LLC
> c/o Babcock & Brown Administrative Services, Inc. MANAGER
> 2 Harrison St, 6th Floor
> San Francisco, CA 94105-0000
> ATT'N: Dyann Blaine and/or F. Jan Bluestein
>
> Interstate Theatres Corporation
> One Exeter Plaza
> Boston, MA 02116

According to the Court docket, notices of the foreclosure proceedings were sent on September 22, 2020. This included a notice to Jan at 151 E. 31st, Apt. 28B, New York, NY 10016. On October 21, 2020, proof of unsuccessful service was filed with this Court related to such notice. Although Jan once lived at that address, she moved out in 2015 and never returned. On April 8, 2021, another notice by certified mail was sent to Jan,

this time at a different address: 888 Avenue of the Americas, New York, NY 10001. This notice was also returned as unsuccessful and filed with the Court on May 4, 2021.

On September 7, 2021, a registered process server attempted to serve Jan "by leaving at the last and usual place of abode of F. Jan Bluestein a/k/a Jan Blaustein, 34 Stern Lane, Atherton, California 94027 with a "Limited Assistance Representation (LAR) Document. Document placed at front gate with knowledge of male who answered electronic intercom." *See* Exhibit 9.

In 2006, Jan and her then-husband Myron Scholes ("Myron") purchased the property at 34 Stern Lane, Atherton, California 94027 (the "Stern Lane Property"), as joint owners. Jan and Myron lived together at the Stern Lane Property until 2013 when Myron filed for divorce, prompting Jan to move out of the Stern Lane Property and never return. On September 4, 2015, Jan and Myron, as joint owners, conveyed the Stern Lane Property to Myron individually pursuant to the terms of their divorce agreement.

On April 2, 2019, Jan's son Peter Blaustein ("Peter") filed a petition for appointment of himself as Jan's conservator and guardian with the Hawaii Third Circuit, Kona Division. *See* Exhibit 10, *Printable Docket Record for Jan's Conservatorship and Guardianship Proceeding*. On July 8, 2019, the Hawaii Third Circuit granted Peter's petition, finding that Jan "is an incapacitated person," that a "basis exist[s] for appointment of a conservator and guardian," and that Peter is qualified to serve in both capacities. (text for June 3, 2019 docket entry). Jan currently lives in an assisted living facility in New Mexico.

On January 5, 2022, this Court issued its final judgment of foreclosure in connection with the Town's tax taking of the Property.

On November 22, 2022, WSPE filed a Certificate of Revival in Delaware. *See* Exhibit 11, *WSPE Certificate of Revival - Delaware*. As of November 28, 2022, WSPE is duly formed and in good standing in Delaware. *See* Exhibit 12, *Delaware Good Standing of WSPE*. On December 12, 2022, WSPE filed an Application for Registration as Foreign Limited Liability Company in Massachusetts. *See* Exhibit 13, *Foreign LLC Application for Registration of WSPE*.

Shortly after reviving good standing status in Delaware and Massachusetts, WSPE filed a claim with the California Unclaimed Property Division ("CUPD") for approximately $1.2 million. *See* Exhibit 14. On December 14, 2022, the CUPD sent a reply letter to WSPE requesting additional information pursuant to the claim.

## II. APPLICABLE LAW

Motions to vacate a decree of foreclosure must be commenced within one year of the final judgment. M.G.L. c. 60, sec. 69A. Such motions may be granted if the court "after 'careful consideration, finds that to do so is required to accomplish justice.'" *Tallage LLC v. Meaney*, 2015 WL 4207424 (2015) (quoting *Town of Sharon*, 18 Mass. App. Ct. at 542)). Tax redemption statutes "are remedial in nature and are therefore 'interpreted liberally in favor of a person seeking to recover his land.'" *City of Pittsfield v. Randall*, 63 Mass. App. Unpub. 1107 (2005) (quoting *Union Trust Co. v. Reed*, 213 Mass. 199, 201 (1912)). This Court has recognized that "'the only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interests.'" *Tallage LLC*, 2015 WL 4207424. When the owner of the property pays the taxes, the statute has served its purpose.

Within the one-year period, courts may use their discretion to vacate a judgment for various reasons, including incapacity or mental illness. *Town of Sharon v. Kafka*, 18 Mass. App.

Ct. 541, 543 (1984). In *Tallage LLC v. Meaney*, this Court vacated its foreclosure judgment after the property owners filed a motion to vacate within one year of the Court's foreclosure decree, but after the property had been sold to a third party. *See generally* 2015 WL 4207427 (June 26, 2015). After a fact-intensive inquiry, the Court concluded that the property owners (the Meaneys) were overwhelmed due to health issues in the family. The Court credited the Meaneys' claim that they acted promptly to resolve the overdue water and sewer bills once they were able to focus on the past-due notices. The Court acknowledged that notice was delivered to the property owners and that they should have been more attentive; however, the Court determined that "extraordinary circumstances"—including that the owners were "overwhelmed with Mrs. Meaney's and the children's health issues at the time the notices were sent"—"justif[ied] this Court's exercise of discretion to vacate the foreclosure."

This Court has vacated foreclosure judgments without a showing of "extraordinary circumstances" when property owners were properly notified of the foreclosure proceedings, the owners filed a motion to vacate the foreclosure in the one-year period following the foreclosure decree, and the town has not transferred the property to a third party. *See, e.g., City of Pittsfield v. Randall*, 63 Mass. App. Ct. 1107 at *2 (2005) (unpublished opinion) (affirming vacation of foreclosure judgement where defendant received proper notice and "made no real effort to redeem the property until one month after a default decree had entered," without explanation for delay).

If the property owner files its motion to vacate after the one-year anniversary of the final foreclosure decree, this Court's discretion to vacate the foreclosure is typically limited to situations in which the property owner has been deprived of due process. *See Town of Russell v. Barlow*, 2016 WL 3745960, at *13 (Mass. Land Ct. July 13, 2016) ("While courts are consistent

in applying the statutory deadline, strict application of the one-year limitation may be excused when there has been a denial of due process.").

In *Jones v. Flowers*, the U.S. Supreme Court addressed a situation in which a property owner filed a motion to vacate after the town sold the property to a third party and after the time limit for post-sale redemption had passed. *See* 547 U.S. 220, 224 (2006). Even though the town published notice of the foreclosure sale in a local newspaper, the town attempted to serve the property owner by two separate certified mail letters sent to the address of the foreclosed property, and the property owner's ex-wife continued to live at the property at the time the certified mail envelopes were returned to the town unclaimed, the Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." The Court declined to prescribe the specific steps that the town should have taken to satisfy the property owner's due process rights, but determined that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals."

## III. <u>ANALYSIS</u>

As cases such as *Tallage LLC v. Meaney* and *City of Pittsfield v. Randall* demonstrate, courts have broad discretion to vacate a foreclosure decree when a motion to vacate is filed within one year of the judgement. As cases such as *Town of Russell v. Barlow* explain, the courts' discretion to vacate a foreclosure decree after one year is typically limited to instances of due process violations. In the instant case, WSPE files the motion to vacate within the one-year period, and Jan's strokes which significantly affected her physical and mental abilities should, in themselves, support the Court's exercise of discretion to grant the Motion to Vacate.

In addition to Jan's serious health issues, there is also a due process violation in this case because Jan was never properly served with notice of the foreclosure proceedings. After receiving two notices of unsuccessful service via U.S. certified mail, the Town should have, pursuant to *Jones v. Flowers*, taken additional steps to confirm Jan's correct physical address before "serving" notice on a male individual who lived at Jan's former residence six years after Jan deeded this property to her ex-husband pursuant to a divorce, especially when the deed and the divorce proceedings are public records that are easily accessible online.

The combination of WSPE's timely filing within the one-year period, Jan's serious health issues, and the due process violation related to improper service provides ample support for the Land Court's exercise of discretion to vacate the foreclosure decree.

**A. <u>Discretionary Factors</u>**

We respectfully ask the Court to consider the incidence of Jan's strokes, which left her physically and mentally incapacitated, as an extraordinary circumstance that significantly interfered with Jan's ability to focus on the past-due tax notices. Like the property owner in *Tallage LLC v. Meaney*, 2015 WL 4207427, Jan's serious health issues interfered with her ability to devote the necessary time or attention to addressing the past due taxes at the time these notices became due and during the initial foreclosure proceedings. On the date the Complaint was filed with this Court (July 8, 2019), Jan's son Peter Blaustein was appointed her conservator and guardian. Like the Meaneys, Jan took prompt action to respond to the foreclosure proceedings as soon as she was ready and able to do so. Once Jan was informed of the proceedings and the opportunity to reclaim the Property on behalf of WSPE, she took action to connect with those who were in a position to assist WSPE. Within the past two months, WSPE restored its "good standing" statuses in Delaware and Massachusetts, filed a claim for $1.2 million currently held

by the California Unclaimed Property Division ("CUPD"), and retained counsel to prepare this Motion to Vacate and other pleadings. WSPE reasonably anticipates that this $1.2 million will be more than enough to pay the past-due taxes, utility charges, and other fees required to properly exercise its right of redemption. WSPE is diligently pursuing the claim with the CUPD and anticipates that the CUPD will release these funds to WSPE within the next 90 days (on or before April 1, 2023).

Because the Property has not yet been transferred to a third party, only the Town and WSPE's interests should be considered as the Court weighs the various factors at issue in this case. As courts have indicated, tax redemption statutes should be interpreted in favor of the party seeking to recover the property. It is in WSPE's best interest to restore their title to the Property, and it is in the Town's best interest to receive full payment of the past-due taxes and fees that gave rise to these foreclosure proceedings in the first place.

**B. <u>Due Process Violation</u>**

In addition to the discretionary factors discussed in **Section III.A**, above, there is also a due process violation in this case because the Town never properly served Jan with notice of the foreclosure proceedings. As was the case in *Jones v. Flowers*, two U.S. certified mail packages (with two different New York addresses) intended to notify Jan of the proceedings were returned "undeliverable." The undelivered certified mail packages did not constitute sufficient service, as the Court docket indicates "unsuccessful service" for each package. The Town then hired a process server to attempt to serve Jan at a third address, 34 Stern Lane in Atherton, California, which the process server represented to be Jan's "last known address."

The process server indicated he left the notice at the front gate of 34 Stern Lane, with knowledge of a man who was heard over the intercom. Because Jan is not a man, the process

server's indication of "service" based on a male presence at the address should have informed the town that proper service was not made, and the Town should have taken additional steps to determine if this was Jan's residence considering the new information. We respectfully request this Court to take judicial notice that Jan's divorce from her ex-husband, Myron,[1] and the 2015 deed of the 34 Stern Lane property from Myron and Jan as joint owners to Myron individually are matters of public record.[2] If the Town had taken the next reasonable steps to attempt to confirm Jan's presence at the 34 Stern Lane property, the information would have revealed that (a) Jan no longer lived at the address, (b) Jan deeded her interest in the property to Myron approximately 6 years earlier, and (c) the only individual that the process server actually "served" was Myron.

After the certified mail notices were returned undelivered in *Jones v. Flowers,* the U.S. Supreme Court determined that this was insufficient notice, but declined to prescribe the specific steps that a town should take to satisfy a property owner's due process rights. Instead, the Court provided that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *See* 547 U.S. 220, 234 (2006). *Jones v. Flowers* is a residential foreclosure case in which the town attempted to serve the property owner at the exact property address that was the subject of the foreclosure—in that case, the town was found to have violated the property owner's due process rights by failing to take additional steps to determine his address after serving notice on the owner's daughter who was living in the property. In a commercial foreclosure case such as this, the Town should be held to the same (if not a higher) standard of due diligence in determining a proper service address for the property owner or

[1] The record of the divorce is accessible on the San Mateo Superior Court website, at https://odyportal-ext.sanmateocourt.org/Portal-External/Home/Dashboard/29 (insert "Scholes, Frances" into the search bar).
[2] The 2015 deed is accessible on the San Mateo County Clerk – Recorder Online Index, at https://apps.smcacre.org/recorderworks/ (insert "Scholes" into the Name search box).

representative thereof. Because the individual sought to be served in a foreclosure of abandoned commercial property is always going to reside at an address different then the property subject to the foreclosure proceedings, the Town must exercise some level of due diligence to determine the address of the property owner or the property owner's representative. While the town took some steps to locate Jan by identifying one of her former residential addresses (34 Stern Lane in Atherton), they should have conducted a more logical and diligent effort to locate Jan's current mailing address.

The Town should not be able to meet its standard of due diligence under *Jones v. Flowers* by simply picking multiple addresses that were connected to Jan at some distant point in the past without any indication that Jan was actually residing at any of these addresses. Delivering notice of the foreclosure proceedings to an unknown, unidentified, and unseen male at the Stern Lane Property was no more likely to apprise Jan of the proceedings than if notice were left at a random location. Accordingly, Jan was never properly served with notice of the foreclosure proceedings, which constitutes a due process violation pursuant to *Jones v. Flowers*.

## IV. REQUEST FOR RELIEF

WHEREFORE, Defendant Westborough SPE LLC respectfully moves the Court to vacate the judgment entered against them, allow them to pay outstanding taxes and fees on the Property, and exercise its right to redeem the Property.

Respectfully submitted,

WESTBOROUGH SPE,

LLC By its manager,

[signature]
________________________________

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
loloact2@gmail.com
(443) 447-3276

Dated: January 4, 2023

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

# Exhibit X

# PRINTABLE CASE VIEW

**Generated: 27-DEC-2023 04:55 AM**

**Search Criteria: Case ID or Citation Number: 3CG19100002K**

**1 record(s) total**

| | | |
|---|---|---|
| **Case ID:** 3CG19100002K - IN RE FRANCES JAN BLAUSTEIN SCHOLES<br>**Type:** CG - Conservatorship & Guardianship<br>**Status:** ACTIVE - Active Case<br>**Last Updated:** 15-Aug-2019 | **Filing Date:** TUESDAY, APRIL 2, 2019<br>**Court:** THIRD CIRCUIT<br>**Location:** KONA DIVISION | |

**Related Cases**

No related cases were found.

**Case Parties**

| Seq # | Assoc | End Date | Type | ID | Name / Aliases |
|---|---|---|---|---|---|
| 1 | Griswold, Rhonda L. | | Other | @4397033 | SCHOLES, FRANCES JAN BLAUSTEIN |
| 2 | SCHOLES, FRANCES JAN BLAUSTEIN | | Attorney | A3679 | Griswold, Rhonda L. |
| 3 | | | Other | D3CK3 | Third Circuit Court 3rd Division |

**Bail / Bond Information**

No Bails were found.

**Events**

| Event | Parties | Date | Time | Room | Location | Judge | Appearance Disposition |
|---|---|---|---|---|---|---|---|
| Petition(s) For | | 06/03/2019 | 09:30:00 | Third Circuit 3rd Division | KONA DIVISION | Kim , Robert | GRT-Granted |

**Dockets**

| Docket # | Date | Docket | Document Name | Parties | Filing Party |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | 04/02/2019 | Document Converted DOC ID: , Comments: ROBERT KIM) | PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN; EXHIBITS A-B; SCHEDULE OF PROPERTY AND PROPOSED BUDGET; ACCEPTANCE OF APPOINTMENT NOTICE OF HEARING (HRG 06/03/19 @ 9:30 AM JUDGE | All Case Parties | Griswold, Rhonda L. |
| 2 | 04/02/2019 | Document Converted DOC ID: , Comments: | ORDER SETTING DATE, TIME AND PLACE OF HEARING ON PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN | All Case Parties | Griswold, Rhonda L. |
| 3 | 04/02/2019 | Document Converted DOC ID: , Comments: | INFORMATION DESIGNATED AS CONFIDENTIAL PURSUANT TO RULE 9 OF THE HAWAII COURT RECORDS RULES (CONFIDENTIAL INFORMATION) | All Case Parties | Griswold, Rhonda L. |
| 4 | 04/08/2019 | Document Converted DOC ID: , Comments: A-B; SCHEDULE OF PROPERTY AND PROPOSED BUDGET ACCEPTANCE OF APPOINTMENT; NOTICE OF HEARING; (2) ORDER SETTING DATE, TIME AND PLACE OF HEARING AND PETITION FOR APPOINTMENT OF CONSERVATOR AND | RETURN AND ACKNOWLEDGMENT OF SERVICE (FRANCES JAN BLAUSTEIN SCHOLES ALSO KNOWN WAS JAN BLAUSTEINSCHOLES WAS SERVED 04/16/19 WITH 1) PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN, EXHIBITS | All Case Parties | Shelverton, Summer Gillenwater |
| 5 | 04/08/2019 | Document Converted DOC ID: , Comments: | GUARDIAN; AND (3) DOCUMENTS SUBMITTED UNDER SEAL [DR. IAN N. CHUN'S LETTER DATED 02/27/19 AND US PASSPORT] | All Case Parties | Shelverton, Summer Gillenwater |
| 6 | 05/13/2019 | Document Converted DOC ID: , Comments: | FLAG SHEET NO. 1-C [CG] (HRG 06/03/19 @ 9:00 AM JUDGE ROBERT KIM) | All Case Parties | Griswold, Rhonda L. |
| 7 | 05/13/2019 | Document Converted DOC ID: , Comments: | PROOF OF SERVICE BY MAIL; EXHIBIT A (HRG 06/03/19 @ 9:00 AM JUDGE ROBERT KIM) | All Case Parties | Griswold, Rhonda L. |
| 8 | 05/20/2019 | Document Converted DOC ID: , Comments: | WAIVER OF NOTICE AND CONSENT TO CONSERVATORSHIP AND GUARDIANSHIP (HRG 06/03/19 @ 9:30 AM JUDGE ROBERT KIM) | All Case Parties | Griswold, Rhonda L. |

| | | | | | |
|---|---|---|---|---|---|
| 15 | 06/03/2019 | Minutes<br>DIGITAL RECORDING CC3.19-89/ 2019-6-3/9:34-9:36 CLERK - N. LOO<br>APPEARANCES BY TELEPHONE: S. SHELVERTON PETER BLAUSTIN<br>SHELVERTON: NOTED THAT FUNDS ARE LIMITED TO ONLY $1500/MONTH THAT PROTECTED PERSON RECEIVES. ONLY THE CHECKING ACCOUNT IS NECESSARY. .<br>***RULING***<br>PETITION IS APPROVED AS NOTED RE CHECKING ACCOUNT RESPONDENT IS AN INCAPACITATED PERSON BASIS EXIST FOR APPOINTMENT OF A CONSERVATOR AND GUARDIAN PETER BLAUSTEIN IS APPOINTED AND IS QUALIFIED AS CONSERVATOR AND GUARDIAN<br>LETTERS OF CONSERVATORSHIP AND GUARDIANSHIP TO ISSUE APPOINTING PETER BLAUSTEIN FUNDS SHALL BE DEPOSITED IN CHECKING ACCOUNT ACCOUNTING TO BE MADE TO COURT TRI-ANNUALLY ANDAT TERMINATION,<br>COURT TO APPROVE BUDGET AND REASONABLE FEES AND COSTS TO BE PAID. SHELVERTON TO PREPARE THE ORDERS | | All Case Parties | JUDG Kim, Robert |
| 9 | 07/08/2019 | Document Converted<br>DOC ID: , Comments: | ORDER GRANTING PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN (HEARING: JUNE 3, 2019 AT 9:30 AM - JUDGE KIM) | All Case Parties | Griswold, Rhonda L. |
| 10 | 07/08/2019 | Document Converted<br>DOC ID: , Comments: | JUDGMENT PURSUANT TO ORDER GRANTING PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN (HEARING: JUNE 3, 2019 AT 9:30 AM JUDGE KIM) | All Case Parties | Griswold, Rhonda L. |

| | | | | | |
|---|---|---|---|---|---|
| 11 | 07/08/2019 | Document Converted DOC ID: , Comments: | LETTERS OF CONSERVATORSHIP AND GUARDIANSHIP | All Case Parties | Griswold, Rhonda L. |
| 12 | 07/08/2019 | Document Converted DOC ID: , Comments: | NOTICE OF APPOINTMENT OF CONSERVATOR AND GUARDIAN AND NOTICE OF RIGHT TO REQUEST MODIFICATION OR TERMINATION | All Case Parties | Griswold, Rhonda L. |
| 13 | 07/15/2019 | Document Converted DOC ID: , Comments: | AMENDED NOTICE OF APPOINTMENT OF CONSERVATOR AND GUARDIAN AND NOTICE OF RIGHT TO REQUEST MODIFICATION OR TERMINATION | All Case Parties | Griswold, Rhonda L. |
| 14 | 07/30/2019 | Document Converted DOC ID: , Comments: AMENDED NOTICE OF APPOINTMENT OF CONSERVATOR AND GUARDIAN AND NOTICE OF RIGHT TO REQUEST MODIFICATION OR TERMINATION WAS SERVED BY US MAIL TO FRANCES J.B. SCHOLES AND MICHAEL J. BLAUSTEIN) | CERTIFICATE OF SERVICE (ON JULY 25, 2019 FILED MARKED COPIES OF THE ORDER GRANTING PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN, JUDGMENT PURUANT THERETO, AND THE | All Case Parties | Griswold, Rhonda L. |

# Exhibit Y

CADES SCHUTTE
A Limited Liability Law Partnership

RHONDA L. GRISWOLD 3679-0
SUMMER G. SHELVERTON 9799-0
DANIEL C. VERMILLION 10568-0
PŌHAI NU'UHIWA CAMPBELL 10433-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
Telephone: (808) 521-9200

Attorneys for Petitioner
PETER L. BLAUSTEIN

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE CONSERVATORSHIP AND GUARDIANSHIP<br>OF<br>FRANCES JAN BLAUSTEIN SCHOLES, also known as JAN BLAUSTEIN SCHOLES,<br>Respondent. | CG. NO. 19-1-002K<br>(Conservator and Guardian of Adult)<br>**WAIVER OF NOTICE AND CONSENT TO CONSERVATORSHIP**<br>DATE: June 3, 2019<br>TIME: 9:320 a.m.<br>JUDGE: The Hon. Robert D.S. Kim |

**WAIVER OF NOTICE AND**
**CONSENT TO CONSERVATORSHIP**

I acknowledge receipt of filed copies of the Petition requesting the appointment of my son, PETER L. BLAUSTEIN, as my Conservator and Guardian, and the Notice of Hearing in this action.

I consent to the conservatorship and guardianship, the appointment of the proposed Conservator and Guardian, and waive the requirement that I receive notice of the hearing at least fourteen days before the hearing on the Petition.

ImanageDB:4821959.1

Also,

[✓] I do not want to be notified of any further hearings and understand that the Court may grant the Petition without further notice to me.

[ ] I want to be notified of all future hearings but do not require that I be given at least fourteen days advance notice.

DATED: Kamuela, Hawaii, April 19, 2019.
(Date)

Frances Jan Blaustein Scholes
Print Name: FRANCES JAN BLAUSTEIN SCHOLES
Address: 68-1122 N. Kaniku Drive. No. 103
Kamuela, HI 96743

# Exhibit Z

AFFIDAVIT OF PETER L. BLAUSTEIN

I, Peter L. Blaustein, attest and state the following of my own personal knowledge:

1. F. Jan Blaustein a/k/a Jan Blaustein Scholes is my mother and prefers to be addressed as Jan (hereinafter referred to as "Jan").
2. Jan is legally considered an incapacitated person.
3. Since September 11, 2014, I have been authorized as the "attorney-in-fact" or "agent" for Jan via a Power of Attorney. Therefore, I was granted all powers as her agent and/or her attorney-in-fact.
4. On June 3, 2019, I was appointed as Jan's conservator and court-appointed guardian upon signing the Waiver of Notice and Consent to Conservatorship.
5. Jan and I were approached by Denise Edwards and Loloynon Akouete who offered to investigate and attempt to reunite Jan with unclaimed property in California. The unclaimed property was a checking account owned by Westborough SPE LLC.
6. I consented to the assistance and gave permission for Jan to sign a Claim for Abandoned Property.
7. I did not give permission or consent for Jan to sign the Bill of Sale dated November 21, 2022, produced by Loloynon Akouete and/or Denise Edwards. I did not approve of Jan executing said document.
8. Lolonyon Akouete and Denise Edwards were aware Jan lacked capacity and that I was her legal guardian, and they did not involve me in the Bill of Sale contract process or seek my consent for Jan to sign it.

Case 23-40709 Doc 126-3 Filed 02/16/24 Entered 02/16/24 ... Page 157 of 549

9. I do not believe the Bill of Sale contract terms are reasonable.

10. I do not believe Jan is or ever was the legal or rightful owner of Westborough SPE, LLC and/or the locus.

11. I have been in contact with Dyann Blaine (a previous employee of Babcock & Brown). Dyann Blaine does not think Jan has any legal interest in Westborough SPE, LLC and/or the locus.

12. I have instructed Jan to disengage from and cease contact with Lolonyon Akouete and Denise Edwards.

Signed under the pains and penalties of perjury this 3rd day of May, 2023.

[signature]

Peter L. Blaustein

STATE OF CALIFORNIA

County of San Mateo Date: 5/3/2023

On this day, before me, the undersigned notary public, personally appeared Peter L. Blaustein, proved to me on the basis of satisfactory evidence such as Drivers License (CA) to be the person whose name is signed on the preceding or attached document and, who subscribed and swore to or affirmed before me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Notary Public Signature: [signature]
Notary Public Name: Dina N. Kolesnikov
My Commission Expires: 12.12.2025

(Seal)

DINA N. KOLESNIKOV
COMM. #2386495
Notary Public - California
San Mateo County
My Comm. Expires Dec. 12, 2025

# Exhibit AA

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Saturday, January 7, 2023 6:37 PM
**To:** David Ferris
**Subject:** 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.
**Attachments:** 19 TL 000768 Town of Westborough v. Westborough SPE, LLC.pdf; Ex Parte Motion for Approval of Memorandum of Lis Pendens.pdf; 19 TL 000768 HPS - Summons and Hearing Notice.pdf; Verified Complaint (with exhibits).pdf

**Caution**: External (info@smartinvestorsllc.com)

First-Time Sender Details

Report This Email FAQ Skout Email Protection

David,

See attached:
Motion to Vacate foreclosure Judgment for 231 Turnpike Road property.
Ex Parte Motion for Approval of Memorandum of Lis Penden.

The hearing for the Ex Parte Motion will be on Tuesday 01/10/2023 at 09:00 AM.
The hearing for the Vacation of Foreclosure Judgment is on 01/19/2023. At 02:00 PM.

Thanks
Lolo

# Exhibit BB

12:41 34

1

L DF

2 People >

iMessage
Mon, Jan 9 at 6:22 PM

David Ferris

Lolo,

My atty Brian Charville copied on this note tried you earlier today to discuss the 231 Turnpike matter.

Dave Ferrid

DF Ferris

Lolo

L Hi Dave, sorry I am in a meeting. When will be a good time to call back?

David Ferris

Anytime is fine

DF We should be free anytime tmrw am after 8:15

Lolo

L Ok, I will call tomorrow right after 8:15

Tue, Jan 10 at 8:22 AM

Lolo

Good morning, I am ready for a

iMessage

12:41 34

L DF
2 People >

Thank you for the link. To be clear, I represent only David and his company, and I will not be representing you or Westborough SPE, LLC. Please do send the link for the next hearing when you receive it, so that I may continue to monitor it for David. Thank you again

Lolo

Dave, I need help to find a lawyer that can represent the the LLC. There is no benefit to you for monitoring the case if I don't win. Can you help?

I have at least one document showing who may be the equity owner of the LLC.

Tue, Jan 10 at 11:03 AM

Please feel free to send along so I may review for David - bcharville@ ferrisdevelopment.com
Thank you

Lolo

Hey Brian, I don't think I should be

iMessage

12:42 34

L DF

2 People >

Lolo

Hey Brian, I don't think I should be sending you any more information if you were just going to be monitoring the case for David. I needed an attorney. That's why I reached out to Dave in the first place.

I will continue to represent David. I had understood that you two were discussing a potential sale of the property once you redeem it. Anything that you can send to substantiate your ownership of the LLC will help him evaluate a potential purchase of the property.

Lolo

If you are going to help me find an attorney, then I'll share information with you. If not, then good luck.

Mon, Jan 16 at 8:55 AM

Lolo

Good morning Dave, the Town is asking us for proof of funds do you know anybody that can help? If not that's Ok.

iMessage

12:42

2 People

WB SPE EIN LETTER0001.pdf
PDF Document · 2.3 MB

FORM 4506 TAX return.pdf
PDF Document · 2.1 MB

L

We believe that Jan Blaustein Scholes, is a managing member of the LLC. To confirm that we have ordered Partnership Income Tax Return, Form 1065, from the IRS. Only a member manager has the authority to sign IRS Form 1065. This is more informational to show the IRS what annual distributions were.

L

Thank you. I will review for David.

Tue, Jan 17 at 2:40 PM

Lolo, do you have copies of any Operating Agreements of the LLC that you are able to send me? Thank you

Wed, Jan 18 at 3:14 PM

Lolo

iMessage

12:42

L DF

2 People >

Wed, Jan 18 at 3:14 PM

Lolo

**Operating A WSP LLC.pdf**
PDF Document · 9.1 MB

Brian, we couldn't find any original operating Agreement or Corporate Resolutions. We just put this one in please.

Thu, Jan 26 at 10:08 AM

Lolo

Brian, do you by any chance have an Appraisal for the 231 Turnpike rd property? A lender is asking for it. We want to have the funds to redeem the property at the hearing.

Hi Lolo - no, during the RFP process we didn't have reason to order an appraisal.

Lolo

Ok, thanks!

I think Mr. Ferris may be willing to post the redemption money if you're successful in vacating the

iMessage

12:42

L DF

2 People

We sound have the tax returns by March 8, which we hope will reveal the members.

Thank you, we will review and be back in touch.

Tue, Feb 28 at 5:59 PM

Lolo

Brian, I am starting to see the authority issues we have in this case.

I contacted Walter Horst, Chief Financial Officer at Babcock & Brown. He is the person who signed the dissolution Of Babcock & Brown Parallel Member LLC. He is heading out on an international trip. He will be back in the middle of next week.

BBPM is the Manager of Westborough SPE, LLC. So, reviving BBPM and having it join the case should solve the authority issue.

BABCOCK & BROWN

iMessage

12:43

L DF

2 People

Tue, Mar 14 at 9:14 PM

Lolo

Brian, when can I get the LOI? My attorney Alvin Nathanson said that we need proof of funds immediately. I will not have any chance of getting the foreclosure Judgment vacat without redemption funds proof.

I am very close to finding the beneficial owner of the property.

Thank you. I was reviewing the Town's most recent filing from last week. They are really digging in on Jan's mental capacity. I can shoot the LOI over to you now

Lolo

Thank you so much I will really appreciate that.

TFW Wi-Fi 7:22 AM

Inbox 2 Messages

WH Walter Horst Yesterday
To: Lolonyon Akouete

**RE: Westborough SPE, LLC**

The issue here is that we resigned as Manager of Westborough, primarily because we could not identify the ultimate owners of Westborough. After resignation as Manager of Westborough we liquidated BB Administrative Services through merger and ultimately liquidated BB Parallel ... It

iMessage

12:43

L DF
2 People >

Please have Scott email me an example if he's seen that done before. We would like to see what security can be offered so that Dave can become comfortable with the potential idea of extending that much on paper without a Court having yet ruled in your favor.

Lolo
Ok

Fri, Mar 17 at 3:49 PM

Lolo
Brian, I just emailed you a draft Standby Letter of Credit. Please let me know if this is possible, if not, I can pursue other avenues.

Mon, Mar 20 at 2:01 PM

Lolo
Hi Brian, I have been trying to negotiate with Peter, Jan's Guardian, to get the authority I need to vacate the foreclosure judgment. But, he's not responding, so I am switching focus to the TMF group.

iMessage



12:43

L DF

2 People

Fri, Mar 31 at 5:50 PM

Lolo

Hi Brian, I run out of money. I don't have anymore funds to continue with the case. Do you think Dave maybe interested in being a third-party guarantor and cover my retainer fee?

I finally have a document proving that (Mignonette Investments Limited) is the only (Westborough SPE, LLC) member. Mignonette Investments Limited was suspended for nonpayment of fees. I am in the process of restoring its registration.

I asked Scott to file a lis pendens on Monday. It should only take five days to have a hearing. If it is approved, then I know I have a good case. If it is not, then I will cut my losses.

Mail 5:18 PM

SS

2 People

maybe the end of this case for now until I get more money.

Scott A. Schlager

If we are to proceed, you must promise never to communicate with Town Counsel without our

iMessage

12:44

L DF

2 People

Tue, May 23 at 7:19 PM

Lolo

Hi Brian, If we are able to get Peter to ratify and confirm the Bill of Sale, will Dave be willing to pay the attorneys fees so we can finish with the case?

Please let us know what you plan to contribute to the current balance and future amounts of Scott's fees. Thank you

Lolo

Brian, what I can contribute right now is time and energy. I do not have any more money.

From last week's hearing it seems like the case is at a point where a lot of lawyering is needed, and that requires money

Lolo

I agree that's why I'm telling Scott that we should negotiate instead of fighting in court.

I'll reply tonight on the chain with him regarding the approach to town counsel

iMessage

# Exhibit CC

# LIMITED LIABILITY COMPANY AGREEMENT

**of**

# WESTBOROUGH SPE LLC

**This Limited Liability Company Agreement** (the "Agreement") made and entered into this 8th day of December 2022 (the "Execution Date"),

**BETWEEN:**

Denise Edwards of 1241 DEER PARK AVE, SUITE 1# 1051, and
Lolonyon Akouete of 1241 DEER PARK AVE, SUITE 1# 1051

(Individually the "Member" and collectively the "Members").

**BACKGROUND:**

A. The Members wish to associate themselves as members of a limited liability company.

B. The terms and conditions of this Agreement will govern the Members within the limited liability company.

**IN CONSIDERATION OF** and as a condition of the Members entering into this Agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Members agree as follows:

**Formation**

1. By this Agreement, the Members form a Limited Liability Company (the "Company") in accordance with the laws of the State of Delaware. The rights and obligations of the Members will be as stated in the Delaware Limited Liability Company Act (the "Act") except as otherwise provided in this agreement.

**Name**

2. The name of the Company will be WESTBOROUGH SPE LLC.

**Purpose**

3. To engage in and conduct any and all lawful business...

**Term**

4. The Company will continue until terminated as provided in this Agreement or may dissolve under conditions provided in the Act.

**Place of Business**

5. The Principal Office of the Company will be located at 1241 DEER PARK AVE, SUITE 1 # 1051 or such other place as the Members may from time to time designate.

**Capital Contributions**

6. The following is a list of all Members and their Initial Contributions to the Company. Each of the Members agree to make their Initial Contributions to the Company in full, according to the following terms:

| Member | Contribution Description | Value of Contribution |
|---|---|---|
| Denise Edwards | $3,000 wired transferred to an attorney for legal services, $430.00 to order Tax documents, $150.00 to Jan Blaustein Scholes-bill of sale deposit, mailing to Ka City IRS and Ca state controller's office. $85.15, paid taxes owed in Delaware $796.50, $169.00 paid for certificate of revive, revive course training $150.00, sweat equity 1,219.35. | $5,000.00 |
| Lolonyon Akouete | $2,000 wired transferred to attorney for legal services. Court documents purchased. $600, paid taxes owed in Delaware $796.50, $169.00 paid for certificate of revive, revive course training $150.00, sweat equity 1,284.50 | $5,000.00 |

**Allocation of Profits/Losses**

7. Subject to the other provisions of this Agreement, the Net Profits or Losses, for accounting purposes, will accrue to and be borne by the Members in equal proportions.

8. Each Member will receive an equal share of any Distribution.

9. No Member will have priority over any other Member for the distribution of Net Profits or Losses.

**Nature of Interest**

10. A Member's Interest in the Company will be considered personal property.

**Withdrawal of Contribution**

11. No Member will withdraw any portion of their Capital Contribution without the unanimous consent of the other Members.

**Liability for Contribution**

12. A Member's obligation to make their required Capital Contribution can only be compromised or released with the consent of all remaining Members or as otherwise provided in this Agreement. If a member does not make the Capital Contribution when it is due, he is obligated at the option of any remaining Members to contribute cash equal to the agreed value of the Capital Contribution. This option is in addition to and not in lieu of any other rights, including the right to specific performance that the Company may have against the Member.

**Additional Contributions**

13. No Member will be required to make Additional Contributions. Any changes to Capital Contributions will not affect any Member's Interests except with the unanimous consent of the Members.

14. Any advance of money to the Company by any Member in excess of the amounts provided for in this Agreement or subsequently agreed to, will be deemed a debt due from the Company rather than an increase in the Capital Contribution of the Member. This liability will be repaid with interest at such rates and times to be determined by a majority of the Members. This liability will not entitle the lending Member to any increased share of the Company's profits nor to a greater voting power. Repayment of such debts will have priority over any other payments to Members.

**Capital Accounts**

15. An individual capital account (the "Capital Account") will be maintained for each Member and their Initial Contributions will be credited to this account. Any Additional Contributions made by any Member will be credited to that Member's individual Capital Account.

**Interest on Capital**

16. No borrowing charge or loan interest will be due or payable to any Member on their agreed Capital Contribution inclusive of any agreed Additional Contributions.

**Management**

17. Management of this Company is vested in the Members.

**Authority to Bind Company**

18. Any Member has the authority to bind the Company in contract.

**Duty of Loyalty**

19. While a person is a Member of the Company, and for a period of at least one year after that person ceases to be a member, that person will not carry on, or participate in, a similar business to the business of the Company within any market regions that were established or contemplated by the Company before or during that person's tenure as Member.

**Duty to Devote Time**

20. Each Member will devote such time and attention to the business of the Company as the majority of the Members will from time to time reasonably determine for the conduct of the Company's business.

**Member Meetings**

21. A meeting may be called by any Member providing that reasonable notice has been given to the other Members.

22. Regular meetings of the Members will be held only as required.

**Voting**

23. Each Member will have a single equal vote on any matter.

**Admission of New Members**

24. New Members may be admitted into the Company by unanimous approval from existing partners.

**<u>Voluntary Withdrawal of a Member</u>**

25. A Member may not withdraw from the Company without the unanimous consent of the remaining Members. Any such unauthorized withdrawal will be considered a wrongful dissociation and a breach of this Agreement. In the event of any such wrongful dissociation, the withdrawing Member will be liable to the remaining Members for any damages incurred by the remaining Members including but not limited to the loss of future earnings.

26. The voluntary withdrawal of a Member will have no effect upon the continuance of the Company.

27. It remains incumbent on the withdrawing Member to exercise this dissociation in good faith and to minimize any present or future harm done to the remaining Members as a result of the withdrawal.

**<u>Involuntary Withdrawal of a Member</u>**

28. Events leading to the involuntary withdrawal of a Member from the Company will include but not be limited to: death of a Member; Member mental incapacity; Member disability preventing reasonable participation in the Company; Member incompetence; breach of fiduciary duties by a Member; criminal conviction of a Member; Operation of Law against a Member or a legal judgment against a Member that can reasonably be expected to bring the business or societal reputation of the Company into disrepute. Expulsion of a Member can also occur on application by the Company or another Member, where it has been judicially determined that the Member: has engaged in wrongful conduct that adversely and materially affected the Company's business; has willfully or persistently committed a material breach of this Agreement or of a duty owed to the Company or to the other Members; or has engaged in conduct relating to the Company's business that makes it not reasonably practicable to carry on the business with the Member.

29. The involuntary withdrawal of a Member will have no effect upon the continuance of the Company.

**<u>Dissociation of a Member</u>**

30. In the event of either a voluntary or involuntary withdrawal of a Member, if the remaining Members elect to purchase the interest of the withdrawing Member, the remaining Members will serve written notice of such election, including the purchase price and method and schedule of payment for the withdrawing Member's Interests, upon the withdrawing Member, their executor, administrator, trustee, committee or analogous fiduciary within a reasonable period after acquiring knowledge of the change in circumstance to the affected Member. The purchase amount of any buyout of a Member's Interests will be determined as set out in the Valuation of Interest section of this Agreement.

31. Valuation and distribution will be determined as described in the Valuation of Interest section of this Agreement.

32. The remaining Members retain the right to seek damages from a dissociated Member where the dissociation resulted from a malicious or criminal act by the dissociated Member or where the dissociated Member had breached their fiduciary duty to the Company or was in breach of this Agreement or had acted in a way that could reasonably be foreseen to bring harm or damage to the Company or to the reputation of the Company.

33. A dissociated Member will only have liability for Company obligations that were incurred during their time as a member. On dissociation of a Member, the Company will prepare, file, serve, and publish all notices required by law to protect the dissociated Member from liability for future Company obligations.

34. Where the remaining Members have purchased the interest of a dissociated Member, the purchase amount will be paid in full, but without interest, within 90 days of the date of withdrawal. The Company will retain exclusive rights to use of the trade name and firm name and all related brand and model names of the Company.

**Right of First Purchase**

35. In the event that a Member's Interest in the Company is or will be sold, due to any reason, the remaining Members will have a right of first purchase of that Member's Interest. The value of that interest in the Company will be the lower of the value set out in the Valuation of Interest section of this Agreement and any third party offer that the Member wishes to accept.

**Assignment of Interest**

36. In the event that a Member's interest in the company is transferred or assigned as the result of a court order or Operation of Law, the trustee in bankruptcy or other person acquiring that Member's Interests in the Company will only acquire that Member's economic rights and interests and will not acquire any other rights of that Member or be admitted as a Member of the Company or have the right to exercise any management or voting interests.

**Valuation of Interest**

37. In the event of a dissociation or the dissolution of the Company, each Member will have an equal financial interest in the Company.

38. In the absence of a written agreement setting a value, the value of the Company will be based on the fair market value appraisal of all Company assets (less liabilities) determined in accordance

with generally accepted accounting principles (GAAP). This appraisal will be conducted by an independent accounting firm agreed to by all Members. An appraiser will be appointed within a reasonable period of the date of withdrawal or dissolution. The results of the appraisal will be binding on all Members. The intent of this section is to ensure the survival of the Company despite the withdrawal of any individual Member.

39. No allowance will be made for goodwill, trade name, patents or other intangible assets, except where those assets have been reflected on the Company books immediately prior to valuation.

**Dissolution**

40. The Company may be dissolved by a unanimous vote of the Members. The Company will also be dissolved on the occurrence of events specified in the Act.

41. Upon Dissolution of the Company and liquidation of Company property, and after payment of all selling costs and expenses, the liquidator will distribute the Company assets to the following groups according to the following order of priority:

    a. in satisfaction of liabilities to creditors except Company obligations to current Members.

    b. in satisfaction of Company debt obligations to current Members; and then

    c. to the Members based on Member financial interest, as set out in the Valuation of Interest section of this Agreement.

**Records**

42. The Company will at all times maintain accurate records of the following:

    a. Information regarding the status of the business and the financial condition of the Company.

    b. A copy of the Company federal, state, and local income taxes for each year, promptly after becoming available.

    c. Name and last known business, residential, or mailing address of each Member, as well as the date that person became a member.

    d. A copy of this Agreement and any articles or certificate of formation, as well as all amendments, together with any executed copies of any written powers of attorney

pursuant to which this Agreement, articles or certificate, and any amendments have been executed.

e. The cash, property, and services contributed to the Company by each Member, along with a description and value, and any contributions that have been agreed to be made in the future.

43. Each Member has the right to demand, within a reasonable period of time, a copy of any of the above documents for any purpose reasonably related to their interest as a Member of the Company, at their expense.

**Books of Account**

44. Accurate and complete books of account of the transactions of the Company will be kept in accordance with generally accepted accounting principles (GAAP) and at all reasonable times will be available and open to inspection and examination by any Member. The books and records of the Company will reflect all the Company's transactions and will be appropriate and adequate for the business conducted by the Company.

**Banking and Company Funds**

45. The funds of the Company will be placed in such investments and banking accounts as will be designated by the Members. All withdrawals from these accounts will be made by the duly authorized agent or agents of the Company as appointed by unanimous consent of the Members. Company funds will be held in the name of the Company and will not be commingled with those of any other person or entity.

**Audit**

46. Any of the Members will have the right to request an audit of the Company books. The cost of the audit will be borne by the Company. The audit will be performed by an accounting firm acceptable to all the Members. Not more than one (1) audit will be required by any or all of the Members for any fiscal year.

**Fiscal Year End**

47. The fiscal year end of the Company is the 31st day of December.

**Tax Treatment**

48. This Company is intended to be treated as a corporation, for the purposes of Federal and State Income Tax.

**Annual Report**

49. As soon as practicable after the close of each fiscal year, the Company will furnish to each Member an annual report showing a full and complete account of the condition of the Company including all information as will be necessary for the preparation of each Member's income or other tax returns. This report will consist of at least:

a. A copy of the Company's federal income tax returns for that fiscal year.

b. Income statement.

c. Balance sheet.

d. Cash flow statement.

e. A breakdown of the profit and loss attributable to each Member.

**Goodwill**

50. The goodwill of the Company will be assessed at an amount to be determined by appraisal using generally accepted accounting principles (GAAP).

**Governing Law**

51. The Members submit to the jurisdiction of the courts of the State of Delaware for the enforcement of this Agreement or any arbitration award or decision arising from this Agreement.

**Force Majeure**

52. A Member will be free of liability to the Company where the Member is prevented from executing their obligations under this Agreement in whole or in part due to force majeure, such as earthquake, typhoon, flood, fire, and war or any other unforeseen and uncontrollable event where the Member has communicated the circumstance of the event to any and all other Members and where the Member has taken any and all appropriate action to satisfy his duties and obligations to the Company and to mitigate the effects of the event.

**Forbidden Acts**

53. No Member may do any act in contravention of this Agreement.

54. No Member may permit, intentionally or unintentionally, the assignment of express, implied or apparent authority to a third party that is not a Member of the Company.

55. No Member may do any act that would make it impossible to carry on the ordinary business of the Company.

56. No Member will have the right or authority to bind or obligate the Company to any extent with regard to any matter outside the intended purpose of the Company.

57. No Member may confess a judgment against the Company.

58. Any violation of the above forbidden acts will be deemed an Involuntary Withdrawal and may be treated accordingly by the remaining Members.

**Indemnification**

59. All Members will be indemnified and held harmless by the Company from and against any and all claims of any nature, whatsoever, arising out of a Member's participation in Company affairs. A Member will not be entitled to indemnification under this section for liability arising out of gross negligence or willful misconduct of the Member or the breach by the Member of any provisions of this Agreement.

**Liability**

60. A Member or any employee will not be liable to the Company or to any other Member for any mistake or error in judgment or for any act or omission believed in good faith to be within the scope of authority conferred or implied by this Agreement or the Company. The Member or employee will be liable only for any and all acts and omissions involving intentional wrongdoing.

**Liability Insurance**

61. The Company may acquire insurance on behalf of any Member, employee, agent or other person engaged in the business interest of the Company against any liability asserted against them or incurred by them while acting in good faith on behalf of the Company.

**Life Insurance**

62. The Company will have the right to acquire life insurance on the lives of any or all of the Members, whenever it is deemed necessary by the Company. Each Member will cooperate fully with the Company in obtaining any such policies of life insurance.

**Actions Requiring Unanimous Consent**

63. The following actions will require the unanimous consent of all Members:

a. Incurring Company liabilities over $0.00.

b. Incurring a single transaction expense over $0.00.

c. Endangering the ownership or possession of Company property including selling, transferring or loaning any Company property or using any Company property as collateral for a loan.

d. Releasing any Company claim except for payment in full.

**Amendment of this Agreement**

64. No amendment or modification of this Agreement will be valid or effective unless in writing and signed by all Members.

**Title to Company Property**

65. Title to all Company property will remain in the name of the Company. No Member or group of Members will have any ownership interest in Company property in whole or in part.

**Miscellaneous**

66. Time is of the essence in this Agreement.

67. This Agreement may be executed in counterparts.

68. Headings are inserted for the convenience of the Members only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine gender include the feminine gender and vice versa. Words in a neutral gender include the masculine gender and the feminine gender and vice versa.

69. If any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the Members' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

70. This Agreement contains the entire agreement between the Members. All negotiations and understandings have been included in this Agreement. Statements or representations that may have been made by any Member during the negotiation stages of this Agreement, may in some

Case 1:26-cv-10037-MGY Document 13-3 Filed 02/17/26 Page 183 of 549



way be inconsistent with this final written Agreement. All such statements have no force or effect in respect to this Agreement. Only the written terms of this Agreement will bind the Members.

71. This Agreement and the terms and conditions contained in this Agreement apply to and are binding upon each Member's successors, assigns, executors, administrators, beneficiaries, and representatives.

72. Any notices or delivery required here will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the Members at the addresses contained in this Agreement or as the Members may later designate in writing.

73. All of the rights, remedies and benefits provided by this Agreement will be cumulative and will not be exclusive of any other such rights, remedies and benefits allowed by law.

**Definitions**

74. For the purpose of this Agreement, the following terms are defined as follows:

a. "Additional Contribution" means Capital Contributions, other than Initial Contributions, made by Members to the Company.

b. "Capital Contribution" means the total amount of cash, property, or services contributed to the Company by any one Member.

c. "Distributions" means a payment of Company profits to the Members.

d. "Initial Contribution" means the initial Capital Contributions made by any Member to acquire an interest in the Company.

e. "Member's Interests" means the Member's collective rights, including but not limited to, the Member's right to share in profits, Member's right to a share of Company assets on dissolution of the Company, Member's voting rights, and Member's rights to participate in the management of the Company.

f. "Net Profits or Losses" means the net profits or losses of the Company as determined by generally accepted accounting principles (GAAP).

g. "Operation of Law" means rights or duties that are cast upon a party by the law, without any act or agreement on the part of the individual, including, but not limited to, an assignment for the benefit of creditors, a divorce, or a bankruptcy.

h. "Principal Office" means the office whether inside or outside the State of Delaware where the executive or management of the Company maintain their primary office.

i. "Voting Members" means the Members who belong to a membership class that has voting power. Where there is only one class of Members, then those Members constitute the Voting Members.

**IN WITNESS WHEREOF** the Members have duly affixed their signatures under hand and seal on this 18th day of January 2023.

**SIGNED, SEALED, AND DELIVERED**

in the presence of:

Witness: [signature] (Sign)

Witness Name: Dawn M Petrillo

[signature]

Denise Edwards (Member)

SAL F MANGANO NOTARY NO. 01MA6132339 QUALIFIED IN SUFFOLK COUNTY COMM. EXP. 08-22-2025 PUBLIC STATE OF NEW YORK

[signature] 1/18/2023

**SIGNED, SEALED, AND DELIVERED**

in the presence of:

Witness: [signature] (Sign)

Witness Name: Jonathan Tercero

[signature]

Lolonyon Akouete (Member)

JOEL VOZZO
Notary Public, State of New York
No. 01VO6213484
Qualified in Ulster County
Commission Expires 11/09/25

[signature] 1/18/23

# Exhibit DD

COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT

SUFFOLK, ss.

LAND COURT
CASE NO. 19 TL 000768

TOWN OF WESTBOROUGH,

Plaintiff,

v.

WESTBOROUGH SPE, LLC

Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WESTBOROUGH SPE, LLC'S MOTION TO VACATE FORECLOSURE JUDGMENT**

Now comes, the Plaintiff, Town of Westborough (the "Town") and hereby respectfully submit their Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment. The Town opposes the Motion to Vacate Final Judgment as the Motion is not supported by facts and evidence to prove the right title and interest in the locus by way of purchase of the company previously holding title to the locus, Westborough SPE, LLC.

As evidenced by the information presented below by the Plaintiff in opposition, Defendant's motion is clearly filed for the sole and exclusive monetary benefit of Denise Edwards and Lolonyon Akouete (hereinafter referred to collectively as "Defendant") and said motion should be denied with prejudice. The Town is concerned by the motives and true moving party behind Defendant's motion.

## I. FACTUAL BACKGROUND

The locus, a parcel of commercial real estate located at 231 Turnpike Road in the Town of Westborough, and was a movie theater in operation by Regal Cinemas (a/k/a Interstate Theaters Corporation) until 2017 but has been vacant and deteriorating since.

The land where the movie theater is located is subdivided into three separate parcels and is described by some as a mall and/or a plaza. The three parcels in the mall share common area maintenance expenses by a Reciprocal Covenants, Easements and Restrictions Agreement by which 57% of the common area maintenance and snow removal expenses are to be paid by the owner of the locus.

Taxes and common expenses have not been paid since Regal Cinemas (a/k/a Interstate Theaters) ceased operation and occupancy of the locus. While Regal Cinemas (a/k/a Interstate Theaters Corporation) occupied the locus, they were making payments for real estate taxes, common expenses, and to an assignment of lease mortgage described below.

In the Spring of 2017, Regal Cinemas (a/k/a Interstate Theaters Corporation) attempted to secure a lease extension to continue their occupancy of the locus. To do so Robbie Pope of Regal Cinemas (a/k/a Interstate Theaters Corporation) contacted Allen Hight, of Northside Realty Trust (NRT). NRT who previously managed and leased the two non-locus parcels in the mall prior to those two non-locus parcels being sold to Mobile Street LLC. *See* Exhibit 22 (Exhibit C therein). At the time of Regal Cinemas' (a/k/a Interstate Theaters Corporation) attempt to secure a lease extension, the locus was owned by Westborough SPE, LLC and was not managed by NRT and/or was not owned by Mobile Street LLC. *See* Exhibit 22 (Exhibit C therein).

Prior to the title vesting in Westborough SPE, LLC, it was the understanding of Mr. Hight of NRT that Hoyts Cinema was planning to take title to the property and retained Babcock & Brown Administrative Services, Inc., a law firm operating out of San Francisco. *See* Exhibit 22 (Exhibit C therein). Per Mr. Hight, Babcock & Brown Administrative Services, Inc. was organizing the Hoyts Cinemas entity with the goal of Hoyts Cinemas owning the locus. *See* Exhibit 22 (Exhibit C therein). However, rather than Hoyts Cinema taking title to the locus Westborough SPE, LLC took title and Regal Cinemas (a/k/a Interstate Theaters Corporation) leased the property and operated the movie theater. *See* Exhibit 22 (Exhibit C therein). All correspondence such as billings, maintenance issue notices, and annual expense reconciliations from NRT regarding the locus were instructed to be sent to Regal Cinemas (a/k/a Interstate Theaters Corporation) at 231 Turnpike Road, Westborough, Massachusetts. This is the address of the locus. *See* Exhibit 22 (Exhibit C therein).

In the Spring of 2017, Mobile Street LLC was interested in purchasing the locus and Regal Cinemas (a/k/a Interstate Theaters Corporation) was interested in continuing their lease so both parties in conjunction with the Town and several attorneys tried unsuccessfully to locate anyone with an ownership interest in Westborough SPE, LLC. *See* Exhibit 22 (Exhibit C therein).

### A. PLAINTIFF'S DUE DILIGENCE AND SUBSTANTIAL EFFORTS TO NOTIFY ALL PARTIES

On October 31, 2017, Attorney Shirin Everett, as legal counsel for the Town, was contacted by the Town Manager regarding concerns about the lack of the Town's ability to contact the current owner of the locus. *See* Exhibit 22. Regal Cinemas (a/k/a Interstate Theaters Corporation) was leasing and occupying the locus and was interested in

renewing/extending their lease but could not locate the owners and therefore vacated the property in November of 2017. *See* Exhibit 22. As stated, during their occupation of the property Regal Cinemas (a/k/a Interstate Theaters Corporation) was paying real estate taxes. *See* Exhibit 22. However, once the property was vacant the real estate taxes went unpaid. The Town Manager informed Attorney Everett that the Town made many diligent attempts to locate the owners of the locus in the hopes that the property would not remain vacant with unpaid real estate taxes. *See* Exhibit 22. The attempts were unsuccessful.

**B. EMINENT DOMAIN**

The Town considered taking the locus via their eminent domain powers possibly for economic revitalization purposes. Damages would have to be paid upon the taking. The Town retained an appraiser to value the locus and by the appraiser's report as of August 3, 2018, the locus was valued at $4,790,000. The process was halted before completion and the Town proceeded to try to collect the taxes and get the locus back on the tax rolls via a tax title foreclosure instead.

**C. TAX TITLE FORECLOSURE**

On January 16, 2019, Plaintiff, recorded an instrument of Tax Taking pursuant to G.L. c. 60 ss. 53 and 54 against the locus for non-payment of property taxes. Demand and notice of the taking were appropriately issued as required by the above-referenced statutes to the record owner of said parcel, Westborough SPE, LLC.[1]

---

[1] Ch. 60 Sec. 53 provides, "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town, first giving fourteen days' notice of his intention to exercise such power of taking, which notice may be served in the manner required by law for the service of subpoenas on witnesses in civil cases or may be published, and shall conform to the requirements of section forty. He shall also, fourteen days before the taking, post a notice so conforming in two or more convenient and public places. …."

Ch. 60 Sec. 54 provides in pertinent part, "The instrument of taking shall be under the hand and seal of the collector and shall contain a statement of the cause of taking, a substantially accurate description of each parcel of land taken, the name of the person to whom the same was assessed, the amount of the tax

On July 8, 2019, having received no payment for the outstanding taxes and being unable to identify owners of Westborough SPE, LLC, the Town commenced the action to foreclose the tax lien and served notice of the same on the parties identified to potentially hold an interest in the locus. The Court also issued notice of citation by publication as notice to the world of the potential loss of interest should a foreclosure decree enter.

On July 24, 2019, notice of the foreclosure action was also recorded in the Worcester District Registry of Deeds at Page 60751, Page 221. On August 26, 2019, a Land Court-approved title examiner to whom the court referred the title at issue in this case, completed and subsequently filed the Title Report pursuant to G.L. c. 60, s. 66, reporting that the parties interested and entitled to notice were "Westborough SPE, LLC c/o Babcock & Brown Administrative Services, Inc… Att'n: Dyann Blaine and/or F. Jan Bluestein" and "Interstate Theaters Corporation".

On November 1, 2021, with no answer or appearance having been filed, a motion for general default was filed by the Town and allowed by the Court. In the above-referenced case, a Judgment in Tax Lien Case entered on January 5, 2022, and notice of the same was recorded on January 21, 2022, in the Worcester District Registry of Deeds at Page 66983, Page 53.

### D. DELOITTE FINANCIAL ADVISORY PTY, LLD

On October 14, 2017, Chief Assessor for the Town of Westborough, Jonathan Steinberg, contacted Deloitte Financial Advisory Pty, LLD (hereinafter "Deloitte) in Sydney Australia. *See* Exhibit 22 (Exhibit B therein). Deloitte was the appointed

thereon, and the incidental expenses and costs to the date of taking. Such an instrument of taking shall not be valid unless recorded within sixty days of the date of taking. If so recorded it shall be prima facie evidence of all facts essential to the validity of the title so taken…."

liquidator in bankruptcy for Babcock & Brown Limited of Australia. *See* Exhibit 22 (Exhibit B therein) & Defendant's Exhibit 7. Through Mr. Steinberg's research, he found information that Babcock & Brown Administrative Services, Inc. may be affiliated with Babcock & Brown Limited of Australia. *See* Exhibit 22 (Exhibit B therein).

On October 17, 2017, the Town received a response from David Lombe of Deloitte advising all assets outside of the Holding Company in Australia were under the control of Michael Larkin, CEO of Babcock & Brown Administrative Services, Inc., in San Francisco, California. *See* Exhibit 22 (Exhibit B therein). That same day the Town contacted Mr. Larkin who referred the Town to Walter Horst, CFO of Babcock & Brown Administrative Services, Inc. *See* Exhibit 22 (Exhibit B therein).

Mr. Horst responded the same day to the Town advising that Babcock & Brown Administrative Services, Inc. was simply an administrative manager of Westborough SPE, LLC and had no ownership interest in the locus and did not possess information regarding Westborough SPE, LLC's successors or assigns. *See* Exhibit 22 (Exhibits A & B therein) & Defendant's Exhibit 7.

Additionally, Mr. Horst advised the Town they researched title in a "Know Your Customer" compliance procedure and were unable to identify the owner and therefore resigned as administrative manager. *See* Exhibit 22 (Exhibit B therein). Deloitte retained a private investigator local to Westborough, Massachusetts to assist with their research. *See* Exhibit 22 (Exhibit C therein).

According to Mr. Hight of NRT, the private investigator advised him that "B&B and WSPE were essentially the same entity. Moreover, when they leased the theater to

Regal Cinemas (a/k/a Interstate Theaters Corporation) (prior to Babcock & Brown Administrative Services, Inc. filing bankruptcy) they expected it to fail and did not list it as an asset on their balance sheet. He also informed me that there are other discrepancies and 'issues of law' facing B&B and WSPE in the Australian Courts." *See* Exhibit 22 (Exhibit C therein) & Defendant's Exhibit 7.

Mr. Horst referred the Town to Chay Besherse, Legal Services Manager for Babcock & Brown, who also conducted the title research. *See* Exhibit 22 (Exhibit B therein). Ms. Besherse advised the Town that her research mimicked the Town's and ultimately no individuals were identified as having an ownership interest in the locus for their compliance process. *See* Exhibit 22 (Exhibit B therein) & Defendant's Exhibit 7.

**E. JOHNSON WINTER & SLATTERY, ATTORNEY JOSEPH SCARCELLA**

The Town received a letter dated April 4, 2019, from Attorney Joseph Scarcella of Johnson Winter & Slattery, a firm located in Sydney, Australia, stating that the firm was representing David Lombe, the liquidator in bankruptcy of Babcock & Brown Limited, the successor in title to Babcock & Brown Limited. *See* Exhibit 22 (Exhibit A therein). Said letter requested information from the Town as to whether the Town owned the locus. *See* Exhibit 22 (Exhibit A therein). On April 11, 2019, the Town responded advising there was a tax lien on record but it had not been foreclosed on. *See* Exhibit 22 (Exhibit A therein). On May 6, 2019, the Town sent a follow-up letter advising of the amount due and requesting to be informed if Babcock & Brown Administrative Services, Inc. had any legal interest in the property. *See* Exhibit 22 (Exhibit A therein). The Town received a letter

dated June 25, 2019, again requesting if the Town had acquired the property via foreclosure. *See* Exhibit 22 (Exhibit A therein). No assertion of a legal interest in the property was made.

**F. BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC. LACK OF LEGAL INTEREST IN THE PROPERTY**

On June 15, 2020, this Court allowed the Plaintiff's Motion for Alternative Service by publication because there was an unsettled question of ownership of Westborough SPE, LLC. The Court also directed the Town to *attempt* to make direct service on all individuals named in the proposed citation for whom the Town identified an address. Following this date several communications detailed below established that Babcock & Brown Administrative Services, Inc. does not have a legal interest in the locus.

On September 29, 2020, Attorney Kovacs emailed the Town requesting information regarding the pending Tax Lien Foreclosure case and asserted that he represented Johnson Winter & Slattery (who represents David Lombe, Liquidator of Babcock & Brown Limited as well as Joseph Scarcella, Esq of Johnson Winter & Slattery).

On October 13, 2020, Attorney Dawn Bloom (co-counsel in this case for the Town) received a voicemail from Attorney Kovacs requesting information regarding the pending Land Court foreclosure action. On October 14, 2020, Attorney Kovacs was provided the return date of November 16, 2020, on the file for the citations mailed to other parties of interest in the case.

On October 21, 2020, Attorney Bloom received an email from Attorney Kovacs confirming a telephone conversation in which Attorney Kovacs advised Attorney Bloom that Attorney Edward Englander was also representing David Lombe, Liquidator for Babcock and Brown Limited.

On October 30, 2020, Attorney Bloom and Attorney Englander had an approximately 20-minute telephone conversation regarding his clients' option to answer and to provide proof of their interest in the locus to the Court, as his clients' interest in the locus was and is not a settled matter.

On February 12, 2021, I spoke with Attorney Kovacs by telephone as well as sent him an email. During these communications, Attorney Kovacs was requesting information regarding how to remove or strike his clients as defendants and/or parties of interest in the tax lien foreclosure case or alternatively to disclaim their interest(s) in the locus due to having no legal or equitable interest in the locus. I drafted and provided Attorney Kovacs with a draft Waiver of Notice and Assent to the Entry of Judgment. This was never filed in this case.

On March 17, 2021, Attorney Englander emailed me and said he didn't believe his clients would authorize him to file an appearance in this case and therefore could not file a waiver of notice in this case. No appearance(s) or answer(s) were filed by and/or for the above-referenced parties of interest. There was adequate time for these parties to appear and/or answer this Court but they decided not to exercise their right to do so.

Following the entry of the Judgment in Tax Lien Case, on February 7, 2022, the Town sent letters regarding the necessity of removal of non-fixture items from the locus. Letters were mailed to the following: James D. Jarworski, Treasurer of Babcock & Brown Administrative Services, Inc.; Dyann Blaine, Babcock & Brown Administrative Services, Inc.; F. Jan Bluestein a/k/a Jan Blaustein Scholes, Babcock & Brown Administrative Services, Inc.; and Interstate Theaters Corporation. None of the letters were returned in the

mail and only Interstate Theaters Corporation (a/k/a Regal Cinemas) responded and advised they did not have any non-fixture property at the locus.

### G. REQUEST FOR PROPOSAL (RFP)

The Town proceeded to sell the locus pursuant to G.L. c. 30B, known as a Request for Proposal (RFP), and solicited proposals for said purchase. On May 26, 2022, RFP documents were made available via BidNetDirect.com. *See* Exhibits 5 and 6. Proposals for purchase were to be submitted by July 25, 2022. *See* Exhibits 5 and 6.

On November 29, 2022, Lolonyon Akouete requested RFP documents from BidNetDirect.com. *See* Exhibit 6. In said request, Mr. Akouete identifies his organization as Smart Investors, LLC. *See* Exhibit 6. Mr. Akouete uses several email addresses, one of which is info@smartinvestorsllc.com. *See* Exhibits 7 and 14.

Smart Investors, LLC was registered in Maryland as a domestic LLC on July 30, 2009, but the entity was forfeited for failure to file a property return in 2010 or thereafter. *See* Exhibit 15. The Resident Agent of the Smart Investors, LLC is Lolonyon Y. Akouete. *See* Exhibit 15. Mr. Akouete has created profiles for Smart Investors, LLC via Zillow.com and LinkedIn. On his LinkedIn profile, he describes himself as the CEO/Owner of Smart Investors, LLC. *See* Exhibit 16. It is believed that Lolonyon Y. Akouete is the same individual as Lolonyon Akouete.

The Town of Westborough received three (3) proposals in response to their RFP. A proposal by LAX MEDIA INC for $2,500,000.00 was selected, and subsequently, an unselected proposer brought an action for injunctive relief in the Superior Court. Due to the suit, LAX MEDIA INC agreed with the town for an extension until January 31, 2023,

to hold their bid firm and to keep the terms and conditions in place. On January 18, 2023, the Superior Court found for the Town and denied the request for injunctive relief.

Due to the hearing scheduled in this case, LAX MEDIA INC agreed to another extension to hold their bid firm and to keep the terms and conditions of purchase in place until March 3, 2023. A purchase and sale contract has not been executed to date.

**H. <u>REQUEST FOR REDEMPTION FROM LOLONYON AKOUETE</u>**

On December 6, 2022, over ten (10) months after the final judgment of foreclosure was recorded, the Treasurer for the Town, Robert Haley (hereinafter referred to as "the Treasurer), received an email from Lolonyon Akouete identifying himself as "Lolo" an "asset recovery specialist" who has "acquired Westborough SPE, LLC and we would like to redeem". *See* Exhibit 1.

On December 9, 2022, the Treasurer received another email from Mr. Akouete, stating "[w]e would like to know how to redeem the property on 231 Turnpike Road" and included an attachment titled "Addendum 2". *See* Exhibit 2. Said correspondences did not identify how Mr. Akouete "acquired" Westborough SPE, LLC. Please note, "Addendum 2" was published by the Town with the RFP information and it was also provided to any plan holders.

On December 12, 2022, the Treasurer left me a voicemail advising that he had a telephone conversation with Mr. Akouete in which Mr. Akouete stated he had a bill of sale from F. Jan Bleustein a/k/a F. Jan Blaustein of Babcock & Brown Administrative Services, Inc. and was seeking guidance on the process of redemption. Mr. Akouete was advised he should seek legal counsel to advise him on his rights and also to provide proof of his acquisition of Westborough SPE, LLC.

## I. ATTORNEY MATTHEW MORRIS

On December 13, 2022, I received a voicemail from Attorney Matthew Morris of Sherin and Lodgen LLP in Boston, Massachusetts. I confirmed Attorney Morris' information on the website for the Massachusetts BBO. *See* Exhibit 3.

On December 14, 2022, I returned the phone call and spoke with Attorney Morris who advised me that his clients, Lolonyon Akouete and Denise Edwards, purchased an interest in the locus and would like to redeem and requested the Town motion the Land Court for a vacation of the judgment. I requested proof and information from Attorney Morris regarding how his clients obtained a legal interest in the locus in this phone call and in subsequent email correspondences. *See* Exhibit 4.

I advised Attorney Morris that my understanding of the balance due was estimated to be approximately $700,000.00 but wasn't sure if that included the balances due for the snow removal and maintenance services provided pursuant to the reciprocal maintenance agreement. Attorney Morris seemed to be surprised by the balance and stated he thought the balance was closer to $300,000.00. I believe this was due to his clients' review of the RFP publication that included "Addendum 2". *See* Exhibit 2. The amount shown on the addendum did not include the additional taxes, interest, fees and costs associated with the tax title following the foreclosure.

I advised Attorney Morris that the Town is opposed to the vacation of judgment absent proof of a legitimate legal interest in the locus. *See* Exhibit 4. On December 14, 2022, Attorney Morris advised he was in the process of gathering the information I requested and he also requested exact figures for the tax title account balance for redemption.

I provided this request to the Treasurer for the Town and I was advised that absent proof of title or proof of a legitimate legal interest in the locus, the Town could not expend the time and legal expense to continue communications with Attorney Morris or his clients.

As a note, the exact balance of the tax title account was not readily available at that time. The Town owned the property for almost a year following the entry of the judgment and therefore there were no assessed taxes on the locus since the decree entered. Therefore, the up-to-date balance information would have to be calculated.

On December 14, 2022, Attorney Morris stated "[r]egardless of whether the town assents to the motion to vacate, we still plan to pay off the full balance due in the next week or so." *See* Exhibit 5. Proof of funds were not presented to the Plaintiff and a motion to vacate was not filed by the Defendant until January 4, 2023. Said motion was filed one day before the one-year anniversary of the entry of the Judgment in Tax Lien Case and was not signed by an attorney on behalf of the corporation but rather; was signed by Lolonyon Akouete as manager.

The only information I received from Attorney Morris to purportedly show his clients' legal and legitimate interest in the locus were documents showing that a company called Westborough SPE, LLC was revived in the State of Delaware and a company by this same name was registered in the Commonwealth of Massachusetts on December 12, 2022. Attorney Morris also provided a Certificate of Good Standing from the State of Delaware and advised he would provide me with the same from the Commonwealth.

According to G.L. c. 156D, Section 1.28 (b) & G.L. c. 156C, Section 68, any person may apply for a Certificate of Good Standing. The certificate provides evidence including but not limited to the name of the corporation and the date it was organized under the laws

of the Commonwealth, that annual reports are not due and all fees then due to the SOC have been paid and the corporation appears from the records presented to the state secretary to be in good standing.

### J. NEW CORPORATION REGISTERED IN MASSACHUSETTS

According to the website of the Corporations Division, Business Entity Summary provided by the Secretary of the Commonwealth of Massachusetts (SOC), on October 29, 1997, Westborough SPE, LLC registered as a Foreign Limited Liability Company (organized under the laws of Delaware, the identification number assigned by the SOC was 000593094, but it withdrew from Massachusetts on November 20, 2007. *See* Exhibit 18.

On December 12, 2022, a corporation under the same name, Westborough SPE, LLC was registered in Massachusetts as a Foreign Limited Liability Company (organized under the laws of Delaware). *See* Exhibit 19. The identification number assigned by the SOC was 001623747. *See* Exhibit 19. **Both corporations were assigned separate identification numbers by the SOC.**

According to a telephone conversation on January 12, 2023, with an employee of the Corporations Division of the Secretary of the Commonwealth, on December 12, 2022, Westborough SPE, LLC was a new registration of a new entity. The corporations under the same name were registered independently of each other.

The Corporations Division advised they are tasked as a third party to receive and record documents and do not challenge Foreign Limited Liability Company filings if the filing includes basic evidence such that the corporation exists in the company's home state and in good standing and this new filing included the same.

The Corporations Division advised me that these independently registered "Westborough SPE, LLC" corporations *could* be the same entity but it is not established that they are. According to the Corporations Division, they do not investigate the authority of a party to act on behalf of a corporation; rather, the burden rests on the filing party to have the appropriate authority and to act under the law by signing and swearing they are authorized. *See* G.L. c. 156C, Section 48. If the relevant provisions of law are satisfied, they approve the document/filing. *See* G.L. c. 156D, Sections 1.20, 1.25 & G.L. c. 156C, Sections 48, 49.

There is a penalty for signing a document known to be false in any material respect with the intent to provide that document to the SOC for filing. G.L. c. 156D, Section 1.29. The penalty is a civil misdemeanor punishable by a fine not to exceed $100,000. This statute is meant to deter intentionally false filings with the SOC.

Per G.L. c. 156C, Section 47, a foreign limited liability company shall not do any business in the Commonwealth that is prohibited as the company is subject to the constitution of the Commonwealth. However, a foreign limited liability company's organization and internal affairs and the liability of its members and managers shall be governed by the laws of the jurisdiction under which it is organized. *See* G.L. c. 156C, Section 47.

### K. WESTBOROUGH SPE, LLC WAS NOT REVIVED IN MA

The original corporation called Westborough SPE, LLC (identified by the SOC as 000593094) was not revived or reinstated and is noted as withdrawn. *See* Exhibit 18. The forms for revival or reinstatement do not allow a company to change its resident agent, officers, directors or principal place of business. Rather, these changes must be completed

through a Statement of Change Form which did not occur here. The filings for both corporations under the same name have completely different Principal Places of Business, Resident Agents and Managers. *See* Exhibits 18 and 19.

Further, the SOC requires that a Foreign Limited Liability Company Amend any registration when any arrangement or other facts have changed including a change in the manager or authorized signatories. *See* Exhibit 17.

**L. WITHDRAWAL OF A FOREIGN CORPORATION**

When a foreign corporation withdraws from transacting business in the commonwealth with the consent of the SOC, the corporation shall set forth it is not transacting business in the Commonwealth and that it surrenders its authority to transact business in the Commonwealth. G.L. c. 156D, Section 15.20. Additionally, the foreign corporation revokes the authority of its registered agent to accept service on its behalf. G.L. c. 156C & c. 156D, Section 15.20. The withdrawn corporation additionally commits to notify the SOC of any future changes to their mailing address. G.L. c. 156D, Section 15.20. This did not occur.

**M. LACK OF LEGAL COUNSEL**

On January 4, 2023, Mr. Akouete was advised by John R. Harrington that an LLC cannot appear "pro se" and must be represented by legal counsel. On January 4, 2023, Mr. Akouete confirmed his understanding of the requirement for legal counsel in an email to John R. Harrington. *See* Exhibit 10.

Subsequently, the Defendant brought an Ex Parte Motion for Approval of Memorandum of Lis Pendens before this Court without legal counsel present or appearing on the docket. At the hearing on said motion on January 10, 2023, the Honorable Howard

P. Speicher advised Mr. Akouete again of the requirement for a corporation to be represented by legal counsel. Mr. Akouete confirmed he is not an attorney and confirmed his understanding that an attorney must be present. Further, the Honorable Howard P. Speicher took no action on the Memorandum of Lis Pendens as it was not filed and/or signed by an attorney on behalf of Westborough SPE, LLC.

It has long been established in the Commonwealth that a corporation must be represented by legal counsel in judicial proceedings. "In this case, we hold that, except for small claim matters, a corporation may not be represented in judicial proceedings by a corporate officer who is not an attorney licensed to practice law in the Commonwealth." Varney Enterprises, Inc. v. WMF, Inc., 402 Mass. 79 (1988). The case interprets G.L. c. 221, Section 46.

As of today, there has not been an appearance filed in the above-referenced case on behalf of the Defendants by an attorney licensed to practice law in the Commonwealth.

Further, Westborough SPE, LLC's motion titled "Defendant Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment" includes notations on the bottom of each page from Sherin and Lodgen, the firm Attorney Morris is employed by. *See* Exhibit 3. However, the motion presently before this Court was not signed by an attorney. Rather, the motion was signed by Westborough SPE, LLC by its manager, Lolonyon Akouete.

On January 9, 2023, the hard copy of the Defendant's motion to vacate was left in my mailbox by UPS and I retrieved the documents on January 10, 2023. The return address of these documents is as follows: Lolonyon Akouete, (845)744-6000, 800 Red Mills Road, Wallkill, NY 12589-5200. *See* Exhibit 11. I researched this street address via Google.com,

Bing.com and TLO.com (a powerful pay-for search site powered by Experian). I found this address to belong to Dr. Kenneth Yeboah.

On January 10, 2023, I called Dr. Yeboah and he returned my call and advised that his office is part of a very large community complex. Dr. Yeboah also advised me that mail is addressed to the return address referenced above for anyone receiving mail in the complex and then the mail is sorted. Dr. Yeboah said he is familiar with Mr. Akouete and then voluntarily searched on his computer and confirmed that Mr. Akouete resides in the complex.

Further research via the same methods described above, provided information that the complex located at 800 Red Mills Road is also known Watchtower Farms, a Jehovah's Witness community that includes education facilities, computer and printing technology, farming, residences and offices. The complex in Wallkill, New York is approximately 114 miles away from North Babylon, New York where the "new" corporation has said its principal place of business is located. *See* Exhibit 13.

**N. PRINCIPAL PLACE OF BUSINESS IS THE RETAIL STORE STAPLES**

On the SOC filing for the "new" Westborough SPE, LLC, the principal place of business of the corporation is listed as 1241 Deer Park Avenue, Suite 1 #1051, North Babylon, NY 11703. *See* Exhibit 19. On January 10, 2023, I spoke with Doug Weinstein, Broker for the leasing company RIPCO Realty. Mr. Weinstein said RIPCO Realty leases the property to the five companies occupying the plaza. Mr. Weinstein said that he was unfamiliar with Westborough SPE, LLC and that the address of 1241 Deer Park Avenue Suite 1, North Babylon, NY 11703 is the mailing address for their tenant, the retail store, Staples.

## O. DEFENDANT'S PURPORTED EVIDENCE SUPPORTING THEIR ALLEGED TITLE TO WESTBOROUGH SPE, LLC and LOCUS

On January 11, 2023, I received an email from Mr. Akouete in relevant part the following:

> "[w]e initially gained control of the management of the LLC with an agreement from Jan (F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Administrative Services, Inc.). However, we didn't stop there. We conducted further research into the ownership. Unfortunately, Jan Bluestein and Dyann Blaine did not have any Operating Agreement or Corporate Resolution that could us quickly determine ownership. Nevertheless, I found the three entities with equitable interest in the property through the mortgage agreement…"
> *See* Exhibit 7.

Mr. Akouete attached a mortgage agreement dated October 30, 1997, purporting to show additional owners of record of the locus other than Westborough SPE, LLC. The mortgage was recorded in the Worcester District Registry of Deeds at Book 19369, Page 85 and was discharged in Book 58446, Page 152. *See* Exhibits 8 & 9. The mortgage identified Westborough SPE, LLC as the mortgagor. Several additional parties were identified in the security agreement such as a tenant, guarantor(s) and equity investors. This mortgage is an assignment of lease and does not provide evidence of additional parties of interest. *See* Exhibit 8.

According to the assignment of lease mortgage document, "The principal amount of the Notes to be issued hereunder shall be $9,406,742.40. *See* Exhibit 8. The mortgage document was executed by "WESTBOROUGH SPE LLC, BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., its Manager, By: Its: President F. Jan Bluestein". *See* Exhibit 8. Per G.L. c. 156C, Section 24, unless otherwise stated in the operating

agreement, the management of a LLC (limited liability company) shall be vested in its members. An operating agreement may provide for the management of the LLC in part or in full by one or more managers. However, a manager does not need to be a member of the LLC. *See* G.L. c. 156C, Section 25. It is reasonable to believe that F. Jan Bluestein (a/k/a Jan Blaustein Scholes) acting as manager of Westborough SPE, LLC had the authority to sign the assignment of lease mortgage. This document was not signed by F. Jan Bluestein (a/k/a Jan Blaustein Scholes) in any other capacity on behalf of Westborough SPE, LLC.

Mr. Akouete provided in the above-referenced email a list he is relying on to argue additional parties holding an equitable interest in the locus titled "Ownership History". The list provided by Mr. Akouete appears to be a recitation of the information provided by Mr. Hight of NRT in his affidavit provided to this Court and uploaded to the docket. *See* Exhibit 7, Exhibit 22 (Exhibit C therein). Rather than evidence of ownership, the information is evidence that Westborough SPE, LLC was the sole equity owner prior to the foreclosure judgment in this case. *See* Exhibit 7, Exhibit 22 (Exhibit C therein).

In the above-referenced email Mr. Akouete alleges Hoyts Cinemas Corporation, Hoyts Cinemas Limited and Hoyts Cinemas America Limited (hereinafter referred to as the "Hoyts entities") have an equitable interest in the locus. *See* Exhibit 7. This assertion is not supported by fact. Rather, these Hoyts entities were designated as guarantors of the assignment of lease mortgage rather than the owner of the property. This mortgage has been discharged and therefore, the Hoyts entities no longer have a legal interest in the property. *See* Exhibit 9.

Included in the assignment of lease mortgage was Interstate Theaters Corporation (a/k/a Regal Cinemas) which occupied the property until 2017 when they were unable to

locate an owner of Westborough SPE, LLC and therefore could not extend their lease. Interstate Theaters Corporation (a/k/a Regal Cinemas) made the payments to the mortgage until it was paid in full and then vacated the property. *See* Exhibit 22 (Exhibit C therein).

**P. LACK OF EVIDENCE OF ARTICLES OF ORGANIZATION, BY LAWS, CORPORATE RECORDS, CORPORATE WRITTEN OPERATING AGREEMENT, CERTIFICATE OF ORGANIZATION OR CORPORATE RESOLUTION**

Per G.L. 156D, Section 17.02 a foreign corporation authorized to transact business is subject to the said chapter outlining the statutes related to Business Corporations as well as the Massachusetts Limited Liability Company Act. *See* G.L. c. 156C, Section 1. According to G.L. c. 156D, Section 2.01, one or more persons may act as an incorporator or incorporators of a corporation by signing articles of organization and delivering them to the secretary of state for filing.

On January 11, 2023, Mr. Akouete advised that F. Jan Bluestein a/k/a Jan Blaustein Scholes and Dyann Blaine "did not have any Operating Agreement or Corporate Resolution that could help us quickly determine ownership." *See* Exhibit 7.

According to G.L. c. 156D, Section 2.02, Articles of Organization for business corporations provide the name and address of each incorporator and define the purposes of the corporation and the board of directors and shareholders. Supplemental information not considered part of the articles includes location of the initial registered office of the corporation and the names and addresses of the individuals who serve as the initial directors, president, treasurer and secretary. G.L. c. 156D, Section 2.02(d).

While both corporations are Foreign Limited Liability Companies, without any Articles of Organization or documentation that provides the same information from Delaware or

Massachusetts, it cannot be confirmed who the individuals are that serve as the directors, president, treasurer or secretary.

## Q. F.JAN BLUESTEIN a/k/a JAN BLAUSTEIN SCHOLES

F. Jan Bluestein a/k/a Jan Blaustein Scholes, was identified by the SOC as the Real Property Signatory for the "original" Westborough SPE, LLC and the President of Babcock & Brown Administrative Services, Inc., a company managing Westborough SPE, LLC. *See* Exhibit 18. According to the website for The State Bar of California "Jan Blaustein Scholes" was licensed to practice law until July 1, 2016, but was suspended for failure to pay fees. *See* Exhibit 29.

The address noted for "Jan Blaustein Scholes" by The State Bar of California was an apartment in New York, New York. *See* Exhibit 29. According to a search of TLO (a pay-for-search website powered by Experian), this was the most recent address for this party. Therefore, this was the first address this Court attempted to notice this party at by mailing a citation via certified mail. The citation was returned to the Court unsuccessfully and was noted by the USPS as "ATTEMPTED – NOT KNOWN". I then researched online in an attempt to see if I could find ownership of the apartment but was unsuccessful.

This Court, by request of the Plaintiff, issued a citation by deputy sheriff to this party at the same address. This service was also unsuccessful so additional research was done to try to locate the proper mailing address for F. Jan Bluestein a/k/a Jan Blaustein Scholes. Another search of TLO provided another mailing address for this party in New York, New York and a special citation was issued but was returned as unsuccessful and again was noted by the USPS as "ATTEMPTED – NOT KNOWN". The USPS tracking via their website states "Addressee Unknown".

Extensive research was conducted before and after the pendency of this case to try to locate the proper mailing address for F. Jan Bluestein a/k/a Jan Blaustein Scholes. An internet search uncovered a book she authored under the name of "Frances Jan Scholes" called "A Journey To Ladakh" published on January 1, 2014 and for sale. *See* Exhibit 24. According to the section titled "About the Author" she was general counsel and responsible for legal obligations of Babcock & Brown and married to Dr. Myron Scholes. *See* Exhibit 24. Again, Westborough SPE, LLC was not mentioned. *See* Exhibit 24.

An article titled, "A Tax Shelter Deconstructed" published by the New York Times on July 13, 2003 also mentions that Dr. Scholes and "Jan Blaustein" were married. *See* Exhibit 30. This article interestingly notes that Babcock & Brown with the help of general counsel, "Jan Blaustein" introduced Dr, Scholes to a way to defer, avoid or eliminate taxes on more than one-third of a billion dollars in profits from a hedge fund he created with others called Long-Term Capital. *See* Exhibit 30.

I researched the location of Dr. Myron Scholes and found that he was a professor at the Stanford Graduate School of Business located in Stanford, California. An address listed by TLO for F. Jan Bluestein a/k/a Jan Blaustein Scholes showed she may live in Atherton, California which is approximately 2.6 miles from Stanford, California.

On May 19, 2021, I researched the property records of the County Clerk of San Mateo County of Atherton, California and found information that appeared to show property owned by Scholes Jan Blaustein Trust in Atherton, California described as Map 47/18. *See* Exhibit 25. Research showed the property was described the same way by Tax Collector of San Mateo County. *See* Exhibit 25. On September 9, 2021, I searched the

online records of the San Mateo County Superior Court under Family Law and found no evidence of a divorce.

On June 9, 2021, this Court issued another special citation to F. Jan Bluestein a/k/a Jan Blaustein Scholes to be delivered to 34 Stern Lane, Atherton, California. Unfortunately, it was returned to the Court unclaimed. The envelope was returned to this Court with a label stating it was returned because there was no such number. However, with the use of the website of USPS, the tracking states that this special citation was unclaimed.

Upon reason and belief, this was the last known address for this party, and upon request by the Town, this Court issued a citation by deputy sheriff. On May 19, 2021, this property was reviewed via the website of the Tax Collector in the County of San Mateo finding the property to be assessed at $9,317,682.00. Per the process server, this property was protected by a security gate but a male responded to the process server through an intercom device acknowledging the citation was being placed there to be received by F. Jan Bluestein a/k/a Jan Blaustein Scholes.

Rule 4 of the Massachusetts Rules of Civil procedure advises that personal service of a complaint may be made by delivering a copy of the same to the party intending to be served personally or by leaving it as her last and usual place of abode. Rule 4(d)(1) and G.L. c. 223, Section 31. Subsequently, the process server shall make proof of service in writing and return it to the Court. However, if the process server fails to provide proof of service, it does not affect the validity of the service. Rule 4(d)(1).

In the present case, the citation was left at the last and usual place of abode by reason of belief by the Plaintiff and proof of service in writing was returned to the Court.

The process server did not indicate that any information was presented that would lead him to believe the address was not the usual place of abode of F. Jan Bluestein a/k/a Jan Blaustein Scholes.

According to the most recent review of the LinkedIn profile for Jan Blaustein Scholes, she resides in Atherton, California, and under "Experience" it states she was General Counsel & Partner of Babcock & Brown until October 2007. *See* Exhibit 23. This profile also mentions that she has been the trustee of Jan Blaustein Schols 2005 Trust from October 2007 to the present. *See* Exhibit 23. As stated above, it appeared the address she was successfully served at was owned by the same trust.

On August 30, 2013, a complaint was filed in the Superior Court of California County of San Francisco, Case Number: CGC-13-533946, Lee Debroff vs. Jan Blaustein Scholes, et al. This case appears by the docket to have been settled but was a tort case alleging personal injury inflicted by Jan Blaustein through use of her motor vehicle negligently in a parking garage in San Francisco, California. *See* Exhibit 31. I reviewed the filings in the case and could not find an address reference for F. Jan Bluestein a/k/a Jan Blaustein Scholes.

Atherton and San Francisco California are approximately 35 miles away from each other. It would be reasonable to believe that F. Jan Bluestein a/k/a Jan Blaustein Scholes lived in Atherton, California as Plaintiff's research uncovered many connections to that town and those local to it such as San Francisco, California.

Further, under "Experience", her LinkedIn profile provides information about many other companies she claims to have held positions in such as managing director,

trustee, and director. The profile does not mention Westborough SPE, LLC or any position held in that company. *See* Exhibit 23.

It was established through communications with liquidators for Babcock & Brown Administrative Services, Inc. that the company does not have a legal interest in the locus or the right to transfer the property. Therefore, F. Jan Bluestein a/k/a Jan Blaustein Scholes by and/or through her previously held position as President of Babcock & Brown Administrative Services, Inc. does not have the legal ability to transfer the locus or the corporation, Westborough SPE, LLC.

In addition, prior to the entry of the judgment of foreclosure, I reviewed a column written by Jan Blaustein Scholes and printed in the Transcript Spring 2007 issue in the Boalt's Berkeley Center for Law. *See* Exhibit 26. This column does not mention medical issues from which F. Jan Bluestein (a/k/a Jan Blaustein Scholes) was then or previously suffering. Rather, it states that she was "talking to lots of women entrepreneurs about how I can help. I'm currently looking at wonderfully interesting opportunities in… biodegradable fuels, a children's Internet company, and a breast cancer detection company." *See* Exhibit 26. No mention of divorce was made in the column or by way of any other information found through the Town's due diligence. *See* Exhibit 26.

The Defendant presented as "Exhibit 10" a docket from the Hawaiian Family Court, Third Circuit, Kona Division. This was evidence not previously known to the Town regarding the mental capacity of F. Jan Bluestein a/k/a Jan Blaustein Scholes. *See* Defendant's Exhibit 10. The docket produced by the Defendant appears to show that as of January 3, 2023, there is an active case regarding the conservatorship and guardianship of "Frances Jan Blaustein Scholes". *See* Defendant's Exhibit 10. The docket notes an

appearance on June 3, 2019, by "Peter Balustin" and then that "Peter Blaustein" was to be appointed as conservator and guardian. *See* Defendant's Exhibit 10.

It appears by the docket, on July 18, 2019, an order entered granting the appointment of a conservator and guardian. *See* Defendant's Exhibit 10. The last activity in the case was on July 30, 2019, when an amended notice of appointment of conservator and guardian was docketed. *See* Defendant's Exhibit 10. This docket entry does not provide information regarding what amendment was made and the case appears by the docket to remain open. *See* Defendant's Exhibit 10.

Through the Town's diligent search efforts to locate F. Jan Bluestein a/k/a Jan Blaustein Scholes, it did not find evidence that she was residing out of the Country or that her mental capacity was in question.

The Defendant states in their motion that in 2004 F. Jan Bluestein a/k/a Jan Blaustein Scholes suffered a major stroke and was "incapable of properly executing her responsibilities as manager and real estate signatory for WSPE" and that she "retired from BBAS in 2007." The Defendant further states "Dyann took over Jan's roles and responsibilities for both BBAS and WSPE."

**R. DYANN BLAINE**

Dyann Blaine was identified by the SOC as the Real Property Signatory for the "original" Westborough SPE, LLC and an officer of Babcock & Brown Administrative Services, Inc., the company previously managing Westborough SPE, LLC. *See* Exhibits 18 & 32. As the docket entry dated January 19, 2021, correctly reflects, notice of the tax lien foreclosure case was served upon this party of interest successfully. No response or answer was received by the Town or this Court.

## S. COURT ALLOWED PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE BY PUBLICATION

On June 15, 2020, this Court allowed the Plaintiff's Motion for Alternative Service by publication. Additionally, the Plaintiff was to *attempt* to make direct service on "(1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock and Brown LP Liquidation." *See* Land Court Docket Entry 06/15/2020.

Plaintiff provided affidavits from Shirin Everette, Esq., of KP Law P.C., Town Counsel for Plaintiff, Jonathan Steinburg, Chief Assessor for the Plaintiff, and Allan E. Hight, of REO Management all indicating their substantial efforts made to locate the owners of the locus. *See* Exhibit 22.

## T. BILL OF SALE AGREEMENT

On January 14, 2023, I received a Bill of Sale via email from Mr. Akouete. *See* Exhibit 20. This agreement is two (2) pages and states it was made on November 21, 2022, but was executed on December 8, 2022 by "Jan Blaustein Scholes, its President". The agreement is made between "WESTBOROUGH SPE, LLC., a Delaware corporation…" and "DENISE EDWARDS and LOLONYON AKOUETE"… "as joint tenants". *See* Exhibit 20.

The Bill of Sale further states "the Seller desires to sell and the Buyer desires to buy the business of a certain WESTBOROUGH SPE LLC known as WESTBOROUGH SPE and all assets thereof…." *Exhibit 20*. Per the agreement, the parties agreed to $100.00 to be paid as a deposit upon execution of the agreement and the reminder of the purchase

price of $646,000.00 to be "paid within 7 months of Buyer's receipt of this document." *See* Exhibit 20. I am not aware of the date the Buyers received the document.

The agreement states the "property to be sold hereunder shall be conveyed by this standard form Bill of Sale, duly executed by the Seller and/or an authorized representative of the Seller" but does not include a description of the locus. *See* Exhibit 20. Further, the agreement states the only debts owed by the Seller are annual corporation taxes and "Tax title: $391,541.93". *See* Exhibit 20. This amount noted on the agreement as the balance of the tax title was the amount advertised as the balance on the RFP.

This agreement was notarized in the State of Arizona but does not include information in the notarial certificate indicating if or how the notary officer identified the party executing the agreement, "Jan Blaustein Scholes, its President". *See* Exhibit 20. According to the Arizona Notary Public Reference Manual, published by the Department of State Office of the Secretary of State dated January 2023, "to deter fraud, to prove the authenticity of the signature… it's essential that a notary accept a valid form of identification, as defined in statutes, to determine the signer is who he or she claims to be." *See* Exhibit 28.

Further, the Defendant's motion states that F. Jan Bluestein (a/k/a Jan Blaustein Scholes) is residing in an assisted living facility in New Mexico but the Bill of Sale was notarized in the State of Arizona. The name of the assisted living facility was not identified by the Defendant.

The Bill of Sale is the only document potentially in existence in which she is identified as the President of Westborough SPE, LLC and it is self-serving. No other

evidence has been recovered evidencing that she was ever the President of Westborough SPE, LLC.

### U. IRS DOCUMENT REQUEST EVIDENCE FROM THE DEFENDANT

In an email from Lolonyon Akouete on January 13, 2023, he advised me that in an attempt to confirm that F. Jan Bluestein a/k/a Jan Blaustein Scholes "is a managing member of the LLC" he advised he requested from the Internal Revenue Service (IRS) a Partnership Income Tax Return, Form 1065. However, the information he provided in an attachment to said email was two IRS Form 4506 both executed by Denise Edwards on December 21, 2022, Form 56 left blank, and a response letter from the IRS.

Said letter is dated December 20, 2022, and states "Thank you for your inquiry of Dec. 09, 2022" and advises "We can't reproduce the CP 575/576, Employer Identification (EIN) Assignment. However, this letter will serve as proof of EIN assignment verification." *See* Exhibit 27. Mr. Akouete did not provide a copy of the letter dated December 9, 2022, to which the IRS is responding to. The response letter from the IRS was addressed as follows:

> "WESTBOROUGH SPE LLC
> A DELAWARE LIMITED LIABILITY CO
> % F JAN BLAUSTEIN
> 1241 DEER PARK AVE STE 1 NO 1051
> NORTH BABYLON NY 11703"

The return address is the same address provided by Defendant as the current principal place of business and the address used on both copies of IRS Form 4506. One of the copies of IRS Form 4506 does not have the box checked above the signature. The box states "Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506." *See* Exhibit 27.

These documents do not appear to provide evidence that F. Jan Bluestein a/k/a Jan Blaustein Scholes was the President of Westborough SPE, LLC.

## V. LACK OF PROOF OF FUNDS

According to the Defendant Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment, they have a pending claim with the California Unclaimed Property Division (CUPD) for the balance of a checking account owned by Westborough SPE, LLC in the amount of $1,293,646.83. *See* Defendant's Exhibit 14. Per the Defendant's motion, the CUPD requested additional information related to the claim. A copy of the correspondence from CUPD advising what additional information was needed was not presented by the Defendant as evidence in this case. Rather a letter from the CUPD is presented in response to a phone call providing information on an unclaimed bank account that may belong to Westborough SPE, LLC. *See* Defendant's Exhibit 14.

The address on the letter provided by the Defendant from the CUPD shows it was sent to the following address:

WESTBOROUGH SPE LLC
C/O DENISE EDWARDS
137 N 25TH ST
WYANDANCH NY 11798

According to the property card records of the Town of Babylon this property is owned by Denise Edwards and is approximately five miles from the address used as the principal place of business of the "new" Westborough SPE, LLC. *See* Exhibit 19.

In an email I received from Mr. Akouete on January 14, 2023, I was informed that "We spoke to Harpreet K. Nakhal, the State Counsel, last week regarding the claim. We are planning to use the funds to redeem the property. We are also applying for a hard money loan from West Forest Capital in case the State does not release the funds before the motion

hearing." *See* Exhibit 21. Despite assurances by Mr. Akouete the tax title account balance will be paid in full, as of today, no proof of funds have been provided despite my request for proof of the same.

## W. TAX TITLE ACCOUNT BALANCE

According to the Online information provided by the Assessor's Database for the Town the property is assessed as $2,082,000.00. The balance of the tax title account including principal, interest, fees and costs calculated to January 19, 2023, was $638,755.20. This balance included the following amounts:

Taxes, interest, electric lien paid, water lien: $525,970.40
Boston Board Up (to secure the property): $14,438.55
Insurance: $38,419.96 (renewal date February 15, 2023)
Eversource: $2,757.92
Appraisal: $6,000.00
KP Law – Legal Fees as of 01/13/2023: $32,797.97
Law Office of Iris A. Leahy – Legal Fees as of 01/26/2023: $21,778.40
Filing Fee: $515.00

As previously stated, the locus is benefited and burdened by a Reciprocal Covenants, Easements and Restrictions Agreement. The tax title account balance does not include the outstanding amounts due under a reciprocal maintenance agreement for snow removal and other maintenance services charged at $100,000.00 per year. The lack of payments towards the maintenance and snow removal costs due from the previous owner of the locus has created a significant financial burden on the two other parcels in the mall. *See* Exhibit 22 (Exhibit C).

## X. PROPERTY WAS SUBSTANTIALLY DAMAGED WHILE VACANT

When the locus became vacant the owners were not maintaining or protecting it from vandalism. There was no heat which led to pipes bursting and the property was vandalized resulting in significant damage despite the Town's efforts to secure the

property. Public safety concerns are ongoing as this property seems to be a draw for vandals. **ANALYSIS AND ARGUMENTS**

The Defendant's Motion should be denied because the moving party has not produced evidence to prove a true claim of legal interest in the locus and therefore there is no real likelihood of success on the merits.

**a) STATUTORY LIMITATION**

While G.L. c. 60, section 69A allows petitions to vacate a decree of foreclosure within one year after the final entry of the decree, "Section 69A does not give one the automatic right to redeem but sets the time period within which petitions to vacate should be brought." Vincent Realty Corporation v. City of Boston, 375 Mass. 775 (1978).

In the present case, the Defendant brought a motion to vacate within on the last day of the one-year period after the final entry of the decree. However, the motion was not signed or filed by an attorney as required by law. The Defendant was advised of this legal requirement on several occasions but to date, the motion has not been refiled and no appearance by legal counsel has been docketed or received by the Plaintiff. Therefore, the Defendant has not filed an actionable motion to vacate the judgment before the one-year deadline.

**b) PUBLIC POLICY AND EQUITY**

For most communities, the property tax levy is the largest revenue source. *See* DLS Alerts, Cities and Towns, January 5, 2022. Lack of property tax payments for years has substantially burdened the Town, the residents, and the businesses therein. The substantial diligent search efforts and efforts to secure the locus have been costly and time-consuming and have burdened the Town.

The RFP process created another cost and time burden for the Town. The Town should be allowed to continue to exercise its legal right to sell the property and continue with the sale through the RFP process to the selected bidder as the Defendant has not produced evidence to establish they have a legal interest in the property. All information provided by the Defendant appears to be public records except for the Bill of Sale that is questionable at best.

The Bill of Sale was signed by F. Jan Bluestein a/k/a Jan Blaustein Scholes, who by Defendant's evidence was at that time deemed incapacitated and has been appointed a conservator/guardian. If F. Jan Bleustein has been deemed mentally incapacitated, she could not legally grant title to Westborough SPE, LLC and/or the locus. There is no evidence her conservator and/or guardian appointed in Hawaii, Peter Blaustein, was included in the Bill of Sale transaction.

As stated supra, the notarial certificate on the Bill of Sale does not present evidence that the person signing the document before the notary presented identification or alternatively was known to the notary. The validity of this document is in serious question. The Defendant rests their claim to title of the locus and Westborough SPE, LLC on this document but by Defendant's admission, they have not reviewed a written operating agreement or the like.

Further, of concern is the fact that the Defendant did not revive Westborough SPE, LLC but rather created another corporation under the same name in the Commonwealth of Massachusetts. The two corporations are not confirmed to be the same entity. Both entities have different managers and real estate signatories.

As a matter of equity, a petition to vacate a prior decree foreclosing the right of redemption under a tax title is "extraordinary in nature and ought to be granted only after careful consideration and in instances where . . . [it is] required to accomplish justice." Sharon v. Kafka, 18 Mass. App. Ct. 541, 542 (1984); Lynch v. Boston, 313 Mass. 478, 480 (1943). It would not accomplish justice to vacate the decree of foreclosure as the Defendant's legal interest in the locus is in question.

The CFO of Babcock & Brown Administrative Services, Inc. said they resigned as manager of Westborough SPE, LLC when they could not identify owners. Westborough SPE, LLC failed to notify the Town of a current mailing address for the purpose of receiving tax notices. Further, Westborough SPE, LLC did not respond to the Town before, during or after this case.

In sum, the Town fulfilled its obligations to notify interested parties of the foreclosure proceeding pursuant to Chapter 60, but the previous owner fulfilled none of their duties with respect to their ownership of the locus. It was these failures that made it impossible for the Town or the title examiner to discover the true ownership of Westborough SPE, LLC and thus the parcel.

The Honorable Judge Piper, in Yarmouth v. Laurie Snowden-Lebel, 17 LCR 654, included "whether the petitioner has sat idly on his rights for an unreasonable period of time before asserting them" as a factor that should be considered when someone claims a due process violation.

The Defendant waited to schedule file a motion to vacate without legal representation until one day prior to the one-year period following the decree of foreclosure in hopes of squashing the RFP sale and garnering more time from this Court to continue

due diligence to confirm that the Bill of Sale was a legal transfer of Westborough SPE, LLC and the locus as well as to obtain funds to redeem.

This Honorable Court should not vacate the decree of foreclosure and allow redemption by this party as it would not be based in equity.

### c) DENIAL OF DUE PROCESS

In this case, it does not seem to be disputed that the Land Court-approved title examiner's title report was thorough and proper; that during the pendency of the foreclosure proceeding this Court allowed an alternative form of notice by citation of publication due to the unanswered question regarding the owners of Westborough SPE, LLC and the Town was to *attempt* to make direct service on F. Jan Bluestein a/k/a Jan Blaustein Scholes among others. *See* Land Court Docket Entry 06/15/2020.

The Defendant does not argue that service was improper upon any party of interest except upon F. Jan Bluestein a/k/a Jan Blaustein Scholes. However, the Town disagrees and has presented sufficient evidence to prove substantial diligent search efforts to notice her. This Court received and reviewed the return of service and marked it as successful.

Additionally, the Defendant does not argue that F. Jan Bluestein a/k/a Jan Blaustein Scholes did not receive the citation served upon her by sheriff but rather that the citation was left at the residence of her ex-husband. Evidence found by the Town at the time of the sheriff's service was reasonably relied upon to believe F. Jan Bluestein a/k/a Jan Blaustein Scholes owned the property she was served at.

Further, as can be inferred from the information presented, F. Jan Bluestein a/k/a Jan Blaustein Scholes is a sophisticated businesswoman who has had significant experience in matters of managing real property. Therefore, it is reasonable to conclude that she was

not only aware of the fact that taxes were owed, but also of the consequences of failing to pay.

Additionally, it can be inferred that although the Defendants assert that F. Jan Bluestein a/k/a Jan Blaustein Scholes suffered a major stroke in 2004, evidence presented by the Defendants shows that she was not deemed incapacitated until 2019 and was an active attorney in the State of California until July 1, 2016. *See* Exhibit 29 and Defendant's Exhibit 10.

Additionally, the Defendant asserts Dyann Blaine took over duties for F. Jan Bluestein a/k/a Jan Blaustein Scholes and received timely notice but sat idly and did not answer or respond to this Court to date. Further, Dyann Blaine does not appear to have been included in the Bill of Sale transaction.

### d) ABILITY TO REDEEM

According to the Defendant, obtaining funds to redeem is in process. *See* Exhibit 21. As far as the Town is aware, the Defendant has not received the funds unclaimed in California and have not secured financing. Further, upon reason and belief, the balance of the purchase price due under the Bill of Sale has not been paid. *See* Exhibit 20.

Time is of the essence in order for the Town to be made whole through the RFP sale, therefore, no continuance should be allowed by this Court.

## II. PLAINTIFF'S REQUEST FOR RELIEF

The Town believes the Defendant's Motion to Vacate is frivolous and argues the cost of defending the same should not be the Town's burden if this Court denies the Defendant's motion, the Town moves this Court to award from the Defendant all legal fees

charged to the Town since the date Lolonyon Akouete requested to redeem and all legal fees related to the same.

## III. CONCLUSION

The Defendants are not entitled to the vacating of the decree of foreclosure entered by this Honorable Court on either legal or equitable grounds.

The Defendants' motion does not set forth adequate grounds to justify vacating the decree of foreclosure. Based on the Defendants' own assertions they have not done their due diligence before signing the Bill of Sale and cannot provide proof that this document is binding to transfer ownership of the locus.

Because both the statutory law concerning the validity of the Defendants' title and interest in the locus and Westborough SPE, LLC, and the equities in this case, weigh against disturbing the Court's final judgment of foreclosure, the Defendants' motion should be denied.

WHEREFORE, the Defendant's Motion to Vacate Foreclosure Judgment should be DENIED WITH PREJUDICE.

Respectfully submitted,
TOWN OF WESTBOROUGH
By its Attorney,

Date: January 27, 2023

Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661

## CERTIFICATE OF SERVICE

I, Iris A. Leahy, attorney for the Plaintiff, hereby certify that I have served the foregoing Motion in Opposition by first class mail, postage prepaid, to the following:

Lolonyon Akouete, Manager
Denise Edwards, Manager
Westborough SPE, LLC
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703

TOWN OF WESTBOROUGH
By its Attorney,

Date: January 27, 2023

Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661

# Exhibit EE

# 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

- Case Type:
- Tax Lien
- Case Status:
- Closed
- File Date
- 07/08/2019
- DCM Track:
- 
- Initiating Action:
- Tax Lien - one tax taking
- Status Date:
- 07/08/2019
- Case Judge:
- Speicher, Hon. Howard P.
- Next Event:
- 
- **Property Information**
  Turnpike Road
  Westborough
  RECORD

All Information | Party | Event | Docket | Financial | Checks | Receipt | Disposition

## Party Information

**Town of Westborough**
- Plaintiff

**Party Attorney**
- Attorney
- Bloom, Esq., Dawn E
- Bar Code
- 659839
- Address
- 43039 Boardwalk Loop
  Punta Gorda, FL 33982
- Phone Number
- (413)529-9936
- Attorney
- Leahy, Esq., Iris Ann
- Bar Code
- 697783
- Address
- Law Office of Iris A. Leahy
  4 Open Square Way
  Suite 217
  Holyoke, MA 01040
- Phone Number
- (413)322-8318

More Party Information

**Westborough SPE, LLC**
- Defendant

**Party Attorney**
- Attorney
- Nathanson, Esq., Alvin S
- Bar Code
- 367480
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  Fifth Floor
  Boston, MA 02109
- Phone Number
- (617)210-4810
- Attorney
- Schlager, Esq., Scott Adam
- Bar Code
- 695421

- Address
- Nathanson and Goldberg, P.C.
  183 State St
  5th Floor
  Boston, MA 02109
- Phone Number
- (617)909-4511

More Party Information

**F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.**
- Defendant

**Party Attorney**

More Party Information

**Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC**
- Defendant

**Party Attorney**

More Party Information

**James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.**
- Defendant

**Party Attorney**

More Party Information

**David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

**Party Attorney**

More Party Information

**Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

**Party Attorney**

More Party Information

**Interstate Theaters Corporation**
- Defendant

**Party Attorney**

More Party Information

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 06/15/2020 02:00 PM | C.J. Piper | Courtroom 404 - Fourth Floor | Motion | Piper, Hon. Gordon H. | Held via video |
| 01/10/2023 09:00 AM | J. Speicher | Courtroom 1102 - Eleventh Floor | Hearing on Lis Pendens | Speicher, Hon. Howard P. | Held via video |
| 01/19/2023 10:00 AM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/09/2023 02:00 PM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 03/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Not held |
| 05/16/2023 10:15 AM | J. Speicher | Courtroom 401 - Fourth Floor | Motion | Speicher, Hon. Howard P. | Held via video |
| 08/17/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Rescheduled |
| 08/31/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Not held |

## Docket Information

| Docket Date | *Docket Text* | Amount Owed | *Image Avail.* |
|---|---|---|---|
| 07/08/2019 | Complaint filed. | | Image |
| 07/08/2019 | Case assigned to the Tax Track per Land Court Standing Order 1:04. | | |
| 07/08/2019 | Land Court filing complaint tax Receipt: 405581 Date: 07/09/2019 | $200.00 | |
| 07/08/2019 | Land Court initial deposit tax Receipt: 405581 Date: 07/09/2019 | $300.00 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/08/2019 | Land Court surcharge Receipt: 405581 Date: 07/09/2019 | $15.00 | |
| 07/10/2019 | Michael H. Delaney, Esq. appointed as Title Examiner. | | |
| 08/26/2019 | Report filed by Michael H. Delaney, Esq.. | | Image |
| 08/28/2019 | Land Court examiner costs | $150.00 | |
| 09/05/2019 | Checklist sent. | | |
| 11/07/2019 | Letter of Diligent Search Filed. | | |
| 12/31/2019 | Checklist completed. | | |
| 05/12/2020 | Scheduled<br>Event: Motion for Alternative Service<br>Date: 06/15/2020 Time: 02:00 PM<br><br>Zoom instructions to be sent by the Recorder's Office in advance of the hearing date.<br><br>Judge: Piper, Hon. Gordon H. | | |
| 05/19/2020 | Motion for Alternative Service and Supporting Memorandum, filed. | | Image |
| 06/15/2020 | Event Resulted: Motion scheduled on:<br>06/15/2020 02:00 PM<br>Has been: Held via video<br><br>June 15, 2020. Hearing held on Plaintiff's Motion for Alternative Service via videoconference. Attorneys Shirin Everett and Dawn Bloom appeared for plaintiff. Jon Steinberg, Assessor for the town of Westborough, also observed the hearing. Attorney Bloom reported that the defendant owner of the parcel in question is a defunct Delaware limited liability company which withdrew from Massachusetts in 2007, had its registration in Delaware cancelled in 2014, and has listed as its agent for service in Delaware a corporation service company that is no longer active in that role. Attorney Bloom indicated that the manager listed on its Massachusetts registration is a defunct entity named Babcock & Brown Administrative Services, Inc., that Mr. Steinberg was able to contact a related Delaware corporation by the name of Babcock & Brown operating in San Francisco, and that the related corporation's officers indicated that it has no interest in the property. Attorney Everett reported that after the town of Westborough had begun proceedings to acquire title to the property by eminent domain, an Australian law firm notified the town that it represented the administrator of the liquidation of an Australian entity named Babcock & Brown LP, and that it was investigating whether Babcock & Brown LP might hold any interest in the property; the town has since received requests from that law firm concerning the status of eminent domain proceedings, but has received no response to several requests by the municipality that that entity address the basis for its potential claim to any interest in the property. Attorney Bloom indicated that the plaintiff asserts that the defendant owes approximately $400,000 to the town in unpaid real estate taxes and interest, and also owes another $300,000 pursuant to a reciprocal maintenance agreement concerning the property's shared parking lot. Attorney Bloom also indicated that there appears to be no mortgage currently encumbering the property, as there is a recorded discharge of the most recent mortgage of record. Plaintiff to attempt to make direct service on (1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter, & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock & Brown LP liquidation. Court ALLOWED plaintiff's motion for alternative service by publication. Plaintiff to submit to the court's tax lien department a proposed form of an order of notice for publication in a newspaper of general circulation in the town of Westborough as to the defendant entity, no longer in legal existence, and its successors. Following return dates on all summonses and the published citation, plaintiffs to request default enter under Mass. R. Civ. P. 55 (a) against all parties not timely filing answer or responsive pleading. Upon entry of any indicated default(s), plaintiffs to file motion with the Recorder requesting entry of a finding of the amount and time for redemption from the tax taking. If any additional party appears or answers, parties promptly to request, in writing, further case management conference. (Piper, C.J.)<br><br>(Notice of Docket Entry sent by email to Attorneys Dawn Bloom and Shirin Everett) | | |
| 09/01/2020 | Land Court additional deposit tax Receipt: 417793 Date: 09/01/2020 | $400.00 | |
| 09/15/2020 | Citation by Publication in Village News, issued. Returnable 11/09/2020. | | |
| 09/22/2020 | Citation issued as to the land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 11/16/2020. | | |
| 09/22/2020 | Land Court notices mailing - Certified Mail<br>Issue Date: 09/22/2020<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.95<br><br>Interstate Theaters Corporation<br>Mailing Address<br>101 E. Blount Ave.<br>Knoxville, TN 37920<br>Tracking Number: 71901706197000959805 | $59.75 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Interstate Theaters Corporation<br>Mailing Address<br>c/o CT Corporation System, Reg. Agent<br>155 Federal St., Suite 700<br>Boston, MA 02110<br>Tracking Number: 71901706197000959812<br><br>James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Mailing Address<br>1715 Easton Dr.<br>Burlingame, CA 94010<br>Tracking Number: 71901706197000959829<br><br>Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC<br>Mailing Address<br>20 Queensbrook Pl.<br>Orinda, CA 94563<br>Tracking Number: 71901706197000959836<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>151 E. 31st<br>Apt. 28B<br>New York, NY 10016<br>Tracking Number: 71901706197000959843 Receipt: 418144 Date: 09/23/2020 | | |
| 09/23/2020 | Land Court notices mailing out of country - Registered Mail<br><br>RE 550 804 582US<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>Deloitte Financial Advisory Pvt. Ltd.<br>Grosvenor Place Level 9<br>225 George St.<br>Sydney, NSW 2000<br>Australia<br><br>RE 550 804 596US<br>Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>20 Bond Street, Level 25<br>Sydney, NSW 2000<br>Australia Receipt: 418145 Date: 09/23/2020 | $52.50 | |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/26/2020<br>Return : 09/30/2020<br>On : James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959829 | | Image |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 09/30/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959812 | | Image |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 10/01/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959805 | | Image |
| 10/06/2020 | Tear Sheet Received. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 10/06/2020 | Citation published September 25, 2020. Returnable 11/09/2020 | | |
| 10/20/2020 | Land Court notice by publications Receipt: 418637 Date: 10/20/2020 | $5.00 | |
| 10/20/2020 | Land Court newspaper payments Voided on 10/20/2020.<br><br>Void Check number: 33258<br>Void Status Date: 10/20/2020<br>Void Reason: Printer Jam<br>Void Comments: | $0.00 | |
| 10/20/2020 | Land Court newspaper payments | $252.92 | |
| 10/21/2020 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/30/2020<br>Return : 10/02/2020<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000959843 | | Image |
| 11/03/2020 | Registered Mail Service on Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited successful.<br>Served on 10/14/2020 | | Image |
| 11/23/2020 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 12/10/2020 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited issued. Returnable 02/01/2021. | | |
| 01/19/2021 | Appearance of Iris Ann Leahy, Esq. for Town of Westborough, filed | | |
| 01/19/2021 | Citation by Deputy Sheriff to Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, returned with service thereon. | | |
| 02/19/2021 | Request to issue Special Citation, filed | | |
| 04/08/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 05/31/2021. | | |
| 04/08/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 04/08/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>888 Avenue of the Americas<br>New York, NY 10001<br>Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021 | $11.96 | |
| 05/04/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 04/08/2021<br>Service : Service<br>Served :<br>Return : 04/15/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000977816 | | Image |
| 05/21/2021 | Request to issue Special Citation, filed | | |
| 06/09/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 08/02/2021. | | |
| 06/10/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 06/10/2021<br>Service: Service | $11.96 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>34 Stern Lane<br>Atherton, CA 94027<br>Tracking Number: 71901706197000980878 Receipt: 423362 Date: 06/10/2021 | | |
| 08/09/2021 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 08/17/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc. issued. Returnable 10/11/2021. | | |
| 09/20/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., returned with service thereon. | | Image |
| 10/01/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 06/10/2021<br>Service : Service<br>Served :<br>Return : 09/21/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : no such number<br>Tracking #: 71901706197000980878 | | Image |
| 11/01/2021 | Citation by Deputy Sheriff to David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited, returned with service thereon. | | |
| 11/01/2021 | Affidavit as to Military Service filed. | | |
| 11/01/2021 | Motion for General Default filed. | | |
| 11/01/2021 | Printout from www.usps.com showing that the envelope with Tracking #:71901706197000980878 was returned to the sender on September 15, 2021 because the item had been unclaimed, filed. | | |
| 12/28/2021 | Motion for General Default allowed. (Patterson, Rec.)<br><br>Judge: Patterson, Deborah J. | | |
| 01/04/2022 | Letter from attorney Leahy, received. | | |
| 01/05/2022 | Final Judgment entered as to tax-taking(s): Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.<br><br>Judge: Patterson, Deborah J. | | |
| 01/10/2022 | Land Court overpayment refund disbursement<br>Notice of Disposition sent to: Iris Ann Leahy, Esq. 4 Open Square Way Suite 217 Holyoke, Massachusetts 01040 | $155.91 | |
| 01/04/2023 | Land Court cost- vacation of judgment tax lien Receipt: 437156 Date: 01/04/2023 | $11.00 | |
| 01/04/2023 | Defendant's Westborough SPE, LLC's Motion to Vacate foreclosure Judgment, filed. | | Image |
| 01/05/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 01/19/2023 Time: 02:00 PM | | |
| 01/05/2023 | Ex Parte Motion for Approval of Memorandum of Lis Pendens,filed. | | Image |
| 01/05/2023 | Summons and Hearing Notice issued on Application for Lis Pendens.<br>Judge: Speicher, Hon. Howard P.<br>Event: Hearing on Lis Pendens<br>Date: 01/10/2023 Time: 09:00 AM | | |
| 01/10/2023 | Hearing on defendant's motion for approval of a memorandum of lis pendens held by videoconference. Attorney Iris Ann Leahy appeared for the plaintiff. No attorney appeared on behalf of defendant Westborough SPE, LLC; however, Lolonyon Akouete, a non-attorney and manager of defendant, purported to appear pro se on behalf of the defendant. Attorney Leahy reported that there is no imminent sale pending of the subject property because there is a hearing on a motion to vacate scheduled for January 19, 2023 on the defendant's request to redeem the property. The court advised Mr. Akouete that an organization such as an LLC cannot be represented by a non-attorney, and that the court cannot go | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | forward on the motion until the defendant engages an attorney to sign and file the motion on its behalf. Accordingly, the court took no action on the motion for approval of a memorandum of lis pendens. | | |
| 01/13/2023 | Event Resulted: Motion to Vacate Judgment scheduled on: 01/19/2023 10:00 AM Has been: Rescheduled. Motion to continue hearing to February 9, 2023 at 2:00pm, filed. | | Image |
| 01/13/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 02/09/2023 Time: 02:00 PM | | |
| 01/30/2023 | Plaintiff's Memorandum in Opposition to defendant Westborough SPE, LLC'S Motion to Vacate Foreclosure Judgment, filed. | | Image |
| 01/31/2023 | Affidavit of Frances Juan Blaustein Scholes, filed by email. | | Image |
| 02/01/2023 | Plaintiff's Objection to Pro Se Filings by the Defendant, filed. | | Image |
| 02/02/2023 | Emergency motion to continue the hearing, filed. | | Image |
| 02/02/2023 | Event Resulted: Motion to Vacate Judgment scheduled on: 02/09/2023 02:00 PM Has been: Rescheduled to February 23, 2023 at 2:00pm Deborah J. Patterson, Presiding | | |
| 02/02/2023 | Emergency motion to continue the hearing Allowed. Motion to Vacate Judgment continued to February 23, 2023 at 2:00pm, no further continuance will be granted.<br><br>Judge: Patterson, Deborah J. | | |
| 02/02/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 02/23/2023 Time: 02:00 PM | | |
| 02/22/2023 | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment filed by email. | | Image |
| 02/22/2023 | Appearance of Scott Adam Schlager, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Appearance of Alvin S Nathanson, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Defendant Westborough SPE, LLC's emergency motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel, filed. | | Image |
| 02/23/2023 | Event Resulted: Motion to Vacate Judgment scheduled on: 02/23/2023 02:00 PM Has been: Rescheduled Deborah J. Patterson, Presiding | | |
| 02/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel is ALLOWED. Motion to Vacate to be heard on March 23, 2023 at 2:00pm.<br><br>Judge: Kelley, Ellen M. | | |
| 02/23/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 03/23/2023 Time: 02:00 PM | | |
| 03/08/2023 | Supplement to Plaintiff's opposition to defendant Westborough, SPE, LLC's motion to vacate foreclosure judgment, filed. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager.. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager. | | Image |
| 03/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time , filed. | | Image |
| 03/23/2023 | Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial, filed | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 03/23/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>03/23/2023 02:00 PM<br>Has been: Not held | | |
| 03/23/2023 | Case has been ASSIGNED to the Honorable Howard P. Speicher | | |
| 03/29/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Events: Date: 05/16/2023 Time: 10:15 AM<br><br>Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time<br><br>Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed.<br><br>Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial | | |
| 04/11/2023 | Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. | | Image |
| 04/13/2023 | Defendant Westborough SPE, LLC's Emergency Motion for Preliminary Injunctive Relief (Temporary Restraining Order), filed. | | Image |
| 04/18/2023 | Notice, filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Emergency Motion for a Writ of Mandamus , filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/04/2023 | Assent of to the Entry of Judgment. | | Image |
| 05/04/2023 | Waiver of Notice and Assent to the Entry of Judgment, filed. | | Image |
| 05/04/2023 | Opposition, filed. | | Image |
| 05/05/2023 | Citation by Deputy Sheriff to , returned with service thereon. | | Image |
| 05/05/2023 | Defendant Westborough SPE, LLC's Emergency Motion to Strike Peter Blaustein's Unlawful Filing of a Waiver of Notice and Assent to the Entry of Judgment and Motion for the Imposition of Mass. R. CIV P. Rule 11 Sanctions Against Attorney Iris A. Leahy, the Town of Westborough, and Peter Blaustein, for Assisting in the Perpetration of an Alleged Fraud on the Court, Unauthorized Practice of Law, and Conduct Prejudicial to the Administration of Justice, filed. | | Image |
| 05/15/2023 | Defendant Westborough SPE, LLC's Reply to Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/16/2023 | Hearing on Westborough SPE, LLC's motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, motion for preliminary injunctive relief, and motion in limine held by videoconference. Attorneys Iris Ann Leahy and Scott Adam Schlager appeared and argued. Attorneys Alvin Nathanson and Edward Englander also appeared. Following argument, the motion in limine is DENIED without prejudice. Likewise, the motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, and motion for preliminary injunctive relief are DENIED. The court will hold an evidentiary hearing on Westborough SPE, LLC's motion to vacate judgment, to be scheduled in late July 2023, to determine whether Westborough SPE, LCC, having appeared in this case, is the taxpayer who has the right to redeem the subject property. Counsel are instructed to file requests for production of documents, if any, by June 2, 2023. Counsel must respond to the requests for production of documents by July 6, 2023, after which the court will schedule a pretrial conference. No other discovery, such as interrogatories or depositions, may be conducted. | | |
| 05/30/2023 | Letter from Attorney Leahey, filed. | | Image |
| 05/30/2023 | Plaintiff's Request for Production of Documents, filed. | | Image |
| 05/31/2023 | Westborough SPE LLC's First Notice of Supplemental Authority in support of its Motion to Vacate, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Plaintiff,Town of Westborough, filed. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Defendant F. Jan Blaustein a/k/a Jan Blaustein Scholes,R.E. Signatory & Agent for Westborough SPE, LLC's and Pres. of Babcock & Brown Administrative Services.,INC, filed. | | Image |
| 06/30/2023 | Defendant Westborough SPE, LLC's Notice of Supplementation, filed. | | Image |
| 07/06/2023 | Defendant Westborough SPE, LLC's Second Notice of Supplementation, filed. | | Image |
| 07/11/2023 | Defendant Westborough SPE, LLC's Responses and Objections to Plaintiff'f (First) Request for Production of Documents,filed | | |
| 07/11/2023 | Plaintiff Town of Westborough's Response to Defendant's First Request for the Production of Documents to Plaintiff Town of Westborough, filed. | | |
| 07/13/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Hearing on Motion to Vacate Judgment<br>Date: 08/10/2023 Time: 02:00 PM rescheduled to August 17, 2023 at 2pm. | | |
| 07/27/2023 | Motion to continue Pre-trial Conference, filed. | | Image |
| 07/27/2023 | Defendant Westborough SPE, LLC's Opposition to the Town of Westborough's Motion to continue Pre-trial Conference, filed. | | Image |
| 07/28/2023 | Plaintiff Town of Westborough's amended motion to continue the pre-hearing conference on the pending motion to vacate is ALLOWED. The pre-hearing conference is rescheduled to August 31, 2023 at 2:00 P.M. by videoconference. | | |
| 07/28/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/17/2023 02:00 PM<br>Has been: Rescheduled For the following reason: Request of Plaintiff(s)<br>Hon. Howard P. Speicher, Presiding | | |
| 07/28/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Trial Conference<br>Date: 08/31/2023 Time: 02:00 PM | | |
| 07/28/2023 | Amended Motion to continue Pre-trial Conference, filed. | | Image |
| 08/24/2023 | Notice of Statutory Attorneys' Lien by Nathanson & Goldberg P.C., filed. | | Image |
| 08/24/2023 | Defendant Westborough SPE LLC's (First) Notice of Supplementation to Plaintiff's (First) Request for Production of Documents,fiiled. | | Image |
| 08/24/2023 | Westborough SPE, LLC Limited Liability Agreement,filed. | | Image |
| 08/25/2023 | Joint Pre-Trial Memorandum, filed. | | Image |
| 08/31/2023 | SUGGESTION OF BANKRUPTCY, FILED. | | Image |
| 08/31/2023 | Notice of Docket Entry:<br>Counsel for defendant Westborough SPE, LLC, to report to the court on the status of the bankruptcy petition by October 31, 2023 and every sixty days thereafter.<br>Notice of the docket entry sent. | | |
| 08/31/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/31/2023 02:00 PM<br>Has been: Not held per request of the defendant.<br>Hon. Howard P. Speicher, Presiding | | |

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $367.17 | $367.17 | $0.00 | $0.00 |
| | $367.17 | $367.17 | $0.00 | $0.00 |

- **Money on Deposit**

| Account | Applied Amount |
|---|---|
| Land Court Deposit Holding | $141.17 |
| | $141.17 |

- **Money Distributed by Court**

| Payment Type | Amount |
|---|---|
| Disbursement | $558.83 |
| | $558.83 |

## Check Information

| Created | Payee Name | Description | Account | Check | Amount |
|---|---|---|---|---|---|
| 08/28/2019 | Michael H. Delaney | Case: 19 TL 000768 Land Court examiner costs | LCD | 31780 | $150.00 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33259 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | -$252.92 |
| 01/10/2022 | Town of Westborough | Case: 19 TL 000768 Land Court overpayment refund d | LCD | 34880 | $155.91 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 405581 | 07/09/2019 | Town of Westborough | $515.00 |
| 417793 | 09/01/2020 | Bloom, Esq., Dawn E | $400.00 |
| 418144 | 09/23/2020 | Bloom, Esq., Dawn E | $59.75 |
| 418145 | 09/23/2020 | Bloom, Esq., Dawn E | $52.50 |
| 418637 | 10/20/2020 | Bloom, Esq., Dawn E | $5.00 |
| 422168 | 04/08/2021 | Bloom, Esq., Dawn E | $11.96 |
| 423362 | 06/10/2021 | Bloom, Esq., Dawn E | $11.96 |
| 437156 | 01/04/2023 | Aaron B. O'Neal | $11.00 |
| | | | $1,067.17 |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment Entered | 01/05/2022 | Speicher, Hon. Howard P. |

# Exhibit FF

6:23

55

Peter L Blaustein >

Hello Peter How r you? Just checking to see if you have any additional questions and to see if you have decided to allow your mom to see if she can recover the funds. She seems to have the best chance to do so and believes that as well! Please call and let me know what you decide. Thank You Have a Great day.

Pblaustein@gmail.com

Ok I sent the email and the notary is Billy Wahl and her number is 408-361-8316. Thank you. Please let me know we are good !

Thu, Sep 15, 5:59 PM

We are good to proceed

Please have Billy connect with my mom and she can sign the docs and provide copies of her information

Tuesday 8:55 AM

Good morning Peter, how are you? this is Denise Edwards, wanted to let you know that we are working with an Attorney. He is preparing an Affidavit for your mother to sign and wants to give you a call to get your Permission. If you can please call me back, I can explain the details. Thank you for your time. Praying all is well

iMessage

# Exhibit GG

# MALIA M. COHEN
## California State Controller

February 8, 2023

Westborough SPE LLC
c/o Denise Edwards
1241 Deer Park Ave., Suite 1 #1051
North Babylon, NY 11703

Re: Unclaimed Property Claim Identification Number 4853303

Dear Ms. Edwards:

This letter is in response to the above-referenced Unclaimed Property Claim. The claim was referred to the Legal Office for review. As explained in more detail below, after review, the claim must be denied.

This claim was submitted for one property identified as number 1019294209. This property was remitted to the State Controller's Office by MUFG Union Bank as a checking account in the amount of $1,293,646.83. The owner is reported as "Westborough SPE LLC" at a last known address of "50 California St., Suite 3610, San Francisco, CA 94111."

It appears to be your contention that you are entitled to these funds because you purchased the assets of Westborough SPE LLC. In support of your claim you submitted a Bill of Sale, a Certificate of Revival of Westborough SPE LLC from Delaware Secretary of State, a Foreign Limited Liability Company Application for Registration from the Massachusetts Secretary of State, proof of FEIN, and Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment filed with the Land Court for the Commonwealth of Massachusetts.

Based upon the documentation submitted and our research, it appears that Westborough SPE, LLC was a Delaware entity. Based upon information received by the State Controller's Office, Westborough SPE, LLC was manager run as opposed to member or owner run. The manager was Babcock & Brown Administrative Services, Inc., a Delaware corporation. Officers of Babcock & Brown Administrative Services, Inc. included Jan Blaustein Scholes, James Jaworski, and Dyann Blaine.

The Bill of Sale dated November 21, 2022, between Westborough SPE, LLC and Denise Edwards and Lolonyon Alouete was signed by "Jan Blaustein Scholes, its President." Jan Blaustein Scholes has suffered from multiple strokes since 2004. In 2019 the Hawaii Third Circuit, Kona Division granted Conservatorship and Guardianship over the person and estate of Frances Jan Blaustein Scholes to her son, Peter Blaustein. As Jan Blaustein Scholes has been judicially declared to lack capacity, she is unable to enter into contracts. After review, the Bill of Sale was signed by Jan Blaustein Scholes after she was declared to be incapacitated and had a Conservatorship and Guardianship entered over her person and estate. Therefore, the Bill of Sale is void. As the Bill of Sale is void, you could not have acquired any interest in Westborough SPE LLC and your claim for this property must be denied.

Additionally, it should be noted that even if it is determined that Jan Blaustein Scholes had the capacity to enter into the contact, it does not appear that you would be entitled to the funds in question. It appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC. It appears that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC. At this time our office is lacking sufficient information to determine whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC.

For the reasons discussed above, the claim is denied.

Sincerely,

Harpreet K Nakhwal

HARPREET K. NAKHWAL
Staff Counsel

HKN/jh

cc: Coleen Kimler, Bureau Chief, Unclaimed Property Division, State Controller's Office

# Exhibit HH

**From:** Scott A. Schlager <sas@natgolaw.com>
**Sent:** Thursday, June 29, 2023 : 7 PM
**To:** David Ferris; rian . Charville
**c:** Lolonyon Akouete; deniseedwards818@yahoo.com; sgordon@gordonfirm.com
**Subject:** Westborough SPE LLC - Legal pinion from Delaware Corporate Counsel in-lieu of ankruptcy Filing
**Attachments:** Documents from Jan laustein Scholes - June 29 2023.pdf; Ellisa Habbart - The Delaware Counsel roup, LLC ( DC ).pdf

**m ortance:** High

External (sas@natgolaw.com)

Report This Email FAQ Skout Email Protection

Hi David and Brian,

Our not hearing back from you leads us to the conclusion that you are not wanting to finance a bankruptcy proceeding. However, we do have an important update to share with you on the authority side of the equation, that may change your reasoning.

Attached are 3 documents that we were able to have F. Jan Blaustein Scholes execute:

1. **Delaware Certificate of Correction** – Nullifying the Certificate of Cancellation/Withdrawal of Babcock & Brown Parallel Member LLC executed on June 23, 2023 by F. Jan Blaustein Scholes as Manager. This LLC is the successor-in-interest to Babcock & Brown Administrative Services, Inc. (a DE Corporation) that was the original listed manager of Westborough SPE LLC, the owner of the 231 Turnpike Road, Westborough, MA real property.
2. **Written Consent of the Manager of Babcock and Brown Parallel Member LLC, a DE LLC**. – This document revises the "Bill of Sale" document and changes the name and purpose to a transfer of Manager role only. This document was executed on June 26, 2023 by F. Jan Blaustein Scholes and notarized in Maricopa County, Arizona by Billie J. Wahl.
3. **Durable Power of Attorney** for Babcock and Brown Parallel Member LLC to Lolonyon Akouete and Denise Edwards.

We believe that we have sufficient authority to conduct all business on behalf of Westborough SPE LLC. To that end, and in-lieu of filing for Bankruptcy, we would like to obtain a formal legal opinion to present to the Land Court from a noted Delaware corporate law authority, Ellisa Habbart of The Delaware Counsel Group, LLC. I have spoken with Attorney Habbert and she is able to draft a formal opinion as to the authority of Lolonyon Akouete and Denise Edwards to act on behalf of Westborough SPE LLC and state her opinion that under Delaware law, a revived Westborough SPE LLC with the same FEIN # is the same entity and thus the owner of the real property in Westborough, MA and the party entitled to the unclaimed funds in California.

In order to obtain this legal opinion, Attorney Habbart has requested a retainer of $10,000.00. She stated that she would be able to prepare the opinion prior to the July 6th, 2023 discovery deadline.

Instead of financing a bankruptcy proceeding at this time, would you be amenable to incurring $10,000.00 for payment to Attorney Habbart for a legal opinion and testimony to present in Court? Ideally, if you could please let us know if you

would be interested by tomorrow morning preferably, that would be much appreciated so we can engage Attorney Habbart.

Scott

Scott A. Schlager
Partner
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
(O): (617) 210-4800
(C): (617) 909-4511
(F): (617) 210-4824
sas@natgolaw.com

**************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

**************************************************

Case 4:24-cv-10037-MGY Document 13-3 Filed 02/16/24 Page 244 of 549

# Exhibit II

| | |
|---|---|
| **From:** | Lolonyon Akouete <info@smartinvestorsllc.com> |
| **Sent:** | Friday, December 1, 2023 6:38 AM |
| **To:** | Jonathan oldsmith |
| **c:** | STP egion01.W .ECF@usdo .gov; Scott A. Schlager; ris Leahy; cmulhearn@mulhearnlawri.com; Jeffrey T. lake; trusteedocs1@gkalawfirm.com; rian iley; oger L. Smerage; Carey, Paul W. |
| **Subject:** | e: rgent Appeal for a Timely and Cost-effective esolution |
| **Attachments:** | 19 TL 000768 CourtViewForm-388809939-1.pdf; M 070.PN ; Smart nvestors LLC Mail - 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.pdf |

Jonathan,

Can you please consider my suggestions for resolving this matter quickly?

I hope you won't waste valuable time trying to figure out how to remove the land core case to the bankruptcy court. Under MGL c. 185 § 1(b), the Land Court has the exclusive, original jurisdiction of proceedings for the foreclosure and the redemption of tax takings made under MGL c. 60.

We shouldn't be afraid of the Land court just because we have a hostile and biased judge.

Westborough SPE LLC's due process has been violated. F. Jan Bluestein, a/k/a Jan Blaustein Scholes, was a Real Estate Signatory and agent for Westborough SPE LLC and President of Babcock & Brown Administrative Services, Inc. Unsuccessful service was attempted on F. Jan Blaustein Scholes as indicated by the Return of Service filed with the Land Court on October 02, 2020. No Land Court Notice was ever provided to Babcock & Brown Parallel Member LLC, a Delaware limited liability company, as a successor in interest to Babcock & Brown Administrative Services LLC as a successor in interest to Babcock & Brown Administrative Services Inc. The town's having Peter Blaustein sign an illegal Waiver of Notice and Assent to the Entry of Judgment is an acknowledgment that they never gave proper notice to F. Jan Blaustein.

Could you please file an appearance in the land court so that the pretrial conference can be rescheduled? Prior to the Pre-trial Conference, the Parties shall discuss (1) the issues presented by the case, and (2) whether ADR (Alternative Dispute Resolution) may be an appropriate route to narrow the issues or resolve the case, as indicated by the court. This will provide the proper avenue for negotiation.

I have gathered evidence of the judge's bias. In case the judge maintains his attitude towards us after the pretrial conference, you have the option of filing a motion for recusal to have the judge removed from the case. If the judge declines to recuse himself and issues an unfair decision, we can always resort to an appeal.

We should not allow the town to bully us into making an unfair settlement.
If the town is so determined to sell the property to Lax Media, they can just ask them to raise their offer. (The town had accepted a $5 million offer from LAX Media to buy the property in November 2018)

If you rescind your offer to Ferris Development Group LLC, it will result in additional legal complications. See attached image.

If you need funds to cover legal costs, you should get the funds from California back as soon as possible.

Thank you,
Lolonyon Akouete
Manager of Westborough SPE, LLC

1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

**Due Process e uirement**: Due process is a fundamental legal principle that requires fair procedural practices when the government acts in a way that affects a person's rights. In tax foreclosure, due process primarily involves ensuring that property owners receive proper and timely notice of the tax proceedings and have an opportunity to respond or challenge the proceedings. The Massachusetts case law, as referenced in the information, underscores the importance of notice being "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

**acating the udgment within ne ear**: If a property owner wants to vacate a foreclosure judgment within one year of its entry, they can do so by paying the redemption amount plus interest. This period allows property owners a last opportunity to reclaim their property by fulfilling their tax obligations. However, the process of vacating the judgment is not automatic, and the court may require evidence of extenuating circumstances to allow the vacating of the judgment.

**acating udgment on Due Process rounds After ne ear**: After the one-year period, the judgment of foreclosure becomes final and can only be vacated upon a showing of a denial of due process. This means that if a property owner can demonstrate that the foreclosure process violated their due process rights (e.g., they did not receive adequate notice of the tax proceedings), they might succeed in having the foreclosure judgment vacated, even after the one-year period. This aspect of the law provides a safeguard against potential procedural injustices in the foreclosure process.

1. **allage Lincoln, LLC Williams, Mass** :
   - **A lication**: This case provides a comprehensive review of the laws regarding real estate tax collection in Massachusetts. It details the process of tax taking and the subsequent rights and obligations of municipalities and property owners. It emphasizes the importance of due process in tax foreclosure proceedings, particularly in the service of notice and the opportunity to respond or challenge.
2. **own of orth eading Welch, Mass A Ct** :
   - **A lication**: This case discusses the finality of a foreclosure judgment and the conditions under which it can be vacated. It specifically notes that after one year, a foreclosure judgment can only be vacated upon a showing of a denial of due process, highlighting the significance of due process in these matters.
3. **own of Bourne Coffey, Mass A Ct** :
   - **A lication**: It clarifies the requirements for vacating a tax foreclosure judgment. It states that a petition brought within one year needs to show extenuating circumstances, whereas a petition brought after one year must demonstrate a due process violation.
4. **incent ealty Cor Boston, Mass** :
   - **A lication**: This case examines the criteria for allowing a petition to vacate a tax foreclosure judgment within one year. It clarifies that such a petition is extraordinary and should only be granted in instances where it is required to achieve justice.
5. **own of Ando er tate in er s , nc , Mass** :
   - **A lication**: This case cites the fundamental requirement of due process in legal proceedings, particularly the need for notice that is reasonably calculated to inform interested parties of the action and allow them to present objections.
6. **Christian Mooney, Mass** :
   - **A lication**: This case addresses the invalidation of tax titles due to incorrect tax assessments, emphasizing the need for accurate and non-misleading assessments in the tax process.
7. **ardy aeckle, Mass** :
   - **A lication**: It clarifies the assessment requirements for parcels with no person in possession, including the due diligence required of assessors in identifying the owner of record.
8. **Barte ian Cullen, Mass** :

- **A lication**: This case discusses the burden of proof in situations where an error in the tax process is identified. It stipulates that the party asserting the insubstantiality of the error must prove this fact according to each case's circumstances.

On Mon, Nov 20, 2023 at 9:02 PM Lolonyon Akouete <info@smartinvestorsllc.com> wrote:

> Hello everyone,
>
> I hope this message finds you all doing well. I am reaching out again to let you know that I have secured an attorney to represent Westborough SPE LLC. However, I still need to come up with an additional $20,000 for the retainer fee, which I am currently working on. While I'm taking care of that, I wanted to discuss with you all whether we could settle this matter without incurring further legal expenses.
>
> A Chapter 7 Trustee has been appointed, and the trustee's request to employ his law firm as counsel has been granted. Furthermore, the meeting of creditors has already taken place.
>
> I urge all parties involved to avoid any further delays in this case. Although I understand that the Town is considering selling the property to Lax Media for $2.5 million, it would be unfair to do so since Ferris Development Group is willing to pay $2.875 million and close in just 14 days, unless Lax Media is willing to match that offer.
>
> Once I have a lawyer, I will object to any unfair settlement. It is in the best interest of everyone involved to be reasonable and come to an agreement.
> This is in line with section 704(a)(1), which states that a trustee should close an estate as quickly as possible in the best interest of the estate. Delays in closing the case reduce the return to creditors, undermine the creditors' and public's trust in the bankruptcy system, increase the trustee's exposure to liability, raise administrative costs, and in cases involving non-dischargeable pre-petition tax liabilities, expose the debtor to increased penalties and interest. Delays also lead to public criticism of the bankruptcy process.
>
> Thank you for your time and attention in this matter.
>
> Lolonyon Akouete
> Manager of Westborough SPE, LLC
> 1241 Deer Park Ave., Suite 1, #1051
> North Babylon, NY 11703
> info@smartinvestorsllc.com
> (443) 447-3276
>
> On Wed, Oct 25, 2023 at 7:48 AM Lolonyon Akouete <info@smartinvestorsllc.com> wrote:
>
> > Dear Mr. Riley, Blake, and Smerage,
> >
> > I am writing on behalf of Westborough SPE LLC, expressing our growing concern regarding the protracted nature of the simple motion to vacate that has been in process for the past 10 months. It is disheartening to note that this prolonged legal engagement has resulted in Westborough SPE LLC incurring over $140,000 in legal fees.
> >
> > It is our firm belief that the Town seems to be employing scorched earth litigation tactics. By unreasonably increasing our litigation expenses, the Town is not only adding to the financial burden on Westborough SPE LLC but is also exposing itself to potential liability. As per 28 U.S. Code § 1927, any entity that unreasonably and vexatiously multiplies proceedings can be held responsible for the excess costs and attorneys' fees.

I sincerely hope it doesn't come to that. However, to safeguard our interests, we are on the brink of engaging an attorney to counter any further delays, especially in the bankruptcy court.

It's noteworthy to mention that there are numerous cases where both parties, without compromising their interests, work collaboratively to ensure swift resolutions with minimal judicial involvement. However, it's deeply regrettable when the opposite approach is taken, leading to endless disputes and necessitating frequent judicial intervention. This not only strains our resources but also overburdens our judicial system.

In light of the above, I earnestly urge the Town of Westborough to re-evaluate its stance and consider a swift and amicable settlement. This will undoubtedly save both sides from incurring further unnecessary expenses and will stand as a testament to the Town's commitment to its residents and businesses.

Let's work together towards a resolution that is in the best interest of all parties involved.

Warm regards,

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

# Exhibit JJ

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Lolonyon Akouete <info@smartinvestorsllc.com> |
| **Sent:** | Saturday, December 16, 2023 8:22 AM |
| **To:** | Iris Leahy |
| **Subject:** | Please pass on this urgent message to the town of Westborough |
| **Attachments:** | gov.uscourts.mab.511599.56.0.pdf; Filed Affidavit of Lolonyon Akouete and Exibit A.pdf |

Attorney Leahy,

Could you please pass on this communication to the Town of Westborough?
The trustee has sent a detailed proposal to Attorney Smerage, who represents the Town of Westborough, regarding the sale of the property under Bankruptcy Code Section 363. The proposal allows a sale to Ferris or any higher bidder and has been reviewed by the Select Board. However, they need more time to decide and have requested to postpone the hearing on the Motion for Relief from Stay until early February.

It is not uncommon for the Select Board to need additional time to review and consider such proposals, especially when they involve complex legal and financial decisions. However, due to the unique circumstances surrounding this case, it is requested that the Select Board hold an emergency meeting and involve all necessary parties to make a decision. This will prevent the hearing on the Motion for Relief from Stay from being continued.

If the hearing is continued, the Town of Westboro should expect another lawsuit after the sale of the property. I intend to bring a case for malicious prosecution and abuse of process against the town. This is not a threat but an honest communication of intentions.

The town can avoid this situation by being responsible and quickly resolving the matter instead of dragging it out further.

I do not wish to postpone the hearing scheduled for Thursday, December 21, 2023. The case has been ongoing for more than a year without reason.

Thank you,

Lolonyon Akouete
Manager of Westborough SPE, LLC
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

# Exhibit KK

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Tuesday, December 26, 2023 6: AM
**To:** Aedinberg@westboroughma.gov; ohnson@westboroughma.gov; Smarshall@westboroughma.gov; Skeogh@westboroughma.gov; Pwelch@westboroughma.gov
**c:** kwilliams@westboroughma.gov; kfoster@westboroughma.gov; oger L. Smerage; ris Leahy; Jonathan oldsmith
**Subject:** e: rgent Call for January Meeting on Settlement Proposal Amidst Multiple Legal Disputes nvolving 231 Turnpike d, Westborough

Dear Members of the Select Board,

I am writing to follow up on my previous communication regarding the critical need for a January meeting to discuss the settlement proposal by the bankruptcy trustee, concerning the ongoing legal matters involving Westborough SPE LLC and the property at 231 Turnpike Rd, Westborough, MA 01581.

As we navigate these multifaceted legal proceedings, it is crucial to reflect on the Board's established pattern of governance:

1. **Efficient Decision Making**: The Board's history of holding regular, bi-weekly meetings exemplifies a commitment to timely and efficient handling of town affairs. The proposed 45-day delay in addressing this matter seems to be a significant departure from this commendable practice, especially given the urgency and complexity of the current situation.
2. **Ca ability for imely Deliberation**: Your ability to swiftly address urgent matters, even within the constraints of the Open Meeting Law, has been evident in past dealings. This capability strongly suggests that a shorter timeframe would be sufficient for considering the Trustee's proposal. A prolonged delay to February appears unnecessary and inconsistent with the Board's demonstrated efficiency and standard operating procedures.
3. **easonal ariations**: While acknowledging the impact of the winter holidays, it is important to note that the Board has successfully managed such seasonal variations in the past. Therefore, scheduling a meeting in January, rather than extending the delay to February, aligns better with the Board s historical practice of maintaining consistent governance activities throughout the year.

Given these considerations, and the interconnected nature of the legal disputes involving Westborough SPE LLC, an expedited January meeting would be instrumental in moving towards a resolution. Such a meeting would not only be in keeping with the Board s established rhythm of responsive governance but also mitigate the risk of further legal complications and financial implications for all parties involved.

I respectfully urge the Board to reconsider the proposed scheduling and recognize the criticality of a prompt and collaborative approach. Your timely action in this matter is highly valued and will be seen as a constructive step towards an effective resolution.

Thank you for your immediate attention to this urgent issue. I look forward to your prompt response and am hopeful for a positive outcome.

Sincerely,

Lolonyon Akouete

Manager of Westborough SPE, LLC

1241 Deer Park Ave., Suite 1, #1051

North Babylon, NY 11703

info@smartinvestorsllc.com

(443) 447-3276

On Sat, Dec 23, 2023 at 12:10 PM Lolonyon Akouete <info@smartinvestorsllc.com> wrote:

Dear Members of the Select Board,

As Manager/Creditor of Westborough SPE LLC, deeply involved in the ongoing legal disputes concerning 231 Turnpike Rd, Westborough, MA 01581, I am compelled to address the necessity of a timely meeting regarding the settlement proposal put forth by the bankruptcy trustee. Presently, we are engaged in multiple legal proceedings, including:

1. Town of Westborough v. Westborough SPE LLC, Case No: 19 TL 000768, Suffolk County Superior Court-Land Court.
2. Civil Action #1:23-cv-12017, U.S. District Court for the District of Massachusetts.
3. Debtor - Westborough SPE LLC, Involuntary Chapter 7, Case No: 23-40709-CJP.
4. Ferris Development Group, LLC. v. Town of Westborough, Lax Media, LLC, and Lax Media MA, LLC, Worcester Superior Court C.A. No. 2285C 01281.

These interconnected cases reflect a complex legal landscape, necessitating an efficient and proactive approach. The settlement proposal from the bankruptcy trustee offers a potential pathway toward resolving these disputes. Given this context, it is imperative that the Select Board convenes in January, rather than deferring until February.

The Board s established pattern of diligent and responsive governance, as evidenced by your meeting schedule in 2023, further underscores the feasibility of this request. Addressing this proposal in a timely manner aligns with the Board s commitment to efficient and effective resolution of pressing town matters.

I must also express my growing concern regarding the potential for additional legal action. Should there be unnecessary delays in resolving these cases, I am considering initiating legal proceedings against the town for malfeasance, malicious prosecution, and abuse of process. Such a course would be regrettable but may become necessary to protect the interests of Westborough SPE LLC.

iolation of due process is a fundamental right that should be adjudicated promptly. It shouldn't be subject to multi-year litigation. We discourage this litigation strategy.

An expedited January meeting to discuss the trustee s settlement proposal could be pivotal in avoiding further legal entanglements and financial implications for all parties involved. It offers an opportunity for a collaborative approach towards a mutually beneficial resolution.

I trust the Board will recognize the urgency and critical nature of this matter and will act accordingly. Your prompt scheduling of this meeting will be greatly appreciated and viewed as a constructive step towards a resolution.

Thank you for your immediate attention to this matter. I eagerly await your response and hope for a positive and proactive approach in addressing these complex legal issues.

Sincerely,

Lolonyon Akouete

Manager of Westborough SPE, LLC

1241 Deer Park Ave., Suite 1, #1051

North Babylon, NY 11703

info@smartinvestorsllc.com

(443) 447-3276

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Exhibits to the Town of Westborough's Motion to Dismiss Bankruptcy Case to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor*
(by U.S. mail)

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor*
(by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor*
(by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor*
(by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor*
(by email)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust*
(by email)

Dated: January 16, 2024

Roger L. Smerage

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| WESTBOROUGH SPE LLC | ) | Chapter 7, No. 23-40709-CJP |
| Debtor | ) | |
| TOWN OF WESTBOROUGH | ) | |
| Plaintiff | ) | Commonwealth of Massachusetts<br>Land Court Department<br>Case No. 19TL000768-HPS |
| v. | ) | |
| WESTBOROUGH SPE LLC | ) | |
| Defendant | ) | |

**NOTICE OF REMOVAL – RULE 9027 (a)(1)**

**NOTICE OF REMOVAL**

JONATHAN R. GOLDSMITH, as Chapter 7 Trustee ("Trustee") in Bankruptcy for Westborough SPE, LLC (hereinafter "Debtor"), which Debtor is a Defendant in a case pending in the Massachusetts Land Court Department as Case No. 19TL000768-HPS (the "Removed Case"), and hereby removes the Removed Case to the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

**Entitlement to Removal.**

The Removed Case was commenced in the Land Court on July 8, 2019. On August 31, 2023, a Chapter 7 Involuntary Case was commenced against Westborough SPE, LLC, Case No. 23-40709 ("Bankruptcy Case") in the Bankruptcy Court for the District of Massachusetts.

On October 11, 2023, an Order for Relief under Chapter 7 was entered in the Bankruptcy Case.

The Removed Case is a case related to the Bankruptcy Case. As such, the United States District Court for the District of Massachusetts (the "District Court") has jurisdiction of the Removed Case pursuant to 28 U.S.C. §1334(b). Therefore, pursuant to 28 U.S.C. §1452(a), the Removed Case may be removed to the District Court.

Pursuant to 28 U.S.C. §157, the District Court may refer the Removed Case to the bankruptcy judges for the district. By its General Order, the District Court has referred to the bankruptcy

judges for this district in all cases under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title 11. That includes the Removed Case.

As permitted by Bankruptcy Rule 9027(a)(2), this Notice of Removal is being filed within the time frame allotted by the Bankruptcy Court pursuant to its Order of December 19, 2023, a copy of which is attached hereto as Exhibit "A".

**Core/Noncore Status of Removed Case.**

The Trustee submits that the Removed Case is a core proceeding within the meaning of 28 U.S.C. §157(b).

**Process and Pleadings.**

In light of the extensive number of pleadings in the Removed Case, the Trustee is only attaching, at this time, the docket report from the Removed Case, a copy of which is attached hereto as Exhibit "B". In the event the Court requires the submission of all or a portion of the pleadings or orders from the Removed Case, the Trustee will supplement this notice accordingly.

**Filing in Massachusetts Land Court.**

Promptly after the filing hereof, the undersigned shall file a copy of this Notice with the Clerk of the Massachusetts Land Court.

Respectfully submitted,
JONATHAN R. GOLDSMITH, CHAPTER 7
TRUSTEE IN THE BANKRUPTCY CASE
FOR WESTBOROUGH SPE, LLC

Dated: January 17, 2024

By: _/s/ Jonathan R. Goldsmith, Esq._
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780
Email: jgoldsmith@gkalawfirm.com

# *Exhibit "A"*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br>Westborough SPE LLC<br>Debtor | Chapter 7<br>23-40709-CJP |

**ORDER**

**MATTER:**
#57 Joint Motion filed by Trustee Jonathan R. Goldsmith, Creditor Town of Westborough to Continue Hearing [Re: 20 Motion for Relief From Stay].

UPON CONSIDERATION OF THE JOINT MOTION TO CONTINUE HEARING [DKT. NO. 57] (THE "MOTION"), THE OPPOSITION THERETO OF LOLONYON AKOUETE [DKT. NO. 59], AND THE RECORD OF THIS CASE, THE MOTION IS GRANTED AS FOLLOWS.

THE DECEMBER 21, 2023 HEARING ON THE MOTION FOR RELIEF [DKT. NO. 20] IS CONTINUED TO **FEBRUARY 13, 2024 AT 10:30 AM** IN COURTROOM 3, DONOHUE FEDERAL BUILDING AND COURTHOUSE, 595 MAIN STREET, WORCESTER, MASSACHUSETTS, WITH AN OPTION FOR PARTIES TO APPEAR BY ZOOM VIDEO.

TO OBTAIN VIDEO ACCESS INFORMATION FOR THE CONTINUED HEARING, PARTIES IN INTEREST SHALL EMAIL THE COURTROOM DEPUTY, HALINA MAGEROWSKI, AT CJP_COURTROOM_DEPUTY@MAB.USCOURTS.GOV NO LATER THAN **FEBRUARY 12, 2024 AT 4:00 P.M.**, PROVIDING THE CONTACT INFORMATION FOR THE PARTY SEEKING TO APPEAR BY VIDEO.

THE DEADLINE FOR THE TRUSTEE TO REMOVE THE TAX FORECLOSURE ACTION, SUBJECT TO THE STIPULATION OUTLINED IN THE MOTION, IS EXTENDED THROUGH AND INCLUDING TO **FEBRUARY 27, 2024**.

Dated: 12/19/2023

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

# *Exhibit "B"*

# 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

- Case Type:
- Tax Lien
- Case Status:
- Closed
- File Date
- 07/08/2019
- DCM Track:
-
- Initiating Action:
- Tax Lien - one tax taking
- Status Date:
- 07/08/2019
- Case Judge:
- Speicher, Hon. Howard P.
- Next Event:
-
- **Property Information**
  Turnpike Road
  Westborough
  RECORD

All Information | Party | Event | Docket | Financial | Checks | Receipt | Disposition

## Party Information

**Town of Westborough**
- Plaintiff

**Party Attorney**
- Attorney
- Bloom, Esq., Dawn E
- Bar Code
- 659839
- Address
- 43039 Boardwalk Loop
  Punta Gorda, FL 33982
- Phone Number
- (413)529-9936
- Attorney
- Leahy, Esq., Iris Ann
- Bar Code
- 697783
- Address
- Law Office of Iris A. Leahy
  4 Open Square Way
  Suite 217
  Holyoke, MA 01040
- Phone Number
- (413)322-8318

More Party Information

**Westborough SPE, LLC**
- Defendant

**Party Attorney**
- Attorney
- Nathanson, Esq., Alvin S
- Bar Code
- 367480
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  Fifth Floor
  Boston, MA 02109
- Phone Number
- (617)210-4810
- Attorney
- Schlager, Esq., Scott Adam
- Bar Code

- 695421
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  5th Floor
  Boston, MA 02109
- Phone Number
- (617)909-4511

More Party Information

**F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.**
- Defendant

**Party Attorney**

More Party Information

**Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC**
- Defendant

**Party Attorney**

More Party Information

**James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.**
- Defendant

**Party Attorney**

More Party Information

**David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

**Party Attorney**

More Party Information

**Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

**Party Attorney**

More Party Information

**Interstate Theaters Corporation**
- Defendant

**Party Attorney**

More Party Information

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 06/15/2020 02:00 PM | C.J. Piper | Courtroom 404 - Fourth Floor | Motion | Piper, Hon. Gordon H. | Held via video |
| 01/10/2023 09:00 AM | J. Speicher | Courtroom 1102 - Eleventh Floor | Hearing on Lis Pendens | Speicher, Hon. Howard P. | Held via video |
| 01/19/2023 10:00 AM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/09/2023 02:00 PM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 03/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Not held |
| 05/16/2023 10:15 AM | J. Speicher | Courtroom 401 - Fourth Floor | Motion | Speicher, Hon. Howard P. | Held via video |
| 08/17/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Rescheduled |
| 08/31/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Not held |

**Docket Information**

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/08/2019 | Complaint filed. | | Image |
| 07/08/2019 | Case assigned to the Tax Track per Land Court Standing Order 1:04. | | |
| 07/08/2019 | Land Court filing complaint tax Receipt: 405581 Date: 07/09/2019 | $200.00 | |
| 07/08/2019 | Land Court initial deposit tax Receipt: 405581 Date: 07/09/2019 | $300.00 | |
| 07/08/2019 | Land Court surcharge Receipt: 405581 Date: 07/09/2019 | $15.00 | |
| 07/10/2019 | Michael H. Delaney, Esq. appointed as Title Examiner. | | |
| 08/26/2019 | Report filed by Michael H. Delaney, Esq.. | | Image |
| 08/28/2019 | Land Court examiner costs | $150.00 | |
| 09/05/2019 | Checklist sent. | | |
| 11/07/2019 | Letter of Diligent Search Filed. | | |
| 12/31/2019 | Checklist completed. | | |
| 05/12/2020 | Scheduled<br>Event: Motion for Alternative Service<br>Date: 06/15/2020 Time: 02:00 PM<br><br>Zoom instructions to be sent by the Recorder's Office in advance of the hearing date.<br><br>Judge: Piper, Hon. Gordon H. | | |
| 05/19/2020 | Motion for Alternative Service and Supporting Memorandum, filed. | | Image |
| 06/15/2020 | Event Resulted: Motion scheduled on:<br>06/15/2020 02:00 PM<br>Has been: Held via video<br><br>June 15, 2020. Hearing held on Plaintiff's Motion for Alternative Service via videoconference. Attorneys Shirin Everett and Dawn Bloom appeared for plaintiff. Jon Steinberg, Assessor for the town of Westborough, also observed the hearing. Attorney Bloom reported that the defendant owner of the parcel in question is a defunct Delaware limited liability company which withdrew from Massachusetts in 2007, had its registration in Delaware cancelled in 2014, and has listed as its agent for service in Delaware a corporation service company that is no longer active in that role. Attorney Bloom indicated that the manager listed on its Massachusetts registration is a defunct entity named Babcock & Brown Administrative Services, Inc., that Mr. Steinberg was able to contact a related Delaware corporation by the name of Babcock & Brown operating in San Francisco, and that the related corporation's officers indicated that it has no interest in the property. Attorney Everett reported that after the town of Westborough had begun proceedings to acquire title to the property by eminent domain, an Australian law firm notified the town that it represented the administrator of the liquidation of an Australian entity named Babcock & Brown LP, and that it was investigating whether Babcock & Brown LP might hold any interest in the property; the town has since received requests from that law firm concerning the status of eminent domain proceedings, but has received no response to several requests by the municipality that that entity address the basis for its potential claim to any interest in the property. Attorney Bloom indicated that the plaintiff asserts that the defendant owes approximately $400,000 to the town in unpaid real estate taxes and interest, and also owes another $300,000 pursuant to a reciprocal maintenance agreement concerning the property's shared parking lot. Attorney Bloom also indicated that there appears to be no mortgage currently encumbering the property, as there is a recorded discharge of the most recent mortgage of record. Plaintiff to attempt to make direct service on (1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter, & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock & Brown LP liquidation. Court ALLOWED plaintiff's motion for alternative service by publication. Plaintiff to submit to the court's tax lien department a proposed form of an order of notice for publication in a newspaper of general circulation in the town of Westborough as to the defendant entity, no longer in legal existence, and its successors. Following return dates on all summonses and the published citation, plaintiffs to request default enter under Mass. R. Civ. P. 55 (a) against all parties not timely filing answer or responsive pleading. Upon entry of any indicated default(s), plaintiffs to file motion with the Recorder requesting entry of a finding of the amount and time for redemption from the tax taking. If any additional party appears or answers, parties promptly to request, in writing, further case management conference. (Piper, C.J.)<br><br>(Notice of Docket Entry sent by email to Attorneys Dawn Bloom and Shirin Everett) | | |
| 09/01/2020 | Land Court additional deposit tax Receipt: 417793 Date: 09/01/2020 | $400.00 | |
| 09/15/2020 | Citation by Publication in Village News, issued. Returnable 11/09/2020. | | |
| 09/22/2020 | Citation issued as to the land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 11/16/2020. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 09/22/2020 | Land Court notices mailing - Certified Mail<br>Issue Date: 09/22/2020<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.95<br><br>Interstate Theaters Corporation<br>Mailing Address<br>101 E. Blount Ave.<br>Knoxville, TN 37920<br>Tracking Number: 71901706197000959805<br><br>Interstate Theaters Corporation<br>Mailing Address<br>c/o CT Corporation System, Reg. Agent<br>155 Federal St., Suite 700<br>Boston, MA 02110<br>Tracking Number: 71901706197000959812<br><br>James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Mailing Address<br>1715 Easton Dr.<br>Burlingame, CA 94010<br>Tracking Number: 71901706197000959829<br><br>Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC<br>Mailing Address<br>20 Queensbrook Pl.<br>Orinda, CA 94563<br>Tracking Number: 71901706197000959836<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>151 E. 31st<br>Apt. 28B<br>New York, NY 10016<br>Tracking Number: 71901706197000959843 Receipt: 418144 Date: 09/23/2020 | $59.75 | |
| 09/23/2020 | Land Court notices mailing out of country - Registered Mail<br><br>RE 550 804 582US<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>Deloitte Financial Advisory Pvt. Ltd.<br>Grosvenor Place Level 9<br>225 George St.<br>Sydney, NSW 2000<br>Australia<br><br>RE 550 804 596US<br>Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>20 Bond Street, Level 25<br>Sydney, NSW 2000<br>Australia Receipt: 418145 Date: 09/23/2020 | $52.50 | |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/26/2020<br>Return : 09/30/2020<br>On : James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959829 | | Image |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 09/30/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Comment :<br>Tracking #: 71901706197000959812 | | |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 10/01/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959805 | | Image |
| 10/06/2020 | Tear Sheet Received. | | |
| 10/06/2020 | Citation published September 25, 2020. Returnable 11/09/2020 | | |
| 10/20/2020 | Land Court notice by publications Receipt: 418637 Date: 10/20/2020 | $5.00 | |
| 10/20/2020 | Land Court newspaper payments Voided on 10/20/2020.<br><br>Void Check number: 33258<br>Void Status Date: 10/20/2020<br>Void Reason: Printer Jam<br>Void Comments: | $0.00 | |
| 10/20/2020 | Land Court newspaper payments | $252.92 | |
| 10/21/2020 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/30/2020<br>Return : 10/02/2020<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000959843 | | Image |
| 11/03/2020 | Registered Mail Service on Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited successful.<br>Served on 10/14/2020 | | Image |
| 11/23/2020 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 12/10/2020 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited issued. Returnable 02/01/2021. | | |
| 01/19/2021 | Appearance of Iris Ann Leahy, Esq. for Town of Westborough, filed | | |
| 01/19/2021 | Citation by Deputy Sheriff to Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, returned with service thereon. | | |
| 02/19/2021 | Request to issue Special Citation, filed | | |
| 04/08/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 05/31/2021. | | |
| 04/08/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 04/08/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>888 Avenue of the Americas<br>New York, NY 10001<br>Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021 | $11.96 | |
| 05/04/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 04/08/2021 | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Service : Service<br>Served :<br>Return : 04/15/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000977816 | | |
| 05/21/2021 | Request to issue Special Citation, filed | | |
| 06/09/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 08/02/2021. | | |
| 06/10/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 06/10/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>34 Stern Lane<br>Atherton, CA 94027<br>Tracking Number: 71901706197000980878 Receipt: 423362 Date: 06/10/2021 | $11.96 | |
| 08/09/2021 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 08/17/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc. issued. Returnable 10/11/2021. | | |
| 09/20/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., returned with service thereon. | | Image |
| 10/01/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 06/10/2021<br>Service : Service<br>Served :<br>Return : 09/21/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : no such number<br>Tracking #: 71901706197000980878 | | Image |
| 11/01/2021 | Citation by Deputy Sheriff to David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited, returned with service thereon. | | |
| 11/01/2021 | Affidavit as to Military Service filed. | | |
| 11/01/2021 | Motion for General Default filed. | | |
| 11/01/2021 | Printout from www.usps.com showing that the envelope with Tracking #:71901706197000980878 was returned to the sender on September 15, 2021 because the item had been unclaimed, filed. | | |
| 12/28/2021 | Motion for General Default allowed. (Patterson, Rec.)<br><br>Judge: Patterson, Deborah J. | | |
| 01/04/2022 | Letter from attorney Leahy, received. | | |
| 01/05/2022 | Final Judgment entered as to tax-taking(s): Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.<br><br>Judge: Patterson, Deborah J. | | |
| 01/10/2022 | Land Court overpayment refund disbursement<br>Notice of Disposition sent to: Iris Ann Leahy, Esq. 4 Open Square Way Suite 217 Holyoke, Massachusetts 01040 | $155.91 | |
| 01/04/2023 | Land Court cost- vacation of judgment tax lien Receipt: 437156 Date: 01/04/2023 | $11.00 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 01/04/2023 | Defendant's Westborough SPE, LLC's Motion to Vacate foreclosure Judgment, filed. | | Image |
| 01/05/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 01/19/2023 Time: 02:00 PM | | |
| 01/05/2023 | Ex Parte Motion for Approval of Memorandum of Lis Pendens,filed. | | Image |
| 01/05/2023 | Summons and Hearing Notice issued on Application for Lis Pendens.<br>Judge: Speicher, Hon. Howard P.<br>Event: Hearing on Lis Pendens<br>Date: 01/10/2023 Time: 09:00 AM | | |
| 01/10/2023 | Hearing on defendant's motion for approval of a memorandum of lis pendens held by videoconference. Attorney Iris Ann Leahy appeared for the plaintiff. No attorney appeared on behalf of defendant Westborough SPE, LLC; however, Lolonyon Akouete, a non-attorney and manager of defendant, purported to appear pro se on behalf of the defendant. Attorney Leahy reported that there is no imminent sale pending of the subject property because there is a hearing on a motion to vacate scheduled for January 19, 2023 on the defendant's request to redeem the property. The court advised Mr. Akouete that an organization such as an LLC cannot be represented by a non-attorney, and that the court cannot go forward on the motion until the defendant engages an attorney to sign and file the motion on its behalf. Accordingly, the court took no action on the motion for approval of a memorandum of lis pendens. | | |
| 01/13/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>01/19/2023 10:00 AM<br>Has been: Rescheduled. Motion to continue hearing to February 9, 2023 at 2:00pm, filed. | | Image |
| 01/13/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/09/2023 Time: 02:00 PM | | |
| 01/30/2023 | Plaintiff's Memorandum in Opposition to defendant Westborough SPE, LLC'S Motion to Vacate Foreclosure Judgment, filed. | | Image |
| 01/31/2023 | Affidavit of Frances Juan Blaustein Scholes, filed by email. | | Image |
| 02/01/2023 | Plaintiff's Objection to Pro Se Filings by the Defendant, filed. | | Image |
| 02/02/2023 | Emergency motion to continue the hearing, filed. | | Image |
| 02/02/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>02/09/2023 02:00 PM<br>Has been: Rescheduled to February 23, 2023 at 2:00pm<br>Deborah J. Patterson, Presiding | | |
| 02/02/2023 | Emergency motion to continue the hearing Allowed. Motion to Vacate Judgment continued to February 23, 2023 at 2:00pm, no further continuance will be granted.<br><br>Judge: Patterson, Deborah J. | | |
| 02/02/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/23/2023 Time: 02:00 PM | | |
| 02/22/2023 | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment filed by email. | | Image |
| 02/22/2023 | Appearance of Scott Adam Schlager, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Appearance of Alvin S Nathanson, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Defendant Westborough SPE, LLC's emergency motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel, filed. | | Image |
| 02/23/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>02/23/2023 02:00 PM<br>Has been: Rescheduled<br>Deborah J. Patterson, Presiding | | |
| 02/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel is ALLOWED. Motion to Vacate to be heard on March 23, 2023 at 2:00pm.<br><br>Judge: Kelley, Ellen M. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 02/23/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 03/23/2023 Time: 02:00 PM | | |
| 03/08/2023 | Supplement to Plaintiff's opposition to defendant Westborough, SPE, LLC's motion to vacate foreclosure judgment, filed. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager.. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager. | | Image |
| 03/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time , filed. | | Image |
| 03/23/2023 | Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial, filed | | Image |
| 03/23/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>03/23/2023 02:00 PM<br>Has been: Not held | | |
| 03/23/2023 | Case has been ASSIGNED to the Honorable Howard P. Speicher | | |
| 03/29/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Events: Date: 05/16/2023 Time: 10:15 AM<br><br>Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time<br><br>Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed.<br><br>Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial | | |
| 04/11/2023 | Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. | | Image |
| 04/13/2023 | Defendant Westborough SPE, LLC's Emergency Motion for Preliminary Injunctive Relief (Temporary Restraining Order), filed. | | Image |
| 04/18/2023 | Notice, filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Emergency Motion for a Writ of Mandamus , filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/04/2023 | Assent of to the Entry of Judgment. | | Image |
| 05/04/2023 | Waiver of Notice and Assent to the Entry of Judgment, filed. | | Image |
| 05/04/2023 | Opposition, filed. | | Image |
| 05/05/2023 | Citation by Deputy Sheriff to , returned with service thereon. | | Image |
| 05/05/2023 | Defendant Westborough SPE, LLC's Emergency Motion to Strike Peter Blaustein's Unlawful Filing of a Waiver of Notice and Assent to the Entry of Judgment and Motion for the Imposition of Mass. R. CIV P. Rule 11 Sanctions Against Attorney Iris A. Leahy, the Town of Westborough, and Peter Blaustein, for Assisting in the Perpetration of an Alleged Fraud on the Court, Unauthorized Practice of Law, and Conduct Prejudicial to the Administration of Justice, filed. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 05/15/2023 | Defendant Westborough SPE, LLC's Reply to Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/16/2023 | Hearing on Westborough SPE, LLC's motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, motion for preliminary injunctive relief, and motion in limine held by videoconference. Attorneys Iris Ann Leahy and Scott Adam Schlager appeared and argued. Attorneys Alvin Nathanson and Edward Englander also appeared. Following argument, the motion in limine is DENIED without prejudice. Likewise, the motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, and motion for preliminary injunctive relief are DENIED. The court will hold an evidentiary hearing on Westborough SPE, LLC's motion to vacate judgment, to be scheduled in late July 2023, to determine whether Westborough SPE, LCC, having appeared in this case, is the taxpayer who has the right to redeem the subject property. Counsel are instructed to file requests for production of documents, if any, by June 2, 2023. Counsel must respond to the requests for production of documents by July 6, 2023, after which the court will schedule a pretrial conference. No other discovery, such as interrogatories or depositions, may be conducted. | | |
| 05/30/2023 | Letter from Attorney Leahey, filed. | | Image |
| 05/30/2023 | Plaintiff's Request for Production of Documents, filed. | | Image |
| 05/31/2023 | Westborough SPE LLC's First Notice of Supplemental Authority in support of its Motion to Vacate, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Plaintiff,Town of Westborough, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Defendant F. Jan Blaustein a/k/a Jan Blaustein Scholes,R.E. Signatory & Agent for Westborough SPE, LLC's and Pres. of Babcock & Brown Administrative Services.,INC, filed. | | Image |
| 06/30/2023 | Defendant Westborough SPE, LLC's Notice of Supplementation, filed. | | Image |
| 07/06/2023 | Defendant Westborough SPE, LLC's Second Notice of Supplementation, filed. | | Image |
| 07/11/2023 | Defendant Westborough SPE, LLC's Responses and Objections to Plaintifff (First) Request for Production of Documents,filed | | Image |
| 07/11/2023 | Plaintiff Town of Westborough's Response to Defendant's First Request for the Production of Documents to Plaintiff Town of Westborough, filed. | | |
| 07/13/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Hearing on Motion to Vacate Judgment<br>Date: 08/10/2023 Time: 02:00 PM rescheduled to August 17, 2023 at 2pm. | | |
| 07/27/2023 | Motion to continue Pre-trial Conference, filed. | | Image |
| 07/27/2023 | Defendant Westborough SPE, LLC's Opposition to the Town of Westborough's Motion to continue Pre-trial Conference, filed. | | Image |
| 07/28/2023 | Plaintiff Town of Westborough's amended motion to continue the pre-hearing conference on the pending motion to vacate is ALLOWED. The pre-hearing conference is rescheduled to August 31, 2023 at 2:00 P.M. by videoconference. | | |
| 07/28/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/17/2023 02:00 PM<br>Has been: Rescheduled For the following reason: Request of Plaintiff(s)<br>Hon. Howard P. Speicher, Presiding | | |
| 07/28/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Trial Conference<br>Date: 08/31/2023 Time: 02:00 PM | | |
| 07/28/2023 | Amended Motion to continue Pre-trial Conference, filed. | | Image |
| 08/24/2023 | Notice of Statutory Attorneys' Lien by Nathanson & Goldberg P.C., filed. | | Image |
| 08/24/2023 | Defendant Westborough SPE LLC's (First) Notice of Supplementation to Plaintiff's (First) Request for Production of Documents,fiiled. | | Image |
| 08/24/2023 | Westborough SPE, LLC Limited Liability Agreement,filed. | | Image |
| 08/25/2023 | Joint Pre-Trial Memorandum, filed. | | Image |
| 08/31/2023 | SUGGESTION OF BANKRUPTCY, FILED. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 08/31/2023 | Notice of Docket Entry:<br>Counsel for defendant Westborough SPE, LLC, to report to the court on the status of the bankruptcy petition by October 31, 2023 and every sixty days thereafter.<br>Notice of the docket entry sent. | | |
| 08/31/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/31/2023 02:00 PM<br>Has been: Not held per request of the defendant.<br>Hon. Howard P. Speicher, Presiding | | |
| 10/13/2023 | Notice of Bankruptcy status pursuant to August 31, 2023 Order, filed. | | Image |

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $367.17 | $367.17 | $0.00 | $0.00 |
| | $367.17 | $367.17 | $0.00 | $0.00 |

- **Money on Deposit**

| Account | Applied Amount |
|---|---|
| Land Court Deposit Holding | $141.17 |
| | $141.17 |

- **Money Distributed by Court**

| Payment Type | Amount |
|---|---|
| Disbursement | $558.83 |
| | $558.83 |

## Check Information

| Created | Payee Name | Description | Account | Check | Amount |
|---|---|---|---|---|---|
| 08/28/2019 | Michael H. Delaney | Case: 19 TL 000768 Land Court examiner costs | LCD | 31780 | $150.00 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33259 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | -$252.92 |
| 01/10/2022 | Town of Westborough | Case: 19 TL 000768 Land Court overpayment refund d | LCD | 34880 | $155.91 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 405581 | 07/09/2019 | Town of Westborough | $515.00 |
| 417793 | 09/01/2020 | Bloom, Esq., Dawn E | $400.00 |
| 418144 | 09/23/2020 | Bloom, Esq., Dawn E | $59.75 |
| 418145 | 09/23/2020 | Bloom, Esq., Dawn E | $52.50 |
| 418637 | 10/20/2020 | Bloom, Esq., Dawn E | $5.00 |
| 422168 | 04/08/2021 | Bloom, Esq., Dawn E | $11.96 |
| 423362 | 06/10/2021 | Bloom, Esq., Dawn E | $11.96 |
| 437156 | 01/04/2023 | Aaron B. O'Neal | $11.00 |
| | | | $1,067.17 |

**Case Disposition**

| Disposition | Date | Case Judge |
| --- | --- | --- |
| Judgment Entered | 01/05/2022 | Speicher, Hon. Howard P. |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

TOWN OF WESTBOROUGH,

Plaintiff,

v.

WESTBOROUGH SPE, LLC,

Defendant.

TOWN OF WESTBOROUGH'S MOTION TO REMAND AND/OR ABSTAIN FROM HEARING TAX FORECLOSURE ACTION

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby moves pursuant to 28 U.S.C. § 1447 for the Court to remand, or alternatively to abstain from hearing pursuant to 28 U.S.C. § 1334(c), the case of Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action"), which the Chapter 7 Trustee purportedly removed to this Court on January 17, 2024.[1] Remand of the Tax Foreclosure Action is appropriate because the Tax Foreclosure Action is a non-core proceeding subject to mandatory abstention.[2] Alternatively, equity demands remand and permissive abstention, particularly where the Massachusetts Land Court has exclusive

[1] The Chapter 7 Trustee filed a paper entitled "Notice of Removal" on the primary docket of the bankruptcy proceeding, using the "Notice" ECF event, rather than commencing an adversary proceeding using the "Notice of Removal" ECF event. See Doc. No. 74. It is questionable whether the Chapter 7 Trustee's filing effectuated a proper removal, but the Town files this motion in response on the primary docket (as there is no adversary proceeding in which to file) out of an abundance of caution.

[2] Although abstention is technically a separate procedure than remand, "[w]here abstention is appropriate, or required, remand will follow." Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 788 (D.N.J. 1995).

jurisdiction. Finally, the bankruptcy removal statute (28 U.S.C. § 1452) does not permit removal because the Tax Foreclosure Action is an action in which the Town, a governmental unit under the Bankruptcy Code, exercised its police or regulatory powers.

## BACKGROUND[3]

### *Formation and Dissolution of LLC*

In 1997, the entity Westborough SPE LLC (the "LLC") acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). See Exhibit A (Quitclaim Deed). The LLC was a Delaware limited liability company registered to do business in Massachusetts. See Exhibit B (MA Certificate of Registration). The LLC's manager was Babcock & Brown Administrative Services, Inc. ("Babcock & Brown"). See id. Babcock & Brown's president, F. Jan Blaustein, was authorized to execute recordable instruments on behalf of the LLC. See id. An unauthenticated document entitled "Westborough SPE LLC Limited Liability Company Agreement," apparently prepared by Goulston & Storrs, purports to indicate that Mignonette Investments Limited ("Mignonette"), a British Virgin Islands entity, was the LLC's sole member. See Exhibit C (LLC Agreement).[4]

The LLC withdrew from doing business in Massachusetts in 2007. See Exhibit D (MA Certificate of Withdrawal). In 2011, Babcock & Brown (through its successor) resigned as the LLC's manager. See Exhibit E (BBAS Resignation). The LLC was administratively dissolved in 2014 for failure to pay taxes in the State of Delaware. See Exhibit F (DE Administrative

[3] The facts set forth herein are taken from the Town's recent § 707 Motion to Dismiss (Doc. No. 69) and the exhibits referenced herein are those that were filed in connection with that motion (Doc. No. 70). In the event that the Court grants the Town's § 707 Motion to Dismiss, the Tax Foreclosure Action should necessarily be remanded to the Land Court as there will no longer be a bankruptcy proceeding to which the Tax Foreclosure Action may be related.

[4] The Debtor's Land Court counsel submitted this document to the Land Court but provided no affidavit authenticating it, much less any indication how counsel came to possess the document.

Dissolution).[5] Nevertheless, the lessee of the Property (Regal Cinemas) continued to lease the Property and pay property taxes to the Town. See Declaration of Kristi Williams ("Williams Decl.") at ¶ 5.[6] However, when the lease expired in late 2017, the lessee vacated the Property and stopped making tax payments. See id. at ¶ 6.

***The Town's Tax Taking***

Subsequently, property taxes on the Property accrued, and on December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, as a result of unpaid FY2018 taxes in the amount of $106,944.99. See Exhibit J (Instrument of Taking). The Town commenced the Tax Foreclosure Action in the Massachusetts Land Court on July 8, 2019 to foreclose the LLC's right of redemption. See Exhibit K (Tax Foreclosure Complaint). On January 5, 2022, the Land Court entered judgment in favor of the Town and against the LLC.[7] See Exhibit L (Tax Foreclosure Judgment).

On May 26, 2022, the Town issued a request for proposals for the purchase and redevelopment of the Property. See Williams Decl. at ¶ 15. The Town received three proposals, including one from Lax Media. See id. at ¶ 16. Lax Media offered a purchase price of $2,500,001, which was higher than the estimated fair market value of the Property ($2,082,000). See id. at ¶ 17. The Town's Select Board evaluated the proposals based on five categories and selected Lax

[5] Babcock & Brown itself withdrew from doing business in Massachusetts in 2008. See Exhibit G (Babcock & Brown Withdrawal). Mignonette was stricken from the British Virgin Islands Register of Companies pursuant to Section 213(5) of the BVI Business Companies Act on May 31, 2010. See Exhibit H (VI Gazette, excerpted) and I (Search Report). The effect of the striking off is that the company and its directors, members, liquidator(s), or receiver(s) may not "carry on any business" or "act in any way with respect to the affairs of the company," subject to restoration. See BVI Business Companies Act § 215 (V.I.).

[6] Filed on October 3, 2023, in conjunction with the Town's Motion for Relief from Automatic Stay. See Doc. No. 22.

[7] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in Tyler v. Hennepin County, 598 U.S. 631 (2023).

Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two. See id. at ¶ 18.[8]

***The Purported Revival***

On November 22, 2022, Denise Edwards filed a Certificate of Revival, purportedly for the LLC, with the Secretary of State of Delaware, effectively creating the Debtor. See Exhibit M (DE Certificate of Revival). On December 6, 2022, Lolonyon Akouete emailed the Town's Treasurer and identified himself as an "asset recovery specialist" who had "acquired Westborough SPE, LLC and … would like to redeem." See Exhibit N (Dec. 6, 2022 Email).[9]

On December 12, 2022, the Debtor applied for registration to do business in Massachusetts using the same name as the LLC. See Exhibit R (MA Application for Registration). The managers of the Debtor were identified as Ms. Edwards and Mr. Akouete. See id. The principal office of the Debtor—1241 Deer Park Ave., Suite 1 #1051, North Babylon, NY 11703, see id.—is a Staples store. See Exhibit S (Staples.com Printout).

Subsequently, Attorney Matthew Morris of Sherin & Lodgen LLP, representing Mr. Akouete, claimed that Ms. Edwards and Mr. Akouete were "the new owners of the LLC." See Exhibit T (M. Morris Email). Mr. Akouete and Ms. Edwards based their claim to ownership and control over the Debtor (and purportedly the LLC by extension) through a bill of sale. See Exhibit U (Jan. 13, 2023 Email). The bill of sale states, on its face, that it is between the LLC and Denise

---

[8] In November 2022, Ferris Development Group, LLC ("FDG")—one of the other bidders—filed suit against the Town and Lax Media in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's awarding the bid to Lax Media. See Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV01281. The Superior Court denied FDG's motion for preliminary injunction, finding that FDG failed to show a likelihood of success on the merits. Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 9-11, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023).

[9] Mr. Akouete holds himself out as the CEO/Owner of Smart Investors, LLC, a Maryland limited liability company that was forfeited for failure to file a property return in 2010 or thereafter. See Exhibits O (Smart Investors MD Documents) and P (Akouete LinkedIn). Mr. Akouete also holds himself out as "an investigator of unclaimed property," as reflected in documents he filed in the Land Court. See Exhibit Q (Akouete Exs. 2 and 3).

Edwards and Mr. Akouete as "joint tenants." See Exhibit V (Bill of Sale). The bill of sale was purportedly signed by Ms. Blaustein as president of the LLC on December 8, 2022, although the bill of sale itself states that it was made November 21, 2022. See id. Although the Debtor represented to the Land Court that Ms. Blaustein resides in a New Mexico assisted living facility, her signature on the bill of sale bears an Arizona notarization, which itself provides no indication of how the notary confirmed that the person signing was Ms. Blaustein or that Ms. Blaustein was the "president" of the LLC (which she was not). See id.; see also Exhibit W (Motion to Vacate) at p. 6.[10] Moreover, in 2019, a Hawaii state court ruled that Ms. Blaustein was "an incapacitated person" and appointed her son, Peter Blaustein, as her conservator and guardian. See Exhibits X (In re Blaustein Docket) and Y (Waiver of Notice and Consent to Conservatorship). Mr. Blaustein did not give permission or consent for Ms. Blaustein to sign the bill of sale and did not approve of her doing so. See Exhibit Z (Affidavit of Peter L. Blaustein).

***Mr. Akouete's Scheme to Vacate the Tax Title Foreclosure Judgment***

On January 4, 2023—which was one day short of the first year anniversary of the issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (see G.L. c. 60, § 69), Mr. Akouete filed a motion with the Land Court to vacate the judgment on behalf of the Debtor. See Exhibit W (Motion to Vacate).[11] Mr. Akouete also sent a copy of his motion papers to David Ferris, the CEO of FDG, which had unsuccessfully attempted to purchase the Property when the Town solicited bid proposals through G.L. c. 30B (as noted above, see fn. 8). See Exhibit AA (Jan. 7, 2023 Email). Days later, on January 9, 2023, Mr. Ferris

---

[10] Page references to exhibits in this brief are to the CM/ECF pagination, inclusive of exhibit cover sheets, unless otherwise noted.

[11] Although the Debtor is a limited liability company, its motion was not signed by an attorney, which is impermissible under Massachusetts law. See Dickey v. Inspectional Servs. Dep't of Boston, 482 Mass. 1003, 1004 (2019).

contacted Mr. Akouete by iMessage to discuss the Property. See Exhibit BB (iMessage Screenshots) at p. 2. In the ensuing iMessage exchange (which also involved Brian Charville, FDG's COO and General Counsel), Mr. Akouete indicated that he had "at least one document showing who may be the equity owner of the LLC." See id. at p. 3.[12] In response to Mr. Charville stating that anything Mr. Akouete could do "to substantiate [his] ownership of the LLC will help [Mr. Ferris] evaluate a potential purchase of the property," Mr. Akouete stated, "If you are going to help me find an attorney, then I'll share information with you. If not, then good luck." See id. at p. 4. Mr. Akouete also stated in a separate message that "[w]e believe that Jan Blaustein Scholes[] is a managing member of the LLC," but acknowledged that he had not confirmed this. See id. at p. 5.

On January 18, 2023, Mr. Akouete and Ms. Edwards signed what purported to be a new "Limited Liability Company Agreement of Westborough SPE LLC," dated December 8, 2022. See Exhibit CC (2022 LLC Agreement). The new LLC agreement makes no reference to the LLC's original operating agreement from 1997 and, notably, states that Mr. Akouete and Ms. Edwards, as members, "form a Limited Liability Company (the 'Company') in accordance with the laws of the State of Delaware." Id. at p. 2 (emphasis added). In the iMessage chain with FDG's officers, Mr. Akouete admitted that "we couldn't find any original operating Agreement or Corporate Resolutions. We just put this one in please [sic]." See Exhibit BB (iMessage Screenshots) at p. 6.

On February 28, 2023, Mr. Akouete admitted to Mr. Charville that he was "starting to see the authority issues we have in this case." See Exhibit BB (iMessage Screenshots) at p. 7. On

[12] Exhibit BB contains excerpts of iMessage screenshots that were produced to the Town's counsel by FDG's counsel and appear to be from Mr. Charville's phone.

March 14, 2023, Mr. Akouete told FDG's officers that he was "very close to finding the beneficial owner of the property," but also admitted that he lacked the funds required to redeem the Property. See id. at p. 8. Days later, Mr. Akouete told Mr. Charville that he had "been trying to negotiate with Peter [Blaustein], Jan's Guardian, to get the authority I need to vacate the foreclosure judgment," but Mr. Blaustein was "not responding." See id. at p. 9. On March 31, 2023, Mr. Akouete informed Mr. Charville that he had "run out of money" and did not "have anymore [sic] funds to continue with the case," such that he was requesting Mr. Ferris to pay his attorney's retainer. See id. at p. 10. In the same message, Mr. Akouete indicated that he was "in the process of restoring [the] registration of Mignonette," which had been "suspended for nonpayment of fees," although Mr. Akouete was not an owner of Mignonette. See id. Several weeks later, on May 23, 2023, Mr. Akouete asked Mr. Charville if Mr. Ferris would "pay the attorneys fees" if "we are able to get Peter [Blaustein] to ratify and confirm the Bill of Sale." See id. at p. 11.

The Town opposed the motion to vacate for various reasons, including significant questions that the Town had regarding the ownership and identity of the Debtor, such as whether the individuals purporting to own the Debtor and advancing the motion to vacate (Mr. Akouete and Ms. Edwards) had actually acquired the LLC, much less any interest in the Property. See Exhibit DD (Opposition without Exhibits). Nathanson & Goldberg, P.C. subsequently appeared on behalf of the Debtor in the Tax Foreclosure Action and filed a slew of motions (which the Land Court ultimately denied). See Exhibit EE (Land Court Docket) at pp. 8-9. After several extensions, the Land Court was prepared to hold an evidentiary hearing "to determine whether Westborough SPE, LCC [sic], having appeared in this case, is the taxpayer who has the right to redeem the subject property" and a pre-hearing conference was scheduled for August 31, 2023 to determine the hearing schedule. See Exhibit EE (Land Court Docket) at May 16, 2023 entry.

Meanwhile, Mr. Akouete and Ms. Edwards attempted to recover an unclaimed checking account located in California, which had belonged to the LLC and contained almost $1.3 million.[13] On February 8, 2023, however, the California State Controller denied their claim. See Exhibit GG (CA Decision). The California State Controller concluded that "the Bill of Sale is void" due to Ms. Blaustein's lack of capacity and, as a result, Mr. Akouete and Ms. Edwards "could not have acquired any interest in Westborough SPE LLC." Id. Additionally, the California State Controller noted that "[i]t appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC" and "that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC," such that there was a question of "whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC." Id.[14]

***The Last Resort - Bankruptcy***

On June 29, 2023, Scott Schlager of Nathanson & Goldberg, P.C. emailed Mr. Ferris and Mr. Charville. See Exhibit HH (June 29, 2023 Email). In that email, Attorney Schlager stated that he concluded that FDG was "not wanting to finance a bankruptcy proceeding" but nevertheless solicited FDG to provide $10,000 to pay an attorney to provide "a formal opinion as to the authority of Lolonyon Akouete and Denise Edwards to act on behalf of Westborough SPE LLC" based on

[13] In the Land Court, Mr. Akouete claimed to have obtained Mr. Blaustein's permission to have Ms. Blaustein sign certain papers to assist in this recovery attempt and submitted a September 15, 2022 text message screenshot to support this claim. See Exhibit FF (Sept. 15, 2022 Text).

[14] As discussed above, Babcock & Brown resigned as the LLC's manager effective May 30, 2011. See Exhibit E (BBAS Resignation).

three additional documents that Nathanson & Goldberg, P.C. was "able to have F. Jan Blaustein Scholes execute." See id.[15]

On August 31, 2023, Nathanson & Goldberg, P.C. and The MobileStreet Trust filed an involuntary Chapter 7 petition against the Debtor, commencing these proceedings.[16] The Land Court cancelled the pre-hearing conference on the Debtor's motion to vacate in the Tax Foreclosure Action, which was scheduled for 2:00 pm that same day, and ordered the Debtor to file a status report by October 31, 2023 (with additional status reports due every 60 days thereafter). See Exhibit EE (Land Court Docket) at August 31, 2023 entry. The Tax Foreclosure Action remains stayed.[17]

## ARGUMENT

It is well established that the "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661 (1st Cir. 2017), quoting Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). A party may only remove a claim or cause of action from a state court to a bankruptcy court under 28 U.S.C. § 1452(a) if the latter would have jurisdiction under 28 U.S.C. § 1334, which states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Notwithstanding this grant of jurisdiction, discussed in detail below, "there is a strong presumption against removal jurisdiction

[15] These documents, which Nathanson & Goldberg, P.C. also submitted to the Land Court, do not alter the facts that (i) Mr. Blaustein had already been appointed as Ms. Blaustein's guardian and conservator, and (2) was not a member of the LLC and thus held no ownership interest in it or its assets.

[16] The MobileStreet Trust owns two parcels of land adjoining the Property, all of which are subject to a Reciprocal Covenants, Easements and Restrictions Agreement.

[17] On October 3, 2023, the Town moved for relief from the automatic stay to proceed with the Tax Foreclosure Action. See Doc. No. 20. The Court conducted an initial hearing on that motion on November 30, 2023, but continued it so that the Chapter 7 Trustee could explore settlement discussions with the parties and whether to attempt to remove the Tax Foreclosure Action, commence an adversary proceeding regarding the Property under 11 U.S.C. § 548(a), or both. The Court is scheduled to resume the hearing on February 13, 2024.

generally." Bibeault v. CVS Pharmacy, Inc., No. CV 19-10758-NMG, 2019 WL 3546889, at *2 (D. Mass. June 21, 2019) (quotations omitted). "On a motion to remand, the removing party bears the burden of establishing the propriety of removal." Id., citing Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008). In light of this burden and "the important federalism concerns at play in considering removal jurisdiction," Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004), this Court should remand and/or abstain from hearing the Tax Foreclosure Action.

## I. THE TAX FORECLOSURE ACTION IS A NON-CORE PROCEEDING SUBJECT TO MANDATORY ABSTENTION

Section 1452 only permits removal if the district court to which the case would be removed has jurisdiction under 28 U.S.C. § 1334. See 28 U.S.C. § 1452(a).[18] But section 1334 only gives federal courts jurisdiction over three types of cases: cases "under title 11," which means the bankruptcy case itself; cases "arising under title 11" or "arising in cases under title 11," which means core proceedings; or cases relating to cases under title 11, which means non-core proceedings that nevertheless have some potential impact on the bankruptcy estate. See 28 U.S.C. § 1334(a)-(b); Gupta, 858 F.3d at 661-663. The Tax Foreclosure Action only falls at most within the last of these categories and is, therefore, subject to mandatory abstention.

Even if the Tax Foreclosure Action is considered a non-core proceeding related to the bankruptcy because it involves the LLC's statutory rights with respect to the Property, mandatory abstention applies. Specifically,

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is

[18] Although section 1452 provides for removal to the district court, bankruptcy matters are automatically referred from the U.S. District Court for the District of Massachusetts to the U.S. Bankruptcy Court for the District of Massachusetts pursuant to Rule 201 of the Local Rules of the U.S. District Court for the District of Massachusetts.

commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). In other words, where (1) the claim has no independent basis for federal jurisdiction, (2) is a non-core proceeding, (3) has already been commenced in state court, and (4) will be timely adjudicated in state court, the Court must abstain from adjudicating the case. See, e.g., Hayim v. Gotez (In re SOL, LLC), 419 B.R. 498, 504 (Bankr. S.D. Fla. 2009); Malloy v. Hawk (In re 4 Front Petroleum, Inc.), 345 B.R. 744, 749 (Bankr. N.D. Okla. 2006); see also New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 n.6 (1st Cir. 2002).[19] The Tax Foreclosure Action meets all of these statutory requirements for mandatory abstention.

First, the Tax Foreclosure Action could not have been commenced in a federal court absent section 1334 jurisdiction. The Massachusetts General Laws require such actions to be brought in the Massachusetts Land Court. See G.L. c. 60, § 65 ("whoever then holds the title to land acquired by a sale or taking for taxes may bring a petition in the land court for the foreclosure of all rights of redemption of said land …") (emphasis added). The Chapter 7 Trustee has made no contention that the Tax Foreclosure Action, on its own, was or could have been brought under a federal statute or constitutional provision. Instead, the only basis for jurisdiction asserted in the purported Notice of Removal is section 1334(b). See Doc. No. 74. There is no independent basis for federal jurisdiction. See Hayim, 419 B.R. at 504 (independent jurisdiction analysis looks only at notice of removal and additional grounds for jurisdiction may not be asserted after a request for abstention has been made); see also Little Rest Twelve, Inc. v. Visan, 458 B.R. 44, 58-59 (S.D.N.Y. 2011) ("A notice of removal may not be sustained on a ground of jurisdiction not stated in that notice.").

[19] Although the First Circuit listed the factors for mandatory abstention in a footnote in New England Power & Marine, Inc., the Court decided the case on permissive abstention grounds as discussed below. It does not appear that the First Circuit has decided a case on mandatory abstention grounds.

Further, the Tax Foreclosure Action is a non-core proceeding.[20] Core proceedings are those involving causes of action either created by the Bankruptcy Code or that have no existence outside of the bankruptcy. See Gupta, 858 F.3d at 662-663. Any other case that relates to the bankruptcy proceeding is a non-core proceeding. The Tax Foreclosure Action is not a core proceeding, as the cause of action is created by Massachusetts statute, not the Bankruptcy Code, and has existence outside of the bankruptcy, as demonstrated by the fact that it was pending for several years before the commencement of this bankruptcy proceeding. See id. While the Tax Foreclosure Action may have some potential effect on the bankruptcy estate if the Debtor's motion to vacate the foreclosure judgment is allowed, this only means that the Tax Foreclosure Action is at best "related to" the bankruptcy case and thus is a non-core proceeding.

Critically, the Tax Foreclosure Action does not involve property of the bankruptcy estate. As soon as the Land Court entered judgment in that action (more than a year before the bankruptcy began), full title to the Property vested in the Town, leaving the LLC (and, purportedly, the Debtor) with nothing more than a statutory right to seek to vacate the judgment and pay a redemption amount set by the Land Court. See Tallage Lincoln, LLC v. Williams, 485 Mass. 449, 451-453 (2020) (entry of tax title foreclosure judgment "extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's … tax title into absolute title … free and clear of all encumbrances, including mortgages and other liens"). While a decision on whether the Debtor can exercise that statutory right in this instance may have sufficient consequences to the bankruptcy estate to make the Tax Foreclosure Action related to this bankruptcy proceeding, that connection is not sufficient to make this proceeding a core one. See

[20] In the Chapter 7 Trustee's purported Notice of Removal, he asserts that the Tax Foreclosure Action is a core proceeding. See Doc. No. 74 at pg. 2. The Chapter 7 Trustee offers no support for this assertion, which is incorrect for the reasons discussed herein.

Hayim, 419 B.R. at 506 ("a matter cannot be deemed to be core merely because the debtor holds a claim which, if successful, could increase the assets of the estate").

Finally, the third and fourth factors mandating abstention have also been met. The Tax Foreclosure Action was commenced in the Land Court before this bankruptcy proceeding and can be timely adjudicated there, where judgment has already entered and all that is left for the Land Court to do is decide the pending motion to vacate the judgment. Where the Land Court is, by statute, the exclusive venue in which the Town could bring the Tax Foreclosure Action, and there is no evidence that the Land Court faces a backlog that would prevent prompt disposition of the Debtor's motion to vacate, removal in no way enhances efficiency. To the contrary, "the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion." Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 580 (2d Cir. 2011) (analyzing elements of "timely adjudication" factor);[21] see Little Rest Twelve, Inc., 458 B.R. at 59 (where a case is "far along in state court" with the state court judge "about to decide important issues," the "claims are wholly based on … state law, with which the state courts have great expertise," and "bankruptcy proceedings are just beginning," timely adjudication demands remand or abstention). Additionally, because the Tax Foreclosure Action is not a core proceeding, this Court can only submit proposed findings of fact and conclusions of law to the District Court absent the Town's consent (which the Town has not provided). See 28 U.S.C. § 157(c). As such, remand and decision by the Land Court is significantly more efficient than two-step adjudication in federal court. See Malloy, 345 B.R. at 754-755 ("This procedure is inefficient, generates a

[21] Those elements are: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." Parmalat Cap. Fin. Ltd., 639 F.3d at 580.

multitude of repetitive pleadings, is expensive, doubles the judicial resources devoted to the matter, and substantially increases the duration of the litigation.").

Moreover, "perhaps the single most important factor is the nature of the underlying chapter proceeding," particularly because a Chapter 7 such as this case has "no administrative urgency or plan of reorganization to facilitate." Silverman v. General Rwy. Signal Co. (In re Leco Enters., Inc.), 144 B.R. 244, 251 (S.D.N.Y. 1992) (quotations omitted). Likewise, a remand would only be untimely if it unduly prolongs administration of the bankruptcy estate, not simply because of the prospect of some delay. See Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261, 269 (2d Cir. 2012). Where the Tax Foreclosure Action had progressed nearly to the end, only to be avoided at the last minute by the Debtor's own counsel when the Debtor's own motion was the only thing left for the Land Court to adjudicate, there is no prospect of unduly protracted administration of the estate. In the unlikely event that the Land Court allowed the Debtor's motion on remand (assuming that this Court also grants the Town's pending motion for relief from the automatic stay with respect to the Tax Foreclosure Action), the Chapter 7 Trustee would have the ability to redeem the Property as part of the estate administration process, assuming that the Debtor's estate has any assets sufficient to pay the redemption balance set by the Land Court. But the Tax Foreclosure Action need not proceed in this Court in order for that to occur.

As the Tax Foreclosure Action is subject to mandatory abstention under section 1334(c)(2), the Court should remand the case to the Land Court.

## II. EQUITY DEMANDS THAT THE TAX FORECLOSURE ACTION BE REMANDED AND/OR THAT THIS COURT EXERCISE PERMISSIVE ABSTENTION

Section 1452(b) allows the federal court to remand claims on equitable grounds. "Among the factors courts consider in making a decision to exercise jurisdiction to remand a removed action" under that equitable power "are the following: (1) the effect of the action on the

administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court." Cenith Partners, L.P. v. Hambrecht & Quist, Inc. (In re VideOcart, Inc.), 165 B.R. 740, 744 (Bankr. D. Mass. 1994) (Feeney, J.).

Similarly, bankruptcy courts have broad discretion to abstain under section 1334(c)(1) "in the interest of justice, or in the interest of comity with State courts or respect for State law." See 28 U.S.C. § 1334(c)(1); New England Power & Marine, Inc., 292 F.3d at 69. Where many (but not all) of the factors for mandatory abstention have been met, equitable remand and/or discretionary abstention are overwhelmingly in the interests of justice and comity. See Southern Marine & Indus. Servs., Inc. v. AK Eng'ng, Inc. (In re AK Servs., Inc.), 159 B.R. 76, 86 (Bankr. D. Mass. 1993) (Feeney, J.); see also Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 794 (D.N.J. 1995) ("This near-miss rationale is widely adopted."). As Judge Feeney explained, equitable remand is proper "particularly where all but one of the elements necessary for mandatory abstention are present" and "several of the factors considered for discretionary abstention are compelling." Southern Marine & Indus. Servs., Inc., 159 B.R. at 86. Additionally, the principles underlying permissive abstention require courts to be wary of "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." New England Power & Marine, Inc., 292 F.3d at 69. For these reasons, equitable remand and/or permissive abstention are appropriate here even if the Court finds that one of the factors for mandatory abstention is missing or questionable.[22]

[22] Permissive abstention and equitable remand are "kindred statutes" that, together, "strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334(b) and the litigation can be timely completed in state court." Dubose v. Merchants & Farmers Bank, 318 F. Supp. 2d 419, 428 (S.D. Miss.

Here, where the Tax Foreclosure Action was pending in the Land Court long before this bankruptcy was initiated and had almost reached its conclusion, equity calls for remand and/or permissive abstention. See O'Rourke v. Cairns, 129 B.R. 87, 91 (E.D. La. 1991) ("The state court was on the verge of trying this case when it was removed"). Indeed, it appears that this bankruptcy proceeding was filed expressly for the purposes of preventing the Land Court from adjudicating the pending motion to vacate the judgment, which was the final step in bringing the Tax Foreclosure Action to a close. As set forth more fully in the Town's Motion to Dismiss Bankruptcy Case, this involuntary Chapter 7 was filed against the Debtor as a strategic maneuver to frustrate the Land Court's adjudication of the Tax Foreclosure Action. See Doc. No. 69 at p. 1. The petition was filed, amidst other failed attempts by the Debtor to establish ownership of the LLC and thus an interest in the Property, the day of the pre-hearing conference on the Debtor's motion to vacate the judgment in the Tax Foreclosure Action. Id. at pp. 8-9. Indeed, even if (somehow) this manipulation of the bankruptcy process does not amount to cause to dismiss the petition in its entirety, when the manipulation is viewed in the light of clear statutory dictates for bankruptcy courts to promote comity, efficiency, and respect for state courts and state law, the tactics employed here overwhelmingly suggest that remand of and/or abstention from the Tax Foreclosure Action is in the interests of justice. Indeed, the First Circuit has previously affirmed a decision to apply permissive abstention under similar circumstances, where a tax title action under G.L. c. 60, § 65 "had already been fully litigated in the Land Court" and the case was under advisement. See New England Power & Marine, Inc., 292 F.3d at 69.

2003). These statutes and doctrines substantially overlap. See Bibeault v. CVS Pharmacy, Inc., No. CV 19-10758-NMG, 2019 WL 3546889, at *4 n.6 (D. Mass. June 21, 2019) ("In deciding whether to equitably remand claims, courts have looked to the same factors as those employed in a permissive abstention analysis"); O'Rourke v. Cairns, 129 B.R. 87, 90 (E.D. La. 1991) ("some bankruptcy courts, although deciding whether to remand the case, take into account whether abstention would also be appropriate"). For ease of reference, as a result, these statutes are discussed together in this section.

In considering the VideOcart factors specifically, the case for remand is clear. All factors, except for the question of a jury trial, weigh in favor of equitable remand and/or permissive abstention. With respect to the first and fifth factors, as discussed above, while the Tax Foreclosure Action may have some relationship to the current bankruptcy action and may have some effect on the administration of the estate, resolution of the Land Court action will only improve efficient administration. The relationship, at the outset, is tenuous, as "no substantive right under the Bankruptcy Code is at issue in the underlying [state] litigation" and "[t]he only connection between the litigation and the Bankruptcy Code is the fact that [the Debtor's counsel] happened to file for relief … during the pendency of the removed action." Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handlings Sys., LLC), 304 B.R. 111, 127 (Bankr. D.N.J. 2003). This is especially true where the relationship is an artificially created one, as part of the Debtor's scheme to avoid the otherwise imminent resolution of the Tax Foreclosure Action in Land Court. Balcor/Morristown Ltd. P'ship, 181 B.R. at 793 ("There is a strong possibility that Vector seeks to change forums to avoid adverse rulings" in state court). Moreover, resolution of the Tax Foreclosure Action promptly in the Land Court will actually facilitate administration of the estate, as "resolving the various claims will be quicker in the forum where the process of adjudication is already well underway." Id. "Any task left over for the bankruptcy court"—whether a bankruptcy sale of the Property (if the Debtor's motion is allowed and the Chapter 7 Trustee is able to redeem) or a distribution of the surplus proceeds of the Town's sale of the Property (if the Debtor's motion is denied)—"will be made the simpler" by Land Court resolution of the Debtor's motion. Id.

The "second, third, and fourth factors favoring [equitable remand and] discretionary abstention are met and require little elaboration" here. Maintainco, Inc., 304 B.R. at 126-127. The

Tax Foreclosure Action involves exclusively state law issues, namely whether the Debtor is entitled to vacate the Land Court's tax title foreclosure judgment under the Massachusetts General Laws. The case certainly involves no bankruptcy issues. Comity and the centrality of state law to the removed claim strongly favor remand to the Land Court, as the Commonwealth of Massachusetts and its designated court for hearing tax title foreclosure cases have a clear interest in enforcing the state's tax laws and resolving title doubts created by failure to abide thereby. See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., No. CIV.A. 10-11376-NMG, 2010 WL 6580503, at *8 (D. Mass. Dec. 28, 2010), adopted 813 F. Supp. 2d 242, 246 (D. Mass. 2011); see also Hayim, 419 B.R. at 510 ("where the real estate dispute involves solely state court issues, relates to property located within the state…, and no core issues are involved, comity weighs heavily in favor of abstention"). This is especially true where the issue has been litigated for years and already proceeded to judgment.

The final factor weighs heavily in favor of equitable remand and/or permissive abstention, as the prejudice to the Town is substantial. This entire proceeding was manufactured to avoid the impending resolution of the Tax Foreclosure Action. That the Debtor has effectively schemed with its counsel in the Tax Foreclosure Action to have the case stayed at the eleventh hour and removed by the Chapter 7 Trustee (who now represents the Debtor's interests and controls the Debtor's rights in the Tax Foreclosure Action) demonstrates the prejudice that removal will cause. The Tax Foreclosure Action "was on the verge" of finality, and to retain the matter in bankruptcy would result in the expenditure of this Court's resources familiarizing itself with the issues posed by the Debtor's motion to vacate (which the Land Court had been grappling with for the better part of nine months), waste the resources spent in Land Court, and cause serious "prejudice to the involuntarily removed party because the institutional delays implicit in starting over" with the

Debtor's motion in this Court will be significant. O'Rourke, 129 B.R. at 91. With respect to the additional prejudice caused by the Debtor's dealings, the Town need not belabor points already discussed above and in its motion to dismiss this bankruptcy proceeding. It is sufficient to state that the prejudice must be viewed in light of the demonstrated likelihood that this bankruptcy was commenced in order to avoid the Land Court's disposition of the Tax Foreclosure Action, which was on the "eve" of final resolution. Balcor/Morristown Ltd. P'ship, 181 B.R. at 793.

Thus, even if the Court finds that mandatory abstention does not apply, the Court should remand the Tax Foreclosure Action pursuant to equitable remand and/or permissive abstention.

## III. THE MASSACHUSETTS LAND COURT HAS EXCLUSIVE JURISDICTION OVER THE TAX FORECLOSURE ACTION

Where a state court has exclusive jurisdiction, an action cannot be removed pursuant to section 1452, particularly if it is not a core proceeding. See CityView Towne Crossing Shopping Center Fort Worth Tx. Ltd. P'Ship v. Aissa Medical Resources L.P., 474 F. Supp. 3d 586, 597-598 (W.D.N.Y. 2020) (granting motion to remand where leases upon which action was based provided that New York state court had exclusive jurisdiction over disputes). As discussed above, under Massachusetts law, tax title foreclosure actions are subject to the exclusive jurisdiction of the Land Court. See G.L. c. 60, § 65. As such, the Tax Foreclosure Action—which is not a core proceeding, as discussed above, as well—cannot be removed pursuant to section 1452.

## IV. THE BANKRUPTCY REMOVAL STATUTE DOES NOT PERMIT REMOVAL OF THE TAX FORECLOSURE ACTION

Finally, section 1452 does not permit removal of a civil action brought by a governmental unit—which includes a municipality, see 11 U.S.C. § 101(27)—to enforce its police or regulatory power. 28 U.S.C § 1452(a). An action to foreclose a municipal tax title is a form of enforcement of the municipality's regulatory powers of taxation. Although the First Circuit has not interpreted the "police or regulatory power" provision of section 1452, it has interpreted the similar provision

of 11 U.S.C. § 362 and, in doing so, adopted two tests—the "public purpose" and "pecuniary purpose" tests—which apply to section 1452 as well. Massachusetts v. New England Pellet, LLC, 409 B.R. 255, 258-259 (D. Mass. 2009), citing Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 9 (1st Cir. 2003); see Kupperstein v. Schall (In re Kupperstein), 994 F.3d 673, 677-678 (1st Cir. 2021). "If either test is satisfied the case is considered an enforcement action" that may not be removed. New England Pellet, 409 B.R. at 258-259.

The Tax Foreclosure Action satisfies the "public purpose" test. Under that test, "the court determines whether the government seeks to 'effectuate public policy,'" in which case the test is satisfied, "or to adjudicate 'private rights,'" in which case it is not. Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005). The Tax Foreclosure Action does not seek to adjudicate private rights such as a municipal contract dispute or employment issue. Rather, the Tax Foreclosure Action sought to recover property that had been abandoned with no owner paying the property taxes, so that the Property could, in turn, be sold and returned both to the tax rolls and to operational status by a new owner. As such, the Tax Foreclosure Action served the public policy of putting real property to productive use for the benefit of all of the Town's citizens. Thus, under the "public purpose" test, the Tax Foreclosure Action was enforcement of the Town's "police or regulatory power" for the purposes of section 1452(a). The fact that the Town may obtain some financial benefit, namely satisfaction of the tax title account balance, through the Tax Foreclosure Action does not bar application of the public purpose test. See Kupperstein, 994 F.3d at 680-681.

As the Tax Foreclosure Action is a civil action brought by a governmental unit to enforce its police or regulatory power, it may not be removed under section 1452(a).

## CONCLUSION

For the foregoing reasons, the Court should remand the Tax Foreclosure Action to the Massachusetts Land Court.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: February 7, 2024

895870/WEST/0049

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Motion to Remand or, Alternatively, Abstain from Hearing Tax Title Foreclosure Action to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor* (by U.S. mail)

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor* (by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor* (by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor* (by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor* (by email)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust* (by email)

Dated: February 7, 2024

Roger L. Smerage

# Appendix

2019 WL 3546889
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Marcia BIBEAULT, et al., Plaintiffs,
v.
CVS PHARMACY, INC., et al., Defendants.

Civil Action No. 19-10758-NMG
|
Filed 06/21/2019

**Attorneys and Law Firms**

Lisa M. Conserve, Michael J. McCann, Erika A. O'Donnell, Michael C. Shepard, Shepherd Law Group P.C., Boston, MA, for Plaintiffs.

REPORT AND RECOMMENDATION ON MOTION TO REMAND

[Docket No. 8]

Boal, M.J.

***1** Plaintiffs Marcia and Howard Bibeault have filed an emergency motion to remand this action to state court. Docket No. 8. For the following reasons, this Court recommends that the District Judge grant the motion.[1]

I. BACKGROUND

A. Bibeault Case

Roughly 2,400 talc-related actions have been filed against Johnson & Johnson in state courts nationwide. Docket No. 17 at 7 n.1. Plaintiffs filed this action in Middlesex Superior Court on December 27, 2018. Docket No. 1-2 ("Complaint"). They allege negligence, breach of express and implied warranties, and loss of consortium as a result of Mrs. Bibeault's exposure to asbestos in Johnson & Johnson's talcum powder that caused her to contract mesothelioma, a fatal form of cancer. Id.[2]

B. Delaware Proceedings

On February 13, 2019, non-party Imerys Talc America, Inc., Johnson & Johnson's talc supplier, and two affiliates filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Delaware. See In re Imerys Talc Am., No. 19-10289-LSS (Bankr. D. Del.). Johnson & Johnson removed this action on April 18, 2019,[3] on the theory that it is "related to" the Imerys bankruptcy proceeding. Docket No. 1.

On April 18, 2019, Johnson & Johnson filed a motion in the U.S. District Court for the District of Delaware to fix venue for claims related to Imerys' bankruptcy. Docket No. 1-4. On April 30, 2019, Johnson & Johnson filed an emergency motion to provisionally transfer the 2,400 talc actions. On May 9, 2019, the Delaware judge denied the emergency motion because Johnson & Johnson had not demonstrated its entitlement to such sweeping relief. See In re Imerys Talc Am., Inc., No. 19-103-MN, 2019 WL 2052351, at *5 (D. Del. May 9, 2019). The motion to fix venue is still pending.

Plaintiffs filed the instant motion to remand on May 1, 2019, which Johnson & Johnson opposed. Docket Nos. 8, 17. Plaintiffs filed a reply brief. Docket No. 24. This Court heard oral argument on June 13, 2019.

II. DISCUSSION

Plaintiffs argue remand is proper for the following reasons: (1) Johnson & Johnson's removal was untimely; (2) the court lacks subject matter jurisdiction because this case is not "related to" the Imerys bankruptcy proceeding; and (3) the court should abstain from hearing the case under a mandatory or permissive basis. Docket No. 8. As an initial matter, Johnson & Johnson requests a stay of the instant motion until after the Delaware District Court decides the pending motion to fix venue. Docket No. 17. Johnson & Johnson further argues that plaintiffs' claims are "related to" the Chapter 11 case and neither mandatory nor permissive abstention is appropriate. Id.

Judges Saylor, Burroughs, Sorokin and Stearns of this district have recently remanded similar cases presenting essentially the same issue.[4]

A. Motion To Fix Venue

***2** Pursuant to 28 U.S.C. § 157(b)(5), Johnson & Johnson argues that any decision on the instant motion be stayed while the motion to fix venue is pending in Delaware. Docket No. 17 at 14-16. Section 157(b)(5) states that:

> personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). However, Section 157(b)(5) governs venue, not jurisdiction. See Stern v. Marshall, 564 U.S. 462, 479 (2011). The Supreme Court has explained that this provision "does not implicate questions of subject matter jurisdiction." Id. at 480. Instead, it "simply specifies where a particular category of cases should be tried." Id.; see In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. 256, 265 (D. Mass. 2013). The issue before this Court is whether removal jurisdiction is proper under 28 U.S.C. § 1452. Accordingly, this Court must first decide whether it has jurisdiction prior to ruling on any request for a stay.

B. Johnson & Johnson Has Not Demonstrated That Plaintiffs' Claims Are "Related To" The Imerys Bankruptcy Proceeding

A party may remove any claim in a civil proceeding to federal court if the court has bankruptcy jurisdiction over the claim under 28 U.S.C. § 1334. 28 U.S.C. § 1452(a). The federal court may then remand the claim to the state court "on any equitable ground." Id. § 1452(b). In evaluating whether to remand on equitable grounds, a federal court typically considers the following factors:

> (1) duplication of judicial resources; (2) uneconomical use of judicial resources; (3) effect of remand on the administration of the bankruptcy estate; (4) case involves questions of state law better addressed by a state court; (5) comity considerations; (6) prejudice to the involuntarily removed parties; (7) lessened possibility of an inconsistent result; and (8) expertise of the court where action originated.

Messerlian v. A.O. Smith Corp., No. 09-393 S, 2010 WL 308981, at *3-4 (D.R.I. Jan. 25, 2010) (citation omitted).

"The statutory grant of 'related to' jurisdiction is quite broad." Bos. Reg'l Med. Ctr. v. Reynolds (In re Bos. Reg'l Med. Ctr.), 410 F.3d 100, 105 (1st Cir. 2005). "[B]ankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation 'potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.' " Id. (quoting In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991), overruled on other grounds by, Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992)). Nevertheless, there is a "strong presumption against removal jurisdiction generally." Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., No. 10-11376-NMG, 2010 WL 6580503, at *3 (D. Mass. 2010) (citation omitted). On a motion to remand, the removing party bears the burden of establishing the propriety of removal. Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008).

***3** The U.S. Court of Appeals for the Third Circuit[5] has explained that a court does not necessarily have "related to" jurisdiction over an action involving a non-debtor party seeking indemnification from a bankruptcy debtor. New Jersey v. W.R. Grace & Co. (In re W.R. Grace & Co.), 412 B.R. 657, 667 (D. Del. 2009); see In re Combustion Eng'g, Inc., 391 F.3d 190, 231 (3d Cir. 2004). Indeed, "[e]ven with an indemnification agreement, a court lacks 'related to' jurisdiction if the non-debtor's recovery is predicated upon the results of a subsequent action for indemnification." In re W.R. Grace & Co., 412 B.R. at 667. "When indemnification is not automatic, 'related to' jurisdiction does not exist." Id. (collecting cases).

Johnson & Johnson argues that its indemnification claims "vested" immediately upon the filing of the state talc lawsuits. Docket No. 17 at 22. However, a plain reading of the indemnification provisions themselves demonstrates that any rights to indemnity do not operate automatically. See, e.g., Docket No. 1-4 at 431-33, 442-43. Instead, the provisions require Imerys to indemnify and defend Johnson & Johnson for liabilities only where a number of exceptions are not met and where a number of contingencies are met. See id. At least two of the agreements also contain cross-provisions in which Johnson & Johnson must indemnify Imerys for any liability that it incurs as a result of Johnson & Johnson's violations of law. Id. Accordingly, this Court is unable to conclude that Johnson & Johnson would in fact receive the benefit of such indemnification without extended litigation. See Rivera, No. 19-10747-LTS, Docket No. 29 at 4. In any event, indemnification would not be automatic. Therefore, there is no "related to" jurisdiction on this basis.

Further, Imerys and Johnson & Johnson appear to dispute the existence and/or amount of shared insurance policies. See Docket Nos. 17 at 23-25; 24 at 12. "Courts finding 'related to' jurisdiction over claims against non-debtors based in part on shared insurance policies have relied not only on extensive record findings regarding the terms and operation of the subject policies, but also on additional evidence of automatic liability against the debtor." In re Combustion Eng'g, Inc., 391 F.3d at 232-33. Here, there are no comparable findings of fact concerning even the existence of shared insurance policies, and no findings on the operative terms of any such policies. Johnson & Johnson therefore has not established the identity of interests necessary to invoke federal subject matter jurisdiction. See In re Combustion Eng'g, Inc., 391 F.3d at 225 n.35, 230-31. For these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction and remand is appropriate.

C. Equitable Grounds Support Remand

Even if federal subject matter jurisdiction did exist, however, this Court would still recommend that the District Judge remand the claims for equitable reasons. Pursuant to 28 U.S.C. § 1452(b), the District Court has discretion to remand claims or cases "on any equitable ground." 28 U.S.C. § 1452(b). Factors to be considered when deciding whether such equitable grounds exist include:

> ***4** (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court.

Fed. Home Loan Bank of Bos. v. Ally Fin., Inc., No. 11-10952-GAO, 2012 WL 769731, at *4 (D. Mass. Mar. 9, 2012) (citing Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara Cty. Child Care Consortium), 223 B.R. 40, 46 (B.A.P. 1st Cir. Aug. 4, 1998)); Cambridge Place Inv. Mgmt., Inc., 2010 WL 6580503, at *7.[6] Application of these factors weighs strongly in favor of remand.

This case is an exclusively state law action that is part of a coordinated proceeding of asbestos-related lawsuits in Middlesex Superior Court. Docket No. 8 at 3. It involves a non-debtor bringing claims against non-debtors that bear, at best, a tenuous connection to the Inerys bankruptcy estate. The other defendants in the original action are still proceeding in state court. Because only the claims against Johnson & Johnson were removed, the state court action would, if removal is allowed, proceed separately from this case. Therefore, the plaintiffs would have to litigate their claims in two different courts.

In addition, other than Johnson & Johnson's theory of "related to" jurisdiction under Section 1334(b), there is no basis for removal or federal jurisdiction. Although this case appears to be in its infancy, Docket No. 17-1 at 37, plaintiffs have represented that they might receive an expedited state court trial date given Mrs. Bibeault's failing health. Docket No. 8 at 4. In any event, there is no indication that plaintiffs' claims will not proceed efficiently in state court. Finally, courts in this district have recently remanded cases presenting essentially the same issues on the same equitable grounds. See supra n.4.[7]

III. RECOMMENDATION

For all of these reasons, this Court recommends that the District Judge grant the emergency motion to remand.

IV. REVIEW BY DISTRICT JUDGE

***5** The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).

The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3546889

Footnotes

1 On May 21, 2019, the District Judge referred the instant motion to the undersigned for a report and recommendation. Docket No. 20.

2 The facts are set forth as alleged in the Complaint unless otherwise noted.

3 The claims against defendants CVS Pharmacy, Inc. and New England Resins & Pigments Corporation remain in state court.

4 See Order of Remand, Mitchell v. Johnson & Johnson, No. 19-10762-FDS, Docket No. 32 (D. Mass. June 12, 2019); Memorandum and Order on Plaintiff's Motion to Remand, O'Riorden v. Johnson & Johnson, No. 19-10751-ADB, Docket No. 25 (D. Mass. June 5, 2019); Order on Emergency Motion to Remand, Rivera v. Johnson & Johnson, No. 19-10747-LTS, Docket No. 8 (D. Mass. May 31, 2019); Remand Order, Wilson v. Johnson & Johnson, No. 19-10764-RGS, Docket No. 19 (D. Mass. May 29, 2019).

5 At oral argument, the parties agreed that Third Circuit case law controls the Delaware bankruptcy court's exercise of "related to" jurisdiction. See also Docket Nos. 8 at 9; 17 at 19. Plaintiffs also argue that the First Circuit has adopted "essentially the same definition of 'related to' jurisdiction expressed by the Third Circuit." Docket No. 8 at 9. Johnson & Johnson has not argued that the circuits' case law differs. This Court assumes but does not decide that Third Circuit case law applies.

6 In deciding whether to equitably remand claims, courts have looked to the same factors as those employed in a permissive abstention analysis under 28 U.S.C. § 1334(c)(1). S. Marine & Indus. Servs. v. AK Eng'g, Inc. (In re AK Servs. Inc.), 159 B.R. 76, 83 (Bankr. D. Mass. 1993).

7 Plaintiffs also argue that their claims implicate mandatory abstention under 28 U.S.C. § 1334(c). Docket No. 8 at 14-17. They concede that a case in this district has held, pursuant to 28 U.S.C. § 157(b)(4), that mandatory abstention does not apply to personal injury claims. Id. at 15 n. 10 (citing Haber v. Massey, 904 F. Supp. 2d 136, 147 (D. Mass. 2012)). However, plaintiffs go on to suggest that the Haber conclusion is based on a misreading of Section 157. Id. Another court in this district has acknowledged plaintiffs' same interpretation of the statute. See In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. at 271 ("A strict textual reading of the statutes may lead to the conclusion that personal injury and wrongful death claims asserted against non-debtor third parties ... are subject to the mandatory abstention provisions of § 1334(c)(2)"). This Court need not decide the issue as it finds that the District Court lacks federal subject matter jurisdiction in the first instance.

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 6580503
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

CAMBRIDGE PLACE INVESTMENT MANAGEMENT, INC., Plaintiff,
v.
MORGAN STANLEY & CO., INC., et al., Defendants.

Civil Action No. 10–11376–NMG.
|
Dec. 28, 2010.

**Attorneys and Law Firms**

T. Christopher Donnelly, Michael S. D'Orsi, Donnelly, Conroy & Gelhaar, LLP, Boston, MA, David R. Stickney, Matthew P. Jubenville, Takeo A. Kellar, Timothy A. Delange, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, David L. Wales, Gerald H. Silk, Jai K. Chandrasekhar, Lauren A. McMillen, Bernstein Litowitz Berger & Grossmann LLP, New York, NY, for Plaintiff.

Beth I.Z. Boland, Brandon L. Bigelow, Frances S. Cohen, Nikki J. Fisher, Bingham McCutchen LLP, Franklin H. Levy, Katherine Young Fergus, Duane Morris LLP, Stephen D. Poss, Stacey Baron Ardini, Brian E. Pastuszenski, Daniel P. Roeser, John O. Farley, Goodwin Procter LLP, Adam Hornstine, Andrea J. Robinson, Brian J. Boyle, Christopher B. Zimmerman, Jeffrey B. Rudman, Katherine B. Dirks, Wilmer Cutler Pickering Hale and Dorr LLP, Azure M. Abuirmeileh, Kathy B. Weinman, Collora LLP, Anthony A. Bongiorno, Kevin M. Bolan, McDermott, Will & Emery LLP, William T. Hogan, III, Nelson, Mullins, Riley & Scarborough, LLP, Joseph F. Ryan, Lyne, Woodworth & Evarts LLP, Gary R. Greenberg, Thomas H. Good, Joseph P. Davis, III, Greenberg Traurig, LLP, John R. Baraniak, Jr., Choate, Hall & Stewart LLP, Phoebe Sears Winder, R. Bruce Allensworth, Robert W. Sparkes, III, K & L Gates LLP, Edward V. Colbert, III, Erin E. Howard, Nancy L. Perlman, Looney & Grossman, LLP, Kevin W. Clancy, Cooke, Clancy & Gruenthal, LLP, Christian R. Jenner, James R. Carroll, Peter J. Simshauser, Skadden, Arps, Slate, Meagher & Flom LLP, Philip A. O'Connell, Jr., Sonnenschein Nath & Rosenthal LLP, William Shaw McDermott, Kirkpatrick & Lockhart, John A. Houlihan, Jamie C. Notman, Michael T. Grant, Edwards Angell Palmer & Dodge LLP, Boston, MA, Daniel J. Schwartz, James P. Rouhandeh, William Fenrich, Davis Polk & Wardwell LLP, Brad S. Karp, Charles E. Davidow, Susanna M. Buergel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Christopher B. Harwood, Michael T. Reynolds, Richard W. Clary, Cravath, Swaine & Moore LLP, Jamie L. Wine, Jason C. Hegt, Latham & Watkins LLP, Anthony Antonelli, Barry G. Sher, James R. Bliss, Paul, Hastings, Janofsky & Walker, LLP, Christopher J. Dunne, Richard H. Klapper, Theodore Edelman, Sullivan & Cromwell, LLP, Brandyne S. Warren, Kenneth I. Schacter, Theo J. Robins, Bingham McCutchen LLP, Jennifer M. Rosa, Kelly M. Glynn, Michael O. Ware, Noah Liben, Richard A. Spehr, Mayer, Brown & Platt, LLP, Agnes Dunogue, Joseph J. Frank, Matthew L. Craner, Steven J. Fink, Orrick, Herrington & Sutcliffe LLP, Jonathan D. Forstot, Justin Kattan, Reid L. Ashinoff, Sonnenschein Nath & Rosenthal LLP, New York, NY, Ethan J. Brown, Latham & Watkins, Bernard E. LeSage, Karen L. Stevenson, Shannon Keast, Buchalter, Nemer, Fields & Younger, Los Angeles, CA, John M. Falzone, III, Latham & Watkins, Newark, NJ, James H. Weingarten, Margaret Keeley, Williams & Connolly LLP, Washington, DC, J. Mark Chevallier, J. Thomas Scott, McGuire, Craddock & Strother, P.C., Dallas, TX, Edward J. Fuhr, Eric H. Feiler, Matthew P. Bosher, Trevor S. Cox, Hunton & Williams LLP, Richmond, VA, William F. Alderman, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, Sean T. Carnathan, Benjamin S. Kafka, O'Connor, Carnathan and Mack LLC, Burlington, MA, John J. Murphy, III, Thomas W. Dymek, Stradley Ronon Stevens & Young, LLP, Philadelphia, PA, for Defendants.

***REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND***

DEIN, United States Magistrate Judge.

**I. *INTRODUCTION***

***1** The plaintiff Cambridge Place Investment Management, Inc. ("CPIM") commenced an action in Massachusetts Suffolk Superior Court alleging violations of the Massachusetts Uniform Securities Act, Mass. Gen. Laws ch. 110A, § 410, in connection with the sale of mortgage-backed securities. The defendants are investment firms, underwriters and dealers who sold mortgage-backed securities (collectively the "Wall Street Bank defendants") and the "Depositor defendants" who purchased or acquired mortgage loans, securitized them, and were the "issuers" of

the securities sold by the Wall Street Bank defendants. The defendants removed this action to federal court under 28 U.S.C. §§ 1441 and 1452 on the grounds that this action is "related to" the bankruptcy filings by some of the mortgage loan originators from whom the defendants acquired the mortgage-backed securities. *See* 28 U.S.C. §§ 1334(b) and 1452(a). The defendants further argue that there may be diversity jurisdiction if CPIM, who brought this action as assignee of claims from nine hedge funds, is not the proper plaintiff. CPIM has moved to remand this action to state court. (Docket No. 133)

For the reasons detailed in this court's Report & Recommendation on Defendants' Motion to Take Jurisdictional Discovery ("Diversity R & R"), this court has concluded that CPIM is the proper plaintiff, and that there is no diversity jurisdiction in this court.[1] Therefore, this Report and Recommendation will be limited to whether this court has jurisdiction on the grounds that this case is related to bankruptcy proceedings.

1 As noted in the Diversity R & R, there may be diversity between CPIM and one, unidentified, defendant. This court has recommended that the issue whether that defendant's claim should be severed should be decided in the context of an appropriate motion to separate that defendant's case.

Pursuant to its motion to remand, CPIM contends that the case should be remanded for lack of subject matter jurisdiction as it is not sufficiently related to bankruptcy proceedings to establish federal jurisdiction. In the alternative, CPIM contends that this court should abstain from hearing this matter and remand it to state court, either on the basis of mandatory abstention under 28 U.S.C. § 1334(c)(2), or equitable abstention pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b). For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion to remand (Docket No. 133) be ALLOWED on the basis of abstention.

## II. *STATEMENT OF FACTS*

The following facts are undisputed unless otherwise indicated, and are relevant to the motion to remand. Additional facts can be found in the Diversity R & R.

### *Overview*

CPIM is a Delaware corporation with a principal place of business in Concord, Massachusetts. *Complaint* (*"Compl."*) ¶ 11. It "was responsible for the sourcing, review, analysis, and purchase decisions for U.S. investments for its clients," including nine foreign hedge funds known as Caliber Global Investment Ltd., CAMBER 3 PLC, CAMBER 4 PLC, CAMBER 5 Ltd., CAMBER 7 PLC, CPIM Structured Credit Fund 20 LP, CPIM Structured Credit Fund 500 LP, CPIM Structured Credit Fund 1000 LP, and CPIM Structured Credit Fund 1500 LP (collectively the "Clients" or the "hedge funds"). *Id* . ¶ 12. The Wall Street Defendants are 16 banks that offered or sold approximately $2.4 billion of residential mortgage-backed securities ("RMBS") to CPIM for its hedge fund clients between 2005 and 2007. *Id.* ¶¶ 1, 15–32. The Depositor Defendants are 44 Special Purpose Vehicles that, working with the Wall Street Defendants, also offered or sold RMBS to CPIM. *Id.* ¶¶ 6, 31. None of the defendants has filed for bankruptcy.

***2** Stated simply, the mortgage pass-through securities at issue in this litigation represent interests in a pool of mortgages. *Id.* ¶ 33. "Although the structure and underlying collateral of the mortgages may vary, the basic principle of pass-through securities remains the same: The cash flow from the pool of mortgages is 'passed through' to the securities holders when payments are made by the underlying mortgage borrowers." *Id.* "To create RMBS, a 'depositor' first acquires an inventory of loans from one or more mortgage loan originators, and then transfers the acquired pool of loans to the issuing trust entity. [*Id.*] ¶ 34. The pool of loans for each RMBS usually includes thousands of loans. [*Id.*] ¶ 39." *Memorandum of Law in Support of Plaintiff's Motion to Remand* (Docket No. 134) (*"CPIM Mem."*) at 2–3. The Wall Street Defendants underwrote the sale of the securities in a securitization and, according to the plaintiff, were "responsible for gathering, verifying, and presenting to potential investors accurate and complete information about the credit quality and characteristics of the loans that [were] deposited into the trust." *Compl.* ¶ 39. The defendants contend they, in turn, relied on representations made by the entities which originated the mortgage loans.

### *Indemnification Agreements*


© 2024 Thomson Reuters. No claim to original U.S. Government Works.

As noted above, none of the defendants is in bankruptcy. Rather, the defendants base their claim of federal jurisdiction on their contention that the instant case is "related to" bankruptcy filings by entities that originated the mortgage loans or their parent corporations. Some of the defendants have contractual indemnification agreements with some of the mortgage loan originators whereby the defendants may be entitled to indemnification or contribution if they are found liable to the plaintiff for representations attributable to the mortgage originators. These indemnification agreements are found in "over 4,000 pages of agreements between various Non–Party Originators, certain Defendants and other purportedly-related entities." *Plaintiff's Reply Memorandum of Law in Further Support of Its Motion to Remand* (Docket No. 188) (*"CPIM Reply"*) at 6. Their terms are not consistent and not all of the defendants are parties to an indemnification agreement. *See generally Declaration of Brian Boyle* (Docket No. 165). In some cases, the indemnification agreement may give rise to a claim for attorneys' fees incurred by some defendants in connection with the instant proceeding, and at least one proof of claim for such fees has been filed in a bankruptcy proceeding. In other cases, the indemnification obligation will arise, if at all, only after the instant case is completed and a new action against the debtor is commenced. At least one of the bankruptcy proceedings may have been terminated already, with a Chapter 11 plan having been confirmed. *See CPIM Reply* at 8. In some cases, there are reciprocal indemnification obligations between the defendants and the non-party originators. *Id.* at 7–8. Finally, it appears that none of the indemnification agreements will apply to the claims that the defendants, themselves, made misrepresentations about their own conduct in evaluating and acquiring the loans. *See, e.g., Compl.* ¶¶ 233, 234–499.

***3** Additional facts will be provided below where appropriate.

### III. *DISCUSSION*

#### A. *Jurisdiction Over Cases "Related To" Bankruptcy Proceedings Standard of Review*

"Bankruptcy jurisdiction is governed principally by statute[,]" particularly 28 U.S.C. § 1334, which "vests original jurisdiction in the district courts over 'all civil proceedings arising under title 11, or arising in or related to cases under title 11.' " *In re Boston Reg'l Med. Ctr.,* 410 F.3d 100, 105 (1st Cir.2005) (quoting 28 U.S.C. § 1334(b)). As the First Circuit has explained:

> The statutory grant of "related to" jurisdiction is quite broad. Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). Thus, bankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation "potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991) (quoting *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989)).

*Id.* This grant of "related to" jurisdiction is not limited to bankruptcy courts but, rather, grants jurisdiction to all district courts. *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1211–12 & n. 6 (3d Cir.1991). Finally, although "related to" jurisdiction is to be construed broadly, courts also recognize that there is a "strong presumption against removal jurisdiction generally." *Natale v. Pfizer, Inc.,* 379 F.Supp.2d 161, 172 (D.Mass.2005) (quotations and citations omitted).

The parties disagree strenuously as to whether the instant litigation is "related to" the bankruptcy proceedings of any of the loan originators. CPIM contends that the case being litigated here simply is too remote to be related to any bankruptcy proceedings. CPIM argues that "[a]t best, it is a mere precursor to the potential third party claim for indemnification" by the defendants against the loan originators. *Pacor,* 743 F.2d at 995. Thus, the loan originators would not be bound by any finding of liability, including a finding that there were misrepresentations, as they are not parties to the instant litigation, and the defendants "would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* CPIM relies on a line of cases which hold that absent an "automatic creation of liability against [the loan originators] on account of a judgment against [the defendants,]" the action is "not 'related to' bankruptcy and there therefore there [is] no jurisdiction to remove a case to federal court." *Id.* at 995, 996. *See also In re Santa Clara County Child Care Consortium,* 223 B.R. 40, 49 (B.A.P. 1st Cir.1998) (where state court proceeding "will merely determine the validity and enforceability of a guaranty between two creditors of the debtor[,]" the "proceeding is not sufficiently related to the debtor's bankruptcy case to confer subject-matter jurisdiction upon the bankruptcy court"); *In re*

*Federal–Mogul Global, Inc.,* 300 F.3d 368, 382 (3d Cir.2002) (where any indemnification claims that defendants may have against non-party debtors "have not yet accrued and would require another lawsuit before they could have an impact on ... bankruptcy proceeding[s]," no "related to" jurisdiction exists); *In re W.R. Grace & Co.,* 591 F.3d 164, 173 (3d Cir.2009) ("in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must affect the bankruptcy without the intervention of yet another lawsuit"—no federal jurisdiction where third party would first have to be found liable and would then have to bring an indemnification or contribution claim against the debtor) (punctuation and citation omitted)). In sum, CPIM contends that this case falls squarely within the principle that "[w]here the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankrupt estate." *Steel Workers Pension Trust v. Citigroup, Inc.,* 295 B.R. 747, 750 (E.D.Pa.2003).

***4** For their part, the defendants argue that the potential indemnification obligations here are so large, that the instant suit will clearly impact the bankruptcy proceedings of the loan originators. In addition, they point to the fact that, under at least one indemnification agreement, the debtor is liable for the legal fees incurred by the defendant in the instant case, without regard to whether the defendant prevails here. Finally, they argue that the existence of written contractual obligations satisfies the requirement that indemnification obligations are sufficiently automatic as to satisfy the "related to" nexus. *See Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir.2010) ("contractual indemnification rights may give rise to 'related to' jurisdiction"; court distinguishes *In re Federal–Mogul Global, Inc.* as involving "tort contribution principles"). The First Circuit has not yet addressed the appropriate standard to be applied in evaluating whether contractual indemnification obligations give rise to "related to" bankruptcy jurisdiction.

***Cases Involving Mortgage Pass–Through Certificates***

In other cases involving mortgage pass-through certificates, courts have seemingly consistently found "related to" jurisdiction .[2] As the court explained in *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.,* 572 F.Supp.2d 314 (E.D.N.Y.2008), a class action alleging federal securities law violations in connection with the sale of mortgage pass-through certificates and involving facts very similar to the instant cases:

2 While an exhaustive search has not been undertaken, neither this court nor, apparently, the parties have found a factually similar case where "related to" jurisdiction was not found. In some cases, however, the matter has been remanded on abstention grounds.

> An impact on the debtor estate sufficient to invoke federal jurisdiction has been found where the defendant in the allegedly related action has a contractual claim for indemnification against the debtor. While such a claim does not arise unless the defendant invoking bankruptcy jurisdiction is held liable, it has nonetheless been held to have the required "conceivable" effect on the debtor estate.... Even in the absence of a contractual provision for indemnification, federal jurisdiction has been found. In such cases, jurisdiction has been held to exist where there is a "reasonable" legal basis for the claim of indemnification.... Courts of Appeal in other circuits have also adopted the conceivable effect test, finding bankruptcy jurisdiction where a claim for indemnification could effect the debtor estate.
>
> *Id.* at 317 (internal citations omitted). The *Ann Arbor* court held that there was "more than a 'reasonable' legal basis" for both the common law and contractual indemnification claims which could be brought by the sellers of mortgage backed securities against the loan originators. *Id.* at 318. Furthermore, the court noted, at least one proof of claim for reimbursement of fees and expenses incurred in the securities litigation had been filed in the bankruptcy estate of a loan originator. *Id.* at 318–19. "Unlike the claims for indemnification, these claims are already partially liquidated and not conditional upon the finding that Defendants are liable to Plaintiff here." *Id.* at 318–19. The court concluded that the matter was "related to" the bankruptcy proceedings and that removal was proper. *Id.* at 319.

***5** CPIM correctly argues that the First Circuit has not adopted the "conceivable effect test" on which the *Ann Arbor* court relied. *See CPIM Reply* (Docket No. 188) at 4–5. However, the First Circuit has recognized that "related to" jurisdiction is to be construed fairly broadly, and encompasses "proceedings which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d 61,

68 (1st Cir.2002) (quotations and citations omitted). Clearly, a finding of liability pursuant to an indemnification agreement on claims of the magnitude presented here would have such an impact. Therefore, this court recommends that "related to" jurisdiction be found in this case, like in other factually similar cases. *See, e.g., Lone Star Fund v. (U.S.),* 594 F.3d at 387 (concluding that "related to" jurisdiction existed where defendant Barclays "relie[d] heavily, if not exclusively, on contractual indemnity provisions with [mortgage originator] New Century containing representations about the quality of the mortgage loans purchased by Barclays, which [were] nearly identical to the representations Barclays made to [plaintiff] Loan Star."); *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.,* No. C10–0139 RSM, 2010 WL 3662345, at *6 (W.D.Wash. Sept.1, 2010) ("related to" jurisdiction found based on indemnification agreement between Barclays and bankrupt loan originator Indy Mac which covered "any untrue statement or alleged untrue statement of a material fact" by Indy Mac (emphasis omitted)).

"Related to" jurisdiction also is appropriate in the instant case even adopting CPIM's contention that there must be " 'an unconditional duty to indemnify' " and a judgment against a defendant that " 'would automatically result in indemnification liability.' " *CPIM Reply* (Docket No. 188) at 4 (quoting *TD Bank, N.A. v. Sewall,* 419 B.R. 103, 106 (Bankr.D.Me.2009)) (emphasis omitted). In light of the fact that there are some liquidated debts in the form of indemnification claims for legal fees and expenses already incurred, there is an unconditional duty to indemnify at least some of the claims.

Finally, CPIM contends that the defendants may be precluded from seeking indemnification as a matter of law for securities fraud violations and that, therefore, there can be no "related to" jurisdiction based on an indemnification claim. It is true that there is no implied right of indemnification under Mass. Gen. Laws ch. 110A, § 410(a) and (b). *See Kennedy v. Josephthal & Co., Inc.,* No. 82–913–MA, 1983 WL 1314, at *5 (D.Mass. May 9, 1983). However, it remains an open question whether contractual indemnification clauses are enforceable under the Massachusetts state securities laws.[3] Moreover, there is a right of contribution under Mass. Gen. Laws ch. 110A, § 410(b). *Kennedy,* 1983 WL 1314, at *6 (noting that the scope of persons entitled to contribution under ch. 110A, § 410(b) "has yet to be articulated"); *In re Atl. Fin. Mgmt., Inc. Sec. Litig.,* 718 F.Supp. 1012, 1015 (D.Mass.1988) (general contribution statute, Mass. Gen. Laws ch. 231B, governs the parties' contribution rights in state securities law claims). Based on the record before this court, it cannot be determined that the defendants will be precluded from seeking indemnification and/or contribution as a matter of law for securities law violations. Therefore, this court concludes that the removal of this action based on "related to" jurisdiction was appropriate.

3 This court notes that "there is no [implied] right to indemnification as to ... federal securities law claims, since to permit violators to obtain total reimbursement of judgments against them would frustrate the federal policy to deter securities fraud." *In re Atl. Fin. Mgmt., Inc. Sec. Litig.,* 718 F.Supp. 1012, 1015 (D.Mass.1988), and cases cited. Nevertheless, courts have found "related to" jurisdiction based on written indemnification agreements in cases alleging federal securities violations. *See, e.g., Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt–A Sec., Inc.,* 399 B.R. 119, 123 (E.D.N.Y.2009).

**B. *Mandatory Abstention***

***6** CPIM argues that even if this court has jurisdiction over this action, it is nevertheless obligated to abstain in accordance with 28 U.S.C. § 1334(c)(2), the mandatory abstention provision.[4] This court agrees.

4 28 U.S.C. § 1334(c)(2) provides:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

"Pursuant to 28 U.S.C.A. § 1334(c)(2), a court must abstain from hearing a case before it if the following criteria are met: (1) a timely motion to abstain is filed; (2) the proceeding is based on a state law cause of action; (3) the action does not arise under Title 11 but is merely related to a case under Title 11; (4) the action could not have been commenced in federal court absent jurisdiction under 28 U.S.C.A. § 1334; (5) a state court action has commenced; and (6) can be timely adjudicated." *C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.,* 369 B.R. 87, 92 (D.P.R.2007) (citing *Goya Foods, Inc. v. Ulipiano Unanue–Casal,* 164 B.R. 216, 221 (D.P.R.1993)). This case meets all these criteria.

It is undisputed that the plaintiff filed a timely motion to abstain, that the plaintiff has brought only state law claims, and that the instant action is not a core proceeding under Title 11, but is merely "related to" the bankruptcy cases. Therefore, the first three elements have been met. The defendants contend that the fourth element has not been met because there is also diversity jurisdiction in this court, so 28 U.S.C. § 1334 is not the sole basis for federal jurisdiction. For the reasons detailed in the Diversity R & R, however, this court finds that CPIM is the proper plaintiff, and that there is no diversity jurisdiction. Therefore, federal jurisdiction is based, if at all, on § 1334.

The defendants also argue that mandatory abstention is not available because once this action was removed from state court, no action remained pending there. Therefore, they contend, CPIM cannot meet the fifth element. This court disagrees.

28 U.S.C. § 1334(c)(2) provides that if the other elements are met, "the district court shall abstain from hearing such proceeding if *an action is commenced,* and can be timely adjudicated, in a State forum of appropriate jurisdiction." (Emphasis added). There are cases which have held that once an action is removed from state court, "there is no pending state proceeding" so abstention is not applicable. *See In re Lazar,* 237 F.3d 967, 981–82 (9th Cir.2001), and cases cited therein. However, at least "four out of five courts of appeals to have considered the issue concluded that the abstentions codified in 28 U.S.C.A. § 1334(c)(1) & (2) do apply to removal actions because the statutory language only requires that a state action has been commenced as opposed to be pending." *C & A, S.E.,* 369 B.R. at 92 (citing *Stoe v. Flaherty,* 436 F.3d 209, 216 (3d Cir.2006); *Mt. McKinley Ins. Co. v. Corning Inc.,* 399 F.3d 436 (2d Cir.2005); *Christo v. Padgett,* 223 F.3d 1324, 1331 (11th Cir.2000); and *Robinson v. Mich. Consol. Gas Co.,* 918 F.2d 579, 584 (6th Cir.1990)). *See also In re Southmark Corp.,* 163 F.3d 925, 929 (5th Cir.1999). Other courts in this circuit also have concluded that mandatory abstention applies where the only state court action was removed under "related to" bankruptcy jurisdiction. *See, e.g., In re Culley,* Bankr.No. 06–40081–JBR, 2006 WL 889377, at *1 (Bankr.D.Mass. Mar.31, 2006); *In re Punto Aparte/Cima Publicidad, Inc.,* Bankr.No. 08–01350(GAC), 2009 WL 249429, at *3 (Bankr.D.P.R. Jan. 30, 2009) (slip op.). To conclude otherwise would mean that abstention would never apply to cases which were removed from state court. However, there does not seem to be any "reason why Congress could have decided to deny mandatory abstention to a party who filed his state claim in a state court, only to have it removed to a federal court." *Stoe,* 436 F.3d at 214. This court recommends joining with the "majority view" and concludes that the mandatory abstention provision applies to cases which were commenced in state court but subsequently removed. *See C & A, S.E.,* 369 B.R. at 92.

***7** Finally, the defendants contend that the sixth requirement has not been met because CPIM has failed to establish that the matter can be timely adjudicated in the state court. This court disagrees. CPIM has established that the case has been accepted in the Business Litigation Session of the Massachusetts Superior Court, a session that operates under Time Standards Orders for each case and sets firm trial dates. "[N]obody can truly predict how long it will take for a complicated case to get to trial." *In re United Container LLC,* 284 B.R. 162, 174 (Bankr.S.D.Fla.2002). There is no reason for this court to conclude that the matter would not be resolved as expeditiously in the time-standards state court session as here. *See In re AK Servs., Inc.,* 159 B.R. 76, 85 (Bankr.D.Mass.1993) (Bankruptcy Court was "not persuaded that it could oversee ... claims any more expeditiously than the state court).

In determining whether a case can be "timely adjudicated" in a state forum, courts "have not focused primarily on when the case would be tried but rather on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case." *In re United Container LLC,* 284 B.R. at 174–75 (discussing factors considered), and cases cited. Since any trial of the instant case, either in this court or the state court, would proceed independently of all the pending bankruptcy proceedings, abstention would not interfere with the administration of any of the bankruptcy estates. In sum, CPIM has satisfied all the elements of § 1334(c)(2) and this court concludes that mandatory abstention applies.

### C. *Permissive Abstention*

Even if mandatory abstention were not applicable, a "further basis for remanding a removed cause of action lies in 28 U.S.C. § 1452(b), which provides that the court to which a claim or cause of action is removed may remand the claim or cause of action on any equitable ground." *In re Santa Clara County Child Care Consortium,* 223 B.R. at 44.[5] Factors to be considered in connection with deciding whether a case should be remanded include:

5 28 U.S.C. § 1334(c)(1) provides, with an exception not relevant here, that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1452(b) provides that the court to which an action has been removed "may remand such claim or cause of action on any equitable ground."

(1) the effect of the action on the administration of the bankruptcy estate;

(2) the extent to which issues of state law predominate;

(3) the difficulty of applicable state law;

(4) comity;

(5) the relatedness or remoteness of the action to the bankruptcy case;

(6) the existence of a right to a jury trial; and

(7) prejudice to the party involuntarily removed from state court.

*Id.* at 46 (citing *In re VideOcart, Inc.,* 165 B.R. 740, 744 (D.Mass.1994)). Applying these principles to the instant case compels the conclusion that this action should be remanded to the state court.

The effect of this case on bankruptcy matters does not favor keeping the case in this court. The defendants contend that the instant case is related to more than 20 separate bankruptcy proceedings pending in courts throughout the United States. However, the defendants do not seek to have this case adjudicated in any bankruptcy court—rather, they seek to have the case tried in this district court. *See Amended Defendants' Joint Memorandum of Law Opposing Plaintiff's Motion to Remand* (Docket No. 179) (*"Defs.' Mem."* ) at 15 n. 16. While this court has found "related to" jurisdiction, the connection is not very strong. The indemnification agreements do not involve all of the defendants. Furthermore, while some of those agreements involve current indemnification obligations, others involve only potential indemnification obligations that are quite remote. There is little doubt that if the defendants are found liable for the $1.2 billion in damages the plaintiff is seeking, and the defendants are able to be indemnified for these amounts from a bankrupt estate, the judgment against the debtor would impact the bankruptcy estate. However, that impact is not affected by the choice of forum. Whether the case proceeds here or goes forward in state court, it will proceed to a jury trial and the outcome will have the same impact on the bankruptcy proceedings. In short, the efficient administration of the bankruptcy-related estates will not be affected if this court abstains and remands the matter to state court. *See, e.g., In re United Container LLC,* 284 B.R. at 176 ("even if the ultimate allowance of claims against the bankruptcy estate[s] may be affected, this 'effect' will not occur until the litigation is concluded and there is no reason to believe that this will happen more quickly in the United States district court").

***8** There is no dispute that issues of state law predominate in this case, and that the case does not, at this juncture, raise any bankruptcy related issues. While the federal court is equipped to resolve cases based on Massachusetts securities law, the state obviously has an interest in resolving cases under its own statutes. With respect to comity, CPIM is based in Massachusetts, the transactions all took place in Massachusetts, and most of the defendants either have offices in Massachusetts and/or were licensed to sell securities in Massachusetts. Thus, Massachusetts has an interest in this litigation. *See In re Evarts,* Bankr.No. 05–12681–JMD, 2006 WL 696136, at *3 (Bankr.D.N.H. Mar.14, 2006) (where suit involves solely state law issues, which "may not be difficult, comity and the state's interest in developing its own law and applying it to its own citizens suggest remand is appropriate").

As detailed above, this case is only remotely related to any of the bankruptcy proceedings. The right to a jury trial is not affected in this case, since the defendants are not seeking to have this matter resolved in a bankruptcy court. Thus, these factors do not warrant a trial in federal court.

The defendants argue that this case could proceed more smoothly in federal court under the Federal Rules given the diverse locations of the defendants. That, however, would seem to be more of a problem for the plaintiff seeking discovery from the defendants. Nevertheless, the plaintiff, for whatever reason, has elected to bring suit in state court. Given that the transactions at issue took place in Massachusetts, both the state and federal courts are located in Boston, and the plaintiff's witnesses are located in Boston, there is no reason to usurp the plaintiff's choice to proceed in state court. *See VideOcart, Inc.,* 165 B.R. at 744 ("Comity and respect for the plaintiff's choice of forum outweigh any arguments advanced by the defendants.").

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

Finally, this court finds compelling the fact that maintenance of the instant case in federal court does not further the purpose of "related to" jurisdiction. Trying the case here, in a court unconnected with any of the bankruptcy proceedings, will not enhance the bankruptcy court's ability "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." *In re Boston Reg'l Med. Ctr.,* 410 F.3d at 105. "The Congress has made it plain that, in respect to noncore proceedings such as this (i.e., cases which assert purely state law causes of action), the federal courts should not rush to usurp the traditional precincts of the state courts." *Mattingly v. Newport Offshore, Ltd.,* 57 B.R. 797, 799 (D.R.I.1986). Consequently, 28 U.S.C. § 1334(c)(2) grants courts "broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." *In re Vrusho,* 316 B.R. 589, 592 (Bankr.D.N.H.2004) (quotations and citation omitted).

***9** Undeniably, cases of the type and scope of the instant case are often brought in federal court. Nevertheless, given the lack of ties to a bankruptcy proceeding or other compelling reason, the conclusion is inescapable that the removal of this case to district court was simply forum shopping. *See In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d at 69 (among other factors, in determining whether permissive abstention is appropriate courts consider "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties" (quotation omitted)). The plaintiff's decision to commence suit in state court based on state law should be honored.

**IV. *CONCLUSION***

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that while this court has jurisdiction to hear this case, this court should abstain from doing so under the doctrine of either mandatory or permissive abstention. Therefore, CPIM's Motion to Remand (Docket No. 133) should be ALLOWED.[6]

6 The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 6580503

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:

WESTBOROUGH SPE LLC — Debtor

Chapter 7, No. 23-40709-CJP

TOWN OF WESTBOROUGH — Plaintiff

v.

WESTBOROUGH SPE LLC — Defendant

Commonwealth of Massachusetts
Land Court Department
Case No. 19TL000768-HPS

**NOTICE OF REMOVAL – RULE 9027 (a)(1)**

**NOTICE OF REMOVAL**

JONATHAN R. GOLDSMITH, as Chapter 7 Trustee ("Trustee") in Bankruptcy for Westborough SPE, LLC (hereinafter "Debtor"), which Debtor is a Defendant in a case pending in the Massachusetts Land Court Department as Case No. 19TL000768-HPS (the "Removed Case"), and hereby removes the Removed Case to the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

**Entitlement to Removal.**

The Removed Case was commenced in the Land Court on July 8, 2019. On August 31, 2023, a Chapter 7 Involuntary Case was commenced against Westborough SPE, LLC, Case No. 23-40709 ("Bankruptcy Case") in the Bankruptcy Court for the District of Massachusetts.

On October 11, 2023, an Order for Relief under Chapter 7 was entered in the Bankruptcy Case.

The Removed Case is a case related to the Bankruptcy Case. As such, the United States District Court for the District of Massachusetts (the "District Court") has jurisdiction of the Removed Case pursuant to 28 U.S.C. §1334(b). Therefore, pursuant to 28 U.S.C. §1452(a), the Removed Case may be removed to the District Court.

Pursuant to 28 U.S.C. §157, the District Court may refer the Removed Case to the bankruptcy judges for the district. By its General Order, the District Court has referred to the bankruptcy

judges for this district in all cases under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title 11. That includes the Removed Case.

As permitted by Bankruptcy Rule 9027(a)(2), this Notice of Removal is being filed within the time frame allotted by the Bankruptcy Court pursuant to its Order of December 19, 2023, a copy of which is attached hereto as Exhibit "A".

**Core/Noncore Status of Removed Case.**

The Trustee submits that the Removed Case is a core proceeding within the meaning of 28 U.S.C. §157(b).

**Process and Pleadings.**

In light of the extensive number of pleadings in the Removed Case, the Trustee is only attaching, at this time, the docket report from the Removed Case, a copy of which is attached hereto as Exhibit "B". In the event the Court requires the submission of all or a portion of the pleadings or orders from the Removed Case, the Trustee will supplement this notice accordingly.

**Filing in Massachusetts Land Court.**

Promptly after the filing hereof, the undersigned shall file a copy of this Notice with the Clerk of the Massachusetts Land Court.

Respectfully submitted,
JONATHAN R. GOLDSMITH, CHAPTER 7
TRUSTEE IN THE BANKRUPTCY CASE
FOR WESTBOROUGH SPE, LLC

Dated: January 17, 2024

By: */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780
Email: jgoldsmith@gkalawfirm.com

# *Exhibit "A"*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br>Westborough SPE LLC<br><br>Debtor | Chapter 7<br>23-40709-CJP |

**ORDER**

**MATTER:**
#57 Joint Motion filed by Trustee Jonathan R. Goldsmith, Creditor Town of Westborough to Continue Hearing [Re: 20 Motion for Relief From Stay].

UPON CONSIDERATION OF THE JOINT MOTION TO CONTINUE HEARING [DKT. NO. 57] (THE "MOTION"), THE OPPOSITION THERETO OF LOLONYON AKOUETE [DKT. NO. 59], AND THE RECORD OF THIS CASE, THE MOTION IS GRANTED AS FOLLOWS.

THE DECEMBER 21, 2023 HEARING ON THE MOTION FOR RELIEF [DKT. NO. 20] IS CONTINUED TO **FEBRUARY 13, 2024 AT 10:30 AM** IN COURTROOM 3, DONOHUE FEDERAL BUILDING AND COURTHOUSE, 595 MAIN STREET, WORCESTER, MASSACHUSETTS, WITH AN OPTION FOR PARTIES TO APPEAR BY ZOOM VIDEO.

TO OBTAIN VIDEO ACCESS INFORMATION FOR THE CONTINUED HEARING, PARTIES IN INTEREST SHALL EMAIL THE COURTROOM DEPUTY, HALINA MAGEROWSKI, AT CJP_COURTROOM_DEPUTY@MAB.USCOURTS.GOV NO LATER THAN **FEBRUARY 12, 2024 AT 4:00 P.M.**, PROVIDING THE CONTACT INFORMATION FOR THE PARTY SEEKING TO APPEAR BY VIDEO.

THE DEADLINE FOR THE TRUSTEE TO REMOVE THE TAX FORECLOSURE ACTION, SUBJECT TO THE STIPULATION OUTLINED IN THE MOTION, IS EXTENDED THROUGH AND INCLUDING TO **FEBRUARY 27, 2024**.

Dated: 12/19/2023

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

# *Exhibit "B"*

# 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

- Case Type:
- Tax Lien
- Case Status:
- Closed
- File Date
- 07/08/2019
- DCM Track:
-
- Initiating Action:
- Tax Lien - one tax taking
- Status Date:
- 07/08/2019
- Case Judge:
- Speicher, Hon. Howard P.
- Next Event:
-
- **Property Information**

  Turnpike Road
  Westborough
  RECORD

All Information | Party | Event | Docket | Financial | Checks | Receipt | Disposition

## Party Information

**Town of Westborough**
- Plaintiff

**Party Attorney**
- Attorney
- Bloom, Esq., Dawn E
- Bar Code
- 659839
- Address
- 43039 Boardwalk Loop
  Punta Gorda, FL 33982
- Phone Number
- (413)529-9936
- Attorney
- Leahy, Esq., Iris Ann
- Bar Code
- 697783
- Address
- Law Office of Iris A. Leahy
  4 Open Square Way
  Suite 217
  Holyoke, MA 01040
- Phone Number
- (413)322-8318

More Party Information

**Westborough SPE, LLC**
- Defendant

**Party Attorney**
- Attorney
- Nathanson, Esq., Alvin S
- Bar Code
- 367480
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  Fifth Floor
  Boston, MA 02109
- Phone Number
- (617)210-4810
- Attorney
- Schlager, Esq., Scott Adam
- Bar Code

- 695421
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  5th Floor
  Boston, MA 02109
- Phone Number
- (617)909-4511

More Party Information

**F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.**
- Defendant

**Party Attorney**

More Party Information

**Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC**
- Defendant

**Party Attorney**

More Party Information

**James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.**
- Defendant

**Party Attorney**

More Party Information

**David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

**Party Attorney**

More Party Information

**Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

**Party Attorney**

More Party Information

**Interstate Theaters Corporation**
- Defendant

**Party Attorney**

More Party Information

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 06/15/2020 02:00 PM | C.J. Piper | Courtroom 404 - Fourth Floor | Motion | Piper, Hon. Gordon H. | Held via video |
| 01/10/2023 09:00 AM | J. Speicher | Courtroom 1102 - Eleventh Floor | Hearing on Lis Pendens | Speicher, Hon. Howard P. | Held via video |
| 01/19/2023 10:00 AM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/09/2023 02:00 PM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 03/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Not held |
| 05/16/2023 10:15 AM | J. Speicher | Courtroom 401 - Fourth Floor | Motion | Speicher, Hon. Howard P. | Held via video |
| 08/17/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Rescheduled |
| 08/31/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Not held |

## Docket Information

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/08/2019 | Complaint filed. | | Image |
| 07/08/2019 | Case assigned to the Tax Track per Land Court Standing Order 1:04. | | |
| 07/08/2019 | Land Court filing complaint tax Receipt: 405581 Date: 07/09/2019 | $200.00 | |
| 07/08/2019 | Land Court initial deposit tax Receipt: 405581 Date: 07/09/2019 | $300.00 | |
| 07/08/2019 | Land Court surcharge Receipt: 405581 Date: 07/09/2019 | $15.00 | |
| 07/10/2019 | Michael H. Delaney, Esq. appointed as Title Examiner. | | |
| 08/26/2019 | Report filed by Michael H. Delaney, Esq.. | | Image |
| 08/28/2019 | Land Court examiner costs | $150.00 | |
| 09/05/2019 | Checklist sent. | | |
| 11/07/2019 | Letter of Diligent Search Filed. | | |
| 12/31/2019 | Checklist completed. | | |
| 05/12/2020 | Scheduled<br>Event: Motion for Alternative Service<br>Date: 06/15/2020 Time: 02:00 PM<br><br>Zoom instructions to be sent by the Recorder's Office in advance of the hearing date.<br><br>Judge: Piper, Hon. Gordon H. | | |
| 05/19/2020 | Motion for Alternative Service and Supporting Memorandum, filed. | | Image |
| 06/15/2020 | Event Resulted: Motion scheduled on:<br>06/15/2020 02:00 PM<br>Has been: Held via video<br><br>June 15, 2020. Hearing held on Plaintiff's Motion for Alternative Service via videoconference. Attorneys Shirin Everett and Dawn Bloom appeared for plaintiff. Jon Steinberg, Assessor for the town of Westborough, also observed the hearing. Attorney Bloom reported that the defendant owner of the parcel in question is a defunct Delaware limited liability company which withdrew from Massachusetts in 2007, had its registration in Delaware cancelled in 2014, and has listed as its agent for service in Delaware a corporation service company that is no longer active in that role. Attorney Bloom indicated that the manager listed on its Massachusetts registration is a defunct entity named Babcock & Brown Administrative Services, Inc., that Mr. Steinberg was able to contact a related Delaware corporation by the name of Babcock & Brown operating in San Francisco, and that the related corporation's officers indicated that it has no interest in the property. Attorney Everett reported that after the town of Westborough had begun proceedings to acquire title to the property by eminent domain, an Australian law firm notified the town that it represented the administrator of the liquidation of an Australian entity named Babcock & Brown LP, and that it was investigating whether Babcock & Brown LP might hold any interest in the property; the town has since received requests from that law firm concerning the status of eminent domain proceedings, but has received no response to several requests by the municipality that that entity address the basis for its potential claim to any interest in the property. Attorney Bloom indicated that the plaintiff asserts that the defendant owes approximately $400,000 to the town in unpaid real estate taxes and interest, and also owes another $300,000 pursuant to a reciprocal maintenance agreement concerning the property's shared parking lot. Attorney Bloom also indicated that there appears to be no mortgage currently encumbering the property, as there is a recorded discharge of the most recent mortgage of record. Plaintiff to attempt to make direct service on (1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter, & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock & Brown LP liquidation. Court ALLOWED plaintiff's motion for alternative service by publication. Plaintiff to submit to the court's tax lien department a proposed form of an order of notice for publication in a newspaper of general circulation in the town of Westborough as to the defendant entity, no longer in legal existence, and its successors. Following return dates on all summonses and the published citation, plaintiffs to request default enter under Mass. R. Civ. P. 55 (a) against all parties not timely filing answer or responsive pleading. Upon entry of any indicated default(s), plaintiffs to file motion with the Recorder requesting entry of a finding of the amount and time for redemption from the tax taking. If any additional party appears or answers, parties promptly to request, in writing, further case management conference. (Piper, C.J.)<br><br>(Notice of Docket Entry sent by email to Attorneys Dawn Bloom and Shirin Everett) | | |
| 09/01/2020 | Land Court additional deposit tax Receipt: 417793 Date: 09/01/2020 | $400.00 | |
| 09/15/2020 | Citation by Publication in Village News, issued. Returnable 11/09/2020. | | |
| 09/22/2020 | Citation issued as to the land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 11/16/2020. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 09/22/2020 | Land Court notices mailing - Certified Mail<br>Issue Date: 09/22/2020<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.95<br><br>Interstate Theaters Corporation<br>Mailing Address<br>101 E. Blount Ave.<br>Knoxville, TN 37920<br>Tracking Number: 71901706197000959805<br><br>Interstate Theaters Corporation<br>Mailing Address<br>c/o CT Corporation System, Reg. Agent<br>155 Federal St., Suite 700<br>Boston, MA 02110<br>Tracking Number: 71901706197000959812<br><br>James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Mailing Address<br>1715 Easton Dr.<br>Burlingame, CA 94010<br>Tracking Number: 71901706197000959829<br><br>Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC<br>Mailing Address<br>20 Queensbrook Pl.<br>Orinda, CA 94563<br>Tracking Number: 71901706197000959836<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>151 E. 31st<br>Apt. 28B<br>New York, NY 10016<br>Tracking Number: 71901706197000959843 Receipt: 418144 Date: 09/23/2020 | $59.75 | |
| 09/23/2020 | Land Court notices mailing out of country - Registered Mail<br><br>RE 550 804 582US<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>Deloitte Financial Advisory Pvt. Ltd.<br>Grosvenor Place Level 9<br>225 George St.<br>Sydney, NSW 2000<br>Australia<br><br>RE 550 804 596US<br>Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>20 Bond Street, Level 25<br>Sydney, NSW 2000<br>Australia Receipt: 418145 Date: 09/23/2020 | $52.50 | |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/26/2020<br>Return : 09/30/2020<br>On : James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959829 | | Image |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 09/30/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Comment :<br>Tracking #: 71901706197000959812 | | |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 10/01/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959805 | | Image |
| 10/06/2020 | Tear Sheet Received. | | |
| 10/06/2020 | Citation published September 25, 2020. Returnable 11/09/2020 | | |
| 10/20/2020 | Land Court notice by publications Receipt: 418637 Date: 10/20/2020 | $5.00 | |
| 10/20/2020 | Land Court newspaper payments Voided on 10/20/2020.<br><br>Void Check number: 33258<br>Void Status Date: 10/20/2020<br>Void Reason: Printer Jam<br>Void Comments: | $0.00 | |
| 10/20/2020 | Land Court newspaper payments | $252.92 | |
| 10/21/2020 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/30/2020<br>Return : 10/02/2020<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000959843 | | Image |
| 11/03/2020 | Registered Mail Service on Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited successful.<br>Served on 10/14/2020 | | Image |
| 11/23/2020 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 12/10/2020 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited issued. Returnable 02/01/2021. | | |
| 01/19/2021 | Appearance of Iris Ann Leahy, Esq. for Town of Westborough, filed | | |
| 01/19/2021 | Citation by Deputy Sheriff to Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, returned with service thereon. | | |
| 02/19/2021 | Request to issue Special Citation, filed | | |
| 04/08/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 05/31/2021. | | |
| 04/08/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 04/08/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>888 Avenue of the Americas<br>New York, NY 10001<br>Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021 | $11.96 | |
| 05/04/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 04/08/2021 | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Service : Service<br>Served :<br>Return : 04/15/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000977816 | | |
| 05/21/2021 | Request to issue Special Citation, filed | | |
| 06/09/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 08/02/2021. | | |
| 06/10/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 06/10/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>34 Stern Lane<br>Atherton, CA 94027<br>Tracking Number: 71901706197000980878 Receipt: 423362 Date: 06/10/2021 | $11.96 | |
| 08/09/2021 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 08/17/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc. issued. Returnable 10/11/2021. | | |
| 09/20/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., returned with service thereon. | | Image |
| 10/01/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 06/10/2021<br>Service : Service<br>Served :<br>Return : 09/21/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : no such number<br>Tracking #: 71901706197000980878 | | Image |
| 11/01/2021 | Citation by Deputy Sheriff to David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited, returned with service thereon. | | |
| 11/01/2021 | Affidavit as to Military Service filed. | | |
| 11/01/2021 | Motion for General Default filed. | | |
| 11/01/2021 | Printout from www.usps.com showing that the envelope with Tracking #:71901706197000980878 was returned to the sender on September 15, 2021 because the item had been unclaimed, filed. | | |
| 12/28/2021 | Motion for General Default allowed. (Patterson, Rec.)<br><br>Judge: Patterson, Deborah J. | | |
| 01/04/2022 | Letter from attorney Leahy, received. | | |
| 01/05/2022 | Final Judgment entered as to tax-taking(s): Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.<br><br>Judge: Patterson, Deborah J. | | |
| 01/10/2022 | Land Court overpayment refund disbursement<br>Notice of Disposition sent to: Iris Ann Leahy, Esq. 4 Open Square Way Suite 217 Holyoke, Massachusetts 01040 | $155.91 | |
| 01/04/2023 | Land Court cost- vacation of judgment tax lien Receipt: 437156 Date: 01/04/2023 | $11.00 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 01/04/2023 | Defendant's Westborough SPE, LLC's Motion to Vacate foreclosure Judgment, filed. | | Image |
| 01/05/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 01/19/2023 Time: 02:00 PM | | |
| 01/05/2023 | Ex Parte Motion for Approval of Memorandum of Lis Pendens,filed. | | Image |
| 01/05/2023 | Summons and Hearing Notice issued on Application for Lis Pendens.<br>Judge: Speicher, Hon. Howard P.<br>Event: Hearing on Lis Pendens<br>Date: 01/10/2023 Time: 09:00 AM | | |
| 01/10/2023 | Hearing on defendant's motion for approval of a memorandum of lis pendens held by videoconference. Attorney Iris Ann Leahy appeared for the plaintiff. No attorney appeared on behalf of defendant Westborough SPE, LLC; however, Lolonyon Akouete, a non-attorney and manager of defendant, purported to appear pro se on behalf of the defendant. Attorney Leahy reported that there is no imminent sale pending of the subject property because there is a hearing on a motion to vacate scheduled for January 19, 2023 on the defendant's request to redeem the property. The court advised Mr. Akouete that an organization such as an LLC cannot be represented by a non-attorney, and that the court cannot go forward on the motion until the defendant engages an attorney to sign and file the motion on its behalf. Accordingly, the court took no action on the motion for approval of a memorandum of lis pendens. | | |
| 01/13/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>01/19/2023 10:00 AM<br>Has been: Rescheduled. Motion to continue hearing to February 9, 2023 at 2:00pm, filed. | | Image |
| 01/13/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/09/2023 Time: 02:00 PM | | |
| 01/30/2023 | Plaintiff's Memorandum in Opposition to defendant Westborough SPE, LLC'S Motion to Vacate Foreclosure Judgment, filed. | | Image |
| 01/31/2023 | Affidavit of Frances Juan Blaustein Scholes, filed by email. | | Image |
| 02/01/2023 | Plaintiff's Objection to Pro Se Filings by the Defendant, filed. | | Image |
| 02/02/2023 | Emergency motion to continue the hearing, filed. | | Image |
| 02/02/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>02/09/2023 02:00 PM<br>Has been: Rescheduled to February 23, 2023 at 2:00pm<br>Deborah J. Patterson, Presiding | | |
| 02/02/2023 | Emergency motion to continue the hearing Allowed. Motion to Vacate Judgment continued to February 23, 2023 at 2:00pm, no further continuance will be granted.<br><br>Judge: Patterson, Deborah J. | | |
| 02/02/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/23/2023 Time: 02:00 PM | | |
| 02/22/2023 | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment filed by email. | | Image |
| 02/22/2023 | Appearance of Scott Adam Schlager, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Appearance of Alvin S Nathanson, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Defendant Westborough SPE, LLC's emergency motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel, filed. | | Image |
| 02/23/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>02/23/2023 02:00 PM<br>Has been: Rescheduled<br>Deborah J. Patterson, Presiding | | |
| 02/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel is ALLOWED. Motion to Vacate to be heard on March 23, 2023 at 2:00pm.<br><br>Judge: Kelley, Ellen M. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 02/23/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 03/23/2023 Time: 02:00 PM | | |
| 03/08/2023 | Supplement to Plaintiff's opposition to defendant Westborough, SPE, LLC's motion to vacate foreclosure judgment, filed. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager.. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager. | | Image |
| 03/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time , filed. | | Image |
| 03/23/2023 | Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial, filed | | Image |
| 03/23/2023 | Event Resulted: Motion to Vacate Judgment scheduled on:<br>03/23/2023 02:00 PM<br>Has been: Not held | | |
| 03/23/2023 | Case has been ASSIGNED to the Honorable Howard P. Speicher | | |
| 03/29/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Events: Date: 05/16/2023 Time: 10:15 AM<br><br>Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time<br><br>Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed.<br><br>Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial | | |
| 04/11/2023 | Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. | | Image |
| 04/13/2023 | Defendant Westborough SPE, LLC's Emergency Motion for Preliminary Injunctive Relief (Temporary Restraining Order), filed. | | Image |
| 04/18/2023 | Notice, filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Emergency Motion for a Writ of Mandamus , filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/04/2023 | Assent of to the Entry of Judgment. | | Image |
| 05/04/2023 | Waiver of Notice and Assent to the Entry of Judgment, filed. | | Image |
| 05/04/2023 | Opposition, filed. | | Image |
| 05/05/2023 | Citation by Deputy Sheriff to , returned with service thereon. | | Image |
| 05/05/2023 | Defendant Westborough SPE, LLC's Emergency Motion to Strike Peter Blaustein's Unlawful Filing of a Waiver of Notice and Assent to the Entry of Judgment and Motion for the Imposition of Mass. R. CIV P. Rule 11 Sanctions Against Attorney Iris A. Leahy, the Town of Westborough, and Peter Blaustein, for Assisting in the Perpetration of an Alleged Fraud on the Court, Unauthorized Practice of Law, and Conduct Prejudicial to the Administration of Justice, filed. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 05/15/2023 | Defendant Westborough SPE, LLC's Reply to Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/16/2023 | Hearing on Westborough SPE, LLC's motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, motion for preliminary injunctive relief, and motion in limine held by videoconference. Attorneys Iris Ann Leahy and Scott Adam Schlager appeared and argued. Attorneys Alvin Nathanson and Edward Englander also appeared. Following argument, the motion in limine is DENIED without prejudice. Likewise, the motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, and motion for preliminary injunctive relief are DENIED. The court will hold an evidentiary hearing on Westborough SPE, LLC's motion to vacate judgment, to be scheduled in late July 2023, to determine whether Westborough SPE, LCC, having appeared in this case, is the taxpayer who has the right to redeem the subject property. Counsel are instructed to file requests for production of documents, if any, by June 2, 2023. Counsel must respond to the requests for production of documents by July 6, 2023, after which the court will schedule a pretrial conference. No other discovery, such as interrogatories or depositions, may be conducted. | | |
| 05/30/2023 | Letter from Attorney Leahey, filed. | | Image |
| 05/30/2023 | Plaintiff's Request for Production of Documents, filed. | | Image |
| 05/31/2023 | Westborough SPE LLC's First Notice of Supplemental Authority in support of its Motion to Vacate, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Plaintiff,Town of Westborough, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Defendant F. Jan Blaustein a/k/a Jan Blaustein Scholes,R.E. Signatory & Agent for Westborough SPE, LLC's and Pres. of Babcock & Brown Administrative Services.,INC, filed. | | Image |
| 06/30/2023 | Defendant Westborough SPE, LLC's Notice of Supplementation, filed. | | Image |
| 07/06/2023 | Defendant Westborough SPE, LLC's Second Notice of Supplementation, filed. | | Image |
| 07/11/2023 | Defendant Westborough SPE, LLC's Responses and Objections to Plaintifff (First) Request for Production of Documents,filed | | |
| 07/11/2023 | Plaintiff Town of Westborough's Response to Defendant's First Request for the Production of Documents to Plaintiff Town of Westborough, filed. | | |
| 07/13/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Hearing on Motion to Vacate Judgment<br>Date: 08/10/2023 Time: 02:00 PM rescheduled to August 17, 2023 at 2pm. | | |
| 07/27/2023 | Motion to continue Pre-trial Conference, filed. | | Image |
| 07/27/2023 | Defendant Westborough SPE, LLC's Opposition to the Town of Westborough's Motion to continue Pre-trial Conference, filed. | | Image |
| 07/28/2023 | Plaintiff Town of Westborough's amended motion to continue the pre-hearing conference on the pending motion to vacate is ALLOWED. The pre-hearing conference is rescheduled to August 31, 2023 at 2:00 P.M. by videoconference. | | |
| 07/28/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/17/2023 02:00 PM<br>Has been: Rescheduled For the following reason: Request of Plaintiff(s)<br>Hon. Howard P. Speicher, Presiding | | |
| 07/28/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Trial Conference<br>Date: 08/31/2023 Time: 02:00 PM | | |
| 07/28/2023 | Amended Motion to continue Pre-trial Conference, filed. | | Image |
| 08/24/2023 | Notice of Statutory Attorneys' Lien by Nathanson & Goldberg P.C., filed. | | Image |
| 08/24/2023 | Defendant Westborough SPE LLC's (First) Notice of Supplementation to Plaintiff's (First) Request for Production of Documents,fiiled. | | Image |
| 08/24/2023 | Westborough SPE, LLC Limited Liability Agreement,filed. | | Image |
| 08/25/2023 | Joint Pre-Trial Memorandum, filed. | | Image |
| 08/31/2023 | SUGGESTION OF BANKRUPTCY, FILED. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 08/31/2023 | Notice of Docket Entry:<br>Counsel for defendant Westborough SPE, LLC, to report to the court on the status of the bankruptcy petition by October 31, 2023 and every sixty days thereafter.<br>Notice of the docket entry sent. | | |
| 08/31/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/31/2023 02:00 PM<br>Has been: Not held per request of the defendant.<br>Hon. Howard P. Speicher, Presiding | | |
| 10/13/2023 | Notice of Bankruptcy status pursuant to August 31, 2023 Order, filed. | | Image |

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $367.17 | $367.17 | $0.00 | $0.00 |
| | $367.17 | $367.17 | $0.00 | $0.00 |

- **Money on Deposit**

| Account | Applied Amount |
|---|---|
| Land Court Deposit Holding | $141.17 |
| | $141.17 |

- **Money Distributed by Court**

| Payment Type | Amount |
|---|---|
| Disbursement | $558.83 |
| | $558.83 |

## Check Information

| Created | Payee Name | Description | Account | Check | Amount |
|---|---|---|---|---|---|
| 08/28/2019 | Michael H. Delaney | Case: 19 TL 000768 Land Court examiner costs | LCD | 31780 | $150.00 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33259 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | -$252.92 |
| 01/10/2022 | Town of Westborough | Case: 19 TL 000768 Land Court overpayment refund d | LCD | 34880 | $155.91 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 405581 | 07/09/2019 | Town of Westborough | $515.00 |
| 417793 | 09/01/2020 | Bloom, Esq., Dawn E | $400.00 |
| 418144 | 09/23/2020 | Bloom, Esq., Dawn E | $59.75 |
| 418145 | 09/23/2020 | Bloom, Esq., Dawn E | $52.50 |
| 418637 | 10/20/2020 | Bloom, Esq., Dawn E | $5.00 |
| 422168 | 04/08/2021 | Bloom, Esq., Dawn E | $11.96 |
| 423362 | 06/10/2021 | Bloom, Esq., Dawn E | $11.96 |
| 437156 | 01/04/2023 | Aaron B. O'Neal | $11.00 |
| | | | $1,067.17 |

**Case Disposition**

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment Entered | 01/05/2022 | Speicher, Hon. Howard P. |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC,<br><br>Debtor. | Chapter 7<br>Case No. 23-40709-CJP |

MOTION FOR INTERIM DISTRIBUTION

Dear Honorable Christopher J. Panos:

I, Lolonyon Akouete, a creditor in the above-referenced bankruptcy case, respectfully submit this Motion for Interim Distribution pursuant to FRBP 3009 and the circumstances detailed herein.

**Background:**

1. On August 31, 2023, Petitioning Creditors Nathanson & Goldberg, P.C. and MobileStreet Trust commenced this involuntary Chapter 7 bankruptcy proceeding against the Debtor.
2. On October 11, 2023, an Order for Relief under Chapter 7 of the Bankruptcy Code was entered regarding Westborough SPE LLC (the "Debtor").
3. On October 12, 2023, Jonathan Goldsmith was duly appointed as the Chapter 7 Trustee for the Debtor's bankruptcy estate.
4. On October 12, 2023, a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines was filed by the Clerk, requiring all claims to be filed by January 9, 2024. The claims bar date has passed, and seven unsecured claims have been filed.
5. On January 4, 2024, I, Lolonyon Akouete, filed a Motion seeking Court Assistance in Recovering Unclaimed Funds For the Benefit of the Bankruptcy Estate.
6. On January 5, 2024, the court denied the motion and advised the Trustee to file a turnover request, in addition to filing a status report within 30 days.
7. On February 2, 2024, the Trustee filed a Motion to Compel the California State Controller to Surrender to the Trustee Property of the Estate.
8. On February 8, 2024, the Trustee confirmed that he is in receipt of the $1,293,646.83 unclaimed funds from California.
9. The estate has $1,293,646.83 on deposit, and it is reasonable to believe that further funds will be recovered as part of the sale of the 231 Turnpike Rd property.
10. The Debtor has critical financial obligations, and I previously requested court assistance in obtaining the Debtor's funds from California.

**Request for Relief:**

Based on the foregoing, I respectfully request that the Court enter an order permitting an interim distribution in this case as follows:

1. Darin Clagg: $10,000.00
2. Ferris Development Group, LLC: $10,000.00

3. Matthew A. Morris Sherin and Lodgen LLP: $20,000.00
4. Lolonyon Akouete: $250,000.00
5. Denise Edwards: $150,000.00
6. The MobileStreet Trust: $367,131.00
7. Nathanson & Goldberg, P.C.: $101,692.83

Total: $908,823.83

The bankruptcy estate will still have $384,823.00 to cover Trustee Compensation and administrative expenses.

Conclusion:

Interim distributions in this case are necessary to address the critical financial obligations of the Debtor and to provide some relief to creditors. The funds currently available in the estate, along with the potential for further recovery, justify the proposed interim distribution plan.

WHEREFORE, I respectfully request that this Honorable Court enter an order granting the Motion for Interim Distribution as set forth herein and for such other and further relief as the Court deems just and proper.

DATED: February 11, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| Debtor. | ) | |

REQUEST FOR EXPEDITED DETERMINATION - SUPPLEMENT TO MOTION FOR INTERIM DISTRIBUTION Doc.#92

**Introduction:**

I, Lolonyon Akouete, a creditor and manager of the debtor in the above-captioned bankruptcy case, submit this supplement to the Motion for Interim Distribution. This supplement aims to highlight pertinent issues that necessitate immediate attention from this Honorable Court.

**Debtor's Urgent Need for Legal Representation:**

1. The current circumstances of the debtor, Westborough SPE LLC, demand immediate legal assistance. The debtor's manager requires $20,000 to retain legal counsel for converting the Chapter 7 bankruptcy into Chapter 11. This conversion is crucial for the debtor's ability to navigate its financial situation effectively.
2. I assert that the proposed settlement agreement under consideration by the trustee and the Towns involved in the case may not serve the best interests of the debtor. This raises concerns about the fairness and adequacy of the proposed resolution for all parties involved.

**Concerns Regarding Pro Se Representation:**

3. It is essential to acknowledge the inherent disadvantages faced by pro se litigants in bankruptcy proceedings. Pro se parties often lack the necessary legal expertise and resources to effectively advocate for their interests.
4. Furthermore, the potential bias or undue influence stemming from the friendly relationship between the Town counsel and the trustee raises serious concerns about the fairness of the proceedings, particularly for the pro se litigant.

**Legal Complexity and Constitutional Considerations:**

5. This case involves novel legal and constitutional issues, highlighting the importance of a thorough and fair adjudication process. The resolution of such matters holds significant implications for the development and interpretation of tax foreclosure laws.
6. Privatizing the resolution of the case through settlement may impede the proper vindication of important legal rights, particularly in cases involving constitutional or statutory claims. Federal courts play a crucial role in issuing rulings that clarify and apply the law, especially in matters of constitutional significance.

**Reaffirmation of Debtor's Absolute Right to Convert:**

7. Section 706(a) of the Bankruptcy Code unequivocally grants debtors the absolute right to convert their case from Chapter 7 to Chapter 11 at any time. This statutory provision reflects Congress's intent to afford debtors the opportunity to address their financial obligations through alternative means.
8. Courts have consistently interpreted this right broadly, emphasizing that the court's role in such conversions is essentially ministerial. The legislative history further underscores Congress's intention to encourage debtors to explore avenues for debt repayment.

**Preservation of Assets and Petition for Conversion to Chapter 11:**

9. The debtor's circumstances have evolved during the Chapter 7 proceedings, prompting a reassessment of the most advantageous path forward. It has become apparent that reorganization under Chapter 11 would offer greater benefits or feasibility for the debtor's financial rehabilitation. Therefore, the debtor intends to petition the court for conversion to Chapter 11.
10. Given the current state of the bankruptcy estate, with $1,293,646.83 on deposit and the potential for further funds from the property at 231 Turnpike Rd Westborough, MA 01581, the debtor seeks to preserve these assets. Reorganizing under Chapter 11 would allow the debtor to retain assets that might otherwise be subject to liquidation in Chapter 7 proceedings.

**Conclusion:**

The urgency of the debtor's situation cannot be overstated. Immediate access to funds is imperative to retain legal representation and pursue the necessary conversion of the case from Chapter 7 to Chapter 11. Without the requested interim distribution, the debtor would face significant obstacles in securing the legal counsel essential for navigating the complexities of bankruptcy reorganization.

Furthermore, the potential consequences of delaying the conversion process are substantial. The preservation of assets and the maximization of the bankruptcy estate's value hinge upon prompt action. Therefore, the interim distribution sought in the Motion for Interim Distribution is not only justified but essential for the debtor's ability to effectively address its financial obligations and pursue a favorable outcome.

In light of these pressing considerations, I respectfully urge this Honorable Court to grant the Motion for Interim Distribution as outlined herein. Doing so will not only provide critical assistance to the debtor but also serve the interests of all creditors involved, ensuring a fair and equitable resolution in accordance with the principles of bankruptcy law.

DATED: February 13, 2024, Respectfully submitted: By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

# <u>Exhibit 1</u>

Settlement proposal from Jonathan Goldsmith and Scott A. Schlager

Gmail

Lolonyon Akouete <info@smartinvestorsllc.com>

# In re Westborough SPE LLC - FOR SETTLEMENT PURPOSES ONLY

**Scott A. Schlager** <sas@natgolaw.com> Thu, Feb 8, 2024 at 5:44 PM
To: "jgoldsmith@gkalawfirm.com" <jgoldsmith@gkalawfirm.com>
Cc: "sgordon@gordonfirm.com" <sgordon@gordonfirm.com>, Lolonyon Akouete <info@smartinvestorsllc.com>, "deniseedwards818@yahoo.com" <deniseedwards818@yahoo.com>, "Lenard B. Zide" <zide@buttersbrazilian.com>

**FOR SETTLEMENT PURPOSES ONLY**

Jonathan,

Thank you for taking the time to speak with me this afternoon. Per your suggestion, and after speaking with Lolo, Denise, and Attorney Zide, I am putting the following Settlement Proposal in writing per our discussion.

1. The Trustee is in receipt of the unclaimed funds from California which approximate $1,293,000.
2. The Trustee would use his best efforts to try and get all creditors paid within approximately 90 days +|- (see caveats below *)
3. The Trustee shall use those CA funds to pay off the creditor claims as follows:
   a. Denise Edwards - $150,000.00 at time of creditor distributions
   b. Lolonyon Akouete:
      i. $250,000.00 at time of creditor distributions
      ii. Remaining proceeds after payment of all creditors estimated to be approximately $150-200k +|- paid to Lolo.
      iii. Lolo would have a right to hire a new lawyer and pursue a claim in an “interpleader” action for the excess sale proceeds from the Real Property sale at 231 Turnpike Road, Westborough, MA turned over by the Town of Westborough at the Closing by the Escrow Agent.
   c. Nathanson & Goldberg, P.C. would be paid its to be filed revised Proof of Claim amount approximately $115k at time of creditor distributions.
   d. Mobile Street Trust to be paid its original proof of claim amount of roughly $367,131.
      i. Mobile Trust to have Town agree to a lien in the amount of $166,500 being placed on 231 Turnpike Road for additional amounts owed under the Reciprocal Easement Agreement to be paid at time of closing of the sale of the real property. If Town would not agree, then Mobile Trust to have a priority lien on sale proceeds in the “interpleader” action.

468

   e. Darren Clagg to be paid his claim amount
   f. All Other creditors to be paid their claim amount
3. Lolo to not object to Trustees payment of creditors.
4. Lolo to not object to Trustee allowing Town to sell property to their buyer of choice.
5. Land Court case will be dismissed by stipulation of the Trustee and the Town.
6. Federal Case will be dismissed by stipulation of the Trustee and the Town.
7. David Ferris to get paid his claim of $10k plus up to $90k for due diligence costs, etc. (to be paid either by the Town out of the real property sale proceeds or by the Bankruptcy Estate or split). Bankruptcy Trustee to speak with Counsel for Ferris shortly.
8. *All subject to approval by the US Trustee and Judge Panos/Bankruptcy Court; the parties signing necessary settlement documents/stipulations to be drafted by Trustee

Does this reflect what you propose?

Thank you so much for your assistance.

-Scott

Scott A. Schlager

Partner

Nathanson & Goldberg, P.C.

183 State Street, 5th Floor

Boston, Massachusetts 02109

(O): (617) 210-4800

(C): (617) 909-4511

(F): (617) 210-4824

sas@natgolaw.com

*************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*************************************************

# Exhibit 2

Email Correspondence Regarding Mediation Screening Conference - Case No. 19 TL 000768 Town of Westborough v. Westborough SPE, LLC, et al.

Gmail

Lolonyon Akouete <info@smartinvestorsllc.com>

## 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al. - Request For Mediation Screening Conference

2 messages

**Scott A. Schlager** <sas@natgolaw.com> Fri, Jul 21, 2023 at 1:22 PM
To: "emily.rosa@jud.state.ma.us" <emily.rosa@jud.state.ma.us>
Cc: Iris Leahy <AttyLeahy@outlook.com>, "eenglander@ec-attorneys.com" <eenglander@ec-attorneys.com>, Alvin Nathanson <asn@natgolaw.com>

Good Afternoon Clerk Rosa,

The Land Court has a screening session for Alternative Dispute Resolution. Pursuant to Land Court Standing Order 1-04, through which the court adopted its individual calendar system and time standards, the judge assigned to each case must conduct an "Early Intervention Event" as defined by SJC Uniform Rules on Dispute Resolution not later than at the Case Management Conference, held within 90 days of the filing of the complaint.

Since this Early Intervention Event was not held, we would respectfully request that the Court conduct a mandatory screening session for ADR forthwith.

Please advise at your earliest convenience as our Client is ready, willing, and able to entertain ADR and feel as though such a session may serve the purposes of judicial efficiency.

Thank you,

Scott A. Schlager, Esq.
Partner
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
(O): (617) 210-4800
(C): (617) 909-4511
(F): (617) 210-4824
sas@natgolaw.com

*******************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*******************************************

Sent from my iPhone

---

**Scott A. Schlager** <sas@natgolaw.com> Mon, Jul 24, 2023 at 1:41 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>, "deniseedwards818@yahoo.com" <deniseedwards818@yahoo.com>

Scott A. Schlager, Esq.
Partner
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
(O): (617) 210-4800
(C): (617) 909-4511
(F): (617) 210-4824
sas@natgolaw.com

******************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

******************************************

Sent from my iPhone

Begin forwarded message:

**From:** Iris Leahy <AttyLeahy@outlook.com>
**Date:** July 24, 2023 at 1:36:58 PM EDT
**To:** emily.rosa@jud.state.ma.us
**Cc:** eenglander@ec-attorneys.com, Alvin Nathanson <asn@natgolaw.com>, "Scott A. Schlager" <sas@natgolaw.com>
**Subject: RE: 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al. - Request For Mediation Screening Conference**

Hello Clerk Rosa,

On behalf of the Plaintiff, please accept this response to Attorney Schlager's below email regarding a request for a mediation screening in 19 TL 000768.

The Plaintiff does not believe that this case would benefit from mediation as there are unsettled matters of fact that the Town believes once reviewed by this

Court, will prove the Defendant does not have the to redeem.

This case is before this Court for a Pre-trial Conference but as I understood the Honorable Judge Speicher's instructions at the last hearing, this is in preparation for an evidentiary hearing at which the Motion to Vacate is to be decided. I am working diligently to prepare the first draft of the Joint Pre-trial Memorandum to provide to the counsel for the Defendant as soon as possible.

This case is not on a standard track and rather than continue to delay this case and unnecessarily increase the legal fees, the Plaintiff requests this case move forward as ordered by Judge Speicher.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy

4 Open Square Way, Suite 217

Holyoke, MA 01040

Phone: (413)322-8318

Fax: (413)322-8661

attyleahy@outlook.com

[Quoted text hidden]

# <u>Exhibit 3</u>

Email Correspondence Regarding Motion Response and Mediation Request - Case No. 19 TL 000768 Town of Westborough v. Westborough SPE, LLC, et al.

Gmail **Lolonyon Akouete <info@smartinvestorsllc.com>**

## 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

**Iris Leahy** <AttyLeahy@outlook.com> Fri, Jan 20, 2023 at 9:32 AM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Hello Mr. Akouete,

Thank you for your below email. I am working diligently to provide you with a response to your Motion to Vacate. I hope to have it completed next week. I will provide it to you as soon as I can.

In regard to your request for mediation, the town is still opposed to the vacation of the judgment and has not changed its position.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy

4 Open Square Way, Suite 217

Holyoke, MA 01040

Phone: (413)322-8318

Fax: (413)322-8661

attyleahy@outlook.com

---

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Wednesday, January 18, 2023 9:44 AM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Subject:** Re: 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

Good morning Ms. Leahy,

When can we expect to see your response to the motion?
We plan to appeal the judgment and refile the Lis Pendens if we do not receive a favorable outcome on the February 9th hearing.
It will create a lot of attorney fees, and we may not be responsible for that if all of this is caused by the town prematurely awarding the bid to Lax Media before the expiration of the redemption period.

Is the town willing to try Mediation? It may save both of us time and money.

I was also thinking about our right to redeem the property if it is still in question. It must be addressed under the

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC<br><br>Debtor | ) | Chapter 7, No. 23-40709 |

**TRUSTEE'S OBJECTION TO: (i) MOTION OF LOLONYON AKOUETE FOR INTERIM DISTRIBUTION (DOCKET #92); AND (ii) REQUEST FOR EXPEDITED DETERMINATION – SUPPLEMENT TO MOTION FOR INTERIM DISTRIBUTION (DOCKET #99)**

NOW comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Trustee ("Trustee") in the above-captioned case, and hereby files this Objection to the Motion for Interim Distribution (Docket #92); and Request for Expedited Determination – Supplement to Motion for Interim Distribution (Docket #99) (collectively "Motion"). In support of this Objection, the Trustee represents that:

1. On August 31, 2023, an Involuntary Petition was filed against Westborough SPE LLC ("Debtor") under the provisions of Chapter 7 of the Bankruptcy Code; subsequently, an Order for Relief was entered on October 11, 2023.

2. On October 12, 2023, JONATHAN R. GOLDSMITH accepted the appointment as Chapter 7 Trustee for the above-entitled estate.

3. The Motion that was filed by Lolonyon Akouete ("Akouete") requests that this Court permit an interim distribution. This Motion should be denied for several reasons, a distribution is premature. The Trustee submits that upon his initial review of the proofs of claims filed to date, there are a few such claims that either lack sufficient documentation to support the particular claim or should be reduced or denied in toto. The Trustee will finalize his review of

the proofs of claims and file appropriate objections upon his addressing the more immediate issue, which is the dispute with the Town of Westborough regarding the tax foreclosure.

4. In support of the Motion, Akouete references the rights of a debtor pursuant to 11 U.S.C. Section 706(a) to convert a case from Chapter 7 to Chapter 11. The Trustee does not believe that this statement has any bearing on the underlying request for interim distribution to creditors. Nonetheless, the Trustee submits that 11 U.S.C. Section 706(a), permits a debtor to request conversion, but **not a creditor**. It appears that Akouete is filing this motion as a purported creditor and not on behalf of the Debtor. If the Motion could somehow be construed as being brought by the Debtor, the Trustee submits that it should be denied/stricken since under Massachusetts law, a LLC must be represented by an attorney in court proceedings. See In re: Dickey v. Inspectional Services Department of Bos., SJC-12613 (Mass. Apr. 11, 2019).

5. In addition to the foregoing, the Trustee notes that the rights of a debtor to convert a case from Chapter 7 to Chapter 11 can be denied by a Court based upon a finding of bad faith. See In re: Angera v. Lasserman (In re Angera), 634 B.R. 658, 660 (D.Mass 2021) (citing In re: Marrama, 313 B.R. 525, 531 (2004), affid Marrama v. Citizens Bank of MA., 549 U.S. 365 (2007)). In the instant case, bad faith can be found since it appears that Akouete and one Denise Edwards ("Edwards") allege to have become managers of the Debtor somehow through the assignment granted to them from the prior manager, Babcock & Brown Parallel Member, LLC ("Babcock & Brown"). However, the individual that apparently acted on behalf of Babcock & Brown had no authority to do so which Akouete and Edwards knew or should have known. Accordingly, they do not have the authority to act on behalf of the Debtor. See the attached State of Delaware Certificate of Correction filed with the Delaware Secretary of State on February 15, 2024, on behalf of Babcock & Brown by Walter A. Horst, who is believed to be its Chief Financial Officer.

WHEREFORE, the Trustee requests the entry of the following Orders:

1. That the Motion for Interim Distribution (Docket #92) be denied;

2. That the Request for Expedited Determination – Supplement to Motion for Interim Distribution (Docket #99) be denied; and

3. For such other and further relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 2/26/24

By: */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

# *Exhibit "A"*

# Delaware

The First State



*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF CORRECTION OF "BABCOCK & BROWN PARALLEL MEMBER LLC", FILED IN THIS OFFICE ON THE FIFTEENTH DAY OF FEBRUARY, A.D. 2024, AT 11:16 O'CLOCK A.M.*

Jeffrey W. Bullock, Secretary of State

4370415 8100
SR# 20240516277

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202816178
Date: 02-15-24

# State of Delaware
# Certificate of Correction
# of a Limited Liability Company
# to be filed pursuant to Section 18-211(a)

1. The name of the Limited Liability Company is: BABCOCK & BROWN PARALLEL MEMBER LLC.

2. That a Certificate of Correction was filed by the Secretary of State of Delaware on June 30, 2023, and that said Certificate requires correction as permitted by Section 18-211 of the Limited Liability Company Act.

3. The inaccuracy or defect of said Certificate is: (must give specific reason)

   1. The Authorized Person who signed the June 30, 2023 Certificate of Correction ceased to be an officer of all affiliates of the Limited Liability Company as of October 1, 2007 and had no signing authority.
   2. The June 30, 2023 Certificate of Correction was not authorized by the Limited Liability Company or it affiliates and was fraudulently filed.

4. The Certificate is hereby corrected to read as follows:

   The Certificate of Correction is hereby rendered null and void, and that certain Certificate of Cancellation of Babcock & Brown Parallel Member LLC, filed with the Secretary of State of Delaware on March 15, 2019, is hereby in full force and effect.

**IN WITNESS WHEREOF**, the undersigned have executed this Certificate on the 13th day of February, A.D. 2024.

By: [signature]
Authorized Person

Name: Walter A. Horst
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 11:16 AM 02/15/2024
FILED 11:16 AM 02/15/2024
SR 20240516277 - File Number 4370415

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
| WESTBOROUGH SPE LLC | ) | |
| Debtor | ) | |

**CERTIFICATE OF SERVICE**

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Response upon those parties listed on the attached Exhibit "A" by electronic mail or by mailing, first class mail, postage prepaid, on this 26th day of February, 2024:

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

David M. Ferris
Ferris Development Group, LLC
118 Turnpike Rd., Ste. 300
Southborough, MA 01772-2133

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Ferris Development Group, LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

Westborough SPE LLC
231 Turnpike Road
Westborough, MA 01581-2807

Scott A. Schlager, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109-2666

Darin Clagg
24 Kobbs Korner Rd
Pine Bush, NY 12566-5302

LOLONYON AKOUETE
ATTN WESTBOROUGH SPE LLC
800 RED MILLS RD
WALLKILL, NY 12589-3220

Allen Hight
The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Richard King, Esq.
Office of US. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608-2361

The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Matthew A. Morris
Sherin and Lodgen, LLP
101 Federal Street, 30th Floor
Boston, MA 02110-2109

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556-1727

Town of Westborough
34 West Main Street
Westborough, MA 01581-1998

Nathanson & Goldberg, P.C.
c/o Stephen F. Gordon, Esq.
The Gordon Law Firm LLP
57 River Street
Wellesley, MA 02481

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798-2002

The MobileStreet Trust
225 Turnpike Road
Westborough, MA 01581-2807

Roger L. Smerage, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Brian Riley, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Jeffrey T. Blake, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| In re: WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S OPPOSITION TO LOLONYON AKOUETE'S MOTIONS FOR INTERIM DISBURSEMENT |
|---|---|

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby opposes the Motion for Interim Distribution (Doc. No. 92) and Request for Expedited Determination – Supplement to Motion for Interim Distribution (Doc. No. 99) filed by Lolonyon Akouete. The Court should deny Mr. Akouete's motions for several reasons:

First, Mr. Akouete improperly filed the motions as both a purported creditor and a purported manager of the Debtor. As an initial matter, Mr. Akouete cannot file anything on behalf of the Debtor, Westborough SPE, LLC, because he is not an attorney. Dickey v. Inspectional Servs. Dep't of Boston, 482 Mass. 1003, 1004 (2019). Beyond this defect, Mr. Akouete lacks authority to act as a manager of Westborough SPE, LLC (the "LLC") for all the reasons set forth in the Town's pending Motion to Dismiss Bankruptcy Case (Doc. No. 69). Indeed, the issues concerning Mr. Akouete's authority to control the LLC are so significant that they warrant dismissal of this bankruptcy proceeding altogether. His repeated attempts to play both a creditor of the LLC and a manager of the LLC should be rejected. By no means should Mr. Akouete be allowed to access the LLC's assets or dictate the Debtor's actions in this bankruptcy proceeding if it proceeds.

Second, Mr. Akouete's motions are intended to interfere with the Town's disposition of the real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). The Property was once owned by the LLC, but title to the Property vested in the Town pursuant to a pre-petition tax title foreclosure judgment. The Town's sole interest in this proceeding relates to the Property, which the Town was prepared to sell to satisfy the outstanding real estate tax obligations under G.L. c. 60 until Mr. Akouete moved to vacate the tax title foreclosure judgment (purportedly on behalf of the Debtor) and, eventually, this bankruptcy proceeding was commenced. Mr. Akouete's on-going motion practice continues to hinder the Town's disposition of the Property, as it impedes resolution of the question of whether the Property is an asset of the bankruptcy estate either by Court order on the Town's motions or by settlement between the Town and the Chapter 7 Trustee.[1] Indeed, to the extent that the Debtor has any rights concerning the Property itself (as opposed to any surplus proceeds of a sale of the Property by the Town), be they through the motion to vacate the tax title foreclosure judgment or a potential claim to avoid the tax title foreclosure judgment pursuant to 11 U.S.C. § 548, those rights are under the Chapter 7 Trustee's control, not Mr. Akouete's. To the extent that the Chapter 7 Trustee needs to retain additional legal counsel to protect the Debtor's rights (as opposed to Mr. Akouete's desire to get paid), the Chapter 7 Trustee is authorized to do so. See 11 U.S.C. § 327. Interim distribution to Mr. Akouete is completely unnecessary to protect the Debtor's rights.

[1] As discussed at length in the Town's Motion for Relief from Automatic Stay, where the LLC's right to redeem the Property expired on January 5, 2022, but this bankruptcy was not commenced until August 31, 2023, the Property is not a part of the bankruptcy estate because the Debtor has no legal or equitable interest in it. See 11 U.S.C. § 541(a)(1) (the "estate is comprised of … all legal or equitable interests of the debtor in property as of the commencement of the case"); see also Tallage Lincoln, LLC v. Williams, 485 Mass. 449, 451-453 (2020) (entry of tax title foreclosure judgment "extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's … tax title into absolute title … free and clear of all encumbrances, including mortgages and other liens").

Third, Mr. Akouete appears to be asking other parties to this proceeding to finance his own legal expenses. Although the Town has no interest in the distribution of the bankruptcy estate's assets so long as the Property remains outside of the estate, Mr. Akouete's motions essentially request that the Court to authorize the estate (and thus the Debtor's creditors) to pay for Mr. Akouete to retain a lawyer for his own benefit, to explore ways that he can get money out of the estate when he has not established that he is entitled to such money, either as a creditor or as a "manager" of the Debtor. Critically, the Debtor's own counsel in the Land Court tax title proceedings has opposed Mr. Akouete's motions. See Doc. No. 109. And, as it relates to the Town, if there is no settlement between the Town and the Debtor, the Debtor's estate will require sufficient cash to pay the outstanding tax obligations to the Town under G.L. c. 60 in the unlikely event that the Debtor's right of redemption is revived, and the Property is pulled into the bankruptcy estate, either through the motion to vacate the tax title foreclosure judgment or an avoidance of that judgment pursuant to 11 U.S.C. § 548.

In summary, Mr. Akouete's motions achieve no benefit for the bankruptcy estate. Rather, assuming that this bankruptcy proceeding is not dismissed in its entirety for the reasons set forth in the Town's motion to dismiss, the estate is best served by allowing the Chapter 7 Trustee to continue administering the estate, including negotiating a settlement of the Debtor's disputes with the Town, and then paying the Debtor's valid creditors in the ordinary course under the Bankruptcy Code. If Mr. Akouete can prove he is such a creditor and is entitled to a portion of the estate as a result, then he can get paid accordingly. But he should not get to dictate the terms of this bankruptcy to the prejudice of the Town or the Debtor's valid creditors. Notably, Mr. Akouete consented to the involuntary initiation of this Chapter 7 proceeding and even asked the Court to expedite the appointment of a Chapter 7 trustee. See Doc. Nos. 5, 10. He should not be allowed

to reverse course now that he realizes that the Chapter 7 Trustee is acting in the best interests of the Debtor, rather than Mr. Akouete himself personally.

For the foregoing reasons, the Court should deny Mr. Akouete's pending motions.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: February 29, 2024

906789/WBOR/0049

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Opposition to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor* (by U.S. mail)

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor* (by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor* (by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor* (by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor* (by email)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust* (by email)

Dated: February 29, 2024

Roger L. Smerage

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| In re: Westborough SPE LLC, Debtor | Chapter 7<br>23-40709-CJP |
|---|---|

# ORDER

**MATTER:**
#92 Motion by Lolonyon Akouete for Interim Distribution and
#99 Request by Lolonyon Akouete for Expedited Determination.

REQUEST FOR EXPEDITED DETERMINATION [DKT. NO. 99] OF THE MOTION FOR INTERIM DISTRIBUTION FILED BY LOLONYON AKOUETE [DKT. NO. 92] (THE "INTERIM DISTRIBUTION MOTION") IS DENIED. UPON CONSIDERATION OF THE INTERIM DISTRIBUTION MOTION, THE OBJECTIONS OF THE CHAPTER 7 TRUSTEE [DKT. NO. 107], THE PETITIONING CREDITORS [DKT. NO. 109], AND THE TOWN OF WESTBOROUGH [DKT. NO. 113], AND THE REPLIESOF MR. AKOUETE [DKT. NOS. 108 AND 112], THE INTERIM DISTRIBUTION MOTION IS DENIED AS PREMATURE.

Dated: 03/19/2024

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC,<br><br>Debtor. | Chapter 7<br>Case No. 23-40709-CJP |

MOTION FOR COURT INTERVENTION REGARDING CONTINUATIONS AND TO INVESTIGATE POSSIBLE COLLUSIVE TRANSACTIONS RELATED TO THE SALE OF DEBTOR PROPERTY

Now comes Lolonyon Akouete, creditor in the above-captioned case, and respectfully requests that this Honorable Court intervene concerning the repeated continuations requested by the Trustee, Jonathan R. Goldsmith, and the Town of Westborough, a secured creditor. The Movant suspects these continuations have been used to delay proceedings detrimentally and potentially collusively, specifically regarding the debtor's property located at 231 Turnpike Rd, Westborough, MA 01581.

## I. BACKGROUND

1. **Property Sale Concerns**:
   - The property involved, located at 231 Turnpike Rd, Westborough, MA 01581, is central to the ongoing bankruptcy proceedings. This property has become a focal point of disputes and questionable transactions.
   - The Town of Westborough intends to sell the property to Lax Media for $2,500,001 despite the trustee's acceptance of a higher offer from Ferris Development Group, LLC for $2.8 million, which can close within 14 days.
   - Lax Media had previously offered $5 million for the same property, suggesting a significant undervaluation in the new offer, indicative of potential collusion.
2. **Continuations and Transparency Issues**:
   - Specific dates when these continuations were requested include:
     - Initially scheduled for October 25, 2023, continued to November 29, 2023.
     - Continued again to December 21, 2023, and further to February 13, 2024.
     - Most recently, continued to June 4, 2024.
   - These continuations total approximately 7.4 months and raise concerns about transparency, particularly as settlement discussions remain secretive, potentially disadvantaging other creditors.
3. **Implications of Delay**:
   - While final settlement and the sale of the property will require court approval and provide an opportunity for creditors to object, the ongoing delay tactics result in wasted time and resources that cannot be recuperated. This unnecessary delay may serve the interests of specific parties at the expense of the estate's ability to maximize returns for all creditors.

## II. LEGAL GROUNDS FOR MOTION

1. **Bankruptcy Code Provisions**:
    - **11 U.S.C. § 363(b)** permits the trustee to use, sell, or lease property of the estate after notice and a hearing. The code requires such transactions to maximize the value of the estate and ensure fairness.
    - **11 U.S.C. § 548(a)** pertains to fraudulent transfers and obligations, providing grounds to avoid transactions made with the intent to hinder, delay, or defraud creditors.
    - **11 U.S.C. § 704(a)(1)** mandates the trustee to collect and reduce to money the property of the estate for which the trustee serves, and to close the estate as expeditiously as is compatible with the best interests of parties in interest.
2. **Request for Investigation**:
    - Given the suspicious nature of the sale process and the significant delay in proceedings, there is substantial basis to suspect collusive behavior intended to facilitate the sale below the property's market value.

## III. RELIEF REQUESTED

Movant respectfully requests the Court to:

1. **Order an immediate investigation** into all sale processes and negotiations related to 231 Turnpike Rd.
2. **Prevent any further continuations** of related hearings unless justified transparently in court.
3. **Appoint an independent examiner** to review the trustee's and the Town's actions regarding this property sale.
4. **Enforce transparency** in all settlement negotiations and sale processes to protect the interests of the estate and its creditors.
5. **Grant such other and further relief** as the Court deems just and proper.

## IV. CONCLUSION

For the reasons stated herein, Movant believes that the handling of 231 Turnpike Rd and the associated legal continuations may not be in the best interest of all parties involved and suggests improper conduct. Immediate court intervention is necessary to ensure the integrity of the bankruptcy process and to protect the rights of all creditors.

DATED: April 29, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

telegram.com | TELEGRAM & GAZETTE

EAST/VALLEY

# Westboro accepts $5M bid for cinema

**Elaine Thompson** elaine.thompson@telegram.com

Published 5:00 p.m. ET Nov. 28, 2018 | **Updated 4:55 a.m. ET Nov. 29, 2018**

WESTBORO – The Board of Selectmen has accepted a $5 million bid from a Walpole-based media corporation to purchase and operate a cinema at the long-vacant Regal Cinemas building on Route 9.

LAX Media LLC, which operates Apple Cinemas in Cambridge, and Waterbury and Barkhamsted, Connecticut, submitted the high bid of $5,005,005. Two other bids that included maintaining a movie theater on the property came from Grossman Development of Southboro for $4 million; and $3.1 million from Florida-based Cinema World of Florida, which operates Lincoln Mall 16 & Cinema World & Games in Lincoln, Rhode Island. The fourth and lowest bid, at $2.5 million, came from Black Socks Corp., based in Marlboro, which proposed building a regional grocery store on the site.

Selectmen held a short meeting Nov. 20 to award the bid to LAX Media. Chairman Leigh Emery said it offered the most advantageous economic benefit to the town.

The bid "is a million dollars over the nearest other proposal; it is above the appraised value; it closes 30-60 days earlier," Ms. Emery said. "It's a business model that we think fits best with our strategic planning that the Board of Selectmen has worked out the past six months or so and voted as a plan for moving forward for keeping our community a family-friendly town with recreation activities available for all age groups in an affordable fashion."

The 12-screen theater was the only cinema in town. It was built in 1997, on a 29-acre parcel at 231 Turnpike Rd. (Route 9) in Stagecoach Plaza. The theater abruptly closed its doors last fall, less than a month before the 20-year lease was to expire. The property is appraised at $4.79 million.

The town, however, has been unable to find the owner. The original landlord, Westboro SPE LLC, registered in Delaware, administratively dissolved and withdrew its registration

to do business in Massachusetts in 2007. The limited liability company was an entity created by Babcock & Brown, an Australian company that went out of business in 2009. Westboro SPE's purchase loan on the property from U.S. Bank was satisfied around the time of the theater closing. The bank has said it does not have contact information for the landlord.

James Malloy, the former town manager who left in October to become town manager in Lexington, said the town will have to hold on to the money from the new owner for three years in case a claim is filed against the town. But he said that would not stop the selling and development of the property.

The new owner did not reply to an email asking about plans for renovations and when the cinema will open.

**Westborough MA**
**Contract: RFP 22-0080**
**Sale of 231 Turnpike Road, Westborough**

# Addendum 2

Ques 1: Is the town selling the fee simple interest?
Ans: **No**

Ques 2: If not how long until the previous owners right of redemption expires via tax title?
Ans: **1/5/2023 – one year from foreclosure.**

Ques 3: What was the tax title amount?
Ans: **$391,541.93 (includes EverSource bills)**

Ques 4**:** Do you know what the ceiling height of the building is? Also, what is the column spacing? Do you have a floor plan of the building?
Ans: The Building Commissioner has responded that old building permits can be found on the following link and searching under 231 Turnpike Rd* https://portal.laserfiche.com/Portal/Welcome.aspx?repo=r-6c8eaee8

**End of Addendum 2**

**Westborough MA**
**RFP 22-0080**
**Sale of Property at 231 Turnpike Rd**

# Addendum 4

**Questions and answers from the Site Visit and Pre-Bid Conference on June 16, 2022**

Ques 1: What is the timeline for Proposal evaluation?

Ans 1: There is no set time limit for evaluations but the Town would like to dispose the property as soon as possible.

Ques 2. If this project is redeveloped, will the build permits be grandfathered in as far as conservation commission?

Ans 2: This site has special comprehensive Permit coverage and existing limits will be sustained provided that any redevelopment is within the latitude of the existing comprehensive permit. Redevelopment of the site may require a Notice of Intent or other wetland permitting. All proposed development will need to meet today's standards for the Wetlands Protection Act and the local By-law. However, existing the limits of the developed property are grandfathered with regard to wetlands.

Ques 3. Comprehensive special Permit is for the whole area?

Ans: Yes it is for the whole area.

Ques 4. Do I need a special permit if I want to operate as a Cinema?

Ans: No special permit is not needed for same use. Just building permits and an occupancy permit.

Ques 5. Will the closing happen after the redemption period expires?

Ans: The Town is willing to consider closing on the property after the redemption period has expired, provided the closing occurs no later than January 30, 2023, and, further, that the Town may give preference to proposers who are willing to close on the property prior to the expiration of the redemption period.

Ques 6. What is the Select Board's preference for the use of the property?

Ans: Bidders should refer to the RFP evaluative criteria. These were discussed by the Board in several meetings.

Ques 7. Who is responsible for expenses until closing?

Ans: The Town of Westborough is responsible for costs associated with the Property until the Property is conveyed to the successful proposer at the closing.

Ques8. Any Liens on the Property?

Ans: No, there are no known liens on this property

Ques 9: Does current zoning allow use of property as Sports facility?

Ans: Yes, it should be allowed. We will have to look at your proposal and review current permitting.

Ques 10. How can I get building plans of the property?

Ans: Please review Addendum 2 on Bidnet. You can use the link in addendum 3 to access building plans for Regal Cinema.

Ques 11. Has Bankruptcy of former owner been reviewed?

Ans: No, it has not been reviewed but historically, parties related to the ownership and bankruptcy have indicated no ownership interest in the property.

Ques 12. Did Eversource have a lien on this property?

Ans: Town had to pay the utilities expenses to Everesource but there was no lien. There are no liens currently on this property to the best of our knowledge.

**End of Addendum 4**

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S OPPOSITION TO LOLONYON AKOUETE'S MOTION FOR COURT INTERVENTION |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby opposes the Motion for Court Intervention Regarding Continuations and to Investigate Possible Collusive Transactions Related to the Sale of Debtor Property (Doc. No. 135) filed by Lolonyon Akouete. Mr. Akouete's motion is the latest in a string of motions (and other filings) that serve no purpose other than to vexatiously multiply these proceedings, when other parties are working to narrow or resolve the issues raised in this bankruptcy matter. Indeed, Mr. Akouete's motion goes so far to call the Court's case management into doubt, when the Court itself has recognized the benefits to the Debtor and creditors alike in resolving disputes through settlement rather than litigation. As detailed below, to the extent that Mr. Akouete's has concerns about the settlement that is being negotiated and will shortly result in the Chapter 7 Trustee filing a motion for approval pursuant to Fed. R. Bankr. P. 9019(a), Mr. Akouete will have the opportunity to present any objections he may have to such settlement to the Court through the Rule 9019(a) approval process, assuming he has standing to do so. His pending motion's request for Court intervention prior to that approval process is improper and unwarranted.[1]

[1] On May 9, 2024, Mr. Akouete filed an additional "Motion Requesting Response to Previously Filed Motions and Concerns Over Proposed Settlement" (Doc. No. 149), which the Court denied on May 13, 2024. See Doc. No. 152.

Case 24-40158 Doc 11-3 Filed 02/14/24 ... Page 36 of 49

## Brief Background[2]

In 1997, the entity Westborough SPE LLC (the "LLC") acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). On December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, as a result of unpaid FY2018 taxes in the amount of $106,944.99. The Town commenced a tax title foreclosure action in the Massachusetts Land Court (the "Tax Foreclosure Action") on July 8, 2019, to foreclose the LLC's right of redemption. On January 5, 2022, the Land Court entered judgment in favor of the Town and against the LLC.[3]

On May 26, 2022, the Town issued a request for proposals for the purchase and redevelopment of the Property pursuant to G.L. c. 30B. The Town received three proposals, from Lax Media ("Lax"), Ferris Development Group ("Ferris"), and Pulte Homes of New England ("Pulte"). Pulte's proposal was dismissed because it depended upon water/sewer connections that are not available at the Property. The Town's Select Board then selected Lax's proposal over Ferris's after applying the rubric contemplated by the request for proposals. Subsequently, Ferris filed suit in Massachusetts Superior Court against the Town and Lax challenging the Town's selection of Lax's proposal and seeking damages (the "30B Action").

On January 4, 2023—one day short of the first year anniversary of the issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (see G.L. c. 60, § 69)—Mr. Akouete filed a motion with the Land Court to vacate the judgment

---

[2] This brief background is not an extensive recitation of material facts, many of which are in dispute as between the Debtor/Trustee, the Town, and various creditors. Rather, this brief background simply presents a recitation of the timeline leading up to this point in the proceedings.

[3] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in Tyler v. Hennepin County, 598 U.S. 631 (2023).

purportedly on behalf of the Debtor. The Town opposed Mr. Akouete's motion, which was eventually set for a scheduling conference on August 31, 2023.

On that day, the Debtor, represented by Nathanson & Goldberg, P.C. ("N&G")—which had also begun representing the LLC in the Tax Foreclosure Action and taken over prosecution of Mr. Akouete's motion to vacate—filed a civil action against the Town in U.S. District Court for the District of Massachusetts, alleging that the Town's tax taking and subsequent attempt to sell the Property pursuant to G.L. c. 30B was an unconstitutional taking in violation of 28 U.S.C. § 1983 (the "Federal Action").

N&G and The MobileStreet Trust ("MobileStreet") also filed an involuntary Chapter 7 petition against the Debtor on August 31, 2023, commencing these proceedings. A few days later, Mr. Akouete—purportedly as "the manager" of the LLC/Debtor—answered indicating that there was no objection to the petition. See Doc. No. 5. The Court subsequently entered an order of relief and appointed the Trustee. See Doc. Nos. 26, 29.

On October 3, 2023, the Town filed a motion for relief from the automatic stay to allow the Tax Foreclosure Action to proceed. See Doc. No. 20. On November 30, 2023, the Court held a nonevidentiary hearing on the Town's motion for relief,[4] during which the Court inquired of the prospects of settlement in light of the possibility that the Trustee would either remove the Tax Foreclosure Action, file a claim against the Town under 11 U.S.C. § 548(a), or both, and the Court further continued the hearing until December 21, 2023. See Doc. No. 56. The Trustee and the Town commenced discussions about a potential settlement shortly thereafter. As such, on December 15, 2023, the Trustee and the Town moved to extend the continuance of the hearing for

[4] The hearing was originally scheduled for October 25, 2023, but the Court continued the hearing upon the Trustee's request (assented to by the Town) to provide the Trustee time to conduct the 11 U.S.C. § 341 meeting and to analyze the dispute between the Town and the Debtor. See Doc. Nos. 45-46.

an additional 45 days, until no earlier than February 5, 2024. See Doc. No. 57. Over Mr. Akouete's opposition, the Court granted the motion and continued the hearing until February 13, 2024. See Doc. No. 60.

On January 16, 2024, the Town filed a motion to dismiss the bankruptcy pursuant to 11 U.S.C. § 707(a). See Doc. No. 69. The next day, the Trustee removed the Tax Foreclosure Action (which became Adversary Proceeding No. 24-04006). See Doc. No. 74. On February 7, 2024, the Town moved to remand the Tax Foreclosure Action. See Doc. No. 83.[5] These motions and matters were added to the agenda for the February 13, 2024 hearing. See Doc. Nos. 71, 79. On February 7, 2024, the Trustee filed an opposition to the Town's motion to dismiss, as did petitioning creditors N&G and MobileStreet. See Doc. Nos. 85-87.

Settlement discussions between the Town and the Trustee continued, notwithstanding the additional filings. On or about February 8, 2024, a proposal as to which both the Town and the Trustee could potentially agree emerged, as reflected in the joint status report filed with the Court in advance of the February 13, 2024 hearing. See Doc. No. 89. The Court converted that hearing to a status conference, at which the Trustee reported on the progress of the settlement proposal, and continued the conference to March 19, 2024. See Doc. No. 98.

The settlement proposal eventually contemplated the potential resolution of the disputes involving and/or claims of Lax, Ferris, N&G, and MobileStreet, such that the negotiations took on a multi-party nature. On March 15, 2024, the proposal became sufficiently concrete that a settlement agreement was drafted and circulated. A few days later, on March 19, 2024, the Court resumed the status conference on pending matters, heard the Trustee's update that the settlement

[5] The Trustee's Notice of Removal and the Town's Motion to Remand were subsequently re-docketed in the adversary proceeding. See No. 24-04006 Doc. Nos. 1-2

agreement had been drafted and circulated, and continued the status conference to April 23, 2024. See Doc. No. 116.[6]

Over the subsequent weeks, counsel for the potentially settling parties worked diligently to come to agreement on certain terms, several of which concerned the manner and timing for disposition of the Property. On April 23, 2024, the Court reconvened the status conference, heard the Trustee's report that the settlement agreement was close to being finalized, and continued the status conference until June 4, 2024, with the understanding that such date would be extended to the hearing date for any motion for approval of settlement filed prior to June 4, 2024. See Doc. No. 129.

The potentially settling parties continued their work to iron out any issues with the settlement agreement after the April 23, 2024 status conference. Subject to final approval of the Town's Select Board, the settling parties have resolved all issues and arrived at a final form of settlement agreement. Assuming the Town's Select Board votes to approve that form of the agreement, the settling parties anticipate that the Trustee will file a motion for approval of the settlement pursuant to Rule 9019(a) prior to the June 4, 2024 status conference.

## Argument

Compromises such as the one that the Trustee, the Town, Lax, Ferris, N&G, and MobileStreet have been working on over the past several months "are favored in bankruptcy." Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 n.5 (1st Cir. 1998). Once finalized, the settlement will resolve three separate litigation actions, namely the Tax Foreclosure Action, the 30B Action, and the Federal Action. It will also resolve several disputes,

[6] At the March 19, 2024 status conference, Mr. Akouete objected to further continuance for various reasons, including that the Town had not filed a proof of claim. On the same day, however, immediately prior to the status conference, the Court had granted the Town's motion to extend its proof of claim deadline in light of the disputed status of the Property, which the Town contends is not an asset of the bankruptcy estate. See Doc. No. 115.

both pending and threatened, in this bankruptcy proceeding and the adversary proceedings under it. These include the Town's motion for relief from the automatic stay, the Town's motion to dismiss pursuant to 11 U.S.C. § 707(a), the Town's motion to remand the Tax Foreclosure Action, and the Trustee's potential claims against the Town pursuant to 11 U.S.C. § 548(a) on behalf of the Debtor.

Nothing about this settlement process requires Court intervention until the Trustee files the motion for approval pursuant to Rule 9019(a). While Mr. Akouete purports to raise issues that disposition of the Property through the settlement may not adhere to G.L. c. 30B, § 16, this is a red herring. The Town attempted to dispose of the Property pursuant to Chapter 30B and Mr. Akouete's actions in the Tax Foreclosure Action interfered with such disposition. Now, the Town and other settling parties are on the verge of executing a settlement that respects the Town's Chapter 30B process while also resolving the various disputes that have arisen out of the disposition of the Property. This includes delivering the surplus sales proceeds to the bankruptcy estate to aid in the satisfaction of valid creditor claims and, if funds remain after all approved creditor claims are paid, distribution back to the LLC's member(s). If Mr. Akouete can substantiate his proof of claim, he stands to benefit from the settlement, too, for this reason. And if Mr. Akouete feels that he does not benefit from the settlement once it is submitted for Court approval pursuant to Rule 9019(a), he can object (assuming he has standing) and the Court will decide whether Mr. Akouete's objections outweigh the benefits of the settlement. See Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1140 n.5 (1st Cir. 1992) ("Although a creditor has the right to object to a proposed compromise, objection will not preclude court approval.").

To the extent that Mr. Akouete objects to the continuances that the Court has granted to allow the settling parties time to negotiate the settlement, such objection is misplaced. The Court

has the authority to manage its docket as it sees fit. See In re Colon Martinez, 472 B.R. 137, 145 (1st Cir. B.A.P. 2012) ("it is well established that courts have inherent authority to manage their dockets" (quotations omitted)); Birch v. Choinski (In re Choinski), 214 B.R. 515, 518 (1st Cir. B.A.P. 1997) ("Litigation management decisions fall within the ambit of the [bankruptcy] court's broad discretionary powers."). As the Court explained at the March 19, 2024 status conference, there is no reason to require the parties to ramp up their litigation efforts (by proceeding with the various motions that are pending and the potential claims that have been discussed) when a settlement is possible and being actively negotiated.

Mr. Akouete's contentions that "ongoing delay tactics result in wasted time and resources that cannot be recuperated" and that "[t]his unnecessary delay may serve the interests of specific parties at the expense of the estate's ability to maximize returns for all creditors" are entirely unsupported. Mr. Akouete identifies no "delay tactics" or "resources that cannot be recuperated." This is unsurprising, as the settling parties have been working diligently over the past few months to negotiate the terms and structure of a complex (yet beneficial) multi-party settlement agreement. Given the disparate interests of all the parties involved in the settlement (including the Debtor's estate as represented by the Trustee), such negotiations necessarily take time. This is particularly so where one of the parties is a municipality which acts on legal matters through its Select Board, which is subject to the Massachusetts Open Meeting Law's requirements regarding meeting postings and deliberations. See G.L. c. 30A, §§ 18-25.[7] Yet, during this time, the Court has promptly acted upon Mr. Akouete's various filings, whether for clarification of the Trustee's management of estate assets, interim distribution of such assets, or relief from the automatic stay.

[7] The Select Board may meet in executive session, but still subject to posting requirements, "[t]o discuss strategy with respect to … litigation if an open meeting may have a detrimental effect on the bargaining or litigating position of the public body and the chair so declares." G.L. c. 30A, § 21(a)(3).

See Doc. Nos. 106 (denying motion for expedited clarification), 114 (denying motion for interim distribution), 139 (setting motion for relief for May 16, 2024 hearing). As such, Mr. Akouete cannot claim any prejudice from the Court's management of this bankruptcy proceeding.

Thus, there is no reason for the Court to intervene in the settlement process. The Rule 9019(a) approval proceedings will commence shortly and the Court will review the settlement and all objections thereto through those proceedings. The Court will "assess and balance the value of the claim[s] that [are] being compromised against the value to the estate of the acceptance of the compromise proposal." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). If the value of compromise to the estate outweighs the value of the claims themselves in the Court's view, the Court may approve the settlement. See id.;[8] see also Kowal, 965 F.2d at 1140 n.5, 1145-1146 (Chapter 7 Trustee must determine that settlement is in the best interests of the estate). The Court should let that process proceed, rather than intervene in the settlement negotiations as Mr. Akouete requests. Such interference could hinder the process and potentially jeopardize the settlement before it is even presented for Rule 9019(a) approval. Given the significant disputes that the settlement is designed to resolve, including whether this bankruptcy should be dismissed pursuant to 11 U.S.C. § 707(a), any actions that jeopardize the settlement are by their very nature **not** in the Debtor's best interests, much less those of the other parties to the settlement.

**Conclusion**

For the foregoing reasons, the Court should deny Mr. Akouete's motion.

[8] "The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." Id.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: May 14, 2024

919821/WBOR/0049

<u>CERTIFICATE OF SERVICE</u>

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Opposition to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor* (by U.S. mail)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust* (by email)

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor* (by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor* (by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor* (by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor* (by email)

Dated: May 14, 2024

Roger L. Smerage

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709-CJP |
| WESTBOROUGH SPE LLC | ) | |
| Debtor | ) | |

**TRUSTEE'S OPPOSITION TO THE MOTION OF LOLONYON AKOUETE FOR COURT INTERVENTION REGARDING CONTINUATIONS AND TO INVESTIGATE POSSIBLE COLLUSIVE TRANSACTIONS RELATED TO THE SALE OF DEBTOR PROPERTY (DOCKET #135)**

NOW comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Trustee ("Trustee") in the above-captioned case, and Objects to the Motion of Lolonyon Akouete for Court Intervention Regarding Continuations and to Investigate Possible Collusive Transactions Related to the Sale of Debtor Property ("Motion"). In support of this Opposition, the Trustee states that:

1. The Motion of Lolonyon Akouete ("Akouete") is just another attempt by him to try and force the Trustee to capitulate to Akouete's unreasonable and self-serving demands and directives as to how the case should be administered by the Trustee. In this attempt to thwart the Trustee from complying with his duties and responsibilities including those under 11 U.S.C. §704(a), Akouete continues to make defamatory and groundless allegations of inappropriate actions on the part of the Trustee.

2. As noted in prior responses of the Trustee filed to other pleadings in this case, there is a legitimate question as to whether Akouete has legal authority to act on behalf of the Debtor. This issue also raises questions as to the validity of his claim in the case where he asserts that he is owed funds for services rendered as manager of the Debtor as well as for some sort of undocumented finder's fee.

3. The Trustee further submits that a settlement agreement ("Settlement") resolving the

disputes surrounding the subject property (231 Turnpike Road, Westborough, Massachusetts) is expected to be finalized within the next few days. Thereafter, the Trustee will file a motion under Fed. R. Bankr. P. 9019(a) seeking Court approval of the Settlement. At that point, parties in interest with standing to object to the Settlement can certainly do so if they deem it warranted. The Trustee notes that the Settlement is global in nature and will be executed by parties in interest, namely: the Trustee, the Town of Westborough, Lax Media LLC, Lax Media MA LLC, Ferris Development Group LLC, Nathanson & Goldberg, P.C. and The Mobilestreet Trust.

4. The Trustee further submits that upon approval of the Settlement and sale of the subject property, there will likely be sufficient funds to pay all allowed creditor claims in full as well as provide surplus funds to the member(s) of the Debtor.

5. Finally, the Trustee reserves the right to request that the Court issue sanctions against Akouete for his baseless assertions contained in the Motion.

WHEREFORE, the Trustee requests that:

1. Akouete's Motion for Court Intervention Regarding Continuations and to Investigate Possible Collusive Transactions Related to the Sale of Debtor Property be denied; and

2. For such other relief that is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 5/14/24

By: */s/ Jonathan R. Goldsmith, Esq.*

JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |

MOTION FOR INTERIM DISTRIBUTION AND REQUEST FOR EXPEDITED DETERMINATION

**Dear Honorable Christopher J. Panos:**

I, Lolonyon Akouete, a creditor in the above-referenced bankruptcy case, respectfully submit this Motion for Interim Distribution pursuant to FRBP 3009 and request an expedited determination for the reasons detailed herein.

**Background:**

On August 31, 2023, Petitioning Creditors Nathanson & Goldberg, P.C. and MobileStreet Trust commenced this involuntary Chapter 7 bankruptcy proceeding against the Debtor. Subsequently, on October 11, 2023, an Order for Relief under Chapter 7 of the Bankruptcy Code was entered regarding Westborough SPE LLC (the "Debtor"). The next day, October 12, 2023, Jonathan Goldsmith was duly appointed as the Chapter 7 Trustee for the Debtor's bankruptcy estate. A Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines was filed by the Clerk on the same day, requiring all claims to be filed by January 9, 2024. The claims bar date has passed, and seven unsecured claims have been filed. On February 8, 2024, the Trustee confirmed receipt of $1,293,646.83 in unclaimed funds from California. The estate currently holds these funds on deposit, with reasonable expectations of further recovery from the sale of the 231 Turnpike Road property.

**History of Filings:**

The procedural history of this case includes several significant filings: my initial Motion for Interim Distribution on February 11, 2024 (Doc #92), followed by a Request for Expedited Determination on February 14, 2024 (Doc #99). Trustee Jonathan R. Goldsmith filed an Objection on February 26, 2024 (Doc #107), to which I responded on February 27, 2024 (Doc #108). Additionally, Petitioning Creditor Nathanson & Goldberg, P.C. filed a response on February 27, 2024 (Doc #109), which I addressed in a subsequent reply (Doc #112). The Town of Westborough filed an opposition on February 29, 2024 (Doc #113). Finally, on March 19, 2024, the Court denied my motion as premature (Doc #114).

**Request for Relief:**

It is crucial to emphasize that the bankruptcy estate has been open for over nine months, and more than five months have elapsed since the deadline for filing proofs of claim. This significant passage

of time highlights that an interim distribution is no longer premature. The funds currently available in the estate, totaling over $1.29 million, combined with the anticipated proceeds from the sale of the 231 Turnpike Road property, provide ample liquidity to support an interim distribution. The real delay in this case stems from the settlement proposal that the Town of Westborough and the Trustee have been negotiating for over seven months. This settlement proposal involves key parties such as LAX Media, Nathanson and Goldberg, Mobile Street Trust, Ferris Development Group, the Town of Westborough, the Chapter 7 Trustee, and the debtor.

The primary term of the settlement is the sale of the property at 231 Turnpike Road to either LAX Media or Ferris Development, with a structured financial distribution from the sale proceeds. Initially, the Town of Westborough will sell the property to LAX Media for $2,500,000.01. Should LAX Media fail to complete the purchase within 120 days, the trustee will have the right to sell the property to Ferris Development for $2,875,000. Ferris Development will then have 30 days to close the purchase. If neither LAX Media nor Ferris Development completes the purchase, the trustee will initiate a 363 sale, which involves selling the property free of liens under court oversight to ensure that a fair market value is obtained. This process, considering the various contingencies and required steps, is likely to be prolonged.

The financial distribution from the sale proceeds is also clearly outlined. The Town of Westborough will receive a fixed amount of $1,165,000. The remaining proceeds will go to the bankruptcy estate to settle outstanding claims and debts. As part of the settlement, if LAX Media is the successful buyer, Ferris Development will receive $100,000 to cover its fees and expenses related to its initial bid. This compensation will come from the estate's portion of the sale proceeds. However, if Ferris Development ultimately purchases the property, they waive their right to this $100,000 fee.

The settlement also includes the dismissal of all pending state court actions, including lawsuits filed by the debtor and Ferris Development against the Town of Westborough. Additionally, full releases will be provided to all parties involved, effectively resolving ongoing disputes. The funds from the property sale, combined with other assets held by the trustee, will be used to pay all claims filed in the bankruptcy estate. There are contested claims that the trustee plans to object to, such as a claim from the adjacent property holder, Mobile Street Trust, which was amended from $300,000 to $700,000. An agreement was reached to settle this claim closer to the $300,000 figure. Other claims, including those from petitioning creditors, will also be reviewed and settled accordingly.

During the hearing, there was a discussion about procedural issues regarding the transfer of the property title from the town to the estate. It was emphasized that an intermediate step is necessary to ensure the estate can legally transfer the property to Ferris Development if LAX Media fails to close. The trustee and the town need to finalize these procedural details to avoid additional 363 processes. The court expressed the need to see all the terms of the settlement in writing and consider any objections that might be filed. The settlement needs to be structured appropriately to ensure the estate can legally transfer the property. The parties are expected to finalize and sign the settlement agreement quickly, with the trustee filing a motion for approval. A continued status conference is scheduled for July 25th to review the final settlement agreement and address any outstanding issues or objections.

Given the complexity and duration of these negotiations, it is clear that the settlement proposal will take a significant amount of time to resolve fully. The settlement should not hold up all creditors indefinitely. It should only affect those who are part of it, especially when the bankruptcy estate has sufficient funds to pay creditors who are not included in the settlement. The Trustee should be

ordered to evaluate the claims of creditors who are not part of the settlement and make payments based on the available funds in the bankruptcy estate.

**Exhibit: 1 Trustee's Supplemental Objection**

Attached as an exhibit to this motion is a copy of the Trustee's Supplemental Objection to the Town of Westborough's Motion for Relief from Automatic Stay and Opposition to the Appointment of a Bankruptcy Trustee. This document illustrates how the Trustee has accepted an offer from Ferris Development Group, LLC to purchase the property at 231 Turnpike Road for $2,875,000. However, the settlement negotiations have derailed the proper and normal administration of the bankruptcy estate. This might be because the Town has unduly influenced the Trustee; otherwise, the settlement proposal does not make any sense. The attached exhibit demonstrates that a sale pursuant to 11 U.S.C. § 363 will expedite payment to the Town and the creditors of the bankruptcy estate. This ongoing delay due to settlement negotiations emphasizes the need for interim distributions to creditors who are not part of the settlement.

**Legal Support:**

Interim distributions are supported by several legal principles and case law. According to 11 U.S.C. § 704(a)(1), the trustee is required to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." Additionally, 11 U.S.C. § 105(a) grants the bankruptcy court broad equitable powers to issue any order, process, or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code. The timely distribution of funds during the bankruptcy process is essential to ensure that creditors receive their payments promptly and to avoid unnecessary delays in managing the bankruptcy estate. This practice promotes efficient estate administration and provides immediate relief to creditors, especially in cases where settlement negotiations are expected to prolong the final resolution. Interim distributions play a crucial role in addressing the financial obligations of creditors not included in the settlement, ensuring that they receive timely payments and preventing delays in estate administration.

Additionally, I would like to reference the U.S. Department of Justice memorandum dated January 16, 2015, from William K. Harrington, United States Trustee for Region 2, which underscores the importance of interim distributions. The memorandum states that interim distributions can benefit creditors by providing them with partial payment on their claims without waiting until the case is fully administered. It also mentions that interim distributions reduce the costs associated with maintaining estate funds in an approved depository. The memorandum sets forth guidelines for interim distributions, emphasizing that trustees should consider the anticipated time frame for case closing, reasons why the trustee cannot presently file a final report, and the distribution to unsecured creditors. **See Exhibit: 2**

**Conclusion:**

Interim distributions in this case are necessary to address the critical financial obligations of the Debtor and to provide some relief to creditors. The prolonged duration since the opening of the bankruptcy estate and the closing of the claims bar date underscore that this motion is timely and justified. The funds currently available in the estate, along with the potential for further recovery, warrant the proposed interim distribution plan. Additionally, the ongoing settlement negotiations, which are likely to take an extended period to resolve, should not prevent the distribution to creditors who are not part of the settlement.

WHEREFORE, I respectfully request that this Honorable Court enter an order granting the Motion for Interim Distribution, directing the Trustee to evaluate and pay the claims of creditors who are not part of the settlement, and for such other and further relief as the Court deems just and proper. An expedited determination is requested due to the urgency of the Debtor's financial obligations and the need for timely resolution.

DATED: June 18, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

ECHIBIT 1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
| WESTBOROUGH SPE LLC | ) | |
| Debtor | ) | |

**TRUSTEE'S SUPPLEMENTAL OBJECTION TO TOWN OF WESTBOROUGH'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND OPPOSTION TO THE APPOINTMENT OF A BANKRUPTCY TRUSTEE**

NOW comes JONATHAN R. GOLDSMITH, the duly appointed and acting Trustee ("Trustee"), and hereby submits this Supplemental Objection to the Town of Westborough's Motion for Relief from the Automatic Stay and Opposition to Appointment of a Bankruptcy Trustee[1] (the "Motion").

As a preliminary matter, the Trustee submits that he has now received an offer ("Offer") from Ferris Development Group, LLC ("Ferris") to purchase the subject property at 231 Turnpike Road, Westborough, Massachusetts ("Property") for the sum of Two Millon Eight Hundred and Seventy-Five Thousand Dollars ($2,875,000.00), which the Trustee has accepted, subject to Bankruptcy Court approval on a Motion to Sell and the contingencies noted therein. A copy of the Offer is attached hereto as Exhibit "A".

A sale of the Property to Ferris will, upon information and belief, be sufficient to pay all outstanding taxes and costs owed to the Town of Westborough ("Town") and also provide funds to distribute a dividend (possibly payment in full) to all scheduled creditors of the bankruptcy case. The Trustee also submits that a sale pursuant to 11 U.S.C. §363 will expedite payment to the Town and the creditors of the Bankruptcy Estate.

[1] The Trustee does not respond to the portion of the Motion for Relief from Stay in Opposition to the Appointment of a Bankruptcy Trustee, as the Trustee deems this issue moot.

In the event that the Trustee is unable to obtain an order on a stipulation of the parties vacating the Judgment issued by the Land Court in the case of *Town of Westborough v. Westborough SPE, LLC, et al* (Mass. Land Ct. No. 19 TL 000768), then it is the intent of the Trustee to file a notice of removal of the said Land Court action to Federal Court pursuant to Federal Rule of Bankruptcy Procedure 9027, which provides, inter alia, that the Trustee has until 90 days after the Order for Relief was entered in the case to file said notice. The Order for Relief was filed on October 11, 2023.

In light of the foregoing, the Trustee requests that the Motion be denied. In further support of his Objection, the Trustee responds to each and every allegations set forth in the Motion. For ease in reviewing the Trustee's responses to each and every of the unnumbered allegations in the Motion, the Trustee has noted his responses to the Motion as noted on Exhibit "B" attached hereto.

WHEREFORE, the Trustee respectfully requests that:

1. the Town of Westborough's Motion for Relief be denied; and
2. for other and further relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 11/27/23

By: */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

# *Exhibit "A"*

MIRICK O'CONNELL

ATTORNEYS AT LAW

**Paul W. Carey**
Mirick O'Connell
100 Front Street
Worcester, MA 01608
pcarey@mirickoconnell.com
t 508.860.1590
f 508.983.6238

November 27, 2023

**VIA E-MAIL**
*jgoldsmith@gkalawfirm.com*

Jonathan R. Goldsmith Esq.
Goldsmith, Katz & Argenio, P.C.
1350 Main Street
Suite 1505
Springfield, MA 01103

Re: Offer to Purchase – 231 Turnpike Road, Westborough, Massachusetts ("Premises")

Dear Jonathan:

This letter will serve as Ferris Development Group, LLC's offer to purchase the land and improvements located at 231 Turnpike Road, Westborough.

| | |
|---|---|
| Purchase Price: | $2,875,000 |
| Purchasing Entity: | Ferris Development Group, LLC, or its nominee |
| Tenants: | None; to be delivered vacant |
| Purchase and Sale: | A purchase and sale agreement ("P&S") to be prepared by Buyer between Buyer and Seller, in form and scope satisfactory to both parties, will be executed within ten (10) days following Seller's acceptance of this Offer to Purchase. The P&S will incorporate the material terms stated in this Offer to Purchase. |
| Inspection Period: | Until 6 p.m. Boston time on the seventh day following full P&S signing. Buyer in its sole discretion may withdraw from the P&S up until that time. |
| Deposit: | Simultaneous with acceptance of this Offer, a refundable deposit of Two Hundred Eighty Seven Thousand Five Hundred Dollars ($287,500) ("Deposit") will be tendered |

MIRICK O'CONNELL

Jonathan R. Goldsmith Esq.
November 27, 2023
Page 2

| | |
|---|---|
| | by Buyer to Seller to be held in his Trustee's account. The deposit shall be fully refundable only if Buyer withdraws this Offer to Purchase prior to the end of the Inspection Period or, thereafter, upon (a) Seller's breach of the terms of this Offer to Purchase or the P&S, or (b) failure of the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") to enter within 60 days from execution of this Offer to Purchase a final and unappealed order approving the sale of the Premises to Buyer on the terms set forth herein. |
| Financing Contingency: | None |
| Bankruptcy Court Approval: | Sale of the Premises is subject to approval by the Bankruptcy Court. Seller shall file a motion for approval of the sale to Buyer within seven days of the execution of the P&S upon terms acceptable to Buyer. The motion shall request a hearing on the sale motion within not more than 45 days and Seller shall obtain final Bankruptcy Court approval not later than 60 days from execution of this Offer to Purchase. The sale motion shall require any counteroffers to be on substantially the same terms as this Offer to Purchase excepting only the Purchase Price, which shall exceed the Purchase Price by not less than 5%. |
| Closing: | Closing will take place not later than the third (3rd) day following entry of a final, unappealed order of the Bankruptcy Court approving the sale to Buyer. |
| Sale Free and Clear: | The sale of the Premises shall be free and clear of all liens, claims, and encumbrances accruing prior to the Closing including, without limitation, any claims as to ownership, claims for taxes and municipal charges, claims for any common area, easement, or other charges and obligations with respect to the Premises and any sharing arrangements to which it may be subject. |
| Brokerage: | Both Seller and Buyer shall warrant in the P&S that there are no brokers involved in this potential transaction, and no commissions due to brokers. |

MIRICK O'CONNELL

Jonathan R. Goldsmith Esq.
November 27, 2023
Page 3

| | |
|---|---|
| Closing Costs: | Both Buyer and Seller will pay their own legal and other transaction costs. Recordation, transfer fees and title costs shall be allocated to the parties pursuant to local custom (e.g. Seller pays any grantor's tax). |

If the Seller is in agreement with the terms outlined in this Offer to Purchase, please sign a copy and return it to us by 5:00 p.m. Boston time on November 27, 2023. This offer will become null and void if not accepted by that time.

Sincerely,

**BUYER**

**Ferris Development Group, LLC**
a Massachusetts limited liability company

By: David M. Ferris
Its: Manager, duly authorized

Agreed and Accepted:

**SELLER**

**Jonathan Goldsmith, in his capacity as Chapter 7 Trustee of Westborough SPE, LLC** a Delaware limited liability company

By: Jonathan Goldsmith, Trustee

**U.S. Department of Justice**

EXHIBIT 2

Office of the United States Trustee

*Southern District of New York*

*201 Varick Street, Room 1006*
*New York, NY 10014*

*(212) 510-0500 x207*
*FAX (212)668-2256*

# M E M O R A N D U M

TO: All Chapter 7 Panel Trustees, Region 2

FROM: William K. Harrington, United States Trustee - Region 2

SUBJ: Interim Distributions to Creditors - Interim TFRs

DATE: January 16, 2015

****************************************************************

As the result of the consolidated Region 2 review of TFRs since December 9, 2013, we have noticed varied approaches that our panel trustees use when making interim distributions.

The Handbook for Chapter 7 Trustees allows trustees to make interim distributions under certain limited circumstances. The key to interim distributions is that the chapter 7 trustee cannot pay his own compensation or interim attorneys' fees UNLESS there is also a distribution to unsecured creditors. Interim distributions can benefit creditors by providing them with a partial payment on their claims without having to wait until the case is fully administered. Interim distributions also reduce the costs associated with maintaining estate funds in an approved depository.

The Handbook at Page 4-24 states:

> The United States Trustee will ordinarily object to a trustee's application for interim compensation, **unless the application is linked to an interim distribution to creditors.** However, when a trustee is heavily engaged in the administration of a case over an extended period of time and the trustee is providing substantial services to the estate, those factors may present good cause for interim compensation to the trustee.

In furtherance of our goal of increased uniformity of procedures throughout Region 2, I am implementing the following uniform procedures for handling interim distributions by panel trustees.[1] These procedures will go into effect immediately.

[1] Non-panel trustees submit all TFRs to the applicable field office.

The trustee should consider the following when deciding whether to seek approval of an interim distribution:

1. Whether the circumstances support the use of an interim distribution;
2. anticipated time frame for case closing;
3. reasons why trustee cannot presently file final report;
4. whether the trustee proposes to pay unsecured or other creditors (not just professionals);
5. if no distribution to unsecured creditors:
    a. how long case has been open;
    b. has the administration of the case has been complicated;
    c. what services has trustee provided to the estate.

If the trustee determines that an interim distribution to creditors is warranted under the specific facts of the case, the trustee should prepare an Interim Trustee's Final Report ("Interim TFR") using the USTP's uniform TFR form. To the extent the trustee's software permits, the forms and Notice of Final Report ("NFR") should be modified to clearly indicate that it is an "interim" final report.

The trustee should electronically submit the Interim TFR and interim fee applications to the Region 2 TFR Consolidation Team Mailbox: USTPRegion02.TFR@UST.DOJ.GOV **and** cc the AUST of the applicable field office. The "subject line" of your email should contain the word "INTERIM" before the case number. This will alert the Consolidation Team that you are submitting an Interim TFR. Once the Consolidation Team files the Interim TFR and interim fee applications, the trustee should file an NFR.

Keep in mind that requests for interim trustee compensation or attorney's fees alone (without any distribution to creditors) are generally prohibited. Only in the most extraordinary circumstances where "good cause" has been shown will the United States Trustee agree to such a request.[2]

If you have any questions regarding this procedure, please contact Kathleen D. Schmitt, Assistant U.S. Trustee, Rochester, New York at Kathleen.D.Schmitt@usdoj.gov and Lisa M. Penpraze, Assistant U.S. Trustee, Albany, New York at Lisa.Penpraze@usdoj.gov.
Thank you for your anticipated cooperation.

[2] Requests for interim trustee compensation or attorney's fees alone (without a distribution to creditors) also must be submitted electronically to the Consolidation Team Mailbox with a cc to the AUST. These are subject to review and approval by the UST.

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S OPPOSITION TO LOLONYON AKOUETE'S RENEWED MOTION FOR INTERIM DISTRIBUTION |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby opposes the Motion for Interim Distribution and Request for Expedited Determination (Doc. No. 180) filed by Lolonyon Akouete on June 19, 2024.[1]

The motion is the second motion for interim distribution that Mr. Akouete has filed in this matter. On March 19, 2024, the Court denied Mr. Akouete's previous motion as premature. See Doc. No. 114. The Town opposed that previous motion for several reasons, including that (i) Mr. Akouete lacks authority to act as a manager of Westborough SPE, LLC (the "LLC") for all the reasons set forth in the Town's pending Motion to Dismiss Bankruptcy Case (Doc. No. 69); and (ii) Mr. Akouete's motion practice is intended to interfere with the Town's disposition of the real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"), which the Town contends is not an asset of the LLC for all the reasons set forth in the Town's pending Motion for Relief from Automatic Stay (Doc. No. 20). See Doc. No. 113.

[1] The Town disagrees with the assertions Mr. Akouete makes in his separate Motion to Shorten Time for Objections and Opposition to the Motion for Interim Distribution (Doc. No. 181). Nevertheless, as the Town files this opposition within seven days of Mr. Akouete's filing of his renewed motion for interim distribution, the Town takes no position with respect to the relief Mr. Akouete seeks in the separate motion beyond stating that Mr. Akouete has not established grounds to shorten any deadline in this matter.

Those reasons for the Town's opposition have not changed. To the extent that the Debtor has any rights concerning the Property itself (as opposed to any surplus proceeds of a sale of the Property by the Town), be they through the motion to vacate the tax title foreclosure judgment or a potential claim to avoid the tax title foreclosure judgment pursuant to 11 U.S.C. § 548, those rights are under the Chapter 7 Trustee's control, not Mr. Akouete's. As such, the Court should again deny Mr. Akouete's motion for interim distribution. While Mr. Akouete now contends that "[t]he real delay in this case stems from the settlement proposal that the Town [] and the Trustee have been negotiating for over seven months" (Mot. at 2), the efforts of the settling parties (which also include the petitioning creditors) to significantly narrow the disputes in this proceeding (including with respect to the status of the Property vis-à-vis the bankruptcy estate) in order to avoid what would be extensive litigation do not entitle Mr. Akouete to interim distribution.

For the foregoing reasons, the Court should deny Mr. Akouete's motion.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: June 26, 2024

928104/WBOR/0049

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Opposition to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor* (by U.S. mail)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust* (by email)

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor* (by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor* (by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor* (by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor* (by email)

Dated: June 26, 2024

Roger L. Smerage

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |

PETITIONING CREDITORS' OPPOSITION TO LOLONYON AKOUETE'S RENEWED MOTION FOR INTERIM DISTRIBUTION
[Docket No. 180]

To The Honorable Christopher J. Panos, United States Bankruptcy Judge:

Now come the Petitioning Creditors herein and oppose the renewed Motion of Lolonyon Akouete for Interim Distribution on the grounds that any interim distribution at this point (especially given Mr. Akouete's recent motion to significantly increase the amount of his claim through an amendment to his existing Proof of Claim) would impede the orderly administration of this bankruptcy case and result in unforeseeable, unintended and potentially negative consequences to the estate and its creditors.

Wherefore, the Petitioning Creditors pray that this Court deny the Renewed Motion of Lolonyon Akouete for Interim Distribution.

Respectfully submitted,

PETITIONING CREDITORS,

By their attorneys,

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)
The Gordon Law Firm LLP
57 River Place, Suite 200
Wellesley, Massachusetts 02481
Tel: (617) 261-0100
E-mail: sgordon@gordonfirm.com

Dated: June 26, 2024

CERTIFICATE OF SERVICE

I, Stephen F. Gordon, hereby certify that on June 26 27, 2024, the foregoing **Petitioning Creditors' Opposition to Lolonyon Akouete's Renewed Motion for Interim Distribution** was served by operation of the Court's ECF System on all individuals designated to receive service by ECF:

- Jeffrey T Blake jblake@k-plaw.com
- Paul W. Carey pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com
- Jose C. Centeio jcc@natgolaw.com
- Jonathan R. Goldsmith bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;kstelmashova@gkalawfirm.com
- Jonathan R. Goldsmith trusteedocs1@gkalawfirm.com, trusteedocs@gkalawfirm.com; mwolohan@gkalawfirm.com;MA43@ecfcbis.com;
- Stephen F. Gordon sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King USTPRegion01.WO.ECF@USDOJ.GOV
- Brian W. Riley briley@k-plaw.com
- Roger L. Smerage rsmerage@k-plaw.com

and by email upon:

Lolonyon Akouete (info@smartinvestorsllc.com)

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)

P:\Clients-GLF\Westborough SPE\Plead (Bktcy)\Opp to Renewed Mtn f Interim Distribution.docx

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC<br><br>Debtor | Chapter 7, No. 23-40709 |

**TRUSTEE'S OBJECTION TO MOTION OF LOLONYON AKOUETE FOR INTERIM DISTRIBUTION AND REQUEST FOR EXPEDITED DETERMINATION (DOCKET #180)**

NOW comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Trustee ("Trustee") in the above-captioned case, and hereby files this Objection to the Motion for Interim Distribution and Request for Expedited Determination (Docket #180) (hereinafter "Motion"). In support of this Objection, the Trustee represents that:

1. On August 31, 2023, an Involuntary Petition was filed against Westborough SPE LLC ("Debtor") under the provisions of Chapter 7 of the Bankruptcy Code; subsequently, an Order for Relief was entered on October 11, 2023.

2. On October 12, 2023, JONATHAN R. GOLDSMITH accepted the appointment as Chapter 7 Trustee for the above-entitled estate.

3. This is the second request by Lolonyon Akouette ("Akouette") seeking an interim distribution. Again, the Trustee submits that this request should be denied as premature for several reasons, including the fact that a few claims in the case will be subject to objections to be filed by the Trustee. One of the intended objection will be to the amended claim by Akouette whereby he seeks to amend his claim from $625,297.02 to $1,250,594.05.

WHEREFORE, the Trustee requests the entry of the following Orders:

1. That the Motion for Interim Distribution and Request for Expedited Determination (Docket #180) be denied; and

2. For such other and further relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 6/26/24

By: */s/ Jonathan R. Goldsmith, Esq.*

JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
| WESTBOROUGH SPE LLC | ) | |
| Debtor | ) | |

**CERTIFICATE OF SERVICE**

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Response upon those parties listed on the attached Exhibit "A" by electronic mail or by mailing, first class mail, postage prepaid, on this 26th day of June, 2024:

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

The MobileStreet Trust
225 Turnpike Road
Westborough, MA 01581-2807

Westborough SPE LLC
231 Turnpike Road
Westborough, MA 01581-2807

Darin Clagg
24 Kobbs Korner Rd
Pine Bush, NY 12566-5302

Allen Hight
The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Richard King, Esq.
Office of US. Trustee
446 Main Street, 14th Fl.
Worcester, MA 01608-2361

Matthew A. Morris, Esq.
Sherin and Lodgen, LLP
101 Federal Street, 30th Floor
Boston, MA 02110-2109

David M. Ferris
Ferris Development Group, LLC
118 Turnpike Rd., Ste. 300
Southborough, MA 01772-2133

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589,

Jose Centeio, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109-2666

Ferris Development Group, LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556-1727

Town of Westborough
34 West Main Street
Westborough, MA 01581-1998

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798-2002

Nathanson & Goldberg, P.C.
c/o Stephen F. Gordon, Esq.
The Gordon Law Firm LLP
57 River Street
Wellesley, MA 02481

Town of Westborough
c/o Roger L. Smerage, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Town of Westborough
c/o Brian W. Riley, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Town of Westborough
c/o Jeffrey T. Blake, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Lolonyon Akouete
P.O. Box 121
Wallkill, NY 12889

Gary M. Ronan
David M. Abromowitz
Goulston & Storrs
400 Atlantic Avenue
Boston, MA 02110

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br>Westborough SPE LLC<br><br>Debtor(s) | Chapter 7<br>23-40709-CJP |

# ORDER

**MATTER:**
#180 Motion filed by Creditor Lolonyon Akouete for Interim Distribution and Request for Expedited Determination and
#181 Motion filed by Creditor Lolonyon Akouete with certificate of service to Shorten Time for Objections and Opposition Re: 180 Motion for Interim Distribution.

REQUEST FOR EXPEDITED DETERMINATION [DKT. NO. 181] OF THE SECOND MOTION FOR INTERIM DISTRIBUTION FILED BY LOLONYON AKOUETE [DKT. NO. 180] (THE "SECOND MOTION") IS DENIED. UPON CONSIDERATION OF THE SECOND MOTION, THE OBJECTIONS OF THE CHAPTER 7 TRUSTEE [DKT. NO. 185], THE PETITIONING CREDITOR [DKT. NO. 184], AND THE TOWN OF WESTBOROUGH [DKT. NO. 183], THE REPLY OF MR. AKOUETE [DKT. NO. 186], AND THE RECORD OF THIS CASE, THE SECOND MOTION IS DENIED AS PREMATURE.

Dated: 07/25/2024

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |

# MOTION TO ALLOW CLAIM

**Creditor/Appellant: Lolonyon Akouete**

## Introduction

Creditor Lolonyon Akouete respectfully submits this Motion to Allow Claim, pursuant to 11 U.S.C. § 502 and Federal Rule of Bankruptcy Procedure 3007. The claim was filed within the specified bar date and remains unchallenged within the objection period, as defined by the local rules and applicable court orders. The Creditor requests that the Court formally allow the claim as there have been no objections filed to date.

## Background

1. **Filing of Claim:**
   - The Creditor filed a proof of claim against the bankruptcy estate of Westborough SPE LLC within the bar date set by the Court, which was January 9, 2024. The claim was filed in a timely manner and was assigned claim number 4 which was later amended.
2. **No Objections Filed:**
   - As of the date of this motion, no objections have been lodged against the Appellant's claim by the Trustee or any other party in interest. According to 11 U.S.C. § 502(a), a claim is deemed allowed unless a party in interest objects.
3. **Objection Period:**
   - The local rules and Federal Rules of Bankruptcy Procedure do not specify a strict deadline for filing objections to claims, but objections must be filed within a reasonable time after the bar date. In the District of Massachusetts, objections should be filed and served at least thirty (30) days prior to the hearing on the objection, as per Local Rule 3007-1.
4. **Threats of Objection:**
   - Despite the lack of any formal objection, the Trustee has threatened to object to the claim without taking any substantive action. This tactic, if continued, could be seen as an abuse of process or bad faith, warranting the Court's intervention.

## Legal Argument

1. **Allowance of Claim:**

   - According to 11 U.S.C. § 502(a), a claim is deemed allowed unless a party in interest objects. Given that the objection period has passed without any objections being filed, the Appellant's claim should be allowed.
2. **Relevant Case Law:**
   - **In re Rodriguez, No. 16-70150, 2017 WL 571488, at 4 (Bankr. S.D. Tex. Feb. 13, 2017):* The court held that a claim is deemed allowed if no objection is made.
   - **In re Lewis, 80 B.R. 39, 40 (Bankr. E.D. Pa. 1987):** The absence of objections signifies acceptance of the claim as valid and enforceable.
3. **Federal Rules of Bankruptcy Procedure:**
   - **Rule 3007:** Governs objections to claims, including the timeline and requirements for filing objections. No objections have been filed within the timeline allowed by this rule and the local rules.
4. **Local Rules Compliance:**
   - **Local Rule 3007-1:** Requires objections to claims to be filed and served at least thirty (30) days prior to the hearing on the objection. This has not been done.
5. **Equitable Considerations:**
   - The ongoing threats without formal action by the Trustee constitute bad faith and abuse of process, as they create unnecessary uncertainty and delay for the creditor.

## Request for Relief

The Creditor respectfully requests that the Court:

1. Allow the claim filed by Lolonyon Akouete against the bankruptcy estate of Westborough SPE LLC as no objections have been timely filed.
2. Schedule a hearing to address any remaining concerns or disputes related to this claim, if necessary.
3. Grant such other and further relief as the Court deems just and proper.

## Conclusion

Given the absence of any objections within the required period, and in accordance with 11 U.S.C. § 502(a) and relevant case law, the Appellant's claim should be allowed. The Court is respectfully requested to grant this motion and formally allow the claim.

DATED: July 27, 2024, Respectfully submitted:

By creditor,

[signature]

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| Debtor. | ) | |

MOTION TO COMPEL TRUSTEE TO OBTAIN APPRAISAL OF PROPERTY LOCATED AT 231 TURNPIKE ROAD, WESTBOROUGH, MA BEFORE AUGUST 20, 2024 HEARING

## INTRODUCTION

Creditor Lolonyon Akouete ("Movant") respectfully moves this Court for an order compelling the Chapter 7 Trustee, Jonathan R. Goldsmith ("Trustee"), to obtain an appraisal of the property located at 231 Turnpike Road, Westborough, MA ("Property") before the scheduled hearing on August 20, 2024. An appraisal is crucial to determine the Property's fair market value and to assess the reasonableness of the proposed settlement.

## FACTUAL BACKGROUND

1. **Property Valuation History**: The assessed value of the Property has fluctuated significantly in recent years:
   - 2018: $9,264,800
   - 2019: $5,239,100
   - 2021: $2,622,100
   - 2022: $1,994,900
   - 2023: $2,082,000 This dramatic decline in assessed values highlights the need for an up-to-date professional appraisal to ascertain the current fair market value.
2. **Significance of the Property**: The Property is a significant asset in the Debtor's estate. The valuation of this Property is essential to determine the fairness and adequacy of the proposed settlement.
3. **Court's Emphasis on Appraisal**: On June 7, 2024, during a status conference, Judge Christopher J. Panos emphasized the necessity of obtaining an appraisal to establish the fair market value of the Property.
4. **Trustee's Omission**: To date, the Trustee has not provided any appraisal or valuation data for the Property. This omission creates a significant risk of undervaluing the Property, thus harming the interests of the creditors.
5. **Movant's Request for Appraisal**: On August 2, 2024, Movant requested confirmation from the Trustee regarding the ordering of an appraisal or expert affidavit (Exhibit A: Email Communication). The Trustee acknowledged that no written appraisal had been obtained and indicated reliance on the settlement agreement's terms to support its reasonableness (Exhibit B: Trustee's Response).
6. **Comparative Offers**: The current offer from LAX Media of $2.5 million is significantly lower than other potential offers, including an offer from Ferris Development Group of

$2.875 million and Pulte Homes of $7.942 million. Without a proper appraisal, the estate risks accepting a settlement that does not reflect the true value of the Property.

7. **Appraiser Details**: On August 2, 2024, Robert Shannon, a qualified appraiser, provided a proposal to complete an appraisal for the Property. His fee for the appraisal is $5,500, with a retainer of $3,500 required to commence the work. Mr. Shannon confirmed that he could complete the appraisal within three weeks of receiving the retainer (Exhibit C: Appraiser's Proposal).

## LEGAL STANDARD

Under 11 U.S.C. § 704(a), the Trustee is obligated to "collect and reduce to money the property of the estate" and to ensure that the sale of estate property is conducted in the best interests of the creditors. Additionally, the Trustee has a fiduciary duty to maximize the value of the estate's assets for the benefit of the creditors.

## ARGUMENT

1. **Need for an Accurate Appraisal**: Given the wide range of past valuations and current offers, an accurate and current appraisal is essential to establish the fair market value of the Property. This will ensure the estate is not undervalued and will support a fair settlement.
2. **Fiduciary Duty of the Trustee**: The Trustee must act in the best interest of the creditors by ensuring that the Property is sold for its maximum value. An independent appraisal will provide the necessary data to support this fiduciary duty.
3. **Potential for Higher Offers**: The substantial offer from Pulte Homes ($7.942 million) compared to the current proposed settlement indicates a potentially higher market value. An accurate appraisal will help in negotiating better terms and potentially securing a higher offer.
4. **Court's Emphasis and Trustee's Omission**: The Court's emphasis on the necessity of an appraisal and the Trustee's failure to provide one to date highlight the urgency and importance of obtaining an appraisal before the hearing. This will prevent the risk of undervaluing the Property and protect the interests of the creditors.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court enter an order:

1. Compelling the Trustee to obtain an appraisal of the Property located at 231 Turnpike Road, Westborough, MA, by a qualified appraiser before the hearing on the settlement proposal scheduled for August 20, 2024.
2. Granting such other and further relief as the Court deems just and proper.

DATED: August 6, 2024, Respectfully submitted: By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com

Exhibit A

Gmail **Lolonyon Akouete <info@smartinvestorsllc.com>**

---

## Inquiry on Appraisal or Affidavit for Property Valuation

3 messages

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Fri, Aug 2, 2024 at 7:50 AM
To: Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>
Cc: USTPRegion01.WO.ECF@usdoj.gov

Dear Mr. Goldsmith,

I hope this message finds you well.

As we approach the hearing on August 20th to approve the settlement proposal, I wanted to address a critical matter regarding the valuation of the property involved. As you know, the determination of whether the proposed settlement is reasonable largely depends on the value being obtained by the bankruptcy estate and whether a higher value can be achieved.

During our last hearing, the court suggested obtaining an appraisal or an affidavit from an expert to establish the property's market value. However, to date, you have not provided any such information. This lack of valuation data will likely lead to a continuation of the motion to approve the settlement, causing further delays.

Could you please confirm if an appraisal has been ordered or if there is an affidavit from an expert establishing the firm market value of the property? If neither has been arranged, I am prepared to order an appraisal immediately. I have already spoken with an appraiser who can complete the appraisal within 30 days.

I would appreciate a prompt response to this matter, preferably by the end of the day. If I do not receive a response, I intend to file a motion and an emergency motion requesting court approval to obtain an appraisal at the bankruptcy estate's expense.

Thank you for your attention to this urgent matter. I look forward to your swift response.

Best regards,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

---

**Jonathan Goldsmith** <jgoldsmith@gkalawfirm.com> Fri, Aug 2, 2024 at 9:49 AM
To: Lolonyon Akouete <info@smartinvestorsllc.com>
Cc: "USTPRegion01.WO.ECF@usdoj.gov" <USTPRegion01.WO.ECF@usdoj.gov>

I have not obtained a written appraisal. The basis for supporting the reasonableness of the settlement is noted in the Settlement.

On a related matter, this will confirm that you will call my office at 2:30 today for the 26(f) conference.

Jonathan

Jonathan R. Goldsmith, Esq.

GOLDSMITH, KATZ & ARGENIO, P.C.

1350 Main Street, Suite 1505

Springfield, MA 01103

Tel. (413) 747-0700

Fax (413) 781-3780

PLEASE NOTE: This transmission and any attachments contain confidential or privileged information from Goldsmith, Katz & Argenio, P.C. This information is intended to be for the use of the addressed individual(s) or entity. If you are not the intended recipient, be aware that any disclosure, printing, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone or by return email immediately.

[Quoted text hidden]

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Fri, Aug 2, 2024 at 10:48 AM
To: Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>
Cc: "USTPRegion01.WO.ECF@usdoj.gov" <USTPRegion01.WO.ECF@usdoj.gov>

Dear Mr. Goldsmith,

Thank you for your prompt response.

Given that a written appraisal has not been obtained, I am concerned about the potential delays and complications this might cause at the upcoming hearing. Without a clear valuation established by an expert, the court may find it difficult to determine the reasonableness of the settlement, potentially leading to a continuation of the motion.

During the status conference hearing on June 7, 2024, Judge Christopher J. Panos clearly stated that an appraisal is needed to establish the fair market value of the property. Without an appraisal, the court will not have a basis for determining whether the $2.5 million offer from LAX Media is a reasonable equivalent to the property's market value. There are other buyers interested in paying a higher price for the property, which further emphasizes the necessity of this appraisal.

To prevent any further delays, I have reached out to an appraiser, Robert Shannon, who has agreed to complete an appraisal for the property. His fee for completing the appraisal is $5,500, and he can complete it within three weeks of receiving a retainer in the amount of $3,500. Please see the attached email from Mr. Shannon for more details.

I believe obtaining this appraisal will provide the necessary clarity and support for the court's decision. If the motion to approve the settlement proposal is continued due to the lack of an appraisal, it would constitute unjust enrichment and a strategic effort to defraud the debtor. Please be assured that I will seek legal remedies for a breach of fiduciary duty in such a case.

Please let me know if you have any objections to this plan. If I do not hear from you, I will file a motion and an emergency motion requesting the court's approval to obtain the appraisal at the bankruptcy estate's expense.

I also confirm our call for the 26(f) conference today at 2:30 PM.

Thank you for your cooperation.

Best regards,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

[Quoted text hidden]

Exhibit B

Gmail

**Lolonyon Akouete <info@smartinvestorsllc.com>**

---

# Request for Quote and Time Frame for Property Appraisal

6 messages

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Wed, Jul 31, 2024 at 7:08 AM
To: rshannon@ccim.net

Dear Bob Shannon,

I hope this message finds you well.

I am writing to request a quote and the estimated time frame for conducting an appraisal of the property located at 231 Turnpike Road, Westborough, MA. Your contact information was provided to me by Josh Bartell of Mansard CRE.

Please provide the following details:

1. The cost of the appraisal.
2. The estimated time frame to complete the appraisal from the date of engagement.
3. Any specific information or documents you will need from me to proceed.

Your prompt response will be greatly appreciated as this information is crucial for my current proceedings.

Thank you for your assistance.

Sincerely,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

---

**rshannon@ccim.net** <rshannon@ccim.net> Wed, Jul 31, 2024 at 4:04 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Hi Lolonyon,

Thank you for your e-mail this morning. I apologize for not getting back to you sooner as I was not in my office today. I will be back in tomorrow. Is there a convenient time that I can call you to discuss the appraisal that you need for 231 Turnpike Road, Westborough?

Best regards,

Bob Shannon

[Quoted text hidden]

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Thu, Aug 1, 2024 at 6:41 AM
To: rshannon@ccim.net

Hi Bob,

Thank you for your response.

I am available anytime today to discuss the appraisal for the property at 231 Turnpike Road, Westborough. Please feel free to call me at your earliest convenience.

For some background, the record owner of the theater is Westborough SPE LLC, a Delaware Limited Liability Company, with Mignonette Investments Limited, a British Virgin Islands limited partnership, as its sole member. As an asset recovery specialist, I have been delegated managerial authority per Westborough SPE LLC's Operating Agreement, making me the manager of the entity.

The Town of Westborough had foreclosed on the property for non-payment of taxes, I have filed a motion to vacate the foreclosure judgment Based on due process violation which they are opposing. Due to multiple continuations and their scorched-earth litigation tactics, I have exhausted my funds. Consequently, my previous attorney (Nathanson & Goldberg, P.C.) and the property's caretaker (The MobileStreet Trust) commenced an involuntary Chapter 7 bankruptcy.

A settlement has been proposed, which I believe is unfair, and I am opposing it. My aim is to sell the property to the highest bidder through a fair bidding process. We are reaching out to all movie theater companies to find a buyer who can offer a better price. Maximizing the property's value is crucial for me, as I receive 30% of the total asset recovery for the entity.

Given the current situation, an accurate and timely appraisal of the property is essential for attracting potential buyers and ensuring a fair market value is obtained. This appraisal will support my efforts to oppose the current settlement proposal and advocate for a higher sale price.

I am attaching the settlement proposal in my opposition for your reference.

Looking forward to speaking with you.

Best regards,

Lolonyon Akouete
800 Red Milles R
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

[Quoted text hidden]

---

**2 attachments**

**Westborough- Motion to Approve Settlement.pdf**
1607K

**Opposition of Creditor Lolonyon Akouete to Motion of Chapter 7 Trustee for Approval of Settlement Agreement.pdf**
18711K

---

**rshannon@ccim.net** <rshannon@ccim.net> Thu, Aug 1, 2024 at 2:35 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Hi Lolonyon,

I just tried to call you a few minutes ago and I was connected to your voicemail. I was unable to leave a message as your mailbox is full. Please call me at your convenience. I will be in my office for the rest of the afternoon. My # is 617-314-6138.

[Quoted text hidden]

---

**Robert Shannon** <rshannon@ccim.net> Fri, Aug 2, 2024 at 8:34 AM

To: Lolonyon Akouete <info@smartinvestorsllc.com>

Gods morning Lolo,
My fee for completing an appraisal for the property would be $5,500. I would be able to complete the appraisal within three weeks of receiving a retainer in the amount of $3500. Let me know if these terms are acceptable to you and I will prepare an engagement letter and send it to you over the weekend.
I am running out to an appointment and I will be back at 9:30. If you have any questions, don't hesitate to call me.
Best regards,
Bob Shannon
Sent from my iPhone

On Jul 31, 2024, at 7:08 AM, Lolonyon Akouete <info@smartinvestorsllc.com> wrote:

[Quoted text hidden]

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Fri, Aug 2, 2024 at 1:44 PM
To: Robert Shannon <rshannon@ccim.net>

Hi Bob,

Thank you for your prompt response and details regarding the appraisal.

After communicating with the trustee, Jonathan Goldsmith, he informed me that he has not obtained a written appraisal and is relying on the basis for supporting the reasonableness of the settlement as noted in the Settlement. As a result, I will be filing a motion requesting the court's approval to obtain the appraisal independently.

The terms you provided are acceptable to me. However, please hold off on preparing the engagement letter until I receive court approval for the appraisal. I will inform you as soon as I have the court's decision.

I appreciate your assistance and look forward to working with you on this matter.

Best regards,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

[Quoted text hidden]

telegram.com | TELEGRAM & GAZETTE

Exhibit C

EAST/VALLEY

# 'Quite a bit of interest' in movie theater site

**Craig S. Semon** craig.semon@telegram.com

Published 9:11 p.m. ET June 29, 2018 | **Updated 6:31 a.m. ET June 30, 2018**

WESTBORO – With plans of taking the former Regal Westborough Stadium 12 by eminent domain and awarding the bid to somebody to sell it, the town of Westboro is taking requests for proposal for the vacant 29-acre parcel at 231 Turnpike Road.

And, still, no one knows who owns the property.

"We don't know who the owner is," Town Manager James J. Malloy said. "We had a title search done to do our own due diligence to try to figure out if there was an owner there that we were simply not finding. And the title search did not find anybody other than Westboro SPE LLC and the holding company Babcock & Brown."

Regal Westborough Stadium 12 closed Oct. 29. Westboro SPE LLC is listed as the original landlord on the 20-year lease agreement, which expired in Nov. 21.

However, Westboro SPE, a limited liability company that was registered in Delaware, has been administratively dissolved and is no longer authorized to do business in Massachusetts.

Furthermore, Westboro SPE's former corporate services firm, law firm and property management firm deny any current relationship with the landlord and cannot or will not provide forwarding or other contact information.

State corporation records show that Westboro SPE withdrew its registration to do business in Massachusetts in 2007. According to the state records, Westboro SPE appears to be an entity created by Babcock & Brown, an Australian company that went belly up in 2009.

"We have the authority to take it by eminent domain and we have an appraisal report of what a land damage ... would be," Mr. Malloy said.

"If we get responses to the RFP (request for proposal) that are competitive to what the appraisal report came in at, which is $6 million and that's what town meeting approved, as far as the land damage would go ... then I'll put before the board of selectmen a vote to take it by eminent domain at their Aug. 14 selectmen's meeting and then award the bid to somebody to sell it.

"And we will do it all simultaneously. We will file the eminent domain land taking and then close on the property shortly thereafter."

Sealed proposals must be received by the town manager at Westboro Town Hall, 34 W. Main St., Westboro, MA, 01581 by 11 a.m. Aug. 7, at which time the proposals will be publicly opened. All proposals must be accompanied by a certified or bank check or bid bond, in the amount of $10,000 as proposal security, which will be returned to any unsuccessful proposer.

All inquiries or questions regarding the RFP must be in writing and received by the town no later than 5 p.m. July 24. Questions should be directed to Mr. Malloy by mail, fax at (508) 366-3099 or email, jmalloy@town.westborough.ma.us.

Copies of the RFP are available at the town manager's office and the town's website.

Mr. Malloy said there has been "quite of bit of interest" in the property and expects, at least, five or six "pretty competitive bids" on it.

If everything goes as planned and Westboro receives an agreeable bid in the $6 million range, Westboro will send Babcock & Brown a notice that the town has taken the land by eminent domain. If they can prove ownership, the town will discuss the land damage award with them, Mr. Malloy said.

Then the town of Westboro would have to hold on to that money for a three-year period to see whether or not somebody files for a land damage claim against the town, Mr. Malloy said. And, if no one files a claim, at the end of three years, the town can put the money in a sale of real estate account and use it for anything the town can otherwise borrow money for.

If Westboro gets low bids, for example, around $1 million, then the town would probably not take the parcel by eminent domain because, that point, the town would be assuming a $5 million liability on the part of taxpayers, Mr. Malloy said.

Case 23-40709 Doc 1263 Filed 08/16/24 Entered 08/16/24 14:37:01 Desc Main Document Page 409 of 549
Case 1:26-cv-10037-WGY Document 13-3 Filed 02/11/26 Page 409 of 549

"We're hoping to get competitive proposals so we can get the property back in a positive use as soon as possible," Mr. Malloy said. "And, if we don't, then we would go ahead and proceed with a tax foreclosure process as soon as we could."

telegram.com | TELEGRAM & GAZETTE

EAST/VALLEY

# Westboro accepts $5M bid for cinema

**Elaine Thompson** elaine.thompson@telegram.com

Published 5:00 p.m. ET Nov. 28, 2018 | **Updated 4:55 a.m. ET Nov. 29, 2018**

WESTBORO – The Board of Selectmen has accepted a $5 million bid from a Walpole-based media corporation to purchase and operate a cinema at the long-vacant Regal Cinemas building on Route 9.

LAX Media LLC, which operates Apple Cinemas in Cambridge, and Waterbury and Barkhamsted, Connecticut, submitted the high bid of $5,005,005. Two other bids that included maintaining a movie theater on the property came from Grossman Development of Southboro for $4 million; and $3.1 million from Florida-based Cinema World of Florida, which operates Lincoln Mall 16 & Cinema World & Games in Lincoln, Rhode Island. The fourth and lowest bid, at $2.5 million, came from Black Socks Corp., based in Marlboro, which proposed building a regional grocery store on the site.

Selectmen held a short meeting Nov. 20 to award the bid to LAX Media. Chairman Leigh Emery said it offered the most advantageous economic benefit to the town.

The bid "is a million dollars over the nearest other proposal; it is above the appraised value; it closes 30-60 days earlier," Ms. Emery said. "It's a business model that we think fits best with our strategic planning that the Board of Selectmen has worked out the past six months or so and voted as a plan for moving forward for keeping our community a family-friendly town with recreation activities available for all age groups in an affordable fashion."

The 12-screen theater was the only cinema in town. It was built in 1997, on a 29-acre parcel at 231 Turnpike Rd. (Route 9) in Stagecoach Plaza. The theater abruptly closed its doors last fall, less than a month before the 20-year lease was to expire. The property is appraised at $4.79 million.

The town, however, has been unable to find the owner. The original landlord, Westboro SPE LLC, registered in Delaware, administratively dissolved and withdrew its registration

to do business in Massachusetts in 2007. The limited liability company was an entity created by Babcock & Brown, an Australian company that went out of business in 2009. Westboro SPE's purchase loan on the property from U.S. Bank was satisfied around the time of the theater closing. The bank has said it does not have contact information for the landlord.

James Malloy, the former town manager who left in October to become town manager in Lexington, said the town will have to hold on to the money from the new owner for three years in case a claim is filed against the town. But he said that would not stop the selling and development of the property.

The new owner did not reply to an email asking about plans for renovations and when the cinema will open.

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

Lolonyon Y Akouete

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| In re: Westborough SPE LLC, Debtor | Chapter 7<br>23-40709-CJP |
|---|---|

# ORDER

**MATTER:**
#219 Motion filed by Creditor Lolonyon Akouete to Compel Trustee to Obtain Appraisal of Property Located at 231 Turnpike Road, Westborough, MA before August 20, 2024 Hearing.

DENIED. MR. AKOUETE MAY RAISE VALUATION ISSUES IN THE CONTEXT OF AN OBJECTION TO THE MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT. TO THE EXTENT MR. AKOUETE WANTS TO CONDUCT HIS OWN APPRAISAL AND REQUIRES ACCESS TO THE PROPERTY, HE SHOULD CONTACT THE CHAPTER 7 TRUSTEE TO COORDINATE ACCESS.

Dated: 08/07/2024

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S OPPOSITION TO LOLONYON AKOUETE'S MOTION TO ALLOW CLAIM |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby opposes the Motion to Allow Claim (Doc. No. 214) filed by Lolonyon Akouete.

Mr. Akouete's motion ignores a key procedural hurdle to the allowance of any claim in this proceeding. The Town has moved to dismiss this bankruptcy in its entirety pursuant to 11 U.S.C. § 707(a). See Doc. No. 69. Among the reasons for the Town's motion are that Mr. Akouete (among others) have engaged in egregious actions to falsely revive Westborough SPE LLC (the purported debtor) in an effort to extract money from that entity where there is no right to do so and took action to bring about this bankruptcy as a way of frustrating the Town's efforts to complete the judicial process for clearing the tax title on the property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). Until such time as the issues raised by the Town's motion are resolved, allowance of any claim in this proceeding—whether by Mr. Akouete or anyone else—is improper. To the benefit of all, however, the Town and the Chapter 7 Trustee have reached agreement on a resolution of the Town's motion to dismiss (among other issues) and the proposed settlement that has been reached will be before the Court on August 20, 2024, for approval. Assuming that settlement is approved and the Town's motion to dismiss withdrawn as

a result, all claims remaining in this bankruptcy thereafter (including Mr. Akouete's) can be addressed by the Trustee and adjudicated by the Court.

Until such time, however, allowance of Mr. Akouete's claim is premature. Indeed, the Court has already concluded as much in the context of Mr. Akouete's two motions for interim distribution. See Doc. Nos. 114 & 204. Mr. Akouete has not established any reason for the Court to now take a different approach.

For the foregoing reasons, the Court should deny Mr. Akouete's motions.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: August 8, 2024

934089/WBOR/0049

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Opposition to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor* (by U.S. mail)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust* (by email)

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor* (by U.S. Mail)

Jonathan La Liberte
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
jclaliberte@sherin.com
*Attorney for Creditor Sherin and Lodgen LLP* (by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor* (by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor* (by email)

Dated: August 8, 2024

[signature]
Roger L. Smerage

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC,<br><br>Debtor. | Chapter 7<br>Case No. 23-40709-CJP |

MOTION TO COMPEL RELEASE OF APPRAISAL AND RELATED DOCUMENTS

**Now comes, Lolonyon Akouete,** a creditor and interested party in the above-captioned case, and hereby moves this Honorable Court for an order compelling the release of the appraisal and any related documents regarding the property located at 231 Turnpike Road, Westborough, Massachusetts, which were obtained by the Town of Westborough in 2018 and provided during the discovery process in the related land court case.

**In support of this motion, Mr. Akouete states as follows:**

1. **Background**:
   - The property at 231 Turnpike Road, Westborough, Massachusetts, is central to ongoing bankruptcy proceedings involving Westborough SPE LLC.
   - The Town of Westborough conducted an appraisal of the property in 2018, which was provided during the discovery process in a related land court case.
2. **Requests for the Appraisal**:
   - Since May 9, 2024, the undersigned has made several formal requests to the Town's attorney, the petitioning creditor, and former counsel of Westborough SPE LLC, seeking a copy of the appraisal and related documents.
   - These requests were made through emails on May 9, July 31, August 1, and February 3, 2023, but have either been ignored or denied.
   - The undersigned has been stonewalled by all parties involved, preventing access to this crucial information.
3. **Relevance of the Appraisal**:
   - The appraisal is critical to the undersigned's ability to accurately assess the value of the property and to present this information to potential lenders.
   - Without the appraisal, the undersigned is forced to incur unnecessary expenses to obtain a new appraisal, which could have been avoided if the requested documents were provided.
   - The Town's refusal to release the appraisal appears to be an attempt to obstruct the undersigned's efforts to redeem the property.
4. **Urgency Due to Upcoming Hearing**:
   - A hearing to approve a settlement between the Town of Westborough and the trustees is scheduled for August 20, 2024.
   - The deadline to file objections to the proposed settlement is August 16, 2024, at 11:59 PM.

- The appraisal is essential for the undersigned to prepare and file a timely objection to the proposed settlement. Therefore, it is imperative that the appraisal and related documents be provided well in advance of the objection deadline.

5. **Legal Grounds**:
   - The requested appraisal and related documents were produced during the discovery process and should be accessible to all parties involved in the litigation.
   - The Town's refusal to release these documents is not justified, particularly given that the appraisal is a critical piece of evidence in the ongoing bankruptcy proceedings.
   - The undersigned has made multiple good-faith efforts to obtain the appraisal, as evidenced by the attached email correspondence, but has been met with resistance.

**Wherefore,** the undersigned respectfully requests that this Honorable Court:

1. Issue an order compelling the Town of Westborough, the petitioning creditor, and the former counsel of Westborough SPE LLC to immediately release the 2018 appraisal and any related documents concerning the property located at 231 Turnpike Road, Westborough, Massachusetts.
2. Order that the appraisal be provided ahead of the August 16, 2024, objection deadline to allow the undersigned sufficient time to review the document and file an appropriate objection.
3. Award any other relief that the Court deems just and proper.

DATED: August 20, 2024, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

Exhibit 1

Gmail

**Lolonyon Akouete <info@smartinvestorsllc.com>**

## Request for Documents

4 messages

**Lolonyon Akouete** <info@smartinvestorsllc.com> Thu, May 9, 2024 at 4:56 PM
To: Jose Centeio <jcc@natgolaw.com>
Cc: Alvin Nathanson <asn@natgolaw.com>, "Scott A. Schlager" <sas@natgolaw.com>

Dear Jose,

I received a call from the Office of the Inspector General today. They are requesting any documents related to Lax Media LLC and the town in connection with the sale of 231 Turnpike Rd. I know we went through discovery in the land court case.

Since Scott is no longer with Nathanson & Goldberg, please advise on how I can obtain a copy of the discovery provided by the town to Nathanson & Goldberg when they were representing Westborough SPE LLC.

Thank you for your assistance in this matter.

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

**Lolonyon Akouete** <info@smartinvestorsllc.com> Wed, Jul 31, 2024 at 6:14 AM
To: Jose Centeio <jcc@natgolaw.com>
Cc: Alvin Nathanson <asn@natgolaw.com>, "Scott A. Schlager" <sas@natgolaw.com>

Dear Jose,

I am following up on my previous email dated May 9, requesting a copy of the discovery documents related to Lax Media LLC and the Town in connection with the sale of 231 Turnpike Rd. Specifically, I need a copy of the appraisal the Town obtained and other related documents.

To date, I have not received a response. This information is crucial for my case, and if I do not hear back from you by the end of the day, I will be compelled to file a motion requesting the court's assistance in obtaining these documents.

Your prompt attention to this matter would be greatly appreciated.

Thank you for your assistance.

Sincerely,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

[Quoted text hidden]

**Lolonyon Akouete** <info@smartinvestorsllc.com> Thu, Aug 1, 2024 at 7:21 AM
To: Stephen Gordon <sgordon@gordonfirm.com>

Dear Stephen,

I hope this message finds you well.

I am reaching out to request your assistance in obtaining a response to my previous emails dated May 9 and July 31. These emails were directed to Jose Centeio, who I understand has replaced Scott A. Schlager at Nathanson & Goldberg, P.C. However, I have not received any response from Jose, and Scott previously advised me to contact Roger L. Smerage, the Town's attorney, who has also not responded.

To provide context, We had previously gone through discovery in the land court case when Nathanson & Goldberg was representing Westborough SPE LLC. I urgently need a copy of the appraisal obtained by the Town and any other related documents provided during that discovery process.

As I have not received a response to my previous requests, I am now seeking your intervention. This information is crucial for my ongoing case.

Your prompt attention to this matter would be greatly appreciated. Please let me know how I can obtain the necessary documents or if there are any further steps I need to take.

Thank you for your assistance.

Sincerely,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

[Quoted text hidden]

---

**Stephen Gordon** <sgordon@gordonfirm.com> Thu, Aug 1, 2024 at 1:40 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>

Lolo-

I have asked Nathanson & Goldberg to review their file to see if they have an appraisal from the Town and other discovery. I will report as soon as I hear from them.

Best,

Steve

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Main: 617-261-0100
Direct: 617-456-1270
Sgordon@gordonfirm.com
www.GordonFirm.com

[Quoted text hidden]

Gmail

Exhibit 2

**Lolonyon Akouete <info@smartinvestorsllc.com>**

---

## Request for Copy of Appraisal from 2018

1 message

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Wed, Jul 31, 2024 at 6:49 AM
To: "Roger L. Smerage" <rsmerage@k-plaw.com>

Dear Roger Smerage,

I hope this message finds you well.

I am writing to formally request a copy of the appraisal obtained by the Town in 2018 related to the property at 231 Turnpike Road, Westborough, MA. This appraisal was previously provided during the discovery process. However, I did not receive a copy of it as my previous attorney retained it.

This document is essential for my current proceedings. Previously, the Town did not provide this information, because they do not want me to obtain proof of funds necessary to redeem the property. Given the context and its inclusion in discovery, I kindly request that you provide me with a copy of the appraisal at your earliest convenience.

Your cooperation in this matter is greatly appreciated. Please let me know if there are any formalities I need to complete or additional information you require to facilitate this request.

Thank you for your assistance.

Sincerely,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

---

**Appraisal.pdf**
196K

Gmail

Exhibit 3

**Lolonyon Akouete <info@smartinvestorsllc.com>**

# 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

**Lolonyon Akouete** <info@smartinvestorsllc.com> Fri, Feb 3, 2023 at 2:41 PM
To: Iris Leahy <AttyLeahy@outlook.com>
Cc: "loloact2@gmail.com" <loloact2@gmail.com>, denise Edwards <deniseedwards818@yahoo.com>

Hello Ms. Leahy,

Would the Town respond to my request for a copy of the Appraisal from 2018?
The Appraisal will help me obtain the proof of funds you requested.

Why is your office closed until the day before the hearing? Is it because you are away?
Does the Town have other attorneys that can back you up? Such as Dawn E Bloom, Esq. or Thomas William McEnaney, Esq.?

Thank you in advance for your response.

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

[Quoted text hidden]

Gmail

Lolonyon Akouete <info@smartinvestorsllc.com>

## 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

**Iris Leahy** <AttyLeahy@outlook.com> Thu, Feb 9, 2023 at 11:40 AM
To: Lolonyon Akouete <info@smartinvestorsllc.com>
Cc: "loloact2@gmail.com" <loloact2@gmail.com>, denise Edwards <deniseedwards818@yahoo.com>

Hello Mr. Akouete,

Thank you for your patience, my office was closed from February 2, 2023, and reopened today. While it is personal information, I respond to your question and will share that I had a vacation planned over a year ago that I took and closed my office during that time.

The Town of Westborough has denied your request for a copy of the appraisal as this information is exempted from disclosure by law and should not be relevant for your use in obtaining financing as the appraisal is from several years ago.

[Quoted text hidden]
[Quoted text hidden]

> [Quoted text hidden]
> [Quoted text hidden]
>
> Affidavit of JBS (with exhibits).pd
>
> [Quoted text hidden]
> [Quoted text hidden]

Gmail **Lolonyon Akouete <info@smartinvestorsllc.com>**

---

## 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

---

**Lolonyon Akouete** <info@smartinvestorsllc.com> Thu, Feb 9, 2023 at 3:00 PM
To: Iris Leahy <AttyLeahy@outlook.com>
Cc: "loloact2@gmail.com" <loloact2@gmail.com>, denise Edwards <deniseedwards818@yahoo.com>

Hello Ms. Leahy,

Thank you for your response.

My lender wants to confirm the value. It doesn't matter how old the appraisal is. Otherwise, I will have to obtain a new appraisal or a BPO (broker price opinion)

I am trying to prevent unnecessary expenses, just like the Town is not interested in increasing more legal fees in this case. If they refuse, we will also refuse to pay the $6,000.00 they spend to obtain the appraisal when we redeem the property.

Thank you,
Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

[Quoted text hidden]

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC<br><br>Debtor | Chapter 7, No. 23-40709 |

**<u>TRUSTEE'S OPPOSITION TO LOLONYON AKOUETE'S MOTION TO ALLOW CLAIM (DOCKET NO. 214)</u>**

NOW comes JONATHAN R. GOLDSMITH, Chapter 7Trustee of Westborough SPE, LLC ("Trustee") and hereby Opposes the Motion to Allow Claim. In particular, the Trustee submits that there is currently pending a Motion of Chapter 7 Trustee for Approval of Settlement Agreement ("Settlement") (Docket No. 190) which is intended to resolve, <u>inter alia,</u> the Motion of the Town of Westborough seeking dismissal of the bankruptcy case. Upon approval of the Settlement, the Trustee avers that at that time he will be in a better position to address any issues regarding the validity of any claims filed in the case, including the claim of Lolonyon Akouete.

WHEREFORE, the Trustee respectfully requests that the Motion of Lolonyon Akouete for allowance of his claim be denied.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 8\9\24

By: */s/ Jonathan R. Goldsmith, Esq.*

JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 7, No. 23-40709 |
| WESTBOROUGH SPE LLC | |
| Debtor | |

**CERTIFICATE OF SERVICE**

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Objection upon those parties listed on the attached Exhibit "A" by electronic mail or by mailing, first class mail, postage prepaid, on this 9th day of August, 2024:

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

The MobileStreet Trust
225 Turnpike Road
Westborough, MA 01581-2807

Westborough SPE LLC
231 Turnpike Road
Westborough, MA 01581-2807

Darin Clagg
24 Kobbs Korner Rd
Pine Bush, NY 12566-5302

Allen Hight
The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Richard King, Esq.
Office of US. Trustee
446 Main Street, 14th Fl.
Worcester, MA 01608-2361

Matthew A. Morris, Esq.
Sherin and Lodgen, LLP
101 Federal Street, 30th Floor
Boston, MA 02110-2109

David M. Ferris
Ferris Development Group, LLC
118 Turnpike Rd., Ste. 300
Southborough, MA 01772-2133

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589,

Jose Centeio, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109-2666

Ferris Development Group, LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556-1727

Town of Westborough
34 West Main Street
Westborough, MA 01581-1998

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798-2002

Nathanson & Goldberg, P.C.
c/o Stephen F. Gordon, Esq.
The Gordon Law Firm LLP
57 River Street
Wellesley, MA 02481

Town of Westborough
c/o Roger L. Smerage, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Town of Westborough
c/o Brian W. Riley, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Town of Westborough
c/o Jeffrey T. Blake, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

Lolonyon Akouete
P.O. Box 121
Wallkill, NY 12889

Craig R. Jalbert, CIRA
Verdolino & Lowey, P.C.
124 Washington Street
Foxboro, MA 02035

Gary M. Ronan
David M. Abromowitz
Goulston & Storrs
400 Atlantic Avenue
Boston, MA 02110

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |

OPPOSITION OF PETITIONING CREDITORS TO
MOTION OF LOLONYON AKOUETE FOR ALLOWANCE OF CLAIM
[Docket No. 214]

To The Honorable Christopher J. Panos, United States Bankruptcy Judge:

Now come the Petitioning Creditors herein and state the following in opposition to the Motion to Allow Claim [Docket No. 214] filed by Lolonyon Akouete:

1. The Petitioning Creditors commenced this case pursuant to an Involuntary Petition in order to "unlock," for the benefit of the Debtor's creditors, two assets:

(i) Funds of the Debtor in the sum of $1,293,646.83 escheated to the State of California as abandoned, but recoverable, property; and

(ii) The value of real estate in the Town of Westborough in excess of the property taxes owed thereon.

2. Prior to the Involuntary Petition, Mr. Akouete had been unsuccessful in obtaining the escheated funds from the State of California and was engaged in protracted Land Court litigation with the Town of Westborough. Neither asset had been monetized through any of the efforts of Mr. Akouete, although it is true that he identified and pursued (albeit unsuccessfully) both assets pre-Petition.

3. It does not appear that Mr. Akouete has any written agreements for compensation with the Debtor. Certainly, he has not been engaged by the Trustee for any purpose.

4. Mr. Akouete's Amended Proof of Claim states that he is entitled to 30% of the total recovery on the two assets that he identified but unsuccessfully pursued on behalf of the pre-Petition Debtor.

5. The Trustee in Bankruptcy recovered the sum of $1,293,646.83 from the State of California after Mr. Akouete's attempts to do so were unsuccessful.

6. The Trustee in Bankruptcy has, subject to the approval of this Court, entered into a settlement with the Town of Westborough (and others, including the Petitioning Creditors) which will result in either substantial payments to the Debtor's Estate or the Trustee having the right to sell the real property in the Town of Westborough. If the settlement is approved, regardless of how it is implemented, it is expected that the Debtor's Estate will receive a seven-figure sum from the ultimate implementation of the settlement.

7. Incredibly, Mr. Akouete, while seeking compensation from the (as yet undetermined) realization from the real property in the Town of Westborough, has objected to the settlement which will, if approved, result in the very benefit to the Debtor's Estate as to which he makes an unsubstantiated claim of 30% of those as yet unrealized and unquantified proceeds.

8. Mr. Akouete is incorrect that the time has passed for objection, by any party in interest, to the allowance of his Amended Proof of Claim and, indeed, regardless of the passage of time, Bankruptcy Rule 3008 ("Reconsideration of Claims") provides that "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate."

9. Mr. Akouete's Amended Proof of Claim requires a careful review pursuant to §502(b)(4) as it is a claim for services of an insider and the Court must determine whether "such claim exceeds the reasonable value of such services."

10. In addition to the circumstances advanced by the Trustee in Bankruptcy and the Town of Westborough in opposition to Mr. Akouete's Motion to Allow Claim, any such allowance is additionally premature since the amount of recovery to which Mr. Akouete in his Amended Proof of Claim seeks to apply a 30% entitlement is, itself, unknown and will remain unknown until either the settlement proposed by the Trustee in Bankruptcy, if approved, is fully consummated or, if the settlement is not approved, alternative means are effected by the Trustee in Bankruptcy to realize upon the value of the Debtor's real property in the Town of Westborough.

Wherefore, the Petitioning Creditors pray that this Court deny the Motion to Allow Claim [Docket No. 214], without prejudice to the allowance or disallowance of Mr. Akouete's Amended Proof of Claim at a later time, either as a result of a further Motion to Allow or an Objection to Claim by a party in interest

Respectfully submitted,

PETITIONING CREDITORS,

By their attorneys,

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)
The Gordon Law Firm LLP
57 River Place, Suite 200
Wellesley, Massachusetts 02481
Tel: (617) 261-0100
E-mail: sgordon@gordonfirm.com

Dated: August 9, 2024

CERTIFICATE OF SERVICE

I, Stephen F. Gordon, hereby certify that on August 9, 2024, the foregoing **Opposition of Petitioning Creditors to Motion of Lolonyon Akouete for Allowance of Claim** was served by operation of the Court's ECF System on all individuals designated to receive service by ECF:

- Jeffrey T Blake jblake@k-plaw.com
- Paul W. Carey pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com
- Jose C. Centeio jcc@natgolaw.com

- Jonathan R. Goldsmith bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;
- Jonathan R. Goldsmith trusteedocs1@gkalawfirm.com, trusteedocs@gkalawfirm.com; mwolohan@gkalawfirm.com;MA43@ecfcbis.com;
- Stephen F. Gordon sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King USTPRegion01.WO.ECF@USDOJ.GOV
- Brian W. Riley briley@k-plaw.com
- Roger L. Smerage rsmerage@k-plaw.com

and by email upon:

Lolonyon Akouete (info@smartinvestorsllc.com)

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)

P:\Clients-GLF\Westborough SPE\Plead (Bktcy)\Opp to Mot to Allow Claim.docx

Case 1:26-cv-10037-WGY Document 13-3 Filed 02/11/26 Page 433 of 549

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: Westborough SPE LLC<br>Debtor | Chapter 7<br>23-40709-CJP |

**ORDER**

**MATTER:**
#229 Motion filed by Creditor Lolonyon Akouete to Compel Release of Appraisal and Related Documents.

Denied.

Lolonyon Akouete (the "Movant") appears to be seeking an order compelling discovery from the Town of Westborough and others, but it does not appear that the Movant has served any discovery requests. It appears that Movant believes that the Town has information that may be relevant to Movant's opposition [ECF No. 191] to a motion filed by the Chapter 7 Trustee to compromise certain claims of the estate [ECF No. 190]. The Movant represents that he has made informal requests that certain documents be produced to him, which have been denied. After filing his opposition on July 11, 2024, the Movant became entitled to serve discovery in relation to that contested matter. *See* Fed. R. Bankr. P. 9014(c). Apparently, he has not served formal discovery. The Court may not "compel" a response to discovery that has not been served.

The Movant may request subpoenas from the Clerk of Court to be issued to specific parties identified in the Motion, subject to any appropriate objections. The Court encourages the Town of Westborough to consider producing responsive information, not otherwise subject to objection, as soon as possible. Otherwise, the Court will consider the necessity of discovery at the hearing on approval of the proposed compromise.

Dated: 08/09/2024

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

**BAP NO. MW 24-016**

---

**Bankruptcy Case No. 23-40709-CJP**

---

**WESTBOROUGH SPE LLC,**
**Debtor.**

---

**LOLONYON AKOUETE,**
**Appellant,**

**v.**

**NATHANSON & GOLDBERG, P.C.; MOBILESTREET TRUST;**
**TOWN OF WESTBOROUGH; and**
**JONATHAN R. GOLDSMITH, Chapter 7 Trustee,**
**Appellees.**

---

**Finkle, Chief U.S. Bankruptcy Appellate Panel Judge;**
**Lamoutte and Cabán, U.S. Bankruptcy Appellate Panel Judges.**

## JUDGMENT OF DISMISSAL

Lolonyon Akouete (the "Appellant") appeals from the bankruptcy court's July 25, 2024 order denying his Motion for Interim Distribution (the "Order"). For the reasons set forth below, we conclude the Order is interlocutory and, therefore, not appealable as of right. Additionally, we decline to exercise our discretionary authority to hear this appeal. Accordingly, the appeal is **DISMISSED** for lack of jurisdiction.

## BACKGROUND

### I. Commencement of the Bankruptcy Case

In August 2023, Nathanson & Goldberg, P.C., and MobileStreet Trust (collectively, the "Petitioning Creditors") filed an involuntary chapter 7 petition against Westborough SPE LLC

(the "Debtor"). On its bankruptcy schedules, the Debtor listed assets totaling over $9 million, consisting of the Debtor's interest in real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property") and about $1.2 million in funds held by the California State Controller's Office.

The bankruptcy court entered an order for relief on October 11, 2023, and Jonathan R. Goldsmith (the "Trustee") was appointed chapter 7 trustee. A Notice of Chapter 7 Bankruptcy Case was issued on October 12, 2023, informing creditors that the deadline to file proofs of claim was January 9, 2024.

In December 2023, the Appellant—who purports to be the "manager" of the Debtor—filed a proof of claim, asserting an unsecured claim of about $625,000. He amended his proof of claim on June 23, 2024, to increase the amount to about $1,250,000. He identified the basis of his amended claim as: "Services performed (Management and Asset Recovery)."

**II. Town of Westborough's Motion for Relief from Stay and Motion to Dismiss**

On October 3, 2023, the Town of Westborough (the "Town") filed a motion for relief from the automatic stay to continue a tax foreclosure action against the Property in the Massachusetts Land Court (the "Tax Foreclosure Action"). The Town asserted that a tax foreclosure judgment had been entered against the Debtor in January 2022, and the Debtor was seeking to vacate that judgment. On the eve of an evidentiary hearing in the Land Court on the motion to vacate, the Petitioning Creditors filed the involuntary petition against the Debtor, thereby staying the Tax Foreclosure Action. Therefore, the Town sought stay relief so the Land Court could adjudicate the motion to vacate and conclude the Tax Foreclosure Action.

Thereafter, on January 16, 2024, the Town moved to dismiss the bankruptcy case for cause, asserting that the involuntary petition was "an abuse and manipulation of the Bankruptcy

Code designed solely to hinder final resolution of the Tax Foreclosure Action." According to the Town, the involuntary petition against the Debtor was filed by the Debtor's own counsel as "a strategic maneuver to frustrate the Land Court's adjudication of the Tax Foreclosure Action" and the Town's "disposition of real property that the Town acquired through the Tax Foreclosure Action." The Trustee, the Petitioning Creditors (collectively), and Nathanson & Goldberg, P.C. (individually) filed objections to the motion to dismiss.

The next day, the Trustee removed the Tax Foreclosure Action to the bankruptcy court. The Town then moved for the bankruptcy court to either remand the action to the Land Court or abstain from hearing it, arguing that the Property was not property of the bankruptcy estate. See Adv. Pro. No. 24-04006. Subsequently, the Trustee, the Town, and certain other creditors, including the Petitioning Creditors, commenced negotiations to resolve all disputes between them and all issues concerning the Property as part of the administration of the bankruptcy estate. While settlement negotiations were ongoing, hearings on the Town's motions were continued numerous times.

### III. Appellant's First Motion for Interim Distribution

On February 11, 2024, the Appellant filed a Motion for Interim Distribution (the "First Motion for Interim Distribution"). Citing Fed. R. Bankr. P. 3009 and emphasizing that the claims bar date had passed, the Appellant requested an order authorizing interim distributions of almost $1 million to seven creditors, including $250,000 to the Appellant and about $468,000 to the Petitioning Creditors. The Appellant argued that interim distributions were "necessary to address the critical financial obligations of the Debtor and to provide some relief to creditors." He further contended that "[t]he funds currently available in the estate [about $1.2 million],

along with the potential for further recovery [from the sale of the Property], justify the proposed interim distribution plan."

The Petitioning Creditors, the Trustee, and the Town filed objections to the First Motion for Interim Distribution. The Trustee argued that an interim distribution would be "premature" as he was finalizing his review of the proofs of claim filed and intended to object to some of them. The Petitioning Creditors "adopt[ed]" the Trustee's objection and further stated that a partial interim distribution would "only serve to delay the ultimate recovery in full of creditors . . . ." The Town objected on the following grounds: (1) the Appellant lacked authority to act as a manager for the Debtor; and (2) the Appellant's motions were intended to interfere with the Town's disposition of the Property, which was once owned by the Debtor but title to which was now "vested in the Town pursuant to a pre-petition tax title foreclosure judgment."

On March 19, 2024, the bankruptcy court, without a hearing, entered an order denying the Appellant's motion as "premature." The bankruptcy court did not elaborate further on the basis for its ruling.

**IV. Appellant's Second Motion for Interim Distribution**

Three months later, on June 19, 2024, the Appellant filed another Motion for Interim Distribution ("Second Motion for Interim Distribution"), stating:

> [T]he bankruptcy estate has been open for over nine months, and more than five months have elapsed since the deadline for filing proofs of claim. This significant passage of time highlights that an interim distribution is no longer premature. The funds currently available in the estate, totaling over $1.29 million, combined with the anticipated proceeds from the sale of the 231 Turnpike Road property, provide ample liquidity to support an interim distribution. The real delay in this case stems from the settlement proposal that the Town of Westborough and the Trustee have been negotiating for over seven months. This settlement proposal involves key parties such as LAX Media, Nathanson and Goldberg, Mobile Street Trust, Ferris Development Group, the Town of Westborough, the Chapter 7 Trustee, and the debtor.

> The primary term of the settlement is the sale of the property at 231 Turnpike Road to either LAX Media or Ferris Development, with a structured financial distribution from the sale proceeds. . . .
>
> . . . .
>
> Given the complexity and duration of [the settlement] negotiations, it is clear that the settlement proposal will take a significant amount of time to resolve fully. The settlement should not hold up all creditors indefinitely. It should only affect those who are part of it, especially when the bankruptcy estate has sufficient funds to pay creditors who are not included in the settlement. The Trustee should be ordered to evaluate the claims of creditors who are not part of the settlement and make payments based on the available funds in the bankruptcy estate.

Again, the Petitioning Creditors, the Trustee, and the Town objected. The Trustee reasserted his argument that interim distributions would be "premature" because he intended to object to several claims, including the amended claim filed by the Appellant. The Town contended that its original grounds for objecting to the Appellant's First Motion for Interim Distribution remained unchanged and that the Appellant's newly asserted complaints of delay caused by settlement negotiations between the Trustee and the Town did not entitle the Appellant to an interim distribution. The Petitioning Creditors opposed the motion on the ground that "any interim distribution at this point (especially given [the Appellant]'s recent motion to significantly increase the amount of his claim through an amendment to his existing Proof of Claim) would impede the orderly administration of th[e] bankruptcy case and result in unforeseeable, unintended and potentially negative consequences to the estate and its creditors."

## V. Motion to Approve Settlement Agreement

On July 8, 2024, the Trustee filed a motion seeking court approval of a "global" settlement agreement between the Trustee and certain creditors (including the Town and the Petitioning Creditors, but not the Appellant) which would "finally resolve all of the contested issues between and among the Parties surrounding [the Property]," including whether the Property was an asset of the Debtor's bankruptcy estate. The Appellant objected to the motion

arguing, among other things, that the settlement "does not serve the best interests of the creditors or the bankruptcy estate" as it "undervalues the Debtor's primary asset, fails to maximize the return for creditors, and improperly grants an exclusive sale period to a lower bidder."

**VI. Order Denying Second Motion for Interim Distribution**

Two weeks later, on July 25, 2024, the bankruptcy court, again without a hearing and without elaboration, entered the Order denying the Second Motion for Interim Distribution "as premature." This appeal followed.

**APPELLATE JURISDICTION**

"It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004) (citations omitted). Therefore, "we must assay our jurisdiction before proceeding on the merits." Haddock Rivera v. ASUME (In re Haddock Rivera), 486 B.R. 574, 576 (B.A.P. 1st Cir. 2013).

**I. Final Orders: Appealable as of Right**

We have jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 39 (2020). "A decision is final if it ends the li[ti]gation on the merits and leaves nothing for the court to do but execute the judgment." Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998) (citations and internal quotation marks omitted). In contrast, an interlocutory order "only decides some intervening matter pertaining to the cause, and . . . requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." Id. (citations and internal quotation marks omitted). Here, the Order denying the Second Motion for Interim Distribution is interlocutory. The bankruptcy court denied the motion as "premature," meaning

the motion was filed "before the proper, usual, or intended time." Merriam-Webster's Dictionary Online, https://www.merriam-webster.com/dictionary/premature (last visited Aug. 14, 2024). Clearly, the court's ruling contemplates that more proceedings need to occur before the motion is ripe for disposition. Further, courts have ruled that orders awarding "interim distributions are interlocutory in nature," as they are subject to subsequent adjustment. See, e.g., In re Partial Hosp. Inst. of Am., 281 B.R. 728, 734 (Bankr. S.D. Ala. 2001); see also Kingdom Fresh Produce, Inc. v. Stokes Law Office, L.L.P. (In re Delta Produce, L.P.), 845 F.3d 609, 617 (5th Cir. 2016) (stating, in the context of an interim fee award, that "the very term interim denotes that such an award is not the end of the fee dispute"); Livecchi v. Gordon, 541 B.R. 545, 547 (W.D.N.Y. 2014) (also discussing interlocutory nature of interim fee awards); United States v. Vickers (In re Fortier), 315 B.R. 829, 833 (W.D. Mich. 2004) (recognizing that interim distributions under § 726 are interlocutory). It follows, therefore, that an order *denying* a request for an interim distribution is also interlocutory. See In re Copeland, No. 1:93-CV-422, 1993 U.S. Dist. LEXIS 13894 (W.D. Mich. Sep. 10, 1993) (ruling that order denying interim compensation was interlocutory)

Accordingly, we conclude that the Order is not a final order immediately appealable as of right.

## II. Interlocutory Orders: Appealable with Leave

We also decline to exercise our discretion to hear this interlocutory appeal under 28 U.S.C. § 158(a)(3).[1] In determining whether to hear an interlocutory appeal from a bankruptcy

[1] Although the Appellant has not filed a motion seeking leave to appeal as set forth in Fed. R. Bankr. P. 8004(a)(2) (providing that an appellant seeking leave to appeal an interlocutory order "must" file a motion for leave contemporaneously with the notice of appeal), we may "treat the notice of appeal as a motion for leave and either grant or deny it." Fed. R. Bankr. P. 8004(d); see also Simon v. Amir (In re Amir), 436 B.R. 1, 8 (B.A.P. 6th Cir. 2010). We will consider whether to grant leave "based on the

court order under 28 U.S.C. § 158(a)(3), appellate courts in this circuit, including the Panel, typically apply the factors set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals to the courts of appeals. See, e.g., Canadian Pac. Ry. Co. v. Keach, No. 1:17-cv-00278-JDL, 2017 WL 4845733, at *3 (D. Me. Oct. 26, 2017) (citing In re Bank of New Eng. Corp., 218 B.R. at 652); see also Oliver C & I Corp. v. Carolina Devs. S. en C. por A., S.E., No. 20-1188 (FAB), 2020 WL 6386816, at *3 (D.P.R. Oct. 30, 2020); Me. Dep't of Health & Human Servs. v. Getchell Agency, No. 1:17-cv-00252-JAW, 2018 WL 1831412, at *3 (D. Me. Apr. 17, 2018); Nickless v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re Advanced RISC Corp.), 317 B.R. 455, 456 (D. Mass. 2004) (same). "Section 1292(b) permits appellate review of certain interlocutory orders, decrees and judgments . . . to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties." In re Bank of New Eng. Corp., 218 B.R. at 652 n.17 (citation and internal quotation marks omitted). The First Circuit has cautioned, however, that leave to appeal "should be used sparingly and only in exceptional circumstances . . . ." In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) (citation and internal quotation marks omitted).

We consider the following § 1292(b) factors when determining whether to review an interlocutory appeal: (1) whether the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) whether an immediate appeal from the order might materially advance the ultimate termination of the litigation. See In re Advanced RISC Corp., 317 B.R. at 456; see also In re Bank of New Eng. Corp., 218 B.R. at 652. The party seeking interlocutory review—here the Appellant—must establish all three elements. WM Cap. Partners 53, LLC v. Allied Fin., Inc., No. 17-2015 (ADC), 2018 WL 1704474, at *2 (D.P.R.

---

papers already on file," rather than order the Appellant to file a motion for leave. See In re Lane, 591 B.R. 298, 306 (B.A.P. 6th Cir. 2018).

Mar. 30, 2018) (stating that the appellant has the burden of satisfying the three § 1292(b) factors).

Having failed to file a motion for leave to appeal, the Appellant has not attempted to satisfy the § 1292(b) test. See Fed. R. Bankr. P. 8004(a)(2) & (b)(1) (providing that an appellant seeking leave to appeal an interlocutory order "must" file a motion which sets forth, among other things, "the reasons why leave to appeal should be granted"). Based on our own analysis, we conclude the statutory test for interlocutory review is not satisfied on this record. Most critical here, the Order does not involve a "controlling question of law." A "controlling question of law" is "an abstract legal issue or what might be called one of pure law, matters the [appellate courts] can decide quickly and cleanly without having to study the record." McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1258 (11th Cir. 2004) (citation and internal quotation marks omitted). Here, the Appellant challenges the bankruptcy court's denial of his request for an order authorizing interim distributions to creditors, a matter which was in the bankruptcy court's discretion. See, e.g., Summit Inv. Mgmt. LLC v. Connolly (In re Fog Cap Retail Inv'rs LLC), No. 22-1297, 2024 WL 659559, at *7 (10th Cir. Feb. 16, 2024) (recognizing the bankruptcy court had discretion in determining whether to approve interim distributions); Saba v. Cory (In re Flamingo 55, Inc.), No. 2:05-cv-01521-RLH-GWF, 2006 WL 2432764, at *3 (D. Nev. Aug. 21, 2006) (determining whether bankruptcy court abused its discretion in authorizing the interim distribution of the estate's funds to unsecured creditors). A matter within the bankruptcy court's discretion generally does not involve a controlling question of law. See In re Diamond Trucking, Inc., No. 3:18-CV-140 JD, 2019 WL 316711, at *4 (N.D. Ind. Jan. 24, 2019) (ruling that orders involving matters within the bankruptcy court's discretion do not involve controlling questions of law); Am. Specialty Cars Holdings, LLC v. Official Committee of Unsecured Creditors (In re

ASC Inc.), 386 B.R. 187, 196 (E.D. Mich. 2008) ("A legal question of the type envisioned in § 1292(b) . . . generally does not include matters within the discretion of the trial court") (citation omitted); In re Auto. Prof'ls, Inc., 379 B.R. 746, 760 (N.D. Ill. 2007) (declining appellate review of issue that "[did] not clearly present a controlling and contestable issue of law (but instead a matter within the bankruptcy court's discretion)").

Because the first element of the analysis under § 1292(b) is not satisfied, we need not consider the remaining two elements. See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff), No. 17-CV-2959 (VEC), 2017 WL 4417701, at *3 n.5 (S.D.N.Y. Oct. 3, 2017) (stating that because the § 1292(b) factors are "conjunctive," where one factor is not satisfied, the court did not need to address the other factors); Kore Holdings, Inc. v. Rosen (In re Rood), 426 B.R. 538, 549 (D. Md. 2010) (stating that where "the first element of the analysis [under § 1292(b)] is not present, the remaining two are essentially moot"). Consequently, we will not exercise our discretion to hear this interlocutory appeal.[2] See In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d at 1010 n.1.

[2] We also decline to exercise jurisdiction under either the Forgay-Conrad doctrine or the collateral order doctrine. The Forgay-Conrad doctrine "bestow[s] appellate jurisdiction over interlocutory orders when 'irreparable injury' to the aggrieved party may attend delaying appellate review until the litigation is over." In re Bank of New Eng. Corp., 218 B.R. at 649 n.8 (citation omitted). To be appealable under the collateral order doctrine, the order must have: "(1) conclusively determine[d] the disputed question, (2) resolve[d] an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 55 (1st Cir. 2009) (quoting Will v. Hallock, 546 U.S. 345, 349 (2006)). Having failed to file a motion for leave to appeal, the Appellant has not advocated for our review of the Order under either of these doctrines and the record does not support such interlocutory review.

## CONCLUSION

Because the Order is interlocutory and does not satisfy the requirements for discretionary interlocutory review, we **DISMISS** this appeal for lack of jurisdiction.

FOR THE PANEL:

Dated: August 29, 2024

By: /s/ Leslie C. Storm
Leslie C. Storm, Clerk

cc:
By U.S. Mail: Westborough SPE LLC
By U.S. Mail and email: Lolonyon Akouete; Jeffrey T. Blake, Esq.; Jose Couto Centeio, Esq.; Brian W. Riley, Esq.
By CM/ECF: Stephen F. Gordon, Esq.; Roger L. Smerage, Esq.; Jonathan R. Goldsmith, Esq.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br>Westborough SPE LLC<br>Debtor | Chapter 7<br>23-40709-CJP |

**ORDER**

**MATTER:**
#831 Supplemental Motion filed by Creditor Lolonyon Akouete for Comfort Order Clarifying that Joinder of Babcock & Brown in State Court Action does not Violate Automatic Stay.

"CREDITOR LOLONYON AKOUETE'S SUPPLEMENTAL MOTION FOR COMFORT ORDER CLARIFYING THAT JOINDER OF BABCOCK & BROWN IN STATE COURT ACTION DOES NOT VIOLATE AUTOMATIC STAY" [ECF NO. 831] (THE "MOTION") IS DENIED.

THE COURT HAS THE DISCRETION TO ISSUE "COMFORT ORDERS" IN APPROPRIATE CIRCUMSTANCES. I DECLINE TO EXERCISE THAT DISCRETION WITH RESPECT TO THIS MOTION. BECAUSE MR. AKOUETE APPEARS TO STATE AN INTENTION TO SEEK A DETERMINATION FROM A STATE COURT REGARDING OWNERSHIP OF PROPERTY OF THE ESTATE, MR. AKOUETE IS ORDERED TO PROVIDE COPIES OF ANY PLEADINGS FILED IN ANY COURT RELATING IN ANY WAY TO THE DEBTOR SO THAT THE TRUSTEE MAY ASSESS WHETHER MR. AKOUETE HAS VIOLATED THE AUTOMATIC STAY OR HAS COMMENCED LITIGATION THAT COULD INTERFERE WITH ADMINISTRATION OF THE BANKRUPTCY ESTATE OR DETERMINATION OF ISSUES BY THIS COURT AND SEEK INJUNCTIVE OR OTHER RELIEF FROM THIS COURT.

Dated: 07/31/2025

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br>Westborough SPE LLC<br><br>Debtor | Chapter 7<br>23-40709-CJP |

**ORDER**

**MATTER:**
#827 Renewed Motion filed by Creditor Lolonyon Akouete to Reopen Discovery for Limited Purposes to Obtain IRS and Retainer Documentation.

DENIED. THE MOVANT DOES NOT PROFFER SUFFICIENT CAUSE TO RE-OPEN DISCOVERY PARTICULARLY GIVEN THAT MOTIONS FOR SUMMARY JUDGMENT HAVE BEEN FILED AND THE SUMMARY JUDGMENT RECORD IS CLOSED. AS TO THE REQUESTED SUBPOENA TO THE IRS, THE MOVANT DOES NOT SET OUT ANY REASON WHY THE DISCOVERY COULD NOT HAVE BEEN TIMELY SERVED WITHIN THE DISCOVERY PERIOD. AS TO THE REQUESTED DISCOVERY FROM GOULSTON & STORRS PC, THE MOVANT HAS MADE SIMILAR REQUESTS IN THE PAST. LIMITED DISCOVERY WAS PERMITTED, BUT THE RELEVANCE TO THE TRUSTEE'S OBJECTION TO THE MOVANT'S CLAIM OF POTENTIALLY PRIVILEGED RETENTION INFORMATION FROM 1997-1998 IS SPECULATIVE.

Dated: 07/31/2025

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| Debtor. | ) | |

**EMERGENCY MOTION FOR ORDER (1) AUTHORIZING LIMITED, EXPEDITED RULE 2004 DISCOVERY REGARDING MIGNONETTE INVESTMENTS LIMITED'S IRS "RESPONSIBLE PARTY" INFORMATION; (2) IN THE ALTERNATIVE, COMPELLING EXECUTION OF A LIMITED IRS FORM 8821 TO PERMIT RETRIEVAL OF IRS 147C/RELATED RECORDS; (3) CLARIFYING THAT SUCH LIMITED DISCOVERY DOES NOT VIOLATE THE AUTOMATIC STAY; AND (4) SHORTENING NOTICE/SETTING EXPEDITED HEARING**

Movant Lolonyon Akouete, a creditor, respectfully moves on an emergency basis for a narrowly tailored order authorizing discovery essential to administration of this estate and related noticing and service. Grounds follow.

## I. INTRODUCTION

1. The Court has already recognized the importance of establishing ownership and control information for this Debtor by granting Movant's letter rogatory to the High Court of Justice of the British Virgin Islands (order entered April 7, 2025; exemplified August 25, 2025). Despite those efforts, Movant still lacks one discrete piece of domestic information: the IRS "responsible party" associated with Mignonette Investments Limited (the Debtor's sole member).
2. The Chapter 7 Trustee's accountants, Verdolino & Lowey, P.C. (V&L), produced their materials and confirmed in writing that Westborough SPE LLC is a single-member LLC owned 100% by Mignonette; that no separate corporate returns are filed for the Debtor; and that any tax reporting flows through Mignonette. V&L further stated they do not possess IRS-origin documents identifying Mignonette's responsible party.
3. Babcock & Brown (through related entities/officers) historically acted as manager for the Debtor and is the most likely domestic custodian of IRS assignment/confirmation/notice documents (e.g., SS-4, CP-575, 147C, 8822-B, 2848/CAF acknowledgments, or IRS correspondence) reflecting the responsible-party name and mailing address for Mignonette's EIN.
4. This single data point is critical to: (a) ensuring proper service/notice on the Debtor's sole member; (b) enabling the Trustee to coordinate tax compliance given the Debtor's pass-through status; and (c) avoiding further delay while international requests are pending. If the IRS records exist domestically, it is more efficient and less burdensome to obtain them now.

## II. JURISDICTION AND AUTHORITY

5. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate).
6. Relief is authorized by Fed. R. Bankr. P. 2004 (examination into matters affecting administration of the estate), Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45 (subpoenas), 11 U.S.C. § 105(a) (orders necessary or appropriate to carry out the provisions of title 11), and Fed. R. Bankr. P. 9006(c)(1) (shortening notice).

## III. RELEVANT BACKGROUND

7. An involuntary Chapter 7 case was commenced on August 31, 2023. Jonathan R. Goldsmith serves as Chapter 7 Trustee.
8. On April 7, 2025, the Court granted Movant's motion for a letter rogatory to the BVI seeking Mignonette ownership/control records; exemplification issued August 25, 2025.
9. On June 20, 2025, V&L confirmed in writing: (i) the Debtor is a single-member LLC owned 100% by Mignonette; (ii) no separate returns for the Debtor are filed; and (iii) tax reporting falls on Mignonette. V&L's production included workpapers and activity summaries but no IRS-origin documents for Mignonette, and they stated they do not possess them.
10. Movant has conferred with the Trustee's accountant. The Trustee's accountant produced what they have. Babcock & Brown has not produced any IRS-origin document identifying Mignonette's responsible party.

## IV. ARGUMENT

A. The request fits Rule 2004.
11. Rule 2004 permits discovery into any matter that may affect administration of the estate. Identifying the responsible party for the Debtor's sole member directly affects proper notice/service, coordination of pass-through tax reporting, and efficient case administration.

B. The request is narrow and minimally burdensome.
12. Movant seeks only IRS-origin documents (or a one-page IRS confirmation such as a 147C) that state the responsible-party name and mailing address for Mignonette's EIN. If the custodian (Babcock & Brown or affiliates) does not possess such records after a diligent search, Movant requests an order compelling execution of a limited IRS Form 8821 (Tax Information Authorization) authorizing the Trustee (or Movant, as the Court directs) to obtain a 147C/SS-4/8822-B directly from IRS solely for responsible-party identity and mailing address. Sensitive numbers may be redacted.

C. Section 105(a) supports practical relief.
13. Section 105(a) allows procedures that efficiently accomplish administration, including directing execution of a narrow authorization or identifying the proper custodian. This avoids unnecessary international process where the information is more readily available domestically.

D. Good cause exists to shorten notice and expedite.
14. Responsible-party data is needed to complete/confirm proper service and notice and to progress long-pending issues; Movant also faces time-sensitive obligations in October. Good cause exists under Rule 9006(c)(1) to shorten notice and set an expedited hearing, or to grant interim relief subject to later objection.

E. Clarification regarding the automatic stay.
15. The relief sought authorizes limited document production or execution of a form authorization

to identify a contact/responsible party for the Debtor's sole member. It does not reach estate assets or adjudicate claims. To the extent necessary, the Court should clarify that compliance with this limited discovery does not violate the automatic stay.

## V. REQUESTED RELIEF

Movant respectfully requests entry of an order:

A. Authorizing Movant under Rule 2004 to serve documents-only subpoenas (Rule 9016/Fed. R. Civ. P. 45) on (i) Babcock & Brown Holdings, Inc.; Babcock & Brown International Pty Ltd.; and their subsidiaries/affiliates; (ii) Goulston & Storrs PC (if applicable); and (iii) any domestic custodian identified by those entities, limited to IRS-origin documents (including SS-4, CP-575, 147C, 8822-B, 2848/CAF acknowledgments, transcripts, or IRS correspondence) that identify the IRS "responsible party" (name and mailing address) for Mignonette Investments Limited's EIN;

B. Requiring production within 10 days of service, with rolling production of any readily available one-page IRS confirmations (e.g., 147C) within 5 business days;

C. In the alternative, if any subpoenaed entity contends after a diligent search that it does not possess such IRS-origin documents, directing that entity to (i) provide a custodian declaration to that effect within 7 days, and (ii) execute a limited IRS Form 8821 authorizing the Trustee (or Movant, as the Court may direct) to obtain from IRS the 147C/SS-4/8822-B solely to confirm the responsible-party name and mailing address for Mignonette's EIN;

D. Clarifying that compliance with the order, including document production and/or execution of a limited 8821, does not violate the automatic stay;

E. Shortening notice and setting this motion for an expedited hearing at the earliest available date, or granting interim relief subject to later objection; and

F. Granting such other and further relief as the Court deems just and proper.

DATED: September 28, 2025, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

Verdolino
&Lowey, P.C.

CERTIFIED
PUBLIC
ACCOUNTANTS

Pine Brook Office Park
124 Washington Street
Foxborough, MA 02035
508-543-1720
FAX 508-543-4114

June 20, 2025

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio, P.C.
1350 Main Street
Suite 1505
Springfield, MA 01103

FILE COPY

RE: Westborough SPE LLC
TIN: 94-3286768

Dear Jonathan:

This company is a single member LLC owned 100% by Mignonette Investments Limited, therefore, the income and expenses should be reported on the Mignonette Tax Return. There are no separate tax returns to be filed because of the reporting obligations of this type of entity.

Copies of the information that we have prepared should be mailed to Mignonette Investments Limited so they can report it on the entities 2023 and 2024 tax returns. No determination has been made as to the taxability of the activity and no depreciation has been calculated.

It is the client's duty to deduce the taxable ramifications ensuing from the information provided. We have made no suppositions and are not accountable for the presentation of the information from a tax perspective.

Please call me or Paula DiPietro if you have any questions.

Sincerely,

Craig R. Jalbert, CIRA
Enclosures

Westborough SPE LLC
Case #23-40709-CJP
Date Filed: Chapter 7 - 08/31/2023

**8/31/23-12/31/23 Bankruptcy Trustee Activity**

| | | Description | Receipts | Disbursements |
|---|---|---|---|---|
| 11/29/2023 | Ferris Development Group | Real Estate Sale Deposit | 287,500.00 | - |
| 12/13/2023 | United States Treasury | Tax Refund | 86.00 | |
| 12/13/2023 | United States Treasury | Tax Refund | 344.00 | |
| | | Total Tax Refunds | 430.00 | - |
| 12/29/2023 | Metropolitan Commercial Bank | Total Bank Fees | - | 5.00 |
| | | Totals | 287,930.00 | 5.00 |
| | | Net 8/31/2023 - 12/31/2023 activity | | 287,925.00 |
| | | 12/31/23 Ending Balance | | 287,925.00 |

Westborough SPE LLC
Case #23-40709-CJP
Date Filed: Chapter 7 - 08/31/2023

**1/1/24-12/31/24 Bankruptcy Trustee Activity**

| | | Description | Receipts | Disbursements |
|---|---|---|---|---|
| 1/10/2024 | Ferris Development Group, LLC | Total Return of Deposit | | 287,500.00 |
| 2/8/2024 | State of CA | Total Turnover of Funds | 1,293,646.83 | |
| 2/9/2024 | US Bankruptcy Court | Total Court Filing Fee | | 350.00 |
| 2/21/2024 | Metropolitan Commercial Bank | Bank Fees | 5.00 | - |
| 2/29/2024 | Metropolitan Commercial Bank | Bank Fees | | 1,125.90 |
| 3/29/2024 | Metropolitan Commercial Bank | Bank Fees | | 1,981.85 |
| 4/30/2024 | Metropolitan Commercial Bank | Bank Fees | | 2,200.39 |
| 5/31/2024 | Metropolitan Commercial Bank | Bank Fees | | 2,128.00 |
| 6/28/2024 | Metropolitan Commercial Bank | Bank Fees | | 1,918.89 |
| 7/24/2024 | Metropolitan Commercial Bank | Bank Fees | 4,046.89 | - |
| | | Total Bank Fees | 4,051.89 | 9,355.03 |
| 8/26/2024 | International Sureties, Ltd. | Total Bond Premium | - | 993.34 |
| 12/13/2024 | Core Values Appraisal & Advisory, Inc. | Total Appraisal Fees | - | 5,500.00 |
| | | Totals | 1,297,698.72 | 303,698.37 |
| | | Net 1/1/2024 - 12/31/2024 Activity | | 994,000.35 |
| | | 12/31/23 Ending Balance | | 287,925.00 |
| | | 12/31/24 Ending Balance | | 1,281,925.35 |

# Form 2
# Cash Receipts And Disbursements Record



| | | | |
|---|---|---|---|
| **Case No.:** | 23-40709-CJP | **Trustee Name:** | Jonathan R. Goldsmith (410430) |
| **Case Name:** | WESTBOROUGH SPE LLC | **Bank Name:** | Metropolitan Commercial Bank |
| **Taxpayer ID #:** | **-***6768 | **Account #:** | ******9130 Checking |
| **For Period Ending:** | 12/31/2024 | **Blanket Bond (per case limit):** | $40,000,000.00 |
| | | **Separate Bond (if applicable):** | N/A |

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Trans. Date | Check or Ref. # | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposit $ | Disbursement $ | Account Balance |
| 11/29/23 | | FERRIS DEVELOPMENT GROUP | WIRE FROM FERRIS DEVELOPMENT GROU | 1180-000 | 287,500.00 | | 287,500.00 |
| 11/29/23 | | Metropolitan Commercial Bank Wire Fee | Metropolitan Commercial Bank Wire Fee | 2600-000 | | 10.00 | 287,490.00 |
| 11/30/23 | | Metropolitan Commercial Bank Wire Fee Refund | Metropolitan Commercial Bank Wire Fee Refund | 2600-000 | | -10.00 | 287,500.00 |
| 12/13/23 | {1} | UNITED STATES TREASURY | Refund due Debtor | 1224-000 | 86.00 | | 287,586.00 |
| 12/13/23 | {1} | UNITED STATES TREASURY | Refund due Debtor | 1224-000 | 344.00 | | 287,930.00 |
| 12/29/23 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 5.00 | 287,925.00 |
| 01/10/24 | 101 | FERRIS DEVELOPMENT GROUP, LLC | RETURN OF DEPOSIT RE: PURCHASE OF REAL ESTATE | 2990-000 | | 287,500.00 | 425.00 |
| 02/08/24 | {2} | STATE OF CALIFORNIA | TURNOVER OF UNCLAIMED FUNDS DUE THE DEBTOR | 1129-000 | 1,293,646.83 | | 1,294,071.83 |
| 02/09/24 | 102 | U.S. BANKRUPTCY COURT | Court filing fee re: Adversary Proceeding No. 24-04006 | 2700-000 | | 350.00 | 1,293,721.83 |
| 02/21/24 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | -5.00 | 1,293,726.83 |
| 02/29/24 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 1,125.90 | 1,292,600.93 |
| 03/29/24 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 1,981.85 | 1,290,619.08 |
| 04/30/24 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 2,200.39 | 1,288,418.69 |
| 05/31/24 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 2,128.00 | 1,286,290.69 |
| 06/28/24 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 1,918.89 | 1,284,371.80 |
| 07/24/24 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | -4,046.89 | 1,288,418.69 |
| 08/26/24 | 103 | INTERNATIONAL SURETIES, LTD. | Bond No. 612419113 | 2300-000 | | 993.34 | 1,287,425.35 |
| 10/25/24 | 104 | CORE VALUES APPRAISAL & ADVISORY, INC. | Appraisal fee - 231 Turnpike Road - Inv. #24.ME.RT.10004 | 2990-000 | | 5,500.00 | 1,281,925.35 |

| | | | |
|---|---|---|---|
| **COLUMN TOTALS** | 1,581,576.83 | 299,651.48 | $1,281,925.35 |
| Less: Bank Transfers/CDs | 0.00 | 0.00 | |
| **Subtotal** | 1,581,576.83 | 299,651.48 | |
| Less: Payments to Debtors | | 0.00 | |
| **NET Receipts / Disbursements** | $1,581,576.83 | $299,651.48 | |

*{ } Asset Reference(s)*

*! - transaction has not been cleared*

# Form 2

## Cash Receipts And Disbursements Record

| | | | |
|---|---|---|---|
| **Case No.:** | 23-40709-CJP | **Trustee Name:** | Jonathan R. Goldsmith (410430) |
| **Case Name:** | WESTBOROUGH SPE LLC | **Bank Name:** | Metropolitan Commercial Bank |
| **Taxpayer ID #:** | **-***6768 | **Account #:** | ******9130 Checking |
| **For Period Ending:** | 12/31/2024 | **Blanket Bond (per case limit):** | $40,000,000.00 |
| | | **Separate Bond (if applicable):** | N/A |

| TOTAL - ALL ACCOUNTS | NET DEPOSITS | NET DISBURSEMENTS | ACCOUNT BALANCES |
|---|---|---|---|
| ******9130 Checking | $1,581,576.83 | $299,651.48 | $1,281,925.35 |
| | **$1,581,576.83** | **$299,651.48** | **$1,281,925.35** |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

WESTBOROUGH SPE LLC,
Debtor

Chapter 7
Case No. 23-40709-CJP

## EXEMPLIFICATION CERTIFICATE

I, Mary P. Sharon, Clerk of Court for the United States Bankruptcy Court for the District of Massachusetts and keeper of the records and seal, certify that the attached Order on Motion for Issuance of Letter Rogatory to the High Court of Justice of the British Virgin Islands (Docket No. 620), and its Exhibit 1, are true copies of records of this Court.

In testimony whereof I sign my name and affix the seal of this Court, at Boston, Massachusetts on August 25, 2025.

Mary P. Sharon, Clerk of Court

I, Christopher J. Panos, a Judicial Officer of this Court, certify that Mary P. Sharon, named above, is and was on the date noted, Clerk of this Court, duly appointed and sworn, and keeper of the records and seal, and that this certificate, and the attestation of the record, are in accordance with the laws of the United States.

Dated: August 25, 2025

Christopher J. Panos, U.S. Bankruptcy Judge

I, Mary P. Sharon, Clerk of Court for the United States Bankruptcy Court for the District of Massachusetts, keeper of the seal, certify that the Honorable Christopher J. Panos, named above, is and was on the date noted a Judicial Officer of this Court, duly appointed, sworn, and qualified, and that I am well acquainted with the Judge's official signature and know and certify the above signature to be that of the Judge.

In testimony whereof I sign my name, and affix the seal of this Court, at Boston, Massachusetts on August 25, 2025.

Mary P. Sharon, Clerk of Court

UNITED STATES BANKRUPTCY COURT DISTRICT OF MASSACHUSETTS

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

WESTBOROUGH SPE LLC,

Debtor.

Chapter 7
Case No. 23-40709-CJP

**ORDER ON MOTION FOR ISSUANCE OF LETTER ROGATORY TO THE HIGH COURT OF JUSTICE OF THE BRITISH VIRGIN ISLANDS**

Upon consideration of the motion requesting issuance of a letter rogatory [ECF No. 611] (the "Motion") of Lolonyon Akouete, the limited objection thereto [ECF No. 612] of the petitioning creditors, and Mr. Akouete's response [ECF No. 614], the Motion is granted in part and the Court has issued a letter rogatory in the form attached as Exhibit 1 hereto. Mr. Akouete may obtain a certified copy of the attached, without paying the certified copy fee associated with obtaining certified copies from this Court, by contacting the Clerk's Office.

Entered this 7th day of April, 2025.

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT DISTRICT OF MASSACHUSETTS

Certified to be a true and correct copy of the original
Mary P. Sharon, Clerk
U.S. Bankruptcy Court
District of Massachusetts

By: Deputy Clerk

Date: 4/7/2025

**EXHIBIT 1 TO ORDER ON MOTION FOR ISSUANCE OF LETTER ROGATORY**
**<u>TO THE HIGH COURT OF JUSTICE OF THE BRITISH VIRGIN ISLANDS</u>**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC,<br><br>Debtor. | Chapter 7<br>Case No. 23-40709-CJP |

To the Appropriate Judicial Authority of the British Virgin Islands:

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)**

The United States Bankruptcy Court for the District of Massachusetts respectfully requests international judicial assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned chapter 7 case of Westborough SPE LLC.

A contested matter is currently pending, and the information requested is relevant to administration of this case by the chapter 7 Trustee of Westborough SPE LLC's bankruptcy estate and certain litigation involving claims against this estate. The Requesting Party, as defined herein, seeks information to establish ownership and control of Westborough SPE LLC that he asserts is relevant to litigation of his claims. Mignonette Investments Limited is alleged to have been the sole member and ultimate beneficial owner of Westborough SPE LLC. Under certain circumstances, Mignonette Investments Limited could be entitled to distribution of proceeds of assets of Westborough SPE LLC.

This Court seeks the assistance of the Honorable Court of the British Virgin Islands in the interests of justice.

The party seeking the information (the "Requesting Party") is:

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

The chapter 7 Trustee ("Trustee") appointed in this liquidation proceeding and his counsel are:

Jonathan R. Goldsmith, Trustee
c/o Christine E. Devine
Nicholson Devine LLC
PO Box 7
Medway, MA 02053
508-533-7240
Email: christine@nicholsondevine.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

Certified to be a true and correct copy of the original
Mary P. Sharon, Clerk
U.S. Bankruptcy Court
District of Massachusetts

By: Sophia Howard
Deputy Clerk

Date: 4/7/2025

The assistance requested is that the Appropriate Judicial Authority of the British Virgin Islands compel the production of the following corporate records from:

**Mignonette Investments Limited**
Company Number: 243736
Registered Agent: Equity Trust/TMF Group
Registered Office: Palm Grove House P.O. Box 438 Road Town Tortola, BRITISH VIRGIN ISLANDS

and

**The Attorney General's Chambers of the British Virgin Islands or other appropriate authority responsible to maintain government records.**

**DOCUMENTS TO BE PRODUCED:**

1. Certificate of Incorporation;
2. Memorandum and Articles of Association, including any amendments;
3. Register of Members (shareholders), past and present;
4. Register of Directors and Officers, including appointment and resignation records;
5. Beneficial Ownership disclosures maintained under the Beneficial Ownership Secure Search System Act, 2017 (BOSS Act);
6. Name and address of the Registered Agent and the company's registered office;
7. Any documents or filings indicating changes in beneficial ownership, control, or directorship from 2017 to the present.

**PROCEDURES AND SPECIAL REQUESTS:**

The Court respectfully requests that:

- Mignonette Investments Limited be compelled to produce the requested documents to both the Requesting Party and the Trustee as soon as possible consistent with the laws and practices of the British Virgin Islands.
- Mignonette Investments Limited be compelled to certify and authenticate documents produced as true and accurate copies of its records consistent with the laws and practices of the British Virgin Islands.
- Notice of the time and place for the production or review of documents be provided to the Requesting Party and Trustee.

**REIMBURSEMENT FOR COSTS:**

If costs are incurred in executing this request, the **Requesting Party** shall bear any fees and costs in connection with this request.

Signed on this 7th day of April, 2025.

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

Lolonyon Y Akouete

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re:**<br><br>**WESTBOROUGH SPE LLC,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 23-40709-CJP** |

**FIRST INTERIM APPLICATION OF NICHOLSON DEVINE LLC FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE TRUSTEE**

Nicholson Devine LLC ("Applicant" or "Nicholson Devine"), as counsel to Jonathan Goldsmith, the Chapter 7 Trustee in the above-captioned case (the "Trustee"), hereby submits this First Interim Application for Allowance of Compensation and for Reimbursement of Expenses (the "Fee Application" or "Application") for the period from August 12, 2024 through and including July 31, 2025 (the "Application Period") under Bankruptcy Code §§ 330, 331, 503(b)(2), 503(b)(4), Fed. R. Bankr. P. 2016, and MLBR 2016-1. Nicholson Devine seeks allowance of fees in the amount of $275,587.50 and approval of expenses in the amount of $1,217.44 and, at this time, requests approval for the Trustee to make payment of one-half of the fees requested (i.e., $137,793.75) and full reimbursement of expenses (i.e., $1,217.44), with payment of the remaining fees subject to further order of this Court.

In support of this application, the Applicant represents as follows:

1. On August 31, 2023 (the "Petition Date"), certain creditors of the Debtor filed an involuntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2. On October 11, 2023, this Court entered an Order for Relief in this case [Dkt. No. 26] and this case remains a Chapter 7 case at this time.

3. On October 12, 2023, the United States Trustee appointed Jonathan R. Goldsmith as Chapter 7 trustee [Dkt. No. 29] and the Trustee remains as Trustee at this time.

4. On August 12, 2024, the Trustee filed an application to employ Nicholson Devine as his counsel to assist with, among other things, various disputes with purported claim holder Lolonyon Akouete ("Mr. Akouete"), to assist with issues regarding the disposition of real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"), and to assist the Trustee with all other bankruptcy related legal services as determined by the Trustee [Dkt. No. 243]. This Court granted the Trustee's application to employ Nicholson Devine by order dated September 17, 2024 [Dkt. No. 337] and a copy of the order authorizing employment of the Applicant is attached hereto as **Exhibit 1**. Attached hereto as **Exhibit 2** is a biographical description of each attorney and/or other professional who provided services to the Trustee and the Estate. In the detailed time entries attached hereto as Exhibits A through K, the professionals referenced therein are referred to by initials as follows:

Attorney Christine E. Devine – CED
Attorney Kate Nicholson – KN
Attorney Angelina Savoia[1] – AS
Law Clerk Jungin Yoon – JY

5. Under Bankruptcy Code § 330, Nicholson Devine is entitled to "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." Nicholson Devine submits that the allowance of this Fee Application is justifiable since Nicholson Devine has provided the Trustee with necessary services in connection with the services detailed in this Application.

6. Applicant has requested no prior allowance or payment of fees or expenses in this

[1] Prior to her admission to the Massachusetts Bar, Ms. Savoia provided services in the capacity of Law Clerk, and that time is so noted in the attached exhibits and the summary charts below.

Case 1:26-cv-10037-MGY Document 13-3 Filed 02/18/26 Page 463 of 549

case and Applicant holds no retainer.

7. This Fee Application is submitted without prejudice to Applicant's right to later seek additional compensation for services rendered or expenses incurred in this Case.

8. Applicant seeks the allowance on an interim basis of compensation for services rendered to the Trustee for the benefit of the bankruptcy estate for the period from August 12, 2024 through July 31, 2025, which services total $275,587.50. At this time, however, Applicant requests that the Trustee be authorized to pay one-half of the approved fees (i.e., payment of $137,793.75), subject to Applicant’s future request for payment of the balance of the approved fees at a later date and subject to this Court’s authorizing payment of same. Applicant also seeks reimbursement for expenses incurred during the Application Period, which expenses total $1,217.44.

9. During the Application Period, Nicholson Devine expended 821.2 hours in this matter for a total request of allowed compensation of $275,587.50, resulting in an average hourly rate of $335.59. Pursuant to MLBR 2016-1, attached hereto as **Exhibits A through K** are detailed statements of the services rendered by Nicholson Devine as counsel to the Trustee during the Application Period, categorized by type of service provided. The following is a summary of each category of service provided and the compensation sought by category:

| **Exhibit** | **Task Description** | **Total Billed Hours** | **Total Fees Requested** |
|---|---|---|---|
| A | Case Administration | 107.9 | $33,715.00 |
| B | Asset Analysis and Recovery | 26.1 | $10,162.50 |
| C | Asset Disposition | 69.8 | $27,160.00 |
| D | Creditor Interactions | .4 | $160.00 |

| | | | |
|---|---|---|---|
| E | Employment Applications / Objections | 6.6 | $2,640.00 |
| F | Fee Applications / Objections | 5.6 | $2,240.00 |
| G | Claims Administration / Objections | 489.6 | $161,690.00 |
| H | Appellate Matters | 15.2 | $4,917.50 |
| I | AP v. Town – Case Management | 10.2 | $3,010.00 |
| J | AP v. Town – Asset Analysis and Recovery | 36.3 | $11,445.00 |
| K | AP v. Town – Asset Disposition | 53.5 | $18,447.50 |
| | TOTALS: | 821.2 | $275,587.50 |

10. As discussed in further detail below and as evidenced by the time details attached hereto as exhibits, during this Application Period, Applicant has significantly benefited the Estate and the Trustee.

11. The following is a detailed Narrative description of Nicholson Devine's services provided during this Application Period follows below summarized by category. Also below are summaries of the time expended by each professional in accordance with MLBR 2016-1(d).

**NARRATIVE**

**Services Related to Case Administration - Exhibit A.**

12. Applicant's services in this category relate to Nicholson Devine's provision of advice and assistance to the Trustee regarding the many attempts by disputed creditor, Mr.

Akouete, to wrest control of the management of the Estate from the Trustee through various means, while also demanding immediate approval and payment of his disputed claim. Among other things, in this category, Nicholson Devine has assisted provided services to the Trustee regarding (i) Mr. Akouete's numerous pleadings related to the corporate transparency act and demands for action by the Trustee, (ii) Mr. Akouete's numerous pleadings attempting to have the Trustee removed as trustee, (iii) many pleadings and requests by Mr. Akouete to compel action and/or the disclosure of information by the Trustee, (iv) many premature attempts by Mr. Akouete to cause the Trustee to administer the estate in a manner desired by Mr. Akouete, but unhelpful to the creditor body as a whole (i.e., requests to compel distribution prematurely, demands that the Trustee pursue causes of action and/or object to claims, as examples), (v) attendance at multiple status conferences and hearings on Mr. Akouete's motions, (vi) defending the Trustee and the Estate regarding Mr. Akouete's many requests for discovery from various parties regarding the Debtor's former operations, ownership of the Debtor, and/or management of the Debtor dating back to the 1990s (i.e., matters which are distinct from Mr. Akouete's pending claim), and (vii) various status reports, updates to the Court and creditors, and procedural issues regarding pending but inactive adversary proceedings.

13. The services provided in this category total $33,715.00 and Exhibit A includes detailed time entries for each professional who rendered such services.

14. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 54.8 | $400 | $21,840.00 |
| Angelina Savoia (AS) | 41.9 | $250 | $10,475.00 |
| Angelina Savoia (AS)<br>(as Law Clerk) | 2.0 | $125 | $250.00 |

| | | | |
|---|---|---|---|
| | | | |
| Jungin Yoon (JY) | 9.2 | $125 | $1,150.00 |
| Total Hours/Fees | 107.9 | | $33,715.00 |

**Services Related to Asset Analysis and Recovery - Exhibit B.**

15. As discussed below (in the Section related to Asset Disposition – Exhibit C), the Trustee engaged Applicant in August of 2024, in part, to assist with approval of a settlement agreement already pending. Ultimately, after engaging Applicant, the Trustee determined it appropriate to engage an appraiser to further assess the value of the Property and determined it was necessary to withdraw the Trustee's motion to approve that settlement. Nicholson Devine assisted the Trustee with all legal issues regarding (i) the engagement of the appraiser, (ii) assessment of the pending settlement, (iii) withdrawal of the pending motion to approve the original settlement agreement (which the Court approved over objections) and (iv) after withdrawing the settlement agreement, consideration of strategies regarding alternative possible options to accomplish recovery of the Property in a consensual manner (i.e., potentially without the need for bringing an avoidance action against the Town, which is discussed below).

16. The services provided in this category total $10,162.50 and Exhibit B includes detailed time entries for each professional who rendered such services.

17. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 24.6 | $400 | $9,840.00 |
| Kate Nicholson (KN) | .4 | $400 | $160.00 |
| Angelina Savoia (AS) | .9 | $250 | $112.50 |

| | | | |
|---|---|---|---|
| Angelina Savoia (AS)<br>(as Law Clerk) | .2 | $125 | $50.00 |
| Total Hours/Fees | 26.1 | | $10,162.50 |

**<u>Services Related to Asset Disposition (prior to the AP v. Town) - Exhibit C.</u>**

18. As noted in the section above, the Trustee engaged the Applicant while a settlement agreement regarding the Property and various interested parties was pending before the Court and that settlement agreement was subject to objection. Applicant assisted the Trustee with legal services required to assess the basis of the objection raised which included responding to extensive discovery requests from disputed claim holder, Mr. Akouete, attending multiple hearings before this Court regarding a potential evidentiary hearing regarding the proposed settlement and the value of the Property, further assessing the value of the Property while engaging and coordinating with an appraiser regarding the value of the Property, and, after withdrawing the Trustee's motion to approve the settlement agreement, developing further strategies to attempt to liquidate the Property and realize value for the Estate. As has been consistent throughout this case, the actions of Mr. Akouete have forced the Trustee to engage in repetitive and burdensome motion practice and Applicant has assisted the Trustee in meeting his obligations to the Estate.

19. The services provided in this category total $27,160.00 and <u>Exhibit C</u> includes detailed time entries for each professional who rendered such services.

20. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 68.8 | $400 | $26,760.00 |

| | | | |
|---|---|---|---|
| Kate Nicholson (KN) | 1.0 | $400 | $400.00 |
| Total Hours / Fees | 69.8 | | $27,160.00 |

**Services Related to Creditor Meetings and Communications - Exhibit D.**

21. Applicant's services in this category relate to communications with creditors regarding the status of the Trustee's liquidation of assets and resolution of Mr. Akouete's and Ms. Edwards's claims.

22. The services provided in this category total $160.00 and Exhibit D includes detailed time entries for each professional who rendered such services.

23. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | .4 | $400 | $160.00 |
| Total Hours / Fees | .4 | | $160.00 |

**Services Related to Employment Applications and Objections - Exhibit E.**

24. Applicant's services in this category relate to assisting the Trustee with respect to the employment of his professionals. During this Application Period, the Trustee employed Nicholson Devine as his counsel and also employed the appraiser to provide appraisal services and, if needed, expert witness services. Applicant assisted the Trustee with the engagement of his professionals, including responding to Mr. Akouete's objection regarding Applicant's employment, by drafting applications and affidavits required for employment in bankruptcy cases and filing and serving the applications with this Court. Applicant also assisted with identifying an appraiser suitable for the Trustee's needs and negotiating with the appraiser on the

terms of the engagement.

25. The services provided in this category total $2,640.00 and Exhibit E includes detailed time entries for each professional who rendered such services.

26. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 6.6 | $400 | $2,640.00 |
| Total Hours / Fees | 6.6 | | $2,640.00 |

**Services Related to Fee Applications - Exhibit F.**

27. Nicholson Devine's services in this category relate to beginning to prepare the within Fee Application.

28. The services provided in this category total $2,240.00 and Exhibit F includes detailed time entries for each professional who rendered such services.

29. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 5.6 | $400 | $2,240.00 |
| Total Hours / Fees | 5.6 | | $2,240.00 |

**Services Related to Claims Administration and Objections - Exhibit G.**

30. Applicant's services during the Application Period have been largely focused on services related to Claims Administration and Objections because of the unrelenting litigious actions of Mr. Akouete. More specifically, after upwardly amending his disputed claim to exceed $3 million (far exceeding the funds that the Trustee currently has on hand), Mr. Akouete has

repeatedly demanded that this Court award payment of his disputed claim, despite that his claim is disputed and subject to an on-going process to resolve the dispute. To accommodate Mr. Akouete's demands, the Trustee directed Applicant to assess Mr. Akouete's claim, to ultimately object to the claim, and to move forward with claim resolution in an efficient and timely fashion. Applicant has done so by (i) filing and supplementing detailed objections to Mr. Akouete's claim and to the claim of related claimant, Denise Edwards, (ii) engaging in discovery regarding the disputed claims, (iii) reviewing the myriad of documents and pleadings filed by Mr. Akouete regarding his claim, (iv) reviewing and responding to Mr. Akouete's repeated and premature requests for relief while the parties were still engaged in fact discovery, (v) compelling Mr. Akouete to respond to the Trustee's discovery requests after he initially refused to do so, (vi) conducting depositions relative to Mr. Akouete's claim, (vii) consolidating Ms. Edwards related claim dispute into Mr. Akouete's, (viii) submitting detailed and comprehensive summary judgment requests regarding the disputed claims, which requests are currently pending before this Court, and (ix) attending many hearings initiated or caused by Mr. Akouete and responding to many requests for relief by Mr. Akouete which requests by Mr. Akouete are largely (at best) irrelevant to his claim.

31. Applicant submits that, in this particular case, the effort by Applicant to assist the Trustee with the resolution of Mr. Akouete's claim has been enormously beneficial to the Estate. Normally, the Trustee would first administer assets before resolving claims. Here, however, Mr. Akouete's ceaseless demands for attention and relief (often on an emergency or expedited basis) are not likely to subside until the matter of his claim is resolved. As such, Applicant has (at the Trustee's direction) focused on resolving his claim and the related claim of Ms. Edwards.

32. The services provided in this category total $161,690.00 and <u>Exhibit G</u> includes

detailed time entries for each professional who rendered such services.

33. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---:|---:|---:|
| Christine E. Devine (CED) | 269.1 | $400 | $107,640.00 |
| Kate Nicholson (KN) | 1.5 | $400 | $600.00 |
| Angelina Savoia (AS) | 208.6 | $250 | $52,150.00 |
| Angelina Savoia (AS)<br>(as Law Clerk) | 10.4 | $125 | $1,300.00 |
| Total Hours / Fees | 489.0 | | $161,690.00 |

**Services Related to Appellate Matters - Exhibit H.**

34. Applicant's services in this category relate to appeals pursued by Mr. Akouete. Mr. Akouete appealed this Court's denial of a request for an interim distribution on his disputed claim. Applicant assisted with assessing Mr. Akouete's appeal to the Bankruptcy Appellate Panel, appearing and taking steps required to protect the interests of the Estate. Upon Mr. Akouete's further appeal to the First Circuit Court of Appeals, Applicant also appeared and assisted the Trustee with protection of the Estate's interests including preparing and filing an objection to Mr. Akouete's request for expedited relief.

35. Applicant also assisted with the Trustee's assessment and oversight of Mr. Akouete's "Writ of Mandamus" sought from the United States Supreme Court and prepared and filed an appearance and related materials as required for participation before the Supreme Court.

36. The services provided in this category total $4,917.50 and Exhibit H includes detailed time entries for each professional who rendered such services.

37. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 10.2 | $400 | $4,080.00 |
| Angelina Savoia (AS) | 1.5 | $250 | $375.00 |
| Angelina Savoia (AS) (as Law Clerk) | 3.5 | $125 | $462.50 |
| Total Hours / Fees | 15.2 | | $4,917.50 |

**Services Related to AP v. Town - Case Administration - Exhibit I.**

38. As discussed in the sections below, the Trustee ultimately determined that it was necessary to bring initiate and adversary proceeding against the Town to move forward with recovery of the Property. Although negotiations continue to liquidate the Property amicably, Applicant has assisted the Trustee with a dual track of ensuring that the adversary proceeding that the Trustee brought against the Town remains viable and can be pursued if negotiations stall. As such, Applicant has assisted the Trustee with case management related to the adversary proceeding including, preparing for consolidation of a removed Land Court action with the Trustee's action to recovery the Property from the Town, and extending deadlines related to the Adversary Proceeding while negotiations continue.

39. The services provided in this category total $3,010.00 and Exhibit I includes detailed time entries for each professional who rendered such services.

40. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 2.9 | $400 | $1,160.00 |
| Angelina Savoia (AS) | 7.4 | $250 | $1,850.00 |

| | | | |
|---|---|---|---|
| Total Hours and Fees | 10.3 | | $3,010.00 |

**Services Related to AP .v Town - Asset Analysis and Recovery - Exhibit J.**

41. Applicant's services in this category relate to legal assistance and advice regarding the analysis and recovery of the Property through the Adversary Proceeding against the Town. More specifically, once the Trustee determined it would be necessary to bring an action against the Town to recover the Property, Applicant researched and advised the Trustee on multiple viable causes of action and, ultimately, prepared and filed a multi-count complaint against the Town seeking to either recover the Property or obtain judgment against the Town for damages. The complaint includes actions under the Bankruptcy Code, Massacdhusetts state law, and under the U.S. Constitution and it remains pending at this time while the parties engage in negotiations.

42. The services provided in this category total $11,445.00 and Exhibit J includes detailed time entries for each professional who rendered such services.

43. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 15.8 | $400 | $6,320.00 |
| Angelina Savoia (AS) | 20.5 | $250 | $5,125.00 |
| Total Hours and Fees | 36.3 | | $11,445.00 |

**Services Related to AP v. Town - Asset Disposition - Exhibit K.**

44. Applicant's services in this category relate to assistance with the Trustee's efforts to resolve issues related to the Property through a combined settlement of the adversary

proceeding against the Town, the sale of the Property, and the resolution of certain claims related to the Property. Applicant has assisted the Trustee with a robust marketing effort regarding the Property, negotiations with the Town and a proposed buyer, and drafting a purchase and sale agreement and a settlement agreement for review by the Town and the buyer. Efforts to finalize the agreements with the Town and the buyer remain underway at this time. Since any settlement would contemplate a sale of the Property by the Estate coupled with a global settlement, Applicant has also engaged in the legal research necessary to support approval of same.

45. The services provided in this category total $18,447.50 and Exhibit K includes detailed time entries for each professional who rendered such services.

46. A summary of time spent by each professional within this category is as follows:

| Timekeeper | Hours | Rate Per Hour | Amount |
|---|---|---|---|
| Christine E. Devine (CED) | 41.5 | $400 | $16,560.00 |
| Angelina Savoia (AS) | 3.1 | $250 | $775.00 |
| Jungin Yoon (JY) | 8.9 | $125 | $1,112.50 |
| TOTAL FEES | 53.5 | | $18,447.50 |

**EXPENSES**

47. Applicant has also incurred expenses while assisting the Trustee and seeks reimbursement for such expenses which total $1,217.44. Attached as **Exhibit L** is a summary of expenses incurred, broken down into expense type with a detailed itemization of those expenses included as well.

**BENEFIT TO THE TRUSTEE AND THE ESTATE**

48. Thus far in this case the Trustee has recovered approximately $1,200,000 from the

State of California. The Trustee, with the assistance of Applicant, is in the process of (i) prosecuting an objection to the claims of Mr. Akouete and Ms. Edwards and (ii) attempting to resolve claims against the Town of Westborough related to its taking of the Property. Although the Trustee would typically first liquidate all estate assets before engaging in claim litigation, the excessive and litigious actions by Mr. Akouete necessitated that the Trustee first focus on resolving Mr. Akouete's claim (and Ms. Edwards's related claim). Applicant has benefitted the Estate significantly by moving expeditiously with the claim objection process, including discovery and seeking summary judgment regarding those claims.

49. Applicant has also benefitted the Estate by assisting the Trustee with formulating claims against the Town related to the Property and initiating the pending adversary proceeding against the Town. Whether that action prompts the consensual resolution that the parties are working toward, or, if negotiations fail, positions the Trustee to move forward with those pending claims, Applicant has benefitted the Estate by advising on and assisting the Trustee with initiating the adversary proceeding.

50. Nicholson Devine has not previously applied for nor received any compensation for services provided or expenses incurred in this case.

51. The Applicant received no retainer in this case.

52. The Applicant has not agreed to share the compensation sought in this Application with any person other than members of its firm.

WHEREFORE, Nicholson Devine LLC requests this Court enter an order (i) allowing this first interim application for compensation in the total amount of $275,587.50 and approval of expenses in the amount of $1,217.44, (ii) authorizing the Trustee to make payment of one-half of the fees requested (i.e., $137,793.75) and full reimbursement of expenses (i.e., $1,217.44), with

payment of the remaining fees subject to further order of this Court, and (iii) granting such other further relief as is just.

Respectfully submitted,

*/s/ Christine E. Devine*
Christine E. Devine (BBO# 566990)
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
(508) 533-7240
christine@nicholsondevine.com

Dated: September 18, 2025

# <u>EXHIBIT 1</u>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re:**<br>**Westborough SPE LLC**<br>**Debtor(s)** | **Chapter 7**<br>**23-40709-CJP** |

## PROCEEDING MEMORANDUM AND ORDER

**MATTER:**
Hybrid Hearing on #243 Application filed by Trustee Jonathan R. Goldsmith to Employ Christine E. Devine and Nicholson Devine LLC as Counsel.

**Decision set forth more fully as follows:**

FOR THE REASONS STATED ON THE RECORD, THE MOTION IS GRANTED.

Dated: 09/17/2024

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

# <u>EXHIBIT 2</u>

ATTORNEY AND STAFF BIOGRAPHY

**Christine E. Devine –** Christine Devine is a partner at Nicholson Devine LLC and she has significant experience representing both debtors and creditors in all aspects of bankruptcy and out of bankruptcy workouts. Ms. Devine represents individuals as well as businesses and bankruptcy trustees. Ms. Devine is also active in the legal community, participating in leadership roles in bar associations and speaking frequently on a range of bankruptcy-related and business topics. In 2019, she became a fellow in the prestigious American College of Bankruptcy, which recognizes exceptional bankruptcy professionals for their work, their contributions to the administration of justice, their public service and their integrity. In 2020, Lawdragon recognized her as one of the "500 Leading U.S. Bankruptcy & Restructuring Lawyers." In 2006, she was honored with Worcester Business Journal's "40 Under Forty" award. She was named a Massachusetts "Super Lawyer" by Boston Magazine and Law & Politics in 2008-2012, 2014-2024. Ms. Devine received her B.A., *cum laude*, from the University of Massachusetts and her J.D., *cum laude*, from Suffolk Law School. Ms. Devine has also taught classes in bankruptcy and restructuring to law students at Suffolk Law School.

**Kate E. Nicholson --** Kate Nicholson is a partner at Nicholson Devine LLC in Cambridge, Massachusetts, where she specializes in representing individuals, small businesses, and trustees in all variety of bankruptcy matters. Ms. Nicholson is a member of the American Bankruptcy Institute, where she served on the Chapter 7 Committee of the ABI Consumer Bankruptcy Commission, and is a member of the Boston Bar Association, where she is serving on the Bankruptcy Section's Steering Committee.

Ms. Nicholson was named one of the top "40 Under 40" bankruptcy professionals by the American Bankruptcy Institute in 2017, was named a "Rising Star" by Thomson Reuters each year from 2014 – 2019 and a "Super Lawyer" in 2021-2024. Ms. Nicholson has presented on a wide range of bankruptcy issues and has written articles and educational materials for the Norton Annual Survey of Bankruptcy Law, the Boston Bar Association, Massachusetts Continuing Legal Education, and the American Bankruptcy Institute, and served as co-editor for consumer bankruptcy law for the Norton Annual

Survey of Bankruptcy Law. Ms. Nicholson received her B.A. from the University of Pittsburgh and her J.D. from Harvard Law School.

**Angelina M. Savoia** – Angelina is an associate as Nicholson Devine LLC where she represents individuals, small businesses, and trustees in bankruptcy matters. Ms. Savoia is an active member in the Boston legal community where she is a member of the Boston Bar Association and Massachusetts Bar Association. Ms. Savoia recently earned her J.D. From Suffolk University Law School, where she was a member of the Duberstein National Bankruptcy Moot Court Team and served on the board of the Transnational Law Review. While in law school, Ms. Savoia was also awarded a Best Brief Award in legal writing. In 2024, Ms. Savoia was admitted to the Massachusetts bar and to the U.S. District Court, District of Massachusetts.

**Jungin Yoon** – Jung was a summer law clerk at Nicholson Devine LLC during the summer of 2025. He is currently a third year law student at Boston College Law School.

# EXHIBIT A

**In Re Westborough SPE LLC** **EXHIBIT A**
**Case No. 23-40709-CJP**

**CASE ADMINISTRATION**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 8/12/2024 | CED | Review dockets for bankruptcy case, adversary with Westborough, adversary with Mr. Akouete, review pleadings related to underlying issues including ownership disputes with Mr. Akouete, removal action and issues with Town of Westborough, planning for discussion of next steps with Trustee. | 1.5 | $400.00 | $600.00 |
| 8/13/2024 | CED | Review Mtn by Mr. Akouete regarding FinCen requirements and consider issues regarding same. | 0.2 | $400.00 | $80.00 |
| 8/14/2024 | CED | Review all dockets and identify unresolved matters and issues and prepare extensive summary of matters for Trustee, including deadlines and status and recommended course of action regarding each pending issue and matter. | 1.5 | $400.00 | $600.00 |
| 8/15/2024 | CED | Prepare for call with J. Goldsmith on multiple pending issues. | 0.3 | $400.00 | $120.00 |
| 8/15/2024 | CED | Call with J. Goldsmith and review all open issues and matters and discuss strategy for addressing each. | 0.7 | $400.00 | $280.00 |
| 8/16/2024 | CED | Conference call with Attorney for Babcock Brown, and with Trustee; discuss issues relevant to to Babcock Brown and various case issues. | 0.5 | $400.00 | $200.00 |
| 8/19/2024 | CED | Review and consider Mr. Akouete's Motion to Remove Trustee and Exhibits and email Trustee regarding same. | 0.4 | $400.00 | $160.00 |
| 8/19/2024 | CED | Draft Mtn to Reschedule Hearings and forward same to Trustee to review with detailed list of topics for discussion. | 0.4 | $400.00 | $160.00 |
| 8/27/2024 | CED | Draft Objection to L. Akouete request regarding corporate transaction act. | 0.6 | $400.00 | $240.00 |
| 8/28/2024 | CED | Review all prior pleadings and orders regarding Corp Transparency Act, including Mr. Akouete's current request and strategy to respond (.4); draft updated Status Report and Objection and forward to Trustee for review (1.2). | 1.6 | $400.00 | $640.00 |
| 9/17/2024 | CED | Research regarding applicability of corporate transparency act to Trustees and estates; review multiple articles, cases where Trustees have obtained relief; and assess issues and options for Trustee. | 1.8 | $400.00 | $720.00 |
| 9/17/2024 | CED | Prepare detailed email to Trustee, attach research regarding Corp Transparency Act and recommended course of action (.2); prepare for (.3) and attend hearing on Corp Transparency Act (.2). | 0.7 | $400.00 | $280.00 |
| 9/18/2024 | CED | Drafting Objection to Mtn to Compel and Request for Sanction including review of requirements of R 2015, review prior pleadings regarding information provided to creditors previously and publicly available and prior BR Court admonitions regarding repeat filings (2.0); Research sanction power of Court (.4); and revise and finalize Objection to Mtn to Compel and email to Trustee for review and comment (.2). | 2.6 | $400.00 | $1,040.00 |
| 9/19/2024 | CED | Finalize and file Objection to Creditor Mtn to Compel and Trustee's request for Sanctions; attend to service of same. | 0.3 | $400.00 | $120.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/20/2024 | CED | Review Mtn to Compel and for sanctions v the Trustee circulated by Mr. Akouete; emails with the Trustee regarding same and plan next steps. | 0.3 | $400.00 | $120.00 |
| 9/23/2024 | CED | Review denial of Mr. Akouete requests and details of Court Order regarding same. | 0.1 | $400.00 | $40.00 |
| 9/23/2024 | CED | Review and consider multiple pleadings circulated by Mr. Akouete for filing; strategy regarding estate interest in same. | 0.3 | $400.00 | $120.00 |
| 10/1/2024 | CED | Review and consider Mr. Akouete's Mtn to Compel Trustee to File Report; assess same and consider Trustee options (.3); review message from Mr. Smerage to Mr. Akouete to cease marketing and consider same (.2); review further detailed message from Mr. Akouete with various attachments and consider estate issues/options (.2); review sale comparisons from Mr. Akouete (.1). | 0.8 | $400.00 | $320.00 |
| 10/7/2024 | CED | Review most recent Mtn to Compel from Mr. Akouete; consider options regarding frivolous and duplicative requests; review Court Order regarding hearing on recent pleadings; review and consider additional pleadings filed by Town and my Mr. Akouete and consider estate issues and consider recommended course of action. | 0.5 | $400.00 | $200.00 |
| 10/23/2024 | CED | Review detailed inquiry from Mr. Akouete to Trustee regarding distribution. | 0.1 | $400.00 | $40.00 |
| 10/25/2024 | CED | Attention to issues related to CTA; assess whether FinCen has provided additional information to Trustees; strategy regarding next steps. | 0.2 | $400.00 | $80.00 |
| 10/31/2024 | AS | Confer with C. Devine re: claims of Lolo and drafting trustee's objection to these claims | 0.2 | $125.00 | $25.00 |
| 10/31/2024 | AS | Planning regarding corporate transparency act and drafting motion for order re trustee obligations under act | 0.1 | $125.00 | $12.50 |
| 11/7/2024 | AS | Review and analysis of documents and pleading re: the Corporate Transparency Act and bankruptcy trustee obligations | 0.5 | $125.00 | $62.50 |
| 11/7/2024 | AS | Research re: unconstitutional taking issue | 0.7 | $125.00 | $87.50 |
| 11/12/2024 | AS | Review judge's order on Akouete's motion for expedited resolution of claim, trustee's motion for authority to withdraw settlement, and appraisal | 0.3 | $125.00 | $37.50 |
| 11/12/2024 | AS | Review Akouete's response to Trustee's objection to his claim | 0.2 | $125.00 | $25.00 |
| 11/14/2024 | CED | Review Court Order rescheduling multiple hearings (.1); email Trustee and attend to service on interested parties (.2); prepare and file COS regarding same (.2). | 0.5 | $400.00 | $200.00 |
| 11/20/2024 | CED | Prepare for Status Conference hearing on multiple matters. | 0.8 | $400.00 | $320.00 |
| 11/22/2024 | AS | Strategize re: corporate transparency act | 0.1 | $250.00 | $25.00 |
| 11/25/2024 | AS | Research re: corporate transparency act | 0.8 | $250.00 | $200.00 |
| 11/25/2024 | AS | Continue drafting motion for clarification re: CTA | 0.7 | $250.00 | $175.00 |
| 11/26/2024 | AS | Continue drafting motion for order re: CTA | 0.6 | $250.00 | $150.00 |
| 11/26/2024 | AS | Strategize regarding motion for order regarding CTA | 0.4 | $250.00 | $100.00 |
| 12/2/2024 | CED | Draft Motion regarding Corporate Transparency Act. | 2.4 | $400.00 | $960.00 |
| 12/2/2024 | AS | Attention to motion re: corporate transparency act | 0.2 | $250.00 | $50.00 |
| 12/3/2024 | CED | Draft Order regarding CTA Motion; final edits; attend to service list for US and email to J. Goldsmith regarding same. | 0.4 | $400.00 | $160.00 |
| 12/3/2024 | AS | Strategize regarding filing of motion re: CTA | 0.1 | $250.00 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/3/2024 | AS | Review motion re: CTA, exhibits, proposed order, and certificate of service | 0.2 | $250.00 | $50.00 |
| 12/3/2024 | AS | Prepare Motion re: CTA, all exhibits, proposed order, and COS for filing with court and file same with Court | 0.3 | $250.00 | $75.00 |
| 12/3/2024 | AS | Email service of motion re: CTA, and coordinate mail service of same | 0.3 | $250.00 | $75.00 |
| 12/4/2024 | CED | Draft Joint Motion to Reschedule Hearing on Town Mtn for Remand; circulate for comment. | 0.4 | $400.00 | $160.00 |
| 12/5/2024 | AS | Coordinate mail service of notice of hearing for motion re: CTA | 0.2 | $250.00 | $50.00 |
| 12/5/2024 | AS | Email service of notice of hearing for motion re: CTA | 0.1 | $250.00 | $25.00 |
| 12/5/2024 | AS | Prepare COS for notice of hearing on CTA motion and file same with court | 0.2 | $250.00 | $50.00 |
| 12/5/2024 | AS | Attention to email from L. Zide re: 12/17 hearing on Trustee's motion re: CTA | 0.1 | $250.00 | $25.00 |
| 12/5/2024 | CED | Review Texas case and article regarding CTA enjoined. | 0.2 | $400.00 | $80.00 |
| 12/10/2024 | AS | Review Delaware Secretary of State records re: Babcock & Brown Parallel Member LLC | 0.1 | $250.00 | $25.00 |
| 12/10/2024 | CED | NO CHARGE. Email updates with Trustee; plan for call to discuss issues. NO CHARGE. | 0.2 | $0.00 | $0.00 |
| 12/16/2024 | CED | Email to/from Trustee regarding hearing preparation. | 0.1 | $400.00 | $40.00 |
| 12/17/2024 | CED | Prepare for hearing on FinCEN, CTA Motion; review recent developments, Akouete objection, outline arguments for hearing. | 1.6 | $400.00 | $640.00 |
| 12/17/2024 | CED | Attend and travel to and from hearing on CTA Motion and Akouete discovery dispute motion; appear for trustee. | 1.6 | $400.00 | $640.00 |
| 12/23/2024 | AS | Review orders of court striking Akouete's discovery requests from the docket | 0.1 | $250.00 | $25.00 |
| 12/23/2024 | AS | Strategize re: court's orders striking Akouete's discovery requests | 0.1 | $250.00 | $25.00 |
| 12/23/2024 | AS | Begin drafting responses to Akouete discovery requests | 2.4 | $250.00 | $600.00 |
| 12/26/2024 | CED | Review Mr. Akouete's Mtn to Reconsider order regarding CTA beneficial ownership information submission by Trustee. | 0.2 | $400.00 | $80.00 |
| 12/26/2024 | AS | Review Akouete's motion to reconsider CTA order | 0.2 | $250.00 | $50.00 |
| 12/26/2024 | AS | Research re: 5th Circuit case and FinCen guidance re: CTA reporting referenced by Akouete in his motion to reconsider | 0.8 | $250.00 | $200.00 |
| 12/30/2024 | AS | Review Nathanson Goldberg Opposition to Akouete's motion to reconsider | 0.2 | $250.00 | $50.00 |
| 1/3/2025 | AS | Attention to Reply filed by Akouete to Objection to motion to reconsider CTA motion | 0.2 | $250.00 | $50.00 |
| 1/8/2025 | AS | Strategize re: responses to Akouete RPDs | 0.6 | $250.00 | $150.00 |
| 1/9/2025 | CED | Prepare for and call with Trustee and planning regarding (i) Akouete claim dispute and plan for discovery, (ii) Town issues regarding property, (iii) hearing preparations and agenda, and (iv) overall case strategy, (v) multiple pending Akouete motions. | 0.7 | $400.00 | $280.00 |
| 1/13/2025 | AS | Strategize re: omnibus objection to Akouete's multiple pleadings | 0.1 | $250.00 | $25.00 |
| 1/13/2025 | AS | Review and analysis of Akouete motions filed in last month in Main Case and in Akouete Adversary proceeding and assess deadlines and response requirements. | 0.6 | $250.00 | $150.00 |
| 1/13/2025 | AS | Draft omnibus objection to Akouete motions | 1.7 | $250.00 | $425.00 |
| 1/13/2025 | AS | Strategize re: motions set for hearing and drafting joint motion to continue | 0.1 | $250.00 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/13/2025 | AS | Draft motion to continue hearings on Akouete motions | 0.7 | $250.00 | $175.00 |
| 1/13/2025 | AS | Review documents filed by Akouete and court's response, if any, to same, and analysis to determine which motions are pending | 0.4 | $250.00 | $100.00 |
| 1/14/2025 | AS | Review docket to determine Akouete motions outstanding and analysis and review of those motions | 1.1 | $250.00 | $275.00 |
| 1/14/2025 | AS | Strategize re: discovery, upcoming hearing, next steps | 0.2 | $250.00 | $50.00 |
| 1/14/2025 | AS | Review and revise omnibus response to Akouete motions that remain pending | 0.3 | $250.00 | $75.00 |
| 1/14/2025 | AS | Review and revise joint motion to continue hearing | 0.4 | $250.00 | $100.00 |
| 1/14/2025 | CED | Review and revise draft joint motion to continue hearings. | 0.2 | $400.00 | $80.00 |
| 1/14/2025 | AS | Further review and revise joint motion to continue hearing | 0.1 | $250.00 | $25.00 |
| 1/15/2025 | AS | Prepare responsive documents for production to Akouete | 1.5 | $250.00 | $375.00 |
| 1/15/2025 | AS | Review communications from R. Smearage regarding joint motion to continue hearings | 0.1 | $250.00 | $25.00 |
| 1/15/2025 | AS | Review and revise joint motion to continue hearings per communications with R. Smerage | 0.2 | $250.00 | $50.00 |
| 1/15/2025 | AS | Review motion for court action filed today by Akouete | 0.1 | $250.00 | $25.00 |
| 1/15/2025 | AS | Review communication from Akouete regarding scheduling a meeting | 0.1 | $250.00 | $25.00 |
| 1/16/2025 | AS | Review and revise omnibus response to multiple Akouete filings | 0.2 | $250.00 | $50.00 |
| 1/16/2025 | AS | Strategize re: omnibus response to multiple Akouete filings and file same with court | 0.2 | $250.00 | $50.00 |
| 1/16/2025 | CED | Review objection to continuance by Akouete. | 0.1 | $400.00 | $40.00 |
| 1/16/2025 | AS | Serve omnibus response to Akouete filings to email notice list | 0.1 | $250.00 | $25.00 |
| 1/16/2025 | AS | Review Akouete's opposition to motion to continue hearing | 0.1 | $250.00 | $25.00 |
| 1/16/2025 | AS | Review response of petitioning creditors to motion to continue hearing | 0.1 | $250.00 | $25.00 |
| 1/17/2025 | CED | Review multiple orders regarding rescheduling of hearings; consider same and plan for new hearing dates. | 0.2 | $400.00 | $80.00 |
| 1/17/2025 | AS | Review Akouete's further response to the Trustee's response to multiple Akouete pleadings and strategy re: same | 0.3 | $250.00 | $75.00 |
| 1/17/2025 | AS | Research re: rule 9011(c) motions and procedures | 0.5 | $250.00 | $125.00 |
| 1/17/2025 | AS | Review Akouete's response to petitioning creditor's response to trustee's motion to continue hearings | 0.1 | $250.00 | $25.00 |
| 1/24/2025 | AS | Review emergency motion for status conference filed by Akouete | 0.1 | $250.00 | $25.00 |
| 1/28/2025 | CED | Review Akouete filing regarding Town MTD. | 0.2 | $400.00 | $80.00 |
| 1/28/2025 | AS | Review Akouete's supplement to his objection to the town's motion to dismiss | 0.1 | $250.00 | $25.00 |
| 1/28/2025 | AS | Review Akouete's supplement filings in the AP filed by Akouete v. Town of Westborough | 0.1 | $250.00 | $25.00 |
| 1/31/2025 | AS | Review multiple orders entered by Court. | 0.2 | $250.00 | $50.00 |
| 1/31/2025 | AS | Attend status conference hearing | 0.6 | $250.00 | $150.00 |
| 1/31/2025 | AS | Strategize regarding status conference, issues addressed at status conference, planning for next steps regarding multiple issues. | 0.5 | $250.00 | $125.00 |
| 1/31/2025 | CED | Prepare for hearing review pleadings and docket entries; prepare outlines case update regarding AP v. Town, Dispute re Akouete Claim; prepare outline Trustee positions regarding objections to Town Mtn for Relief, Mtn to Dismiss, and Mtn to Remand. | 1.5 | $400.00 | $600.00 |
| 1/31/2025 | CED | Participate in telephonic hearing on multiple pending matters regarding Status of Case; Town's Motions, Akouete claims. | 0.8 | $400.00 | $320.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/31/2025 | CED | Review multiple Court orders regarding hearing outcome and pending pleadings by Mr. Akouete; consider relevance to and impact on Estate. | 0.2 | $400.00 | $80.00 |
| 2/25/2025 | CED | Prepare for and call with Trustee regarding open issues re claim dispute and strategy to move forward with same. | 0.5 | $400.00 | $200.00 |
| 2/26/2025 | AS | Review email from Akouete regarding mediation and settlement offer amounts | 0.2 | $250.00 | $50.00 |
| 3/5/2025 | CED | Email Trustee to coordinate regarding Town proposal and Akouete claim issues. | 0.1 | $400.00 | $40.00 |
| 3/11/2025 | AS | Attention to motion to remove trustee filed by Akouete | 0.1 | $250.00 | $25.00 |
| 3/11/2025 | CED | Planning and strategy regarding response to Mtn to Remove Trustee. | 0.4 | $400.00 | $160.00 |
| 3/12/2025 | AS | Review court orders setting hearings and planning for same. | 0.1 | $250.00 | $25.00 |
| 3/14/2025 | CED | Review Akouete response to Trustee's objection to Removal as Trustee. | 0.2 | $400.00 | $80.00 |
| 3/21/2025 | AS | Attention order on Akouete's motion for discovery conference, hearing scheduled date | 0.1 | $250.00 | $25.00 |
| 3/27/2025 | CED | Call with Trustee regarding multiple open issues including Town negotiations, Akouete claim. | 0.4 | $400.00 | $160.00 |
| 3/29/2025 | CED | Drafting Limited Objection and Reservation of Rights regarding Mobilstreet Motion for Declaration regarding automatic stay. | 2.4 | $400.00 | $960.00 |
| 3/30/2025 | CED | Revise Limited objection to Mobilstreet Mtn for Declaration. | 0.6 | $400.00 | $240.00 |
| 3/31/2025 | CED | Revisions to Limited objection to Mobilstreet Mtn and send to Trustee to review. | 0.4 | $400.00 | $160.00 |
| 3/31/2025 | AS | Strategize regarding motion to extend objection deadline to MobilStreet motion | 0.2 | $250.00 | $50.00 |
| 3/31/2025 | AS | Draft motion to extend deadline to object to MobilStreet motion for declaratory relief | 0.5 | $250.00 | $125.00 |
| 3/31/2025 | AS | Communications with R. Smerage re: joint motion to extend | 0.2 | $250.00 | $50.00 |
| 3/31/2025 | AS | Review joint motion to extend with town and Mobilstreet | 0.1 | $250.00 | $25.00 |
| 3/31/2025 | AS | Attention to court's order setting objection deadline for Mobilstreet motion | 0.1 | $250.00 | $25.00 |
| 4/7/2025 | CED | Call with L. Zide regarding deadline regarding Mtn for Payment of Fees from Town. | 0.2 | $400.00 | $80.00 |
| 4/7/2025 | AS | Review draft objection to Mobilstreet motion for declaratory relief, prepare for filing with Court, and file same with Court | 0.3 | $250.00 | $75.00 |
| 4/7/2025 | AS | Coordinate mail service of objection to Mobilstreet motion for declaratory relief | 0.1 | $250.00 | $25.00 |
| 4/7/2025 | AS | Email service of objection to Mobilstreet motion for declaratory relief | 0.1 | $250.00 | $25.00 |
| 4/10/2025 | AS | Review docket to determine upcoming deadlines, motions set for hearing, objection deadlines | 0.5 | $250.00 | $125.00 |
| 4/10/2025 | AS | Strategize regarding upcoming objection deadlines and hearings | 0.3 | $250.00 | $75.00 |
| 4/11/2025 | AS | Research regarding 502 objections to claims, standards and rules | 0.6 | $250.00 | $150.00 |
| 4/11/2025 | AS | Continue drafting objection to Edward's Claim | 3.1 | $250.00 | $775.00 |
| 4/11/2025 | AS | Draft response/objection to Akouete's motion to set deadline regarding land court action | 0.6 | $250.00 | $150.00 |
| 4/14/2025 | AS | Email service of objections to Edwards Claim and Akouete request re Land Court, and notice of intent to file SJ | 0.1 | $250.00 | $25.00 |
| 4/14/2025 | AS | Coordinate mail service of 2 objections and notice of intent to file SJ | 0.2 | $250.00 | $50.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/15/2025 | CED | Prepare for hearing on multiple matters; outline hearing notes and review documents to be discussed and considered during hearings. | 2 | $400.00 | $800.00 |
| 4/15/2025 | CED | Attend and participate in hearings in Worcester on multiple matters regarding Town dispute, regarding Akouete claim dispute, and regarding case matters generally; and travel to/from hearing. | 3.6 | $400.00 | $1,440.00 |
| 4/16/2025 | AS | Review orders entered by court. | 0.2 | $250.00 | $50.00 |
| 4/16/2025 | CED | Review multiple court orders regarding hearing outcomes; log details. | 0.2 | $400.00 | $80.00 |
| 4/17/2025 | AS | Attention to deposition transcripts, prepare horst, akouete, and Edwards transcripts for sharing with Akouete per court order | 0.5 | $250.00 | $125.00 |
| 4/17/2025 | AS | Attention to P Blaustein document production, request access to same from B. Lee | 0.3 | $250.00 | $75.00 |
| 4/23/2025 | AS | Coordinate mail service of memorandum bid solicitation to additional parties | 0.2 | $250.00 | $50.00 |
| 4/23/2025 | AS | Prepare certificates of service regarding service efforts pursuant to court's order | 0.6 | $250.00 | $150.00 |
| 4/23/2025 | AS | Strategize regarding court's order, service of order, certificates of service | 0.4 | $250.00 | $100.00 |
| 4/23/2025 | AS | Strategize regarding bid solicitation package, additional party | 0.1 | $250.00 | $25.00 |
| 4/23/2025 | AS | Prepare certificates of service for filing and file same with court | 0.1 | $250.00 | $25.00 |
| 4/24/2025 | AS | Strategize regarding email from Akouete | 0.1 | $250.00 | $25.00 |
| 4/28/2025 | AS | Review court's order on Akouete's request to shorten SJ deadlines | 0.1 | $250.00 | $25.00 |
| 4/28/2025 | AS | Review Akouete affidavit in support of MSJ | 0.2 | $250.00 | $50.00 |
| 4/30/2025 | AS | Attention to court's order regarding Akouete's motion for relief from stay | 0.1 | $250.00 | $25.00 |
| 5/1/2025 | AS | Review Akouete's motion to compel abandonment | 0.2 | $250.00 | $50.00 |
| 5/1/2025 | CED | Attention to hearing scheduled for Mtn to Compel Abandonment; consider options for objection and plan for hearing attendance. | 0.1 | $400.00 | $40.00 |
| 5/2/2025 | CED | Email to Trustee regarding hearing on Mtn to Compel Abandonment and recommend course of action. | 0.1 | $400.00 | $40.00 |
| 5/4/2025 | CED | Review Akouete Mtn to Compel abandonment of claims; prepare for hearing. | 0.6 | $400.00 | $240.00 |
| 5/4/2025 | CED | Review and consider Akouete Motion Alleging Bad Faith (.2), Mtn re Judicial Notice (.1), Mtn to Compel Compliance re CA Controller (.1). | 0.4 | $400.00 | $160.00 |
| 5/7/2025 | AS | Research regarding summary judgment standards | 3.1 | $250.00 | $775.00 |
| 5/9/2025 | CED | Review Order re Akouete Motion for Relief and attend to scheduling re hearing set by Court. | 0.1 | $400.00 | $40.00 |
| 5/12/2025 | AS | Review multiple motions filed by Akouete, courts orders regarding same, attention to hearings scheduled and related objection deadlines. | 0.5 | $250.00 | $125.00 |
| 5/12/2025 | CED | Review email from Akouete regarding demand for payment of IRS refunded fees; attention to Akouete voicemail regarding same and consider response. | 0.2 | $400.00 | $80.00 |
| 5/12/2025 | CED | Strategy regarding response to Akouete Mtn regarding Trustee administration and email to Trustee regarding same. | 0.4 | $400.00 | $160.00 |
| 5/13/2025 | CED | Review Akouete Mtn to approve distribution of IRS funds; consider same. | 0.2 | $400.00 | $80.00 |
| 5/14/2025 | AS | Review various motions recently filed, court orders, relevant deadlines set by court, case status | 1.5 | $250.00 | $375.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/14/2025 | AS | Review and analysis of motion regarding trustee conduct filed by Akouete and drafting objection to same | 0.6 | $250.00 | $150.00 |
| 5/14/2025 | AS | Draft objection to Akouete motion regarding Trustee conduct | 1.1 | $250.00 | $275.00 |
| 5/16/2025 | AS | Review and analysis of Akouete motion regarding trustee conduct | 0.3 | $250.00 | $75.00 |
| 5/16/2025 | AS | Draft objection to Akouete motion regarding trustee conduct | 1.5 | $250.00 | $375.00 |
| 5/19/2025 | AS | Review and analysis of Akouete's motion to receive funds, court's order, and Akouete's supplement to motion | 0.2 | $250.00 | $50.00 |
| 5/19/2025 | CED | Review and consider Akouete supplement to pending Mtn seeking distribution of funds paid to IRS. | 0.2 | $400.00 | $80.00 |
| 5/20/2025 | CED | Review, revise Trustee's Objection to Akouete Mtn Re Trustee's actions in Bankruptcy Case, review prior Court Orders on same topic, review prior case documents regarding duplication by Akouete. | 1.6 | $400.00 | $640.00 |
| 5/20/2025 | CED | Review and consider email regarding records request, email to Trustee re same. | 0.2 | $400.00 | $80.00 |
| 5/21/2025 | AS | Attention to correspondence filed by Denise Edwards | 0.1 | $250.00 | $25.00 |
| 5/21/2025 | CED | Multiple emails to Trustee with proposed responses to Mr. Akouete's multiple email requests. | 0.3 | $400.00 | $120.00 |
| 5/21/2025 | AS | Review and revise objection to Akouete motion regarding trustee conduct | 0.7 | $250.00 | $175.00 |
| 5/21/2025 | CED | Further revise draft objection to Akouete Mtn regarding Trustee's actions in bankruptcy case. | 0.4 | $400.00 | $160.00 |
| 5/21/2025 | CED | Review email from Akouete seeking prior settlement documents, forward proposed response to Trustee. | 0.1 | $400.00 | $40.00 |
| 5/21/2025 | CED | Review email from Akouete seeking to impose multiple conditions on any settlement discussions, forward proposed response to Trustee. | 0.1 | $400.00 | $40.00 |
| 5/21/2025 | CED | Review email from Akouete seeking Mediation, forward proposed response to Trustee. | 0.1 | $400.00 | $40.00 |
| 5/23/2025 | CED | Review order on amended deadlines, email to client regarding same with recommendation. | 0.2 | $400.00 | $80.00 |
| 5/23/2025 | AS | Prepare trustee's objection to Akouete motion regarding conduct for filing with court and file same with court | 0.2 | $250.00 | $50.00 |
| 5/23/2025 | AS | Email service of trustee's objection to Akouete motion regarding conduct | 0.1 | $250.00 | $25.00 |
| 5/23/2025 | CED | Review detailed email from Akouete and forward same with recommendation to Trustee. | 0.1 | $400.00 | $40.00 |
| 5/23/2025 | CED | Review multiple Akouete replies regarding Akouete allegations regarding Trustee conduct in case. | 0.2 | $400.00 | $80.00 |
| 5/27/2025 | AS | Attention to motion filed by Akouete regarding claims | 0.1 | $250.00 | $25.00 |
| 5/27/2025 | AS | Strategize regarding summary judgment, motions filed by Akouete, next steps regarding same | 0.2 | $250.00 | $50.00 |
| 5/27/2025 | CED | Review and consider Akouete Mtn to Compel Trustee to address other claims. | 0.2 | $400.00 | $80.00 |
| 5/29/2025 | AS | Attention to reply filed by Akouete to trustee's objection to Akouete motion re conduct | 0.1 | $250.00 | $25.00 |
| 6/2/2025 | CED | Attention to rescheduled hearings and deadlines regarding multiple Akouete related pleadings. | 0.2 | $400.00 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6/3/2025 | CED | Review order regarding scheduling hearing on pending Akouete motion for turnover of funds, including service requirement; review all hearings rescheduled and on for June 10th. | 0.2 | $400.00 | $80.00 |
| 6/4/2025 | CED | Email to Trustee and planning for call with Ms. Karalasingham re status of case. | 0.2 | $400.00 | $80.00 |
| 6/4/2025 | CED | Email to Ms. Karalasingham regarding call to discuss case status. | 0.1 | $400.00 | $40.00 |
| 6/5/2025 | CED | Prepare for an attend call with parties for certain Babcock and Brown related entities and discuss status of bankruptcy, possible interest in ownership of Debtor, and bankruptcy procedures for distribution to equity holder. | 0.8 | $400.00 | $320.00 |
| 6/10/2025 | CED | Review and assess Akouete supplement to pending matter and Mtn regarding privilege log (.2); Prepare for hearings in Worcester and review pleadings and outline notes on multiple pending matters related to Akouete Mtn regarding Trustee conduct, Edwards consolidation issues, Akouete service and discovery issues, and IRS Refund (1.8). | 2 | $400.00 | $800.00 |
| 6/10/2025 | CED | Travel to and attend hearing on multiple pending matters related to Akouete Mtn regarding Trustee conduct, Edwards consolidation issues, multiple Akouete service and discovery issues, and IRS Refund. | 2.6 | $400.00 | $1,040.00 |
| 6/11/2025 | CED | Review multiple Court Orders regarding hearings on Akouete requests. | 0.2 | $400.00 | $80.00 |
| 6/12/2025 | CED | Review Akouete motion for relief to pursue claims in state court; consider possible basis and estate options. | 0.3 | $400.00 | $120.00 |
| 6/12/2025 | CED | Review and consider court order regarding Akouete request to bring action in state court. | 0.2 | $400.00 | $80.00 |
| 6/12/2025 | CED | Call with L Casasmeyer regarding Akouete actions against Horst and Babcock and Summary Judgment status. | 0.3 | $400.00 | $120.00 |
| 6/12/2025 | CED | Review multiple court orders entered after hearing, including with details regarding Court's basis for relief. | 0.2 | $400.00 | $80.00 |
| 6/13/2025 | CED | Review multiple orders and docket entries re recent hearings and deadlines; log next hearing date. | 0.2 | $400.00 | $80.00 |
| 6/20/2025 | AS | File opposition to SJ with court and supplemental certificate of service regarding same | 0.1 | $250.00 | $25.00 |
| 6/20/2025 | AS | Review correspondence filed by D. Blaine | 0.2 | $250.00 | $50.00 |
| 6/20/2025 | AS | Review Response to #777 filed by Horst | 0.1 | $250.00 | $25.00 |
| 6/24/2025 | CED | Review Akouete Mtn regarding Civil Action v. Migonette including certain exhibits, and consider issues and misstatements by Akouete, and planning next steps (.5); email to Trustee regarding various case issues and planning (.1). | 0.6 | $400.00 | $240.00 |
| 6/24/2025 | JY | Research and draft memorandum analyzing third-party beneficiary standing to enforce contract provisions | 5 | $125.00 | $625.00 |
| 6/25/2025 | JY | Research and draft memorandum analyzing third-party beneficiary standing to enforce contract provisions | 2.7 | $125.00 | $337.50 |
| 6/26/2025 | CED | Attention to hearing notice and objection deadline re Akouete Mtn to file state court matter. | 0.1 | $400.00 | $40.00 |
| 6/26/2025 | JY | Research and draft memorandum analyzing third-party beneficiary standing to enforce contract provisions | 1.5 | $125.00 | $187.50 |

| | | | | | |
|---|---|---|---|---|---|
| 7/1/2025 | CED | Email Akouete regarding deadline for Mtn to object to Relief from Stay. | 0.1 | $400.00 | $40.00 |
| 7/2/2025 | CED | Review and consider Akouete Mtn for expedited regarding State Court action. | 0.2 | $400.00 | $80.00 |
| 7/10/2025 | CED | Revise draft objection to Akouete Mtn for comfort order, forward same to Trustee for review. | 0.3 | $400.00 | $120.00 |
| 7/11/2025 | CED | Call with S. Gordon re various case issues and status. | 0.2 | $400.00 | $80.00 |
| 7/11/2025 | CED | Revise and Finalize Objection to Akouete Mtn to Sue Mignonette and planning regarding filing issues. | 0.5 | $400.00 | $200.00 |
| 7/11/2025 | AS | Strategize regarding objection to Akouete motion regarding action v. Mignonette | 0.2 | $250.00 | $50.00 |
| 7/11/2025 | AS | Review and revise Trustee's objection to Akouete motion regarding action v. Mignonette | 0.3 | $250.00 | $75.00 |
| 7/11/2025 | AS | Prepare Trustee's objection to Akouete motion regarding action v. Mignonette for filing and file same with court | 0.1 | $250.00 | $25.00 |
| 7/11/2025 | AS | Attend to email service of Trustee's objection to Akouete motion regarding action v. Mignonette | 0.1 | $250.00 | $25.00 |
| 7/18/2025 | CED | Email to J. Goldsmith with summary of hearing outcomes. | 0.2 | $400.00 | $80.00 |
| 7/28/2025 | CED | Review Akouete Mtn for Comfort Order re B&B, consider response and scope of same; review docket for status of BR Court order, review complaint Akouete has already filed in State Court, strategy re recommendation to client. | 0.4 | $400.00 | $160.00 |
| 7/28/2025 | CED | Review N&G objection to Akouete B&B Mtn for Comfort order. | 0.1 | $400.00 | $40.00 |
| 7/29/2025 | CED | Review email from interested party regarding status of case administration and respond. | 0.1 | $400.00 | $40.00 |
| | | **TOTAL** | **107.9** | | **$33,715.00** |

# EXHIBIT B

**In Re Westborough SPE LLC** **EXHIBIT B**
**Case No. 23-40709-CJP**

**ASSET ANALYSIS AND RECOVERY**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 11/4/2024 | CED | Research regarding pending settlement agreement, Trustee authority and research relevant Code provisions and case law and consider contra arguments. | 2.6 | $400.00 | $1,040.00 |
| 11/4/2024 | CED | Begin drafting Motion to Withdraw and to convert hearing and outline issues and consider scope of relief. | 2.2 | $400.00 | $880.00 |
| 11/4/2024 | CED | Emails with Appraiser regarding role and prepare for call with Appraiser. | 0.3 | $400.00 | $120.00 |
| 11/4/2024 | CED | Call with Appraiser and review high level issues in appraisal and possible next steps re hearing and Appraiser role. | 0.3 | $400.00 | $120.00 |
| 11/4/2024 | CED | Revising Motion to Withdraw. | 1 | $400.00 | $400.00 |
| 11/5/2024 | CED | Research and further revisions to Motion to Withdraw including review of multiple pleadings and details in the record and incorporate same into draft. | 3.5 | $400.00 | $1,400.00 |
| 11/5/2024 | KN | Review and revise motion to withdraw settlement | 0.4 | $400.00 | $160.00 |
| 11/6/2024 | CED | Edits to draft Motion and forward same to Trustee for review and comment. | 0.4 | $400.00 | $160.00 |
| 11/6/2024 | CED | Prepare for and extensive/multiple calls with Trustee regarding draft Mtn to withdraw including strategies regarding next steps and engage in multiple calls with Trustee and Mr. Smerage and Mr. Zide and review and consider prior offers received and plan for alternative scenarios. | 1.4 | $400.00 | $560.00 |
| 11/7/2024 | CED | Strategy regarding strength of claims v. Town if recovery action were to proceed and consider Hennepin County and FT actions and strategy regarding same. | 0.4 | $400.00 | $160.00 |
| 11/7/2024 | AS | Strategize re: unconstitutional tax taking issue | 0.1 | $125.00 | $12.50 |
| 11/7/2024 | CED | Multiple calls with Trustee to inform parties regarding appraisal value and next steps for Trustee. | 0.4 | $400.00 | $160.00 |
| 11/7/2024 | CED | Call with P. Carey regarding appraisal and next steps; email to Trustee regarding same. | 0.2 | $400.00 | $80.00 |
| 11/7/2024 | CED | Call with Trustee regarding status of notification to interested parties (.2); detailed call with Mr. Zide and his client regarding Trustee's next steps and discuss abutter property issues and concerns (.2). | 0.4 | $400.00 | $160.00 |
| 11/8/2024 | CED | Prepare for and attend to filing of Mtn to Withdraw Settlement. | 0.5 | $400.00 | $200.00 |
| 11/8/2024 | AS | Research tax taking issue | 0.5 | $125.00 | $62.50 |
| 11/8/2024 | CED | Attend to filing, service and follow up emails regarding Appraisal and Mtn to Withdraw settlement and emails to/from Appraiser re same. | 0.4 | $400.00 | $160.00 |
| 11/12/2024 | AS | Strategize re: motion for 2004 exam, next steps | 0.1 | $125.00 | $12.50 |
| 11/12/2024 | CED | Review email from Mr. Smerage and review relevant offer information. | 0.2 | $400.00 | $80.00 |
| 11/12/2024 | CED | Calls (2x) with Trustee regarding bidders, Town inquiry, next steps. | 0.2 | $400.00 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/13/2024 | CED | Review Court Order regarding withdrawal of Mtn to Approve and consider new hearing date and consider multiple matters on for hearing. | 0.2 | $400.00 | $80.00 |
| 11/13/2024 | CED | Call with Trustee regarding new hearing and strategic planning for discussions with interested parties. | 0.2 | $400.00 | $80.00 |
| 11/13/2024 | CED | Draft Mtn to Reschedule hearing due to Trustee conflict and attend to filing same and make service. | 0.6 | $400.00 | $240.00 |
| 11/14/2024 | CED | Review Mr. Akouete Objection to Continuance of 11/19 hearings and consider claim objection issue raised and confirm hearing status. | 0.2 | $400.00 | $80.00 |
| 11/14/2024 | CED | Review Mtn to Reschedule 11/19 hearing and consider arguments raised by Town regarding Trustee seeking to withdraw Mtn to Approve. | 0.3 | $400.00 | $120.00 |
| 11/14/2024 | AS | Review Akouete's objection to the Trustee's motion to reschedule hearing | 0.2 | $125.00 | $25.00 |
| 11/16/2024 | CED | Email to Appraiser regarding hearing status. | 0.1 | $400.00 | $40.00 |
| 11/19/2024 | CED | Compile multiple documents relevant to status conferences regarding Town matters and review and begin preparing for hearing. | 2.4 | $400.00 | $960.00 |
| 11/19/2024 | CED | Calls with Trustee (2x) regarding sale potential, strategies for hearings, include broker with possible buyer, reach out to R. Smerage. | 0.3 | $400.00 | $120.00 |
| 11/19/2024 | CED | Call with R. Smerage regarding upcoming hearing. | 0.1 | $400.00 | $40.00 |
| 11/20/2024 | CED | Call with Trustee to discuss/plan for hearing. | 0.2 | $400.00 | $80.00 |
| 11/20/2024 | CED | Compile information necessary to pursue FT complaint v. Town; review documentary support for complaint; strategy regarding bringing action. | 1.5 | $400.00 | $600.00 |
| 11/20/2024 | CED | Further prepare for hearings on multiple status conferences (.5); and attend hearing via telephonic (.6). | 1.1 | $400.00 | $440.00 |
| 11/20/2024 | CED | Post-hearing calls with Trustee (2x), call to Mr. Smerage, follow up strategies re estate. | 0.3 | $400.00 | $120.00 |
| 12/3/2024 | CED | Review upcoming hearings; planning for same; planning for call with R. Smerage and email regarding same. | 0.1 | $400.00 | $40.00 |
| 12/3/2024 | CED | Review email from Trustee regarding potential buyer, consider marketing efforts/options. | 0.1 | $400.00 | $40.00 |
| 12/4/2024 | CED | Prepare for and call with R. Smerage regarding sale issues and strategies; detailed discussion of options and next steps. | 0.8 | $400.00 | $320.00 |
| 12/4/2024 | CED | Email update to Trustee regarding discussions with Town. | 0.1 | $400.00 | $40.00 |
| 12/5/2024 | CED | Review edits to Joint Mtn from R Smerage, check docket for hearing status, plan for further edit. | 0.3 | $400.00 | $120.00 |
| 12/5/2024 | CED | Call with Mr Smerage regarding Joint Mtn to reschedule. | 0.2 | $400.00 | $80.00 |
| 12/9/2024 | CED | Email Broker, B Gibbons re interested client. | 0.1 | $400.00 | $40.00 |
| 12/9/2024 | AS | Strategize re: Babcock & Brown ownership | 0.2 | $250.00 | $50.00 |
| 12/10/2024 | CED | Email and call with counsel to LAX Media. | 0.2 | $400.00 | $80.00 |
| 12/13/2024 | CED | Emails to/from Mr. Smerage regarding status of recent property viewing; consider timing issues in light of upcoming hearing. | 0.2 | $400.00 | $80.00 |
| 12/16/2024 | CED | Email to/from R. Smerage re update on potential buyer access to property. | 0.1 | $400.00 | $40.00 |
| 12/17/2024 | CED | Call with Mr. Smerage regarding property status and planning next steps; consider issues raised. | 0.3 | $400.00 | $120.00 |

Case 1:26-cv-10037-MGY Document 13-3 Filed 02/11/26 Page 495 of 549

| | | | | | |
|---|---|---|---|---|---|
| 1/3/2025 | CED | Email R. Smerage regarding status of discussions with potential buyer and Town. | 0.1 | $400.00 | $40.00 |
| 1/21/2025 | CED | Email Trustee with proposed next steps to deal with potential buyers. | 0.1 | $400.00 | $40.00 |
| | | **TOTAL** | **26.1** | | **$10,162.50** |

# EXHIBIT C

**In Re Westborough SPE LLC** **EXHIBIT C**
**Case No. 23-40709-CJP**

**ASSET DISPOSITION**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 8/12/2024 | CED | Further review of multiple pleadings filed by parties related to the pending Settlement Agreement and multiple documents filed by disputed interest holder and assess multiple deadlines and planning for discussion with Trustee. | 1.6 | $400.00 | $640.00 |
| 8/13/2024 | CED | Discussion with counsel to Ferris regarding support for agreement and related issues. | 0.3 | $400.00 | $120.00 |
| 8/14/2024 | CED | Review settlement provisions in detail, review and assess Akouete objection in detail (including exhibits), review Town Reply in support and Ferris statement in support and outline issues for discussion with Trustee prior to hearing. | 2 | $400.00 | $800.00 |
| 8/14/2024 | CED | Review multiple pleadings by Mr. Akouete; consider issues and whether response is required and assess timing issues regarding same. | 0.3 | $400.00 | $120.00 |
| 8/14/2024 | CED | Compile detailed list of items to discuss with Trustee and prepare email and forward to Trustee with summary in advance of strategy call set for 8/15. | 0.4 | $400.00 | $160.00 |
| 8/15/2024 | CED | Review order staying Adversary Proceeding and email to Trustee. | 0.1 | $400.00 | $40.00 |
| 8/16/2024 | CED | Call with Trustee and strategy regarding upcoming settlement hearing and additional asset issues. | 0.2 | $400.00 | $80.00 |
| 8/18/2024 | CED | Review proposal from Mr. Akouete and response from Trustee. | 0.2 | $400.00 | $80.00 |
| 8/20/2024 | CED | Prepare for hearing on Settlement Agreement. | 1.8 | $400.00 | $720.00 |
| 8/20/2024 | CED | Travel to/from hearing on Settlement Agreement; attend hearing on Settlement Agreement; discussions with Trustee prior to and after and planning for next steps. | 3.6 | $400.00 | $1,440.00 |
| 8/20/2024 | CED | Review subpoena served on Trustee and consider options. | 0.3 | $400.00 | $120.00 |
| 8/21/2024 | CED | Consider and assess strategies regarding evidentiary hearing including response to subpoena, subpoena of Town, valuation issues and options; further strategic planning. | 0.8 | $400.00 | $320.00 |
| 8/21/2024 | CED | Research subpoena scope, possible objections and consider issues and options (.6); consider issues regarding obtaining appraisal of the property and prepare detailed email to Trustee with summary of law (.6). | 1.2 | $400.00 | $480.00 |
| 8/21/2024 | KN | Assess options regarding response to subpoena and strategy for upcoming evidentiary hearing and subpoena compliance. | 1 | $400.00 | $400.00 |
| 8/23/2024 | CED | Prepare for call with Trustee and outline issues for discussion regarding upcoming evidentiary hearing (.4); call with Trustee regarding strategy to move forward with subpoena response and evidentiary hearing (.5). | 0.9 | $400.00 | $360.00 |
| 8/23/2024 | CED | Research regarding response to subpoena. | 0.5 | $400.00 | $200.00 |
| 8/26/2024 | CED | Prepare for meeting with Trustee regarding compliance with Subpoena. | 0.5 | $400.00 | $200.00 |
| 8/26/2024 | CED | Travel to/from Springfield, meet with Trustee regarding response to Subpoena and discuss various case issues and attend to review of Trustee files and communications and planning regarding response to Subpoena. | 7.8 | $400.00 | $3,120.00 |
| 8/26/2024 | CED | Strategy for subpoena compliance and consider objections potential, assess scope issues and request and further strategy regarding same. | 0.5 | $400.00 | $200.00 |
| 8/27/2024 | CED | Attention to subpoena compliance and strategy and planning for same. | 0.5 | $400.00 | $200.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/27/2024 | CED | Multiple emails and coordination with Ch 7 Trustee's office regarding production of documents in response to Subpoena. | 0.5 | $400.00 | $200.00 |
| 8/27/2024 | CED | Call with P. Carey regarding scope of subpoena. | 0.2 | $400.00 | $80.00 |
| 8/27/2024 | CED | Review Mr. Akouete Mtn for Summary Judgment and consider issues and arguments. | 0.3 | $400.00 | $120.00 |
| 8/28/2024 | CED | Prepare for and call with Mr. Gordon regarding upcoming evidentiary hearing. | 0.9 | $400.00 | $360.00 |
| 8/28/2024 | CED | Prepare for and call with Mr. Smerage regarding upcoming evidentiary hearing. | 0.4 | $400.00 | $160.00 |
| 8/28/2024 | CED | Review email from Mr. Smerage and consider Town's position regarding discovery dispute. | 0.2 | $400.00 | $80.00 |
| 8/29/2024 | CED | Review materials for response to Subpoena | 3.4 | $400.00 | $1,360.00 |
| 8/29/2024 | CED | Prepare for and call with Trustee regarding evidentiary hearing. | 0.5 | $400.00 | $200.00 |
| 8/30/2024 | CED | Review of materials related to Subpoena and planning regarding compliance. | 1.4 | $400.00 | $560.00 |
| 8/30/2024 | CED | Review relevant documents and prepare for and attend hearing on Discovery dispute with Town. | 0.8 | $400.00 | $320.00 |
| 8/30/2024 | CED | Call with Trustee regarding subpoena and planning for evidentiary hearing. | 0.3 | $400.00 | $120.00 |
| 8/30/2024 | CED | Call with Mr. Carey regarding pending settlement and evidentiary hearing. | 0.2 | $400.00 | $80.00 |
| 8/30/2024 | CED | Organize materials subject to R 408 in manner requested by Judge, planning for delivery of certain materials to Mr. Akouete and certain materials to Judge. | 1.5 | $400.00 | $600.00 |
| 8/30/2024 | CED | Finalize, file and attend to service of Response to Objection to Nicholson Devine LLC employment. | 0.3 | $400.00 | $120.00 |
| 8/30/2024 | CED | Finalize, file and attend to service of Objection to CTA and Status Report regarding same. | 0.3 | $400.00 | $120.00 |
| 9/2/2024 | CED | Draft Response to Subpoena and reserve rights; prepare and number documents for delivery. | 0.8 | $400.00 | $320.00 |
| 9/3/2024 | CED | Review and consider relevant Federal Rules and review relevant USCD local rules, and finalize Subpoena Response for delivery to Mr. Akouete. | 0.8 | $400.00 | $320.00 |
| 9/3/2024 | CED | Continued review of emails in preparation of delivery to BR Court per instructions of Judge. | 1.8 | $400.00 | $720.00 |
| 9/4/2024 | CED | Further review and determination of appropriate delivery of emails to comply with Subpoena and Court instructions regarding same. | 3 | $400.00 | $1,200.00 |
| 9/4/2024 | CED | Prepare detailed email to Trustee and outline issues regarding Subpoena compliance and Court instructions and include multiple exhibits for review. | 0.5 | $400.00 | $200.00 |
| 9/5/2024 | CED | Finalize letters to Court, to Mr. Akouete, prepare thumb drives for delivery of segregated materials; forward emails to Mr. Akouete and parties regarding same. | 1.5 | $400.00 | $600.00 |
| 9/5/2024 | CED | NO CHARGE. Hand Deliver Thumb drive to Court for in camera review. NO CHARGE | 1.5 | $0.00 | $0.00 |
| 9/5/2024 | CED | Follow up email to Mr. Smerage regarding materials delivered to Mr. Akouete v. to Court. | 0.1 | $400.00 | $40.00 |
| 9/6/2024 | CED | Review and assess emails from Mr. Ferris and Mr. Akouete regarding counter proposal and consider issues and impact on settlement approval process and assess options. | 0.4 | $400.00 | $160.00 |
| 9/6/2024 | CED | Emails to/from the Trustee regarding recent emails with Mr. Ferris and Mr. Akouete and strategy regarding options. | 0.2 | $400.00 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/7/2024 | CED | Further emails with Trustee regarding issues/options and strategies to move forward in light of recent developments and recent emails. | 0.2 | $400.00 | $80.00 |
| 9/7/2024 | CED | NO CHARGE. Multiple emails scheduling calls. NO CHARGE. | 0.2 | $0.00 | $0.00 |
| 9/9/2024 | CED | Attend to calls and emails to identify and propose a potential Appraiser and review credentials and assess options available to Trustee (.8); conduct detailed call with potential appraiser and prepare and send follow up email regarding scope of assignment, conflict issues, potential engagement by court and next steps (.4); email update to Trustee regarding same (.2). | 1.4 | $400.00 | $560.00 |
| 9/9/2024 | CED | Prepare draft of Motion to Reschedule Evidentiary Hearing and to Submit Appraisal (2.1); forward draft to Trustee for review and comment (.1). | 2.2 | $400.00 | $880.00 |
| 9/9/2024 | CED | Prepare for and attend video conference call with Trustee and with Mr. Gordon regarding settlement related issues. | 0.6 | $400.00 | $240.00 |
| 9/9/2024 | CED | Attend to filing and service of Motion to Reschedule Evidentiary Hearing and Extend Appraisal Deadline. | 0.3 | $400.00 | $120.00 |
| 9/10/2024 | CED | Call with Mr. Smerage regarding Mtn to Reschedule (.2); emails to/from Trustee regarding same (.1). | 0.3 | $400.00 | $120.00 |
| 9/10/2024 | CED | Call with Alternative Appraiser and discuss project details, costs, timing and related issues; multiple emails and calls to secure cost and proposals from multiple possible appraisers for Trustee to consider; emails update to Trustee regarding same. | 0.5 | $400.00 | $200.00 |
| 9/10/2024 | CED | Review detailed email from Mr. Akouete regarding sale and marketing process. | 0.2 | $400.00 | $80.00 |
| 9/10/2024 | CED | Review Court Order regarding in camera review; planning for compliance with additional turnover; review records regarding same. | 0.4 | $400.00 | $160.00 |
| 9/10/2024 | CED | Review Opposition by Mr. Akouete to Mtn to Reschedule. | 0.2 | $400.00 | $80.00 |
| 9/11/2024 | CED | Additional work and emails locating viable appraiser; review email from Mr. Bouchard with additional possible contacts; research same and call to alternative appraiser. | 0.4 | $400.00 | $160.00 |
| 9/11/2024 | CED | Call with Mr. Gustufson regarding appraisal (.3); follow up emails regarding project, parties involved and review CV provided (.3). | 0.6 | $400.00 | $240.00 |
| 9/11/2024 | CED | Review and assess Mr. Akouete's objection to Motion to Reschedule. | 0.2 | $400.00 | $80.00 |
| 9/11/2024 | CED | Review and consider Town's response to Motion to Reschedule. | 0.2 | $400.00 | $80.00 |
| 9/11/2024 | CED | Email to Mr. Akouete with additional documents attached regarding subpoena. | 0.2 | $400.00 | $80.00 |
| 9/11/2024 | CED | Review Affidavit filed by Town to support Settlement and review Mr. Akouete's Mtn to Strike. | 0.3 | $400.00 | $120.00 |
| 9/12/2024 | CED | Further emails with Mr. Gustafson regarding terms of possible engagement and costs; consider options and emails with the Trustee regarding same. | 0.3 | $400.00 | $120.00 |
| 9/13/2024 | CED | Review order rescheduling hearing; email to Trustee regarding same; log relevant dates for scheduling. | 0.2 | $400.00 | $80.00 |
| 9/23/2024 | CED | Review Mtn to Clarify by Mr. Akouete and consider strategy regarding same. | 0.2 | $400.00 | $80.00 |
| 9/24/2024 | CED | Prepare detailed email to Appraiser, with Order attached, and planning for next steps to arrange appraisal. | 0.2 | $400.00 | $80.00 |
| 9/24/2024 | CED | Review detailed email from Mr. Akouete regarding process and request for information and input on process; review direct inquiry to appraiser; respond to Mr. Akouete to cease interference. | 0.3 | $400.00 | $120.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/24/2024 | CED | Strategy regarding issues relevant to the appraisal process; planning for call with Appraiser; prepare detailed email to Trustee regarding issues and further planning for conference call. | 0.5 | $400.00 | $200.00 |
| 9/24/2024 | CED | Email Appraiser regarding Mr. Akouete role and no need to respond to inquires. | 0.1 | $400.00 | $40.00 |
| 9/24/2024 | CED | Review multiple additional documents from Mr. Akouete to Appraiser; consider same and strategy to ensure process moves forward toward appraisal without interference. | 0.4 | $400.00 | $160.00 |
| 9/25/2024 | CED | NO CHARGE. Coordinate conference call with Trustee and Appraiser; multiple emails regarding same. NO CHARGE | 0.2 | $0.00 | $0.00 |
| 9/25/2024 | CED | Planning for, review issues to discuss. conduct conference call with Trustee and Broker. | 0.5 | $400.00 | $200.00 |
| 9/25/2024 | CED | Compile documents requested by Appraiser from file regarding RFP and related information from file; forward same vial email to Appraiser. | 0.6 | $400.00 | $240.00 |
| 9/25/2024 | CED | Additional email with Appraiser; include documents filed by Town to support municipal assessment, include attachments. | 0.3 | $400.00 | $120.00 |
| 9/25/2024 | CED | Email to Mr. Smearage re building access for Appraiser; follow up email due to out of office. | 0.2 | $400.00 | $80.00 |
| 9/25/2024 | CED | Review email from Mr. Smerage regarding access issues and limitations; forward same to Appraiser. | 0.2 | $400.00 | $80.00 |
| 9/26/2024 | CED | Call with R. Smerage re building access issues. | 0.2 | $400.00 | $80.00 |
| 9/27/2024 | CED | Emails to/from Appraiser; include Trustee; confirming no access to property required. | 0.2 | $400.00 | $80.00 |
| 9/29/2024 | CED | Review email from Mr. Akouete regarding marketing the property; consider issues; email to Trustee regarding same. | 0.3 | $400.00 | $120.00 |
| 9/30/2024 | CED | Review email from Mr. Smerage with detailed access conditions and waiver; consider same and email to Appraiser to consider. | 0.2 | $400.00 | $80.00 |
| 10/1/2024 | CED | Call with Trustee and strategy regarding Mr. Akouete's listing of property and issues for estate; call with Trustee and Mr. Akouete regarding same. | 0.4 | $400.00 | $160.00 |
| 10/1/2024 | CED | Email to Mr. Akouete regarding not misrepresenting interests of estate; review response. | 0.2 | $400.00 | $80.00 |
| 10/1/2024 | CED | Review purported "offers" forwarded from Mr. Akouete; assess misrepresentations by Mr. Akouete; consider issues and risks to estate; email to/from the Trustee regarding same. | 0.3 | $400.00 | $120.00 |
| 10/2/2024 | CED | Review Mtn by Mr. Akouete to Order Trustee action; strategy re response; emails with Trustee (.2); email to/from Mr. Smerage and consider issues and substance of response regarding Mr. Akouete's marketing actions (.2) | 0.4 | $400.00 | $160.00 |
| 10/2/2024 | CED | Draft email to Mr. Akouete regarding not listing property, send to Trustee for review; forward same to Mr. Akouete. | 0.2 | $400.00 | $80.00 |
| 10/2/2024 | CED | Review Court denial of Mr. Akouete Mtn; consider order provisions. | 0.2 | $400.00 | $80.00 |
| 10/3/2024 | CED | Review and assess Town's Mtn for PI; strategy re Trustee's position on Mr. Akouete's actions. | 0.4 | $400.00 | $160.00 |
| 10/3/2024 | CED | Review update from Appraiser and reply to same. | 0.2 | $400.00 | $80.00 |
| 10/3/2024 | CED | Email to Trustee, attached Court Order and outline next steps regarding pending pleadings. | 0.2 | $400.00 | $80.00 |
| 10/3/2024 | CED | Review Mr. Akouete's response to PI and hearing notice; consider estate issues for hearing. | 0.2 | $400.00 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/4/2024 | CED | Review Mr. Akouete email with information attached regarding offer to purchase and bank account funds of potential buyer; consider estate interests and prepare and forward email to Trustee regarding proposed course of action dealing with Mr. Akouete. | 0.4 | $400.00 | $160.00 |
| 10/8/2024 | CED | Prepare for hearing regarding Mr. Akouete actions regarding listing property; consider estate position and plan for same; and attend telephonic hearing. | 0.7 | $400.00 | $280.00 |
| 10/8/2024 | CED | Attention to additional information requested by appraiser to complete appraisal; identify relevant documents / information and forward same vial email. | 0.4 | $400.00 | $160.00 |
| 10/8/2024 | CED | Review Court Orders regarding issues related to Mr. Akouete listing property. | 0.1 | $400.00 | $40.00 |
| 10/9/2024 | CED | Review draft proposed order from Mr. Smerage per Court's request; revise and redline same consistent with direction at hearing; forward same to Trustee. | 0.4 | $400.00 | $160.00 |
| 10/9/2024 | CED | Further email to Mr. Smerage regarding proposed order and submission requirements per Court directions. | 0.2 | $400.00 | $80.00 |
| 10/9/2024 | CED | Review further Response by Mr. Akouete re show cause. | 0.2 | $400.00 | $80.00 |
| 10/10/2024 | CED | Review additional filing by Mr. Akouete; consider estate interest in same. | 0.2 | $400.00 | $80.00 |
| 10/17/2024 | CED | Review Court Order re conditions of Mr. Akouete appearance. | 0.2 | $400.00 | $80.00 |
| 10/21/2024 | CED | Review emails from Appraiser regarding status of draft appraisal; call to Appraiser regarding same. | 0.2 | $400.00 | $80.00 |
| 10/21/2024 | CED | Call with Trustee regarding appraisal status; payment required, and next steps in the process. | 0.2 | $400.00 | $80.00 |
| 10/21/2024 | CED | Prepare detailed email to Trustee with appraisal agreement, Court order, invoice attached; email to Appraiser regarding same. | 0.2 | $400.00 | $80.00 |
| 10/28/2024 | CED | Email to/from Trustee and Appraiser regarding payment status and delivery of draft appraisal. | 0.2 | $400.00 | $80.00 |
| 10/31/2024 | CED | Consider options and planning for call with Trustee regarding appraisal; review status of multiple pending matters on hold to be considered; outline options for discussion. | 0.8 | $400.00 | $320.00 |
| 11/1/2024 | CED | Prepare for and call with S. Gordon and J. Goldsmith regarding pending settlement proceeding. | 0.5 | $400.00 | $200.00 |
| 1/6/2025 | CED | Review email from R. Smerage re status of recent buyer interest. | 0.1 | $400.00 | $40.00 |
| 1/10/2025 | CED | Review/revise discovery draft responses for review by Trustee. | 1.2 | $400.00 | $480.00 |
| 1/10/2025 | CED | Call with R. Smerage regarding status of buyer interest, options for upcoming hearing and email to Trustee with update regarding same. | 0.3 | $400.00 | $120.00 |
| 1/13/2025 | CED | Call with Trustee and discuss options to deal with upcoming hearings; attention to outreach to potential buyers and strategy. | 0.3 | $400.00 | $120.00 |
| 1/13/2025 | CED | Call to and email to Mr. Smerage re upcoming hearings and open issues. | 0.1 | $400.00 | $40.00 |
| 1/21/2025 | CED | Call with Trustee re upcoming hearings, plan for call with Mr Smerage, plan re property recovery. | 0.2 | $400.00 | $80.00 |
| 1/29/2025 | CED | Email to R. Smerage with updates regarding inquiries from interested parties and requesting update from Town re same. | 0.2 | $400.00 | $80.00 |
| | | **TOTAL** | **69.8** | | **$27,160.00** |

# EXHIBIT D

**In Re Westborough SPE LLC** **EXHIBIT D**
**Case No. 23-40709-CJP**

**CREDITOR MEETINGS AND COMMUNICATIONS**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 2/25/2025 | CED | Call with S. Gordon regarding multiple case issues. | 0.2 | 400 | $80.00 |
| 5/14/2025 | CED | Call with Paul Carey regarding Ferris claims and issues. | 0.2 | 400 | $80.00 |
| | | **TOTAL** | **0.4** | | **$160.00** |

# EXHIBIT E

**In Re Westborough SPE LLC** **EXHIBIT E**
**Case No. 23-40709-CJP**

**EMPLOYMENT APPLICATIONS AND OBJECTIONS**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 8/12/2024 | CED | Draft Application to Employ Nicholson Devine LLC as counsel to the Trustee including Affidavit and COS; forward via email to Trustee for review and approval. | 1.2 | 400 | $480.00 |
| 8/12/2024 | CED | Revise Application to employ Nicholson Devine and forward same via email to Trustee. | 0.3 | 400 | $120.00 |
| 8/14/2024 | CED | Review issues regarding ND employment and prepare for discussion with Trustee. | 0.3 | 400 | $120.00 |
| 8/28/2024 | CED | Attention to Objection/Request by Mr. Akouete regarding pending Nicholson Devine application and strategy regarding appropriate response to relief requested (.2); draft response to same (.8); forward to Trustee for review (.1). | 1.1 | 400 | $440.00 |
| 9/13/2024 | CED | Review substantive details of Appraiser engagement terms; draft Mtn to Employ Appraiser and Affidavit incorporating same and provide details regarding case status and necessity of Appraiser engagement; forward draft to Trustee to review. | 1.3 | 400 | $520.00 |
| 9/16/2024 | CED | Review hearing procedures, Email to Court to attend hearing via video. | 0.2 | 400 | $80.00 |
| 9/17/2024 | CED | Prepare for (.3) and attend (.2) hearing on Employment of ND as counsel to the Trustee. | 0.5 | 400 | $200.00 |
| 9/18/2024 | CED | Review Appraiser Agreement, revise to include provisions required by Trustee, prepare and forward detailed email to Appraiser regarding same and explain basis. | 0.4 | 400 | $160.00 |
| 9/19/2024 | CED | Review updated agreement from Appraiser; review for required edits; forward same to Trustee to review. | 0.2 | 400 | $80.00 |
| 9/19/2024 | CED | Call with Trustee re Appraiser; email to Appraiser regarding same and steps to move forward with employment. | 0.3 | 400 | $120.00 |
| 9/23/2024 | CED | Finalize, file and serve Mtn to Employ Appraiser. | 0.4 | 400 | $160.00 |
| 9/23/2024 | CED | Review order approving Trustee Appraiser; email with Trustee regarding same and planning next steps. | 0.2 | 400 | $80.00 |
| 9/26/2024 | CED | Emails coordinating signature on Appraiser agreement; emails with Trustee and Appraiser; obtain and forward signed contract. | 0.2 | 400 | $80.00 |
| | | **TOTAL** | **6.6** | | **$2,640.00** |

# EXHIBIT F

Case 23-40709 Doc 1763 Filed 09/18/25 Entered 09/18/25 14:36:31 Desc Main
Document Page 507 of 549

**In Re Westborough SPE LLC**
**Case No. 23-40709-CJP**

**EXHIBIT F**

**FEE APPLICATIONS AND OBJECTIONS**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 7/17/2025 | CED | Preparing ND fee application. | 3 | 400 | $1,200.00 |
| 7/24/2025 | CED | Drafting Nicholson Devine Fee Application. | 2.6 | 400 | $1,040.00 |
| | | **TOTAL** | **5.6** | | **$2,240.00** |

# EXHIBIT G

**In Re Westborough SPE LLC** **EXHIBIT G**
**Case No. 23-40709-CJP**

**CLAIMS ADMINISTRATION AND OBJECTIONS**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 10/11/2024 | CED | Review inquiry from Mr. Akouete regarding claim. | 0.1 | 400 | $40.00 |
| 10/23/2024 | CED | Review Court Order regarding Claim objection timing; review Mr. Akouete claim and attachments thereto; consider options and email to Trustee with recommended court of action. | 0.5 | 400 | $200.00 |
| 10/23/2024 | CED | Review and consider Town response regarding admissions. | 0.2 | 400 | $80.00 |
| 11/1/2024 | AS | Review and analysis of claims filed by Akouete, documents provided in support of same | 0.5 | 125 | $62.50 |
| 11/1/2024 | CED | Strategic planning re Akouete Claim objection; consider multiple bases for objection. | 0.3 | 400 | $120.00 |
| 11/4/2024 | AS | Review and analysis of multiple pleadings filed by Akouete, two proof of claims filed of Akouete, dockets, affidavit and timeline in support of Akouete's claim 4.1, claim objections of other parties, and various other documents in case file relevant to objecting to Akouete's claim | 1.7 | 125 | $212.50 |
| 11/4/2024 | AS | Research re: guidelines under CA law for asset finders, fees they can collect, applicable statutes, asset claims process | 0.6 | 125 | $75.00 |
| 11/4/2024 | AS | Draft objection to claims of Akouete | 2.3 | 125 | $287.50 |
| 11/4/2024 | AS | Strategy and planning for trustee's objection to Akouete's claims | 0.3 | 125 | $37.50 |
| 11/4/2024 | CED | Review Akouete claims in detail and motion re claims; and planning for objection; compile items relevant to claim and outline basis for objection. | 1 | 400 | $400.00 |
| 11/4/2024 | CED | Review research regarding CA asset investigator statute; consider same and strategy regarding objection. | 0.5 | 400 | $200.00 |
| 11/5/2024 | AS | Review and revise objection to Akouete claims | 1.4 | 125 | $175.00 |
| 11/5/2024 | AS | Research CA law on asset investigators and whether the 10% limit for fees is applicable to investigators acting on behalf of both consumers and businesses | 2 | 125 | $250.00 |
| 11/5/2024 | AS | Call to CA State Controller's office re: applicability of California Code of Civil Procedure Section 1582 | 0.1 | 125 | $12.50 |
| 11/5/2024 | AS | Confer with C. Devine re: objection to Akouete claims | 0.3 | 125 | $37.50 |
| 11/5/2024 | CED | Further research regarding finder's fee requirements and further review of record for information regarding specific activities of Mr. Akouete under theories set forth in Akouete's claims and consider alternative basis for possible Akouete claim and further research (2.0); and drafting objection to claim (1.1). | 3.1 | 400 | $1,240.00 |
| 11/6/2024 | AS | Strategize re: objection to claim of Akouete | 0.1 | 125 | $12.50 |
| 11/6/2024 | AS | Review communications with Trustee re: objection to Akouete claim | 0.1 | 125 | $12.50 |
| 11/6/2024 | AS | Prepare certificate of service for objection to Akouete claim, prepare objection for filing, and file all with court | 0.7 | 125 | $87.50 |
| 11/6/2024 | CED | Substantive revisions to claim objection draft and forward to Trustee for review. | 2.1 | 400 | $840.00 |
| 11/6/2024 | CED | Call with Trustee regarding draft objection and revisions and incorporate revisions reqeusted. | 0.3 | 400 | $120.00 |
| 11/6/2024 | CED | Attention to filing and service issues regarding claim objection; review emails. | 0.2 | 400 | $80.00 |
| 11/6/2024 | CED | Review email from Ms. Edwards regarding prior negotiations and her claim (.2), discuss with Trustee and respond to same (.2). | 0.4 | 400 | $160.00 |
| 11/7/2024 | CED | Review Akouete response to claim objection and consider legal issues discussed. | 0.3 | 400 | $120.00 |
| 11/7/2024 | AS | Review emergency motion/response by Lolo to trustee's claim objection and analysis of legal issues | 0.3 | 125 | $37.50 |
| 11/8/2024 | CED | Review Order regarding Mr. Akouete request for emergency claim allowance. | 0.1 | 400 | $40.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/12/2024 | CED | Review Mr. Akouete Objection; review various exhibits and consider same; review whistleblower statute applicability. | 0.8 | 400 | $320.00 |
| 11/12/2024 | CED | Review Operating Agreement for manager appointment authority relative to Akouete claim and review other parts of the record and consider same. | 0.6 | 400 | $240.00 |
| 11/13/2024 | CED | Analysis of Mr. Akouete further response to claim objection including review of exhibit and further review of Operating Agreement provisions in detail regarding claim of authority. | 1 | 400 | $400.00 |
| 11/19/2024 | CED | Review documents relevant to Akouete claims, Trustee objection and responses by Akouete; prepare for Status Conference hearing. | 0.5 | 400 | $200.00 |
| 11/25/2024 | CED | Review Mr. Akouete's further amended Proof of Claim including its multiple exhibits. | 0.4 | 400 | $160.00 |
| 11/25/2024 | CED | Review and consider Motions filed by Mr. Akouete regarding Court assistance with discovery issues and request for case management. | 0.3 | 400 | $120.00 |
| 11/25/2024 | CED | Compile information necessary for pursuit of objection to Mr. Akouete's claim. | 0.5 | 400 | $200.00 |
| 11/26/2024 | KN | Review LA claims, objection and responses; strategize re discovery | 1.5 | 400 | $600.00 |
| 12/4/2024 | CED | Research corporate authority issues regarding Mr. Akouete's claim, and review multiple prior pleadings relative to same. | 1.8 | 400 | $720.00 |
| 12/5/2024 | CED | Strategy regarding resignation of B&B, impact under state law, evidentiary issues, possible phasing of discovery. | 0.6 | 400 | $240.00 |
| 12/6/2024 | CED | Review pleadings by B&B; review Del corp law regarding LLC management; consider ability to limit scope of discovery; prepare email to B&B counsel; re documents. | 0.6 | 400 | $240.00 |
| 12/6/2024 | CED | Review documents from B&B counsel; further emails to/from requesting additional documents, receive and review same. | 0.5 | 400 | $200.00 |
| 12/9/2024 | AS | Corporate entity search of Babcock & Brown administrative LLC and file request for all corporate documents with Delaware Secretary of State | 0.5 | 250 | $125.00 |
| 12/9/2024 | AS | Research Delaware Secretary records re: Babcock & Brown Parallel Member LLC | 0.2 | 250 | $50.00 |
| 12/9/2024 | CED | Review available public corporate records regarding Brown and Babcock, merger to successor, review Massachusetts public corporate records; consider documents required from Delaware and planning ti obtain; review Akouete representations in Land Court and acknowledgment of Ms Scholes resignation. | 1.2 | 400 | $480.00 |
| 12/10/2024 | AS | Request all corporate records from Delaware Secretary of State records for the entity Babcock & Brown Parallel Member LLC | 0.2 | 250 | $50.00 |
| 12/10/2024 | CED | Call with Mr Gordon regarding perspective of the petitioning creditors and claim resolution strategies. | 0.5 | 400 | $200.00 |
| 12/10/2024 | CED | Research apparent authority, reliance issues. | 0.5 | 400 | $200.00 |
| 12/11/2024 | AS | Strategize re: corporate documents requested from DE sec of state | 0.1 | 250 | $25.00 |
| 12/11/2024 | AS | Attention to obtaining status of documents requested from DE sec of state | 0.2 | 250 | $50.00 |
| 12/11/2024 | CED | Review Akouete Mediation Motion; consider issues and email to Trustee (.2); call with Trustee and discuss options to address Akouete claim dispute and related issues (.2). | 0.4 | 400 | $160.00 |
| 12/11/2024 | CED | Drafting, revising Objection to Akouete recent Claim amendment. | 0.9 | 400 | $360.00 |
| 12/11/2024 | CED | Drafting response to Akouete Mediation Motion, response to Akouete discovery motion, and related relief; forward draft with Draft Claim objection to Trustee for review. | 1.3 | 400 | $520.00 |
| 12/11/2024 | CED | Begin review of discovery materials produced by Babcock and Brown. | 0.8 | 400 | $320.00 |
| 12/12/2024 | CED | Review and assess Akouete objection to Joint Mtn to continue hearing on remand. | 0.2 | 400 | $80.00 |
| 12/12/2024 | AS | Call with Delaware secretary of state corps division re: status of corporate document requests | 0.4 | 250 | $100.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/12/2024 | CED | Finalize draft Claim objection regarding amended Akouete claim and forward to Trustee for review and approval. | 0.3 | 400 | $120.00 |
| 12/12/2024 | CED | Revise and finalize objection to Akouete subpoena Motion and forward same to Trustee for review and approval. | 0.7 | 400 | $280.00 |
| 12/12/2024 | CED | Review Akouete withdrawal of motion regarding compelling compliance with subpoena. | 0.1 | 400 | $40.00 |
| 12/13/2024 | AS | Review and revise limited objection and reservation of rights regarding Akouete discovery request | 0.2 | 250 | $50.00 |
| 12/13/2024 | AS | Review and revise objection to Akouete's claim | 0.2 | 250 | $50.00 |
| 12/13/2024 | AS | Review and analysis of Nathanson & Goldberg's and Goulston's and objections to Akouete's motion to compel | 0.3 | 250 | $75.00 |
| 12/13/2024 | AS | Strategize re: trustee's limited objection to discovery request and objection to claim of Lolonyon Akouete | 0.2 | 250 | $50.00 |
| 12/13/2024 | AS | Prepare objection to Akouete claims and trustee's limited objection to Akouete discovery motion and reservation of rights for filing with Court and file same with Court | 0.4 | 250 | $100.00 |
| 12/13/2024 | CED | Finalize for filing Objection to Claim 4.3 and Limited Objection to Akouete discovery motion. | 0.4 | 400 | $160.00 |
| 12/13/2024 | CED | Review and consider objections to Akouete discovery by Goulston and Petitioning Creditors; consider issues raised. | 0.4 | 400 | $160.00 |
| 12/16/2024 | AS | Review and analysis of corporate documents produced by Delaware for Babcock Brown Parallel Member LLC | 0.3 | 250 | $75.00 |
| 12/17/2024 | CED | Review and consider Akouete responses to pending discovery dispute. | 0.4 | 400 | $160.00 |
| 12/17/2024 | CED | Prepare for hearing on Akouete discovery dispute, review arguments in objection by Goulston and Petitioning Creditors; outline arguments. | 0.8 | 400 | $320.00 |
| 12/18/2024 | AS | Strategize re: discovery requests filed by Akouete | 0.1 | 250 | $25.00 |
| 12/18/2024 | AS | Review discovery requests filed by Akouete | 0.7 | 250 | $175.00 |
| 12/19/2024 | AS | Review discovery requests and other motions filed by L. Akouete | 0.3 | 250 | $75.00 |
| 12/20/2024 | CED | Discovery strategy meeting; review Ints, RPOD, and Admission requests from Mr. Akouete; strategy regarding discovery to conduct for Trustee. | 2.2 | 400 | $880.00 |
| 12/20/2024 | AS | Review discovery requests filed by Akoute and his proofs of claim in preparation for discovery strategy meeting | 0.7 | 250 | $175.00 |
| 12/20/2024 | AS | Strategy meeting re: discovery responses to Akoute, potential discovery on behalf of Trustee, and next steps and strategy re: same | 2.2 | 250 | $550.00 |
| 12/23/2024 | AS | Review Akouete discovery requests | 0.5 | 250 | $125.00 |
| 12/24/2024 | AS | Continue drafting responses to Akouete discovery requests | 1.7 | 250 | $425.00 |
| 12/30/2024 | AS | Draft discovery responses | 1.1 | 250 | $275.00 |
| 12/31/2024 | AS | Continue drafting discovery responses | 1.1 | 250 | $275.00 |
| 1/2/2025 | AS | Continue drafting discovery responses | 1.7 | 250 | $425.00 |
| 1/2/2025 | AS | Review and analysis of MBLR 7036-1 re: requests for admissions and responses to same | 0.2 | 250 | $50.00 |
| 1/3/2025 | AS | Continue drafting discovery responses | 0.7 | 250 | $175.00 |
| 1/6/2025 | AS | Review motions for status update and summary judgment filed by Akouete | 0.4 | 250 | $100.00 |
| 1/6/2025 | AS | Review Akouete's requests for production of documents, and research and analysis of rules and guidelines for responding to same | 0.7 | 250 | $175.00 |
| 1/6/2025 | AS | Draft responses to Akouete's requests for production of documents | 1.7 | 250 | $425.00 |
| 1/6/2025 | CED | Prepare for and call with S Gordon regarding discovery issues and deadlines. | 0.3 | 400 | $120.00 |
| 1/7/2025 | CED | Review Fed Rules re subpoenas in contested matters, scope, service, notice, and other issues. | 0.6 | 400 | $240.00 |
| 1/7/2025 | CED | Strategy discussions regarding responses to RPOD from Mr. Akouete. | 0.2 | 400 | $80.00 |
| 1/7/2025 | AS | Draft responses to Akouete's document requests | 2 | 250 | $500.00 |
| 1/7/2025 | AS | Research rules and procedures related to answering interrogatories | 0.6 | 250 | $150.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/7/2025 | AS | Draft answers to interrogatories | 2.8 | 250 | $700.00 |
| 1/7/2025 | AS | Strategize re: responses to Akouete discovery | 0.3 | 250 | $75.00 |
| 1/7/2025 | CED | Preparing and revising responses to Akouete RPOD; reviewing documents responsive. | 2.4 | 400 | $960.00 |
| 1/8/2025 | AS | Review and analysis of B&B Parallel Member LLC corporate docs produced by Delaware secretary of state | 0.4 | 250 | $100.00 |
| 1/8/2025 | AS | Strategize re: corporate docs, discovery responses | 0.2 | 250 | $50.00 |
| 1/8/2025 | CED | Further drafting Response to Requests for Production of Documents; identify issues which require further review and discussion with Trustee. | 1.2 | 400 | $480.00 |
| 1/8/2025 | CED | Reviewing Admission requests and consider responses. | 0.5 | 400 | $200.00 |
| 1/8/2025 | AS | Review and revise responses to requests for production of documents | 0.6 | 250 | $150.00 |
| 1/8/2025 | AS | Research re: privileged documents in discovery under federal rules | 0.3 | 250 | $75.00 |
| 1/8/2025 | AS | Continue drafting answers to interrogatories | 0.3 | 250 | $75.00 |
| 1/9/2025 | AS | Continue drafting answers to Akouete interrogatories | 1.4 | 250 | $350.00 |
| 1/9/2025 | CED | Revise Trustee's Response to Admissions (1.6); Revise Trustee's Response to Interrogatories (1.8). | 3.4 | 400 | $1,360.00 |
| 1/10/2025 | AS | Research form and manner of production of responses to document requests and strategize re: same | 0.2 | 250 | $50.00 |
| 1/10/2025 | AS | Review responsive documents and prepare for production to Akouete | 0.6 | 250 | $150.00 |
| 1/13/2025 | CED | Planning for omnibus objection to multiple duplicative pleadings filed by Mr. Akouete. | 0.2 | 400 | $80.00 |
| 1/13/2025 | AS | Strategize re: discovery, next steps | 0.2 | 250 | $50.00 |
| 1/14/2025 | CED | Draft RPOD to serve on Mr. Akouete. | 1.5 | 400 | $600.00 |
| 1/14/2025 | CED | Revise form subpoena exhibit to be modified per recipient. | 0.5 | 400 | $200.00 |
| 1/14/2025 | CED | Drafting Interrogatories to Serve on Akouete. | 1 | 400 | $400.00 |
| 1/14/2025 | AS | Research rules regarding subpoenas for documents, proper service, etc. | 0.3 | 250 | $75.00 |
| 1/14/2025 | AS | Review and revise Trustee's requests for production of documents to Akouete | 0.7 | 250 | $175.00 |
| 1/14/2025 | CED | Call with J. Goldsmith, reviewing and planning regarding discovery responses. | 0.4 | 400 | $160.00 |
| 1/14/2025 | AS | Strategize regarding answers to document requests from Akouete, finalizing response | 0.2 | 250 | $50.00 |
| 1/14/2025 | AS | Review documents responsive to Akouete requests for production of documents | 0.7 | 250 | $175.00 |
| 1/14/2025 | CED | Further planning for document production and call with Trustee regarding same; review additional documents; further updates responses. | 1 | 400 | $400.00 |
| 1/15/2025 | CED | Review all discovery responses to be provided to Akouete and revised for final Trustee review and approval; prepare and forward emails to Trustee regarding process for completing and responding to discovery. | 2.7 | 400 | $1,080.00 |
| 1/15/2025 | CED | Planning regarding redactions required to responses to deliver to Akouete; planning for delivery of materials. | 0.5 | 400 | $200.00 |
| 1/15/2025 | AS | Review documents responsive to Akouete RPDs | 1 | 250 | $250.00 |
| 1/15/2025 | AS | Strategize re: production to Akouete | 0.3 | 250 | $75.00 |
| 1/15/2025 | AS | Review and revise responses to Akouete document requests, update with Bates stamp numbers to correspond to document production | 0.2 | 250 | $50.00 |
| 1/15/2025 | AS | Prepare Trustee's responses to Akouete's discovery requests for service on Akouete | 0.5 | 250 | $125.00 |
| 1/15/2025 | AS | Strategize re: service of trustee's responses and document production to Akouete | 0.1 | 250 | $25.00 |
| 1/15/2025 | AS | Emails to Akouete with Trustee's responses to his discovery requests and with the document production in two parts | 0.1 | 250 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/15/2025 | CED | Review multiple pending pleadings by L. Akouete and consider substance of same; revise omnibus response and reference prior orders by the Court regarding no responses required; forward same to Trustee to review and approve. | 1.4 | 400 | $560.00 |
| 1/15/2025 | CED | Further drafting Interrogatories and RPOD to serve on Mr. Akouete; review further details of Claims and exhibits and revise all. | 1.5 | 400 | $600.00 |
| 1/15/2025 | AS | Review and revise Trustee's discovery requests to Akouete | 0.7 | 250 | $175.00 |
| 1/16/2025 | AS | Review and revise Trustee's discovery requests to Akouete and subpoena Exhibit A | 0.5 | 250 | $125.00 |
| 1/16/2025 | CED | Review multiple emails with Akouete regarding claim dispute, including emails with Mr. Gordon; emails to coordinate call with Mr. Akouete. | 0.2 | 400 | $80.00 |
| 1/16/2025 | CED | Revising, planning for discovery to served on Akouete; planning regarding subpoenas on third parties. | 0.5 | 400 | $200.00 |
| 1/16/2025 | AS | Strategize regarding subpoenas, Trustee's discovery requests to Akouete | 0.2 | 250 | $50.00 |
| 1/16/2025 | AS | Review and revise schedule A to subpoena to applicable firms and individuals | 0.9 | 250 | $225.00 |
| 1/16/2025 | AS | Review and revise Trustee's requests for production of documents and interrogatories to Akouete | 0.3 | 250 | $75.00 |
| 1/17/2025 | CED | Review multiple pleadings by Mr. Akouete, related to Summary Judgment request and disclosing discovery responses; consider options regarding same. | 0.6 | 400 | $240.00 |
| 1/17/2025 | CED | Email to Trustee with recommended course of action regarding claim dispute; call with Trustee regarding same and discuss next steps regarding resolution of Akouete claim. | 0.2 | 400 | $80.00 |
| 1/17/2025 | CED | Attention to final edits and service of discovery on Mr. Akouete. | 0.4 | 400 | $160.00 |
| 1/17/2025 | AS | Review and revise subpoenas schedule A | 0.3 | 250 | $75.00 |
| 1/17/2025 | AS | Strategize re: next steps, responses filed by Akouete, planning for discovery to Akouete | 0.4 | 250 | $100.00 |
| 1/17/2025 | AS | Review and revise Trustee's discovery requests to Akouete | 0.6 | 250 | $150.00 |
| 1/17/2025 | AS | Review supplement filed by Akouete with all Trustee's discovery responses attached | 0.2 | 250 | $50.00 |
| 1/17/2025 | AS | Serve Trustee's discovery requests on Akouete and coordinate mail service of same | 0.3 | 250 | $75.00 |
| 1/19/2025 | CED | Review Motion by Ms. Edwards and consider same. | 0.2 | 400 | $80.00 |
| 1/21/2025 | CED | Review multiple pleadings by Mr. Akouete; planning for upcoming hearings. | 0.3 | 400 | $120.00 |
| 1/21/2025 | CED | Email to Mr. Akouete regarding telephone conference. | 0.1 | 400 | $40.00 |
| 1/21/2025 | AS | Review and analysis of motion filed by Denise Edwards regarding claim as manager and Trustee actions, strategize re: same | 0.3 | 250 | $75.00 |
| 1/21/2025 | CED | Call with S. Gordon regarding Debtor documents in client's possession which belong to estate. | 0.4 | 400 | $160.00 |
| 1/22/2025 | AS | Review Akouete's Second supplement to summary judgment request. | 0.1 | 250 | $25.00 |
| 1/22/2025 | CED | Prepare for call with Akouete and participate in call regarding Akouete pending claim. | 0.8 | 400 | $320.00 |
| 1/22/2025 | CED | Call with J. Laliberte regarding representation of debtor and request for information. | 0.2 | 400 | $80.00 |
| 1/27/2025 | CED | Review Akouete email; respond regarding disputed factual issues. | 0.2 | 400 | $80.00 |
| 1/28/2025 | AS | Communications with trustee re: subpoena to Sherin | 0.1 | 250 | $25.00 |
| 1/28/2025 | CED | Revise objection to Edwards Motion; planning for next steps. | 0.3 | 400 | $120.00 |
| 1/28/2025 | AS | Review and update subpoena to Sherin Lodgen | 0.2 | 250 | $50.00 |
| 1/28/2025 | AS | Review and revise notice of subpoena | 0.1 | 250 | $25.00 |
| 1/28/2025 | AS | Strategize re: notice to Akouete of subpoena, serving subpoena on Sherin | 0.1 | 250 | $25.00 |
| 1/28/2025 | AS | Serve notice of subpoena on Akouete | 0.1 | 250 | $25.00 |
| 1/28/2025 | AS | Serve subpoena on Sherin via email | 0.1 | 250 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/28/2025 | AS | Coordinate mail service of notice of subpoena on Akouete and subpoena on Sherin | 0.2 | 250 | $50.00 |
| 1/29/2025 | CED | Review prior affidavits submitted in Land Court by Town; planning regarding same. | 0.5 | 400 | $200.00 |
| 1/29/2025 | AS | Review Akouete's notice of subpoenas | 0.1 | 250 | $25.00 |
| 1/29/2025 | AS | Strategize re: objection to Edwards motion | 0.1 | 250 | $25.00 |
| 1/29/2025 | AS | Review and revise objection to Edwards motion | 0.4 | 250 | $100.00 |
| 1/29/2025 | CED | Review Akouete filings and emails including subpoena of Sherrin and Lodgen, additional filing with Bankruptcy Court regarding pending matters, Notice of B&B subpoenas. | 0.2 | 400 | $80.00 |
| 1/29/2025 | CED | Revise Objection to Edward's Motion. | 0.5 | 400 | $200.00 |
| 1/29/2025 | CED | Call with Mr. Casasmeyer regarding B and B. | 0.3 | 400 | $120.00 |
| 1/30/2025 | CED | Review voluminous email from Akouete to B&B counsel including demands, requests for information, and spurious allegations; consider impact on and relevance to the estate. | 0.5 | 400 | $200.00 |
| 1/30/2025 | CED | Call with Mr. Schlager regarding prior representation of the Debtor. | 0.5 | 400 | $200.00 |
| 1/31/2025 | AS | Review objection to Denise Edwards motion, prepare for filing, and file same with Court | 0.2 | 250 | $50.00 |
| 1/31/2025 | CED | Review and consider detailed email communications between Mr. Akouete and Atty Casasmeyer for Babcock and Brown. | 0.2 | 400 | $80.00 |
| 2/3/2025 | AS | Review discovery served and deadlines to receive responses to same | 0.1 | 250 | $25.00 |
| 2/3/2025 | CED | Prepare for call with B. Day, review prior statements by Mr. Blaustein and assess options and needs of Estate. | 0.5 | 400 | $200.00 |
| 2/3/2025 | CED | Call and follow up emails with B. Lee regarding P. Blaustein. | 0.2 | 400 | $80.00 |
| 2/4/2025 | CED | Research regarding Apparent Authority, standards and legal basis, factors; consider jurisdiction and planning regarding pending Objection to Akouete Claim. | 1.2 | 400 | $480.00 |
| 2/4/2025 | CED | Drafting objection to Summary Judgment as premature. | 0.5 | 400 | $200.00 |
| 2/4/2025 | CED | Review Akouete responses to Document requests and identify areas of dispute which require follow up and discovery conference. | 0.2 | 400 | $80.00 |
| 2/5/2025 | CED | Drafting Affidavit to be used in support of summary judgment. | 1 | 400 | $400.00 |
| 2/5/2025 | AS | Attention to Delaware secretary of state process for obtaining corporate documents of the debtor | 0.4 | 250 | $100.00 |
| 2/6/2025 | AS | Request Debtor's corporate records from Delaware Secretary of State | 0.3 | 250 | $75.00 |
| 2/6/2025 | CED | Review multiple emails and additional filing by Mr. Akouete regarding demands for various forms of relief and multiple unsupported statements as to agreed facts and legal issues. | 0.2 | 400 | $80.00 |
| 2/6/2025 | CED | Reviewing record, including corporate records, prior pleadings, and details of Akouete claim attachment and drafting Affidavit for consideration by Mr. Horst. | 1.4 | 400 | $560.00 |
| 2/7/2025 | CED | Review prior pleadings relevant to P. Blaustein, prior affidavit, Akouete claim attachment and drafting Affidavit for consideration by Mr. Blaustein. | 1.4 | 400 | $560.00 |
| 2/7/2025 | CED | Revise draft affidavit and forward same to Atty Casasmeyer for review and comment; email to Trustee regarding same. | 0.4 | 400 | $160.00 |
| 2/7/2025 | CED | Revise draft affidavit and forward same to Atty Lee for review and comment; email to Trustee regarding same. | 0.4 | 400 | $160.00 |
| 2/7/2025 | AS | Review Akouete's motion to set deadlines | 0.1 | 250 | $25.00 |
| 2/10/2025 | CED | Drafting Objection to Akouete SJ requests as premature and unsupported. | 1 | 400 | $400.00 |
| 2/10/2025 | CED | Review revised Affidavit, call with Mr. Casasmeyer regarding same. | 0.3 | 400 | $120.00 |
| 2/10/2025 | CED | Drafting Objection to Akouete multiple Summary Judgment reqeusts. | 2.2 | 400 | $880.00 |
| 2/11/2025 | CED | Review updated Horst Affidavit and email correspondence; revise and redline affidavit, compile exhibits; and forward to Mr. Casameyer for comment and to finalize. | 1.2 | 400 | $480.00 |

| | | | | | |
|---|---|---|---|---|---|
| 2/11/2025 | CED | Drafting Obj to Akouete Summary Judgment. | 2.6 | 400 | $1,040.00 |
| 2/12/2025 | CED | Research cases cited by L. Akouete regarding 502(b)(6), research regarding relevant cases, drafting objection portion related to 502(b)(6) per court request. | 1.6 | 400 | $640.00 |
| 2/13/2025 | AS | Strategize re: motion to compromise and objection to summary judgment | 0.1 | 250 | $25.00 |
| 2/13/2025 | AS | Strategize re: objection to Akouete's requests for summary judgment | 0.2 | 250 | $50.00 |
| 2/18/2025 | AS | Attention to court's case management order | 0.2 | 250 | $50.00 |
| 2/18/2025 | CED | Email to/from J. Goldsmith regarding Case Management Order, Town extension request, and scheduling time to discuss in detail. | 0.2 | 400 | $80.00 |
| 2/18/2025 | CED | Review Case Managment Order re Akouete Claim dispute and consider issues, log multiple deadlines, review relevant rules referenced and consider upcoming 2/24 deadline requirements. | 0.7 | 400 | $280.00 |
| 2/19/2025 | CED | Drafting Trustee's supplement to Akouete claims; research certain relevant issues. | 1.8 | 400 | $720.00 |
| 2/19/2025 | CED | Review detailed Akouete email with additional and inappropriate demands and consider appropriate response (.2); Email to Mr. Akouete regarding disputed issues and claims and case management order (.2). | 0.4 | 400 | $160.00 |
| 2/20/2025 | CED | Review detailed email from Akouete, repeating prior claims and making additional demands. | 0.2 | 400 | $80.00 |
| 2/21/2025 | CED | Call with Trustee regarding Case Management Order and strategies regarding response to Akouete claims and demands. | 0.2 | 400 | $80.00 |
| 2/21/2025 | CED | Drafting, revising Supplement to Trustee's objection to Akouete Claims and reviewing details in the record regarding Claims submitted by Akouete. | 3.3 | 400 | $1,320.00 |
| 2/22/2025 | CED | Further drafting Supplement to Akouete objection, including research to support limits on insider compensation. | 3.6 | 400 | $1,440.00 |
| 2/22/2025 | CED | Further drafting Supplement, incorporate case law summaries. | 1.8 | 400 | $720.00 |
| 2/23/2025 | CED | Drafting, revising, finalizing for client review Supplement to Objection to Akouete claims and confirming references to exhibits and to record. | 4.4 | 400 | $1,760.00 |
| 2/24/2025 | AS | Review court's contested matter case management order | 0.2 | 250 | $50.00 |
| 2/24/2025 | AS | Review and analysis of trustee's supplemental objection, citation check of same | 1.3 | 250 | $325.00 |
| 2/24/2025 | AS | Strategize re: trustee's supplemental objection, service of same | 0.3 | 250 | $75.00 |
| 2/24/2025 | AS | Prepare trustee's supplemental objection to Akouete claims for filing and file same with court | 0.1 | 250 | $25.00 |
| 2/24/2025 | AS | Draft certificate of service re: supplemental objection, prepare same for filing and file with court | 0.2 | 250 | $50.00 |
| 2/24/2025 | AS | Email service to Akouete of supplemental objection and copies of cases cited | 0.2 | 250 | $50.00 |
| 2/24/2025 | AS | Email service of supplemental objection to remaining parties as noted on certificate of service | 0.1 | 250 | $25.00 |
| 2/24/2025 | AS | Coordinate mail service of supplemental objection on Akouete and Edwards | 0.1 | 250 | $25.00 |
| 2/24/2025 | CED | Call with Trustee regarding draft Supplement and strategy discussions. | 0.3 | 400 | $120.00 |
| 2/24/2025 | CED | Revisions to Supplement prior to filing. | 0.4 | 400 | $160.00 |
| 2/24/2025 | CED | Attention to request for extension from Mr. LaLiberte and respond to same. | 0.2 | 400 | $80.00 |
| 2/25/2025 | AS | Research regarding federal rules for depositions, timing, place and manner | 0.3 | 250 | $75.00 |
| 2/25/2025 | AS | Review and revise Exhibit A to subpoena to Nathanson & Goldberg | 0.4 | 250 | $100.00 |
| 2/25/2025 | AS | Strategize re: subpoena to Nathanson & Goldberg | 0.2 | 250 | $50.00 |
| 2/25/2025 | AS | Prepare subpoena to Nathanson & Goldberg | 0.7 | 250 | $175.00 |
| 2/25/2025 | AS | Draft notice of Nathanson & Goldberg subpoena to Akouete | 0.2 | 250 | $50.00 |
| 2/25/2025 | AS | Serve notice of subpoena on Akouete by email | 0.1 | 250 | $25.00 |
| 2/25/2025 | AS | Communications with S. Gordon re: subpoena | 0.1 | 250 | $25.00 |
| 2/25/2025 | AS | Strategize regarding discovery, next steps | 0.2 | 250 | $50.00 |
| 2/25/2025 | AS | Review and analysis of Akouete's motion to strike | 0.4 | 250 | $100.00 |
| 2/25/2025 | CED | Planning regarding deposition of Claimant, review requirements and timing and next steps, review rules (.5). | 0.5 | 400 | $200.00 |

| | | | | | |
|---|---|---|---|---|---|
| 2/25/2025 | CED | Planning regarding third party depositions, timing and requirements; review rules and coordinate issues regarding same. | 0.4 | 400 | $160.00 |
| 2/25/2025 | CED | Review NG third party subpoena. | 0.2 | 400 | $80.00 |
| 2/25/2025 | CED | Review and consider Akouete email and request for mediation. | 0.2 | 400 | $80.00 |
| 2/25/2025 | CED | Email to Akouete rejecting mediation. | 0.2 | 400 | $80.00 |
| 2/25/2025 | CED | Email to Akouete regarding discovery issues, inappropriate a/c privilege claim, and request, request conference. | 0.2 | 400 | $80.00 |
| 2/25/2025 | CED | Planning Akouete deposition. | 0.2 | 400 | $80.00 |
| 2/25/2025 | CED | Review Akouete Motion to Strike; exhibits attached. | 0.6 | 400 | $240.00 |
| 2/25/2025 | CED | Revising objection to multiple summary judgment motions including amendments and supplements. | 1.8 | 400 | $720.00 |
| 2/26/2025 | AS | Strategize regarding discovery | 0.3 | 250 | $75.00 |
| 2/26/2025 | AS | Research rules regarding subpoenas for documents, timing, notice requirements | 0.2 | 250 | $50.00 |
| 2/26/2025 | AS | Review Akouete Claim 4.1 Exhibit A timeline and draft subpoena Exhibit A requesting documents referenced to attach to Akouete deposition subpoena | 2.7 | 250 | $675.00 |
| 2/26/2025 | AS | Review email from Akouete in response to Trustee's request for discovery conference | 0.1 | 250 | $25.00 |
| 2/26/2025 | AS | Strategize regarding email from Akouete in response to Trustee's request for discovery conference | 0.2 | 250 | $50.00 |
| 2/26/2025 | AS | Prepare deposition subpoena to Akouete | 0.3 | 250 | $75.00 |
| 2/26/2025 | AS | Strategize re: deposition of Akouete, next steps, subpoena | 0.1 | 250 | $25.00 |
| 2/26/2025 | CED | Review detailed proposal from Mr. Akouete regarding claim compromise, review methodology and attachment, forward same to Trustee. | 0.3 | 400 | $120.00 |
| 2/26/2025 | CED | Finalize draft of objection to SJ Motion regarding Akouete claim, and Affidavit; forward to Trustee to review. | 2.2 | 400 | $880.00 |
| 2/26/2025 | CED | Review detailed email from Akouete refusing to respond to discovery in a meaningful way; consider options and priority actions; and forward email to Trustee. | 0.3 | 400 | $120.00 |
| 2/26/2025 | CED | Planning regarding Akouete deposition, identify options and plan for same. | 0.4 | 400 | $160.00 |
| 2/27/2025 | AS | Attention to emails received today from Akouete | 0.1 | 250 | $25.00 |
| 2/27/2025 | AS | Revise deposition subpoena to Akouete | 0.2 | 250 | $50.00 |
| 2/27/2025 | AS | Strategize regarding next steps for discovery | 0.1 | 250 | $25.00 |
| 2/27/2025 | AS | Review and analysis of trustee's opposition for summary judgment | 0.6 | 250 | $150.00 |
| 2/27/2025 | AS | Strategize re: discovery, next steps in case | 0.7 | 250 | $175.00 |
| 2/27/2025 | AS | Review and prepare subpoena to Akouete, serve same by email | 0.6 | 250 | $150.00 |
| 2/27/2025 | AS | Coordinate mail service of subpoena to Akouete | 0.1 | 250 | $25.00 |
| 2/27/2025 | AS | Review court's orders regarding multiple Akouete motions. | 0.2 | 250 | $50.00 |
| 2/27/2025 | AS | Review court's case management order, communications with trustee, communications from Akouete, discovery outstanding, and determine next steps in matter | 0.6 | 250 | $150.00 |
| 2/27/2025 | CED | Review multiple emails from Akouete demanding response, and regarding refusal to participate in conference or meaningful discovery; consider issues and options and forward same to Trustee. | 0.4 | 400 | $160.00 |
| 2/27/2025 | CED | Review Akouete depo subpoena, planning for service and related issues. | 0.2 | 400 | $80.00 |
| 2/27/2025 | CED | Email to Mr. Lee regarding P. Blaustein. | 0.2 | 400 | $80.00 |
| 2/27/2025 | CED | Email with Mr. Casameyer and planning for Deposition. | 0.2 | 400 | $80.00 |
| 2/27/2025 | CED | Review email from Mr. Laliberte regarding expected production and timing. | 0.1 | 400 | $40.00 |
| 2/27/2025 | CED | Call and email with Trustee regarding Akouete subpoena and discovery issues; follow up on same. | 0.4 | 400 | $160.00 |
| 2/27/2025 | CED | Review multiple court orders regarding pending Akouete motions. | 0.2 | 400 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 2/27/2025 | CED | Strategy meeting regarding claim litigation, consider discovery status and options, planning regarding same; consider pending motions and responses required and status of each. | 1.2 | 400 | $480.00 |
| 2/28/2025 | AS | Research standards for opposing summary judgment, first circuit law regarding same | 0.5 | 250 | $125.00 |
| 2/28/2025 | AS | Review and revise opposition to Akouete motion for summary judgment | 0.6 | 250 | $150.00 |
| 2/28/2025 | AS | Attention to subpoena objection from Akouete | 0.1 | 250 | $25.00 |
| 2/28/2025 | AS | Attention to email from Akouete regarding Denise Edwards claim | 0.1 | 250 | $25.00 |
| 2/28/2025 | AS | Review communications from Sherin Lodgen regarding subpoena response | 0.1 | 250 | $25.00 |
| 2/28/2025 | AS | Review and analysis of document production from Sherin Lodgen regarding subpoena response | 2.1 | 250 | $525.00 |
| 2/28/2025 | AS | Strategize regarding objection to Akouete motion for summary judgment | 0.2 | 250 | $50.00 |
| 2/28/2025 | AS | Prepare objection to motion for summary judgment for filing and file same with court | 0.5 | 250 | $125.00 |
| 2/28/2025 | AS | Complete email service of objection to motion for summary judgment | 0.1 | 250 | $25.00 |
| 2/28/2025 | AS | Coordinate mail service of objection to motion for summary judgment | 0.1 | 250 | $25.00 |
| 2/28/2025 | AS | Strategize regarding second RPDs to serve on Akouete | 0.2 | 250 | $50.00 |
| 2/28/2025 | AS | Draft Second RPDs to Akouete | 0.6 | 250 | $150.00 |
| 2/28/2025 | AS | Review and revise second RPDs to Akouete | 0.3 | 250 | $75.00 |
| 2/28/2025 | AS | Email to Trustee regarding second RPDs to Akouete | 0.1 | 250 | $25.00 |
| 2/28/2025 | CED | Revising Opposition to Akouete SJ Mtn, include research re apparent authority, further revisions regarding references to relevant portions of the existing record; forward revised draft to Trustee. | 2.8 | 400 | $1,120.00 |
| 2/28/2025 | CED | Attention to discovery produced by Sherin and Lodgen; planning re same. | 0.3 | 400 | $120.00 |
| 2/28/2025 | CED | Review and consider Akouete Mtn to Refuse Consent to entry of order. | 0.4 | 400 | $160.00 |
| 2/28/2025 | CED | Prepare detailed email to Mr. Akoeuete regarding noncompliance with discovery, request to confer, dispute A/C privilege by Akouete. | 0.3 | 400 | $120.00 |
| 2/28/2025 | CED | Strategy regarding and revisions to Second document requests served on Akouete. | 0.3 | 400 | $120.00 |
| 2/28/2025 | CED | Review detailed email from Akouete regarding apparent authority, including summaries of case regarding legal contingency fees; consider same. | 0.2 | 400 | $80.00 |
| 3/3/2025 | CED | Email to Mr. Casameyer and confirm deposition of Mr. Horst. | 0.2 | 400 | $80.00 |
| 3/3/2025 | CED | Email to Mr. Akouete regarding status of Sherin subpoena response. | 0.2 | 400 | $80.00 |
| 3/3/2025 | CED | Review Response by Akouete to Trustee's Objection to Motion for Summary Judgment; consider new variations on arguments by Akouete; strategy regarding same. | 0.6 | 400 | $240.00 |
| 3/3/2025 | AS | Review and analysis of documents produced by Sherin | 1.4 | 250 | $350.00 |
| 3/3/2025 | AS | Review of Akouete's response to trustee's objection to summary judgment | 0.4 | 250 | $100.00 |
| 3/4/2025 | AS | Review communications with Horst's counsel regarding deposition | 0.1 | 250 | $25.00 |
| 3/4/2025 | AS | Prepare subpoena for deposition of Walter Horst | 0.4 | 250 | $100.00 |
| 3/4/2025 | AS | Prepare re-issued subpoena for deposition of Akouete | 0.4 | 250 | $100.00 |
| 3/4/2025 | AS | Strategize regarding discovery, deposition subpoenas, next steps | 0.3 | 250 | $75.00 |
| 3/4/2025 | AS | Attention to email from Akouete regarding authenticity | 0.1 | 250 | $25.00 |
| 3/4/2025 | AS | Review and revise subpoenas, research regarding FRCP 45 and updates to same, attention to deposition rules, draft notice of subpoena for Horst deposition | 1 | 250 | $250.00 |
| 3/4/2025 | CED | Review email from Mr. Akouete with demands regarding Trustee's prior admission responses and LLC Agreement, assess demands and planning regarding response and recommended steps for Trustee. | 0.4 | 400 | $160.00 |
| 3/4/2025 | CED | Planning for multiple remote depositions, call with Veritext regarding options for hosting and planning for same. | 0.3 | 400 | $120.00 |
| 3/4/2025 | CED | Email to Brian Lee re Akouete claim. | 0.1 | 400 | $40.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/4/2025 | CED | Attention to overall litigation strategies, consider depositions and timing and subpoena status, attention to discovery responses and ability to compel meaningful responses from Akouete, consider objections made and requirements of Case Management Order regarding conference; planning regarding review of Sherin documents and timing to produce same. | 1.4 | 400 | $560.00 |
| 3/4/2025 | CED | Email to Trustee regarding response to Akouete demands. | 0.2 | 400 | $80.00 |
| 3/4/2025 | CED | Email to Akouete regarding discovery disputes, including deposition attendance, and request conference per Case Management Order; propose times. | 0.2 | 400 | $80.00 |
| 3/4/2025 | CED | Email to Akouete regarding demands related to "operating agreement". | 0.2 | 400 | $80.00 |
| 3/4/2025 | AS | Continued review of Sherin document production | 1.2 | 250 | $300.00 |
| 3/5/2025 | AS | Review and analysis of FRBP and FRCP regarding discovery, court's contested matter case management order, court's instructions regarding discovery disputes, research regarding discovery disputes and rules | 1.4 | 250 | $350.00 |
| 3/5/2025 | AS | Strategize regarding requesting a telephonic discovery conference from court | 0.5 | 250 | $125.00 |
| 3/5/2025 | AS | Draft motion requesting discovery conference with the Court | 2.3 | 250 | $575.00 |
| 3/5/2025 | AS | Review voluminous communications from Akouete regarding discovery, Akouete's responses to Trustee's discovery requests, all Trustee's discovery served on Akouete | 1.1 | 250 | $275.00 |
| 3/5/2025 | AS | Prepare supplemental production of documents to Akouete and email to Akouete attaching same | 0.5 | 250 | $125.00 |
| 3/5/2025 | AS | Review document production from Sherin & Lodgen | 1.6 | 250 | $400.00 |
| 3/5/2025 | AS | Attention to Akouete's responses to Trustee's second RPDs | 0.1 | 250 | $25.00 |
| 3/5/2025 | AS | Strategize regarding trustee's request for telephonic discovery conference with court | 0.7 | 250 | $175.00 |
| 3/5/2025 | AS | Review request for telephonic conference | 0.2 | 250 | $50.00 |
| 3/5/2025 | AS | Prepare request for telephonic conference for filing with court and file same with court | 0.1 | 250 | $25.00 |
| 3/5/2025 | AS | Email service of request for telephonic conference | 0.1 | 250 | $25.00 |
| 3/5/2025 | AS | Attention to correspondence with Steve Gordon regarding subpoena | 0.1 | 250 | $25.00 |
| 3/5/2025 | CED | Email Akouete to confirm conference. | 0.1 | 400 | $40.00 |
| 3/5/2025 | CED | Review Case Management Order regarding discovery disputes, review rules cited, outline draft request for status conference. | 0.3 | 400 | $120.00 |
| 3/5/2025 | CED | Attention to supplementing discovery responses. | 0.2 | 400 | $80.00 |
| 3/5/2025 | CED | Prepare for and participate in discovery conference with Mr. Akouete. | 1.2 | 400 | $480.00 |
| 3/5/2025 | CED | Revise request for Status Conference. | 0.3 | 400 | $120.00 |
| 3/5/2025 | CED | Email to S. Gordon document request. | 0.1 | 400 | $40.00 |
| 3/5/2025 | CED | Review multiple emails from Akouete refusing to respond further to discovery requests and refusing to participate in deposition unless via telephone only. | 0.2 | 400 | $80.00 |
| 3/6/2025 | CED | Review email from B. Lee regarding issues re Akouete claim. | 0.2 | 400 | $80.00 |
| 3/6/2025 | CED | Review extension request from Mr. Laliberte, respond to same. | 0.1 | 400 | $40.00 |
| 3/6/2025 | AS | Review S&L production | 1.6 | 250 | $400.00 |
| 3/6/2025 | AS | Attention to acceptance of service by S. Gordon of N&G subpoena | 0.1 | 250 | $25.00 |
| 3/7/2025 | AS | Continued review and analysis of S&L production | 1.6 | 250 | $400.00 |
| 3/7/2025 | AS | Strategize regarding communications with S. Gordon and N&G document subpoena | 0.2 | 250 | $50.00 |
| 3/7/2025 | AS | Strategize regarding review and analysis of S&L document production | 1.6 | 250 | $400.00 |
| 3/7/2025 | CED | Call and email to B. Lee. | 0.1 | 400 | $40.00 |
| 3/7/2025 | CED | Call with S. Gordon regarding response to subpoena. | 0.1 | 400 | $40.00 |
| 3/7/2025 | CED | Review materials provided by Sherin and Lodgen and consider privilege issues and next steps. | 1.8 | 400 | $720.00 |
| 3/8/2025 | AS | Research regarding subpoenas under FRCP 30 and 45 | 0.3 | 250 | $75.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/8/2025 | CED | Discovery strategies, consider status of same and actions required prior to close of discovery; attention to issues regarding third party subpoenas, plan next steps. | 1.1 | 400 | $440.00 |
| 3/10/2025 | CED | Review Akouete current demands in connection with discovery; strategy regarding various discovery related issues and options to compel compliance by Akouete; plan next steps. | 0.5 | 400 | $200.00 |
| 3/10/2025 | CED | Planning regarding turnover of materials produced by Sherin; review certain documents and plan next steps. | 0.3 | 400 | $120.00 |
| 3/10/2025 | CED | Prepare email to Trustee regarding recommended course of action regarding Sherin materials. | 0.2 | 400 | $80.00 |
| 3/10/2025 | AS | Strategize regarding discovery, documents produced by Sherin | 0.2 | 250 | $50.00 |
| 3/10/2025 | AS | Further review and analysis of documents produced by Sherin | 1.8 | 250 | $450.00 |
| 3/11/2025 | CED | Review Akouete Mtn to Remove Trustee, exhibits attached; planning regarding same. | 0.4 | 400 | $160.00 |
| 3/11/2025 | AS | Strategize regarding next steps regarding claim dispute, discovery issues | 0.1 | 250 | $25.00 |
| 3/11/2025 | CED | Strategy regarding response to Akouete Motion to Remove and outline basis for response. | 0.5 | 400 | $200.00 |
| 3/11/2025 | CED | Call with Trustee regarding response to Akouete Motion to Remove and discovery issues. | 0.4 | 400 | $160.00 |
| 3/11/2025 | AS | Prepare documents produced by Sherin & Lodgen for production to Akouete | 1 | 250 | $250.00 |
| 3/11/2025 | AS | Correspondence with Akouete regarding supplemental document production, create link for secure delivery of document production | 0.2 | 250 | $50.00 |
| 3/12/2025 | CED | Review multiple emails from Akouete regarding claim and position regarding guardianship; consider allegations by Akouete; emails with Trustee regarding same. | 0.3 | 400 | $120.00 |
| 3/12/2025 | CED | Review hearing notice and planning for service of same. | 0.1 | 400 | $40.00 |
| 3/13/2025 | AS | Review motion to continue hearing file by Akouete | 0.1 | 250 | $25.00 |
| 3/13/2025 | AS | Strategize regarding multiple discovery issues and related disputes with Mr. Akouete. | 0.3 | 250 | $75.00 |
| 3/13/2025 | AS | Review response to Akouete motion to continue hearing filed by S. Gordon | 0.1 | 250 | $25.00 |
| 3/13/2025 | AS | Attention to court's order setting hearing and discovery conference | 0.1 | 250 | $25.00 |
| 3/13/2025 | AS | Serve court's order rescheduling hearing and discovery conference | 0.1 | 250 | $25.00 |
| 3/13/2025 | AS | Review and revise trustee's objection Akouete motion to remove Trustee | 0.2 | 250 | $50.00 |
| 3/13/2025 | AS | Serve by email trustee's objection Akouete motion to remove Trustee | 0.1 | 250 | $25.00 |
| 3/13/2025 | AS | Coordinate mail service of trustee's objection Akouete motion to remove Trustee | 0.1 | 250 | $25.00 |
| 3/13/2025 | CED | Calls and emails with Veritext to coordinate multiple remote depositions; forward depo notices and planning for same. | 0.5 | 400 | $200.00 |
| 3/13/2025 | CED | Coordinate attendance of Mr. Horst at deposition; emails with Mr. Casameyer regarding logistics of same. | 0.2 | 400 | $80.00 |
| 3/13/2025 | CED | Email with Court regarding hearing scheduling issues. | 0.1 | 400 | $40.00 |
| 3/13/2025 | CED | Draft Trustee's Response to Motion to Remove; email to Trustee to review. | 1.6 | 400 | $640.00 |
| 3/13/2025 | CED | Review order re-scheduling discovery conference; plan for same. | 0.1 | 400 | $40.00 |
| 3/13/2025 | CED | Review N&G Response to Mtn to Remove trustee. | 0.2 | 400 | $80.00 |
| 3/14/2025 | AS | Review Akouete motions and discovery responses, discovery requests, and trustee's pleadings in preparation for hearing | 0.4 | 250 | $100.00 |
| 3/14/2025 | AS | Attend telephonic discovery conference and hearing on Akouete's motion to remove trustee | 0.6 | 250 | $150.00 |
| 3/14/2025 | AS | Planning next steps after hearings regarding discovery disputes and Akouete deposition. | 0.3 | 250 | $75.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/14/2025 | CED | Review Akouete most recent pleading for hearing; call with Trustee regarding same and prepare for hearing including review of prior discovery requests and responses, review of Akouete allegations and pleadings on for hearing, outline hearing notes and prepare for hearing; review N&G response, review additional Akouete pleading immediately prior to hearing. | 2.6 | 400 | $1,040.00 |
| 3/14/2025 | CED | Attend hearing on Akouete Discovery dispute. | 0.6 | 400 | $240.00 |
| 3/14/2025 | CED | Call with Trustee and plan next steps regarding claim resolution process. | 0.2 | 400 | $80.00 |
| 3/14/2025 | AS | Review all discovery requests of trustee and Akouete's responses to same in light of drafting email to Akouete regarding producing documents | 0.7 | 250 | $175.00 |
| 3/14/2025 | AS | Draft email to Akouete regarding producing documents responsive to discovery requests | 0.5 | 250 | $125.00 |
| 3/14/2025 | AS | Review multiple orders entered by court regarding multiple disputes with Akouete including order authorizing deposition of Akouete. | 0.4 | 250 | $100.00 |
| 3/14/2025 | AS | Review communication from D. Edwards | 0.1 | 250 | $25.00 |
| 3/14/2025 | AS | Strategize regarding further discovery | 0.1 | 250 | $25.00 |
| 3/14/2025 | CED | Multiple emails regarding Horst deposition via zoom for parties planning to attend. | 0.3 | 400 | $120.00 |
| 3/14/2025 | CED | Review and consider detailed email from Ms. Edwards and consider relevance to Akouete claim, planning regarding discovery issues. | 0.3 | 400 | $120.00 |
| 3/14/2025 | CED | Email to Akouete regarding delinquent discovery. | 0.2 | 400 | $80.00 |
| 3/14/2025 | CED | Planning for third party deposition of Ms. Edwards. | 0.2 | 400 | $80.00 |
| 3/15/2025 | AS | Attention to document production by Akouete via multiple emails. | 0.2 | 250 | $50.00 |
| 3/15/2025 | AS | Draft subpoena for deposition and document production to Denise Edwards | 0.3 | 250 | $75.00 |
| 3/15/2025 | AS | Draft Exhibit A subpoena listing document requests to Denise Edwards | 0.5 | 250 | $125.00 |
| 3/17/2025 | AS | Compile voluminous discovery responses provided by Akouete via multiple single emails with multiple attachments and organize same. | 1.3 | 250 | $325.00 |
| 3/17/2025 | AS | Strategize regarding subpoena to Denise Edwards | 0.2 | 250 | $50.00 |
| 3/17/2025 | AS | Prepare subpoena to Denise Edwards for service | 0.2 | 250 | $50.00 |
| 3/17/2025 | AS | Draft notice of subpoena of Denise Edwards for service on Akouete | 0.1 | 250 | $25.00 |
| 3/17/2025 | AS | Email to Akouete regarding notice of subpoena | 0.1 | 250 | $25.00 |
| 3/17/2025 | AS | Draft email to Denise Edwards attaching subpoena | 0.1 | 250 | $25.00 |
| 3/17/2025 | AS | Coordinate mail service of Denise Edwards subpoena | 0.1 | 250 | $25.00 |
| 3/17/2025 | AS | Attention to communications from Denise Edwards regarding subpoena and hardship in attending in person deposition | 0.1 | 250 | $25.00 |
| 3/17/2025 | AS | Email to Akouete regarding consent to conduct Edwards deposition via Zoom | 0.1 | 250 | $25.00 |
| 3/17/2025 | CED | Review subpoena for Ms. Edwards and exhibit regarding documents requested (.2); email to Trustee regarding same, include drafts and recommended next steps (.2). | 0.4 | 400 | $160.00 |
| 3/17/2025 | CED | Email to Ms. Edwards in response to request to resolve claim. | 0.2 | 400 | $80.00 |
| 3/17/2025 | CED | Attention to open issues regarding discovery responses, and planning review to consider supplement if required; review P. Blaustein Affidavit to include in supplement and consider other possible open issues. | 0.4 | 400 | $160.00 |
| 3/17/2025 | CED | Receive multiple emails from Mr. Akouete, each with multiple attachments, begin review of discovery delinquently produced by Mr. Akouete; begin identify documents for review during upcoming depositions. | 2.7 | 400 | $1,080.00 |
| 3/17/2025 | CED | Review request from Akouete to reschedule depositions; consider options. | 0.1 | 400 | $40.00 |
| 3/17/2025 | CED | Attention to coordination of Edwards deposition and approval of parties for remote process. | 0.2 | 400 | $80.00 |
| 3/18/2025 | AS | Strategize regarding discovery re claim dispute and strategy regarding issues and next steps. | 0.7 | 250 | $175.00 |
| 3/18/2025 | AS | Prepare reissued subpoena to Denise Edwards for deposition to be conducted via zoom | 0.5 | 250 | $125.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/18/2025 | AS | Draft notice of reissued subpoena of D. Edwards | 0.2 | 250 | $50.00 |
| 3/18/2025 | AS | Email to Akouete serving notice of reissued Edwards deposition subpoena | 0.1 | 250 | $25.00 |
| 3/18/2025 | AS | Email to Edwards with reissued Edwards deposition subpoena | 0.1 | 250 | $25.00 |
| 3/18/2025 | AS | Coordinate mail service of reissued Edwards deposition subpoena | 0.1 | 250 | $25.00 |
| 3/18/2025 | AS | Research regarding certain disputed discovery issues | 0.4 | 250 | $100.00 |
| 3/18/2025 | AS | Prepare fourth document supplemental document production for producing to Akouete | 0.7 | 250 | $175.00 |
| 3/18/2025 | AS | Review Akouete motion for alternative service | 0.1 | 250 | $25.00 |
| 3/18/2025 | AS | Review motion of Mobile Street Trust for no-application of automatic stay | 0.2 | 250 | $50.00 |
| 3/18/2025 | AS | Attention to motion for clarification filed by Akouete | 0.1 | 250 | $25.00 |
| 3/18/2025 | AS | Review multiple emails from Akouete with demands for information. | 0.2 | 250 | $50.00 |
| 3/18/2025 | CED | Emails to/from Veritext regarding procedures for remote deposition. | 0.2 | 400 | $80.00 |
| 3/18/2025 | CED | Preparing for Horst Deposition, reviewing B&B documents produced to Akouete, review documents produced by Akouete relevant to Horst deposition, compile exhibits for deposition. | 2.8 | 400 | $1,120.00 |
| 3/18/2025 | CED | Review Akouete pleading regarding special service, and emails to/from Mr. Akouete regarding pre-trial memorandum, review of case management order and further email with Akouete regarding same. | 0.3 | 400 | $120.00 |
| 3/18/2025 | CED | Prepare supplement to discovery responses, review same with Trustee, forward fourth supplement to discovery production to Mr. Akouete. | 0.6 | 400 | $240.00 |
| 3/18/2025 | CED | Further compilation of exhibits for Mr. Horst deposition in PDF format and label (1.1); Circulate compiled exhibits to Veritext, Mr. Casameyer, Mr. Akouete and Trustee (.4). | 1.5 | 400 | $600.00 |
| 3/18/2025 | CED | Prepare outline of questions/notes for Horst Deposition. | 2 | 400 | $800.00 |
| 3/18/2025 | CED | Emails with Mr. Akouete regarding fourth supplement to Trustee's document production. | 0.2 | 400 | $80.00 |
| 3/18/2025 | CED | Review subpoena by Akouete on B&B for further information. | 0.2 | 400 | $80.00 |
| 3/19/2025 | AS | Review court's order regarding Akouete motion for alternative subpoena service method | 0.1 | 250 | $25.00 |
| 3/19/2025 | CED | Continued preparation for Horst Deposition. | 2.2 | 400 | $880.00 |
| 3/19/2025 | CED | Emails to multiple deposition attendees to ensure zoom info. | 0.2 | 400 | $80.00 |
| 3/19/2025 | CED | Conduct Horst Deposition by Zoom. | 1.6 | 400 | $640.00 |
| 3/19/2025 | CED | Email to Court Reporter with exhibits marked. | 0.2 | 400 | $80.00 |
| 3/19/2025 | CED | Emails with Trustee and with Smerage to set call to discuss negotiations. | 0.1 | 400 | $40.00 |
| 3/19/2025 | CED | Review orders regarding Akouete service of subpoenas; review emails from Akoeute regarding same. | 0.2 | 400 | $80.00 |
| 3/20/2025 | AS | Attention to communications from Mr. Akouete re discovery issues. | 0.2 | 250 | $50.00 |
| 3/20/2025 | AS | Strategize regarding discovery issues, subpoenas, and review and consider communications from Mr. Akouete, further review of rules regarding discovery | 1.3 | 250 | $325.00 |
| 3/20/2025 | AS | Legal research regarding discovery rules regarding depositions, subpoenas for depositions and document production, consider distinction in rules and case law between parties and third parties, strategy regarding compliance with notice for depositions. | 3.6 | 250 | $900.00 |
| 3/20/2025 | CED | Review demand by Akouete for additional information regarding discovery supplement and consider issues and options for response. | 0.2 | 400 | $80.00 |
| 3/20/2025 | CED | Prepare detailed draft response to Akouete demand for information, forward same to Trustee for review. | 0.4 | 400 | $160.00 |
| 3/20/2025 | CED | Research regarding service issues regarding subpoena and regarding Akouete obligations to attend deposition and potential sanctions for failure to participate in discovery. | 0.5 | 400 | $200.00 |
| 3/20/2025 | CED | Review Akouete request for discovery conference regarding Goulston response to subpoena and consider Trustee position. | 0.2 | 400 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/20/2025 | CED | Prepare further supplement to discovery regarding Akouete demand for email transmittals between counsel, forward same to Akouete; email to Trustee regarding same. | 2.2 | 400 | $880.00 |
| 3/21/2025 | AS | Review order on Akouete's motion for clarification on joint pretrial memo deadline, new deadlines, and amended paragraph 6 to case management order | 0.2 | 250 | $50.00 |
| 3/24/2025 | AS | Communications with Veritext regarding coordinating deposition services for depositions of Edwards and Akouete | 0.3 | 250 | $75.00 |
| 3/24/2025 | AS | Review notice of intent to file summary judgment filed by Akouete | 0.3 | 250 | $75.00 |
| 3/24/2025 | AS | Attention to court's order setting objection deadline to motion for non applicability of stay | 0.1 | 250 | $25.00 |
| 3/24/2025 | AS | Strategize regarding deposition timing and scheduling process. | 0.1 | 250 | $25.00 |
| 3/24/2025 | CED | Attend to issues regarding scheduling remote depositions for Ms. Edwards and for Mr. Akouete. | 0.2 | 400 | $80.00 |
| 3/24/2025 | CED | Review and consider Edwards written response to subpoena for deposition. | 0.2 | 400 | $80.00 |
| 3/24/2025 | CED | Review and consider Akouete Notice re Mtn for Summary Judgment. | 0.2 | 400 | $80.00 |
| 3/24/2025 | AS | Review Edwards's response to subpoena | 0.2 | 250 | $50.00 |
| 3/26/2025 | CED | Review emails to/from Akouete and BB counsel regarding additional discovery produced and planning regarding same. | 0.2 | 400 | $80.00 |
| 3/27/2025 | AS | Strategize regarding hearing regarding Akouete discovery issues | 0.5 | 250 | $125.00 |
| 3/27/2025 | AS | Prepare for hearing on Akouete and Goulston discovery dispute | 1.4 | 250 | $350.00 |
| 3/27/2025 | AS | Appear at hearing on Akouete and Goulston discovery dispute | 2 | 250 | $500.00 |
| 3/28/2025 | CED | Review discovery produced by Akouete; preparing for Edwards and Akouete depositions. | 2.6 | 400 | $1,040.00 |
| 3/28/2025 | AS | Review N&G document production | 0.7 | 250 | $175.00 |
| 3/28/2025 | AS | Attention to court's order regarding discovery conference | 0.1 | 250 | $25.00 |
| 3/29/2025 | CED | Emails to Ms. Edwards, to Akouete, and to Trustee with information regarding Edwards deposition. | 0.2 | 400 | $80.00 |
| 3/29/2025 | CED | Emails to Mr. Akouete and to Trustee with information regarding Akouete deposition. | 0.2 | 400 | $80.00 |
| 3/30/2025 | CED | Preparing for deposition of Ms. Edwards; review documents produced during discovery as part of preparation. | 3.3 | 400 | $1,320.00 |
| 3/31/2025 | CED | Prepare for Edwards Depostion and continued review of documents. | 2.5 | 400 | $1,000.00 |
| 3/31/2025 | CED | Preparing for Edwards Deposition. | 3 | 400 | $1,200.00 |
| 3/31/2025 | CED | CHECK TIIME Conduct Edwards deposition. | 2.8 | 400 | $1,120.00 |
| 4/1/2025 | CED | Review email from Akouete demanding information regarding Trustee's discovery plan. | 0.2 | 400 | $80.00 |
| 4/1/2025 | CED | Preparing for Akouete deposition. | 3.2 | 400 | $1,280.00 |
| 4/2/2025 | AS | Attention to email from Akouete regarding deposition | 0.1 | 250 | $25.00 |
| 4/2/2025 | AS | Strategize regarding deposition | 0.1 | 250 | $25.00 |
| 4/2/2025 | CED | Further preparation for Akouete deposition; including compiling, preparing documents for use during deposition. | 3 | 400 | $1,200.00 |
| 4/2/2025 | CED | Review Akouete demand for information in advance of deposition; respond to Mr. Akouete. | 0.2 | 400 | $80.00 |
| 4/2/2025 | CED | Emails to Trustee and to Akouete in advance of deposition with expected exhibits attached. | 0.2 | 400 | $80.00 |
| 4/2/2025 | CED | Conduct deposition of Akouete and follow up emails with stenographer regarding exhibits and timing issues. | 3.4 | 400 | $1,360.00 |
| 4/2/2025 | CED | Conduct Deposition of L. Akouete via Zoom. | 3.4 | 400 | $1,360.00 |
| 4/3/2025 | CED | Review Akouete Mtn to Letter Rogagory; review creditor response. | 0.2 | 400 | $80.00 |
| 4/4/2025 | AS | Review request for letters rogatory filed by Akouete and nathanson goldberg limited objection to same | 0.2 | 250 | $50.00 |
| 4/4/2025 | AS | Review email from Akouete attaching subpoena for deposition transcripts | 0.1 | 250 | $25.00 |

Case 23-40709 Doc 1063-3 Filed 12/18/25 Entered 12/18/25 16:36:51 Desc Main Document Page 52 of 549

| | | | | | |
|---|---|---|---|---|---|
| 4/4/2025 | AS | Strategize regarding drafting letter to Akouete objecting to subpoena. | 0.1 | 250 | $25.00 |
| 4/7/2025 | CED | Planning for substantive objection to Akouete subpoena. | 0.2 | 400 | $80.00 |
| 4/7/2025 | AS | Strategize regarding letter to Akouete regarding objections to subpoena | 0.4 | 250 | $100.00 |
| 4/7/2025 | AS | Research rules and case law regarding subpoena procedures, reasonable time for compliance, form, etc. | 0.5 | 250 | $125.00 |
| 4/7/2025 | AS | Review court's order setting forth procedures for Akouete's subpoenas | 0.2 | 250 | $50.00 |
| 4/7/2025 | AS | Attention to correspondence from Akouete regarding subpoena for deposition transcripts | 0.1 | 250 | $25.00 |
| 4/7/2025 | AS | Draft letter to Akouete setting forth trustee's objections to the subpoena for deposition transcripts | 2.3 | 250 | $575.00 |
| 4/7/2025 | AS | Review and revise letter to Akouete objecting to subpoena. | 0.6 | 250 | $150.00 |
| 4/7/2025 | AS | Review court's order issuing letter rogatory. | 0.1 | 250 | $25.00 |
| 4/7/2025 | AS | Review and consider motion for judicial notice filed by Akouete | 0.3 | 250 | $75.00 |
| 4/8/2025 | AS | Attention to communications with Akouete regarding transcripts | 0.1 | 250 | $25.00 |
| 4/8/2025 | AS | Review motion to set deadline filed by Akouete | 0.1 | 250 | $25.00 |
| 4/8/2025 | CED | Review Akouete email/threat re transcripts; respond. | 0.2 | 400 | $80.00 |
| 4/9/2025 | AS | Review Court orders scheduling hearings. | 0.1 | 250 | $25.00 |
| 4/10/2025 | AS | Drafting Objection to Edwards proof of claim. | 2.8 | 250 | $700.00 |
| 4/10/2025 | CED | Attention to Response to Akouete Mtn regarding pending Land Court action. | 0.2 | 400 | $80.00 |
| 4/10/2025 | CED | Review Akouete Mtn to Compel regarding State Controller of CA. | 0.2 | 400 | $80.00 |
| 4/13/2025 | CED | Drafting Trustee's Notice of Intent to file SJ Mtn; review Case Managment Order and Revisions to SJ requirements; consider timing issues and issues regarding consolidation with Edwards claim. | 1.8 | 400 | $720.00 |
| 4/13/2025 | CED | Drafting, revising Objection to Edwards Claim; incorporate request for consolidation under R. 42. | 2.6 | 400 | $1,040.00 |
| 4/13/2025 | CED | Email to Trustee with draft Objections for review and comment. | 0.1 | 400 | $40.00 |
| 4/14/2025 | CED | Review research on consolidation of Edward claim into Akouete (.9); revise objection to Edward's claim including consolidation section (1.4) | 2.3 | 400 | $920.00 |
| 4/14/2025 | CED | Regarding Akouete , finalize for filing Notice of intent to file SJ and include request for conference, and finalize objection to Land Court matter. | 0.5 | 400 | $200.00 |
| 4/14/2025 | CED | Call with Trustee regarding draft documents and comments on same; planning for hearing on all matters scheduled. | 0.2 | 400 | $80.00 |
| 4/14/2025 | CED | Compile all relevant documents and hearing preparation for Akouete Claim dispute and Edwards Claim and consolidation issue. | 1.2 | 400 | $480.00 |
| 4/14/2025 | AS | Review and revise objection to Denise Edwards claim | 0.6 | 250 | $150.00 |
| 4/14/2025 | AS | Strategize regarding objection to Edwards claim, service of objections and notice of intent to file SJ | 0.7 | 250 | $175.00 |
| 4/14/2025 | AS | Prepare objections to Edwards Claim and to Akouete request re Land Court and notice of intent to file summary judgment for filing with court, file same with court | 0.5 | 250 | $125.00 |
| 4/15/2025 | AS | Travel and attend hearing and status conference and several various motions in main case contested matter, and adversary proceedings | 5 | 250 | $1,250.00 |
| 4/17/2025 | CED | Review Court Order and issue re scope of CA subpoena; consider issue raised by J. Russell. | 0.2 | 400 | $80.00 |
| 4/17/2025 | CED | Call with J. Russell re subpoena and scope of order. | 0.2 | 400 | $80.00 |
| 4/18/2025 | AS | Email to Akouete regarding deposition transcripts | 0.1 | 250 | $25.00 |
| 4/18/2025 | AS | Prepare transcripts for sharing and share same with Akouete | 0.1 | 250 | $25.00 |
| 4/22/2025 | AS | Communications with B. Lee regarding document production | 0.1 | 250 | $25.00 |
| 4/22/2025 | AS | Attention to P. Blaustein document production | 0.2 | 250 | $50.00 |
| 4/22/2025 | CED | Re Edwards claim review Order from Court, consider timing requirements of R 3007 and attend to preparing form of Notice and attend to compliance issues; further planning for broader notice of hearing on consolidation. | 0.6 | 400 | $240.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/22/2025 | CED | Attention to access to Blaustein documents. | 0.2 | 400 | $80.00 |
| 4/22/2025 | AS | Review and consider notice of intent to file summary judgment filed by Akouete. | 0.2 | 250 | $50.00 |
| 4/22/2025 | AS | Attention to court's order on objection to Edwards claim and deadlines contained therein | 0.3 | 250 | $75.00 |
| 4/22/2025 | AS | Strategize regarding court's order regarding Edwards consolidation issues, strategy regarding response, deadlines, planning for next steps | 0.5 | 250 | $125.00 |
| 4/22/2025 | AS | Draft notice of objection to claim (edwards) | 0.8 | 250 | $200.00 |
| 4/22/2025 | AS | Review and revise notice of objection to edwards claim | 0.1 | 250 | $25.00 |
| 4/22/2025 | AS | Email service on Edwards of notice of objection to claim, claim objection, and court's order | 0.1 | 250 | $25.00 |
| 4/22/2025 | AS | Deliver edwards claim objection package to post office for mail service on edwards as ordered by court and in compliance with rules | 0.5 | 250 | $125.00 |
| 4/23/2025 | AS | Attention to court's order regarding objection to edwards claim | 0.2 | 250 | $50.00 |
| 4/24/2025 | AS | Attention to email from Akouete regarding summary judgment deadline | 0.1 | 250 | $25.00 |
| 4/24/2025 | CED | Review and assess Akouete email requesting agreement for new deadlines. | 0.1 | 400 | $40.00 |
| 4/25/2025 | CED | Review Akouete Emergency Motion and email to Trustee regarding same. | 0.2 | 400 | $80.00 |
| 4/25/2025 | CED | Review and assess Akouete Mtn for SJ and Affidavit. | 0.8 | 400 | $320.00 |
| 4/25/2025 | AS | Attention to Akouete motion to shorten deadline for SJ opposition | 0.1 | 250 | $25.00 |
| 4/25/2025 | AS | Strategize regarding objection to Akouete motion to shorten SJ response deadline | 0.1 | 250 | $25.00 |
| 4/25/2025 | AS | Review and revise Trustee's objection to Akouete motion to shorten SJ response deadline | 0.3 | 250 | $75.00 |
| 4/25/2025 | AS | Prepare Trustee's objection to Akouete motion to shorten SJ response deadline for filing with court and file same with court | 0.1 | 250 | $25.00 |
| 4/25/2025 | AS | Serve Trustee's objection to Akouete motion on manual email notice parties | 0.1 | 250 | $25.00 |
| 4/28/2025 | AS | Attention to Akouete's reply to trustee's objection to Akouete's motion to shorten SJ response time | 0.2 | 250 | $50.00 |
| 4/29/2025 | AS | Strategize regarding upcoming hearing on consolidation of edwards claim, issues for summary judgment, strategy, next steps | 0.7 | 250 | $175.00 |
| 4/29/2025 | CED | Review and assess Akouete Mtn for Relief regarding CA Controller matters; consider issues relative to Estate, consider deadline to respond. | 0.3 | 400 | $120.00 |
| 4/29/2025 | CED | Review and analysis of consolidation cases and research regarding Akouete Claim and Edward Claim; planning for upcoming hearing on consolidation issues. | 1.5 | 400 | $600.00 |
| 4/29/2025 | CED | Strategy regarding substance of Summary judgment argument and prepare detailed outline of issues, support regarding material facts, and additional research required; circulate same and delegate tasks for further action to move SJ forward. | 1.8 | 400 | $720.00 |
| 4/30/2025 | CED | Review Order denying Akouete Mtn for Relief. | 0.1 | 400 | $40.00 |
| 5/1/2025 | CED | Review and assess Akouete Mtn to Compel Abandonment of Claims; consider issues and response required from Trustee. | 0.3 | 400 | $120.00 |
| 5/4/2025 | CED | Prepare for hearing on consolidation; review and consider Akouete objection, review and consider Edward's objection; outline issues and prepare for hearing. | 1.8 | 400 | $720.00 |
| 5/5/2025 | CED | Travel, attend, and participate in hearing on consolidation of disputed claims; and prep call with Trustee just prior to hearing. | 2.8 | 400 | $1,120.00 |
| 5/5/2025 | AS | Travel and attend hearing on consolidation of Akouete and Edwards claims | 2 | 250 | $500.00 |
| 5/5/2025 | AS | Strategize regarding hearing | 0.5 | 250 | $125.00 |
| 5/6/2025 | CED | Review Mtn to Akouete to withdraw subpoena. | 0.1 | 400 | $40.00 |
| 5/6/2025 | CED | Review Order including SJ deadlines re Edwards Claim. | 0.1 | 400 | $40.00 |
| 5/7/2025 | CED | Review Akouete public records request. | 0.1 | 400 | $40.00 |
| 5/7/2025 | CED | Review and consider Akouete and Edwards Joint Motion regarding discovery issues. | 0.2 | 400 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/8/2025 | CED | Review Mtn by Akouete and Edwards regarding Edwards discovery and consider same. | 0.2 | 400 | $80.00 |
| 5/8/2025 | AS | Research regarding summary judgment standards and draft memo regarding same | 0.6 | 250 | $150.00 |
| 5/8/2025 | CED | Reviewing materials and drafting Summary Judgment materials. | 1.8 | 400 | $720.00 |
| 5/9/2025 | CED | Drafting SJ Memorandum re Akouete and Edwards; compiling Statement of Facts and documents to attach to same. | 4.5 | 400 | $1,800.00 |
| 5/9/2025 | CED | Review and consider Akouete Mtn to Compel re Australia entities. | 0.2 | 400 | $80.00 |
| 5/9/2025 | CED | Review Court Order re Akouete Judicial Notice request. | 0.1 | 400 | $40.00 |
| 5/12/2025 | CED | Drafting, revising Summary Judgment Memorandum including research regarding conservatorship issues and review relevant materials and updating Statement of Facts. | 3.4 | 400 | $1,360.00 |
| 5/12/2025 | AS | Strategize regarding summary judgment standards, cases, conservatorship docket | 0.2 | 250 | $50.00 |
| 5/12/2025 | AS | Research regarding summary judgment standards, review cases, begin drafting portion of summary judgment memorandum regarding same | 2 | 250 | $500.00 |
| 5/13/2025 | AS | Research regarding summary judgment, review and analysis of law and cases, draft memo for motion for summary judgment | 2.3 | 250 | $575.00 |
| 5/14/2025 | CED | Review draft of summary judgment standard for inclusion in SJ Memorandum. | 0.3 | 400 | $120.00 |
| 5/14/2025 | CED | Review and consider detailed email from Akouete regarding subpoena request in Australia. | 0.2 | 400 | $80.00 |
| 5/14/2025 | CED | Review and consider Akouete Mtn to Clarify Subpoena procedures. | 0.1 | 400 | $40.00 |
| 5/15/2025 | CED | Drafting and revising portions of Summary Judgment Memorandum and Statement of Facts. | 2.6 | 400 | $1,040.00 |
| 5/16/2025 | CED | Outlining argument section of SJ Memorandum regarding corporate authority issues and review and compile supportive documents and consider and plan for submission via affidavit or other references. | 3.6 | 400 | $1,440.00 |
| 5/16/2025 | CED | Further research corporate authority issues in connection with SJ Memorandum; revisions to draft documents re same. | 1.8 | 400 | $720.00 |
| 5/16/2025 | CED | Review Law re Summary Judgment Standard, revise Memorandum re same. | 0.8 | 400 | $320.00 |
| 5/16/2025 | CED | Review and consider proposal from Akouete; email to Trustee regarding same. | 0.2 | 400 | $80.00 |
| 5/17/2025 | AS | Attention to communications and motion from Denise Edwards | 0.1 | 250 | $25.00 |
| 5/19/2025 | AS | Strategize regarding Akouete's motion to receive funds and potential objection to same | 0.2 | 250 | $50.00 |
| 5/19/2025 | AS | Continue drafting objection to Akouete's Motion re Trustee conduct | 1.8 | 250 | $450.00 |
| 5/19/2025 | AS | Review docket, orders of court, analysis of all upcoming deadlines and hearings, draft memo regarding same | 0.9 | 250 | $225.00 |
| 5/19/2025 | CED | Research regarding AZ conservatorship, guarantor requirements; attention to various allegations and citations by Akouete regarding same; review available case law and strategy regarding relevant issues regarding capacity. | 3 | 400 | $1,200.00 |
| 5/19/2025 | CED | Review and consider Edwards objection to consolidation, review exhibits and assess relevance of arguments, review prior court order re consolidation and strategy re next steps. | 0.3 | 400 | $120.00 |
| 5/19/2025 | CED | Review detailed email from Akouete to Regal and attachments including participation agreement, consider basis of Akouete email and arguments and strategy regarding estate interest. | 0.3 | 400 | $120.00 |
| 5/20/2025 | AS | Strategize regarding objection to Akouete motion re Trustee conduct | 0.7 | 250 | $175.00 |
| 5/20/2025 | AS | Research regarding FRCP 408 policy and purpose | 0.5 | 250 | $125.00 |
| 5/20/2025 | AS | Review and revise and continue drafting objection to Akouete motion regarding trustee conduct | 2.6 | 250 | $650.00 |
| 5/20/2025 | AS | Review and analysis of Akouete motion regarding trustee conduct, attachments to same, settlement correspondence throughout case | 0.6 | 250 | $150.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/20/2025 | AS | Attention to communications with Akouete regarding settlement/mediation | 0.1 | 250 | $25.00 |
| 5/20/2025 | AS | Attention to HI probate docket, steps for obtaining documents, strategize regarding same | 0.3 | 250 | $75.00 |
| 5/20/2025 | CED | Outline section of SJ Memorandum regarding conservatorship/guardianship (.8); Additional research and review supportive evidence for Summary Judgment Memorandum regarding conservatorship issues (2.5). | 3.3 | 400 | $1,320.00 |
| 5/20/2025 | CED | Review Akouete email regarding negotiations re claim dispute, prepare draft response and forward same to Trustee to review. | 0.2 | 400 | $80.00 |
| 5/21/2025 | AS | Strategize regarding objection to Akouete motion, next steps, summary judgment | 0.3 | 250 | $75.00 |
| 5/21/2025 | AS | Attention to judge's order and cancellation of hearing on Akouete motion to compel Regal | 0.1 | 250 | $25.00 |
| 5/21/2025 | AS | Research regarding summary judgment standard | 0.3 | 250 | $75.00 |
| 5/21/2025 | AS | Strategize regarding contracts entered by incapacitated persons | 0.1 | 250 | $25.00 |
| 5/21/2025 | AS | Research law regarding contracts entered by incapacitated persons and draft memo regarding same | 1 | 250 | $250.00 |
| 5/21/2025 | CED | Drafting and revising Summary Judgment Memorandum and research certain components of arguments including re standard for SJ and burdens. | 2 | 400 | $800.00 |
| 5/21/2025 | CED | Continued Drafting and revising Summary Judgment Memorandum and contemporaneous drafting of portions of Statement of Facts. | 3.3 | 400 | $1,320.00 |
| 5/22/2025 | AS | Attention to supplement filed by Akouete | 0.1 | 250 | $25.00 |
| 5/22/2025 | AS | Strategize regarding court's discovery conference on Akouete motions regarding CA controller documents | 0.2 | 250 | $50.00 |
| 5/22/2025 | AS | Review all documents filed by Akouete and orders entered by court regarding CA controller documents in preparation for hearing on same | 0.7 | 250 | $175.00 |
| 5/22/2025 | AS | Prepare for hearing on Akouete request for privilege log from Ca controller, strategize regarding same | 1 | 250 | $250.00 |
| 5/22/2025 | AS | Appearance at hearing via zoom on Akouete request for privilege log from Ca controller | 0.4 | 250 | $100.00 |
| 5/22/2025 | AS | Research regarding 28 USCS § 1738A as cited by Akouete | 0.6 | 250 | $150.00 |
| 5/22/2025 | AS | Strategize regarding 28 USCS § 1738A as cited by Akouete and argument for summary judgment | 0.2 | 250 | $50.00 |
| 5/22/2025 | AS | Attention to communications with counsel to CA controller re: hearing and documents produced | 0.1 | 250 | $25.00 |
| 5/22/2025 | AS | Attention documents produced by CA controller | 0.2 | 250 | $50.00 |
| 5/22/2025 | CED | Review and consider cases regarding impact of contracting with incapacitated person and consider applicability. | 0.5 | 400 | $200.00 |
| 5/22/2025 | CED | Further development of argument in SJ Memo regarding no authority of Ms. Scholes to act for BB entities. | 1.5 | 400 | $600.00 |
| 5/22/2025 | CED | Attempt to verify certain Akouete citations and determine inaccurate. | 0.2 | 400 | $80.00 |
| 5/23/2025 | AS | Strategize regarding summary judgment, various orders and motions, next steps | 0.3 | 250 | $75.00 |
| 5/23/2025 | AS | Review and revise memorandum in support of summary judgment | 2 | 250 | $500.00 |
| 5/23/2025 | AS | Strategize regarding draft memorandum in support of summary judgment | 0.6 | 250 | $150.00 |
| 5/23/2025 | CED | Consider documents produced by B&B regarding Scholes to support SJ and email to Mr. Casesmeyer regarding same. | 0.4 | 400 | $160.00 |
| 5/23/2025 | CED | Prepare draft of Affidavit II for Mr. Horst, forward same to counsel with exhbits. | 0.4 | 400 | $160.00 |
| 5/27/2025 | CED | Substantive revisions to draft Summary Judgment Memo and related research regarding arguments made, further review of Claimants' positions taken. | 3.5 | 400 | $1,400.00 |
| 5/27/2025 | CED | Drafting, revising Statement of Facts and drafting and revising supportive affidavits and documents. | 4.4 | 400 | $1,760.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/27/2025 | AS | Research law regarding authority given to agents by corporations/LLCs; review and analysis of same | 3.3 | 250 | $825.00 |
| 5/27/2025 | AS | Draft argument for summary judgment regarding law on corporate authority given to agents | 0.6 | 250 | $150.00 |
| 5/28/2025 | CED | Revisions to Summary Judgment Motion, Memorandum, Statement of Facts, and Affidavits and compiling for review by Trustee. | 4.6 | 400 | $1,840.00 |
| 5/28/2025 | CED | Email to Trustee with Summary Judgment draft documents attached for review and summary of issues and next steps. | 0.2 | 400 | $80.00 |
| 5/28/2025 | CED | Call with estate lawyer regarding certain conservatorship issues. | 0.2 | 400 | $80.00 |
| 5/28/2025 | CED | Further research regarding specific legal issues discussed in Memorandum. | 1.5 | 400 | $600.00 |
| 5/28/2025 | AS | Review and revise Memorandum of law in support of motion for summary judgment | 0.7 | 250 | $175.00 |
| 5/29/2025 | CED | Further research re Delaware Corp Law and LLC law, further research on agency issues and revising Summary Judgment Memorandum to include same (3.5) | 3.5 | 400 | $1,400.00 |
| 5/29/2025 | AS | Review and edit memorandum in support of Mtn for SJ | 1 | 250 | $250.00 |
| 5/29/2025 | AS | Strategize regarding summary judgment, affidavits, exhibits | 0.6 | 250 | $150.00 |
| 5/29/2025 | AS | Review and revise affidavits of C. Devine and the Trustee, compile exhibits, review and analysis of exhibits to use in support of affidavits | 3.1 | 250 | $775.00 |
| 5/29/2025 | AS | Call with Trustee regarding summary judgment memorandum, affidavit | 0.6 | 250 | $150.00 |
| 5/29/2025 | AS | Strategize regarding summary judgment memorandum, affidavits, next steps | 0.2 | 250 | $50.00 |
| 5/29/2025 | AS | Review and revise affidavit of Trustee per discussion with Trustee | 0.2 | 250 | $50.00 |
| 5/29/2025 | CED | Revise and update references in statement of facts and update Memorandum to align both. | 4 | 400 | $1,600.00 |
| 5/29/2025 | CED | Call with Trustee and discuss draft SJ Mtn, Memorandum and related documents (.5); further revisions to all SJ documents including incorporating revisions discussed with Trustee (1.2). | 1.7 | 400 | $680.00 |
| 5/30/2025 | CED | Review and revise and checking cross references in Memorandum, Statement of Facts and all supporting Affidavits. | 4.5 | 400 | $1,800.00 |
| 5/30/2025 | CED | Continued, review and revise and checking cross references in Memorandum, Statement of Facts and all supporting Affidavits; including attending to exhibits to multiple Affidavits and preparing for filing. | 3.8 | 400 | $1,520.00 |
| 5/30/2025 | CED | Revise Ltd objection to Mtn for payment by Akouete. | 0.2 | 400 | $80.00 |
| 5/30/2025 | AS | Strategize regarding objection to Akouete motion for distribution of funds | 0.1 | 250 | $25.00 |
| 5/30/2025 | AS | Draft objection to Akouete motion for distribution of personal funds | 1.5 | 250 | $375.00 |
| 5/30/2025 | AS | Prepare objection to Akouete motion for distribution of personal funds for filing with court and file same with court | 0.1 | 250 | $25.00 |
| 5/30/2025 | AS | Email service of objection to Akouete motion for distribution of personal funds | 0.1 | 250 | $25.00 |
| 5/30/2025 | AS | Communications with Trustee regarding objection to Akouete motion for funds | 0.1 | 250 | $25.00 |
| 5/30/2025 | AS | Review and analysis of all law cited in memorandum in support of summary judgment, and cite checking of same | 2.8 | 250 | $700.00 |
| 5/30/2025 | AS | Continued review and revisions of summary judgment memorandum, statement of facts | 2.5 | 250 | $625.00 |
| 5/30/2025 | AS | Strategize regarding all summary judgment pleadings, cases cited, revisions to same, filing same with court | 0.6 | 250 | $150.00 |
| 5/30/2025 | AS | Prepare motion, memorandum, statement of facts, all affidavits for filing, compile all exhibits to affidavits | 0.7 | 250 | $175.00 |
| 5/30/2025 | AS | File motion, memorandum, statement of facts, all affidavits with corresponding exhibits with the Court | 0.5 | 250 | $125.00 |
| 5/30/2025 | AS | Email service of all summary judgment documents | 0.1 | 250 | $25.00 |
| 5/30/2025 | AS | Coordinate mail service on Akouete and Edwards of all summary judgment documents and exhibits | 0.4 | 250 | $100.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6/2/2025 | AS | Review Akouete responses to objections and various pleadings recently filed | 0.4 | 250 | $100.00 |
| 6/2/2025 | AS | Review and analysis of all recent court orders, deadlines set, upcoming deadlines regarding claims/summary judgment | 1 | 250 | $250.00 |
| 6/2/2025 | AS | Attention to certificates of service regarding mail service of SJ docs, file same with court | 0.2 | 250 | $50.00 |
| 6/3/2025 | AS | Review and analysis of Akouete motion for summary judgment and affidavit | 0.6 | 250 | $150.00 |
| 6/3/2025 | CED | Planning regarding response to pending Akouete Summary Judgment. | 0.3 | 400 | $120.00 |
| 6/5/2025 | AS | Review and analysis of potential responses to Akouete summary judgment statement of facts | 0.5 | 250 | $125.00 |
| 6/5/2025 | AS | Strategize regarding trustee's objection to Akouete summary judgment motion | 0.3 | 250 | $75.00 |
| 6/5/2025 | CED | Planning for objection to Akouete pending Summary Judgment motion; review Akouete assertion re undisputed facts and legal issues, strategy and planning for objection. | 0.5 | 400 | $200.00 |
| 6/6/2025 | AS | Review motions to clarify and motion to reopen discovery filed by Akouete | 0.4 | 250 | $100.00 |
| 6/6/2025 | AS | Strategize regarding motions filed by Akouete, trustee's objection to Akouete summary judgment, next steps | 0.6 | 250 | $150.00 |
| 6/6/2025 | AS | Attention to multiple emails with exhibits sent by Akouete | 0.6 | 250 | $150.00 |
| 6/6/2025 | AS | Attention to orders entered by Court regarding Akouete motions | 0.1 | 250 | $25.00 |
| 6/6/2025 | AS | Review and analysis of Akouete motion for summary judgment and statement of facts therein for purposes of objecting to same | 0.4 | 250 | $100.00 |
| 6/6/2025 | CED | Review email and documents from Akouete regarding Goulston; consider possible relevance and email to Trustee with recommended actions. | 0.3 | 400 | $120.00 |
| 6/6/2025 | CED | Review email from Akouete with attachments to M. Lewis of Regal, consider relevance to Akouete claims and possible impact on estate. | 0.2 | 400 | $80.00 |
| 6/6/2025 | CED | Review and assess Akouete Mtn to Schedule Hearing and for other relief regarding SJ. | 0.2 | 400 | $80.00 |
| 6/6/2025 | CED | Review email to me from Akouete regarding admissibility issues and documents attached, review Rule cited and consider Akouete request. | 0.3 | 400 | $120.00 |
| 6/6/2025 | CED | Review draft Memorandum provided by Akouete with request regarding exhibits and consider appropriate response by Estate. | 0.5 | 400 | $200.00 |
| 6/6/2025 | CED | Review and consider further email exchange between Ronan and Akouete. | 0.1 | 400 | $40.00 |
| 6/6/2025 | CED | Review and consider Akouete Mtn to Reopen discovery and consider response. | 0.2 | 400 | $80.00 |
| 6/6/2025 | CED | Email to Trustee with text of recommended response to Akouete in response to multiple emails received from Akouete. | 0.2 | 400 | $80.00 |
| 6/6/2025 | CED | Review Court Orders in response to Akouete discovery related requests and consider possible impact on Estate. | 0.2 | 400 | $80.00 |
| 6/6/2025 | CED | Email to Akouete in response to requests regarding admissiblity of documents. | 0.1 | 400 | $40.00 |
| 6/9/2025 | AS | Review order on Akouete's motion to add items to docket for hearing | 0.1 | 250 | $25.00 |
| 6/9/2025 | AS | Review and analysis of court orders regarding summary judgment, Akouete motion for summary judgment, bankruptcy rules regarding opposition to summary judgment | 1.2 | 250 | $300.00 |
| 6/9/2025 | AS | Draft responses to Akouete statement of facts in summary judgment motion | 1.9 | 250 | $475.00 |
| 6/9/2025 | CED | Review multiple Akouete emails regarding position on claims and settlement, and email to Trustee with recommended responses. | 0.2 | 400 | $80.00 |
| 6/11/2025 | AS | Strategize regarding 6/10 hearing | 0.1 | 250 | $25.00 |
| 6/11/2025 | AS | Attention to motion filed by Akouete for reconsideration of order re CA documents, review documents filed with motion | 0.3 | 250 | $75.00 |
| 6/11/2025 | AS | Email to counsel to CA Controller regarding public records request of Akouete | 0.1 | 250 | $25.00 |
| 6/11/2025 | AS | Strategize regarding Edwards discovery, objection to Akouete motion for SJ | 0.2 | 250 | $50.00 |
| 6/11/2025 | AS | Continue drafting objection to Akouete MSJ and responses to statement of facts | 1.7 | 250 | $425.00 |
| 6/11/2025 | CED | Attention to status of California production of documents; consider relevance to estate and planning for request to obtain documents produced. | 0.2 | 400 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6/12/2025 | CED | Forward Summary Judgment motion and related documents to L Casasmeyer. | 0.2 | 400 | $80.00 |
| 6/12/2025 | AS | Review orders entered by the court regarding multiple pending Akouete requests. | 0.1 | 250 | $25.00 |
| 6/16/2025 | AS | Continue drafting objection to Akouete's motion for summary judgment and responses to statement of facts | 3.6 | 250 | $900.00 |
| 6/17/2025 | AS | Communications with counsel to CA controller regarding documents produced to Akouete regarding claim dispute. | 0.1 | 250 | $25.00 |
| 6/17/2025 | AS | Strategize regarding objection to Akouete summary judgment motion | 0.2 | 250 | $50.00 |
| 6/17/2025 | AS | Further strategize regarding objection to Akouete motion for summary judgment | 0.2 | 250 | $50.00 |
| 6/17/2025 | AS | Review and revise objection to summary judgment, review local rules and bankruptcy rules regarding summary judgment, add references to the record | 1.7 | 250 | $425.00 |
| 6/18/2025 | CED | Revise and finalize for Trustee review Opposition to Akouete Summary Judgment Motion; confirm references to the record and email to Trustee forwarding for review draft Opposition and SJ Motion. | 1.6 | 400 | $640.00 |
| 6/20/2025 | CED | Attn to Edwards discovery and strategy regarding requests to include in same. | 0.4 | 400 | $160.00 |
| 6/20/2025 | CED | Strategy related to Objection to Akouete SJ and planning for submission of same, attn to service issues and next steps regarding summary judgment issues. | 0.4 | 400 | $160.00 |
| 6/20/2025 | AS | Strategize regarding objection to Akouete SJ motion, discovery to Edwards | 0.4 | 250 | $100.00 |
| 6/20/2025 | AS | Review all rules regarding summary judgment and oppositions thereto | 0.3 | 250 | $75.00 |
| 6/20/2025 | AS | Review and revise objection to motion for summary judgment | 0.7 | 250 | $175.00 |
| 6/20/2025 | AS | Prepare objection to summary judgment for filing with court | 0.1 | 250 | $25.00 |
| 6/20/2025 | AS | Coordinate mail service of objection to summary judgment | 0.2 | 250 | $50.00 |
| 6/20/2025 | CED | Strategy re requirements of LR 56 and MLBR 7056-1; further planning for filing opposition to Akouete SJ Mtn. | 0.2 | 400 | $80.00 |
| 6/20/2025 | AS | Begin drafting interrogatories to Edwards | 0.5 | 250 | $125.00 |
| 6/23/2025 | CED | Strategy re discovery on Edwards and review portions of draft; consider additional issues to include (.3); email to/from Trustee regarding same (.1). | 0.4 | 400 | $160.00 |
| 6/23/2025 | AS | Continue drafting interrogatories and requests for production of documents to Denise Edwards | 3.1 | 250 | $775.00 |
| 6/23/2025 | AS | Strategize regarding discovery to Edwards | 0.1 | 250 | $25.00 |
| 6/23/2025 | AS | Communications with Trustee regarding discovery to Edwards | 0.1 | 250 | $25.00 |
| 6/23/2025 | AS | Review and revise discovery to serve on Edwards, prepare same for serving on Edwards | 0.3 | 250 | $75.00 |
| 6/23/2025 | AS | Coordinate mail service of RPDs and Interrogatories to Edwards | 0.1 | 250 | $25.00 |
| 6/23/2025 | AS | Email to Edwards with Interrogatories and RPDs | 0.1 | 250 | $25.00 |
| 6/24/2025 | AS | Communications with J. Russel regarding CA controller documents, create sharepoint link for receipt of same | 0.1 | 250 | $25.00 |
| 6/24/2025 | CED | Planning and strategy regarding reply to Akouete objection to Trustee SJ mtn. | 0.3 | 400 | $120.00 |
| 6/24/2025 | AS | Strategize regarding reply to Akouete objection to SJ, discovery, next steps | 0.2 | 250 | $50.00 |
| 6/26/2025 | AS | Attention to court's order setting hearing re Akouete motion re Mignonette action | 0.1 | 250 | $25.00 |
| 6/27/2025 | AS | Review and analysis of Akouete's objection to Trustee's SJ motion and Akouete's affidavit in support of objection | 1.8 | 250 | $450.00 |
| 6/27/2025 | AS | Strategize regarding sur reply regarding summary judgment | 0.5 | 250 | $125.00 |
| 6/27/2025 | AS | Communications with J. Russel regarding documents produced to Akouete | 0.1 | 250 | $25.00 |
| 6/27/2025 | AS | Review and analysis of documents from CA Controller | 1.6 | 250 | $400.00 |
| 6/27/2025 | CED | Email to Trustee regarding Mobile Street claim status. | 0.1 | 400 | $40.00 |
| 6/30/2025 | AS | Communications with courtroom deputy regarding zoom link for hearing | 0.1 | 250 | $25.00 |
| 6/30/2025 | AS | Review and analysis of Akouete's sur reply regarding summary judgment and affidavit with voluminous exhibits attached thereto | 2.4 | 250 | $600.00 |
| 6/30/2025 | CED | Review and consider Akouete reply regarding pending Summary Judgment on his claim. | 0.2 | 400 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7/1/2025 | AS | Review documents, docket in preparation for hearing on Akouete motion to compel D. Blaine | 0.8 | 250 | $200.00 |
| 7/1/2025 | AS | Strategize regarding hearing on Akouete motion to compel D. Blaine | 0.3 | 250 | $75.00 |
| 7/1/2025 | AS | Appear via zoom at hybrid hearing on Akouete's motion to compel D. Blaine | 0.1 | 250 | $25.00 |
| 7/1/2025 | AS | Strategize regarding results of hearing on motion to compel D. Blaine | 0.1 | 250 | $25.00 |
| 7/2/2025 | AS | Attention to Akouete motion to expedite hearing on his motion for relief regarding Migonette | 0.1 | 250 | $25.00 |
| 7/2/2025 | AS | Attention to court's order continuing hearing on motion to compel D. Blaine, and order on Akouete's motion to expedite hearing | 0.1 | 250 | $25.00 |
| 7/8/2025 | AS | Research regarding summary judgment evidentiary standards, personal knowledge standard under rules of evidence | 0.7 | 250 | $175.00 |
| 7/8/2025 | AS | Draft trustee's reply to Akouete objection motion for summary judgment | 1.6 | 250 | $400.00 |
| 7/9/2025 | AS | Strategize regarding Trustee's SJ Reply | 0.1 | 250 | $25.00 |
| 7/10/2025 | CED | Revise Reply to Akouete Response to Trustee's Summary Judgment. | 0.8 | 400 | $320.00 |
| 7/14/2025 | AS | Strategize regarding reply to opposition to motion for summary judgment | 0.5 | 250 | $125.00 |
| 7/14/2025 | AS | Research regarding law regarding whether there is standing when not a party to a contract | 0.8 | 250 | $200.00 |
| 7/14/2025 | AS | Review and revise reply to motion for summary judgment, cite checking and editing section on standing | 1.7 | 250 | $425.00 |
| 7/14/2025 | AS | Prepare reply to motion for summary judgment for filing with court and file same with court | 0.2 | 250 | $50.00 |
| 7/17/2025 | CED | Attention to outcome of hearing regarding Akouete relief to pursue Mignonette and consider Court input; planning. | 0.2 | 400 | $80.00 |
| 7/21/2025 | CED | Review and assess Akouete Motion to Reopen Discovery; consider possible response. | 0.3 | 400 | $120.00 |
| 7/24/2025 | CED | Edwards claim issues and consider no response to discovery requests and plan for SJ deadline re Edwards. | 0.2 | 400 | $80.00 |
| 7/25/2025 | CED | Strategy and planning for upcoming deadline regarding SJ on Edwards claim disputed, review relevant orders and prior submissions, consider discovery default, and planning for statement by Trustee on deadline. | 0.4 | 400 | $160.00 |
| 7/25/2025 | CED | Strategic planning regarding objection to Akouete extension of discovery. | 0.1 | 400 | $40.00 |
| 7/25/2025 | AS | Research regarding Denise failure to cooperate in discovery, procedures and available options, review court's order and other pleadings regarding summary judgment as applicable to Denise, relevant dates | 1.5 | 250 | $375.00 |
| 7/25/2025 | AS | Strategize regarding Denise failure to cooperate in discovery, next steps regarding same, summary judgment as to Denise, objection to Akouete motion to reopen discovery | 0.7 | 250 | $175.00 |
| 7/25/2025 | AS | Draft memo regarding compelling discovery, options, next steps | 0.2 | 250 | $50.00 |
| 7/28/2025 | CED | Strategic planning regarding Edwards summary judgment and substance of statement to file on upcoming SJ deadline. | 0.3 | 400 | $120.00 |
| 7/28/2025 | AS | Strategize regarding next steps concerning objections and deadlines to Akouete motion to join B&B and reopen discovery | 0.3 | 250 | $75.00 |
| 7/28/2025 | AS | Review and analysis of summary judgment record, timeline of Edwards Claim objections, applicable orders, deadline for summary judgment motions as to Edwards claim | 0.2 | 250 | $50.00 |
| 7/28/2025 | AS | Strategize regarding summary judgment as to Edwards claim, drafting statement regarding same | 0.2 | 250 | $50.00 |
| 7/28/2025 | AS | Draft email to client regarding recommendations and next steps | 0.2 | 250 | $50.00 |
| 7/29/2025 | AS | Draft objection to Akouete's renewed motion to reopen discovery | 1.9 | 250 | $475.00 |
| 7/29/2025 | AS | Strategize regarding objections to Akouete motions, statement regarding summary judgment, next steps | 0.3 | 250 | $75.00 |
| 7/29/2025 | CED | Revise Objection to Akouete renewed Motion to Reopen Discovery. | 0.2 | 400 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7/30/2025 | AS | Review and revise objection to Akouete's second motion to reopen discovery | 0.3 | 250 | $75.00 |
| 7/30/2025 | AS | Communications with Trustee regarding objection to Akouete's second motion to reopen discovery | 0.1 | 250 | $25.00 |
| 7/31/2025 | AS | Draft statement and reservation of rights as to summary judgment regarding Edwards Claim | 1.4 | 250 | $350.00 |
| | | **TOTAL** | **489.6** | | **$161,690.00** |

# EXHIBIT H

**In Re Westborough SPE LLC** **EXHIBIT H**
**Case No. 23-40709-CJP**

**APPELLATE MATTERS**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 8/14/2024 | CED | Research standards for potential stay of settlement and assess relevant issues for discussion with Trustee. | 0.8 | $400.00 | $320.00 |
| 8/14/2024 | CED | Review appeal status, deadline under R. 8009; review designation and issues; planning and summarize issues for discussion with Trustee. | 0.8 | $400.00 | $320.00 |
| 8/15/2024 | CED | Review BAP Opening Ltr and related deadlines; review Bankr. Rules and Local Rules. | 0.5 | $400.00 | $200.00 |
| 8/23/2024 | CED | Prepare and file Notice of Appearance in BAP matter. | 0.2 | $400.00 | $80.00 |
| 9/2/2024 | CED | Review Mr. Akouete's Mtn to Reconsider Dismissal of Appeal; consider arguments and review exhibits. | 0.5 | $400.00 | $200.00 |
| 9/10/2024 | CED | Review BAP appeal related materials, including Town submission. | 0.2 | $400.00 | $80.00 |
| 9/11/2024 | CED | Review Judgment of Dismissal by BAP. | 0.2 | $400.00 | $80.00 |
| 9/27/2024 | CED | Review BAP filings by Mr. Akouete and detailed email; appeal to 1st Cir; consider issues and timing and interest of estate. | 0.4 | $400.00 | $160.00 |
| 10/10/2024 | AS | Review notice of appeal filed in BAP | 0.1 | $250.00 | $25.00 |
| 10/10/2024 | AS | Attention to Akouete Notice of Appeal to BAP and consider same. | 0.1 | $250.00 | $25.00 |
| 10/10/2024 | AS | Research re: deadlines under FRAP and Bankrcupty Rules for deadlines and next steps after notice of appeal is filed | 0.5 | $125.00 | $62.50 |
| 10/10/2024 | CED | Planning regarding Mr. Akouete pending appeal, consider deadlines and assess whether further action by Trustee is required. | 0.4 | $400.00 | $160.00 |
| 10/11/2024 | CED | Review/consider Mr. Akouete BAP mtn to proceed In Forma Paueris. | 0.2 | $400.00 | $80.00 |
| 10/21/2024 | CED | Assess status of 1st Circuit appeal; review items docketed; review BAP orders appealed and substance of Notice filed by Mr. Akouete; review rules and deadlines and planning for appeal. | 0.5 | $400.00 | $200.00 |
| 10/22/2024 | CED | Review 1st Circuit filings; attention to email from Clerk regarding scheduling and respond to Clerk. | 0.2 | $400.00 | $80.00 |
| 10/22/2024 | CED | Prepare email with recommended course of action to Trustee regarding expedited appeal response. | 0.2 | $400.00 | $80.00 |
| 10/23/2024 | AS | Research re: basis for bringing expedited appeal in 1st circuit, with respect to objecting to Lolo's motion to expedite appeal | 2.8 | $125.00 | $350.00 |
| 10/23/2024 | AS | Strategy re: issues to raise in objection to Akouete's motion to expedite appeal, researching legal basis for same | 0.4 | $250.00 | $100.00 |
| 10/23/2024 | CED | Consider response to Mr. Akouete request to expedite appeal; consider standards to expedite and plan for response. | 0.2 | $400.00 | $80.00 |
| 10/23/2024 | CED | Review research results regarding appropriate basis to expedite appeal and consider issues pursued by Mr. Akouete; review BAP decision bases. | 0.6 | $400.00 | $240.00 |
| 10/28/2024 | CED | Review and consider arguments in Creditors' objection to Mtn to Expedite filed by Akouete in First Circuit appeal. | 0.3 | $400.00 | $120.00 |
| 10/28/2024 | CED | Revising Objection to Mtn to Expedite as Joinder; review rules regarding same; update joinder research and finalize draft for client review. | 1.1 | $400.00 | $440.00 |
| 10/28/2024 | CED | Attend to 1st Cir efiling and service requirements and planning for compliance; revise draft COS. | 0.2 | $400.00 | $80.00 |
| 10/28/2024 | CED | Email to Client to review draft joinder in 1st Cir opposition. | 0.2 | $400.00 | $80.00 |
| 10/29/2024 | CED | Call with Trustee and attend to filing of NOA and Opposition; and attend to service of same. | 0.4 | $400.00 | $160.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/13/2024 | CED | Review First Circuit dismissal order re Akouete appeal. | 0.3 | $400.00 | $120.00 |
| 3/7/2025 | AS | Review writ of mandamus to US Supreme Court filed by Akouete | 0.3 | $250.00 | $75.00 |
| 3/7/2025 | CED | Review Akouete Writ of Mandamus submitted to Supreme Court. | 0.2 | $400.00 | $80.00 |
| 3/27/2025 | CED | Review Supreme Court docket and consider issues and deadlines. | 0.2 | $400.00 | $80.00 |
| 4/2/2025 | AS | Attention to notice of docketing of supreme court brief filed by Akouete | 0.1 | $250.00 | $25.00 |
| 4/2/2025 | AS | Research regarding supreme court rules for brief in opposition and deadline for same | 0.3 | $250.00 | $75.00 |
| 4/2/2025 | AS | Strategize regarding potential brief in opposition for supreme court | 0.1 | $250.00 | $25.00 |
| 4/2/2025 | CED | Attention to Akouete docketing at Supreme Court and consider issues relevant to estate. | 0.2 | $400.00 | $80.00 |
| 4/22/2025 | AS | Strategize regarding preparing and filing waiver in Supreme Court action | 0.3 | $250.00 | $75.00 |
| 4/22/2025 | CED | Research regarding Waiver of Supreme Court brief including filing requirements, review rules of Court, review electronic filing for admitted attorney (.8); revise and finalize waiver, attend to notice of appearance and file same with waiver (.4). | 1.2 | $400.00 | $480.00 |
| | | **TOTAL** | **15.2** | | **$4,917.50** |

# EXHIBIT I

**In Re Westborough SPE LLC** **EXHIBIT I**
**Case No. 23-40709-CJP**

**ADVERSARY AGAINST TOWN - CASE MANAGEMENT**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 2/3/2025 | AS | Review tracking for summons and complaint served on town and deadline for answer | 0.1 | $250.00 | $25.00 |
| 2/3/2025 | CED | Attention to Mtn to consolidate; research regarding jurisdictional issues regarding exclusive jurisdiction of Land Court including Emigrant case. | 0.4 | $400.00 | $160.00 |
| 2/10/2025 | AS | Research regarding consolidating adversary proceedings | 1.2 | $250.00 | $300.00 |
| 2/11/2025 | CED | Strategy regarding Mtn to Consolidate Town adversary proceedings, consider relevant factors and information to include and consider arguments and likely Town position. | 0.2 | $400.00 | $80.00 |
| 2/11/2025 | AS | Research regarding consolidation of adversary proceedings, standard in First Circuit | 2 | $250.00 | $500.00 |
| 2/11/2025 | AS | Strategize re: motion to consolidate adversary proceedings | 0.2 | $250.00 | $50.00 |
| 2/12/2025 | AS | Research re: core proceedings, bankruptcy court jurisdiction regarding Town position on Land Court matter. | 0.4 | $250.00 | $100.00 |
| 2/12/2025 | AS | Continue drafting motion to consolidate regarding Town matters. | 2.1 | $250.00 | $525.00 |
| 2/13/2025 | AS | Further research regarding case law related to subject matter jurisdiction, consolidation issues. | 0.7 | $250.00 | $175.00 |
| 2/13/2025 | AS | Continue drafting motion to consolidate | 0.7 | $250.00 | $175.00 |
| 2/18/2025 | CED | Email to R. Smerage regarding extension request for Answer. | 0.1 | $400.00 | $40.00 |
| 4/9/2025 | CED | Review proposed Status Report and Joint Mtn to continue answer deadline. | 0.2 | $400.00 | $80.00 |
| 4/11/2025 | CED | Drafting, revising Objection and Response to Akouete Mtn to Set Deadline regarding Land Court action. | 1.6 | $400.00 | $640.00 |
| 4/14/2025 | CED | Review Town objection to Akouete Mtn regarding Land Court matter. | 0.2 | $400.00 | $80.00 |
| 7/10/2025 | CED | Review Town's draft Mtn to extend deadline and forward to Trustee with comments. | 0.2 | $400.00 | $80.00 |
| | | **TOTAL** | **10.2** | | **$3,010.00** |

# EXHIBIT J

**In Re Westborough SPE LLC** **EXHIBIT J**
**Case No. 23-40709-CJP**

**ADVERSRY AGAINST TOWN - ASSET ANALYSIS AND RECOVERY**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 1/21/2025 | AS | Strategize re: drafting complaint v. Town | 0.2 | $250.00 | $50.00 |
| 1/21/2025 | AS | Research re: fraudulent conveyance and unconstitutional taking issues in light of allegations to include in complaint v. town | 1.9 | $250.00 | $475.00 |
| 1/21/2025 | AS | Draft complaint v. Town of Westborough | 0.6 | $250.00 | $150.00 |
| 1/21/2025 | AS | Review land court records, actions of town, dockets | 0.3 | $250.00 | $75.00 |
| 1/22/2025 | CED | Research regarding tax taking cause of action v. Town; review Hennepin and subsequent Mass cases regarding takings; strategies regarding complaint v. Town. | 2.3 | $400.00 | $920.00 |
| 1/22/2025 | AS | Research and analysis of potential causes of action for complaint v. Town of Westborough, research and analysis of Hennepin and other related case law, strategize re: causes of action | 3.2 | $250.00 | $800.00 |
| 1/22/2025 | AS | Drafting complaint v. Town. | 2.6 | $250.00 | $650.00 |
| 1/22/2025 | CED | Calls with Trustee (2x) and R Smerage regarding upcoming hearings, options to proceed with pending matters, and property liquidation options. | 0.4 | $400.00 | $160.00 |
| 1/22/2025 | CED | Further strategies regarding estate relief in connection with Hennepin Supreme Court ruling. | 0.5 | $400.00 | $200.00 |
| 1/23/2025 | CED | Research new tax title and foreclosure requirements; strategy regarding complaint and requests for relief v. Town. | 1.5 | $400.00 | $600.00 |
| 1/23/2025 | AS | Revising Complaint v. Town. | 4.8 | $250.00 | $1,200.00 |
| 1/24/2025 | CED | Strategic planning regarding jurisdictional issues and counts to pursue v. Town. | 0.3 | $400.00 | $120.00 |
| 1/24/2025 | AS | Strategize re: causes of action v. Town and jurisdictional issues | 0.3 | $250.00 | $75.00 |
| 1/24/2025 | AS | Review and revise complaint v. Town. | 0.4 | $250.00 | $100.00 |
| 1/27/2025 | CED | Revising complaint; further develop facts and background, and additional research regarding current MA Ch 60 to incorporate same, revise counts and relief requested, include declaratory relief. | 6.5 | $400.00 | $2,600.00 |
| 1/28/2025 | CED | Research recent application of Amended Ch. 60 in reported case law. | 0.8 | $400.00 | $320.00 |
| 1/28/2025 | AS | Revise complaint v. Town. | 1.2 | $250.00 | $300.00 |
| 1/28/2025 | AS | Further research re applicable statutes and add citations for same. | 0.6 | $250.00 | $150.00 |
| 1/28/2025 | AS | Strategize re: complaint, relief sought, and related issues. | 0.4 | $250.00 | $100.00 |
| 1/28/2025 | CED | Review and revise draft complaint and forward to Trustee for review and comment. | 0.8 | $400.00 | $320.00 |
| 1/29/2025 | AS | Call with Trustee regarding complaint | 0.5 | $250.00 | $125.00 |
| 1/29/2025 | AS | Strategize regarding causes of action in complaint | 0.4 | $250.00 | $100.00 |
| 1/29/2025 | AS | Research law on certain causes of action in complaint. | 0.2 | $250.00 | $50.00 |
| 1/29/2025 | AS | Complete AP cover sheet | 0.6 | $250.00 | $150.00 |
| 1/29/2025 | CED | Call with J. Goldsmith regarding draft Complaint. | 0.3 | $400.00 | $120.00 |
| 1/29/2025 | CED | Revise Complaint per discussions with Trustee prepare revised draft and redline of same. | 1.6 | $400.00 | $640.00 |
| 1/29/2025 | CED | Prepare and forward email to Trustee with summary of revisions to draft Complaint and include revised with redline copies for review. | 0.2 | $400.00 | $80.00 |
| 1/30/2025 | AS | Review and revise complaint v. town, assemble all exhibits, review and revise AP cover sheet, prepare complaint for filing with court and file same with court | 1.2 | $250.00 | $300.00 |
| 1/30/2025 | AS | Strategize and planning for filing complaint | 0.1 | $250.00 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/30/2025 | AS | Research regarding making service of summons and complaint on Town of Westborough | 0.5 | $250.00 | $125.00 |
| 1/30/2025 | AS | Coordinate service of summons and complaint via first class and certified mail to Westborough Town Clerk | 0.2 | $250.00 | $50.00 |
| 1/30/2025 | AS | Prepare COS of summons on town and file same with court | 0.3 | $250.00 | $75.00 |
| 1/30/2025 | CED | Review AP cover sheet and final Complaint withe Exhibits appended prior to filing. | 0.3 | $400.00 | $120.00 |
| 1/30/2025 | CED | Email to Mr. Smerage regarding Complaint. | 0.1 | $400.00 | $40.00 |
| 1/30/2025 | CED | Call with Mr. Smerage regarding complaint. | 0.2 | $400.00 | $80.00 |
| | | **TOTAL** | **36.3** | | **$11,445.00** |

# EXHIBIT K

**In Re Westborough SPE LLC** **EXHIBIT K**
**Case No. 23-40709-CJP**

**ADVERSARY AGAINST TOWN - ASSET DISPOSITION**

| Date | User | Description | Hours | Rate | Billable |
|---|---|---|---|---|---|
| 1/30/2025 | CED | Prepare for and call with Trustee and Mr. Smerage regarding potential for consensual liquidation of Property. | 0.4 | $400.00 | $160.00 |
| 2/6/2025 | CED | Draft and revise outline of settlement proposal regarding disposition of Property for Trustee review based on negotiations with Town and forward same to Trustee. | 1.5 | $400.00 | $600.00 |
| 2/7/2025 | CED | Call with Trustee regarding settlement proposal for disposition of Property and revisions required. | 0.2 | $400.00 | $80.00 |
| 2/7/2025 | CED | Revise and redline draft proposal to Town and forward same for Trustee review. | 0.4 | $400.00 | $160.00 |
| 2/7/2025 | CED | Email to R. Smerage with draft proposal regarding disposition of Property attached. | 0.2 | $400.00 | $80.00 |
| 2/21/2025 | CED | Call with Trustee and strategy re negotiations with Town. | 0.1 | $400.00 | $40.00 |
| 2/25/2025 | CED | NO CHARGE. Email Mr. Smerage to schedule call. NO CHARGE | 0.1 | $0.00 | $0.00 |
| 2/26/2025 | CED | Prepare for (.3) and call with Mr. Smerage and discuss options to sell property as part of a settlement (.3). | 0.6 | $400.00 | $240.00 |
| 3/4/2025 | CED | Prepare for call with R. Smerage and review prior proposal for disposition of Property made by Trustee and plan for call. | 0.2 | $400.00 | $80.00 |
| 3/4/2025 | CED | Call with R. Smerage regarding Town proposal to move forward and discuss issues, possible impediments. | 0.6 | $400.00 | $240.00 |
| 3/5/2025 | CED | Prepare for call with Trustee, review notes of Town proposal re Property and call with Trustee to discuss issues, timing, and next steps. | 0.4 | $400.00 | $160.00 |
| 3/5/2025 | CED | Email to Mr. Smerage regarding call to discuss further negotiations re disposition of Property. | 0.1 | $400.00 | $40.00 |
| 3/6/2025 | CED | Prepare for call with Mr. Smerage regarding Trustee's response to Town position and willingness to market property as part of settlement. | 0.2 | $400.00 | $80.00 |
| 3/6/2025 | CED | Call with Mr. Smerage and negotiations re Property and next steps. | 0.6 | $400.00 | $240.00 |
| 3/10/2025 | CED | Attention to proposal from Church to Town and emails with Trustee regarding same. | 0.2 | $400.00 | $80.00 |
| 3/11/2025 | CED | Call with Trustee regarding expected proposal from the Town. | 0.2 | $400.00 | $80.00 |
| 3/14/2025 | AS | Review settlement proposal from Town | 0.2 | $250.00 | $50.00 |
| 3/14/2025 | CED | Review email from R. Smerage with proposal attached and forward to Trustee. | 0.2 | $400.00 | $80.00 |
| 3/17/2025 | CED | Review Email from R. Smerage re negotiations, request to extend answer deadline, and timing issues, and forward to Trustee. | 0.2 | $400.00 | $80.00 |
| 3/18/2025 | CED | Call with Trustee and review Town's proposal in detail, identify issues and plan next steps. | 0.4 | $400.00 | $160.00 |
| 3/18/2025 | CED | Email to R. Smerage to schedule call to discuss Town proposal. | 0.1 | $400.00 | $40.00 |
| 3/27/2025 | CED | Review law related to Town claim allowance and review Yourelo case regarding same and draft and forward detailed email to Trustee regarding negotiations and pending Mobile Street motion | 0.6 | $400.00 | $240.00 |
| 3/31/2025 | CED | Review proposal to Town regarding Bid solicitation process for disposition of Property. | 0.3 | $400.00 | $120.00 |
| 4/1/2025 | CED | Review proposed offer solicitation process proposed by Town and forward same to Trustee; consider issues. | 0.3 | $400.00 | $120.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/7/2025 | CED | Analysis of Town proposal and possible response and planning for call with Trustee. | 0.5 | $400.00 | $200.00 |
| 4/7/2025 | CED | Call with Trustee regarding response to Town. | 0.3 | $400.00 | $120.00 |
| 4/7/2025 | CED | Revise bid procedures with Town, redline and email to R. Smerage for review. | 0.5 | $400.00 | $200.00 |
| 4/9/2025 | CED | Draft proposed Memorandum re offers and Offer form. | 1.8 | $400.00 | $720.00 |
| 4/9/2025 | CED | Attention to edits to Joint status report and email Trustee re same | 0.4 | $400.00 | $160.00 |
| 4/9/2025 | CED | Call with Trustee regarding documents circulated, edits required, and Town negotiations. | 0.2 | $400.00 | $80.00 |
| 4/9/2025 | CED | Make revisions to Memo and form of Offer as discussed with Trustee and forward to R. Smerage. | 0.6 | $400.00 | $240.00 |
| 4/10/2025 | CED | Emails with R. Smerage re property marketing. | 0.2 | $400.00 | $80.00 |
| 4/10/2025 | CED | Review comments from R. Smerage regarding agreed procedures to solicit offers to purchase the Property and forward to Trustee. | 0.4 | $400.00 | $160.00 |
| 4/10/2025 | CED | Call with Trustee and Smerage and discuss offer solicitation process. | 0.3 | $400.00 | $120.00 |
| 4/10/2025 | CED | Email to R. Smerage summarizing discussions and next steps re agreed disposition of Property. | 0.2 | $400.00 | $80.00 |
| 4/11/2025 | CED | Revise and redline, Summary of offer solicitation procedures, Offer form, and Memo requesting offers; forward same to Mr. Smerage. | 1.2 | $400.00 | $480.00 |
| 4/11/2025 | CED | Calls with Atty Smerage and follow up emails regarding marketing procedures and further emails with Trustee regarding same. | 0.3 | $400.00 | $120.00 |
| 4/11/2025 | CED | Further revisions to offer solicitation plan; email attaching final version to Mr. Smerage and confirming next steps. | 0.3 | $400.00 | $120.00 |
| 4/11/2025 | CED | Call with Paul Carey regarding Ferris input on Joint Status Report regarding matter pending v. Town; follow up email to Trustee regarding same. | 0.5 | $400.00 | $200.00 |
| 4/14/2025 | CED | Call with P Carey regarding Ferris issues in connection with potential disposition of property by agreement. | 0.2 | $400.00 | $80.00 |
| 4/14/2025 | CED | Email Trustee re Ferris issues. | 0.1 | $400.00 | $40.00 |
| 4/14/2025 | CED | Compile relevant documents and prepare for hearing on Joint Status Report and Extension Request. | 1 | $400.00 | $400.00 |
| 4/15/2025 | CED | Finalize Bid Solicitation materials; attach exhibits in clean format; emails to Trustee and Mr. Smerage re same. | 1.4 | $400.00 | $560.00 |
| 4/16/2025 | CED | Call with Trustee regarding marketing action plan. | 0.2 | $400.00 | $80.00 |
| 4/16/2025 | CED | Prepare solicitation package and forward multiple emails to each potentially interested party, include Memorandum with exhibits and summarize relevant information. | 1 | $400.00 | $400.00 |
| 4/17/2025 | AS | Gather addresses and create mailing list for bid solicitation, research regarding additional addresses for mailing bids | 1 | $250.00 | $250.00 |
| 4/17/2025 | AS | Strategize regarding bid solicitation, summary judgment, next steps | 0.5 | $250.00 | $125.00 |
| 4/17/2025 | CED | Attention to noticing issues regarding Memorandum and planning for mailing list of recipients, tracking same. | 0.5 | $400.00 | $200.00 |
| 4/17/2025 | AS | Strategize regarding bid solicitation, memorandum, sharing deposition transcripts | 0.4 | $250.00 | $100.00 |
| 4/18/2025 | AS | Prepare memorandum for mailing, finalize bid solicitation list | 0.6 | $250.00 | $150.00 |
| 4/18/2025 | AS | Coordinate mail service of bid solicitation memo | 0.2 | $250.00 | $50.00 |
| 4/22/2025 | CED | Review inquiry from Town, call with Trustee regarding status of certain marketing requirements. | 0.2 | $400.00 | $80.00 |
| 4/22/2025 | CED | Emails to interested parties with updates re draft Trial Maps. | 0.4 | $400.00 | $160.00 |
| 4/23/2025 | CED | Emails with Trustee and confirm Dotloop listing. | 0.2 | $400.00 | $80.00 |
| 4/23/2025 | CED | Prepare detailed email to R. Smerage with summary of comprehensive marketing efforts. | 0.6 | $400.00 | $240.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/7/2025 | CED | Review and consider Akouete Response regarding Joint Status Report b/w Trustee and Town. | 0.2 | $400.00 | $80.00 |
| 5/8/2025 | CED | Call with J. Goldsmith regarding interested party; discuss next steps and plan for same. | 0.2 | $400.00 | $80.00 |
| 5/12/2025 | CED | Attention to bidder inquiry and respond regarding requirements of bid process. | 0.2 | $400.00 | $80.00 |
| 5/12/2025 | CED | Call with Bidder Broker regarding attendance at open house (.1) and update Trustee regarding same (.1). | 0.2 | $400.00 | $80.00 |
| 5/14/2025 | CED | Attention to documenting marketing efforts and review multiple emails from Trustee regarding same. | 0.2 | $400.00 | $80.00 |
| 5/14/2025 | CED | Review offer received pursuant to Trustee's marketing efforts. | 0.2 | $400.00 | $80.00 |
| 5/15/2025 | CED | Review email from Mr. Smerage regarding second viewing and consider same. | 0.1 | $400.00 | $40.00 |
| 5/16/2025 | CED | Review email from potential purchaser re open house, respond to same. | 0.2 | $400.00 | $80.00 |
| 5/19/2025 | CED | Emails with Mr. Smerage and Trustee confirming visitation of property. | 0.2 | $400.00 | $80.00 |
| 5/20/2025 | CED | Email to Mr. Carey regarding client bidding. | 0.1 | $400.00 | $40.00 |
| 6/2/2025 | CED | Review and consider email from Mr. Carey regarding possible client offer. | 0.2 | $400.00 | $80.00 |
| 6/2/2025 | CED | Review Memorandum, attention to deadlines regarding sale process, email to Trustee regarding inquiry by Mr. Carey. | 0.3 | $400.00 | $120.00 |
| 6/3/2025 | CED | Attention to Sec 363 process and procedure in combination with potential settlement including requirements for free and clear transfer of title and research re same. | 0.5 | $400.00 | $200.00 |
| 6/3/2025 | JY | Research and drafting a memo regarding sale of estate property under Bankruptcy Code § 363(f) and issues regarding expected sale process. | 0.7 | $125.00 | $87.50 |
| 6/4/2025 | CED | Research scope of allowable sale procedure issues and options for procedures that contemplate sale and settlement combined. | 1.6 | $400.00 | $640.00 |
| 6/5/2025 | CED | Consider sale procedure issues, and research to support sale and settlement combined. | 0.3 | $400.00 | $120.00 |
| 6/5/2025 | JY | Research potential issues and draft memo regarding expected structure of sale of estate property to buyer under Bankruptcy Code § 363(f). | 1.4 | $125.00 | $175.00 |
| 6/6/2025 | JY | Further research and drafting memo regarding sale issues. | 1.2 | $125.00 | $150.00 |
| 6/6/2025 | CED | Attention to request for property information from interested party S. Silva and compile and forward relevant information for bidding. | 0.3 | $400.00 | $120.00 |
| 6/9/2025 | AS | Respond to request for bid solicitation package | 0.1 | $250.00 | $25.00 |
| 6/9/2025 | AS | Email to N. Goglia regarding bid solicitation package | 0.1 | $250.00 | $25.00 |
| 6/9/2025 | JY | Research and drafting memo regarding sale of estate propertyunder Bankruptcy Code § 363(f). | 0.9 | $125.00 | $112.50 |
| 6/10/2025 | JY | Research and drafting memo regarding sale of estate property under Bankruptcy Code § 363(f). | 1.7 | $125.00 | $212.50 |
| 6/11/2025 | JY | Finish drafting memo regarding sale of estate property under Bankruptcy Code § 363(f). | 3 | $125.00 | $375.00 |
| 6/13/2025 | CED | Review email from P Carey re offer and request for information and email with Trustee regarding same. | 0.2 | $400.00 | $80.00 |
| 6/13/2025 | CED | Call with P Carey and with Trustee; forward wire instructions. | 0.2 | $400.00 | $80.00 |
| 6/16/2025 | CED | Review inquiry from potential bidder re process and respond. | 0.1 | $400.00 | $40.00 |
| 6/17/2025 | CED | Review email from Mr. Cuneo with offer from interested party with attachments and forward same to Trustee. | 0.2 | $400.00 | $80.00 |
| 6/17/2025 | CED | Review email from Mr. Travaline with proposal to purchase and email with the Trustee regarding same. | 0.2 | $400.00 | $80.00 |
| 6/17/2025 | CED | Review proposal to purchase from Ferris. | 0.2 | $400.00 | $80.00 |
| 6/17/2025 | CED | Review BSAPSS offer to purchase and consider same. | 0.2 | $400.00 | $80.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6/18/2025 | CED | Draft email to Town for Trustee review; attach offers received and propose meeting to discuss; forward to Trustee for review (.5); review email to R. Smerage and respond (.1). | 0.6 | $400.00 | $240.00 |
| 6/19/2025 | CED | Emails to/from Trustee; revise email to R. Smerage and forward with offers received. | 0.2 | $400.00 | $80.00 |
| 6/24/2025 | CED | Emails with Trustee regarding issues, next steps, emails with Smerage regarding call to discuss offers, scheduling. | 0.2 | $400.00 | $80.00 |
| 6/25/2025 | CED | Prepare for and call with Trustee and Mr. Smerage regarding bids, issues regarding same, next steps. | 0.6 | $400.00 | $240.00 |
| 6/26/2025 | CED | Call with M. Cuneo re client's bid for Property. | 0.2 | $400.00 | $80.00 |
| 7/1/2025 | CED | Review inquiries from bidders, email Trustee re same and with proposed response. | 0.2 | $400.00 | $80.00 |
| 7/1/2025 | CED | Email Trustee regarding bidder inquiries. | 0.1 | $400.00 | $40.00 |
| 7/10/2025 | CED | Call with Trustee and Mr. Smerage regarding settlement potential and planning next steps (.4); email to Mr. Smerage confirming deadline extension and joint motion (.1). | 0.5 | $400.00 | $200.00 |
| 7/16/2025 | CED | Prepare for call with Town and proposed Buyer and call to Trustee in advance to discuss issues. | 0.4 | $400.00 | $160.00 |
| 7/16/2025 | CED | Call with Potential Buyer, Atty Smerage and Trustee regarding sale issues and next steps (.4) summarize notes (.1). | 0.5 | $400.00 | $200.00 |
| 7/17/2025 | CED | Attention to bidder inquiry; email to Trustee regarding same. | 0.2 | $400.00 | $80.00 |
| 7/22/2025 | CED | Drafting PSA with BSAPSS. | 1.9 | $400.00 | $760.00 |
| 7/22/2025 | CED | Drafting Multiparty Settlement agreement. | 1.5 | $400.00 | $600.00 |
| 7/23/2025 | CED | Drafting, revising Global Settlement Agreement re sale of property and distribution of proceeds. | 1.5 | $400.00 | $600.00 |
| 7/23/2025 | CED | Continued Drafting Global Settlement Agreement, revise and forward draft to Trustee for review. | 2.1 | $400.00 | $840.00 |
| 7/23/2025 | CED | Continued Drafting PSA, and forward to Trustee for review. | 0.2 | $400.00 | $80.00 |
| 7/23/2025 | CED | Review Email from Buyers counsel regarding call with Town and respond. | 0.1 | $400.00 | $40.00 |
| 7/28/2025 | CED | Call with Trustee regarding revisions to draft Settlement Agreement and revisions to PSA. | 0.3 | $400.00 | $120.00 |
| 7/28/2025 | CED | Revise draft PSA per discussions with Trustee. | 0.8 | $400.00 | $320.00 |
| 7/28/2025 | CED | Review Draft Settlement Agreement per discussions with Trustee. | 0.8 | $400.00 | $320.00 |
| 7/28/2025 | CED | Redline draft documents for Trustee review and forward same (.2); call with Trustee regarding next steps (.1); finalize draft Settlement Agreement and PSA per discussion with Trustee and emails to Smerage and Nicosia regarding same (.4). | 0.7 | $400.00 | $280.00 |
| | | **TOTAL** | **53.5** | | **$18,447.50** |

**EXHIBIT L**

**EXPENSE SUMMARY***

| **Cost Description** | **Amount** |
|---|---:|
| | |
| Delaware Corporate Records Fee | $328.00 |
| Adversary Proceeding Filing Fee | $350.00 |
| Postage Charges | $331.45 |
| Printing/Copy Charges | $207.99 |
| TOTAL | $1,217.44 |

*See Itemization of Expenses Attached

**In Re Westborough SPE LLC** **EXHIBIT L**
**Case No. 23-40709-CJP**

| Date | Description of Expense | Cost |
|---|---|---|
| 8/16/2024 | Postage COS.com | $14.49 |
| 8/16/2024 | Printing Charge by COS.com | $7.14 |
| 8/20/2024 | Postage COS.com - Mtn to Continue Hearing | $14.49 |
| 8/20/2024 | Printing Costs COS.com Mtn to Continue Hearing | $7.14 |
| 8/30/2024 | Postage Charges - COS.com | $14.49 |
| 8/30/2024 | Printing charges by COS.com. | $14.28 |
| 11/8/2024 | Postage | $6.86 |
| 12/3/2024 | Postage of Motion re: CTA | $2.92 |
| 12/5/2024 | Postage - Third party expense COS.com | $2.76 |
| 12/5/2024 | Printing - Third party expense COS.com | $3.50 |
| 12/10/2024 | Del Corp Records for Babcock and Brown Admin Services Inc. | $44.00 |
| 12/10/2024 | Del Corp Records for Babcock and Brown Parallell. | $246.00 |
| 1/21/2025 | Postage - Third party expense COS.com | $0.97 |
| 1/21/2025 | Printing - Third party expense COS.com | $3.50 |
| 1/28/2025 | Postage - Third party expense COS.com | $0.69 |
| 1/28/2025 | Postage - Third party expense COS.com | $0.69 |
| 1/28/2025 | Printing - Third party expense COS.com | $3.50 |
| 1/30/2025 | Filing fee for Adversary Proceeding. | $350.00 |
| 1/30/2025 | Printing cost for service of Complaint v Town by Third Party Vendor - COS.com. | $22.78 |
| 1/30/2025 | Postage - Service of Complaint v Town - COS.com. | $14.03 |
| 2/7/2025 | Del Corp Records regarding Debtor. | $38.00 |
| 2/24/2025 | Postage cost / COS.com | $1.94 |
| 2/24/2025 | Printing cost / COS.com | $6.08 |
| 2/28/2025 | Postage Akouete Subpoena | $0.69 |
| 2/28/2025 | Postage re Service of Obj to Akouete SJ | $1.94 |
| 2/28/2025 | Printing charges from 3rd party COS.com | $5.70 |
| 2/28/2025 | Printing costs Akouete Subpoena | $3.50 |
| 3/5/2025 | Postage - Third party expense COS.com | $0.69 |
| 3/5/2025 | Postage - Third party expense COS.com | $0.69 |
| 3/5/2025 | Postage - Third party expense COS.com | $0.69 |
| 3/5/2025 | Printing - Third party expense COS.com | $3.50 |
| 3/5/2025 | Printing - Third party expense COS.com | $3.50 |
| 3/5/2025 | Printing - Third party expense COS.com | $3.50 |
| 4/14/2025 | Postage - COS.com charge for service of pleadings. | $1.94 |
| 4/14/2025 | Printing Charge COS.com re multiple pleading served | $6.46 |
| 4/18/2025 | Postage - COS.com cost of Mailing Memorandum soliciting bids for Property | $44.59 |
| 4/18/2025 | Postage - COS.com Printing costs for Memorandum soliciting bids for Property | $175.37 |
| 4/22/2025 | Postage for mailing notice, objection to claim, and order to Denise Edwards | $2.04 |
| 4/23/2025 | Postage - COS.com service of Memorandum soliciting bids for Property | $3.43 |
| 4/23/2025 | Printing charge COS.com for Court order served on Ms. Edwards. | $1.38 |
| 4/23/2025 | Printing Charge COS.com re Order re Edwards Claim | $3.50 |
| 4/23/2025 | Printing costs for COS.com re mailing Memorandum soliciting bids for Property. | $13.49 |
| 6/2/2025 | Postage COS.com service of Trustee's SJ Mtn, Memorandum, additional documents. | $20.20 |
| 6/2/2025 | Postage for Service of Affidvits on L Akouete. | $2.50 |
| 6/2/2025 | Printing charge COS.com for service of Affidavits on L Akouete. | $9.88 |
| 6/2/2025 | Printing charge COS.com Trustee's SJ Mtn, Memorandum, additional documents. | $78.66 |
| 6/20/2025 | Postage for Trustee's Obj to Akouete Mtn for SJ | $1.38 |
| 6/20/2025 | Printing COS.coom for Trustee's Obj to Akouete Mtn for SJ | $3.50 |
| 6/23/2025 | Postage Edwards Discovery. | $0.97 |
| 6/23/2025 | Printing cost for service of Edwards Discovery. | $3.50 |
| | **TOTAL** | **$1,217.44** |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: Westborough SPE LLC, Debtor | Chapter 7<br>23-40709-CJP |

**ORDER**

**MATTER:**
#868 Emergency Motion filed by Creditor Lolonyon Akouete for Order (1) Authorizing Limited, Expedited Rule 2004 Discovery Regarding Mignonette Investments Limited's IRS "Responsible Party" Information; (2) In the Alternative, Compelling Execution of Limited IRS Form 8821 to Permit Retrieval of IRS 147C/Related Records; (3) Clarifying that Such Limited Discovery Does Not Violate the Automatic Stay; and (4) Shortening Notice/Setting Expedited Hearing.

DENIED. THE MOVANT SEEKS AUTHORITY TO CONDUCT RULE 2004 DISCOVERY TO ASSIST IN THE ADMINISTRATION OF THE ESTATE. ADMINISTRATION OF THE ESTATE IS IN THE DOMAIN OF THE TRUSTEE. THE MOVEMENT FAILED TO IDENTIFY WHY THE INFORMATION SOUGHT IS NECESSARY FOR THE ADMINISTRATION OF THE ESTATE AT THIS JUNCTURE. WHILE THE MOVANT MAKES REFERENCE TO SERVICE REQUIREMENTS THAT HE WILL FACE IN OCTOBER, HE DOES NOT EXPLAIN WHAT THOSE ARE OR HOW THEY RELATE TO ADMINISTRATION OF THE ESTATE.

Dated: 09/23/2025

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: Westborough SPE LLC | | Chapter 7 |
| Debtor | | 23-40709-CJP |

**ORDER**

**MATTERS:**
#940 Emergency Supplemental Motion to Compel Complete Identification of Transaction Participants and Production of Records without Delaying Summary Judgment filed by Creditor Lolonyon Akouete;
#956 Opposition of Goulston & Storrs PC to Emergency Supplemental Motion to Compel (Docket No. 940) and Cross-Motion for an Order Prohibiting Mr. Akouete from Serving Additional Subpoenas, Filing Additional Motions, or Filing Claims Directed at Goulston & Storrs PC Without First Obtaining a Court Order; and
#958 Emergency Motion For Expedited Determination of Discovery Issue (Dkt. No. 940) and For Relief in Adversary Proceeding No. 25-04027-CJP filed by Creditor Lolonyon Akouete.

THE "EMERGENCY SUPPLEMENTAL MOTION TO COMPEL COMPLETE IDENTIFICATION OF TRANSACTION PARTICIPANTS AND PRODUCTION OF RECORDS WITHOUT DELAYING SUMMARY JUDGMENT" [ECF NO. 940] (THE "MOTION TO COMPEL") AND THE "EMERGENCY MOTION FOR EXPEDITED DETERMINATION OF DISCOVERY ISSUE (DKT. NO. 940) AND FOR RELATED RELIEF IN ADVERSARY PROCEEDING NO. 25-04027-CJP" [ECF NO. 958] (THE "MOTION FOR EXPEDITED DETERMINATION AND OTHER RELIEF," TOGETHER WITH THE MOTION TO COMPEL, THE "MOTIONS") OF LOLOYON AKOUETE AND THE "OPPOSITION OF GOULSTON & STORRS PC TO EMERGENCY SUPPLEMENTAL MOTION TO COMPEL (DOCKET NO. 940) AND CROSS-MOTION FOR AN ORDER PROHIBITING MR. AKOUETE FROM SERVING ADDITIONAL SUBPOENAS, FILING ADDITIONAL MOTIONS, OR FILING CLAIMS DIRECTED AT GOULSTON & STORRS PC WITHOUT FIRST OBTAINING A COURT ORDER" [ECF NO. 956] (THE "CROSS-MOTION") OF GOULSTON & STORRS PC ("G&S") ARE DENIED AS FOLLOWS.

THE COURT HAS CONSIDERED THE MOTIONS, THE OPPOSITION AND CROSS-MOTION, THE REPLY OF MR. AKOUETE AT ECF NO. 957, AND THE RESPONSE AND LIMITED OBJECTION OF THE CHAPTER 7 TRUSTEE AT ECF NO. 959, TOGETHER WITH THE ENTIRE RECORD IN THIS CASE. AS HAS BEEN STATED IN RELATION TO PAST MOTIONS, ANY POTENTIALLY RELEVANT INFORMATION POSSESSED BY G&S RELATES TO A REPRESENTATION BY THAT FIRM THAT ENDED IN 1998. LIMITED DISCOVERY WAS PERMITTED, AND G&S PROVIDED AN AFFIDAVIT BY G&S PURSUANT TO AN ORDER OF THIS COURT. MR. AKOUETE ASSERTS THAT CORRESPONDENCE OBTAINED FROM

THIRD PARTIES INDICATES THAT G&S COMMUNICATED WITH PERSONS IN 1997 AND 1998 REGARDING THE FORMATION OF THE DEBTOR THAT WERE NOT IDENTIFIED IN THE G&S AFFIDAVIT. MR. AKOUETE DOES NOT LINK THE REQUESTED ADDITIONAL DISCOVERY TO ANY PENDING ADVERSARY PROCEEDING OR CONTESTED MATTER. HE STATES THAT "HE SEEKS ONLY A FAIR OPPORTUNITY TO OBTAIN FACTUAL INFORMATION NECESSARY FOR SERVICE AND ADJUDICATION." ECF NO. 958. HE REFERENCES A NEED TO SERVE MIGNONETTE AND ADVANCE "ADVERSARY CLAIMS." MOTIONS FOR SUMMARY JUDGMENT ARE PENDING AND THE SUMMARY JUDGMENT RECORD IS CLOSED WITH RESPECT TO THE OBJECTION TO MR. AKOUETE'S CLAIM. AT THIS JUNCTURE, THE COURT WILL NOT RE-OPEN DISCOVERY AND, WEIGHING THE POTENTIAL RELEVANCE OF INFORMATION FROM 1997 AND 1998 AGAINST THE ADDITIONAL BURDEN ON A NON-PARTY WITNESS AFTER THE DISCOVERY DEADLINE, THE COURT FINDS THAT THE REQUESTED ADDITIONAL DISCOVERY IS DISPROPORTIONAL AND PRECLUDED BY EARLIER ORDERS OF THIS COURT.

IT FURTHER APPEARS THAT MR. AKOUETE IS ATTEMPTING TO CONDUCT ADDITIONAL DISCOVERY IN AID OF HIS ATTEMPT TO SERVE MIGNONETTE IN CONNECTION WITH STATE COURT LITIGATION THAT HE HAS COMMENCED, WHICH IS AN IMPROPER PURPOSE.

IN ITS CROSS-MOTION, G&S REQUESTS AN ORDER FROM THIS COURT RESTRAINING MR. AKOUETE. THAT REQUEST IS DENIED WITHOUT PREJUDICE, BUT MR. AKOUETE MAY NOT CONDUCT ANY DISCOVERY IN RELATION TO THE PENDING CONTESTED MATTER WHERE THE DISCOVERY DEADLINE HAS PASSED. FURTHER, NO THIRD PARTY IS REQUIRED TO RESPOND TO DISCOVERY REQUESTS RELATED TO THIS CASE OR ANY RELATED ADVERSARY PROCEEDING UNTIL FURTHER ORDER OF THIS COURT OR UNLESS IN RELATION TO PENDING ORDERS OF THE COURT PREVIOUSLY ENTERED.

MR. AKOUETE SHALL SERVE NOTICE OF THIS ORDER ON ANY THIRD PARTY WITH WHOM HE COMMUNICATES REGARDING A PREVIOUSLY SERVED DISCOVERY REQUEST.

Dated: 10/31/2025

By the Court,

Christopher J. Panos
United States Bankruptcy Judge