UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**BANKRUPTCY APPEAL**

———————

NO. 26-cv-10037-WGY

———————

LOLONYON AKOUETE, Plaintiff-Appellant,

v.

JONATHAN R. GOLDSMITH, CHAPTER 7 TRUSTEE OF WESTBOROUGH
SPE LLC, FERRIS DEVELOPMENT, TOWN OF WESTBOROUGH, LAX
MEDIA, THE MOBILESTREET TRUST, BOCHASANWASI SHREE AKSHAR
PURUSHOTTAM SWAMINARAYAN SANSTHA – NORTHEAST, A TEXAS
CORPORATION

Defendants-Appellees.

———————

ON APPEAL FROM THE
UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS

(Chapter 7 Case No. 23-40709-CJP)

———————

**APPELLEE'S APPENDIX - Volume 2**

———————

Christine E. Devine, Esq. BBO #566990
Angelina Savoia, Esq. BBO #715690
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone:  508-533-7240
Email:  christine@nicholsondevine.com

### TABLE OF CONTENTS – APPELLEE APPENDIX

| Documents Relevant to Appeal of Sale Order [Bankr. ECF No. 1037] and Settlement Order [Bankr. ECF No. 1038] | Volume 1 Page No. |
|---|---|
| Bankruptcy Court Docket Entries | A-1 |
| Settlement Agreement and Mutual Release [Bankr. ECF No. 966] | A-127 |
| Trustee's Motion For Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019 [Bankr. ECF No. 967] | A-157 |
| Trustee's Motion for Entry of an Order Approving and Authorizing the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and For Related Relief [Bankr. ECF No. 968] | A-173 |
|     -Exhibit A – Purchase and Sale Agreement | A-189 |
| Certificate of Service [Bankr. ECF No. 969] | A-215 |
| Motion For Expedited Hearing and Shortened Notice Period Regarding Sale and Settlement Motions and Statement of Operating Agreement Compliance [Bankr. ECF No. 977] | A-218 |
| Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968] [Bankr. ECF No. 978] | A-228 |
| Order Scheduling Hearing (Re: 977) [Bankr. ECF No. 980] | A-233 |
| Motion to Require Adequate and Constitutional Notice Prior to Approval of Combined Notice of Sale and Settlement [Bankr. ECF No. 987] | A-234 |

i

| | |
|---|---|
| Order (Re: Treatment of No. 987 as Objection) [Bankr. ECF No. 988] | A-297 |
| Notice of (I) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests (II) Deadline for Filing Objections and (III) Hearing Date<br><br>and<br><br>(I) Proposed Settlement Agreement and Mutual Release, (II) Deadline for Filing Objections, and (III) Hearing Date [Bankr. ECF No. 989] | A-298 |
| Certificate of Service (Re: 989, 966, 967, 968, and 978) [Bankr. ECF No. 990] | A-301 |
| Proceeding Memorandum and Order (Re: Approval of Form of Combined Notice) [Bankr. ECF No. 992] | A-313 |
| Proceeding Memorandum and Order (Re: Denial of Bankr. ECF No. 977) [Bankr. ECF No. 996] | A-314 |
| Trustee's Notice of Publication Regarding Proposed Sale of 231 Turnpike Road, Westborough, Massachusetts and Proposed Settlement Agreement [Bankr. ECF No. 1015] | A-315 |
| Supplemental Certificate of Service (Re: 989, 966, 967, 968, and 978) [Bankr. ECF No. 1017] | A-328 |
| Supplemental Certificate of Service (Re: 989, 966, 967, 968, and 978) [Bankr. ECF No. 1018] | A-334 |
| Creditor Lolonyon Akouete's Objection to Trustee's Motion to Approve Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019 [Bankr. ECF No. 1031] | A-336 |

| | |
|---|---|
| Proceeding Memorandum and Order (Re: Approval of Bankr. ECF No. 968) [Bankr. ECF No. 1035] | A-360 |
| Proceeding Memorandum and Order (Re: Approval of Bankr. ECF No. 967) [Bankr. ECF No. 1036] | A-361 |
| Order (I) Authorizing the Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Approving Purchase and Sale Agreement; (III) Authorizing Disbursement of Sale Proceeds Pursuant to Settlement Agreement and Mutual Release; and (IV) Granting Related Relief [Bankr. ECF No. 1037] | A-362 |
| Order Granting Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019, as Supplemented [Bankr. ECF No. 1038] | A-380 |
| Notice of Appeal (Re: Bankr. ECF No. 1037 and Bankr. ECF No. 1038) [Bankr. ECF No. 1050] | A-385 |
| Notice of Filing of Appeal to District Court [Bankr. ECF No. 1053] | A-410 |
| Creditor Lolonyon Akouete's Motion for Partial Stay Pending Appeal Pursuant to Fed. R. Bankr. P. 8007 [Bankr. ECF No. 1055] | A-411 |
| Order (Re: Denial of Bankr. ECF No. 1055) [Bankr. ECF No. 1060] | A-485 |
| Creditor Lolonyon Akouete's Motion for Reconsideration of Order Denying Motion for Partial Stay Pending Appeal [Bankr. ECF No. 1062] | A-486 |
| Order (Re: Denial of Bankr. ECF No. 1063) [Bankr. ECF No. 1063] | A-510 |

| | |
|---|---|
| Notice of Appeal and Statement of Election (Re: Addition of Bankr. ECF No. 1058 to Appeal) [Bankr. ECF No. 1064] | A-511 |
| Order (Re: Clarification of Matters On Appeal at 26-cv-10037-WGY Include Only Bankr. ECF Nos. 1037, 1038, and 1058) [Bankr. ECF No. 1146] | A-515 |
| **Documents Relevant to Appeal of** <br> **Administrative Claim Denial Order [Bankr. ECF No. 1058]** | **Volume 2** |
| Motion for Allowance and Payment of Administrative Expense Claim for Post-Petition Costar Subscription Pursuant to 11 U.S.C. §§ 503(b)(1)(A), 503(b) and the Court's Equitable Powers [Bankr. ECF No. 1023] | A-516 |
| Town of Westborough's Opposition to Lolonyon Akouete's Motion for Allowance and Payment of Costar Subscription Cost [Bankr. ECF No. 1033] | A-538 |
| Trustee's Objection to Akouete's Motion for Administrative Claim [Bankr. ECF No. 1034] | A-543 |
| Order (Re: Denial of Bankr. ECF No. 1023) [Bankr. ECF No. 1058] | A-557 |
| Creditor Lolonyon Akouete's Motion for Reconsideration of Order Denying Administrative Expense Claim [Bankr. ECF No. 1079] | A-558 |
| Order (Re: Denial of Bankr. ECF No. 1079) [Bankr. ECF No. 1081] | A-566 |
| **Transcripts** | |
| November 10, 2025 Hearing (Re: Form of Combined Notice on Proposed Sale and Settlement) | A-567 |
| December 17, 2025 Hearing (Re: Approval of Sale and Settlement) | A-581 |

iv

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

In re:                  )      Chapter 7

                      )      Case No. 23-40709-CJP

WESTBOROUGH SPE LLC,     )

                      )

         Debtor.      )

                      )

### <u>MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM FOR POST-PETITION COSTAR SUBSCRIPTION PURSUANT TO 11 U.S.C. §§ 503(b)(1)(A), 503(b) AND THE COURT'S EQUITABLE POWERS</u>

Plaintiff / Movant Lolonyon Akouete ("Movant"), in his capacity as a creditor and asset-recovery professional whose efforts preserved and maximized the value of the Debtor's primary asset, respectfully moves this Court for entry of an order:

(i) allowing an administrative expense claim in the amount of **$5,028.30** (or such other amount as the Court finds proved) for post-petition CoStar subscription charges incurred by Movant to obtain market data and comparables for the 231 Turnpike Road property; and

(ii) directing the Chapter 7 Trustee to pay that amount forthwith from estate funds (including, if appropriate, the funds held from the California State Controller), with priority under 11 U.S.C. § 507(a)(2).

In support, Movant states as follows:

### I. JURISDICTION AND STATUTORY BASIS

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).
2. The statutory basis for the relief requested includes 11 U.S.C. §§ 503(b)(1)(A), 503(b), 507(a)(2) and 105(a), as well as the Court's inherent equitable powers to prevent unjust enrichment and to recognize extraordinary creditor contributions that preserve the estate.

### II. NARROW SCOPE OF THIS MOTION

3. This motion **does not** seek administrative-expense treatment for (a) Movant's pre-petition retainer paid to Sherin & Lodgen LLP, or (b) any other pre-petition expense.
4. Instead, Movant seeks allowance of a **single, discrete post-petition cost**—his CoStar real-estate data subscription—for the limited period from October 3, 2024 through February 5, 2025, totaling **approximately $5,028.30** (five monthly invoices including tax), as evidenced by the attached invoices (collectively, "CoStar Charges").
5. The Trustee does not dispute that Movant paid these invoices personally, nor that Movant used the CoStar data to challenge the originally proposed undervalued settlement and to generate comparable-sale and valuation evidence for the property at 231 Turnpike Road.

A-516

The only question is legal characterization: whether these post-petition costs qualify as administrative expenses.

## III. FACTUAL BACKGROUND RELEVANT TO THIS MOTION

6.  Movant incorporates by reference the detailed factual background previously set out at paragraphs 64–154 of his pleadings in Adversary Proceeding No. 25-04033-CJP, including:

    a. The 1997 sale-leaseback structure, formation of Westborough SPE LLC, and the role of Babcock & Brown Administrative Services, Inc. as Manager;

    b. The Town's deliberate choice to pursue **tax-title foreclosure** instead of eminent domain despite a 2018 appraisal valuing the property at approximately **$5,500,000 - $6,000,000** and a $6 million appropriation to pay just compensation;

    c. The Town's use of false "unknown owner" affidavits, defective service, and statutory non-compliance with Massachusetts service provisions for withdrawn foreign entities, resulting in a judgment transferring a multi-million-dollar asset for **zero consideration**;

    d. Movant's and Denise Edwards' later discovery and revival of Westborough SPE LLC and their identification of approximately **$1.293 million** in escheated funds traceable to Mignonette/Westborough in the custody of the California State Controller;

    e. The coordinated interference by Peter Blaustein, Dyann Blaine, Town counsel, and others to displace Movant, undermine his management authority, and divert recovery efforts;

    f. The involuntary Chapter 7 filing on August 31, 2023, the Trustee's initial pursuit of a **$2.5 million** sale and Rule 9019 settlement heavily favoring the Town and preferred bidders, and the later emergence of higher valuations and offers, including Ferris's **$3,502,702** "compromise" offer and a subsequent **$5,000,000** offer from Connect United.

7.  Against this backdrop, Movant subscribed to CoStar post-petition to obtain **objective market comparables** and industry data necessary to demonstrate that:

    a. The Town–LAX/Ferris settlement was grossly undervaluing the property;

    b. The estate's only significant hard asset could command a far higher price in an open, properly marketed sale than $2.5 million; and

    c. The Trustee's position that no current appraisal or market testing was needed was untenable in light of readily available market data.

8.  Movant's CoStar subscription generated concrete outputs—comparable sales, market rents, and capitalization benchmarks—that he integrated into emails, objections, and settlement analyses presented to the Trustee, Town counsel, and the Court. Those data points:

    a. Informed Movant's September 5, 2024 email to the Trustee and Town, setting out a reasoned valuation framework and proposing a **$3,502,702** fair price based on after-repair value (ARV), loan-to-value standards, and repair costs;

b. Directly elicited David Ferris's September 6, 2024 email offering to increase his purchase price to **$3,502,702** "in the spirit of compromise" if Movant would cease challenges—an admission that higher value was in fact available;

c. Contributed to the Trustee's subsequent decision to obtain a formal appraisal, which returned a value of **$4,790,000**, undermining the proposed $2.5 million "settlement" and leading to its withdrawal; and

d. Helped validate and support a later **$5,000,000** offer from Connect United, confirming that open-market testing supported a price far exceeding the Town's preferred deal.

9. But for Movant's CoStar-supported efforts, the estate would likely have proceeded under a settlement that treated the property as worth roughly **half** of its appraised and market-tested value. Movant's work thereby preserved millions of dollars in equity that would otherwise have been irretrievably lost.

10. The CoStar Charges are not vague "preparation" costs or generalized litigation fees. They are line-item, post-petition, out-of-pocket expenses paid by Movant to secure professional-grade market data necessary to expose an undervalued sale and force adherence to the Trustee's statutory duty to maximize value.

## IV. LEGAL STANDARD

### A. Section 503(b)(1)(A): Actual, Necessary Costs of Preserving the Estate

11. Section 503(b)(1)(A) requires allowance of "the actual, necessary costs and expenses of preserving the estate" as administrative expenses.

12. Courts routinely hold that an expense is "actual" and "necessary" if:

(a) it arises from a post-petition transaction; and
(b) it confers a direct and demonstrable benefit upon the estate as a whole (not merely upon the claimant).

13. Even where a creditor is not formally retained by the estate, courts have allowed administrative expenses when the creditor's post-petition efforts preserve estate value or prevent waste, especially when the estate acquires the benefit without paying for it.

### B. Section 503(b) and Substantial Contribution in Chapter 7 – Minority View

14. Section 503(b) provides that, after notice and a hearing, "there shall be allowed administrative expenses, including" the enumerated categories that follow. Congress's use of "including" has been interpreted to make the list of nine categories non-exclusive.

15. While § 503(b)(3)(D) expressly refers to "substantial contribution" expenses in cases under **chapter 9 or 11**, a minority of courts have held that, in **extraordinary Chapter 7 circumstances**, similar contributions can be treated as administrative expenses under the general authority of § 503(b) and § 503(b)(1)(A). That line of authority is exemplified by:

a. **In re Connolly North America, LLC, 802 F.3d 810 (6th Cir. 2015)** – where unsecured creditors in a Chapter 7 were allowed administrative-expense reimbursement for successfully litigating the removal of a misfeasant Chapter 7 trustee. The Sixth Circuit held that the "including" language of § 503(b) permits recognition of administrative expenses not expressly listed where creditors provide an extraordinary benefit to the estate.

A-518

b. **In re Javed, 592 B.R. 615 (Bankr. D. Md. 2018)** – recognizing that in "rare" Chapter 7 cases, creditor actions that significantly benefit the estate can justify administrative priority, even though § 503(b)(3)(D) is textually limited to Chapters 9 and 11.

c. **In re Maqsoudi, 566 B.R. 40 (Bankr. C.D. Cal. 2017)**; **In re Maust Transp., Inc., 589 B.R. 887 (Bankr. W.D. Wash. 2018)**; and **In re Thacker, 2020 WL 4000864 (Bankr. N.D. Fla. May 28, 2020)** – each recognizing that Connolly's reasoning allows Chapter 7 courts, in exceptional circumstances, to grant administrative-expense status where the creditor's efforts substitute for or supplement the trustee's duties and confer a clear estate-wide benefit.

16. Although other courts, including **In re Concepts America, Inc., 625 B.R. 881 (Bankr. N.D. Ill. 2021)**, disagree and would limit substantial-contribution claims strictly to Chapters 9 and 11, Movant respectfully submits that this Court should follow the Connolly line where, as here, the facts are extreme and the estate has accepted a substantial benefit from a creditor's work.

17. Moreover, even courts skeptical of substantial-contribution claims in Chapter 7 recognize that § 503(b)(1)(A) remains a flexible tool: if a creditor's post-petition expenditures directly preserve or enhance estate value in situations where the trustee did not act, those "actual, necessary costs of preserving the estate" may be compensated notwithstanding the Chapter 9/11 limitation in § 503(b)(3)(D).

## C. Benefit Must Be Direct and Demonstrable – Movant Exceeds Any Standard

18. Courts distinguish between efforts that "incidentally" benefit the estate and those that provide a **direct, demonstrable benefit**. Under both the stricter Third/Tenth Circuit approach (Lebron, Lister) and the more objective Fifth/Eleventh Circuit approach (DP Partners, Celotex), the focus is on whether the estate actually gained value, not the creditor's motives.

19. Here, Movant's CoStar-supported work did far more than incidentally benefit the estate:

a. It revealed that the proposed $2.5 million settlement grossly undervalued the property;

b. It directly produced a higher purchase offer from Ferris ($3,502,702);

c. It prompted the Trustee to obtain an appraisal confirming a value in the $4.7–$4.9 million range; and

d. It helped clear the way for a $5,000,000 offer, demonstrating that legitimate market testing supported a much higher price.

20. Whatever standard the Court applies—Connolly's flexible one or the more restrictive "transcend self-interest" test—Movant's actions qualify. He did the market-testing work the Trustee refused to do, and the entire creditor body stands to benefit from the multi-million-dollar delta between the original settlement and current value.

## V. APPLICATION OF LAW TO THE COSTAR CHARGES

21. The CoStar Charges satisfy § 503(b)(1)(A):

a. **Post-petition:** All invoices submitted (October 3, 2024; November 5, 2024; December 4, 2024; January 6, 2025; February 5, 2025) are post-petition and are incurred by Movant personally.

A-519

b. **Actual, necessary costs:** CoStar is a professional market-data platform widely used by institutional investors, lenders, and asset managers. In this case, it was the only practical way for Movant, as a pro se creditor, to obtain reliable comparable-sale and valuation data to challenge the Trustee's undervalued settlement.

c. **Preservation and maximization of estate value:** The data directly led to higher offers and an appraisal aligning with Movant's analysis, preserving millions in equity that would otherwise have been lost under a $2.5 million deal.

22. This is not a case of a "stalking horse" bidder seeking compensation for a pre-petition deposit (as in Upstate/Kidron-type situations) or of a creditor incurring general litigation fees. Movant's CoStar Charges are:

a. Limited in amount (approximately $5,028.30);
b. Narrow in scope (five months of subscription, now concluded); and
c. Directly traceable to specific, quantifiable benefits for the estate (higher offers, new appraisal, withdrawal of undervalued settlement).

23. Under Connolly and its progeny, this is precisely the type of "atypical" Chapter 7 case where creditors had to step into the breach left by a Trustee who initially refused to obtain an appraisal or conduct adequate market testing. Movant's CoStar work served as a substitute for the Trustee's own duty to maximize value.
24. Separately, even if the Court declines to label this as "substantial contribution" in the technical § 503(b)(3)(D) sense, the CoStar Charges still qualify as "actual, necessary costs and expenses of preserving the estate" under § 503(b)(1)(A). The Bankruptcy Code does not require that the person who incurs such costs be formally retained by the estate before reimbursement is allowed, particularly where the estate knowingly accepts the benefit.
25. Equity and the policy underlying administrative expenses support allowance. It would be fundamentally unfair, and contrary to the purposes of § 503(b), for the estate to enjoy the benefit of Movant's work in forcing a multi-million-dollar upward correction of value while refusing to reimburse the relatively minor data costs required to achieve that result.

## VI. RELIEF REQUESTED

26. Movant respectfully requests that the Court enter an order:

a. Allowing an administrative expense claim in favor of Movant in the amount of **$5,028.30**, representing the CoStar Charges incurred post-petition;

b. Directing the Chapter 7 Trustee to pay that amount promptly from estate funds, including, if necessary, from the funds currently held that were received from the California State Controller, subject to reservation of all parties' rights regarding the ultimate ownership of those funds; and

c. Granting such other and further relief as the Court deems just and proper.

DATED: December 11, 2025, Respectfully submitted:

By creditor,

A-520



Lolonyon Akouete
800 Red Mills Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

| | |
|---|---|
| **From:** | Jonathan Goldsmith |
| **Sent:** | Friday, August 2, 2024 12:38 PM |
| **To:** | sgordon@gordonfirm.com |
| **Subject:** | Westborough |

Good morning Steve:

I just wanted to get your quick thoughts on an issue regarding this case. As you are aware, Lolo files pleadings and emails me on an almost a daily basis. His emails today focus on my failure to have obtained an appraisal for the real estate. I do believe the grounds proffered in the Motion support the settlement without a need for a current appraisal. I'm wondering, however, if you think it is necessary for me to obtain one to help bolster the settlement.

Jonathan R. Goldsmith, Esq.

GOLDSMITH, KATZ & ARGENIO, P.C.

1350 Main Street, Suite 1505

Springfield, MA 01103

Tel. (413) 747-0700

Fax (413) 781-3780

PLEASE NOTE:  This transmission and any attachments contain confidential or privileged information from Goldsmith, Katz & Argenio, P.C.  This information is intended to be for the use of the addressed individual(s) or entity.  If you are not the intended recipient, be aware that any disclosure, printing, copying, distribution or use of the contents of this information is prohibited.  If you have received this transmission in error, please notify us by telephone or by return email immediately.

| | |
|---|---|
| **From:** | Stephen Gordon  <sgordon@gordonfirm.com> |
| **Sent:** | Friday, August 2, 2024 2:13 PM |
| **To:** | Jonathan Goldsmith |
| **Subject:** | RE: Westborough |

Jon-

Lolo emailed me yesterday to see if N&G received an appraisal (from the Town) in discovery. I have them checking. Appraisal is an issue. This is not a straight up sale. You're settling with the Town and Ferris and (a lesser issue) MobileStreet. You're not just selling a piece of property. Nonetheless, if the property is worth $5 Million or more, maybe you should think about fighting with everyone rather than settling. But if the appraisal were even $3.5 million, best to settle as the additional benefit of settling is clearly worth a million dollars. What is the assessed value? Let me see if N&G has an appraisal. Ferris fought to buy for $2.8 million, so clearly he thought there was value over and above that. But would you be chasing your (the estate's) tail. If Ferris had a valid pre-petition contract to buy for $2.8 Million, and you sell for $5 million, his executory contract rejection damages will be the difference between $2.8 million and the amount above that that you sell the property for. So, Ferris' rejection claim, in a 100% case, consumes all of your sale proceeds above $2.8 million (hence the chasing of the tail). Still, the settlement will fly through if an appraisal comes in anywhere under $3 million. Let's see if N&G has an appraisal. Worth asking Roger if he has one?

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Main: 617-261-0100
Direct: 617-456-1270
Sgordon@gordonfirm.com
www.GordonFirm.com

**From:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>
**Sent:** Friday, August 2, 2024 12:38 PM
**To:** sgordon@gordonfirm.com
**Subject:** Westborough

Good morning Steve:
I just wanted to get your quick thoughts on an issue regarding this case. As you are aware, Lolo files pleadings and emails me on an almost a daily basis. His emails today focus on my failure to have obtained an appraisal for the real estate. I do believe the grounds proffered in the Motion support the settlement without a need for a current appraisal. I'm wondering, however, if you think it is necessary for me to obtain one to help bolster the settlement.
Jonathan R. Goldsmith, Esq.
GOLDSMITH, KATZ & ARGENIO, P.C.

1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780

PLEASE NOTE:  This transmission and any attachments contain confidential or privileged information from Goldsmith, Katz & Argenio, P.C.  This information is intended to be for the use of the addressed individual(s) or entity.  If you are not the intended recipient, be aware that any disclosure, printing, copying, distribution or use of the contents of this information is prohibited.  If you have received this transmission in error, please notify us by telephone or by return email immediately.

2



**Lolonyon Akouete <info@smartinvestorsllc.com>**

## WSPE - Compromise
1 message

**David Ferris** <david@ferrisdevelopment.com>      Fri, Sep 6, 2024 at 1:48 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>, Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>, "Roger L. Smerage" <rsmerage@k-plaw.com>
Cc: "USTPRegion01.WO.ECF@usdoj.gov" <USTPRegion01.WO.ECF@usdoj.gov>, Brian Riley <briley@k-plaw.com>, "Carey, Paul W." <pcarey@mirickoconnell.com>, Stephen Gordon <sgordon@gordonfirm.com>, "Jeffrey T. Blake" <jblake@k-plaw.com>, "Lenard B. Zide" <zide@buttersbrazilian.com>, "Matthew A. Morris" <mmorris@sherin.com>, "Brian R. Charville" <bcharville@ferrisdevelopment.com>

Lolo, Trustee Goldsmith & Mr. Smerage,


In the spirit of compromise, I would be willing to meet your request Lolo and increase my offer to $3,502,702 provided you discontinue all these challenges and unnecessary motions.   The property has been tied up long enough and needs a certain outcome.  If the remaining parties can come to agreement I can formalize a new offer to the Trustee and agree to close in 30 days.


I would like this matter to get closure for all involved.


Thank you,


David M. Ferris

---

**From:** Lolonyon Akouete <info@smartinvestorsllc.com>
**Sent:** Thursday, September 5, 2024 7:47 AM
**To:** Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>; Roger L. Smerage <rsmerage@k-plaw.com>
**Cc:** USTPRegion01.WO.ECF@usdoj.gov; Brian Riley <briley@k-plaw.com>; Carey, Paul W. <pcarey@mirickoconnell.com>; Stephen Gordon <sgordon@gordonfirm.com>; Jeffrey T. Blake <jblake@k-plaw.com>; Denise Edwards <deniseedwards818@yahoo.com>; Scott A. Schlager <sas@natgolaw.com>; Mary Wolohan <trusteedocs1@gkalawfirm.com>; Alvin Nathanson <asn@natgolaw.com>; Jose Centeio <jcc@natgolaw.com>; Lenard B. Zide <zide@buttersbrazilian.com>; Matthew A. Morris <mmorris@sherin.com>; Darin Clagg <Dclagg@gmail.com>; Dyann Blaine <dyann.blaine@gmail.com>; David Ferris <david@ferrisdevelopment.com>; Abromowitz, David M. <dabromowitz@goulstonstorrs.com>; Durga Nagalla <durganagalla@gmail.com>; Allen Hight <reomanagement11@gmail.com>; Peter Blaustein <pblaustein@gmail.com>; Julia C. Royce <JCRoyce@sherin.com>; janscholes2@gmail.com; Brian R. Charville <bcharville@ferrisdevelopment.com>; venkatesh mohanraj <venki.mohanraj@gmail.com>; mark.lichtenstein@akerman.com; samual.miller@akerman.com; Walter Horst <walter.horst@babcockbrown.com>; sharlene.harrison-carera@akerman.com; Ronan, Gary M. <GRonan@goulstonstorrs.com>; EEnglander@ec-attorneys.com; Christine Devine <christine@nicholsondevine.com>

A-525

**Subject:** Request for Agreement on Property Valuation to Expedite Settlement Hearing

Dear Trustee Goldsmith and Town of Westborough,

I hope this email finds you well.

As we approach the scheduled evidentiary hearing on September 17, 2024, regarding the settlement for the property at 231 Turnpike Road, Westborough, I would like to propose an agreement on the property's valuation to streamline the proceedings and save time. I believe resolving this issue in advance will help focus the court's attention on the substantive aspects of the settlement proposal.

During the discovery process, several critical facts came to light that further support the need for a fair valuation:

1. **Jonathan Steinberg, Chief Assessor of the Town of Westborough**, recommended not setting a base price in the RFP, allowing the market to define itself through offers. The offers received from the RFP process ranged from $2,500,000 to $7,942,000.
2. **Lax Media's Proposal and Tax Impact**: The tax assessor estimated that Lax Media's proposal would bring the property's assessed value to $9,329,750, which is similar to the assessed value of $9,264,800 in 2016. Lax Media's estimated repair costs are $3,490,110.
3. **Massachusetts Department of Revenue Assessment Ratio**: According to the Massachusetts Department of Revenue (LA19 Report - Fiscal Year 2024), the assessment ratio for commercial property in the Town of Westborough is 0.91, meaning that the assessed value is approximately 9% below market value. Given this fact, it's clear that the assessed value does not reflect the true market value of the property.
4. **Fair Market Value and Offer Calculation**: Since the town selected Lax Media for other advantageous purposes rather than establishing a fair market value through an appraisal, it would be appropriate to renegotiate the selling price. Based on industry standards, most lenders will not refinance a loan at more than 75% of a property's after-repair value (ARV). Using this formula:

   **$9,329,750 (ARV) x 0.75 (75% of market value) - $3,490,110 (Repairs) = $3,502,702 (Fair Offer)**

   Lax Media's offer, if calculated according to standard market practice, should reflect a fairer price closer to $3,502,702. It is evident that the current offer is significantly undervaluing the property.

Given these facts, I believe it would be appropriate for the town and the trustee to either renegotiate the purchase price with Lax Media or consider returning the property to the debtor for a proper sale. This would ensure a more accurate reflection of the property's market value and protect the rights of creditors.

I would like to propose that we reach an agreement on the valuation before the hearing to expedite the resolution. If both parties can agree, we can file a joint stipulation with the court, focusing the hearing on the settlement terms rather than disputing the property's value.

I appreciate your consideration of this request and look forward to your response.

Best regards,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

A-526



**CoStar**™ 501 S 5th Street
Richmond, VA 23219

| Invoice | Page 1 of 2 |
|---|---|
| Invoice Number | 121316317 |
| Account #/Location ID | 283095531 |
| Invoice Date | 10/03/2024 |
| CoStar Federal Tax ID | 52-2134617 |
| Payment Terms | Net 30 |
| Due Date | 11/02/2024 |
| Service Period | 09/30/2024 to 10/31/2024 |
| | |
| **Invoice Amount** | **USD 1,032.30** |

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

Pay by credit card or checking account online by
registering at **CoStar.BillTrust.com**

Use your personalized **Enrollment Token** below.

## CURRENT INVOICE  See the following page(s) for detail

| | |
|---|---|
| CoStar Suite | USD 955.83 |
| Sub-Total | USD 955.83 |
| Tax | USD 76.47 |
| **Current Invoice Total** | **USD 1,032.30** |

For questions about your bill, please call us at 800-894-4720.
Email: Billing@costar.com
Please ensure that your account is kept current to avoid an interruption
of service.
Office Hours: Monday - Friday 9:00 AM - 8:00 PM EST

---

TEAR HERE    **REMITTANCE DOCUMENT - Please Include With Your Payment**    TEAR HERE

Account #/Location ID: 283095531

**CoStar**™

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

**REMITTANCE INSTRUCTIONS**

**Make EFT and Credit Card payments online:**

| Invoice Number: | 121316317 |
|---|---|
| Invoice Date: | 10/03/2024 |
| Payment Due Date: | 11/02/2024 |
| Current Invoice Amount: | USD 1,032.30 |
| Total Balance: | USD 1,032.30 |
| **Amount Enclosed:** | |

Log on to                      costar.billtrust.com
Use enrollment token         SFW HQF DFB

**Make Checks Payable and Send To:**

COSTAR REALTY INFORMATION, INC.
2563 Collection Center Dr
Chicago, IL 60693

A-527

0000001213163170000103230

| Account #/Location ID | Invoice Date | Invoice Number | Federal Tax ID | Page |
|---|---|---|---|---|
| 283095531 | 10/03/2024 | 121316317 | 52-2134617 | 2 of 2 |

**COSTAR SUITE**

| SITE ADDRESS | SUBMARKET | CONTRACT # | BILLING PERIOD | SUBTOTAL | TAX | AMOUNT |
|---|---|---|---|---|---|---|
| 800 Red Mills Rd, Wallkill, NY, 12589 | | 1192600 | 09/30/2024 to 09/30/2024 | 30.83 | 2.47 | 33.30 |
| 800 Red Mills Rd, Wallkill, NY, 12589 | | 1192600 | 10/01/2024 to 10/31/2024 | 925.00 | 74.00 | 999.00 |
| | | | **CoStar Suite** | **955.83** | **76.47** | **1,032.30** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Current Invoice Total (USD):** | | | | **955.83** | **76.47** | **1,032.30** |

 501 S 5th Street
Richmond, VA 23219

**Invoice**

| | Page 1 of 2 |
|---|---|
| Invoice Number | 121449292 |
| Account #/Location ID | 283095531 |
| Invoice Date | 11/05/2024 |
| CoStar Federal Tax ID | 52-2134617 |
| Payment Terms | Net 30 |
| Due Date | 12/05/2024 |
| Service Period | 11/01/2024 to 11/30/2024 |
| | |
| **Invoice Amount** | **USD 999.00** |

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

Pay by credit card or checking account online by
registering at **CoStar.BillTrust.com**

Use your personalized **Enrollment Token** below.

## CURRENT INVOICE  See the following page(s) for detail

| | |
|---|---|
| CoStar Suite | USD 925.00 |
| Sub-Total | USD 925.00 |
| Tax | USD 74.00 |
| **Current Invoice Total** | **USD 999.00** |

For questions about your bill, please call us at 800-894-4720.
Email: Billing@costar.com
Please ensure that your account is kept current to avoid an interruption of service.
Office Hours: Monday - Friday 9:00 AM - 8:00 PM EST

---

TEAR HERE     **REMITTANCE DOCUMENT - Please Include With Your Payment**     TEAR HERE

Account #/Location ID: 283095531

 LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

| | |
|---|---|
| Invoice Number: | 121449292 |
| Invoice Date: | 11/05/2024 |
| Payment Due Date: | 12/05/2024 |
| Current Invoice Amount: | USD 999.00 |
| Total Balance: | USD 999.00 |
| **Amount Enclosed:** | |

**REMITTANCE INSTRUCTIONS**

**Make EFT and Credit Card payments online:**

Log on to                    costar.billtrust.com
Use enrollment token        SFW HQF DFB

**Make Checks Payable and Send To:**

COSTAR REALTY INFORMATION, INC.
2563 Collection Center Dr
Chicago, IL 60693

A-529
00000001214492920000099900

| Account #/Location ID | Invoice Date | Invoice Number | Federal Tax ID | Page |
|---|---|---|---|---|
| 283095531 | 11/05/2024 | 121449292 | 52-2134617 | 2 of 2 |

**COSTAR SUITE**

| SITE ADDRESS | SUBMARKET | CONTRACT # | BILLING PERIOD | SUBTOTAL | TAX | AMOUNT |
|---|---|---|---|---|---|---|
| 800 Red Mills Rd, Wallkill, NY, 12589 | | 1192600 | 11/01/2024 to 11/30/2024 | 925.00 | 74.00 | 999.00 |
| | | **CoStar Suite** | | **925.00** | **74.00** | **999.00** |
| | Current Invoice Total (USD): | | | **925.00** | **74.00** | **999.00** |

A-530



**CoStar**™
501 S 5th Street
Richmond, VA 23219

| Invoice | Page 1 of 2 |
|---|---|
| Invoice Number | 121557277 |
| Account #/Location ID | 283095531 |
| Invoice Date | 12/04/2024 |
| CoStar Federal Tax ID | 52-2134617 |
| Payment Terms | Net 30 |
| Due Date | 01/03/2025 |
| Service Period | 12/01/2024 to 12/31/2024 |
| | |
| **Invoice Amount** | **USD 999.00** |

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

Pay by credit card or checking account online by
registering at **CoStar.BillTrust.com**

Use your personalized **Enrollment Token** below.

## CURRENT INVOICE See the following page(s) for detail

| | |
|---|---|
| CoStar Suite | USD 925.00 |
| Sub-Total | USD 925.00 |
| Tax | USD 74.00 |
| **Current Invoice Total** | **USD 999.00** |

For questions about your bill, please call us at 800-894-4720.
Email: Billing@costar.com
Please ensure that your account is kept current to avoid an interruption
of service.
Office Hours: Monday - Friday 9:00 AM - 8:00 PM EST

---

TEAR HERE    **REMITTANCE DOCUMENT - Please Include With Your Payment**    TEAR HERE

Account #/Location ID: 283095531

**CoStar**™

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

### REMITTANCE INSTRUCTIONS

**Make EFT and Credit Card payments online:**

| | |
|---|---|
| Invoice Number: | 121557277 |
| Invoice Date: | 12/04/2024 |
| Payment Due Date: | 01/03/2025 |
| Current Invoice Amount: | USD 999.00 |
| Total Balance: | USD 999.00 |
| **Amount Enclosed:** | |

Log on to              costar.billtrust.com
Use enrollment token         SFW HQF DFB

**Make Checks Payable and Send To:**

COSTAR REALTY INFORMATION, INC.
2563 Collection Center Dr
Chicago, IL 60693

A-531
0000000121557277700000099900

| Account #/Location ID | Invoice Date | Invoice Number | Federal Tax ID | Page |
|---|---|---|---|---|
| 283095531 | 12/04/2024 | 121557277 | 52-2134617 | 2 of 2 |

**COSTAR SUITE**

| SITE ADDRESS | SUBMARKET | CONTRACT # | BILLING PERIOD | SUBTOTAL | TAX | AMOUNT |
|---|---|---|---|---|---|---|
| 800 Red Mills Rd, Wallkill, NY,  12589 | | 1192600 | 12/01/2024 to 12/31/2024 | 925.00 | 74.00 | 999.00 |
| | | | **CoStar Suite** | **925.00** | **74.00** | **999.00** |
| | | | **Current Invoice Total (USD):** | **925.00** | **74.00** | **999.00** |

000000012155727700000099900

 501 S 5th Street
Richmond, VA 23219

| Invoice | Page 1 of 2 |
|---|---|
| Invoice Number | 121664546 |
| Account #/Location ID | 283095531 |
| Invoice Date | 01/06/2025 |
| CoStar Federal Tax ID | 52-2134617 |
| Payment Terms | Net 30 |
| Due Date | 02/05/2025 |
| Service Period | 01/01/2025 to 01/31/2025 |
| | |
| **Invoice Amount** | **USD 999.00** |

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

Pay by credit card or checking account online by registering at **CoStar.BillTrust.com**

Use your personalized **Enrollment Token** below.

## CURRENT INVOICE See the following page(s) for detail

| | |
|---|---|
| CoStar Suite | USD 925.00 |
| Sub-Total | USD 925.00 |
| Tax | USD 74.00 |
| **Current Invoice Total** | **USD 999.00** |

For questions about your bill, please call us at 800-894-4720.
Email: Billing@costar.com
Please ensure that your account is kept current to avoid an interruption of service.
Office Hours: Monday - Friday 9:00 AM - 8:00 PM EST

---

TEAR HERE      **REMITTANCE DOCUMENT - Please Include With Your Payment**      TEAR HERE

---

Account #/Location ID: 283095531

 CoStar™      LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

| Invoice Number: | 121664546 |
|---|---|
| Invoice Date: | 01/06/2025 |
| Payment Due Date: | 02/05/2025 |
| Current Invoice Amount: | USD 999.00 |
| Total Balance: | USD 999.00 |
| **Amount Enclosed:** | |

### REMITTANCE INSTRUCTIONS

**Make EFT and Credit Card payments online:**

Log on to                          costar.billtrust.com
Use enrollment token          SFW HQF DFB

**Make Checks Payable and Send To:**

COSTAR REALTY INFORMATION, INC.
2563 Collection Center Dr
Chicago, IL 60693

A-533
000000012166454600000099900

| Account #/Location ID | Invoice Date | Invoice Number | Federal Tax ID | Page |
|---|---|---|---|---|
| 283095531 | 01/06/2025 | 121664546 | 52-2134617 | 2 of 2 |

**COSTAR SUITE**

| SITE ADDRESS | SUBMARKET | CONTRACT # | BILLING PERIOD | SUBTOTAL | TAX | AMOUNT |
|---|---|---|---|---|---|---|
| 800 Red Mills Rd, Wallkill, NY, 12589 | | 1192600 | 01/01/2025 to 01/31/2025 | 925.00 | 74.00 | 999.00 |
| | | | **CoStar Suite** | **925.00** | **74.00** | **999.00** |
| | | **Current Invoice Total (USD):** | | **925.00** | **74.00** | **999.00** |

A-534

00000012166454600000099900



501 S 5th Street
Richmond, VA 23219

| Invoice | Page 1 of 2 |
|---|---|
| Invoice Number | 121765598 |
| Account #/Location ID | 283095531 |
| Invoice Date | 02/05/2025 |
| CoStar Federal Tax ID | 52-2134617 |
| Payment Terms | Net 30 |
| Due Date | 03/07/2025 |
| Service Period | 02/01/2025 to 02/28/2025 |
| | |
| **Invoice Amount** | **USD 999.00** |

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

Pay by credit card or checking account online by registering at **CoStar.BillTrust.com**

Use your personalized **Enrollment Token** below.

## CURRENT INVOICE  See the following page(s) for detail

| | |
|---|---|
| CoStar Suite | USD 925.00 |
| Sub-Total | USD 925.00 |
| Tax | USD 74.00 |
| **Current Invoice Total** | **USD 999.00** |

For questions about your bill, please call us at 800-894-4720.
Email: Billing@costar.com
Please ensure that your account is kept current to avoid an interruption of service.
Office Hours: Monday - Friday 9:00 AM - 8:00 PM EST

---

TEAR HERE     **REMITTANCE DOCUMENT - Please Include With Your Payment**     TEAR HERE

Account #/Location ID: 283095531

LOLONYON AKOUETE
SMART INVESTORS LLC
800 RED MILLS RD
WALLKILL, NY 12589

| | |
|---|---|
| Invoice Number: | 121765598 |
| Invoice Date: | 02/05/2025 |
| Payment Due Date: | 03/07/2025 |
| Current Invoice Amount: | USD 999.00 |
| Total Balance: | USD 999.00 |
| **Amount Enclosed:** | |

### REMITTANCE INSTRUCTIONS

**Make EFT and Credit Card payments online:**

Log on to            costar.billtrust.com
Use enrollment token        SFW HQF DFB

**Make Checks Payable and Send To:**

COSTAR REALTY INFORMATION, INC.
2563 Collection Center Dr
Chicago, IL 60693

A-535
00000012176559800000099900

| Account #/Location ID | Invoice Date | Invoice Number | Federal Tax ID | Page |
|---|---|---|---|---|
| 283095531 | 02/05/2025 | 121765598 | 52-2134617 | 2 of 2 |

**COSTAR SUITE**

| SITE ADDRESS | SUBMARKET | CONTRACT # | BILLING PERIOD | SUBTOTAL | TAX | AMOUNT |
|---|---|---|---|---|---|---|
| 800 Red Mills Rd, Wallkill, NY,  12589 | | 1192600 | 02/01/2025 to 02/28/2025 | 925.00 | 74.00 | 999.00 |
| | | | **CoStar Suite** | **925.00** | **74.00** | **999.00** |

| | | | | | | |
|---|---|---|---|---|---|---|
| | **Current Invoice Total (USD):** | | | **925.00** | **74.00** | **999.00** |

A-536

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C.  101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com

_____
Lolonyon Akouete

A-537

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S OPPOSITION TO LOLONYON AKOUETE'S MOTION FOR ALLOWANCE AND PAYMENT OF COSTAR SUBSCRIPTION COST |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby opposes the Motion for Allowance and Payment of Administrative Expense Claim for Post-Petition CoStar Subscription (Doc. No. 1023) (the "Motion") filed by Lolonyon Akouete. As detailed below, the Motion should be denied because (1) Mr. Akouete's status as creditor has been contested and is subject to pending adjudication by the Court in connection with the Chapter 7 Trustee's motion for summary judgment; (2) the Motion makes erroneous assertions regarding the Town; and (3) Mr. Akouete used the CoStar subscription at issue to improperly market the property located at 231 Turnpike Road (the "Property") for sale, which conduct is the subject of the Town's still-pending Motion for Injunction and Sanctions against Lolonyon Akouete (Doc. No. 370) (the "Motion for Sanctions"). Alternatively, if the Court concludes that Mr. Akouete is entitled to payment of $5,028.30 from the estate for reimbursement of his CoStar expenses, the Court should order that such funds be attached to satisfy any award of attorneys' fees that the Court awards the Town in connection with the Motion for Sanctions.

First, Mr. Akouete's status as a creditor—and thus his entitlement to distribution from the estate—is disputed. Specifically, the Trustee has objected to Mr. Akouete's claim in this

A-538

bankruptcy proceeding and moved for summary judgment on that claim objection.[1]  The Court should not allow Mr. Akouete to obtain any payment from the estate while his status as creditor is subject to dispute.

Second, Mr. Akouete's Motion contains several incorrect statements about or mischaracterizations of the Town.  These include flawed assertions about the Town's pursuit of its remedies under the tax title statute (see Motion at ¶ 6.b-c), unfounded allegations of "coordinated interference" (see Motion at ¶ 6.e), and mischaracterizations of the earlier settlement agreement between the Town, the Trustee, and other interested parties (see Motion at ¶ 7.a).  The Court should not reward Mr. Akouete for these inaccuracies.

Third, Mr. Akouete used the CoStar subscription at issue to engage in improper attempts to market the Property, even though he has no right, title, or interest in the Property itself.  On October 2, 2024, the Town filed the Motion for Sanctions because Mr. Akouete had listed the Property for sale on "LoopNet," a CoStar commercial property listing service.  See Doc. No. 370; see also Declaration of Roger L. Smerage dated Oct. 2, 2024 (Doc. No. 371) ("Smerage Decl.") at Ex. C.  In addition to seeking an injunction against Mr. Akouete's actions, the Town sought an award of sanctions against Mr. Akouete pursuant to the Court's inherent powers, because of the disruption Mr. Akouete's actions caused to the bankruptcy proceedings and the clear fact that Mr. Akouete had no authority to market the Property for sale.  The Town specifically sought an award of attorneys' fees for having to move to enjoin Mr. Akouete's conduct.  On October 10, 2024, the Court entered an order requiring Mr. Akouete to "take down, remove, and, if necessary, request that CoStar group take down and remove, LoopNet listing ID 33330926 concerning" the Property and to "cease and desist from … taking other actions related to the sale of the Property, other than

---

[1] Certain arguments that the Trustee made in objecting to Mr. Akouete's claim overlap with arguments that the Town made in its Motion for Relief from Automatic Stay (Doc. No. 20) and Motion to Dismiss Bankruptcy (Doc. No. 69).

by directing potential interested parties to the Town or the Trustee in strict compliance" with the provisions of the order.  See Doc. No. 392.  The Court also, in the same order, deferred action on the Town's requests for sanctions.  See id.[2]

Although Mr. Akouete contends that he seeks reimbursement for CoStar subscription costs beginning on October 3, 2024—the day after the Town filed the Motion for Sanctions—the connection with the conduct that triggered the Town's Motion for Sanctions is undeniable.  Mr. Akouete's offending listing was active between October 3 and October 10, 2024, when the Court ordered him to take the listing down.  Additionally, Mr. Akouete asserts that one of the purported "concrete outputs" that resulted from his CoStar subscription was a September 5, 2024 email.  See Motion at ¶ 8.a.  This email was sent a month before the start of the period for which Mr. Akouete seeks reimbursement and during the time when he was attempting to "secur[e] a new buyer for" the Property despite having no right to sell it.  See Smerage Decl. at Ex. B.[3]  Mr. Akouete should not be rewarded for his use of a CoStar subscription to interfere with the disposition of the Property in which he held no right, title, or interest.  If, however, the Court concludes that Mr. Akouete is entitled to reimbursement from the estate for his CoStar subscription costs, the Court should attach any such amounts while the Town's request for sanctions remains pending, to ensure that Mr. Akouete can pay any attorneys' fee award that the Court may enter in favor of the Town.

For the foregoing reasons, the Court should deny Mr. Akouete's Motion or, alternatively, attach any funds that the Court orders be paid to Mr. Akouete to ensure Mr. Akouete's ability to satisfy an attorneys' fee award in connection with the Motion for Sanctions.

---

[2] On February 5, 2025, the Court entered an order further deferring consideration of the Town's request for sanctions. See Doc. No. 532.

[3] Mr. Akouete also contends that his CoStar subscription contributed to the Trustee's withdrawal of the earlier settlement agreement.  See Motion at ¶¶ 5, 8.c.  The Trustee moved to withdraw the earlier settlement on November 8, 2024 (Doc. No. 413), several months before the end of the period for which Mr. Akouete seeks reimbursement (February 5, 2025).

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
  Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Date:  December 18, 2025

1010480/WBOR/0049

## CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Opposition to be served through the Court's CM/ECF system to the following counsel of record

or by U.S. mail to the following unregistered parties:

| | | |
|---|---|---|
| Stephen F. Gordon<br>The Gordon Law Firm LLP<br>River Place<br>57 River Street<br>Wellesley, MA 02481<br>sgordon@gordonfirm.com<br>*Attorney for Petitioning Creditors* | Jonathan R. Goldsmith<br>Goldsmith, Katz & Argenio P.C.<br>1350 Main Street, 15th Floor<br>Springfield, MA 01103<br>trusteedocs1@gkalawfirm.com<br>*Attorney for Chapter 7 Trustee* | Christine E. Devine<br>Nicholson Devine LLC<br>PO Box 7<br>Medway, MA 02505<br>christine@nicholsondevine.com<br>*Attorney for Chapter 7 Trustee* |
| Lolonyon Akouete<br>800 Red Milles Rd.<br>Wallkill, NY 12589<br>info@smartinvestorsllc.com<br>*Creditor* | Lenard Benson Zide<br>Butters Brazilian LLP<br>420 Boylston Street, 4th Floor<br>Boston, MA 02116<br>zide@buttersbrazilian.com<br>*Attorney for Creditor The MobileStreet Trust* | Paul W. Carey<br>Mirick, O'Connell, DeMallie & Lougee, LLP<br>100 Front Street<br>Worcester, MA 01608-1477<br>pcarey@mirickoconnell.com<br>*Attorney for Creditor Ferris Development Group, LLC* |
| Denise Edwards<br>137 North 25th Street<br>Wyandanch, NY 11798<br>deniseedwards818@yahoo.com<br>*Creditor* | Jonathan La Liberte<br>Sherin and Lodgen LLP<br>101 Federal Street, 30th Floor<br>Boston, MA 02110<br>jclaliberte@sherin.com<br>*Attorney for Creditor Sherin and Lodgen LLP* | Darin Clagg<br>24 Kobbs Korner Rd.<br>Pine Bush, NY 12566<br>Creditor (by U.S. Mail) |

Dated: December 18, 2025

_____
Roger L. Smerage

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **In re:**<br><br>**WESTBOROUGH SPE LLC,**<br><br>  **Debtor.** | **Chapter 7**<br>**Case No. 23-40709-CJP** |

**TRUSTEE'S OBJECTION TO AKOUETE'S MOTION FOR**
**ADMINISTRATIVE CLAIM**

Jonathan R. Goldsmith (the "Trustee"), Chapter 7 Trustee of the bankruptcy estate of

Westborough SPE LLC (the "Debtor"), hereby respectfully objects to the document entitled

*Motion for Allowance and Payment of Administrative Expense Claim for Post-Petition CoStar*

*Subscription Pursuant to 11 U.S.C. §§ 503(b)(1)(A), 503(b) and the Court's Equitable Powers*

[Dkt. No. 1023] (the "Motion for Admin Claim") filed by Lolonyon Akouete ("Akouete").  The

Trustee objects to the Motion for Admin Claim as set forth herein.

In support of this Objection, the Trustee states as follows:

**BACKGROUND**

1.      On August 31, 2023 (the "Petition Date"), certain creditors of the Debtor filed an

involuntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-

1532 (the "Bankruptcy Code").  On October 11, 2023, this Court entered an order for relief in

this case [Dkt. No. 26] (the "Order for Relief") and this case remains a Chapter 7 case at this

time.  On October 12, 2023, the United States Trustee appointed Jonathan R. Goldsmith as

Chapter 7 trustee [Dkt. No. 29] and the Trustee remains as Trustee at this time.

2.      On December 11, 2025, Akouete filed the Motion for Admin Claim, seeking,

among other things, payment of $5,028.30 as an administrative expense claim for a CoStar

A-543

subscription that Akouete states that he incurred during the pendency of this case. On December 11, 2025, this Court entered an *Order* [Dkt. No. 1027] setting a deadline of December 18, 2025, for objections to the Motion for Admin Claim.

3. The Motion for Admin Claim as well as the exhibits attached thereto indicate that Akouete and his company (Smart Investors LLC) incurred charges and seek reimbursement for a CoStar subscription for listing the real property located 231 Turnpike Road, Westborough, Massachusetts (the "Property") for sale on CoStar's website known as LoopNet. Akouete states that he seeks payment of subscription charges "for the limited period from October 3, 2024 through February 5, 2025, totaling approximately $5,028.30" (the "Subscription Charges") (s*ee* Motion for Admin Claim, ¶4). Akouete further states that the purpose of the CoStar subscription was to "challenge the originally proposed undervalued settlement and to generate comparable-sale and valuation evidence" regarding the Property (s*ee* Motion for Admin Claim, ¶5).

4. During the period covered by the Subscription Charges, (i) the Town of Westborough held title to the Property, (ii) the Estate had asserted claims against the Property including potential avoidance claims, and (iii) the Town, the Estate, and other interested parties had proposed a settlement structure to resolve all issues and allow for the sale of the Property by the Trustee.

5. Akouete asserts in the Motion for Admin Claim that the Subscription Charges were necessary for "market testing" and to obtain "objective market comparables" for the Property (s*ee* Motion for Admin Claim, ¶7) and, presumably, that the Estate derived a benefit from Akouete's "market testing".

6. In reality, however, <u>prior to</u> October 3, 2024 (*i.e.*, the date Akouete states that the Subscription Charges commenced), the Trustee had already sought approval of this Court to

2

A-544

engage an appraiser [Dkt. No. 354, filed September 23, 2024] to determine the value of the Property.  Further, this Court had already approved the engagement of the appraiser [Dkt. No. 356, entered September 23, 2024].  To be clear, prior to the date that the Subscription Charges commenced, the Trustee already had a process in place to determine the value of the Property and Akouete's "market testing" and search for "market comparables" was not necessary, provided no benefit to the Estate, and was (at best) duplicative of the Trustee's efforts.  If the payment Akouete seeks were to be allowed, it would be duplicative of the expense incurred by the Estate to engage the appraiser.

7.      In addition, after this Court became aware that Akouete had listed the Property for sale despite having no authority to do so, this Court entered the *Order Directed to Lolonyon Akouete* [Dkt. No. 392, entered October 10, 2024] (the "Order to Akouete") which stated in relevant part that "Mr. Akouete has taken unauthorized actions that improperly imply he has certain authority to market and receive 'offers' for the Property . . . with respect to which the estate has claims . . . ."  The Order to Akouete also ordered Akouete to "take down, remove, and if necessary, request CoStar Group take down and remove, LoopNet listing ID 3330926 concerning the real property located at 231 Turnpike Road, Westborough, Massachusetts" within 48 hours of the entry of the Order to Akouete.  *See* Order to Akouete, attached hereto as **Exhibit A**.

## LEGAL STANDARD

8.      Administrative expenses are governed by Bankruptcy Code § 503(b).  In relevant part, Bankruptcy Code § 503(b)(1)(A) provides that there shall be an allowed administrative expense claim for the "actual and necessary costs and expenses of preserving the estate..."  Bankruptcy Code § 503(b)(3)(D) provides that an allowed claim can also be the "actual,

3

A-545

necessary expenses" (other than those of professionals) incurred by a creditor "in making a substantial contribution in a case under chapter 9 or 11 of this title".

9.    "[P]rovisions governing requests for administrative expense awards are to be construed narrowly in order to honor 'the traditional presumption favoring ratable distribution among all holders of unsecured claims.'" *Xifaras v. Morad (In re Morad)*, 328 B.R. 264, 269 (B.A.P. 1st Cir. 2005) (quoting *Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992)) (internal citations omitted).  First, an allowable administrative claim under § 503(b) must be "actual and necessary" for preservation of the bankruptcy estate.  *See 11 U.S.C. § 503(b)*; *see also In re Streck*, No. 03-11241-WCH, 2007 Bankr. LEXIS 1517, at *11-12 (Bankr. D. Mass. Apr. 26, 2007) (Where a creditor did not demonstrate why his services were "necessary to the estate to the estate in addition to those of the Chapter 7 Trustee" and where the chapter 7 trustee was "already investigating the Debtor's affairs and preparing his own adversary proceeding to recover assets for the estate," this Court held that it could not find that the creditor's "claimed services provided any necessary benefit to the estate").  Second, 11 U.S.C. § 503(b)(3)(D) applies by its terms to Chapters 9 and 11 cases and this case is a Chapter 7 case. Even if this Court determines that 11 U.S.C. § 503(b)(3)(D) may apply to administrative claims in a chapter 7 case, the claim must still be for the "actual, necessary expenses" of making "substantial contributions" in the case.  *See* 11 U.S.C. § 503(b)(3)(D); *see also In re Kile,* Nos. 4-04-bk-02237-JMM, 4-05-ap-00009-JMM, 2002 Bankr. LEXIS 2260, at *13-14 (Bankr. D. Ariz. May 11, 2006) ("Merely claiming an entitlement to proceeds does not rise to the level of a "substantial contribution" to an estate. Pursuing one's own interests is neither substantial nor a contribution to an estate which is deserving of compensation."); *see also In re Cuisinarts, Inc.*, 115 B.R. 744, 750 (Bankr. D. Conn. 1990) (quoting *In re Lister,* 846 F.2d 55, 57 (10th Cir.

4

A-546

1988)) ("Case law to date is clear that 'efforts undertaken by a creditor solely to further his own self-interest . . . . will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate.'").

## **ARGUMENT**

### A.      The Subscription Charges Were Not "Necessary" As Required By Both § 503(b)(1)(A) and § 503(b)(3)(D) of the Bankruptcy Code.

10.      By their terms, both § 503(b)(1)(A) and § 503(b)(3)(D) of the Bankruptcy Code require that the expenses at issue be "necessary."  The Subscription Charges were not "necessary" to determine the value of the Property because as of the commencement of the Subscription Charges the Trustee had already employed an appraiser to determine the value the Property.  The Trustee ultimately relied on the valuation provided by the appraiser to determine the best course of action for the Estate regarding the Property.  Simply put, Akouete's actions to "test the market" and identify "comparables" were not "necessary costs and expenses of preserving the estate" and, instead, were duplicative of the Trustee's efforts.  As a result, Akouete cannot meet the standard under either Bankruptcy Code § 503(b)(1)(A) or § 503(b)(3)(D) that the expenses sought were "necessary".

### B.      Akouete's Actions Risked Damaging the Estate, Rather Than "Preserving the Estate"

11.      Listing the Property for sale, when the Property was not for sale, did not have the effect of "preserving the estate" as required by Bankruptcy Code § 503(b)(1)(A).  To the contrary, where (i) the Property was not for sale, (ii) the Town (as title owner of the Property) had not authorized Akouete to list the Property for sale, and (iii) the Estate (holding claims to recovery the Property) had not authorized Akouete to list the Property for sale, Akouete actually risked damaging the Estate by confusing potential interested parties.  Confusion regarding

5

A-547

ownership of the Property or regarding an unauthorized listing (as Akouete's listing on Loopnet was) could have potentially chilled bidders for any eventual sale to which the Town and the Trustee might eventually agree.  That confusion was detrimental to the Estate and, therefore, incurring the Subscription Charges did not "preserve the estate" as required by Bankruptcy Code § 503(b)(1)(A), those actions potentially damaged the Estate.[1]

C.     **The Subscription Charges Fail to Qualify as Administrative Expense Where the Court Ordered Akouete to Remove the Loopnet Listing.**

12.     As noted above, when this Court learned of the Loopnet listing, the Court held a hearing on October 9, 2024, and ordered Akouete to "not take actions that misrepresent or imply that he has authority to sell or solicit offers for the real property…".  *See* Proceeding Memorandum and Order; Dkt. No. 385.  The next day, the Court entered the Order to Akouete and explicitly ordered Akouete to remove the LoopNet listing within 48 hours.

13.     Akouete should not be awarded reimbursement as an administrative expense for Subscription Charges incurred for taking an action which resulted in a Court Order directing Akouete to cease and desist from taking those actions.  Further, Akouete provides no explanation or justification for any charges incurred after October 10, 2024 (*i.e.*, the date on which the Court directed Akouete to stop running the LoopNet ad).

D.     **If an Administrative Claim is Allowed, Payment Should be Reduced by Any Damages Awarded to the Trustee in the Pending Adversary Proceeding.**

14.     If this Court finds that Akouete's request for payment of the Subscription Charges should be allowed as an administrative claim in any amount, the Trustee requests that any payment to Akouete on account of an allowed claim be offset by any damages this Court may award to the Trustee in the pending Adversary Proceeding, AP No. 25-04027.

---

[1] As evidenced by the entire record of this case, Akouete has repeatedly tried to wrest control of Estate assets from the Trustee. Listing the Property with no authority to do so was but one example of those efforts.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that this

Court enter an Order (i) denying the Motion for Admin Claim [Dkt. No. 1023] and (ii) granting

such other and further relief as is just.

<div style="margin-left: 50%;">

Respectfully submitted,

**Jonathan R. Goldsmith,**
**Chapter 7 Trustee**

by his counsel,

    /s/ Angelina M. Savoia, Esq.
Christine E. Devine, BBO #566990
Angelina M. Savoia, BBO #715690
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 857-600-0508

</div>

Dated: December 18, 2025                 Email:  angelina@nicholsondevine.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

---

In re:

**WESTBOROUGH SPE LLC,**

       **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

---

### CERTIFICATE OF SERVICE

The undersigned, Angelina M. Savoia, hereby certifies that on this day I caused a copy of the following document to be served on all parties listed on the attached Service List in the manner noted thereon:

- **TRUSTEE'S OBJECTION TO AKOUETE'S MOTION FOR ADMINISTRATIVE CLAIM.**

Dated: December 18, 2025

/s/ Angelina M. Savoia, Esq.
Angelina M. Savoia, BBO #715690
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 857-600-0508
Email: angelina@nicholsondevine.com

8

A-550

Electronic Mail Notice List

The following list of parties and attorneys have received electronic notice via the Court's
CM/ECF noticing process:

- **Jeffrey T Blake**    jblake@k-plaw.com
- **Paul W. Carey**    pcarey@mircklaw.com, bankrupt@mirickoconnell.com
- **Luis R. Casas**    luis.casasmeyer@akerman.com
- **Jose C. Centeio**    jc@jcfirm.com
- **Brian Charville**    bcharville@ferrisdevelopment.com
- **Christine E. Devine**    christine@nicholsondevine.com,
  devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;christine_
  492@ecf.courtdrive.com
- **Jonathan R. Goldsmith**    bankrdocs1@gkalawfirm.com,
  bankrdocs@gkalawfirm.com;intern@gkalawfirm.com;Esq..JonathanR.G.B145355@notif
  y.bestcase.com
- **Jonathan R. Goldsmith**    trusteedocs1@gkalawfirm.com,
  mwolohan@gkalawfirm.com;trusteedocs@gkalawfirm.com;intern@gkalawfirm.com;M
  A43@ecfcbis.com
- **Stephen F. Gordon**    sgordon@gordonfirm.com,
  vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- **Richard King**    USTPRegion01.WO.ECF@USDOJ.GOV
- **Brian Lee**    blee@nutter.com
- **Samual A. Miller**    samual.miller@akerman.com
- **Brian W. Riley**    briley@k-plaw.com
- **Douglas B. Rosner**    drosner@goulstonstorrs.com
- **Angelina M. Savoia**    angelina@nicholsondevine.com, angelina@ecf.courtdrive.com
- **Roger L. Smerage**    rsmerage@k-plaw.com

Email and/or First Class Mail Service List

The following list of parties and attorneys have been served via as noted:

Lolonyon Akouete                          Via Email
800 Red Mills Rd
Wallkill, NY 12589
info@smartinvestorsllc.com

Denise Edwards                            Via Email
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com

9

A-551

A-552

Mark S. Lichtenstein                          Via Email
Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
mark.lichtenstein@akerman.com


Lenard Benson Zide, Esq.
Butters Brazilian LLP                         Via Email
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com

Jonathan La Liberte                           Via Email
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
jclaliberte@sherin.com

# **EXHIBIT A**

11

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:

WESTBOROUGH SPE LLC

Debtor

Case No. 23-40709-CJP
Chapter 7

### <u>ORDER DIRECTED TO LOLONYON AKOUETE</u>

This matter came before the Court on October 8, 2024, for a telephonic hearing (the "Hearing") on the *Motion for Injunction and Sanctions against Lolonyon Akouete* (ECF No. 370) (the "Motion") filed by the Town of Westborough ("Town") and the response thereto filed by Lolonyon Akouete (ECF No. 372) (the "Response"). Upon consideration of the information set forth in the Motion, the affidavit in support thereof, the Response, the arguments at the Hearing, and the record of this case, for the reasons stated on the record during the Hearing, given Mr. Akouete has taken unauthorized actions that improperly imply he has certain authority to market and receive "offers" for the Property (defined below) with respect to which the estate has claims, the Court exercises its inherent power to manage the administration of this bankruptcy proceeding and HEREBY ORDERS AS FOLLOWS:

1.      The Town's request for sanctions against Mr. Akouete remains pending. The Court will schedule a hearing on potential sanctions against Mr. Akouete for a future date or provide other relief in connection with the Town's request for sanctions and the show cause orders, ECF Nos. 382 and 383, in the Court's discretion.

2.      Mr. Akouete SHALL:

a.      Within 48 hours of the entry of this Order, take down, remove, and, if necessary, request that CoStar Group take down and remove, LoopNet listing ID 33330926

A-554

concerning the real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property");

      b.    Within 48 hours of the entry of this Order, take down and remove any other listing that Mr. Akouete may have made or caused to be made concerning the Property, either individually or through his company Smart Investors LLC, or any agent or employee thereof;

      c.    Refrain from listing the Property for sale on any website, listing service, or medium for selling real property, or otherwise marketing the Property for sale, either individually or through his company Smart Investors LLC, or any agent or employee thereof; and

      d.    Immediately cease and desist from:

      i.    Representing or implying that Mr. Akouete or his company Smart Investors LLC (or any agent or employee thereof) owns, holds title to, or has any right or authority to sell or market the Property;

      ii.    soliciting offers to purchase the Property or taking other actions related to the sale of the Property, other than by directing potential interested parties to counsel to the Town or the Trustee in strict compliance with the following paragraph; and

      iii.    engaging in any communication with third parties, including those third parties with whom Mr. Akouete has already been communicating, regarding the Property, whether the result of Mr. Akouete's prior actions to list the Property for sale or otherwise, unless Mr. Akouete (A) identifies himself as a purported creditor of Westborough SPE LLC in Bankruptcy Case No. 23-40709 rather than an agent of the Debtor and states that he has no authority to sell or market the Property; (B) discloses to said third parties that title to the Property currently is held by the Town exclusively and that any and all claims to the Property are held by the Chapter 7 Trustee on behalf of the Debtor's bankruptcy estate; and (C) informs said third parties that any communications concerning any offers for the sale of the Property, or any offer to

2

purchase the Property, shall be ONLY with Attorney Roger L. Smerage on behalf of the Town and Attorneys Christine Devine and Jonathan Goldsmith on behalf of the Chapter 7 Trustee.

IT IS SO ORDERED.  ANY VIOLATION OF THIS ORDER MAY SUBJECT MR. AKOUETE TO A FINDING OF CONTEMPT.

Dated: October 10, 2024                                             By the Court,

_____

Christopher J. Panos
United States Bankruptcy Judge

3



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

Westborough SPE LLC

Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**

#1023 Motion filed by Creditor Lolonyon Akouete for for Allowance and Payment of Administrative Expense Claim for Post-Petition Costar Subscription Pursuant to 11 U.S.C. Sec. 503(b)(1)(A), 503(b) and the Court's Equitable Powers.

UPON CONSIDERATION OF THE MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM FOR POST-PETITION COSTAR SUBSCRIPTION PURSUANT TO 11 U.S.C. §§ 503(B)(1)(A), 503(B) AND THE COURT'S EQUITABLE POWERS [ECF NO. 1023] (THE "MOTION") AND THE OBJECTIONS THERETO BY THE TOWN OF WESTBOROUGH [ECF NO. 1033] AND THE CHAPTER 7 TRUSTEE [ECF NO. 1034], THE MOTION IS DENIED. SETTING ASIDE THE SUBSTANTIAL ISSUE OF WHETHER A 503(B) CLAIM MAY EVEN BE ASSERTED IN A CHAPTER 7 CASE AND THE WEIGHT OF THE MAJORITY OF DECISIONS DECIDING THAT IN THE NEGATIVE, THE RECORD IN THIS CASE DOES NOT SUPPORT ALLOWANCE OF AN ADMINISTRATIVE CLAIM TO ADVANCE THE LITIGATION POSITIONS OF AKOUETE AS A CREDITOR. THE EXPENSE WAS NOT NECESSARY OR BENEFICIAL TO THE ESTATE. AKOUETE MADE NO EFFORT TO SEEK APPROVAL FROM THE TRUSTEE OR THE COURT TO INCUR CHARGES THAT WOULD RESULT IN AN ADMINISTRATIVE EXPENSE CLAIM.

Dated: 01/05/2026

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge

A-557

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

)
In re:                                              )      Chapter 7
                                                    )      Case No. 23-40709-CJP
WESTBOROUGH SPE LLC,                                )
                                                    )
                        Debtor.                     )
                                                    )

**CREDITOR LOLONYON AKOUETE'S MOTION FOR RECONSIDERATION OF**
**ORDER DENYING ADMINISTRATIVE EXPENSE CLAIM (Dkt. No. 1058)**

**INTRODUCTION**

Creditor Lolonyon Akouete ("Movant"), appearing pro se, respectfully moves for reconsideration of the Order entered January 5, 2026, denying his Motion for Allowance and Payment of Administrative Expense Claim for Post-Petition CoStar Subscription (Dkt. No. 1058), pursuant to Fed. R. Bankr. P. 9023.

Movant files this motion with full awareness of the standard governing reconsideration and the Court's repeated reliance on *In re Wedgestone Financial*, 142 B.R. 7 (Bankr. D. Mass. 1992). This motion is not an attempt to reargue issues previously decided. Rather, it identifies a manifest factual error and presents material information that was not addressed in the Order, which directly undermines a central premise of the Court's ruling.

**GOVERNING STANDARD UNDER *IN RE WEDGESTONE***

Under *Wedgestone*, reconsideration is appropriate where the movant demonstrates that the Court's order rests on:

1. a manifest error of law or fact, or
2. material information that was not previously considered and that could reasonably alter the outcome.

*Wedgestone* expressly prohibits motions that merely restate arguments already made or disagree with the Court's reasoning. It does not bar reconsideration where the Court relied on an incorrect factual premise or where the movant demonstrates that the Court misapprehended the record.

Movant submits that this motion falls squarely within the permitted scope of reconsideration under *Wedgestone*. Movant does not seek reweighing of discretion; he seeks correction of a demonstrable misapprehension of the procedural and factual record.

**THE COURT'S ORDER RESTS ON A MANIFEST ERROR OF FACT**

The Order states:

A-558

"Akouete made no effort to seek approval from the Trustee or the Court to incur charges that would result in an administrative expense claim."

That statement is factually incorrect and contradicted by undisputed documentary evidence.

This is not a matter of interpretation, emphasis, or weight. It is a concrete factual assertion capable of objective verification. Either Movant sought Trustee engagement and approval regarding market testing and valuation expenditures, or he did not. The record demonstrates that he did.

### MATERIAL INFORMATION NOT ADDRESSED IN THE ORDER

Before incurring the CoStar subscription charges, Movant affirmatively sought Trustee action and approval regarding valuation methodology and market testing.

Specifically, on September 10, 2024, Movant sent a detailed written communication to:

- the Chapter 7 Trustee,
- counsel for the Town of Westborough,
- the United States Trustee, and
- multiple estate professionals and interested parties.

In that communication, Movant:

1. Requested that the Trustee refrain from pursuing yet another appraisal, explaining that two appraisals already existed and had failed to resolve valuation disputes;
2. Explained why a third appraisal would not advance the estate's interests, a prediction later confirmed when the third appraisal returned a value identical to the second;
3. Proposed market testing as the superior alternative, including use of professional market-data platforms such as CoStar;
4. Disclosed that he had already gathered market comparables and was prepared to provide them; and
5. Sought Trustee engagement and action, rather than acting unilaterally.

In that communication, Movant was not merely expressing disagreement with valuation strategy. He was proposing that the Trustee adopt market testing using professional market-data tools, and was thereby requesting that the Trustee authorize or assume responsibility for such market-testing costs. The Trustee's complete non-response left Movant with no mechanism to obtain formal approval or direction, despite Movant's explicit request for Trustee engagement on precisely the work later criticized as unauthorized. ***See Exhibit A***.

This communication — and the Trustee's complete non-response — was not addressed in the Order, yet it directly contradicts the Court's finding that Movant made "no effort" to seek approval or involvement.

That omission constitutes material information not previously considered within the meaning of *Wedgestone*.

### THE SEPTEMBER 10, 2024 COMMUNICATION BECAME MATERIAL ONLY BECAUSE OF THE COURT'S ORDER *(NEWLY INSERTED SECTION)*

Movant recognizes that the September 10, 2024 communication pre-dated the filing of the administrative expense motion. However, reconsideration is warranted because the Court's Order introduced a factual premise that rendered this communication newly material.

Movant did not anticipate that the Court would find that he made "no effort" to seek Trustee approval or engagement. Until the Order issued, there was no dispute that Movant had repeatedly communicated with the Trustee regarding valuation methodology and market testing. The Order's statement therefore created, for the first time, a direct factual conflict with the record.

Rule 59(e) permits reconsideration where a court's ruling rests upon a factual assumption that the movant could not reasonably have anticipated would be decisive. In such circumstances, evidence contradicting that assumption is properly presented on reconsideration, even if it existed earlier.

Movant does not seek to relitigate his motion with new arguments. He seeks only to correct a factual premise introduced by the Court that is contradicted by existing record evidence.

To hold otherwise would permit factual misstatements in judicial orders to become insulated from correction solely because the contradictory evidence pre-existed the ruling.

### THE COURT'S OWN ORDERS DIRECTED VALUATION TO BE LITIGATED THROUGH THE EVIDENTIARY HEARING PROCESS

The Court's finding that Movant failed to seek Court approval must also be evaluated in light of the procedural framework the Court itself established.

In its Order dated August 7, 2024 (Dkt. #222), the Court ruled that valuation issues were to be raised in the context of an objection to the Trustee's Motion to Approve Settlement and litigated through the evidentiary hearing process. The Court further stated that, if Movant wished to conduct his own appraisal, he should coordinate access with the Trustee.

Movant complied with that directive. In his Opposition to the Trustee's Settlement Motion (Dkt. #191), Movant devoted an entire section to "Lack of Comprehensive Market Testing," explaining in detail why market testing — not serial appraisal — was necessary to protect estate value.

Thus, Movant followed the procedural path the Court mandated. He did not pursue a separate valuation-expense approval motion because the Court had already instructed that valuation be addressed through evidentiary presentation in the settlement-approval process.

### MOVANT WAS FINANCIALLY UNABLE TO OBTAIN AN APPRAISAL AND REQUESTED TRUSTEE USE OF ESTATE FUNDS

At the time Movant was directed to present valuation evidence, he lacked the financial ability to retain a private appraiser. Movant informed the Trustee that approximately $1.2 million in funds traceable to the Debtor were in the Trustee's control and could be used to fund appropriate valuation or market-testing efforts on behalf of the estate.

The Trustee declined to use those funds for appraisal, broker analysis, or market testing, and did not propose any alternative valuation mechanism. Movant was therefore left with no practical means to comply with the Court's instruction to present valuation evidence other than by obtaining market data himself at personal expense.

Movant did not substitute his judgment for the Trustee's authority. He attempted to trigger Trustee action using estate funds. Only after the Trustee declined to act did Movant incur the CoStar expense personally.

## <u>COSTAR WAS A NECESSARY SUBSTITUTE FOR AN APPRAISAL UNDER THE COURT'S PROCEDURAL FRAMEWORK</u>

The Court later denied appointment of a court-appointed expert under Rule 706 (Dkt. #304), ruling that such relief was unavailable in bankruptcy. The Court had therefore foreclosed:

• court-appointed expert valuation,
• trustee-funded appraisal, and
• independent appraisal by Movant due to lack of funds.

In this procedural context, CoStar was not a discretionary litigation tool. It was the only viable evidentiary mechanism available to Movant to obtain professional-grade, verifiable market comparables and valuation benchmarks.

Thus, the CoStar expense was incurred not outside Court supervision, but within the exact evidentiary framework the Court itself imposed.

## <u>THE "NO EFFORT TO SEEK COURT APPROVAL" FINDING CANNOT BE RECONCILED WITH THIS RECORD</u>

When the Court states that Movant failed to seek Court approval, it overlooks that:

• The Court directed valuation disputes to be litigated through evidentiary hearing;
• The Court denied appointment of a court expert;
• The Court instructed Movant to coordinate appraisal access with the Trustee;
• The Trustee refused to fund valuation or market testing;
• Movant lacked funds to obtain an appraisal; and
• Movant therefore used CoStar to comply with the Court's directive to present valuation evidence.

Under these circumstances, Movant had no procedural mechanism to seek advance Court approval for market-testing expenses without contradicting the Court's own procedural instructions.

Accordingly, the finding that Movant failed to seek Court approval reflects a misapprehension of the procedural record, not a failure by Movant to follow Court authority.

## <u>WHY THIS FACTUAL ERROR WAS MATERIAL TO THE OUTCOME</u>

The Court relied on the asserted absence of notice or approval to conclude that:

• the CoStar expense was not "necessary," and
• the expense did not benefit the estate, but merely advanced Movant's own position.

Because the premise is incorrect, the inference drawn from it is unsound.

In reality:

• Movant sought Trustee engagement first;
• the Trustee declined to act or communicate;
• additional appraisal work proved duplicative and ineffective; and
• market testing — using CoStar — ultimately proved to be the mechanism that exposed undervaluation and preserved estate value.

Had the Court considered that Movant acted within the evidentiary framework imposed by the Court itself, and only after Trustee refusal to fund valuation, the characterization of the CoStar expense as unauthorized and unnecessary could not stand.

Under *Wedgestone*, reconsideration is warranted where a ruling is "premised upon a misunderstanding of the facts." 142 B.R. at 8. That is precisely the situation here.

## **THIS MOTION IS NOT A REPETITION OF PRIOR ARGUMENTS**

Unlike prior motions for reconsideration denied by the Court, this motion does not:

• reassert the same legal theory,
• reweigh the Court's discretionary judgment, or
• merely disagree with the Court's conclusions.

Instead, it identifies a specific factual finding, demonstrates that it is incorrect, explains why that error was material, and shows how the Court's own procedural orders were misapprehended.

Accordingly, denial on the ground that Movant has not presented "additional material information" would not be consistent with the record or with *Wedgestone*'s framework.

## **CONCLUSION**

Because the Order denying Movant's administrative expense claim rests on a manifest factual error and fails to account for material procedural and documentary record evidence demonstrating that Movant acted within the Court-mandated evidentiary framework and sought Trustee engagement and approval, reconsideration is warranted under Fed. R. Bankr. P. 9023 and *In re Wedgestone Financial*.

Movant respectfully requests that the Court vacate its January 5, 2026 Order denying the administrative expense claim, reconsider the Motion under a corrected factual record, and grant such relief as the Court deems just and proper.

DATED: January 11, 2026, Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Mills Rd
Wallkill NY 12589
info@smartinvestorsllc.com
A-562 (443) 447-3276

Exhibit A

 Gmail

**Lolonyon Akouete <info@smartinvestorsllc.com>**

# Request to Reconsider the Need for Appraisal and Focus on Market Testing for 231 Turnpike Rd, Westborough, MA
1 message

**Lolonyon Akouete** <info@smartinvestorsllc.com>                    Tue, Sep 10, 2024 at 1:03 PM
To: Jonathan Goldsmith <jgoldsmith@gkalawfirm.com>, "Roger L. Smerage" <rsmerage@k-plaw.com>
Cc: USTPRegion01.WO.ECF@usdoj.gov, Brian Riley <briley@k-plaw.com>, "Carey, Paul W." <pcarey@mirickoconnell.com>, Stephen Gordon <sgordon@gordonfirm.com>, "Jeffrey T. Blake" <jblake@k-plaw.com>, Denise Edwards <deniseedwards818@yahoo.com>, "Scott A. Schlager" <sas@natgolaw.com>, Mary Wolohan <trusteedocs1@gkalawfirm.com>, Alvin Nathanson <asn@natgolaw.com>, Jose Centeio <jcc@natgolaw.com>, "Lenard B. Zide" <zide@buttersbrazilian.com>, "Matthew A. Morris" <mmorris@sherin.com>, Darin Clagg <Dclagg@gmail.com>, Dyann Blaine <dyann.blaine@gmail.com>, david@ferrisdevelopment.com, "Abromowitz, David M." <dabromowitz@goulstonstorrs.com>, Durga Nagalla <durganagalla@gmail.com>, Allen Hight <reomanagement11@gmail.com>, Peter Blaustein <pblaustein@gmail.com>, "Julia C. Royce" <JCRoyce@sherin.com>, janscholes2@gmail.com, "Brian R. Charville" <bcharville@ferrisdevelopment.com>, venkatesh mohanraj <venki.mohanraj@gmail.com>, mark.lichtenstein@akerman.com, samual.miller@akerman.com, Walter Horst <walter.horst@babcockbrown.com>, sharlene.harrison-carera@akerman.com, "Ronan, Gary M." <GRonan@goulstonstorrs.com>, EEnglander@ec-attorneys.com, Christine Devine <christine@nicholsondevine.com>

Dear Trustee Goldsmith and Town Representatives,

I hope you are all doing well.

As we are waiting on the court's response to your motion to obtain an appraisal for the property at **231 Turnpike Road, Westborough, MA**, I would like to respectfully plead with you to reconsider the need for a new appraisal at this stage. Conducting an additional appraisal at this point is unnecessary and a waste of resources, especially given the availability of strong comparable sales data and the potential for **market testing**.

The **comparable sales approach** remains the best method for determining the market value of the property. I have reviewed the comparable sales data used in the 2018 appraisal and compared it with the data I have gathered. The comps I pulled are equally valid, if not superior, in terms of proximity to the subject property and relevance, as they are also theater properties. Below is a comparison of the comps I pulled, including their sale prices, approximate distances, and driving times from 231 Turnpike Rd:

## My Pulled Comps:

- **135 Brooks St, Worcester, MA** – Sold for **$8,750,000.00** on **7/1/2021**
  Distance: **~11 miles**, Driving time: **~20 minutes**

- **565 Squire Rd, Revere, MA** – Sold for **$49,800,000.00** on **5/18/2021**
  Distance: **~38 miles**, Driving time: **~45 minutes**

- **16 Pine St, Waltham, MA** – Sold for **$4,500,000.00** on **3/8/2023**
  Distance: **~24 miles**, Driving time: **~30 minutes**

- **100 Commerce Way, Seekonk, MA** – Sold for **$9,500,000.00** on **7/17/2024**
  Distance: **~47 miles**, Driving time: **~55 minutes**

- **1655 Boston Rd, Springfield, MA** – Sold for **$4,500,000.00** on **4/19/2023**
  Distance: **~60 miles**, Driving time: **~1 hour**

- **371 Lowell Ave, Haverhill, MA** – Sold for **$4,536,000.00** on **11/8/2021**
  Distance: **~55 miles**, Driving time: **~1 hour**

- **37 Doty St, West Wareham, MA** – Sold for **$5,200,000.00** on **12/7/2021**
  Distance: **~67 miles**, Driving time: **~1 hour 15 minutes**

A-563

- **850 Providence Hwy, Dedham, MA** – Sold for **$4,533,055.00** on **5/28/2021**
  Distance: **~35 miles**, Driving time: **~40 minutes**

- **85 Voluntown Rd, Pawcatuck, CT** – Sold for **$6,000,000.00** on **1/18/2023**
  Distance: **~78 miles**, Driving time: **~1 hour 30 minutes**

---

## 2018 Appraisal Comps:

- **6 Chickering St, Lawrence, MA** – Sold for **$3,000,000.00** on **4/18/2018**
  Distance: **~50 miles**, Driving time: **~55 minutes**

- **141 Winthrop Ave, Lawrence, MA** – Sold for **$2,800,000.00** on **12/20/2016**
  Distance: **~50 miles**, Driving time: **~55 minutes**

- **797 Washington St, Stoughton, MA** – Sold for **$1,450,000.00** on **10/18/2016**
  Distance: **~37 miles**, Driving time: **~45 minutes**

- **330 New Park Ave, Hartford, CT** – Sold for **$6,900,000.00** on **1/31/2018**
  Distance: **~73 miles**, Driving time: **~1 hour 20 minutes**

- **800 Fall River Ave, Seekonk, MA** – Offered at **$5,700,000.00**
  Distance: **~50 miles**, Driving time: **~1 hour**

---

As you can see, both sets of comps are equally relevant, with properties situated at comparable distances from the subject property. However, my comps reflect more recent market activity, indicating stronger market dynamics. **The sale of 565 Squire Rd, Revere, MA, for $49,800,000 in May 2021** is a prime example of how similar properties are commanding high prices in today's market.

Additionally, there are broader benefits to the town in pursuing a higher valuation for this property. **Amazon has been actively purchasing properties in Westborough**, driving up property values. For instance, Amazon acquired a theater property, demolished it, and built a new facility in its place, significantly increasing the property's value and thereby enhancing the town's **tax revenue**. The Town of Westborough stands to benefit greatly from a higher tax evaluation if the property is marketed effectively and sold at its full potential.

Given these facts, I firmly believe that what we need at this point is not another expensive and time-consuming appraisal but a **market test**. With platforms like **CoStar**, we can access comprehensive data, verified sales comps, and direct contacts with potential buyers who are likely to offer significantly higher prices for the property. I've already had discussions with CoStar representatives, and they are confident that with proper marketing, this property could sell for **$9 million or more within 30 days**.

Therefore, I respectfully request that we prioritize market testing over another appraisal, which will only delay the process further. If you would like to review the full details of the comps I've pulled or discuss this approach in more depth, I would be happy to provide additional information.

Thank you for your time and consideration.

Best regards,

Lolonyon Akouete
800 Red Milles Rd
Wallkill, NY 12589
info@smartinvestorsllc.com
(443) 447-3276

---

**2 attachments**

 **CoStar Walk-Through w_ Lolonyon Akouete.pdf**
193K

 **CoStar Proposal - Lolonyon Akouete.pdf**
1709K

A-564

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Dyann Blaine
20 Queensbrook Place
Orinda, CA 94563
dyann.blaine@gmail.com

Jan Blaustein Scholes
7501 E Thompson Peak Pkwy
Scottsdale, AZ 85255
jan.scholes2@gmail.com

Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas, 37th Flr.
New York, New York 10020
mark.lichtenstein@akerman.com

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

Peter Blaustein
950 Vista Road
Hillsborough, CA 94010
pblaustein@gmail.com

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556
walter.horst@babcockbrown.com

Samual A. Miller, Esq.
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
samual.miller@akerman.com
sharlene.harrison-carera@akerman.com



_____
Lolonyon Akouete

A-565



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| In re: | Westborough SPE LLC | Chapter 7 |
|---|---|---|
| | Debtor | 23-40709-CJP |

## ORDER

**MATTER:**

#1079 Motion filed by Creditor Lolonyon Akouete for Reconsideration of Order Denying Administrative Expense Claim Re: 1058 Order dated 1/5/2026 (Re: 1023 Motion filed by Creditor Lolonyon Akouete for for Allowance and Payment of Administrative Expense Claim).

THE "MOTION FOR RECONSIDERATION OF ORDER DENYING ADMINISTRATIVE EXPENSE CLAIM (Dkt. No. 1058)" [ECF NO. 1079] (THE "MOTION") IS DENIED. WHILE MOVANT IS CORRECT THAT THE COURT SHOULD HAVE STATED THAT "AKOUETE MADE NO EFFORT TO SEEK APPROVAL FROM THE TRUSTEE **AND** THE COURT," AND THE COURT CLARIFIES ITS ORDER ENTERED AT ECF NO. 1058 (THE "ORDER") IN THAT RESPECT, THE COURT'S DENIAL OF THE MOVANT'S REQUEST FOR AN ADMINISTRATIVE CLAIM AND THE REMAINDER OF THE ORDER REMAIN UNCHANGED. THE COURT'S RULING WAS BASED ON THE FACT THAT AKOUETE MADE A UNILATERAL DECISION TO INCUR AN EXPENSE TO SUPPORT A LITIGATION POSITION OR STRATEGY. THE MOVANT APPARENTLY MADE THAT DECISION TO INCUR AN EXPENSE WITHOUT AUTHORIZATION FROM THE COURT OR THE TRUSTEE BECAUSE OF, AMONG OTHER THINGS, HIS BELIEF THAT A "THIRD APPRAISAL WOULD NOT ADVANCE THE ESTATE'S INTERESTS" AND A LACK OF RESPONSE BY THE TRUSTEE TO HIS PROPOSAL THAT THE TRUSTEE "ADOPT MARKET TESTING" USING COSTAR. *SEE* MOTION, 2. A MAJORITY OF COURTS THAT HAVE DECIDED THE ISSUE HAVE DETERMINED THAT A PARTY IN INTEREST MAY NOT SEEK PAYMENT OF AN ADMINISTRATIVE EXPENSE FOR SUBSTANTIAL CONTRIBUTION. EVEN IF THIS COURT WERE TO DECIDE THAT SUCH RELIEF IS AVAILABLE, THE COURT REITERATES ITS CONCLUSION IN THE ORDER THAT THE FACTS AND CIRCUMSTANCES OF THIS CASE WOULD NOT SUPPORT ALLOWANCE.

Dated: 01/14/2026

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge

A-566

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MASSACHUSETTS

23-40709

——————————————————

WESTBOROUGH SPE, LLC,

    Debtor.

——————————————————

BEFORE THE HONORABLE CHRISTOPHER J. PANOS

November 10, 2025



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

(Beginning of Audio Recording)

COURT OFFICER:  The United States Bankruptcy Court for the District of Massachusetts is now in session, the Honorable Christopher J Panos presiding, Case No. 23-40709, Westborough SPE, LLC, hearing regarding the approval of form of combined notice regarding the motion by the trustee for sale of property and the hearing on the motion for expedited hearing and shortened notice period regarding sale and settlement motions and statement of operating agreement compliance.  If we could get the appearances on the record starting with the Chapter 7 trustee.

MR. GOLDSMITH:  Good afternoon, Your Honor. Jonathan Goldsmith, the Chapter 7 bankruptcy trustee for Westborough SPE, LLC.

COURT OFFICER:  Counsel to the Chapter 7 trustee?

MS. DEVINE:  Good afternoon, Your Honor Christine Devine on behalf of Jonathan goldsmith, the Chapter 7 trustee.

COURT OFFICER:  Counsel to Bochasanwasi Shree, the proposed purchaser.

MR. NICOSIA:  Good afternoon, Your Honor. Attorney Peter Nicosia here on behalf of the proposed purchaser, acronym BAPSS.



COURT OFFICER:  Counsel to the petitioning creditors.  Nathanson and Go--

MR. GORDON:  Good afternoon, Your Honor. Steven Gordon on behalf of the petitioning creditors.

COURT OFFICER:  Counsel to MobileStreet Trust.

MR. ZIDE:  Leonard Zide, counsel for MobileStreet Trust.

COURT OFFICER:  Mr. Akouete, if you could put your appearance on the record.

MR. AKOUETE:  Good afternoon, Your Honor. Lolonyon Akouete, the creditor of Westborough SPE, LLC.

COURT OFFICER:  Ms. Edwards, if you could put your appearance on the record.

MS. EDWARDS:  Good afternoon, Your Honor. Denise Edwards, creditor with Westborough SPE, LLC.

COURT OFFICER:  And anyone else on the call who would like to enter an appearance?

MR. MULHEARN:  Good afternoon, Your Honor. Christopher Mulhearn for Lax Media LLC and Lax Media MA LLC, a participant in the proposed settlement.

MR. RILEY:  Your Honor, Brian Riley on behalf of the Town of Westborough.

THE COURT:  Very good.  Thank you.  Good



afternoon.  So why don't we start, Ms. Devine, with just the general motion we're addressing today, which is the motion to approve a form of notice that combines notice of the hearing on the settlement and the proposed private sale, establishes dates for the hearings and an objection deadline for each of those.

Mr. Akouete has filed an objection to the combination.  Although I have to say that I don't really understand the basis of that objection.  Nothing will prejudice any party from objecting to one or the other, and I think the statement that they're not connected isn't accurate.

I think the town probably feels that they're quite connected.  The title of the property is still in the town's name.  And so, you know, it makes all the sense in the world to me to combine the notices.

Mr. Akouete also raised the issue of service to Mignonette.  And while he references the operating agreement and intimates that the trustee's power is derived from the operating agreement and that somehow he's stepping in the shoes of a manager, that's not accurate.  The trustee's power is derived from the bankruptcy code.  So a lot of those points, I don't think hit home.

But I do think that Mr. Akouete has a point



that I was going to raise myself, which is I know no one has been able to find Mignonette, but there are these crumbs that Mr. Akouete has put in his pleading.

Is there any downside to serving Mignonette care of, you know, all that list that Mr. Akouete provided?

MS. DEVINE:  Thank you, Your Honor. Christine Devine for the Chapter 7 trustee.  You have spoken to a few of the things that I wanted to put on the record here today.  I guess, initially, thank you for hearing us quickly.  The settlement parties have been working for a long time on what they hoped would be a consensual settlement.

Are very pleased we're at the point that we can bring this to Your Honor and we're hopeful that we can shepherd it through, quickly.

First, Your Honor pointed out exactly why these two matters are connected, these two pleading. The estate does not currently have title and therefore cannot sell the property unless there is a process to obtain title.  That process is the settlement motion. And that is, in fact, why they are connected.

In sum, Your Honor, we cannot do a sale and certainly not on the prompt timeline that we're hoping to proceed with from here, absent of the consensual

sale that we proposed.  And Your Honor, that is the reason for the combined notice that we proposed.

Second, Your Honor, and this really kind of goes to the point that you just made at the end.  The trustee proposes to provide a notice package.  That notice package will include what we hope will be the approved combined notice of settlement and sale, the sale motion with the purchase and sale agreement attached, the settlement motion, and the supplement, which we filed, to clarify one term of that deal that was initially omitted from the motion.

So that entire package, Your Honor, we intend to serve on all creditors, all interested parties, including any interested parties who are known to the trustee from any source, including from Mr. Akouete, who might potentially claim an equity interest in the property.

So, yes, we have been compiling a list of all the possible addresses where notice could go to Mignonette investment.  So absolutely, we intend to do that.

That is described a bit in paragraph 43 of the settlement motion where we talk about serving potential equity holders known or alleged to the trustee and in paragraph 47 of the settlement, of the



sale motion.  So, yes, we absolutely think that's worthwhile and we would do that.

I know in Mr. Akouete's motion that he filed today, he listed some addresses and I can gather some email addresses.  We'll add those too.  We will absolutely serve anyone and everyone who might be entitled to notice.

That gets me to one form of notice that we considered, and we can do to the extent Your Honor thinks it would be beneficial, which is noticed by publication.

As Your Honor knows, no one has stepped forward and filed an appearance on behalf of Mignonette, the noted member of Westborough SPE. However, we could put a notice in the Boston Globe and the Telegram and Gazette.  So covering the region where the locus is, where the property is located, so that any party could potentially learn about the sale in that manner.

So we didn't contemplate that as part of the process, because we are not soliciting overbids. However, we could certainly do that, promptly, as well.

With respect to timing issues, Your Honor, while we are not seeking to shorten notice, in part



because of, you know, some of the parties who could potentially be the Mignonette parties or could be receiving notice for Mignonette are not local.  So it may take some time to get to them.  However, we are hoping to move quickly.  So we're not looking to shorten the notice required by 2002.

However, as close thereto as the minimum notice that Your Honor supports -- that Your Honor's calendar could accommodate, we would be happy to move quickly.

Finally, Your Honor, again, you kind of spoke to this already, which is a bit of confusion that we would say that Mr. Akouete has with respect to both the motion to be heard on an expedited basis or to shorten the notice period and also the motion he filed today relies upon the LLC agreement of the debtor.

Again, I'll just say essentially what Your Honor said, which is there is no management of the debtor.  There is simply the trustee acting in accordance with Title 11 of The United States Code and liquidating the assets of the debtor pursuant to the bankruptcy code.

So the trustee is not acting under the LLC agreement.  Mr. Akouete is not acting under the LLC



agreement.  Mr. Akouete just holds a disputed claim.

I'd be happy to respond to any other questions that Your Honor might have with respect to the proposed form of notice and the procedures that the trustee contemplates.

THE COURT:  So I guess I just want to -- and I know that you understand this, but I want to say it on the record so Mr. Akouete hears it.  If I do approve the combined notice today and approve the notice being sent, obviously, I am not approving in any way the sale or the private sale aspect.  That will -- can all be subject to objection at the sale hearing itself.  That merely this is just approval of a form of notice without blessing the private sale process or the settlement that's been reached, that's for a later date.

So let me ask you in terms of timing, because I do think -- I mean, I guess notice by publication is probably a good idea, and it's a little difficult to target that.  I think the Boston Globe and maybe the Wall Street Journal.

And I know that the leads that were developed on the principles of -- take us to the British Virgin Islands, Hong Kong, and Australia.  Am I right about that?

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

MS. DEVINE:  That is correct.

THE COURT:  And, yeah, I just wonder if there is a publication in Australia that's the equivalent of The New York Times for Australia or The Wall Street Journal for Australia.

MS. DEVINE:  Well, I don't know that off the top of my head, Your Honor.  I'm sure we can identify that fairly quickly.

THE COURT:  And my memory is that there's an allegation or at least some information in the record that the principal of Mignonette is resident in Australia.

MS. DEVINE:  Certainly, Mr. Akouete has put that in the record on numerous occasions.  Yeah.

THE COURT:  Okay.  So, let me understand the timing.  What would you think about a hearing date of December 15th, given that we're giving some publication notice and some overseas notice?

MS. DEVINE:  Your Honor, my only personal issue with that is I will be traveling until the December 16th.  So I would ask if Your Honor had any availability the 17th or later in December.

THE COURT:  The 17th?

MS. DEVINE:  The 17th looks great -- of December.  And let me defer to the trustee as well.  I



know he's on the line.

MR. GOLDSMITH:  That's fine with me, Your Honor.  Thank you.

THE COURT:  And I'll hear from other people, as well, but I just want to -- I just want to put it out there so everyone can hear the date.

Mr. Akouete, we'll hear from you next.

MR. AKOUETE:  Okay.  Yes.  Your Honor, what you said was fair and reasonable.  My only reason to trying to sever the sale from the other settlement is because it will allow the sale to go on expeditedly without having to deal with the whole notice and everything, which will take some time and will increase the expenses and the cost and everything.

THE COURT:  Okay.  Well, one can't happen which the other.

MR. AKOUETE:  Okay.  That's fine if they have to happen together.

THE COURT:  And the notice period is the same for each, so they can run concurrently.

MR. AKOUETE:  Okay.

THE COURT:  Would anyone else like to be heard?

MR. GORDON:  Yes, Your Honor.  Steven Gordon, not obviously the most important party here.

But if on the 17th, we could begin at 2:00 p.m. or later, I would most appreciate -- I'd be most appreciative.

THE COURT:  I think 2:00 p.m. is what our calendar permits, so it works out.

MR. GORDON:  Thank you, Your Honor.

THE COURT:  Actually, I'm sorry.  I think 2:30, so it's even better.  Anyone else like to be heard?

So for purposes of the notice, a hearing date of December 17th at 2:30 p.m. and an objection deadline for the combined notice and on either one of the motions of December 13th at midnight.  Eastern Standard Time.  Eastern Time.

And the trustee will file certificate of service, certifying notice, and will make the efforts that were represented today in terms of serving known addresses for potential representatives of Mignonette. There'll be publication notice in The Globe and The Wall Street Journal, unless Mr. Goldsmith doesn't think that that's worth the effort.

And the trustee will use good faith efforts to determine whether there's a reasonable notice that can be given in a national publication in Australia.

And when we get to the sale hearing, we can



discuss whether the notice has been adequate and perhaps in advance when the certificate of service is filed, there can be a talking portion of the certificate of service on this point.

MS. DEVINE:  We can certainly do that, Your Honor.

THE COURT:  Okay.  Anything else for today? Very good.  We're adjourned.  Thank you.

MS. DEVINE:  Thank you.

(End of Audio Recording)



CERTIFICATE OF TRANSCRIPTIONIST

I WENDY K. SAWYER, hereby certify that I was authorized to and did transcribe the provided recording and that the foregoing transcript is a true transcript of said electronic recording to the best of my ability.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

DATED this 24th day of February, 2026.

_____

WENDY K. SAWYER, CDLT



UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MASSACHUSETTS

23-40709

--------------------------------

WESTBOROUGH SPE, LLC,

     Debtor.

--------------------------------

BEFORE THE HONORABLE CHRISTOPHER J. PANOS

December 17, 2025



(Beginning of Audio Recording)

COURT OFFICER:  Good afternoon.  Please be seated.  The United States Bankruptcy Court for the District of Massachusetts is now in session, the Honorable Christopher J. Panos presiding.  Case No. 23-40709, Westborough SPE LLC, hearing on Docket No. 968, Trustee's motion for entry of an order approving and authorizing the sale of 231 Turnpike Road, Westborough, Mass, free and clear liens, claims, encumbrances, and interests, and related relief, and a hearing on Docket No. 967, Trustee's motion for entry of an order approving and authorizing settlement agreement and mutual release.

If we could get the appearances on the record, starting with the parties on the Zoom. Counsel to Ferris Development.

MR. CAREY:  You afternoon, Your Honor.  Paul Carey on behalf of Ferris Development.

COURT OFFICER:  Counsel to the Town of Westborough.

MR. SMERAGE:  Good afternoon, Your Honor. Roger Smerage on behalf of the Town of Westborough.

COURT OFFICER:  Counsel to Nathanson and Goldberg, the petitioning creditors.

MR. GORDON:  Steven Gordon, counsel for the



petitioning creditors, not just Nathanson and Goldberg, but counsel for the petitioning creditors.

COURT OFFICER:  Counselor Walter Horst and Babcock and Brown.

MR. CASAS:  Good afternoon.  Luis Casas, counsel for Babcock Cog and Mr. Horst.

COURT OFFICER:  Counsel of Lax Media.

MR. MULHEARN:  Good afternoon, Your Honor. Attorney Christopher Mulhearn for Lax Media LLC and Lax Media MA LLC.

COURT OFFICER:  Mr. Akouete, if you could put your appearance on the record.

MR. AKOUETE:  Good afternoon, Your Honor. Lolonyon Akouete of Westborough SPE, LLC.

COURT OFFICER:  And Ms. Edwards, please.

MS. EDWARDS:  Denise Edwards -- good afternoon, Your Honor.  Denise Edwards, creditor with Westborough SPE, LLC.

COURT OFFICER:  And anyone else on the Zoom who would like to enter an appearance?

MR. ZIDE:  Good afternoon, Your Honor. Leonard Zide, counsel for MobileStreet Realty Trust.

COURT OFFICER:  And beginning in the Courtroom with Attorney Goldsmith to my right.

MR. GOLDSMITH:  Good afternoon, Your Honor.



Jonathan Goldsmith, the Chapter 7 bankruptcy trustee for Westborough SPE, LLC.

MS. SAVOIA:  Good afternoon, Your Honor. Angelina Savoia for the Chapter 7 trustee, Jonathan Goldsmith.

MS. DEVINE:  Good afternoon, Your Honor. Christine Devine for Jonathan Goldsmith, Chapter 7 trustee.

MR. NICOSIA:  Good afternoon, Your Honor. Peter Nicosia on behalf of the purchaser, BSAPSS.

THE COURT:  Thank you.  So this is an evidentiary hearing on the motion for approval of the settlement of certain claims and the associated sale of real estate that would be recovered as part of that settlement.

So I guess what I would propose to do is to -- there's been no affidavit that has been submitted in support of the motion.  So what I would suggest that we do is that the statements that are made in the motion for approval and the supplement, so that's at 967 and 978, I believe, on the docket, would be accepted as a proffer of the testimony of the trustee.

Additionally, Ms. Devine can make whatever additional proffer she would like to make as to what the testimony of the trustee would be.  And then we


ESQUIRE
DEPOSITION SOLUTIONS

would give an opportunity for parties to cross examine Mr. Goldsmith to the extent that they wish to do that.

Anybody have any objection to that as a procedure for the admission of evidence?  Okay.  So no objections to that.

So, we'll circle back, Ms. Devine.  But what I suggest that you do is you review 967 and 978. There are obviously statements there that are made, allegations that are factual that would be the testimony of the trustee and consider what, after considering the objections that have been raised and anything else that you think needs to go on the record, additional proffer of what the trustee's direct testimony would be.

You know, for example, issues have been raised regarding whether there is sufficient value being received to release all of the claims that are being released as part of the dismissal with prejudice of the action that's been removed to the district court, and the, you know, particularly the claims against individuals, not necessarily the town.

The possibility that additional amounts might be collected from various people that are being released under the general lease or as a result of the dismissal with prejudice and other questions regarding



specifically, the payments that are being made or proposed to be made at a closing to both Ferris and Lax, with a distinction being made, as I understand it, with 100,000 to Ferris and 100,000 to Lax, and Ferris will have an allowed unsecured claim of $10,000, which is, I think, the amount of the proof of claim they filed in this case.

My understanding based on the pleadings is that the Ferris and Lax claims are claims relating to the RFP process that the town engaged in that exposed the town to various claims that as part of the settlement, the town is requiring be resolved as part of this global settlement so that the trustee is proposing that they be paid in addition to the payment to the town for real estate taxes and various other charges.

I guess I'd like to understand a little bit and some evidence on whether those are also claims against the estate or whether that is simply a cost of the closing and the benefit to the estate of paying those because it's a requirement of the town, and the town won't proceed without that.

I think it goes without saying, but I'd like some evidence that there can be no sale under the current circumstances absent the settlement, that that

title is in the name of the town because of the foreclosure judgment, and the estate would have to recover the property on various theories that have been -- that are well known to everybody, whether it's the challenge of the foreclosure or an avoidance action or a claim on a takings clause claim under Hennepin, that it'd have to be a recovery.

The trustee addresses in the proffer that that I've accepted in the motion the fact that any litigation involving Hennepin, you know, the contours are uncertain of Hennepin, and it would be protracted, would probably likely go to courts of appeal.

That's probably the case with an avoidance action, even though I think the trustee has stated in the motion that he has a solid level of confidence in the claims to recover the property, whether they're the avoidance of the -- of the transfer as a constructively fraudulent conveyance, whether it's the takings issue under Hennepin or whether it's challenging the foreclosure itself under state law.

He has a solid level of confidence, and he outlines the reasons why he thinks this is still beneficial.  And, you know, that's the cost and risk of litigation, the delays to the estate, the risks of cost to the estate of maintaining the property even



after it's recovered, and the risk that absent these side agreements with the party to the reciprocal rights agreement.

I'm just going to get their name.  Mobile Street, Mr. Zide's client, that it's quite possible that even if the trustee recovers, there are still going to be zoning challenges, the reciprocal rights agreement that would limit the trustee's ability to sell, and that the trustee feels is a real risk to not concluding this transaction because any compensation that might be received even if the trustee is successful years from now in recovering the property or months from now, whatever it is, that there it might result in a sale that's at a lower price than the one that exists today.

So make whatever additional proffer you like on those subjects, particularly addressing Lax and Ferris in the claims against individuals that are asserted in the litigation that's being compromised, and whatever else you feel is appropriate on value of those other subjects.

I'm admitting the representations made in the motion and in the supplement that I referenced as the direct testimony of the trustee as evidence in support.  And I will accept a proffer from Ms. Devine



now as to anything else she'd like to address.

And if you'd like to take a few minutes, you're welcome to do that, to organize yourself and confer with the trustee.

MS. DEVINE:  Your Honor, a few minutes would be great.

THE COURT:  Okay.  So, before we do that, let me ask Mr. Akouete, who is the only party that is opposing the approval of the settlement agreement, and Mr. Akouete is clear that he doesn't oppose the sale portion of that.  He thinks it's a fair price within the range of reasonableness that he believes the value of the property is.

He's opposed to the cost that the estate is paying to obtain that and some of the payments that are proposed at the closing and the scope of the release that's being given.

Let me ask Mr. Akouete, who's not present in the Courtroom and is appearing remotely, I believe, by telephone.  I don't see him on the screen.

Mr. Akouete, I'm not sure how you could do this without being present, but I'm assuming you're not intending to present any evidence of your own, but you're reserving your right to cross examine the trustee.  Is that right?


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

MR. AKOUETE:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.  And I suppose I should ask, even though there are no other objections to the motions that are pending of record on the docket, does anyone else wish to be heard today in opposition to the trustee's motions?  Okay.  So, why don't I take a ten-minute recess?

MS. DEVINE:  That would be great, Your Honor.  If I could have just one clarification.  To the extent representations are made in the sale motion and the settlement motion, you have accepted those as a proffer.  So those are in evidence.

THE COURT:  Correct.  Correct.

MS. DEVINE:  Okay.  Thank you.

THE COURT:  And so you just have to determine if you want to amplify any of that.  And, you know, if Mr. Akouete desires to cross examine the trustee on any of those points, you'll be allowed to redirect, and the scope of the redirect will not be limited to the cross examination in case now that the trustee's on the stand, actually, you want to get in any testimony that would assist the Court in assessing credibility or anything like that.

So, your redirect would not be limited to the scope across.  And similarly the, you know, the



cross examination of Mr. Akouete, if he chooses to do that, is not limited.

MS. DEVINE:  Thank you, Your Honor.

THE COURT:  Okay.  Ten minutes fine?

MS. DEVINE:  Ten minutes.  Yes.

THE COURT:  So we're back in ten minutes.

MALE VOICE:  Your Honor, before the Court breaks, will there be a conversation about the adversarial complaint that Mr. Akouete filed against all of the individuals involved in this action?

THE COURT:  There will not.

MALE VOICE:  All right.

THE COURT:  There will not.  That matter has been stayed, and it's not the subject of the hearing today.

MALE VOICE:  Thank you, Your Honor.

THE COURT:  Thank you.

COURT OFFICER:  All rise.

(Off the record at 2:50 p.m.)

(On the record at 3:04 p.m.)

COURT OFFICER:  All rise.

THE COURT:  Please be seated.

COURT OFFICER:  We're back on the record. Case number 23-40709, Westborough SPE, LLC.

THE COURT:  So just as a housekeeping

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

A-591

matter, we have a couple of hearings coming up, including an emergency hearing in another case.  And so I may take a break during this hearing to let that other hearing go forward.  I think it's going to be relatively quick, and then we have another one after that.  So I'm just going to try and manage that the best I can, depending on how this proceeds.

So but I think the next step is to get the further offer of proof.  And as an initial matter, Ms. Devine, just confirm that if sworn to testify, the trustee would testify to all of the facts and assertions set out in the motion for approval of the compromise, the sale, and the supplement?

MS. DEVINE:  Yes, Your Honor.  I can confirm that.

THE COURT:  Okay.  Would you like to make an additional proffer?

MS. DEVINE:  I would, Your Honor.

THE COURT:  Okay.  Just bear with me for one second.

MS. DEVINE:  So in in my proffer that I had prepared, I think I am going to speak to most of what Your Honor mentioned initially.  So I will just start with that the trustee is pleased to have successfully negotiated something that he's been working on for

quite a while that, in his business judgment, believes is in the best interest of the estate all around the settlement as well as the sale.

I wanted to start for a minute and talk about notice of the sale.  It was something that we had spoken a bit about at the initial hearing, when the trustee asked to consolidate the notice process. The trustee indicated at that hearing that it was his plan to be kind of broad and far and wide with his notice of the sale and the settlement, and he has done that.

I particularly wanted to point to the certificates of service that we filed with respect to the service of full copies of the sale motion, settlement motion, settlement agreement, purchase and sale agreement, and supplement.

Docket No. 990 is a very detailed certificate of service.  It includes, if you'll recall, Mr. Akouete had filed either an objection or a motion for particular service that listed six addresses and/or email addresses.  Those are all on there.

In addition, Your Honor, I will tell you that from public sources as well as the discovery process with respect to Mr. Fuentes's and Ms.



Edwards's claim, the trustee has received information so that he believes, to the best that he can, knowing that no one has appeared in this case on behalf of the Mignonette.

But it appears from information produced by Mr. Akouete in discovery and other sources.  The debtor, has one member, Mignonette.  It has an owner called Panago.  Panago is also a British Virgin Islands company.  And in one or more asset searches that Mr. Akouete provided to us, it lists officers as well as shareholders of Panago.  We've noticed all of them.

We also have heard from -- you'll recognize the name, Mr. Lomb, L-O-M-B, who is the liquidator of Babcock and Brown LP, which is the Australian entity. So we've been in contact with them.  His name has come up in some of Mr. Akouete's pleadings, as potentially the ultimate holder of the equity interest.

Mr. Lomb's attorneys have been in contact with us.  They have told us that they may be in -- they may be the equity holder.  They're in consultation with Mr. Lomb as he liquidates Babcock and Brown in Australia.

However, they've not produced that information to us.  We've not seen anything that shows



that they're the equity holder.  We have noticed them.

They're on this certificate of service at 990, as is every single address we have for Mignonette.  Every single address that Mr. Akouete has provided to us provided in that objection to the notice process, every single address that we were able to find with respect to Panago.

Some of them are duplicate addresses we mailed internationally.  Wherever we had an email address, we sent that out as well.  No one, aside from Mr. Akouete, has objected to the sale.  No one has come forth and shown us that they, in that process of ownership, are the current equity holder.

THE COURT:  And I saw in one of the certificates of service that was filed that you also served Mr. Green, who has been mentioned as a potential principal of Mignonette or some entity up the chain.

MS. DEVINE:  That's right.  Panago.  I mentioned that there was a kind of asset search that it looks like Mr. Akouete had done that listed shareholders, directors, and officers, or maybe managers/members.  And Mr. Green was listed on there.

Another member of the Green family was listed on there.  We sent it to all those addresses.



We also looked back at the affidavit that Attorney Ronan from Goulston and Storrs had filed.  If you'll recall, Your Honor had requested as part of discovery that Mr. Ronan identify any party he had in Goulston and Storrs's files with a connection to Mignonette.  He submitted an affidavit that did that.

I think there were four names on his affidavit.  We had already served three of -- we'd already served all of them, but there was an email address or, actually, there was another mailing address for Mr. Green that we didn't have, so we supplemented our certificate of service to add him.

Just kind of wrapping up the certificate of service at document 990, I'll point to the attorneys.  It's on page 4 of 12.  They're identified as counsel to David Lomb, the liquidator of Babcock and Brown, Limited.  That's the firm that I mentioned earlier.

We served all of the bidders from all the bids that we received.  We served taxing authorities, including in British Virgin Islands, to the extent they may have a claim for Mignonette or Panago since that's where they were incorporated.

We served local commercial real estate brokers in the Worcester area that we are aware of, that others have brought to our attention, and we



served all the bidders that we received the bids from.

We also had served along the way Attorney Lee, who represents Mr. Blaustein.  He's on the service list.  He gets ECF notice.  However, we supplemented to him and let him know that we were serving him in his capacity for Mr. Blaustein as Ms. Scholl's (phonetic) guardian, Your Honor, again, just kind of responding to allegations that she may have some involvement.  She now has notice.  It's gone through her guardian's attorney.

So the certificate of services, Your Honor, I'll just mention for the record are at 990, 1017, and 1018.  The trustee also accomplished service by publication.  That was something else that we discussed at the hearing.  That's at Docket 1015, evidence of that.

The trustee advertised for this hearing and put sufficient notice in a legal notice that was published in the Boston Globe, the national publication of the Wall Street Journal, and a newspaper called The Australian, which we understand is a national Australian financial publication.

So before I get to the issues we talked about, Your Honor, I want to talk about the IRS for a moment.  Your Honor had issued an order at Docket No.



1010, asking that the trustee provide an update on his efforts to identify the owner of the debtor through IRS records or IRS contacts.  The trustee has employed Verdolino and Lowey as the estate's accountants.

Mr. Jalbert is here in the Courtroom today. To the extent more information is required, we can make him available to the Court.  The trustee has provided Verdolino and Lowey with a power of attorney, authorizing them to interact with the IRS on behalf of the debtor, the trustee for the debtor.

The trustee has no authority to interact with the IRS on behalf of Mignonette.  We don't have a power of attorney from Mignonette, so we cannot gather information from them, from the IRS on their behalf.

The debtor is a single member LLC.  As a result, the debtor is not required to and has never been required to file tax returns.  So there are no tax returns.  Verdolino and Lowey confirmed this, that the debtor has filed at any time that the IRS has in its possession.

Verdolino and Lowey also confirmed for us that the debtor has filed no Form 1041 filings.  Those would be the employee filings.  So if you have employees, that's your quarterly report.  So we have no reason to believe that the debtor ever had



employees.

Other forms that may have been -- you know, there are forms out there that companies can file to change addresses, declare S Corp status.  Those have not been filed by the debtor.

The forms that have been filed, Your Honor, 1099 INTs.  Right?  So those would be filed by third parties holding funds, so a bank, holding funds under the debtor's taxpayer ID number and reporting interest to the IRS.  We know that 1099 INTs were filed by third parties and that the addresses listed were not deliverable.  So, we don't think that that would be helpful.  And again, that would just be for the debtor.

There was also, apparently, a rejected form, a 2024 Form 1120, a C Corp extension.  We don't know who filed that or why.  It is not an appropriate form to be filed for a single member LLC.  We don't believe it was -- we have no reason to believe it was Mignonette that filed that.

So, Your Honor, actually, one more thing that, Mr. Jalbert wanted me to talk about a little bit is there in Mr. Akouete's pleadings and Your Honor's order, there was an indication that, or a reference to a responsible party.  Responsible parties are

determined by the IRS at the IRS's initiation when they determine that taxes should be paid or returns should be filed and taxes paid.

So unless the IRS has initiated an investigation, then there is no responsible party. That's not something you report or volunteer for. So there's no indication that the IRS has initiated an investigation into the debtor and designated a responsible party.

There's no reason why the IRS would do that because the debtor should not or would not be expected to be filing any tax returns. Only the member and maybe just the member's member, you know, it kind of rolls up the chain. So I hope that sufficiently responds to Your Honor's inquiry as to the trustee's efforts with respect to the IRS.

For purposes of today, I think the point of both my review of the certificate of services and speaking to what we've done with respect to the IRS is to give your court -- give Your Honor a good record that we have, as we said we would at the notice hearing, provided broad and wide and aggressive service. We would love for someone to show up on behalf of Mignonette, and we've tried to do that, and they're not interested at this point or they don't

know.  But we think we've done -- we've done a sufficient job.

So Your Honor, regarding objections to the sale and the settlement, aside from Mr. Akouete, as Your Honor noticed, no others were filed.  No formal objections.  No informal objections.  I will tell Your Honor that I did hear from one of the other bidders. We had a back-and-forth.

And when I described for the losing bidder the terms of our buyer today, there was essentially agreement on his behalf that it was a better bid. They can't do a deal without more diligence.  They can't do a deal without inspections, and it was for less money.  So we sent the deposit back, and that was the end of that.

I'll turn to the substance of the sale and settlement, Your Honor, and some of the issues that Your Honor specifically referenced earlier.  I will jump back and forth between settlement and sale because they are interdependent.

Regarding the settlement, there would be no sale without the settlement.  I think that was one of the things that Your Honor was looking for information on.  There is no possibility to do a 363 sale unless and until the trustee fully recovers the property back

to the estate, and the only way to do that, absent a settlement, is to litigate the adversary proceeding, the avoidance action against the town, all the way to the end, through whatever process that takes.

The trustee has considered what that would take, considered what he expects the town would mount as a defense, what the town has stated it would mount as a defense, and the risks and the costs and the time and the costs that go along with that time, the trustee has considered and quantified each of those and determined that the global settlement, inclusive of the expenses that will be paid, at or shortly after closing, make the settlement the best resolution for the estate.

The town has indicated and the trustee believes it is so, that it would not settle, it would not cooperate and vacate its foreclosure order, absent a global settlement, absent something that fully resolves all liability for it with respect to the litigation that's pending and with respect to parties who are involved in the RFP process, and so that's why those are components of this settlement agreement. There's no sale without the settlement.

Regarding, Your Honor, regarding the structure of the settlement, pays liens, or



encumbrances on the property, it resolves litigation, all of the litigation.  I'll just, like, kind of note, payments that will be made at or shortly after closing to the town for taxes with interest, insurance, maintenance, and legal fees.  And I will speak a little bit to the analysis that the trustee did with respect to the Yorello (phonetic) case.

He certainly factored in how that could potentially reduce the net paid to the town, but also value the process that it would take to get to that point and the risks associated with getting there as well.  So it's payment to the town.

There's a payment to MobileStreet for change of use, in order for our buyer to be able to operate as it intends, it was necessary for MobileStreet to agree to record a modification to a use restriction that burdens the property.  We negotiated for that.

And then MobileStreet also -- two other components to their claim separate from the change of use, common area maintenance fees, which the debtor has not contributed to for an eight-year period, so it's a rather substantial claim, and a minimum management fee.  Again, same agreement that is of record at the Registry of Deeds that burdens the property that the debtor has not contributed to for,

again, eight years.

Finally, Your Honor, there's Ferris and Lax. And I'll speak to that in a little more detail. But yes, for the trustee to proceed with the sale, the trustee needs to make -- enter into a settlement agreement with the town. For the town to enter into a settlement agreement, the cost of that includes the cost of resolving issues with Ferris and Lax.

Ferris and Lax believe they have claims against the town. And in return for a release of those claims, some of which are subject to litigation, but in return for a release of those claims, they've each demanded $100,000 each.

They've each negotiated for a $100,000 payment. We understand those to be primarily legal fees. With respect to the trustee, that is, as Your Honor noted, a cost that the trustee had to consider and weigh. Part of that was the town positing that it could have indemnification claims against the estate were it required to satisfy the claims of Ferris and Lax.

I will say that the trustee discounted those, that allegation, not to zero, but discounted those. Even with considering those at a discounted rate, proceeding with litigation against the town, all

the way to the end, prevailing, incurring the cost of the estate, and I'll talk a little bit about the diminution of equity that would occur as we went through that process because the MobileStreet continues to grow.  And even under Yorello, there are tax consequences, even if valued only at 50 percent post foreclosure.

THE COURT:  Could you, while you're looking at your notes, you've talked about the trustee's assessment of the claims and litigation.  I don't know if you're going to get to this.  I know the trustee has stated that he believes he has a strong chance of ultimate recovery against the town and that there are reasons why the settlement makes sense.

The opposition raised issues with respect to these ancillary claims that are kind of detailed in the opposition that relate tangentially to the foreclosure, to constitutional claims, to claims against individuals.  What would the testimony of the trustee be with respect to whether he analyzed each of those claims, those ancillary claims, and what his assessment was of -- because I imagine that's different than the strong assessment of likelihood success on the merits, of the claims against the town. What is his assessment of each of those claims, and

has that been factored in?

MS. DEVINE:  I'm going to speak to that in a second.

THE COURT:  I'm sorry.

MS. DEVINE:  No.  That's okay.  Look, to wrap up, kind of Your Honor's first question, or Your Honor started with the trustee believes he has strong claims against the town.  Yes.

The trustee believes that the first count of the avoidance action, 548, is a strong claim.  No claim is 100 percent claim.  However, the trustee also, in using the language strong claim, evaluated it in that regard, handicapped it in that way to put a cost on it or a value on it, but was hesitant to detail what he expects the defenses would be of the town and really where the risk points are.

But, yes, I think the trustee would --

THE COURT:  I assume that's also the case for the Hennepin claim and the Massachusetts challenge to the notice and the due process on the foreclosure.

MS. DEVINE:  That's right.  That's right, Your Honor.  With respect to the claims against individuals, and we did take a minute to just go back and refresh our mind when we had our recess, but the claims against the individuals who are named in the

federal action, the trustee does not believe those are strong claims.  The trustee does not -- has not seen evidence.  Well, I guess two separate things.

The trustee in this settlement is recovering the value of the property, and the claims that are being paid, or the costs that have to be paid to resolve the ancillary litigation, are still worth it, right?

So much of the action that the debtor initiated, that is the federal action that's being resolved, it's damages that stem from equity theft or a windfall that would have gone to the town.  The town isn't getting that windfall anymore.  The town is getting a reasonable claim paid for its taxes, insurance, maintenance of the property for period of time pre-petition, foreclosure work, pre-petitioned tax claims, and the post-petition period.  That's the compromise with the town.

So that equity theft that's set forth in that complaint, that federal action, is being resolved through this settlement.

With respect to claims against individuals, the trustee believes two things.  One is there's no real additional claims against those that aren't being resolved by the return of the property and the sale of



it and the estate getting the net benefit.  And the claims that go beyond that, 1983 type claims, we don't see any damages.  We don't see that -- the trustee handicaps those, believes those are very weak claims, and would not be worth the risking this resolution and risking this sale to pursue.

The trustee has factored that in to this settlement and to the sale.  Does that address Your Honor's questions?

THE COURT:  Yes.

MS. DEVINE:  I'll talk just a little bit about the sale process, Your Honor.  It is detailed in the sale motion.  But the trustee, once the first settlement process, the trustee determined that he required an appraisal.  He got that appraisal.  He filed suit against the town, and quickly the parties moved to determine whether there was a workable resolution that would avoid lengthy and expensive litigation.

And I'll say, again, that lengthy and expensive litigation would happen at the same time that the town would continue to accrue some real estate tax obligations.  The estate would accrue real estate tax obligations, even if it's ultimately successful on the avoidance action.  MobileStreet

would continue to accrue all of its monthly costs, which are significant, and the equity would diminish.

That diminishment of equity to get to a victory would fully erode, in the trustee's analysis and in his business judgment, would fully erode any benefit that could come from prevailing in the adversary proceeding.  Put simply, this is a better result for the estate.

I jumped around a little bit.  I'll say one more time, Your Honor.  I touched on it earlier.  But the trustee did look at the different components of the town's claim, the payment to be made to the town. The trustee also looked at the Yorella decision, and the trustee put a value on each component that the trustee thought could potentially reduce the town's claim if the trustee were to recover the property.

So, 50 percent of post-foreclosure real estate taxes, the trustee put a dollar value on that, looked at what the town has assessed as the taxes for the post-foreclosure years.

The pre-foreclosure period is bigger. Right?  So that's the majority of the tax claim. Backing out 50 percent has a value.  It's not as big as the pre-petition amount.  The trustee backed out what he estimates to be the post-petition interest on

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

that.

The trustee backed out what he thought would be the legal fees, a percentage of the total legal fees that are included in the town's claim that would be attributable to defending the avoidance action.

Trustee's business judgment made those assessments, factored that in, and then compared that to, well, how much time do we think?  And the trustee did an analysis at 12 months and at 24 months.  And when do we think it'll be done?  And how much will the cost be?  And determined, again, this is a better deal, factoring all that in.

With respect to a few other litigation risks, Your Honor, there are some unique risks to some of the actions that the debtor initiated before this case was filed, before the involuntary was initiated.

They would have been initiated by Mr. Akouete and Ms. Edwards.  As Your Honor knows, the trustee certainly believes they had no authority to act for the debtor, having gone through discovery and reviewed the materials, and we've kind of briefed that for Your Honor at summary judgment.  And there are some risks, therefore, to actions that they initiated.

Again, nothing 0 or 100, but the trustee factored in those risks.  The other thing that the



trustee factored in is the potential for the further deterioration of the property.  The property's been vacant for at least eight years.  It's still standing. It's standing well enough that the trustee, or the town, hosted an open house as part of the marketing process for the sale.

However, depending on how much more time goes by, that is at risk as well.  Again, it bodes for sale sooner rather than later.

The other thing that the trustee factored in as part of his business judgment in reaching this agreement is if the trustee were to go through the process, succeed, watch some of the equity reduce, maybe pay less in claims, but that at least nets out or it more than nets out, the trustee would then be required to ensure and maintain and incur the cost of carrying that property when he then turned to a process very similar to the one that he just did, the 363 process.

It would be great if the trustee owned the property right now, but he doesn't.  Those costs at a six-month estimate to get a sale done would, again, further diminish the equity available to the estate, again, making it not really a close call.

I'll turn back to this that was essentially



the settlement, Your Honor.  Turning back to the sale. The buyer is here.  The purchase price proposed exceeds the appraisal that the trustee -- the court-authorized appraiser obtained exceeds the appraisal value by approximately a little more than $300,000.  That appraisal is at Docket 412.

I think I discussed the -- we're going to talk for a minute about the trustee's marketing efforts shortly after the avoidance action.  The trustee and the town got together and decided that it would be worth the effort to see if an acceptable buyer appeared in an aggressive marketing campaign.

So the trustee put together with the town's consent a solicitation package, essentially, which included the deed, the restrictive easement owned by MobileStreet, a trail easement for the town, made reference to the appraisal that was available on the Court's docket at that time, and invited bids on a form, encouraging kind of an apples to apples comparison.

In doing that, Your Honor, the trustee knew that there was a risk that there would be a difficult problem assessing a buyer that the town would be willing to settle with versus a buyer that was the highest price.  We fortunately have both.



Fortunately, we have a buyer that was the highest bidder by more than $100,000.  Of the next two bids -- and this is detailed in the sale motion -- of the next two bids, our buyer here today is the only one who didn't have additional diligence required, additional approvals from the town.  They kind of quickly reached what's called a PILOT agreement, payment in lieu of taxes, which I understand nonprofits often enter into.

That did not diminish their bid.  Their bid was still the highest and the estate has no cost with that PILOT inclusion.  It's part of the purchase and sale agreement.

So we were fortunate that the highest bid, the bid that the trustee most thought was best and highest, and the most workable for the town all lined up.

THE COURT:  Do I remember correctly, and it's a little off topic, but it has to do with values, and the sale process.  Do I remember correctly that there is a statement by the trustee that's in evidence through the motion that with respect to the offers that had been received and the use restriction for MobileStreet that only one of those bids would have conformed to the use restriction, but it was subject to a bunch of contingencies and the value of that bid

was more than a million dollars less?

MS. DEVINE:  So it's even more than that, Your Honor.  None of the bids conformed.  To conform, it would have to solely be used for retail or as a movie theater.  There was one bid that had a retail component, but also had housing as part of it.  I think it was housing.

It was something non-conforming as part of it.  So, no bid was fully conforming.  Only one was partially conforming, and that one was more than $1,500,000 less than the bid that we got.

THE COURT:  Thank you.

MS. DEVINE:  So we're fortunate.  It could have been harder to come to terms with the town and to reach agreement with a buyer.  We have a buyer that kind of checked all boxes, and that's who's here today, Your Honor.

I will continue my proffer on the sale portion, which is that the trustee negotiated at arm's length with the buyer, has no connection to the buyer, is not aware of any connection between the buyer and the debtor.  There's no connection between the buyer and the trustee.

And the trustee negotiated in good faith and believes the buyer negotiating in good faith as well.



And I know that that buyer's counsel intends to make a proffer as well on the buyer's good faith and arm's length dealing and no collusion with other bidders. We're aware of none, and again, he's available to make a proffer.

I think I covered all of Your Honor's questions and points.  I jumped around a little bit. So to the extent you have any concern that I missed something, I'm happy to speak again later or go back to it.

The one thing that, again, we kind of needed a minute to go back and look at the federal litigation that's being settled as against Mr. Blaustein being settled, will be dismissed, as Mr. Blaustein, and the individuals who serve on the town's board.  Again, we don't put value in those -- the estate's -- any value to the estate's claims against them personally.

We think that globally, the estate's getting the benefit that was the most it could get from that action anyway in recovering the property, paying only claims that should be paid, and retaining the equity once the property is sold to the buyer.

THE COURT:  Thank you.

MS. DEVINE:  Thank you, Your Honor.

THE COURT:  So I'll accept that as the



proffer, the additional testimony of the trustee.
I'll accept that as a proffer on behalf of the buyer
as well regarding the 363(m) findings, unless anybody
objects to that and wants to hear from the buyer
themselves.  And so any objections to that?  Okay.

So I guess, the next step would be I would
ask Mr. Akouete whether you would just like to argue
your opposition or whether you would like the trustee
to take the stand and you'd like to cross examine the
trustee?

MR. AKOUETE:  Your Honor, I'm on -- I
understand that I have to be in a court to cross
examine.  Right?  Because I'm on remotely.

THE COURT:  No.  I'm going to ask the
parties if they have any objection, but I can allow
you -- the witness is here in court.  I can allow you
to cross examine if you choose to do that.

MR. AKOUETE:  Yes, Your Honor.  But I don't
want to waste the Court time, but I can just say that
the concern that I have to see maybe the Court can
just ask the trustee instead of having to do the cross
examine.  I'm not an attorney, and I'm not experienced
in cross examination, but I can express my concern to
the Court.

THE COURT:  Well, why don't you do that?



And if what you're asking for is an additional proffer on the record of something or testimony, then we can maybe address it.  But what is your question?

MR. AKOUETE:  My question is, it seems like the trustee believe the adversarial proceeding is the only way to recover the property.  However, from the beginning, I've been saying that the main court has a process, simplify for a reason, to make access to court easy and for one owner to be able to regain title back to their property.

For example, the filing fee is only $11 and the whole hearing twice a week on motion to vacate.  And based on the evidence in this case, the town obtained a foreclosure by not disclosing important material --

THE COURT:  So, Mr. Akouete, this is the Chapter 60 and the analysis that you put into your opposition.  Is that right?

MR. AKOUETE:  Yes.

THE COURT:  So, I think that, Ms. Devine, is there anything that you wish to add specifically regarding the trustee's analysis?  So there are three ways that we've identified that the trustee could get the property back into the estate.

The first is a Hennepin type claim.  The



800.211.DEPO (3376)
EsquireSolutions.com

second is an avoidance action.  The trustee has asserted those.  The third is by challenging the foreclosure of the tax lien itself.  And Mr. Akouete has detailed his theories about lack of process and, you know, lack of notice and other ways to challenge that in the state court.

You've represented that the trustee has evaluated that, all of those.  And while he feels he has a strong claim, at least on one of those theories that this settlement is still justified because of the recovery.  Is there anything you'd like to add to that specifically with respect to the federal court litigation and the state law avenue towards challenging?

(Overlapping voices)

MR. AKOUETE:  Specifically -- oh, sorry.  I thought that was the -- sorry.

THE COURT:  Go ahead, Mr. Akouete.

MR. AKOUETE:  Can I just add specifically what I'm focusing on is specifically in the land court, the town originally know Philip Green.  They know (inaudible).  They know all of those party, and they detail those information in an email to the select board, but they withhold those information from the land court, and the foreclosure was entered.



So based on that, it's like it's fraud on the Court because they submit an affidavit under penalty of perjury that they don't know any of those party.

THE COURT:  So, Mr. Akouete, all of that is in your opposition.  Is it not?

MR. AKOUETE:  So let me ask one question, Your Honor.  Has the trustee hired a special counsel, a land court counsel to give an opinion on how whether how quickly and how efficiently can the data record the property back?

THE COURT:  So I think I can answer that for you because the trustee has not sought approval of this court to do that.  So my assumption is the proffer would be that the trustee and his existing counsel have considered that and weighed that.

Is that right, Ms. Devine?

MS. DEVINE:  That's correct, Your Honor.

THE COURT:  Okay.  So, Mr. Akouete, you've chosen not to cross examine the trustee, and I'll give you an opportunity to argue your opposition, but I want to take a break.  I've got other hearings I need to fit in, then we'll come back.  Is that okay?

MR. AKOUETE:  Yes, Your Honor.

THE COURT:  Okay.  So, why don't we recess?



My -- you're welcome to go in the hallway. You're welcome to stay where you are. I think I'd ask just that you clear that table and the parties coming in use that table and the podium. We'll try and get these hearings done with quickly so that we can get back to this, and we'll reconvene as quickly as we can.

MS. DEVINE: Thank you, Your Honor. Your Honor, may I one quick question. I think we will not need Mr. Jalbert any further. If it's all right with Your Honor, he'd like to be -- can we dismiss him?

THE COURT: Mr. Akouete has indicated he's not going to cross examine, and, you know, whatever the proffer is, it is. And I don't have any questions, Mr. Jalbert. So thank you.

MS. DEVINE: Thank you.

(Whereupon, a recess was taken)

COURT OFFICER: Back on the record for Case No. 23-40709, Westborough SPE, LLC.

THE COURT: Better call your partner and wake him up. He might stay on this Zoom screen forever. With your permission, we'll just cut him off. He doesn't need to have a courtroom of people watching him sleep. My Christmas gift to him.

Have we recalled the case?

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

COURT OFFICER:  Yes, Your Honor.

THE COURT:  Okay.  So, we've established that no party wants to cross examine the trustee, accepted the proffer.

MR. AKOUETE:  Your Honor, can I change my mind and cross examine the trustee?

THE COURT:  Sure.

MR. AKOUETE:  Okay.  Thank you for that.

THE COURT:  Let me --

MS. EDWARDS:  After he's finished, I would like to clarify the record.

THE COURT:  Ms. Edwards?

MS. EDWARDS:  Yes.

THE COURT:  What would you like?

MS. EDWARDS:  I need to clarify the record.

THE COURT:  By doing what?

MS. EDWARDS:  The record.  The trustee's attorney asserted that Lolo and myself created risk for Westborough SPE, LLC.  The program -- the property was not sold to the town.  Therefore, there was no loss that resulted from our management.

Meanwhile, proceeds have been retained, and payments are being scheduled to be paid out to MobileStreet, the trustee, trustee's counsel, David Ferris, Lax Media, and other creditors.  And they're

trying to cut us out and act like our efforts did not matter.

Judge, I work -- when I do my work, I work in good faith.  I'm an asset recovery specialist, and our job is to recover funds for an estate, for an individual, for families who have lost loved ones.

So I do not want to say -- I would not want to be classified as someone who's putting risk to another company because I have my own company to not -- to make sure that it is not at risk.

So that is not why I'm here.  I'm not -- I have tried to settle a long time ago.  They have offered me to settle, and now that's erased out of -- out of history, out of the air.  Just puff.  I have not want to be dragged through any of this.

I'm asked to let's come to some type of agreement because I know that my efforts count.

THE COURT:  Well --

MS. EDWARDS:  That's why we keep -- all of this money is going out.  All of this property is being saved because of our effort.  You just heard her tell you all of the address and information that Lolo pulled up so that they could get to the root of this thing and get -- make sure that everybody's contacted so they know what's going on.  That wasn't done in the

beginning.  That's why we're here.  That's why this was all a mess.

THE COURT:  Your statement --

MS. EDWARDS:  I do not want to be discredit -- I want this record to be straight and not be discredited.

THE COURT:  So you've made your statement on the record.  Why don't we swear the trustee in?

COURT OFFICER:  Please raise your right hand.  Do you solemnly swear that the testimony you're about to give before this court will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  I do.

THE COURT:  Let me ask before we start questioning whether any party in interest has an objection to Mr. Akouete questioning the trustee remotely.

MR. GORDON:  Your Honor, I would like to -- this is Steven Gordon on behalf of the petitioning creditors.  I do not have an objection to Mr. Akouete cross examining the trustee remotely with respect to the two matters that are on today (inaudible) and the settlement.

I do not want that to be considered as a precedent for allowing remote cross examination in the



future.

THE COURT:  Very good.  Go ahead, Mr. Akouete.

MR. AKOUETE:  Thank you, Your Honor.

JONATHAN GOLDSMITH,

Having first been duly sworn to tell the truth, was examined and testified as follows:

CROSS EXAMINATION

BY MR. AKOUETE:

1MR. AKOUETE:  Mr. Goldsmith, have you consider -- are you considering the adversarial proceeding the 548 litigation as the only -- the only viable or proper avenue to recover the problem?

Speaker 11:  With assistance of counsel, we evaluated all the opportunities to litigate the matter associated with this property, including the issue that had been filed in the land court and your pleadings that you filed in land court connection therewith.

We also reviewed the land court transcript and the communication or the comments made by the judge in connection with that land court.  So in total, yes. The answer to your question is, yes.  We have evaluated other things other than the fraudulent transfer 548 matter.

1MR. AKOUETE:  Okay.  Have you get any -- have you ask an opinion of a tax foreclosure tax attorney who specialize in the land court motion to make it for their opinion on this matter?

Speaker 11:  I have not.

1MR. AKOUETE:  Thank you.  In regarding to the IRS document, obviously, you've stated that the debtor does not file taxes or the -- your accountant's information say that the debtor filed taxes through Mignonette.  Is that correct?

Speaker 11:  Could you repeat that question again?  I'm not sure I understood it.

1MR. AKOUETE:  The discovery that I've obtained through your accountant, say that the debtor does not file taxes on its own.  It's filed taxes through Mignonette, the equity holder.  Is that correct?

Speaker 11:  No.  The taxes, because it's a single -- from what I understand from speaking with the accountant -- is that because it's a single member LLC, the debtor would not file taxes.  The single member LLC would be the responsible party for proceeding with filing taxes.

The debtor would not be filing taxes on behalf of Mignonette as I understand.  That would be their obligation.



1MR. AKOUETE:  Okay.  So has the debtor been filing taxes -- have Mignonette been filing taxes for the past few years?

Speaker 11:  I have no idea.

1MR. AKOUETE:  So I have obtained from Babcock & Brown discovery that shows that the debtors filed 2006 taxes.  Right?  Mignonette at least filed 2006 taxes, state and also federal taxes.  Do you -- are you aware of that?

THE COURT:  Is there an objection?

MS. DEVINE:  I'm so -- that wasn't a question, Your Honor.

THE COURT:  The question was, is he aware that that has filed a tax return in the past?  I think that's in 2006.

MR. AKOUETE:  Correct, Your Honor.

THE WITNESS:  I'm not aware of that.

1MR. AKOUETE:  Okay.  So, my next question, does -- since -- well, I've received discovery that shows that Mignonette has filed taxes.  And since Mignonette is filing taxes, who is filing taxes on behalf of Mignonette?

THE COURT:  Didn't the witness testify he wasn't aware of the tax filings of Mignonette?  So Ms. Devine was standing to object.  I just wanted to make

sure I understood the testimony.  Is that right?

Did you understand that answer, Mr. Akouete, that he didn't -- he doesn't have any knowledge of the Mignonette filings?

MR. AKOUETE:  Is that for me, Your Honor?

THE COURT:  Yes.  So I did I understand your question that you're asking again about the Mignonette filings?

MR. AKOUETE:  Yes.  My follow-up question was that who was filing taxes on behalf of Mignonette since Babcock & Brown produced discovery document that shows that Mignonette filed 2006 taxes.

THE COURT:  Who was filing taxes when?

MR. AKOUETE:  In 2006, someone filed taxes on behalf of Mignonette.

THE COURT:  So you can answer that if you know.

THE WITNESS:  I don't know the answer to who filed taxes on behalf of Mignonette.

1MR. AKOUETE:  Okay.  Thank you.  My next question, the IRS case worker that I reached out -- no.  The -- I think it was the republican.  Yeah.

The -- not republican.  The representative office that reached out to them for -- and I also reached out to IRS for responsible party information (inaudible),



and they say that the Court can order that information, even to the debtor -- you represent that the debtor cannot act or anybody else cannot act on behalf of Mignonette.

But they say that the Court can order those document.  Do you know if that's true?  If -- do you know if that avenue is possible?

THE COURT:  There's an objection.

MS. DEVINE:  Your Honor, I have two objections, really.  First to the form of that question, I didn't follow it at all.  Secondly, if the what Mr. Akouete is asking about is not relevant to the sale, and it's not relevant to the settlement.

THE COURT:  So, Mr. Akouete, I agree on relevance and form of question.  How is this relevant? I do understand that notice is relevant.  The trustee's made representations regarding the notice that's been given, but how is this relevant about what a representative has said to you?

MR. AKOUETE:  Your Honor, it is relevant because it's continuing to make the notice defective because we knew that people were filing taxes. Mignonette has representation in The US, not abroad.

THE COURT:  So I'm going to sustain -- I'm going to sustain the objection on both grounds,



relevance and form of question.

MR. AKOUETE:  Thank you, Your Honor.

Q.   The next question, Mr. Goldsmith, have you requested discovery from Nathanson & Goldberg, PC?

MS. DEVINE:  Objection, Your Honor. Relevance again.

THE COURT:  Mr. Akouete, there's an objection, relevance.  I don't know if you could hear that.  What is the relevance of another creditor's claim and whether that's -- whether there's some discovery that's been requested?

MR. AKOUETE:  Your Honor, because the background of the entities mired in --

THE COURT:  How is that relevant to these motions that are pending today?

MR. AKOUETE:  Because, Your Honor, if the record is clearly established, then it will shows that the debtor could vacate the foreclosure next week without going through the settlement.

THE COURT:  How does the Nathanson & Goldberg claim result in that?

MR. AKOUETE:  Your Honor, it has to do with the next few questions I'm going to ask.

THE COURT:  Yeah.  You have to answer that one first.

MR. AKOUETE:  It ties to the clear record, Your Honor --

THE COURT:  So I'll sustain the -- I'm sustaining the relevance objection, Mr. Akouete.

1MR. AKOUETE:  Next question.  Did -- Mr. Goldsmith, did you request the discovery from Goulston & Storrs, P.C.?

MS. DEVINE:  Same objection, Your Honor.  Relevance.

THE COURT:  What's the relevance of the Goulston?  Is this again about the notice of who might be the ultimate owner of the debtor?

MR. AKOUETE:  Correct.  The owner.

THE COURT:  So the answer is we have a record.  Whatever record we have, we have.  And so the trustee -- I mean, I guess, the trustee can answer the question whether he sought additional information from Goulston & Storrs, or if not, why?  You can answer.

THE WITNESS:  We did not request any additional information from Goulston & Storrs.  We believe that we have undertaken a thorough investigation and to determine addresses for Mignonette and serve various parties as been indicated by my counsel during their statements today.

So we think we've sufficiently provided the



adequate notice, and we don't believe there would be any other additional information that would give us the opportunity to serve anybody else other than who we served with respect to the member of the LLC.

THE COURT:  Thank you.  Go ahead, Mr. Akouete.

MR. AKOUETE:  No.  That will be the end of my question.  And the purpose -- the reason why I ask those questions is because the trustee has provided discovery to me, discovery document that they requested discovery from Sharon Lodging (phonetic). They requested discovery for Nathanson & Goldberg, but they did not request discovery from Goulston & Storrs because those are the foundation document.  Those are the documents that will prove that the debtor has to -- can vacate the foreclosure next week if they wanted to.

THE COURT:  Why?  I mean, this is -- we've moved -- are you finished your cross examination? I'll excuse the trustee from the stand unless there's any redirect.

MS. DEVINE:  No.  No, Your Honor.

THE COURT:  No redirect.  So now, Mr. Akouete, you go ahead.  You make your argument against approval.  And you understand, I know, that if the



settlement is not approved, the sale doesn't go forward.

MR. AKOUETE:  That's not what I wanted, Your Honor.

THE COURT:  Well, I know it's not what you want, but it's the reality of the consequence.  So, and that's fine.  You filed an objection.  You're entitled to be heard.  So, you can make whatever argument that you want based on the evidence that you've heard and the evidence of the record.

And, you know, I have read several times your opposition, and so you don't need to make those points again, but you're welcome to argue whatever you like, in addition to that.

MR. AKOUETE:  Yes.  Your Honor, the trustee has a conflict of interest because independent attorney, Matthew Larson, who was a tax attorney, clearly stated on --

THE COURT:  That's not in the record, Mr. Akouete, and he's not here to testify.  So I don't know what his -- if you want to argue the trustee has a conflict of interest, tell me why.

MR. AKOUETE:  Because I filed those on the other record, not on this specific record, but in my other filing.  I've proved that he clearly see that

all of the elements are in the favor of the debtor to vacate the foreclosure. And the trustee has testified that he has now sought an independent counsel opinion on the debtor's ability to vacate the foreclosure to the normal statutory plan or process.

And then my second thing is that the trustee is involved in selective discovery and requesting discovery from other previous counsel, but refused to request the actual foundation document that will shows that (inaudible) was the party that was supposed to be filing taxes on behalf of Mignonette, which the whole -- the town attack on my role as manager would --

THE COURT: So, Mr. Akouete, this has nothing to do with your role as manager. This has everything to do with whether the Court should approve the settlement. And I think you're referring to documents -- if I'm not mistaken, Goulston & Storrs represented in an affidavit that the only records they have are from the late '90s.

MR. AKOUETE: Those are the foundation document, Your Honor --

THE COURT: They may be the foundation documents, but for -- they're from the late '90s. And what that -- what does that say about events in the 2000s and beyond?

MR. AKOUETE:  It defines the role of the party.  That's what's confusing.  The attorney that the liquidator had -- not the attorney.  The investigator the liquidator hired concluded the same thing, that all those party are the same party. Babcock & Brown, Mignonette, Westborough, they're all from the same party, but they're not allowing to get that information.  And that will resolve the entire issue.

THE COURT:  Anything else, Mr. Akouete?

MR. AKOUETE:  Thank you, Your Honor.

THE COURT:  Anybody else wish to be heard?

MR. SMERAGE:  Briefly, Your Honor, on behalf of the town?

Yes, Your Honor.  Stephen Gordon --

THE COURT:  So let me take Mr. Smerage first and then Mr. Gordon, briefly, please, because we're running out of daylight.

MR. SMERAGE:  So as the trustee's counsel said, the town's consent to the sale and its release of the interests the town has in the property facilitates that sale are inextricably linked to the compromises reached in the settlement.

If the Court needed, the town could proffer that the amount that the town is receiving in the



settlement by no means results in the windfall Mr. Akouete has suggested. And a few other points that Mr. Akouete either made in his objection here today that I just want to briefly address on the record.

The sale is not to the town's preferred buyer. While the town, ultimately, agreed with the trustee that the proposed buyer would be the party that could go forward with the settlement, the town's preferred buyer all along was Lax Media. And that is not what this settlement and this sale ends up with.

Mr. Akouete's assertions that an unconditional vacator of the town's tax title judgment find no basis in fact or law. His assertion that outstanding taxes were already tendered, likewise, finds no basis in the record or fact.

And most critically, even if the tax title foreclosure judgment were to be vacated by the land court through the proceedings that Mr. Akouete improperly initiated, and which are now under the control of the trustee and his business judgment in resolving through this proposed settlement, the debtor would still be required to pay the town the outstanding taxes, fees, interests, costs, and attorney's fees pursuant to the redemption provisions of Section 68 of Chapter 60 before title could return

to the debtor.  Thank you, Your Honor.

THE COURT:  Thank you.

Mr. Gordon.  Mr. Gordon, did you want to be heard?

MR. GORDON:  I just want to say that with respect to the -- I did want to be heard, Your Honor.

THE COURT:  Go ahead.

MR. GORDON:  Thank you, Your Honor.  With respect to the land court option, there was an urgency to file the involuntary petition in commencing this case because the land court was about to rule against the debtor and forever cut off its rights in the real estate, which the trustee seeks authority to sell for $5 million today.

So I think the trustee's judgment that the land court is not a quick, easy, or by any sure way of resolving the title issues in this case is absolutely, 100 percent correct.

THE COURT:  Thank you.

MR. AKOUETE:  Can I just clarify, Your Honor?  Can I just clarify one thing Mr. Gordon just said?  The trustee does not need to continue with the motion to vacate that I filed --

THE COURT:  Mr. Akouete, you don't have to be concerned.  Mr. Gordon is not testifying.  You



know, his view of what the land court was or was not going to do is not evidence before me.  I understand he is arguing in support of the trustee's assessment regarding the risks associated with that litigation and the other litigation.

But it's not -- it's not evidence, and it's not something that I will consider, and I won't consider what you say to be evidence of what the land court may or may not do either.

MR. AKOUETE:  Thank you, Your Honor.

THE COURT:  Very good.  I'm going to take a brief recess, and come back on the record.  My guess is it's going to be five or ten minutes.  I just want to look at my notes and organize my thoughts, and I think I'll be able to rule.

COURT OFFICER:  All rise.

(Off the record at 4:30 p.m.)

(On the record at 4:33 p.m.)

COURT OFFICER:  All rise.

THE COURT:  Thank you.  Please be seated.

COURT OFFICER:  Back on the record for case number 2023-40709 Westborough SPE, LLC.

THE COURT:  Bear with me for one moment.  So before the Court today are the motions filed by Jonathan Goldsmith, the trustee of this debtor at ECF

Nos. 967, 966, and the supplement at 978, seeking approval of a global settlement that will result in the recovery of real property by the estate and a sale of that property by the estate to fund the settlement payments and future distributions by the estate.

I've considered all of the certificates of service and other pleadings relating to those motions, including the opposition filed by Mr. Akouete at ECF No. 1031.

I've considered the entire record of the case, which is extensive, the arguments made at today's hearing. I've also considered the evidence presented in support of the motions. I've assessed the credibility of the trustee and whether his evaluations of the factors to be considered in exercising his business judgment are reasonable.

For reasons I'll explain, I will enter order granting the motions and overruling the objection. The trustee maintains the burden of demonstrating that the proposed settlement and sale of the property are fair and reasonable and a reasonable exercise of the trustee's business judgment.

The First Circuit Court of Appeals has laid out the factors to be considered in assessing a Rule 9019 motion in cases such as Jeffrey versus Desmond



and HealthCo.

The Court must evaluate the probability of success on the claims being compromised, the costs and risks associated with litigation of those claims, any difficulty associated with recovery, the complexity and delay that might be associated with pursuing those claims, and the interests of creditors.

Ultimately, the Court must find that the proposed settlement falls above the lowest point in the range of reasonableness for the trustee's judgment.

The following are my findings of facts and conclusions of law as contemplated by Rule 7052, as made applicable by Rule 9014.  This is a court proceeding with respect to which this court has jurisdiction.

Any findings of fact that are in whole or part rulings of law shall be considered as such and vice versa.  While I may cite to specific supporting evidence in the record, my findings are often supported by additional evidence in the record I have considered, and I do not intend to limit support from my findings to the cited portion of the record.

Further, to the extent that I reference testimony or other evidence that supports my rulings,



800.211.DEPO (3376)
EsquireSolutions.com

I've credited that testimony or other evidence even if I have not made an express finding.  Where I've referenced testimony or other evidence that does not support my rulings, I've weighed that evidence, but it has not overcome the weight that I have given to other evidence in the record, whether explicitly referenced or not.

The weight that I have given to testimonial evidence reflects my assessment of the credibility of the witness and consistency of the testimony with other evidence.

I find that the trustee has met his burden. The trustee is an experienced Chapter 7 trustee and attorney who is represented by a firm and an attorney with similar experience in bankruptcy cases and litigation matters.

The trustee's testimony and proffers are credible and address appropriately the factors necessary to be considered in both exercising his business judgment to enter into the settlement and to sell the property on the terms proposed.  The terms of the settlement fall within the range of reasonableness based on my assessment of the claims being released and the other factors that I must consider under Rule 9019.

It is evident from the record that this court cannot approve a sale without approving a settlement agreement.  Title to the property is in the name of the Town of Westborough pursuant to a foreclosure judgment entered in the state court.

While the estate has asserted numerous claims that would result in recovery of the property or vacating the foreclosure judgment, until that occurs, the estate is not in a position to sell the property.

Prior to the settlement, the town had engaged in efforts to redevelop or sell the property pursuant to a request for proposals process and had selected potential buyers.  Additionally, at least one creditor, MobileStreet, had incurred expenses for which the debtor appears to be liable under a reciprocal rights agreement that is of record.

MobileStreet has also asserted claims against the town for periods when the town has held title that has been referenced in other hearings.  The reciprocal rights agreements also provides for restrictions that would potentially limit efforts by the trustee to market and sell the property if it is subsequently recovered after litigation.

There does not appear to be any contention



that the proposed sale price for the property is not reasonable and does not reflect the market value of the property.  The trustee has testified or proffered that he has engaged in a marketing process that resulted in a price acceptable to him and that he believes is reasonable.  Mr. Akouete acknowledges that in his opposition.

The proposed settlement requires certain payments to be made from proceeds of that intended sale.  First, the estate is required to pay at closing amounts that are required to pay outstanding pre-petition real estate taxes and charges incurred and assessed prior to the foreclosure judgment, interest and taxes and charges that would have been assessed had the town not foreclosed, attorney's fees, and other expenses as are detailed in the trustees proffer in the motion.

In essence, it appears to the Court that the town is receiving a full recovery that may have been imposed by a Massachusetts court as a condition to vacating the foreclosure judgment.

There's not a lot of law that discusses some of the issues that are resolved by the settlement and the risks associated with an award of the amount being paid under the settlement.  But the town of Barstow, I

think is the name of the case, land court case, and this court's decision in Yorello support the trustee's assessment that it is possible that a land court or other court might provide that all of these amounts would be required to be paid as was stated position of counsel to the town, as a condition of vacating the foreclosure judgment.

This analysis supports the trustee's assessment that payment of these amounts is fair and reasonable in the context of a recovery of the property without litigation.

Moreover, while the trustee states that he has a "solid level of confidence" in the claims that could be asserted to recover the property to the estate or vacate the foreclosure judgment, I find that his assessment that the risks associated with litigation, the cost of litigation, and the delays associated with the litigation are significant risks that justify a settlement.

The Hennepin issues were recently decided by the Supreme Court and are fertile for further litigation to define the parameters of its application.  In connection with other hearings, the town has suggested that its process that complied with state law, or steps that it might take by paying a

surplus to the estate, could address the Hennepin issues and might be the subject of litigation and defenses to any type of claim that was based on Hennepin.

The town has stated on the record that it intends to defend the avoidance action that was commenced by the trustee.  As the parties know, this court has decided in another case that the bank -- that a bankruptcy estate may have maintained an avoidance action against the Massachusetts town or city associated with the foreclosure of a tax lien even where the town or city complied with the Massachusetts foreclosure statute.

That issue has not been tested on appeal, and if applied here, would likely be the subject of litigation with the town along with the Hennepin issue.

The action that has been removed was commenced in the state court, in the land court that has been referenced at this hearing to challenge the tax lien foreclosure is based on procedural and due process grounds asserting that notice was not proper along with other issues raised by Mr. Akouete.

That is contested by the town under the very unique circumstances of this debtor.  Moreover, the



Supreme Judicial Court of Massachusetts has recently ruled that standing to challenge a mortgage foreclosure may be limited to the parties that were entitled to the notice.  In other words, the notice that might have been given to Mignonette, whether that was proper or not proper, could be argued that the debtor would not have standing to object to that in challenging a tax lien foreclosure.

We don't know.  That hasn't been litigated. The law hasn't been developed.  But the trustee testified that he has considered these risks.  And even though he did not retain special counsel, he and his counsel are qualified to assess these claims.

The proposed settlement also provides for payments of $200,000 and $556,000 and change to MobileStreet.  The $556,000 figure is attributable to amounts claimed under the reciprocal rights agreement.

The trustee has reviewed the basis for that claim and has determined that that is a claim likely to be allowed in that amount or something close to that amount.  That assessment is reasonable.

The settlement also contemplates a $200,000 payment to facilitate a release of the use restriction that impacts the property being sold to allow for a sale to the proposed buyer, which is a church.



The trustee provided evidence that other offers that had been received would have required similar agreements with MobileStreet and that the other offers may not have -- that may not have required, in every respect, some waiver were subject to contingencies and provided for a lower purchase price by almost 1,500,000, which amount significantly exceeds $200,000.

To obtain the agreement of the town and to facilitate a sale to this buyer at the price that is proposed, the trustee's agreement to this term is reasonable.

The proposed settlement also contemplates an immediate payment of $100,000 to each of Ferris and Lax.  Ferris would also maintain an allowed unsecured claim in the bankruptcy case for $10,000, which I believe is the amount of its proof of claim.  These claims arise from the RFP process of the town and are requirements to the settlement to resolve any liabilities and litigation expense to which the town might be exposed.

The trustee also believes that there could potentially be claims against the estate or litigation costs that might be avoided.  I find that these expenses, while resolving exposure for the town that



Case 1:26-cv-10037-WGY    Document 24-2    Filed 03/11/26    Page 137 of 141

may or may not be opposed as a condition to vacate a foreclosure judgment, could be and might be viewed as expenses incurred that may be chargeable in connection with any avoidance action under Section 550 of the bankruptcy code.

These are non-severable payments necessary for the settlement and must be viewed in the overall context of the settlement.  Settlement of the estate's claims and the general releases being proposed under the settlement agreement along with the dismissal with prejudice of the pending action against the town and others in the district court that was removed from the land court are not unusual, do not appear to release claims having obvious value to the estate, considering the purchase price, litigation risk for each of the claims, particularly against the individuals, the expensive litigation, and the delay associated with that litigation.

The trustee's assessment is consistent with this court's experience in observing fee applications, the time associated with litigation, and the cost of administering the estate.

I've also considered the amount of claims asserted in this case.  The substantial administrative costs expected to be asserted in this case, and the



substantial amount of net proceeds that will be available for distribution to creditors.  One creditor has objected to the settlement but acknowledges that even if his claim is allowed in full, the distribution would be significant.

I also find, as the trustee has testified or proffered, that even if the trustee were to prevail in extended litigation and appeals and recovered the property, the estate would require funding to maintain the property, meet obligations under the reciprocal rights agreement, be burdened by use restrictions of that agreement, be burdened by zoning restrictions, and would have substantial insurance requirements that would require funding and would have to go through a sale process that may result in a substantially lower sale price given the zoning and use restrictions and the bankruptcy sale process.

There would also be substantial delay and further administrative costs associated with administering the estate.

Mr. Akouete's opposition contains a long list of reasons why this court should not approve the settlement.  Most of those are already addressed by my findings.

Addressing several more of those reasons,



while the proposed settlement certainly pays claims that may or may not be claims against the estate, such as the town's claim, that is a secured claim that would be paid at closing in connection with any approved sale on a regular basis routinely by bankruptcy courts assessing proposed sales of property.

The other payments are payments from proceeds that are necessitated to obtain the agreement of the town to eliminate further exposure to the town as a condition for the overall settlement and are appropriate for that reason as a cost of closing.  The $200,000 payment to MobileStreet is reasonable for the reasons that I have previously discussed.

I find nothing in the settlement agreement or the record that is inconsistent with the trustee's fiduciary duties.  The opposition takes issue with the proposed language regarding this court's retention of jurisdiction.  This court will retain jurisdiction only to the extent permitted by applicable law.  That will be the case regardless of the language of any order entered by this court.

Finally, while Mr. Akouete references the strength of the claims of the estate and alternative means to secure the property, the evidence supports my



800.211.DEPO (3376)
EsquireSolutions.com

A-649

finding that the proposed settlement is within the range of reasonableness and that there are substantial costs and delays associated with litigating with the town, that there would be risks associated with obtaining a similar price in the future, that the claims against parties other than the town are necessary for the settlement and/or have, I guess, little demonstrable value to the estate when weighed against the settlement and the results for the estate.

        For those reasons, I'll enter orders approving the sale and approving the settlement.  And with that, we're adjourned for today.  Thank you.  All rise.

        (End of Audio Recording)



CERTIFICATE OF TRANSCRIPTIONIST

I WENDY K. SAWYER, hereby certify that I was authorized to and did transcribe the provided recording and that the foregoing transcript is a true transcript of said electronic recording to the best of my ability.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

DATED this 24th day of February, 2026.

_____

WENDY K. SAWYER, CDLT

